# Exhibit 1

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Netlist, Inc.,<br><br>              Plaintiff (Complainant),<br><br>    v.<br><br>Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.<br><br>              Defendants (Respondents) | Case No: _____ |

## RESPONDENTS' MEMORANDUM IN SUPPORT OF ITS MOTION SEEKING THE ISSUANCE LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents"), respectfully request that this Court issue Respondents' Letters of Request for International Judicial Assistance in accordance with the recommendation of the Administrative Law Judge presiding over the ITC Investigation.

1.    **BACKGROUND**

On September 30, 2025, Netlist, Inc. ("Netlist") filed a Complaint against Respondents before the United States International Trade Commission ("the ITC"), alleging violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. Netlist alleges that Respondents unlawfully import into, sell to import, and/or sell within the United States certain dynamic random access memory (DRAM) devices, products containing the same, and components

thereof, that infringe Netlist's U.S. Patent Nos. 12,373,366 ("the '366 Patent"); 10,025,731 ("the '731 Patent"); 10,268,608 ("the '608 Patent"); 10,217,523 ("the '523 Patent"); 9,824,035 ("the '035 Patent"); and 12,308,087 ("the '087 Patent") (collectively, "the Asserted Patents"). On December 29, 2025, the Commission instituted Investigation No. 337-TA-1472.

As set forth in its Complaint, Netlist intends to rely upon SK hynix's activities as a licensee of the Asserted Patents to establish a domestic industry pursuant to 19 U.S.C. § 1337(a)(3) in this investigation. *See Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof,* Inv. No. 337-TA-1472, Order No. 4, Complaint ¶¶ 16-17, 132-135, 140-148 (Sept. 30, 2025) (EDIS Doc. ID 863442). SK hynix is likely to have non-public documents related to alleged investments in the United States regarding products that allegedly practice the Asserted Patents, as well as documents that indicate how those alleged investments compare to its worldwide investments. SK hynix is also likely to have certain technical documents detailing the function and operation of SK hynix's products, which may impact whether any of SK hynix's alleged domestic industry products satisfy the technical prong of the domestic industry requirement.

2.    **THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA HAS THE AUTHORITY TO ISSUE LETTERS OF REQUEST**

The Hague Convention states that "[i]n civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provision of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." Hague Convention, Art. 1, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555. Both the United States and the Republic of Korea are parties to

the Hague Convention.  The United States ratified the Hague Convention on August 8, 1972, and

the Republic of Korea ratified the Hague Convention on December 14, 2009.[1]

The Hague Convention authorizes the District Court for the District of Columbia to issue

the Letter of Request to the Republic of Korea.  *See* 28 U.S.C. § 1781(b)(2) (permitting "the

transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign

or international tribunal, officer, or agency to whom it is addressed and its return in the same

manner."); *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 535

(1987) ("Thus, Article 1 provides that a judicial authority in one contracting state 'may' forward

a letter of request to the competent authority in another contracting state for the purpose of

obtaining evidence."); *Certain Filament Light-Emitting Diodes & Prods. Containing Same (II)*

*("Light-Emitting Diodes")*, Inv. No. 337-TA-1220, Order No. 20 (Dec. 3, 2020) ("A Letter of

Request is the appropriate method for seeking discovery from … the Republic of Korea" which is

a party "to the Hague Evidence Convention.").  The United States District Court for the District

of Columbia is a "judicial authority" of the United States that "may… request the competent

authority of [South Korea], by means of a Letter of Request to obtain evidence."  See 28 U.S.C. §

1781(b)(2); Hague Convention, Art. 1.

This Court has previously issued Letters of Request soliciting assistance from Korean

Judicial Authorities upon the receipt of a recommendation from an Administrative Law Judge at

the ITC.  *See* Order Granting Plaintiff's Motion for Issuance of Letters Rogatory, *Micron*

*Technology, Inc. v. SK hynix Inc.*, No. 1:24-mc-00098 (D.D.C. Aug. 15, 2024), Dkt. No. 2.  In the

337-TA-1472 Investigation, Administrative Law Judge McNamara has issued a recommendation

---

[1]    *See* Hague Conf. on Private Int'l Law, Status Table,
       http://www.hcch.net/index_en.php?act=conventions.status&cid=82 (last updated July 2025).

that the Court issue the Letters of Request on an expedited basis based on her findings that the Letters of Request seek relevant Information.

3.    **SK HYNIX IS IN POSSESSION OF RELEVANT DOCUMENTS AND INFORMATION IN THE REPUBLIC OF KOREA.**

Respondents seek foreign discovery based on the assertions in Netlist's Complaint alleging a violation of section 337 of the Tariff Act of 1930 for importation of products that allegedly infringe the Asserted Patents.  According to Netlist, SK hynix licenses the Asserted Patents and sells RDIMMs, MRDIMMs, and HBMs in the United States that allegedly practice the Asserted Patents. *See* Complaint ¶¶ 16-17, 132-135, 140-148 (EDIS Doc. ID 863442). In turn, Netlist is relying on SK hynix for satisfaction of the domestic industry requirement. *Id.*

In order to evaluate the economic prong of the domestic industry requirement, Respondents desire to obtain non-public information regarding SK hynix's investment and sales within the United States for the products that allegedly practice the Asserted Patents. Along with information pertaining to investment and sales within the United States, SK hynix's non-public information regarding its worldwide investment and sales of RDIMMs, MRDIMMs, and HBMs may be relevant to the significance of SK hynix's investment and sales within the United States.

In order to address the technical prong of the domestic industry requirement, Respondents desire to obtain non-public technical information regarding the structure, operation, and functionalities of SK hynix's RDIMMs, MRDIMMs, and HBMs. Respondents have a good faith belief that the products at issue are largely manufactured in Korea and that the relevant non-public technical information also resides in in Korea.

Respondents have also requested, via subpoena, documents and deposition testimony from SK hynix America, a U.S. subsidiary of SK hynix. Respondents believe this Letter of Request is necessary because some of the documents and information Respondents seek are likely in the sole

possession, custody, or control of the parent entity, SK hynix Inc. and may not be made available through the subpoena previously issued to SK hynix America.

4.    **THE EVIDENCE THAT RESPONDENTS SEEK IS HIGHLY RELEVANT, NARROWLY TAILORED, UNOBTAINABLE WITHOUT THE ASSISTANCE OF THE FOREIGN COURTS, AND WOULD BE SUBJECT TO THE PROTECTIVE ORDER**

The issuance of the attached requests are necessary for several reasons. First, the documents and information sought are highly relevant to the domestic industry prong of this investigation and are narrowly tailored to seek information and documents pertaining to the domestic industry issues in this investigation. Netlist is attempting to rely on SK hynix's manufacturing, sales, and investment in RDIMM, MRDIMM, and HBM products to satisfy the domestic industry requirement. The attached requests seek information necessary to determine the extent to which these products practice the asserted patents, as well as the significance of any domestic investment related to these products.

Second, foreign discovery is necessary because Respondents believe that SK hynix is in possession of this highly relevant information and that the documents and information are in the Republic of Korea, which is beyond the Commission's subpoena powers. Additionally, the Republic of Korea entered objections to the provisions of the Hague Evidence Convention and prohibits depositions of Korean National and Third Country National willing witnesses.[2] Thus, Respondents can only obtain this non-public discovery via a Letter of Request sent to the Central Authority of the Republic of Korea.

---

[2]    *See* U.S. Department of State, Judicial Assistance Country Information, South Korea, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html.

Third, any documents and information provided pursuant to the requests would be subject to the Protective Order to the Investigation (Appendix B, Attachment B), ensuring that SK hynix's interest are adequately protected.

Fourth, Respondents are fully prepared to comply with the procedural requirements involved in obtaining the requested documents and information from SK hynix. The Letters of Request meet South Korea's format requirements, including both identifying the proper Korean Central Authority and person to be served and providing translations in Korean of the Letter of Request and the Discovery Requests to expedite processing of the Request for International Judicial Assistance. *See* Authority: Republic of Korea – Central Authority & Practical Information, Hague Conf. on Private Int'l Law, https://www.hcch.net/en/states/authorities/details3/?aid=846 (last updated Jan. 26, 2026).

5.    **CONCLUSION**

For the foregoing reasons, Respondents respectfully request that this Court issue Respondents' Letters of Request for International Judicial Assistance in accordance with the recommendation of the Administrative Law Judge presiding over the ITC Investigation. The proposed Letters of Request are attached as Exhibits 4 and 7.

Dated: March 13, 2026                    Respectfully submitted,

Paul F. Brinkman, P.C.
F. Christopher Mizzo, P.C.
Michael A. Pearson, Jr.
Karthik Ravishankar
Maranda Johnston
David Corasaniti

**Kirkland & Ellis LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

Greg S. Arovas, P.C.
Todd Friedman, P.C.
James E. Marina, P.C.
Jeanna Wacker, P.C.
Benjamin A. Lasky
Alan Rabinowitz
Azaad Zimmermann
**Kirkland & Ellis LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Luke Norrell
Cameron Lindsay
**Kirkland & Ellis LLP**
401 W 4th St, Suite 4000
Austin, TX 78701
Telephone: (512) 678-9050
Facsimile: (512) 678-9101

Email: Samsung-Netlist-ITC@kirkland.com

*Counsel for Respondents Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.,
and Samsung Semiconductor, Inc.*

Gregory F. Corbett
Charles T. Steenburg
Anant K. Saraswat
Meaghan P. Luster
WOLF, GREENFIELD & SACKS P.C.
600 Atlantic Avenue, 23rd Floor
Boston, MA 02210
(617) 646-8000

Elizabeth A. DiMarco
Suresh S. Rav

WOLF, GREENFIELD & SACKS P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 571-5001

Email: Google-Netlist-
1472@wolfgreenfield.com

*Counsel for Respondent Google LLC*

Richard S. Zembek
Daniel S. Leventhal
Charles B. Walker
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Talbot R. Hansum
Ryan E. Meltzer
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd, Suite 1100
Austin, TX 78701
(512) 474-5201

Email: NRF-SMCI-Netlist-
ITC@nortonrosefulbright.com

*Counsel for Respondent Super Micro
Computer, Inc.*

# Exhibit 2

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1472** |

**ORDER NO. 14:**     **GRANTING RESPONDENTS' MOTION SEEKING RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA TO ISSUE A LETTER OF REQUEST TO SK HYNIX INC. [MOTION DKT. NO. 1472-007]**

(February 27, 2026)

On February 24, 2026, Respondents Samsung Electronics Co., Ltd., Samsung Electronics America Inc., Samsung Semiconductor, Inc. (collectively "Samsung"), Google LLC ("Google"), and Super Micro Computer Inc. ("Super Micro") (collectively, "Respondents") filed a motion ("Motion") seeking a recommendation to the United States District Court for the District of Columbia to issue a Letter of Request ("Letter of Request") to SK hynix Inc. (Motion Dkt. No. 1472-007.). Respondents state, pursuant to Ground Rule 2.2, that neither Complainant Netlist, Inc. ("Complainant" or "Netlist" and, with Respondents, "the Private Parties") nor counsel for the Office of Unfair Import Investigations ("Staff") opposes the Motion. (Motion at 2.).

The Motion asks me to issue the Letters of Recommendation attached as Appendix A and Appendix C to the Motion. (Mot. at 1.). Appendix A is a Letter of Recommendation to the United States District Court for the District of Columbia to issue a Letter of Request to SK hynix Inc. for production of documents. Appendix C is the same type of letter except, instead of for the production of documents, it is requesting information. Appendix B is the Letter of Request for the production of documents and Appendix D is the Letter of Request for the production of information.

The Letters of Request solicit the assistance of the Korean Central Authority to obtain evidence from the following foreign third-party: SK hynix Inc., 2091 Gyeongchung-daero, Bubal-eub, Icheon-si, Gyeonggi-do, 17336, Republic of Korea ("SK hynix").

The Motion also includes a Memorandum in Support of the Motion ("Mem."). respondents persuasively showed that a United States District Court has the authority to issue a Letter of Request to the Central Authority of the Republic of Korea because the Republic of Korea is a party to the Hague Convention.  (Mem. at 2–4; Hague Conf. on Private Int'l Law, Status Table, http://www.hcch.net/index_en.php?act=conventions.status&cid=82 (last accessed February 27, 2026).).  Under the Hague Convention, a Letter of Request is the appropriate means of obtaining evidence from a foreign state.  *See* Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Art. 1, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555.  This procedure is also authorized by U.S. law.  28 U.S.C. § 1651; § 1781(b)(2); Fed. R. Civ. P. 4(f)(1), 28(b)(B).

Respondents also persuasively showed that SK hynix likely has documents and testimony that are relevant to this Investigation because SK hynix "licenses the Asserted Patents and sells RDIMMs, MRDIMMs, and HBMs in the United States that allegedly practice the Asserted Patents."  (Mem. at 4.).  Netlist also relies on SK hynix for satisfaction of the domestic industry requirement.  (*Id.*).  Respondents need to obtain non-public information from SK hynix regarding SK hynix's "investment and sales within the United States for the products that allegedly practice the Asserted Patents. Along with information pertaining to investment and sales within the United States, SK hyhnix's non-public information regarding its worldwide investment and sales of RDIMMs, MRDIMMs, and HBMs mayb e relevant to the significance of SK hynix's investment and sales within the United States."  (*Id.*).  The Letters of Request are also necessary

because SK hynix is located in the Republic of Korea, which is beyond the Commission's

subpoena powers, and also because the Republic of Korea prohibits deposition of Korean

National and Third Country National willing witnesses.  (U.S. Department of State, Judicial

Assistance Country Information, South Korea,

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-

Information/KoreaRepublicof.html (last accessed January 26, 2026).).

     Respondents represent that they are prepared to, and will, conform to all the procedural

requirements involved in obtaining the requested documents and information from SK hynix,

including obtaining the necessary translations into Korean.  (Mem. at 5–6.).

     The Motion, (Motion Dkt. No. 1472-007), is **GRANTED**.  Enclosed with this Order are

signed Letters of Recommendation enclosing Netlist's Letters of Request and accompanying

documents, as set forth in the table below.  Attachments B–C to Appendix B are the same as

what would be attached to Appendix D, so they are not needlessly duplicated here.

| **Appendix A** | | Recommendation to the United States District Court for the District of Columbia to Issue a Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters for the Production of Documents ("Recommendation for the Production of Documents") |
|---|---|---|
| **Appendix B** | | Letter of Request for International Judicial Assistance to the Republic of Korea for the Production of Documents ("Letter of Request for Production of Documents") |
| | Attachment A to Letter of Request for Production of Documents | Documents or Other Property to be Produced by SK hynix Inc. |
| | Attachment B to Letter of Request for | Protective Order in USITC Investigation No. 337-TA-1472 |

|  | Production of Documents |  |
|---|---|---|
|  | Attachment C to Letter of Request for Production of Documents | Ground Rules governing USITC Investigation No. 337-TA-1472 |
|  | Attachment D to Letter of Request for Production of Documents | Complaint in USITC Investigation No. 337-TA-1472 |
| **Appendix C** |  | Recommendation to the United States District Court for the District of Columbia to Issue a Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters for Production of Information ("Recommendation for the Production of Information") |
| **Appendix D** |  | Letter of Request for International Judicial Assistance to the Republic of Korea for the Production of Information ("Letter of Request for Production of Information") |
|  | Attachment A to Letter of Request for Production of Information | Requests for Information to SK hynix Inc. |

Respondents shall, as soon as practicable, transmit the Letters of Recommendation with all attachments thereto, accompanied by a Korean translation of each, to the United States District Court for the District of Columbia.

**SO ORDERED.**

MaryJoan McNamara
Administrative Law Judge

# Appendix A

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

**Before the Honorable MaryJoan McNamara
Administrative Law Judge**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-1472** |

## RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA TO ISSUE A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The undersigned Administrative Law Judge finds that the evidence that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek from SK hynix Inc. in its Proposed Letter of Request is reasonably necessary to investigate fully its claims of a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, in the above-captioned investigation before the United States International Trade Commission. Accordingly, the undersigned recommends that the District Court for the District of Columbia issue, under its seal and signature, the attached Letter of Request for Production of Documents and Things to the Central Authority of the Republic of Korea.

A Letter of Request is the appropriate method of gathering the necessary requested evidence outside the United States. Respondents must transmit the Letter of Request with a District

Court Judge's signature and the District Court's seal to the Central Authority of the Republic of Korea. The Proposed Letter of Request meets the standards set forth by the Hague Convention regarding the Republic of Korea. *See* U.S. Department of State, Legal Considerations—South Korea, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html.

To comply with the statutory time limitations on International Trade Commission investigations, the undersigned respectfully requests that the Court assign a judge and schedule a hearing to expedite issuance of the Letter of Request.

Respectfully submitted this 27th day of February, 2026

MaryJoan McNamara
Administrative Law Judge

Address for Return of Issued Letter of Request

F. Christopher Mizzo, P.C.
**Kirkland & Ellis LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: Samsung-Netlist-ITC@kirkland.com

*Counsel for Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.*

# Appendix B

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Netlist, Inc., | |
| Plaintiff (Complainant), | Case No: _____ |
| v. | **RECOMMENDATION FOR ISSUANCE OF A LETTER OF REQUEST** |
| Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc. | |
| Defendants (Respondents) | |

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE REPUBLIC OF KOREA FOR THE PRODUCTION OF DOCUMENTS

The United States District Court for the District of Columbia presents its compliments to the National Court Administration, the appropriate judicial authority of the Republic of Korea, and respectfully requests international judicial assistance to obtain the production of documents under The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters from the following entity:

> **SK hynix Inc.**
> 2091, Gyeongchung-daero, Bubal-eup,
> Icheon-si Gyeonggi-do
> Republic of Korea

The United States District Court for the District of Columbia is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the production of evidence both within and outside its jurisdiction.

The requested evidence is for an administrative proceeding in the *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components*

*Thereof*, Investigation No. 337-TA-1472 before the United States International Trade Commission ("the Investigation") as approved by this Court the above-captioned matter. Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek discovery from SK hynix Inc. ("SK hynix") regarding its MRDIMM, RDIMM, and HBM products and investments that SK hynix has made in the United States regarding those products. Complainant, Netlist, Inc. ("Netlist") asserts that SK hynix is a licensee to the asserted patents in this Investigation. Netlist alleges activities conducted by SK hynix establishes the existence of a domestic industry in the United States pursuant to 19 U.S.C. § 1337(a)(2) and (3). Additionally, Netlist alleges that SK hynix's capacity to increase production to supply increased demand should an exclusion order be entered in the Investigation against the Respondents' products.

In the proper exercise of its authority, this Court has determined that the evidence sought from SK hynix Inc. cannot be secured except by the intervention of the National Court Administration of the Republic of Korea. There are important deadlines in the above-referenced administrative proceeding, particularly a cut-off to fact discovery that is scheduled for June 8, 2026, and an evidentiary hearing that is scheduled for October 28-November 4, 2026. Thus, this Court additionally requests that the Director of International Affairs expedite this request to the extent possible.

This Court requests the assistance described below:

| 1. Sender | F. Christopher Mizzo, P.C. Kirkland & Ellis LLP 1301 Pennsylvania Avenue, N.W. Washington, D.C. 20004 Telephone: (202) 389-5000 Facsimile: (202) 389-5200 |
|---|---|

|  | Email: Samsung-Netlist-ITC@kirkland.com |
|---|---|
| 2. Central Authority of the Requested State | National Court Administration<br>Attn.: Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>SEOUL 06590<br>Republic of Korea |
| 3. Person to whom the executed request is to be returned | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |
| 4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request || 
| Date | Please respond as soon as practicable, but in any event please respond no later than March 11, 2026. |
| Reason for Urgency | Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time." The fact discovery cutoff for this Investigation is July 8, 2026. |
| 5. In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request: ||
| 5.a Requesting judicial authority (Article 3, a) | Honorable _____<br>United States District Court Judge<br>U.S. District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington. DC 20001<br>United States of America |
| 5.b To the competent authority of (Article 3, a) | Republic of Korea |
| 5c. Names of the case and any identifying number | *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components Thereof*, U.S.I.T.C. Investigation No. 337-TA-1472 |
| 6. Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3, b) ||

| | |
|---|---|
| 6a. Plaintiff (Complainant) | Netlist, Inc.<br>111 Academy Way<br>Suite 100<br>Irvine, CA 92617 |
| Plaintiff's Representatives | Jason Sheasby<br>Annita Zhong, PhD<br>Andrew Strabone<br>Lisa Glasser<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel.: (310) 277-1010<br><br>Daniel E. Yonan<br>Donald R. Banowit<br>William H. Milliken<br>Richard M. Bemben<br>Lauren A. Watt<br>Sterne, Kessler, Goldstein & Fox PLLC<br>1101 K Street NW, 10th Floor<br>Washington DC 20005<br>Tel.: (202) 371-2600 |
| 6.b Defendants (Respondents) | Samsung Electronics Co., Ltd.<br>129 Samsung-ro, Yeongtong-gu,<br>Suwon, Gyeonggi-do, 443-742<br>Republic of Korea<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Semiconductor, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, California 94043<br><br>Super Micro Computer, Inc.<br>980 Rock Ave.<br>San Jose, California 95131 |
| Defendant's Representatives | *Counsel for Respondent Google LLC* |

Gregory F. Corbett
Charles T. Steenburg
Anant K. Saraswat
Meaghan P. Luster
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: 617.646.8000

Elizabeth A. DiMarco
Suresh S. Rav
Simon Lu
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.571.5001

Jared W. Newton
Quinn Emanuel Urquhart & Sullivan, LLP
555 13th St. NW, Suite 600
Washington, D.C. 20004
Tel. (202) 538-8000
jarednewton@quinnemanuel.com

*Counsel for Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.*

Paul F. Brinkman, P.C.
F. Christopher Mizzo, P.C.
Michael A. Pearson, Jr.
Karthik Ravishankar
Maranda Johnston
David Corasaniti
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

Greg S. Arovas, P.C.
Todd Friedman, P.C.
James E. Marina, P.C.
Alan Rabinowitz
Benjamin Lasky
Azaad Zimmermann
Kirkland & Ellis LLP
601 Lexington Avenue

| | |
|---|---|
| | New York, NY 10022<br>Telephone: (212) 446-4800<br><br>Greg Polins<br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br><br>Luke Norrell<br>Cameron Lindsay<br>Kirkland & Ellis LLP<br>401 W 4th St, Suite 4000<br>Austin, TX 78701<br>Telephone: (512) 678-9050<br><br>Brian R. Nester<br>Covington & Burling LLP<br>One CityCenter,<br>850 Tenth Street, NW<br>Washington D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Email: BNester@cov.com |
| | *Counsel for Respondent Super Micro Computer, Inc.*<br><br>Richard S. Zembek<br>Charles B. Walker<br>Daniel S. Leventhal<br>Talbot Hansum<br>Ryan E. Meltzer<br>NORTON ROSE FULBRIGHT US LLP<br>1550 Lamar Street, Suite 2000<br>Houston, Texas 77010<br>Tel: (713) 651-5151 |
| 6.c Other parties | Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W., Suite 401<br>Washington, DC 20436 |
| 7. Nature and purpose of the Proceedings | This is a proceeding being conducted by the United States International Trade Commission under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on a Complaint filed by Netlist, Inc. on September 30, 2025. |

Netlist, Inc. alleges that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc. unlawfully import into the United States, sell for importation into the United States, and/or sell within the United States after importation of certain dynamic random access memory (DRAM) devices, products containing the same, and components thereof, that infringe Netlist's U.S. Patent Nos. 12,373,366 ("the '366 Patent"); 10,025,731 ("the '731 Patent"); 10,268,608 ("the '608 Patent"); 10,217,523 ("the '523 Patent"); 9,824,035 ("the '035 Patent"); and 12,308,087 ("the '087 Patent") (collectively, "the Asserted Patents").

The International Trade Commission instituted proceedings based on Netlist's Complaint as supplemented on November 20, 2025, December 5, 2025, December 12, 2025, and December 16, 2025. Upon institution, the case was assigned to Administrative Law Judge MaryJoan McNamara to preside over pre-trial matters, conduct a trial, and issue an initial determination on the merits of the case. The initial determination is subject to possible review by the International Trade Commission with a right to appeal to the United States Court of Appeals for the Federal Circuit.

Respondents seek this Letter of Request to SK hynix Inc. because, as set forth in the Complaint, Netlist contends that SK hynix Inc. is a licensee to the Asserted Patents and sells products it believes practice the Asserted Patents. *See* Complaint ¶¶ 10, 16, 17. Netlist intends to rely on SK hynix's products and investments in the United States to allege that a domestic industry exists, as required by 19 C.F.R. § 1337(a). *Id*. at ¶¶ 132-135, 140-148. Thus, Respondents contend that SK hynix Inc. is likely in possession of documents that are directly relevant to the issue of domestic industry.

Specifically, Respondents believe SK hynix possesses unique documents concerning (i) the design, structure, and function of its RDIMM, MRDIMM, and HBM products and (ii) SK hynix's expenditures and investments in the United States to

| | bring those products to market. Additionally, SK hynix will likely possess documents regarding whether SK hynix's investments in the United States are significant, particularly in comparison to worldwide investments. |
| --- | --- |
| | While Samsung has also requested, via subpoena, documents from SK hynix's subsidiary SK hynix America, Respondents pursue this Letter of Request to SK hynix Inc. to the extent the information requested is not within the possession, custody, or control of SK hynix America. For example, to the extent that SK hynix America argues that key technical or financial documents are only available through SK hynix Inc., pursuing this Letter of Request now is necessary, particularly in light of the shortened schedule of the Investigation. |
| 8. Evidence to be obtained or other judicial act to be performed and purpose of the evidence or judicial act sought | |
| 8a. Evidence to be obtained or other judicial act to be performed (Article 3, d) | It is requested that a judicial authority of the Republic of Korea order SK hynix to produce copies of documents relating to its investments in the United States regarding its MRDIMM, RDIMM, and HBM products and technical features of those products. The documents requested are set forth with more specificity in Attachment A. |
| 8b. Purpose of the evidence or judicial act sought | The requested documents will provide evidence directly relevant to the existence of a domestic industry pursuant to 19 U.S.C. § 1337(a)(1)(2), and (3), and that evidence may be introduced at the evidentiary hearing held by the Administrative Law Judge in the Investigation. Netlist alleges that SK hynix is a licensee of the Asserted Patents and thus intends to rely on certain of SK hynix's investments in the United States. |
| | In Attachment A, Request Nos. 1-3 seek documents and other things that SK hynix has produced, or intends to produce, in response to Netlist's letter of request concerning this same investigation. This evidence is directly relevant to the technical and economic prongs of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3), as well as whether an exclusion order in this |

Investigation would harm the public interest under 19 U.S.C. § 1337(d).

Requests Nos. 4-8 seek technical documentation regarding the function and operation of certain SK hynix products. Request Nos. 9-13 seek technical documentation regarding the components, and their interconnections, in the SK hynix products as well as prior art for the asserted patents. Requests Nos. 14-16 seek proposals and presentations that SK Hynix has submitted to JEDEC concerning the relevant SK hynix products. This is all evidence directly relevant to the technical prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3), which requires an analysis of the function of a product in comparison to the asserted patent claims.

Requests Nos. 17-20 seek marketing materials such as product brochures distributed by SK hynix. Specifically, these requests are relevant to evaluating prices, availability, and key product features relevant to the technical and economic prongs of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3).

Request Nos. 21-29 seek records of SK hynix's expenditures and investments in the United States related to its DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs, including data regarding the significance of those investments. This is all evidence directly relevant to the economic prong of the domestic industry under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), which requires the showing of significant investment in the United States tied to inventions claimed in the asserted patents.

Request No. 30 seeks written submissions that SK hynix made in connection with previous litigation where SK hynix was accused of infringing one of the asserted patents. This request is directly relevant to the validity and enforceability of the asserted patent which required for relief under 19 U.S.C. § 1337(a)(1)(B).

| | |
|---|---|
| | Requests Nos. 31-43 seek documents relevant to SK hynix's ability to produce a sufficient amount of memory modules to meet demand if an exclusion order were to be issued. This evidence is directly relevant to whether an exclusion order in this Investigation would harm the public interest in the United States. *See* 19 U.S.C. § 1337(d).<br><br>Requests Nos. 44-45 seek agreements between SK hynix and Netlist as well as SK hynix America regarding this investigation or the asserted patents. Since SK hynix is a licensee of asserted patents, information pertaining to the terms of such agreements will be directly relevant to evaluating the economic prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(3)<br><br>Request Nos. 46-48 seek physical samples of the SK hynix products to allow Respondents' counsel and expert witnesses to analyze the products. This evidence is directly relevant to the technical prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3). |
| 9. Identity and address of any person to be examined (Article 3, e) | None. |
| 10. Questions to be put to the persons to be examined or statement of the subject- matter about which they are to be examined (Article 3, f) | None. |
| 11. Documents or other property to be inspected (Article 3, g) | See the numbered list of document requests set forth in Attachment A. |
| 12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | It is respectfully requested that each document requested in Attachment A be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business. |
| 13. Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Articles 3, I, and 9) | *See* Attachment A for details on how SK hynix Inc. is to produce the requested documents.<br><br>In this matter, a Protective Order has been entered that governs the production of documents, testimony, and any record of the testimony. A copy of this order is attached hereto as Attachment B. Because this action involves confidential and proprietary business information, the protective order serves to protect such information from public disclosure. |

| | Accordingly, the United States District Court for the District of Columbia requests that any documents obtained in response to this Letter of Request be treated in accordance with the provisions of the Protective Order to protect confidential and proprietary information. |
|---|---|
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | It is requested that the individuals identified below be furnished, as soon as practicable, with a copy of the executed Letter of Request:<br><br>F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | None. |
| 16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | SK hynix may refuse to give evidence only insofar as he or she has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of the Republic of Korea. |
| 17. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | To the extent that there are expenses associated with providing assistance in response to this Letter of Request, this Court will see that the Central Authority of Korea is reimbursed by:<br><br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Tel.: (202) 389-5000 |
| Date of Request | _____ day of _____ 2026 |
| Signature and Seal of the Requesting Authority | _____<br>The Honorable _____<br>United States District Judge United States District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, D.C. 20001 |

<table>
<tr><td></td><td>United States of America<br><br>Signed in _____ , this<br><br>_____ day of _____, 2025<br><br>[Affix seal of court below:]</td></tr>
</table>

Attachments:
Attachment A: Documents to be Produced by SK
Attachment B: ITC Protective Order
Attachment C: ITC Ground Rules
Attachment D: Public Complaint and supplements

# Attachment A

**DOCUMENTS OR OTHER PROPERTY TO BE PRODUCED BY SK HYNIX INC.**

**<u>DEFINITIONS</u>**

The following definitions apply to the Requests set forth below:

1.      "SK hynix," "You," "Your," and "Yourself" means SK hynix Inc. and any of its predecessors, divisions, departments, subsidiaries, and other legal Entities that are wholly or partially owned or controlled by SK hynix Inc., either directly or indirectly, together with any and all parent and affiliated companies or corporations, and all present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business Entities in the employ of or otherwise acting on behalf of SK hynix Inc.

2.      "Complainant" or "Netlist" means the Complainant Netlist, Inc., including all of its present and former corporate locations; all of its present and former predecessors, predecessors-in-interest, successors, assigns, affiliates, direct or indirect subsidiaries, parents, and trusts; all firms, corporations, and other Entities acting under common control with Netlist, in joint venture with Netlist, or under licensing or partnership agreements with Netlist; all Entities that own or are owned by Netlist in whole or in part; and all divisions and operating units thereof. Netlist further includes all of Netlist's present and former employees, agents, servants, representatives, directors, officers, accountants, consultants, attorneys, and investigators, and all others currently or formerly acting or purporting to act on behalf of Netlist or subject to the direction and control of Netlist.

3.      "Respondent(s)" shall refer to any or all of the named Respondents in this Investigation, including Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.

4.      "Samsung" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.

5.    The term "this Investigation" means the above-captioned investigation, *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof*, Investigation No. 337-TA-1472.

6.    "'035 patent" means U.S. Patent No. 9,824,035, including any corrections, reexaminations, or applications thereof.

7.    "'731 patent" means U.S. Patent No. 10,025,731, including any corrections, reexaminations, or applications thereof.

8.    "'523 patent" means U.S. Patent No. 10,217,523, including any corrections, reexaminations, or applications thereof.

9.    "'608 patent" means U.S. Patent No. 10,268,608, including any corrections, reexaminations, or applications thereof.

10.    "'087 patent" means U.S. Patent No. 12,308,087, including any corrections, reexaminations, or applications thereof.

11.    "'366 patent" means U.S. Patent No. 12,373,366, including any corrections, reexaminations, or applications thereof.

12.    "Asserted Patents" means the '035, '731, '523, '608, '087, and '366 patents, and any other patent Netlist is permitted to assert in any amended Complaint.

13.    "Prior Litigation" means any proceeding, lawsuit, or litigation between You and Netlist concerning the Asserted Patents in a United States District Court, before the ITC Commission, or the United State Patent and Trademark Office, including but not limited to, *Netlist, Inc. v. SK hynix America Inc. et al.*, No. 6:20-cv-00525 (W.D. Tex. May 10, 2021), *Netlist, Inc. v. SK hynix Inc. et al.*, No. 6:20-cv-00194 (W.D. Tex. Mar. 17, 2020), and *SK hynix Inc. et al v. Netlist, Inc.* PTAB-IPR2020-01421 (PTAB Aug. 21, 2020).

14.     "Request(s)" means the Categories of Documents to be Produced below in this Attachment.

15.     "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, process, method, or assemblage of components or parts (either individually or collectively) which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

16.     "JEDEC" means Joint Electron Device Engineering Council.

17.     "DDR5" means Double Data Rate 5, referring to the fifth generation of a type of computer memory called Synchronous Dynamic Random-Access Memory ("SDRAM").

18.     "DIMM(s)" means Dual In-Line Memory Modules, including but not limited to, MRDIMMs, RDIMMs, UDIMMs, and SODIMMs.

19.     "MRDIMM(s)" means Multiplexed Rank Dual In-Line Memory Modules, Multi-Ranked Buffered Dual In-Line Memory Modules, and Multiplexer Combined Ranks Dual In-Line Memory Modules.

20.     "RDIMM(s)" means Registered Dual In-Line Memory Modules.

21.     "HBM(s)" means High Bandwidth Memory, including HBM2, HBM2E, HMB3, HBM3E, HMB4 and HBM4E.

22.     "Component(s)" means parts that are assembled into a DDR5 MRDIMM, DDR5 RDIMM, or HBM product, including but not limited to, power management integrated circuits (PMIC), registering clock driver (RCD) chips, multiplexed registering clock driver (MRCD) chips, DRAM chips, DRAM dies, interface dies, logic dies, buffer dies, control dies, data buffers (DB),

multiplexed rank data buffers (MDB), temperature sensors, printed circuit boards, and serial presence detect (SPD) circuits.

23.    "TSV" means Through-Silicon Via.

24.    "Specification(s)" means a document outlining the requirements, design, functionality, and architecture for a product, including logic diagrams, state diagrams, block diagrams, timing diagrams, chip layouts, mask layouts, interposer layout, board layout files, chip layout files, CAD files, schematics, circuit diagrams, interconnection diagrams, pinout diagrams, ballout diagrams, and input/output signal descriptions.

25.    "Bill(s) of Material" means a list of all raw materials, parts, sub-assemblies, and quantities needed to manufacture a finished product.

26.    "Cost Sheet(s)" means any document that identifies costs incurred by SK hynix related to labor, facility, and equipment.

27.    "Income Statement(s)" means any document that indicates SK hynix's revenue and expenses for a product.

28.    "Production Capacity Report(s)" means any document that indicates SK hynix's ability to increase production of a product.

29.    "Product Brochure(s)" means SK hynix's marketing materials, either printed or digital, detailing the product.

30.    "Manufacturing Record(s)" means any document that indicates the quantity of a product manufactured by SK hynix over a period of time.

31.    "Sales Record(s)" means any document that indicates the quantity of sales, by or for SK hynix, over a period of time for a given product output.

32.    "Written Submissions" means any filings that were submitted to the authoritative body or served on an opposing party to the litigation.

33.    "Document(s)" is defined broadly to be given the full scope of that term contemplated in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and includes all non-identical copies of a document, all drafts of final documents, all other written, typed, printed, recorded, or graphically portrayed matter in any form or embodiment, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Your actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Federal Rule of Evidence 1001. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

34.    "Thing" or "Things" has the broadest meaning allowable under 19 C.F.R. § 210.30 and Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible object of any kind and nature, including, without limitation, prototypes, models, and physical specimens thereof.

35.    "Entity" or "Entities" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

36.    "Person" or "Persons" means any natural individual or individuals.

## INSTRUCTIONS

The following instructions shall apply to these Requests:

1.      The singular form of each word shall be interpreted in the plural as well.

2.      Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as is most appropriate in each case.

3.      The words "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each Request in which they are used.

4.      The words "any" and "all" shall be construed to mean "any and all."

5.      The words "each" and "every" shall be construed to mean "each and every."

6.      The word "including" and every variant thereof shall be construed to mean "including, without limitation."

7.      Any term not specifically defined herein shall be defined in accordance with the Commission Rules of Practice and Procedure ("Commission Rules") and the Administrative Law Judge's Ground Rules ("Ground Rules"), as well as the Federal Rules of Civil Procedure, to the extent not in conflict with the Commission Rules or Ground Rules.

8.      If You find the meaning of any term in the Requests unclear, then You shall construe the term so as to render responsive any information, Document, or Thing that might otherwise be rendered non-responsive.  Explain in detail the nature of any disagreement with the definition, or lack of understanding of the term, and provide your definition of the term.

9.      The Requests seek all responsive information, Documents, and Things that are known or available to You or within Your actual or legal possession, custody, or control, including all responsive information, Documents, and Things known or available to SK hynix.  These discovery requests seek information, Documents, and Things as of the date hereof and to the full

extent allowed by the Commission Rules, including all responsive information, Documents, and Things acquired or identified by You up to and including the close of fact discovery in this Investigation.

10.     These Requests shall include information acquired or identified up to the date that You respond to them and shall be deemed to be continuing. Therefore, You shall promptly produce, as supplemental responses to these Requests in accordance with 19 C.F.R. § 210.27(f), any additional information that You identify, acquire, or become aware of up to and including the time of hearing.

11.     If possible, and unless otherwise specified, supply all financial data requested on a calendar year basis. If fiscal year data is provided, please specify the dates on which the fiscal year begins and ends.

12.     In response to Respondents' Requests, You shall provide written responses in addition to producing all requested Documents and Things.

13.     When You are requested to produce "a report," you may either provide a native chart in Excel or another common commercial format containing data extracted from databases maintained by SK hynix or its service providers organized into the fields requested, or produce or allow inspection and copying of the entire database(s) containing the requested data.

14.     If You object to any part of any Request and refuse to answer it, then You shall state Your complete objection and all bases thereof, and also shall provide a complete answer to the remaining portion of that Request.

15.     For any information, Document, or Thing responsive to the Requests that You withhold on the ground that it is embodied in a Communication or Document protected by the attorney-client privilege, work product immunity, or any other claim of privilege or immunity,

You shall provide a written statement setting forth, as to each such Document, Thing, or piece of information, at a minimum the following items: (a) an identification (including date, title, author, and number of pages) of each Communication or Document embodying the allegedly protected information; (b) an identification (including name, position, address, and employer at the time of preparation or dissemination) of each Person from and to whom the information has been communicated (e.g., individuals who authored, drafted, or prepared a Document and individuals to whom it was directed, circulated, or copied, or who had access thereto); (c) an identification of the type of Communication or Document (e.g., letter, memorandum, contract); (d) a brief description of the subject matter of the information; (e) summary of the legal and factual ground(s) upon which You rely in withholding the responsive information, Document, or Thing, providing sufficient detail to enable the Commission to make a determination on Your claim of privilege or immunity; and (f) a certification that all elements of the claimed privilege or immunity are met and have not been waived.  If any of the individuals named in response to item (b) is an attorney or foreign patent agent, then You shall identify him or her as such.

16.    For any Document, Thing, or information responsive to the Requests that is not in Your possession, custody, or control, You shall provide the following information in its response to each such request: (a) an identification of the Document, Thing, or information, including date, title, author, and number of pages; (b) a brief description of its nature (e.g., letter, memorandum, chart, prototype) and subject matter; and (c) an identification of the Persons or Entities who have possession, custody, or control of it.  If such Document, Thing, or information previously was but no longer is in Your possession, custody, or control, then You additionally shall provide the following information in its response to each such request: (a) an identification of all Persons who received copies of the Document, Thing, or information; (b) a statement of what disposition was

made of it; (c) a statement of the reasons for such disposition; (d) an identification of all Persons or Entities having any knowledge of such disposition; and (e) an identification of the Persons or Entities responsible for such disposition.

17.     For any Document, Thing, or information responsive to the Requests that has been destroyed or is alleged to have been destroyed, You shall provide the following information in its response(s) to each such request: (a) an identification of the Document, Thing, or information, including date, title, author, and number of pages; (b) a brief description of its nature (e.g., letter, memorandum, chart, prototype) and subject matter; (c) an identification of all Persons who received copies of it; (d) a statement of the reasons for and circumstances of its destruction; (e) an identification of each Person having any knowledge of its destruction; and (f) an identification of the Person(s) responsible for its destruction.

18.     If the answer to any Request is "none," if no Documents are responsive to a particular discovery request, or if a section of a Request for Production or other discovery request is not applicable to SK hynix's business, then You shall so indicate in its response.

19.     If, after exercising due diligence to make inquiries and secure necessary information, You cannot answer a Request fully and completely, then You shall so state. Additionally, You shall provide the following information in its response to each such Request: (a) an answer to the Request to the fullest extent possible; (b) a statement specifying the portion of the Request that You claim You are unable to answer fully and completely; (c) a statement of the facts upon which You rely to support its contention that it is unable to answer fully and completely; and (d) a statement specifying what knowledge, information, and beliefs You have Concerning the unanswered portion of the Request.

20.    If Your response to any Request is qualified in any respect, then You shall set forth the details of, and reasons for, each such qualification.

21.    You shall produce all Documents and Things in the same file or other organizational environment in which they are maintained in the ordinary course of business.  For example, a Document that is part of a file, docket, or other grouping shall be produced together with all other Documents from said file, docket, or grouping, in the same order or manner of arrangement as the original.  Alternatively, You shall produce all Documents and Things in labeled groups that correspond to the Requests to which they are responsive.  *See* 19 C.F.R. § 210.30(b)(2). To the extent documents, including but not limited to design, accounting, financial and sales data, are maintained in both hard copy and some other form, including but not limited to computer, electronic, magnetic and optical media of all kinds, provide both forms.

22.    To the extent that You produce any software or Source Code, such software or Source Code shall be accompanied by all related Documentation, comments, or other explanatory materials and produced in the native format in which such code and accompanying materials are kept in the ordinary course of Your business.

23.    When any original, draft, copy, or reproduction of any Document responsive to Respondents' Requests is or has been revised to include, exclude, or alter any portion, addendum, notation, alteration, emendation, change, or amendment, You shall produce each such original draft, copy, or reproduction as well as all subsequent versions and revisions.

24.    You shall produce all Documents in their entirety, including attachments, enclosures, cover letters, memoranda, and appendices, without abbreviation or redaction.  Any comment or notation appearing on any Document and not part of the original text shall be considered a separate Document.

25.    When a responsive Document is in a language other than English, You shall produce the Document in its original language and additionally produce all partial or complete English translations of the Document, or, if no such translation exists, all Documents written in English Concerning the responsive Document.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

The Documents SK hynix produced to Netlist in response to Netlist's Requests for Production issued as part of Netlist's Letter of Request.

### REQUEST NO. 2

The written responses to SK hynix provided to Netlist in response to Netlist's Requests for Information issued as part of Netlist's Letter of Request.

### REQUEST NO. 3

A transcript, video recording, or any other record of the responses given by witnesses representing SK hynix in response to Netlist's Letter of Request for Witness Testimony.

### REQUEST NO. 4

For DDR5 MRDIMMs that are or have been produced by or for SK hynix since January 1, 2021, Specifications that detail the design, function, operation, and Components of the DDR5 MRDIMMs.

### REQUEST NO. 5

For DDR5 RDIMMs that have been produced by or for SK hynix since January 1, 2021, Specifications that detail the design, function, and operation of the DDR5 RDIMMs and Components therein.

### REQUEST NO. 6

For HBMs produced by or for SK hynix since January 1, 2021, Specifications that detail the design, function, and operation of the HBMs and Components therein.

### REQUEST NO. 7

For HBM1, Specifications that detail the design, structure, function, and operation of the HBM1 and Components therein.

**REQUEST NO. 8**

For HBMs produced by or for SK hynix since January 1, 2021, TSV cross-sectional views and TSV 3D views of the HBMs.

**REQUEST NO. 9**

For DDR5 MRDIMMs that have been produced by or for SK hynix since January 1, 2021, Specifications that show the Component interconnections in the DDR5 MRDIMMs.

**REQUEST NO. 10**

For DDR5 RDIMMs that have been produced by or for SK hynix since January 1, 2021, Specifications that show the Component interconnections in the DDR5 RDIMMs.

**REQUEST NO. 11**

For HBMs that have been produced by or for SK hynix since January 1, 2021, Specifications that show the Component interconnections in the HBMs.

**REQUEST NO. 12**

For HBM1, Specifications that identify and corroborate the date of conception, the date of reduction to practice, the earliest offer(s) for sale, the earliest sale(s), and earliest public display(s) of HBM1.

**REQUEST NO. 13**

Documents sufficient to describe the structure and operation of any DDR DIMMs or HBMs that constitute Prior Art to the Asserted Patents and that were designed or sold prior to the filing date of any Asserted Patent, as well as two (2) physical samples of each such Prior Art product or physical item.

**REQUEST NO. 14**

For DDR5 MRDIMM, presentations or proposals You prepared, distributed, or displayed at JEDEC meetings, conferences, exhibitions, seminars, or conventions.

14

**REQUEST NO. 15**

For DDR5 RDIMM, presentations or proposals You prepared, distributed, or displayed at JEDEC meetings, conferences, exhibitions, seminars, or conventions.

**REQUEST NO. 16**

For HBMs, the presentations or proposals You prepared, distributed, or displayed at JEDEC meetings, conferences, exhibitions, seminars, or conventions.

**REQUEST NO. 17**

Product Brochures for DDR5 MRDIMMs distributed by SK hynix since January 1, 2021, identifying prices for sale or demonstrating the DDR5 MRDIMMs' operation.

**REQUEST NO. 18**

Product Brochures for DDR5 RDIMMs distributed by SK hynix since January 1, 2021, identifying prices for sale or demonstrating the DDR5 RDIMMs' operation.

**REQUEST NO. 19**

Product Brochures for HBMs distributed by SK hynix since January 1, 2021, identifying prices for sale or demonstrating the HBMs' operation.

**REQUEST NO. 20**

Product Brochures for HBM1 distributed by SK hynix identifying prices for sale or demonstrating the operation of HBM1.

**REQUEST NO. 21**

Manufacturing Records that identify the total volume of DDR5 MRDIMMs manufactured since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 22**

15

Manufacturing Records that identify the total volume of DDR5 RDIMMs manufactured since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 23**

Manufacturing Records that identify the total volume of HBMs manufactured since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 24**

Sales Records that identify the total sales volume of DDR5 MRDIMMs in terms of units sold since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 25**

Sales Records that identify the total sales volume of DDR5 RDIMMs in terms of units sold since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 26**

Sales Records that identify the total sales volume of HBMs in terms of units sold since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 27**

Income Statements that identify revenue and expenses for DDR5 MRDIMMs incurred since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 28**

Income Statements that identify revenue and expenses for DDR5 RDIMMs incurred since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 29**

Income Statements that identify revenue and expenses for HBMs incurred since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 30**

Written Submissions in Prior Litigation involving the '523 Patent.

**REQUEST NO. 31**

Documents sufficient to show Your production capacity and ability to increase production of DDR5 MRDIMMs.

**REQUEST NO. 32**

Documents sufficient to show Your production capacity and ability to increase production of DDR5 RDIMMs.

**REQUEST NO. 33**

Documents sufficient to show Your production capacity and ability to increase production of HBMs.

**REQUEST NO. 34**

Documents sufficient to show that SK hynix has sold out of its HBM products since 2023 and whether supply is expected to remain tight relative to demand through 2027, including documents sufficient to verify or refute the statements attributed to an SK hynix executive in the article available at https://www.cnbc.com/2025/10/29/sk-hynix-q3-profit-revenue-record-.html and to identify that executive.

**REQUEST NO. 35**

Documents sufficient to explain widely acknowledged memory supply shortages that are predicted to last through at least 2028.

**REQUEST NO. 36**

Documents sufficient to show the supply, demand, market conditions, and competitive conditions for DDR5 DIMMs from January 1, 2025 through January 1, 2028, including competitive analyses, sales or market forecasts, supply chain analyses, and manufacturing capacity analyses.

**REQUEST NO. 37**

Documents sufficient to show the supply, demand, market conditions, and competitive conditions for HBMs from January 1, 2025 through January 1, 2028, including competitive analyses, sales or market forecasts, supply chain analyses, and manufacturing capacity analyses.

**REQUEST NO. 38**

Documents sufficient to explain plans, decisions, or analyses relating to the construction or expansion of new memory packaging facilities.

**REQUEST NO. 39**

Documents sufficient to show Your projections of global DDR5 DIMM demand relative to global DDR5 DIMM supply through at least 2028.

**REQUEST NO. 40**

Documents sufficient to show Your projections of demand for DDR5 DIMM in the United States relative to the supply of DDR5 DIMM in the United States through at least 2028.

**REQUEST NO. 41**

Documents sufficient to show Your projections of global HBM demand relative to global HBM supply through at least 2028.

**REQUEST NO. 42**

Documents sufficient to show Your projections of demand for HBM in the United States relative to the supply of HBM in the United States through at least 2028.

**REQUEST NO. 43**

Documents sufficient to show Your projections of pricing for DDR5 DIMMs and HBM from January 1, 2025 to January 1, 2028.

**REQUEST NO. 44**

Agreements between You and Netlist Inc. regarding this Investigation or any of the Asserted Patents.

**REQUEST NO. 45**

Agreements between SK hynix America regarding this Investigation or any of the Asserted Patents.

**REQUEST NO. 46**

One representative physical sample of the DDR5 MRDIMMs produced by or for SK hynix since January 1, 2021.

**REQUEST NO. 47**

One representative physical sample of the DDR5 RDIMMs produced by or for SK hynix since January 1, 2021.

**REQUEST NO. 48**

One representative physical sample of the HBMs produced by or for SK hynix since January 1, 2021.

# Attachment B

**UNITED STATES INTERNATIONAL TRADE COMMISSION**

**Washington, D.C.**

| | |
|---|---|
| **In the Matter of:**<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1472** |

**ORDER NO. 1:**          **PROTECTIVE ORDER**

(December 31, 2025)

Attached hereto are a Protective Order and an Administrative Order.

**SO ORDERED**.

MaryJoan McNamara
Administrative Law Judge

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of:

**CERTAIN DYNAMIC RANDOM
ACCESS MEMORY (DRAM) DEVICES,
PRODUCTS CONTAINING THE SAME,
AND COMPONENTS THEREOF**

**Inv. No. 337-TA-1472**

## PROTECTIVE ORDER

**Part of this Protective Order** is Administrative Order: 16-01, attached. All parties should read it carefully. The language of Paragraph 3(vi) augments and clarifies the purposes for which confidential information may be used. All Parties must now include the acknowledgement language in Paragraph 4(i) and 4(ii) in any letter submitted to the Commission that constitutes the agreement to be bound by a Protective Order.

**WHEREAS** documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5.

**IT IS HEREBY ORDERED THAT**:

1.    Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary

to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.  The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).   Any information submitted, in prehearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend: "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

2(b).   The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.    In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this investigation, including

necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.      Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission: (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.      If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6(a).   Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any confidential business information submitted in accordance with paragraph 2 above is included

in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof. Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

6(b). Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order. *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.    The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge.  When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.  During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.    Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative

Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.    If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.    No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior

to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.    If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.    Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.    Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business

information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.    If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.    Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.    The Secretary shall serve a copy of this order upon all parties.

**SO ORDERED**.

MaryJoan McNamara
Administrative Law Judge

# Attachment A

### NONDISCLOSURE AGREEMENT FOR
### REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____,* Investigation No. 337-TA-___, except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed_____

Dated_____

Firm or affiliation _____



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b. The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c. The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

      i.      in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and

     ii.      in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d. In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

*Meredith M. Broadbent*

_____

Meredith M. Broadbent

CERTAIN DYNAMIC RANDOM ACCESS MEMORY                    **Inv. No. 337-TA-1472**
(DRAM) DEVICES, PRODUCTS CONTAINING THE SAME,
AND COMPONENTS THEREOF

<u>PUBLIC CERTIFICATE OF SERVICE</u>

    I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served via EDIS upon the Commission Investigative Attorney, **Thomas Halkowski**, **Esq.** and the following parties as indicated, on **December 31, 2025**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

<u>**On Behalf of Complainant Netflist, Inc.:**</u>

Daniel E. Yonan                                         ☐ Via Hand Delivery
**STERNE, KESSLER, GOLDSTEIN, & FOX PLLC**              ☐ Via Express Delivery
1001 K Street NW, 10th Floor                            ☐ Via First Class Mail
Washington, DC 20005                                    ☒ Other: Email Notification
Email: dyonan@sternekessler.com                         of Availability for Download

<u>**Respondents:**</u>

Samsung Electronics Co., Ltd.                           ☐ Via Hand Delivery
129 Samsung-ro, Yeongtong-gu,                           ☐ Via Express Delivery
Suwon, Gyeonggi-do, 443-742                             ☒ Via First Class Mail
Republic of Korea                                       ☐ Other: Service to Be
                                                        Completed by Complainant

Samsung Electronics America, Inc.                       ☐ Via Hand Delivery
6625 Excellence Way                                     ☐ Via Express Delivery
 Plano, Texas 75023                                     ☒ Via First Class Mail
                                                        ☐ Other: Service to Be
                                                        Completed by Complainant

Samsung Semiconductor, Inc.                             ☐ Via Hand Delivery
6625 Excellence Way                                     ☐ Via Express Delivery
 Plano, Texas 75023                                     ☒ Via First Class Mail
                                                        ☐ Other: Service to Be
                                                        Completed by Complainant

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY**          **Inv. No. 337-TA-1472**
**(DRAM) DEVICES, PRODUCTS CONTAINING THE**
**SAME, AND COMPONENTS THEREOF**

Certificate of Service – Page 2

Google LLC                                        ☐ Via Hand Delivery
1600 Amphitheatre Parkway                         ☐ Via Express Delivery
Mountain View, California 94043                    ☒ Via First Class Mail
                                                   ☐ Other: Service to Be
                                                   Completed by Complainant

Super Micro Computer, Inc.                         ☐ Via Hand Delivery
980 Rock Ave.                                      ☐ Via Express Delivery
San Jose, California 95131                         ☒ Via First Class Mail
                                                   ☐ Other: Service to Be
                                                   Completed by Complainant

# Attachment C

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1472** |

**ORDER NO. 2:          NOTICE OF GROUND RULES**

(December 31, 2025)

The conduct of this Investigation shall be governed by the Commission Rules and the

Ground Rules attached hereto as Attachment A.

**SO ORDERED.**

MaryJoan McNamara
Administrative Law Judge

**ATTACHMENT A**

**ALJ MARYJOAN MCNAMARA'S GROUND RULES**
**FOR SECTION 337 INVESTIGATION, 337-TA-1472 (12/31/2025)**

These Ground Rules supplement the Commission's Rules of Practice and Procedure, 19 C.F.R. Parts 201 and 210 ("Commission Rules"), in order to aid the Administrative Law Judge in the orderly conduct of this Section 337 Investigation.

These Ground Rules govern a U.S. patent-based investigation.  In the case of an investigation based upon a registered copyright, registered trademark, or registered mask work, additional Ground Rules may also govern.  In addition, in a case involving a motion for temporary relief, Ground Rules in addition to Ground Rule 1.8 may also govern.

Except as specified in Ground Rule 7, Chambers no longer accepts paper copies of documents, flash drives or CD Roms unless otherwise notified.  *See* Ground Rule 1.3.1.

Courtesy copies of documents that are filed on EDIS should be submitted to Chambers through McNamara337@usitc.gov.  *See* Ground Rule 1.3.2.

Applications for subpoenas must be submitted in Microsoft Word to McNamara337@usitc.gov.  Subpoena applications submitted to McNamara337@usitc.gov must comply with the substantive requirements of Ground Rule 3.5.

Courtesy copies of Expert Reports and Expert Rebuttal Reports must be submitted to McNamara337@usitc.gov.  There has been a problem with the manner in which parties have failed to ensure that appropriate sections or paragraphs of expert reports are admitted into evidence post-hearing.  The same is true of deposition transcript passages.  This may be an issue for discussion during one of the Management Conferences.

Management conferences are likely to be held on WEBEX.  We anticipate that the evidentiary hearing ("Hearing") will be in person in one of the USITC's courtrooms.

# TABLE OF CONTENTS

1.      General Procedures and Information.................................................................. 1
1.1.    Address of Administrative Law Judge. ........................................................... 1
1.2.    Filing Requirement.......................................................................................... 1
1.3.    Service Copy Requirement.............................................................................. 1
1.3.1.  Paper Copies.................................................................................................... 1
1.3.2.  Electronic Copies. .......................................................................................... 2
1.4.    Submission by Fax Disfavored........................................................................ 2
1.5.    Concurrent Service. ........................................................................................ 2
1.6.    Confidential Submissions................................................................................ 2
1.7.    Unreported Court Decisions. .......................................................................... 3
1.8.    Temporary Relief. .......................................................................................... 3
1.9.    Deadlines and Extensions............................................................................... 4
1.11.   Electronic Filing (EDIS) ................................................................................ 5
1.12.   Computation of Time. .................................................................................... 6
1.13.   Procedural Schedule. ...................................................................................... 6
1.14.   Early Claim Construction ............................................................................... 9
1.14.1.  *Markman* Briefing. ....................................................................................... 11
1.14.2.  *Markman* Pre-Hearing Statement. .............................................................. 12
1.14.3.  *Markman* Hearing Evidence. ...................................................................... 12
1.14.3.1. Exchange of Proposed Exhibits. .................................................................. 12
1.14.3.2. Filing on EDIS and Service of Proposed Exhibits upon Administrative Law Judge... 13
1.14.3.3. Format and Submission of Admitted Exhibits. ............................................ 13
1.14.4.  *Markman* Hearing....................................................................................... 14
1.14.4.1. Opening Statement and Closing Argument.................................................. 14
1.14.4.2. *Markman* Hearing Hours. ........................................................................... 14
1.14.4.3. Admission of Exhibits. ................................................................................. 14
1.14.4.4. Transcript..................................................................................................... 14
1.15.   Stipulations.................................................................................................... 14
1.16.   Protective Orders and Patent Prosecution Bars. ........................................... 15
2.      Motions.......................................................................................................... 16
2.1.    Contents......................................................................................................... 16
2.2.    Certification................................................................................................... 17
2.3.    High Priority Objections, Motions *in Limine* and Motions to Strike. ......................... 18
2.4.    Summary Determination Motions. ................................................................ 18
2.5.    Discovery and Discovery-Related Motions. .................................................. 19
2.5.1.  Contents......................................................................................................... 20
2.6.    Request for Shortened Time to Respond to Motion....................................... 20
2.7.    No Motion Stops Discovery Except Motion to Quash Subpoena. ................. 20
2.8.    Motion Deadlines in the Procedural Schedule. ............................................. 21
3.3.    Service of Discovery Requests and Responses. ............................................ 23
3.5.    Subpoenas...................................................................................................... 24
3.5.1.  Issuance and Service. .................................................................................... 24
3.5.2.  Extensions and Enforcement. ....................................................................... 25

i

3.6.       Bates Numbering. ................................................................................................... 25
3.7.       Translations. ............................................................................................................ 26
3.8.       Privileged Matter. .................................................................................................... 26
4.         Notice of Patent Priority Dates and Notice of Prior Art. ........................................ 26
4.1.       Patent Priority Dates. ............................................................................................... 26
4.2.       Prior Art. .................................................................................................................. 26
5.         Expert Witnesses and Reports. ................................................................................ 27
6.         Settlement; Settlement Reports. .............................................................................. 27
7.         Pre-Hearing Submissions. ....................................................................................... 28
7.1.       Pre-Hearing Statement. ........................................................................................... 28
7.2.       Pre-Hearing Brief. ................................................................................................... 30
7.2.1.     Content of Pre-Hearing Brief ................................................................................. 31
7.3.       Joint Outline of Issues in Chart Form. .................................................................... 31
8.         Hearing Exhibits. ..................................................................................................... 32
8.1.       Material to Be Received Into Evidence. .................................................................. 32
8.2.       Legal Experts. .......................................................................................................... 32
8.3.       Witness Sequestration. ............................................................................................ 32
8.4.       Witness Testimony. .................................................................................................. 32
8.4.1.     Witness Statements in Lieu of Direct Testimony (RARE). ..................................... 33
8.4.2.     Format of Witness Statements (RARE). ................................................................... 33
8.5.       Expert Reports. ........................................................................................................ 34
8.6.       Foreign Language Exhibits. ..................................................................................... 34
8.7.       Exhibits. ................................................................................................................... 35
8.7.1.     Exchange of Proposed Exhibits. .............................................................................. 35
8.7.2.     Service of Proposed Exhibits upon Administrative Law Judge. .............................. 35
8.7.3.     Maintenance and Filing of Final Exhibits and Final Exhibit List. ........................... 35
8.7.4.     Numbering and Labeling of Exhibits; Confidential Exhibits. ................................... 37
8.7.4.1.   Documentary Exhibits. ............................................................................................ 37
8.7.4.2.   Physical Exhibits. .................................................................................................... 38
8.7.4.3.   Demonstrative Exhibits. .......................................................................................... 38
8.7.4.4.   Joint Exhibits. .......................................................................................................... 38
8.7.5.     Exhibit Lists. ............................................................................................................ 38
8.7.6.     Witness Exhibits. ..................................................................................................... 39
8.7.7.     Authenticity. ............................................................................................................ 39
8.7.8.     Sponsoring Witness. ................................................................................................ 39
8.8.       Filing of Exhibits. .................................................................................................... 40
9.         Hearing Procedure. .................................................................................................. 40
9.1.       Order of Examination. ............................................................................................. 40
9.2.       Opening Statement and Closing Argument. ............................................................ 41
9.3.       Hearing Hours. ......................................................................................................... 41
9.4.       Hearing Decorum. .................................................................................................... 41
9.4.1.     Conversations at Hearing. ........................................................................................ 41
9.4.2.     Cell Phones and Beepers; Food and Beverages. ...................................................... 41
9.4.3.     Swearing of Witnesses. ............................................................................................ 41
9.4.4.     Arguments on Objection. ......................................................................................... 41

9.5.      Examination of Witnesses. ................................................................... 42
9.5.1.    Scope of Examination. ........................................................................ 42
9.5.2.    Scope of Cross-Examination. .............................................................. 42
9.5.3.    Scope of Redirect and Re-Cross Examination. ................................... 42
9.5.4.    Coordination of Witnesses. ................................................................. 42
9.5.5.    Documents Presented to Witnesses. .................................................... 42
9.5.6.    Scope of Expert Witness Testimony. ................................................... 42
9.5.7.    Coordination of Respondents' Cross-Examination. ............................. 43
9.5.8.    Requests for Clarification of a Question. ............................................ 43
9.5.9.    Use of Translators. ............................................................................. 43
9.5.10.   Conferring with a Witness during a Break in Testimony........................ 43
9.6.      Transcript. .......................................................................................... 43
9.7.      Bench Briefs. ....................................................................................... 43
9.8.      Objections to Evidence/Testimony and Motions to Strike...................... 43
10.       Post-Hearing Submissions. .................................................................. 44
10.1.     Initial Post-Hearing Briefs. ................................................................. 44
10.2.     Post-Hearing Reply Briefs. .................................................................. 46
10.3.     Proposed Findings of Fact .................................................................. 46
11.       NEXT Advocates Program. .................................................................. 46
12.       Citations. ............................................................................................ 47
12.1.     Citations Generally. ............................................................................ 47
12.2.     Citation to Cases. ................................................................................ 47
13.       Cooperation among Parties. ................................................................ 48
14.       *Ex Parte* Contacts. ............................................................................. 48
15.       Mediation. ........................................................................................... 48
Appendix A.
Appendix B.

## JUDGE MCNAMARA'S GROUND RULES (12/31/2025)

**1.**            **General Procedures and Information.**

**1.1.**            **Address of Administrative Law Judge.**

The Administrative Law Judge's address is as follows:

The Honorable MaryJoan McNamara
U.S. International Trade Commission
500 E Street, S.W., Room 317
Washington, D.C.  20436

**1.2.**            **Filing Requirement.**

All submissions shall be filed with the Office of the Secretary of the Commission in accordance with Commission Rule 210.4(f) unless otherwise specifically provided for in these Ground Rules or by order of the Administrative Law Judge.  *See* the United States International Trade Commission Handbook on Filing Procedures www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf[1] for further details. The parties should be aware that the close of business for the agency is 5:15 pm.  *See* Commission Rule 201.3(c).

All documents filed on EDIS must contain in the footer of each page the name of the party that filed the document along with the title of the document.

**1.3.**            **Service Copy Requirement.**

**1.3.1.**            **Paper Copies.**

Copies of the papers filed with the Secretary shall be served concurrently on all other parties, including the Commission Investigative Staff (if named as a party).  Also, two (2) double-sided courtesy paper copies shall be served on the Administrative Law Judge ("ALJ"), addressed to her, at her office, through McNamara337@usitc.gov, by the next business day[2] after the papers are electronically filed with the Secretary.  *See* Ground Rule 7 regarding courtesy copies of pre-hearing statements, pre- and post-hearing briefs, and motions *in limine*. See G.R. 1.3.1.1. Note: paper copies should not be sent.

**1.3.1.1.**            **Copies To ALJ.**

An electronic courtesy copy of each filing, excluding exhibits, should be sent to McNamara337@usitc.gov.  *See* G.R. 1.3.2 below.

---

[1] *See also* https://www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf

### 1.3.2.        Electronic Copies.

While the Investigation is pending before the Administrative Law Judge, any party submitting a motion or any response to a motion electronically through EDIS, as well as any other document submitted in this Investigation electronically through EDIS, shall on the same business day as the electronic filing, send one: (1) courtesy electronic copy of said document in Microsoft Word or PDF format (preferred), to McNamara337@usitc.gov.  In particular, *submissions in chart form*, such as the Joint Claim Construction and Proposed Procedural Schedule, *must be provided in Microsoft Word*.

Copies sent via e-mail should include the number of this Investigation as the first item in the subject line and *must be followed by a very brief summary of the contents*.  For example, the subject line may[2] read: "Inv. No. 337-TA-####, Motion for Summary Determination."

### 1.4.        Submission by Fax Disfavored.

Submissions to the Administrative Law Judge by fax are not to be made without her prior approval.

### 1.5.        Concurrent Service.

The parties are encouraged to confer and stipulate in writing to acceptable forms and terms of service.  Service on opposing counsel may be made by hand, facsimile, e-mail, or overnight courier.  Any foreign respondent who is not represented by counsel may be served by first class mail.  A motion served by overnight courier must be received by the other parties no later than the close of business on the day after the day it was filed.

### 1.6.        Confidential Submissions.

Any document containing confidential business information ("CBI") shall be prominently marked on at least its first page with the legend "confidential business information," or equivalent wording.[3]  Documents filed with confidential attachments shall similarly contain a prominent marking on at least the first page of the document indicating that there are confidential attachments and at least the first page of each of the confidential attachments shall be marked pursuant to Commission Rules.  A party who mistakenly files a document without a confidential designation thereon shall immediately contact the Office of the Secretary and the Administrative Law Judge's Attorney Advisor.

If a motion or related document (e.g., response, reply, stipulation or exhibit) is filed as confidential because it purportedly contains CBI as defined in 19 C.F.R. § 201.6(a), the private parties must file a non-confidential, public version of the motion and related document within five (5) business days from the date of the purportedly confidential filing.  Each filed version of

---

[2] The investigation number followed by the word "service" is not adequate.

[3] *See* Commission Rules 210.6 and 210.34.  It is recommended that every confidential page be so marked.

the motion or related document must be labeled appropriately as either public or confidential (with the latter labeled as containing CBI consistent with past practices).

When redacting CBI, a high level of care must be exercised in order to ensure that non-confidential business information is not redacted or indicated.  The document labeled confidential should contain brackets and highlighting, in accordance with Ground Rule 1.10, of only that material/information that complies with 19 C.F.R. § 201.6(a).  Other than in extremely rare circumstances, block-redaction and block-bracketing are prohibited.  In most cases, redaction or bracketing of only discrete CBI words and phrases will be permitted.  Titles of documents shall not contain CBI.

All confidential motions and confidential responses to motions must be accompanied by declarations, grounded in facts, explaining how each proposed redaction is CBI.

Exhibits attached to the confidential motions and confidential responses to motions generally need not be bracketed, although CBI contained in an exhibit must be bracketed when quoted in a motion or response thereto. If an exhibit is a brief for which the moving party seeks leave to file, e.g., a reply brief attached as an exhibit to a motion for leave to reply, then that exhibit shall be bracketed.  If the main text of a confidential motion or response contains no redaction, the declaration shall explain why the filing is designated confidential (e.g., the motion contains no confidential text but has a confidential attachment).

The same day public version of confidential documents should have redacted the identical material/information bracketed and highlighted in the confidential version.

For those cases where the Office of Unfair Import Investigations ("OUII") is a party, OUII shall have ten (10) business days to submit a non-confidential version of the motion and/or related document.

## 1.7.          Unreported Court Decisions.

Any submission that refers to an unreported court decision shall include it as an exhibit the text of the decision.  Note however, unreported decisions may not be relied upon as precedent.

.

## 1.8.          Temporary Relief.

In any aspect of an Investigation which involves a pending motion for temporary relief, a party serving any paper, including any motion or discovery requests, must notify counsel for the other parties, including the Commission Investigative Staff Attorney ("Staff") if Staff is a party, by telephone on the day the paper is served about the substance of the paper, and must arrange for the other parties to receive the paper the next business day.

**1.9.**                    **Deadlines and Extensions.**

All due dates for any paper necessitate that the paper be received by the intended recipient no later than the close of business on the due date.  For this reason, electronic service on the other parties is encouraged.  *See* Commission Rule 201.16(f).

**1.9.1.**                    **Extension of Time**

To extend a deadline, the parties must file a motion seeking an extension of time and must set forth good cause for such an extension.  Such motions must be filed on EDIS <u>no later than **two (2) days** before</u> the due date.  The parties shall not file any joint stipulations extending a filing (unless an emergency), discovery or hearing deadline.  Leave should be requested by motions practice.

**1.9.2.**                    **Expedited Treatment**

Urgent matters should be brought to the attention of the Administrative Law Judge as follows. First, motions, responses, or other filings that are urgent or that should receive expedited treatment should be **clearly noted** in the document's caption.  Second, on the date of said filing, the Administrative Law Judge's Attorney Advisor must be notified by e-mail, with a copy to all parties that the matter is of pressing importance or urgency.  The parties should note, however, that the Administrative Law Judge has many ongoing investigations.  All pending matters will be addressed with as much dispatch as time and circumstances allow.  *See also* Ground Rule 2.6.  Any such documents should be copied to <u>McNamara337@usitc.gov</u>, with the e-mail caption noting the urgent nature of the request.

**1.9.3.**                    **Untimely Filings**

It is the responsibility of the other parties to promptly notify the Administrative Law Judge in writing if a party has filed or served a document after the deadline set in the procedural schedule or Commission Rules.

A party may correct an untimely filing or submission by promptly moving to have the document accepted out of time by the Administrative Law Judge and explain the good cause for late consideration.  *See* Commission Rule 201.3(c).  The two-day meet and confer requirement are waived for such motions, although movants should attempt to determine the other parties' position with respect to the motion.  If no prompt[4] motion is brought, the Administrative Law Judge may in her discretion order that an untimely filed or served[5] document be disregarded.

**1.10.**                    **Redaction Requirements for Public Versions of Orders and**

---

[4] The Administrative Law Judge suggests, but does not require, that this occur within two (2) business days of the late filing.

[5] The procedural schedule provides for certain documents to be submitted or served rather than filed on EDIS.  This rule shall apply equally to all due dates set forth in the procedural schedule, regardless of whether service or filing is required.

**Teleconference Transcripts.**

Orders issued by the Administrative Law Judge may contain the confidential business information of the parties (or in some cases nonparties), in which case the orders will be designated confidential.  The Administrative Law Judge has the discretion, pursuant to Commission Rule 210.5(e), to determine whether the information designated confidential by the supplier is entitled to confidential treatment in orders issued by the Administrative Law Judge.[6]

If the Administrative Law Judge issues a confidential order, i.e. that which contains Confidential Business Information ("CBI") the parties must jointly submit within fourteen (14) days of the order a <u>single</u> proposed public version of that order with any proposed redactions indicated in red.  If the parties submit excessive redactions, they may be required to provide declarations from individuals with personal knowledge, justifying each proposed redaction and specifically explaining why the information sought to be redacted meets the definition for confidential business information set forth in 19 C.F.R. § 201.6(a).

To the extent possible, the proposed redactions should be made electronically, in a single pdf file of the issued order or initial determination, using the "Redact Tool" within Adobe Acrobat, wherein the proposed redactions are submitted as "marked" but not yet "applied."  The proposed redactions should be visible, i.e., no fill color.  The Administrative Law Judge will issue the final public version of the order once all appropriate redactions are made.

The proposed redactions or statement of no redactions should be submitted via email to McNamara337@usitc.gov and not filed on EDIS.  If no proposed redactions or statement of no redactions is not received within fourteen (14) days of the order, the totality of the order may be made public consistent with Commission Rules.

The parties should note that it is the Administrative Law Judge's <u>firm</u> policy that the public has a right to know the substantive outcome of the Investigation.  Therefore, for any order resolving a matter of substance (such as a *Markman* order, grant of summary determination, or final initial determination), the parties must pay particular attention to their proposed redactions.  Only CBI should be redacted, even if this means redacting only a portion of a sentence.

## 1.11.        Electronic Filing (EDIS).

Commission Rule 210.4(f) governs the electronic filing of certain documents in Section 337 Investigations with the Office of the Secretary via the Commission's Electronic Document Information System (EDIS).  Filing through EDIS, however, does not remove the requirement that parties also submit an electronic copy of such filing with the office of the Administrative Law Judges to McNamara337@usitc.gov.

For additional information regarding EDIS, the parties may contact the EDIS Helpdesk

---

[6] This rule applies to any confidential filing, including initial determinations, issued by the Administrative Law Judge.

at (202) 205-3347, review the Docket Services webpage,[7] or access the EDIS 3 User Guide currently found at the following Internet address:

www.usitc.gov/sites/default/files/documents/edis3_10userguide-external_final_optimized.pdf

Electronic filing on EDIS is governed by the U.S.I.T.C. Handbook on Filing Procedures.

One of the instructions concerns current size limits of files.  The current size limit for each file submitted on EDIS is 25 MB, defined as follows:

The size of an electronic document as a whole is not limited by the capability of EDIS, but no single file attached to a document submission may exceed 25 megabytes in size. Documents which exceed the 25-megabyte size limit must be broken down into two or more individual files which are each less than the limit and attached as separate files to the document submission. EDIS allows for an unlimited number of PDF files to be attached to a document submission, which taken together comprise the full document; thus, there is no limit to the overall size of a filing. If a filing includes an attachment that exceeds the foregoing size limitation and cannot be broken down into multiple PDF files, the Secretary may authorize filing of the document in paper form or on electronic media approved by the Secretary, pursuant to section II(C) above. All page limits set forth in the rules and the Handbook shall remain in effect for purposes of electronic filing.

There are other EDIS filing requirements that should be consulted.

## 1.12.　　　　Computation of Time.

In addition to the requirements of Commission Rules 201.14, 201.16(d) and 210.6 for computation of time, if the last day of the period for making a submission falls on a day on which conditions have made EDIS inaccessible for electronic filing, then the cut off shall be extended to the end of the next business day.

The first day of the ten (10) calendar days for responding to a motion shall be the first business day following the date that said motion was filed on EDIS.  In addition to the requirements of Commission Rules 201.16 and 210.15(c) governing the period for a nonmoving party's response to a written motion, the date of service of a motion on a nonmoving party by electronic mail, personal delivery, express-type mail or courier service is the date of delivery. The additional times provided under Commission Rules 201.16(d) and (e) after service by non-electronic means do not apply in such instances, unless service to a nonmoving party is affected in a foreign country.

## 1.13.　　　　Procedural Schedule.

The Administrative Law Judge will establish a procedural schedule for this Investigation.  Modifications of the procedural schedule by any party shall ***be regulated by***

---

[7] *See* https://www.usitc.gov/sites/default/files/documents/edis3_10userguide-external_final_optimized.pdf

*written motion showing good cause. However, the parties should not expect to be able to modify the hearing dates absent exigent circumstances*. The event and deadline dates in the procedural schedule will generally adhere (but may vary) to the following chronological order:

| |
|---|
| **Deadline for proposed Procedural Schedule and Discovery Statement** |
| **Initial Case Management Conference (if needed)** |
| **Deadline for Propounding Interrogatories** |
| **File identification of expert witnesses, including their expertise and Curriculum Vitae** |
| **Complainant files notice of patent priority dates/dates of conception/reduction to practice** |
| **Respondent files notice of Prior Art** |
| **Complainant(s) and Respondent(s) provide Staff [8] with their proposed list of claim terms for construction** |
| **Exchange proposed Claim Constructions** |
| **File Joint Claim Construction Chart** |
| **Parties submit a joint list showing each party's proposed construction of the disputed claim terms with briefs by all parties with regard to their initial claim constructions** |
| **Parties meet and confer (including Staff, if applicable) in an attempt to reconcile or otherwise limit disputed claim terms** |
| **Deadline to file *Markman* hearing proposals** |
| **Deadline for Disclosure of Domestic Industry Products** |
| **Technology Stipulation deadline** |
| **Telephone Management Conference** |
| ***Markman* Hearing (if ordered)** |
| **Deadline for post-*Markman* Hearing claim construction** |
| **File tentative list of witnesses a party will call to testify at the hearing, with an identification of each witness' relationship to the party** |
| **Fact discovery cutoff and completion** |

---

[8] If Staff is not a party to the Investigation, the private parties should exchange their proposed constructions.

| |
|---|
| **Last day for filing motions to compel discovery** |
| **Attendance at one-day mediation session[9]** |
| **Submission of joint report on mediation** |
| **Exchange of initial expert reports (identify tests/surveys/data)** |
| **Exchange of rebuttal expert reports** |
| **File expert reports** |
| **File expert report rebuttals** |
| **Last day for filing summary determination motions** |
| **Expert discovery cutoff and completion** |
| **Submission of statements regarding the use of witness statements in lieu of live direct testimony, and statements regarding whether any party intends to offer expert reports into evidence** |
| **Exchange of exhibit lists among the parties** |
| **File Pre-hearing statements and briefs -- Complainant(s) and Respondent(s)** |
| **File Pre-hearing statement and brief -- Staff (if applicable)** |
| **File requests for receipt of evidence without a witness** |
| **Last day for filing motions *in limine*** |
| **File statement of high priority objections** |
| **File responses to statement of high priority objections** |
| **Submission of declarations justifying confidentiality of exhibits** |
| **Last day for filing responses to motions *in limine*** |
| **Tutorial on technology** |
| **Pre-hearing conference** |
| **Evidentiary Hearing** |

---

[9] For any questions regarding the mediation program, the parties should refer to the Revised Users' Manual for Commission Mediation Program, available at http://www.usitc.gov.

| File initial post-hearing briefs, proposed findings of fact and conclusions of law,[10] and final exhibit lists |
| Parties jointly submit electronic copy of combined exhibit lists |
| File reply post-hearing briefs, objections and rebuttals to proposed findings of fact and conclusions of law |
| Initial Determination on Violation Target Date |
| Target Date for completion of Investigation |

Where the procedural schedule indicates the "last day to file," the parties should note that motions are expected on a rolling basis when issues are ripe for determination.

This Procedural Schedule may change greatly depending upon complexity and the types, numbers and complexity of claims involved in the Investigation.

### 1.14.        Early Claim Construction

At the start of an Investigation involving patent litigation, the Administrative Law Judge may order early claim construction, or alternatively, may provide the parties with an opportunity to submit proposals requesting early claim construction. Regardless of whether an early claim construction hearing is ordered, the parties are expected to disclose and solidify their claim construction positions early in the Investigation. Thus, the procedural schedule includes dates for identifying patent claim terms that need construction, for exchanging initial proposed constructions, for meeting and conferring to attempt to resolve disputed claim language, and for identifying a final joint list of disputed claim terms and including each party's final proposed constructions.

At the time that the parties first exchange their initial proposed constructions, any party who fails to set forth a specific proposed construction or who relies on the plain and ordinary meaning of the patent language at issue (without elaboration) may not subsequently elaborate or rely on a different proposed construction absent advance approval from the Administrative Law Judge.[11] In other words, the private parties are expected to make a near-simultaneous show of their "hands." Regardless of what claim construction a party proposed initially, during the meet and confer period, a party may shift position in order to "join" in proposing the claim construction position set forth by another party and also may shift position in order to reach

---

[10] In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law. The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such.

[11] The Administrative Law Judge takes no position here as to the merits of proposing the plain and ordinary meaning (as understood by one of skill in the art) of a disputed term, which may be quite reasonable under the circumstances. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). What is of concern is when a party makes a tactical decision to shift to a new, detailed disclosure after seeing what the other side has to offer.

agreement with all parties in order to resolve a disputed claim term in whole or in part. The parties will be bound by their claim construction positions set forth on the date they are required to submit a joint list showing each party's final proposed construction of the disputed claim terms and will not be permitted to alter these absent a timely showing of good cause.

On the date set in the procedural schedule, the parties are to file a list of claim terms that each party contends should be construed, including any term to be given its plain and ordinary meaning. The parties shall thereafter meet and confer for the purpose of limiting the terms in dispute by narrowing or resolving differences and facilitating the ultimate preparation of a Joint Claim Construction Chart. The parties shall also jointly identify the 10 terms likely to be most significant to resolving the parties' disputes, including those terms for which construction may be case or claim dispositive. Parties will not be permitted to submit more than 14 terms for construction without leave of court.

If a *Markman* hearing in advance of the evidentiary hearing is ordered, the parties are required to confer and set a logical order for briefing the disputed claim terms of the asserted patents and then follow that pre-set order in all *Markman*-related submissions and filings. *See*, for example, the relevant portions of **Appendix B**. Expert reports related to early claim construction may be required to be filed on EDIS. The procedural schedule will state whether the reports should be filed or submitted.

The parties should also understand that, because of the tight schedule needed for expeditious proceedings, a *Markman* order may sometimes issue late in the Investigation, such as shortly before the hearing. The parties should not assume that a *Markman* order will issue before expert report deadlines or that there will be a seasonable opportunity to supplement expert reports after a claim construction ruling. *See* Ground Rule 5. Therefore, the parties are advised, but not required, to account for the proposed constructions of the other parties in their expert reports. When a *Markman* order issues, the Administrative Law Judge will explain whether expert report supplementation is permitted. This typically will only be an opportunity for limited expert report supplementation and only with respect to final claim constructions that substantively differ from those proposed by any party. These will only be permitted by Leave of Court.

The parties and Commission Investigative Staff shall meet and confer on disputed claim construction issues no later than ten (10) days before the *Markman* hearing in order to reduce the number of disputed claim terms to a minimum. Before the *Markman* hearing, Complainant(s), Respondent(s) (if there is more than one Respondent, they are required to file a joint brief), and Staff shall file with the Administrative Law Judge, by the date set forth in the procedural schedule, a short written statement of its interpretation of each of the remaining disputed claim terms together with its support for each interpretation as a matter of ordinary meaning, or as derived from the claims, specification, or prosecution history of the patent(s) at issue, or from extrinsic evidence. After the *Markman* hearing, the parties shall submit a joint chart, by the date set forth in the procedural schedule, setting forth their post-hearing constructions.

Absent a showing of good cause made at or before the *Markman* hearing, a subsequent *Markman* order will provide construction for only the parties' top 10 terms. After the

Administrative Law Judge issues an order construing the disputed claim terms for the purposes of the Investigation, discovery and briefing in the Investigation shall be limited to that claim construction.

### 1.14.1.    *Markman* Briefing.

Absent prior approval of the Administrative Law Judge, initial *Markman* briefs shall not exceed 150 pages. The parties should use their best efforts to attempt to resolve disputed claim language up to and throughout the *Markman* hearing and promptly notify the Administrative Law Judge in writing if any agreements are reached. The parties may be asked during a *Markman* hearing to make additional efforts to resolve their disputes. If so, the parties may be given a certain amount of time after the *Markman* hearing to report on their attempts to resolve disputes and to resubmit any resolved, previously disputed constructions. If the parties designate a large number of claim terms for construction, the Administrative Law Judge may set limits on the number of claim terms to be construed. If the parties designate a large number of claim terms for construction, this may delay the issuance of any *Markman* order.

If the parties have agreed to the construction of any claim terms, the Administrative Law Judge considers those terms to be "in controversy"[12] and expects the parties to include a section in their *Markman* briefs setting forth in detail their rationale and support for their agreed upon constructions so that the Administrative Law Judge may make an independent evaluation. *See Certain Reduced Ignition Proclivity Cigarette Wrappers and Products Containing Same,* Inv. No. 337-TA-756, Comm'n Op. at 43-44 (U.S.I.T.C., June 15, 2012).

Arguments that do not appear in the initial *Markman* briefs shall be deemed waived. As noted above, the parties will be bound by their final claim construction positions set forth on the date they are required to submit a joint list to the Administrative Law Judge, which may, in some circumstances, include post-*Markman* hearing constructions as described above.

If the parties have exhibits or attachments they wish to submit with their *Markman* briefing, these must correspond to the proposed exhibits that the parties intend to have entered into the record during the *Markman* hearing. Citations to these attachments in the briefing should correspond to the proposed exhibit numbers. This means the parties should meet and confer with respect to joint exhibits <u>prior to</u> the deadline for the initial *Markman* briefs. For example, if Complainants intend to attach a copy of a dictionary definition, Complainants should mark that attachment as a proposed (four-digit) exhibit (*e.g.*, CXM-0003) and refer to that attachment by the proposed exhibit designation in the briefing (*e.g.*, *see* proposed CXM-0003 at 14). The Administrative Law Judge may disregard any attachments to the *Markman* briefs that have not been admitted into the record during the *Markman* hearing.

The parties are expected to use extrinsic evidence only for the purposes set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) and *General Protecht Group, Inc. v. International Trade Comm'n*, 619 F.3d 1303, 1310-11 (Fed. Cir. 2010). "[A]n expert's subjective understanding of a patent term is irrelevant." *General Protecht*, 619 F.3d at 1310-11.

---

[12] *See Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011); *Vanderlande Indus. Nederland BV v. Int'l Trade Comm.*, 366 F.3d 1311, 1323 (Fed. Cir. 2004); *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc*., 200 F.3d 795, 803 (Fed. Cir. 1999).

The Administrative Law Judge may, in her discretion, strike or disregard improperly advanced extrinsic evidence.

Reply or responsive *Markman* briefs are generally disfavored. Such briefs are permitted only upon an order issued upon a showing of good cause. They are limited to 50 pages and must not repeat arguments presented in initial *Markman* briefs.

**1.14.2.        *Markman* Pre-Hearing Statement.**

This section applies to **all** Investigations, whether or not patents are involved. However, any party who intends to take part in the *Markman* hearing in this Investigation must file on or before the date set forth in the procedural schedule a brief statement containing the following information:

(a)  The names of all known speakers or witnesses, including an identification of whether the speaker is counsel, a fact witness, or an expert witness. If a party intends to use witnesses, the pre-hearing statement should include a very brief outline of the testimony of each witness.

(b)  A list, by title and number, of all exhibits which the parties will seek to introduce at the *Markman* hearing. The list shall include five columns. In the first four columns, the party shall include the number of the exhibit, a brief description and the title of the exhibit, the purpose for which it is being offered, and each sponsoring witness. The last column shall be labeled "Received" and need only include sufficient space for a date.

(c)  A list of any stipulations to which the parties have agreed. All stipulations should be filed on EDIS.

(d)  A proposed schedule/allocation of time for the *Markman* hearing, including the estimated length for the appearance of each speaker or witness. (The parties shall confer on estimated dates and approximate length prior to submission of their pre-hearing statements).

**1.14.3.        *Markman* Hearing Evidence.**

**1.14.3.1.        Exchange of Proposed Exhibits.**

As noted above, the parties should meet and confer in an effort to identify and number joint exhibits prior to submission of the *Markman* briefs. Copies of proposed exhibit lists shall be served on the opposing parties by no later than the date set forth in the procedural schedule. Once the parties have exchanged their proposed exhibit lists, they shall further eliminate any inadvertent duplicate exhibits or renumber such exhibits as joint exhibits and update their exhibit lists. Any exhibits that have been cited to in the *Markman* briefing that have been consolidated or renumbered must remain on the exhibit lists with a clear indication of what the new proposed exhibit number is. For example, if Respondents, in Respondents' *Markman* brief, had cited to some dictionary definitions marked as RXM-0003 and this exhibit was later renumbered as JXM-0056 to remove duplication, the entry on Respondents' proposed exhibit list would reflect this change.

| RXM-0003 | Excerpts from Oxford English Dictionary, 2nd Ed. | Extrinsic evidence as to common meaning of disputed terms "coextensive" and "adjacent" | Respondents' presentation | **Renumbered to JXM-0056** |
|---|---|---|---|---|

Copies of proposed exhibits, if any, including all demonstratives, along with an updated proposed exhibit list, shall be served on the opposing parties by no later than the date set forth in the procedural schedule. Proposed exhibits shall not be filed with the Office of the Secretary of the Commission or served on the Administrative Law Judge in advance of the *Markman* hearing.

Final proposed exhibit lists should be filed as part of the *Markman* pre-hearing statement.

### 1.14.3.2.       Filing on EDIS and Service of Proposed Exhibits upon Administrative Law Judge.

The parties should file their proposed *Markman* exhibits with their *Markman* Briefs on EDIS. Exhibits should be clearly labeled, and as with all exhibits, contain alpha descriptions of their content. (*See* G.R. 1.14.3.3.). If submission rules change, the parties will be notified.

The Parties' demonstrative slides for the Markman Hearing should also be filed on EDIS. Courtesy copies should be sent to McNamara337@usitc.gov 24 hours before the start of a *Markman* hearing if one is held.

### 1.14.3.3.       Format and Submission of Admitted Exhibits.

The parties should refer to the procedures in Ground Rule 8 below with respect to the format and submission of admitted and rejected *Markman* hearing exhibits. *See* Ground Rule 8. Written exhibits shall be marked in order beginning with the four-digit number "0001" and preceded by the prefix "CXM" for Complainants' *Markman* exhibits, "RXM" for Respondents' exhibits, "SXM" for the Staff's *Markman* exhibits (if applicable), and "JXM" for any joint exhibits.

*Additionally, all exhibits that are filed on EDIS with a motion, memorandum, or Markman brief should contain an explanation of content and not simply identified as an exhibit with an alpha character or number. For example, "Exhibit A:  Declaration of ____;" "Exhibit 1:  Declaration of ___."*

*Please note: the description of any Exhibit should not exceed 35 characters. File size may not exceed 25 MB consistent with the United States International Trade Commission Handbook on Filing Procedures at p. 11 and as described.*

#### 1.14.4.        *Markman* Hearing.

The parties have the discretion to determine the order of presentation and allocation of time for the *Markman* proceedings.  For example, the parties may have Complainants discuss all of the patents before moving on to Respondents and then Staff (if applicable). Alternatively, the parties may each present their arguments with respect to one patent or claim term before moving on to the next patent. In some instances, the parties have agreed that the party that has proposed construction of a claim term should go first. It is up to the parties to decide their preferences for presentation. The parties may also determine what, if any, time will be allocated for rebuttal. The parties should keep in mind that the total time allocated for one *Markman* hearing day is 6.5 hours so that there are appropriate breaks, including for lunch.

#### 1.14.4.1.        Opening Statement and Closing Argument.

Opening statements for *Markman* hearings are required.  Closing arguments are not necessary.  They are, however, helpful.  The Parties may choose whether to make a closing statement.  Technology tutorials for each asserted patent are recommended but not required.

#### 1.14.4.2.        *Markman* Hearing Hours.

Normal hearing hours are 9:30 a.m. to 5:30 p.m., with a one (1) hour luncheon recess and two (2) fifteen (15) minute breaks.

#### 1.14.4.3.        Admission of Exhibits.

The parties are responsible for moving their exhibits into the record and should initiate admission of exhibits on the record with the Administrative Law Judge in advance of the 5 p.m. (or other time) close of a *Markman* hearing.  If the Administrative Law Judge approves admission of the requested exhibits, the parties should be prepared to submit a list of admitted exhibits to the hearing reporter for entry into the record.

The parties may seek to have demonstrative exhibits admitted into evidence for substantive or solely for demonstrative purposes.  Such a designation should be made clear on the record at the time of submission.

#### 1.14.4.4.        Transcript.

For remote proceedings held via the Commission's Webex platform, the parties do not have the option of real time.  However, real time is available for in-person courtroom proceedings.  Transcripts provided in real time are preferred.

#### 1.15.        Stipulations.

#### 1.15.1.        Stipulations Generally.

All stipulations between/among the parties should be filed on EDIS.  The parties should also notify the Administrative Law Judge via e-mail to McNamara337@usitc.gov of any such

stipulations.  Stipulations that vary these Ground Rules may not necessarily be approved without leave.

### 1.15.2.          Technology Stipulations.

If the Administrative Law Judge has set a deadline for submission of a technology stipulation in the procedural schedule, the private parties are required to meet and confer in good faith and then, after consultation with Staff (if applicable), shall submit to the Administrative Law Judge two copies of a joint stipulation regarding the patent technology at issue in this Investigation.  The parties shall further state the position of the Staff (if applicable) on the joint technology stipulation.

Said stipulation shall have one section for each asserted patent or family of patents, if it would be more appropriate, and, if applicable, a general technology section should be included that discusses technology common to all of the patents at issue.  At a minimum, said stipulation should provide sufficient background information to understand the disputed claim constructions of each of the asserted claims in issue and should not include any facts upon which the parties are not in agreement.

It is expected that any facts listed in said stipulation may be used and relied upon throughout the remainder of the Investigation, including, *inter alia*, in the Administrative Law Judge's final initial determination on violation.  Also, said stipulation should not be a vehicle for presenting legal arguments.

It is expected that the parties will use their best efforts to jointly create the technology stipulation.  The joint technology stipulation to be submitted should have substance and should not be a list of quotations or paraphrases from the patents at issue (although discussion of the patents is expected to be a component part).  *See Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers*, Inv. No. 337-TA-701, Order No. 26 at 1 (U.S.I.T.C., July 29, 2010).

### 1.16.          Protective Orders and Patent Prosecution Bars.

In certain investigations, the private parties or nonparties have confidential materials that are relevant and discoverable, and which may warrant heightened protections beyond those ordered[13] at the outset of the case.  Parties in need of such heightened protections are promptly expected to begin negotiations for a protective order addendum, *i.e.*, within five (5) business days of the issuance of these Ground Rules.  A party that has subpoenaed a nonparty for discovery is expected to immediately inquire, *i.e.,* within two (2) business days of subpoena service, whether nonparty intends to seek such protections and begin negotiations in good faith if source code or other highly confidential materials are identified in the subpoena.  If a protective order addendum is sought by motion, rather than by private stipulation, such motion must be brought as soon as practicable to avoid discovery delays and should include evidence, such as a declaration, setting forth good cause for heightened protections under the circumstances.  Parties and nonparties may not use the need for a protective order addendum as

---

[13] This is usually Order No. 1, Protective Order.

a basis to withhold other discovery that is non-confidential or that may be produced under the already governing protective order.

The parties should not include the Commission, Commission staff, the Administrative Law Judge or the Administrative Law Judge's staff in protective orders. They are already covered under Commission rules that protect CBI.

The Administrative Law Judge orders that any party bringing a motion for a protective order addendum containing provisions for a proposed patent prosecution bar should review *Certain Consumer Electronics, Including Mobile Phones and Tablets,* Inv. No. 337-TA-839, Order No. 28 (U.S.I.T.C., 2013). It is further recommended, but not required, that rather than seek a patent prosecution bar in advance, the parties instead incorporate a notification provision requiring any individual seeking to view highly confidential materials subject to a protective order addendum to certify in writing whether or not they have recently, are, or in the near future intend to be engaged in patent prosecution or competitive decision making. This would allow the supplier to promptly seek an individually tailored patent prosecution bar (by stipulation or motion) prior to access and would improve the chances of meeting the criteria set forth in *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010).

## 2.        Motions.

Parties with similar interests should coordinate and consolidate motion practice to the extent practicable.

## 2.1.        Contents.

All written motions shall consist of (i) the motion; (ii) a separate memorandum of points and authorities in support of the motion;[14] (iii) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities; and (iv) a Certificate of Service as required by Commission Rule 201.16(c). It is recommended that a moving party clearly articulate what relief is requested in the motion, as well as the law and facts supporting said request(s). Without leave, the motions and supporting memoranda together shall not exceed thirty-five (35) pages, and all attachments to motions shall not exceed a total of one hundred (100) pages. Any motion exceeding either page limit may be denied without prejudice or stricken. An Order may issue for the party to re-submit its motion to comply with the Ground Rule. One exception to the page limitation on attachments to motions is for unopposed[15] motions requesting a letter of recommendation to a United States District Court to issue a letter of request or a letter rogatory to a foreign government's authority for handling requests for international judicial assistance to take discovery abroad. For these motions only, the page limitation on attachments is five hundred (500) pages.

---

[14] A separate memorandum of points and authority is not necessary for motions shorter than five (5) pages.

[15] If the non-moving party's stated position is, after the duties imposed by Ground Rule 2.2 have been discharged, anything other than "oppose," the motion will be treated as unopposed. *See* Ground Rule 2.2.

Offers of Proof fall under this category. An Offer of Proof is a type of Motion, in some sense a motion for reconsideration. A written offer of proof may not exceed the page limitations specified in this section. It should not even come close to the page limitation for motions. The ALJ may specify a different page limitation based upon the circumstances and type of evidence. Please do not misuse the Offer of Proof for a purpose that is inappropriate. For example, if a defense has been denied and eliminated, it is inappropriate to try to resurrect it through an Offer of Proof. Another example is an attempt to change inadequate or existing discovery testimony to enhance the record to the advantage of the proponent for the Offer of Proof. Moreover, a proper Offer of Proof is more often than not a proffer of a line of questions and answers that would have been given in testimony, and typically, based upon already existing evidence. Please review Fed. R. Evid. 103, commentary and precedent that pertains to the same before making an Offer of Proof.

All motion responses shall consist of: (i) a memorandum of points and authorities in response to the motion; (ii) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities; and (iii) a Certificate of Service as required by Commission Rule 201.16(c). <u>All responses to motions shall also include the Motion Docket Number assigned to the motion by the Commission's Office of the Secretary in either the title or the first paragraph of any such responses</u>. EDIS discloses what docket number has been assigned to a motion. Without leave, responses to motions and memoranda supporting such responses together shall not exceed twenty-five (25) pages, and all attachments to responses to motions shall not exceed a total of one hundred (100) pages.

Unopposed motions and joint motions shall contain a proposed order. On the same day the motion is filed, a version of the motion including the proposed order in MS Word for Windows shall be submitted to McNamara337@usitc.gov via e-mail.

***All exhibits submitted with any motion/memorandum must contain exhibit descriptions of the content of the exhibits in addition to an alpha or numerical character. The exhibit descriptions should not exceed 35 characters. The size of any file should not exceed 25 MB (See United States International Trade Commission Handbook on Filing Procedures).***

## 2.2.        Certification.

All motions shall include a certification that the moving party has made a reasonable, good-faith effort to contact and resolve[16] the matter with the other parties at least two (2) business days before filing the motion, and shall state, if known, the position of the other parties regarding the motion. Non-moving parties shall try to timely and substantively respond in good faith to moving party's efforts to resolve a motion.

If the moving party does not state that the non-moving parties, except Staff if Staff is a party, support, oppose, or do not oppose the motion, despite that the moving party has made reasonable, good-faith efforts to contact and resolve the matter with the non-moving parties at least two (2) business days before filing, the motion will be treated as unopposed. A non-moving party's statements, other than Staff, that, for example, it "takes no position" on the

---

[16] Emailing the other parties to inquire as to their position on the proposed motion does not constitute a good faith effort to resolve the matter.

motion or "will take a position after reviewing the papers" will be treated as a position of non-opposition.

### 2.3.             High Priority Objections, Motions *in Limine* and Motions to Strike.

The procedural schedule provides a date for filing a document listing and providing a narrative explanation of the objections to exhibits which the party believes to be of high priority for discussion or ruling at the hearing. Additionally, the procedural schedule also specifies the number of motions *in limine* and high priority objections in combination for each Party and the last date that they can be filed.

All motions *in limine* and high priority objections must be numbered as 1, 2 or 3, etc. Similarly, the responses to motions *in limine* and high priority objections should use the same number of the motion or objection it addresses, i.e., MIL No. 1, 2, 3, etc.

Without leave, each motion *in limine* and high priority objection shall not exceed twenty-five (25) pages, and all attachments to such motions shall not exceed a total of fifty (50) pages. Responses to such motions shall not exceed the same. <u>Any motion exceeding any of these page limits may be denied without prejudice or stricken</u>.

In addition to the foregoing requirements, motions to strike must include by page and line number the text and/or testimony the movant seeks to have stricken, if applicable. The movant should include as attachments to the motion the document containing the page and line numbers of the text to be stricken.

Pre-hearing motions to strike should be few in number and filed rarely.

Each party is limited to one pre-hearing motion to strike without leave. However, if such a motion to strike is filed within two (2) months of the commencement of the evidentiary hearing, it will be treated as a motion *in limine* or high priority objection and it will count against that party's (or group's) permitted number of motions *in limine* and high priority objections.

This rule does not apply to objections to evidence/testimony or motions to strike raised/filed during the hearing or to motions to strike filed post-hearing. *See also* G.R. 9.8.

### 2.4.             Summary Determination Motions.

No more than one (1) motion for summary determination on one (1) issue may be filed by complainants as a group and by respondents as a group (or individually by each party in a group if they do not share an identity of interests) without first filing a motion for leave. A motion for summary determination is limited to 10,000 words (which equates to approximately 40 pages), using 12-point font in text, 11-point font in footnotes and 1.0-inch side margins. Tables of contents, a page(s) containing abbreviations, the page(s) of citations to case precedent, and document headings will not be counted in the count for the number of pages. No more than 100 pages in exhibits may be attached without leave.

Motions for summary determination shall be accompanied by a separate statement of the material facts with which the moving party contends there is no genuine issue, and which entitles the moving party to a summary determination as a matter of law.

Additionally, the statement of material facts must include a chart that consists "of short, factual statements with specific references to supporting declarations, affidavits or other materials."

Whenever possible, the factual statement should be a direct quote from record evidence, using quotation marks. The format of the chart should be substantially as follows:

| Item # | Factual Statement | Citation | Disputed | Factual Rebuttal | Citation |
|--------|-------------------|----------|----------|------------------|----------|
|        |                   |          |          |                  |          |

The moving party shall fill out the first three columns of the chart (item number, factual statement/quote, and citation), and any non-moving party shall fill out the remaining columns (indication of dispute, factual rebuttal, citation).

## 2.4.1.            Response to a Motion for Summary Determination.

A response to a motion for summary determination is limited to 10,000 words (approximately 40 pages) as counted above in Ground Rule 2.4.

The response shall complete and append the chart of facts prepared by the movant.  The response shall complete the last three columns of the chart (indication of dispute, factual rebuttal, citation) by reproducing specific record evidence that shows or other materials. Whenever possible, the factual rebuttal should be a direct quote from record evidence using quotation marks.  The chart shall not be included in the word count.

Parties should avoid boilerplate rebuttals and particularly should avoid rebuttals or objections that are not directly relevant to the material fact at issue.  If a material fact, or a portion of a material fact, is undisputed, the responding party should so state.

All material facts set forth in the moving party's chart may be deemed admitted by a non-moving party unless the non-moving party specifically controverts the statement.

## 2.5.            Discovery and Discovery-Related Motions.

The Administrative Law Judge will try to convene two (2) telephone conferences with the parties at least one of which will be during the discovery period.  Dates for these telephone conferences will be included in the procedural schedule governing this Investigation. The parties shall alternate responsibility for securing a dial-in number and a court reporter to transcribe these conferences, beginning with the complainant. The transcript for all conferences shall be filed on EDIS after the parties have jointly submitted a telephone hearing transcript containing their proposed redactions because of CBI no more than seven (7) days from the parties' receipt of the transcript.

Prior to filing **any motion related to a discovery dispute**, the party that seeks to file such a motion must discharge its obligation to meet and confer under Ground Rule 2.2. If, after discharging its obligation under that rule, the discovery dispute persists, that party shall submit a letter explaining the nature of the discovery dispute to McNamara337@usitc.gov. The letter shall be submitted by e-mail to McNamara337@usitc.gov and shall consist of no more than two (2) pages. Any party that seeks to submit a responsive letter must do so no later than (2) business days following submission of the initial letter by the intended movant. Any responsive letter should be submitted by e-mail to the address above and shall be no more than two (2) pages. The underlying discovery dispute will then be placed on the agenda for the next scheduled teleconference with the Administrative Law Judge. There may be interim telephone conferences as may be necessary.

One business day before each scheduled telephone conference, the parties shall jointly submit to McNamara337@usitc.gov a proposed agenda for the telephone conference, which shall include all disputes raised according to the procedure above.

If no disputes are pending, and there is no need for the scheduled telephone conference on the procedural schedule from the parties' perspective, the parties shall notify the Administrative Law Judge by e-mail to McNamara337@usitc.gov at least two (2) business days before the scheduled telephone conference may not be necessary

Leave to file a discovery-related motion will be granted, if at all, only after the intended movant has complied with the procedure provided herein.

### 2.5.1.        Contents

Any discovery-related motion must have appended to it the pertinent parts of the discovery request and all objections and answers thereto. Additionally, if the party subject to the motion to compel serves supplemental discovery responses while the motion is pending, then the response to the motion must include copies of the supplemental responses, or, where documents are produced, a detailed accounting of what additional documents were produced.

### 2.6.        Request for Shortened Time to Respond to Motion.

If a party seeks expedited treatment pursuant to Ground Rule 1.9.2., such motion shall include any request to shorten the time for which other parties may respond to the motion. The fact that a shortened response time is requested shall be noted in the title of the motion and the motion shall include an explanation of the grounds for such a request. A request for a shortened response time shall <u>not</u> be made through a separate motion.

### 2.7.        No Motion Stops Discovery Except Motion to Quash Subpoena.

The submission of a motion does not stop discovery except in the case of a timely motion to quash a subpoena, and only with respect to the party or witness who may be a non-party who is served with a subpoena.

**2.8.**                    **Motion Deadlines in the Procedural Schedule.**

Although the procedural schedule contains several cut-off points for bringing motions (motions to compel discovery, summary determination motions, and motions *in limine*), parties are expected to bring their motions on a rolling basis. Parties who fail to diligently bring issues to the attention of the Administrative Law Judge as close to the time of the dispute as practicable may find that their arguments have lost persuasive value. *See e.g.*, *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order No. 52 at 2 (U.S.I.T.C., 2012).

Motions to compel discovery must comply with Ground Rule 2.5.

**2.9.**                    **Mootness.**

The parties should file a notice on EDIS within seven (7) business days when any issue, such as an invalidity argument, a substantive factual or expert theory (often called a "contention"), or any other allegation or defense becomes moot, or is being dropped.

If a change in circumstances renders all or any portion of a motion moot, the moving party is expected to promptly file notice (with the pertinent motion number in the document title) as to whether all or a specific portion of said motion is being withdrawn. In addition, movant is expected to notify my Attorney Advisor via email within 24 hours.

**3.**                    **Discovery.**

The parties should make intensive good faith efforts promptly commence and respond to discovery. Lack of diligence may affect a party's showing of good cause for motions to enforce discovery, particularly if such motions are adjacent to the close of fact discovery. In the same vein, failure to promptly seek a protective order in the face of highly objectionable or inappropriate discovery requests may undermine the opposition of a party responding to a motion to compel. The parties should also note that the deadlines in the procedural schedule are considered to be the last day to complete a task. Because these are fast-paced proceedings, parties are expected to exert diligence and file motions earlier than the stated deadline, such as motions to compel discovery or to enforce subpoenas. Parties should not tactically seek to withhold or delay motions or discovery, as every party is expected to proceed expeditiously. Commission Rule 210.2.

The Commission has affirmed that the notice of investigation, not a complaint, defines the scope of an investigation. 78 F.R. 23476 (April 19, 2013). "The scope of discovery is necessarily commensurate with the scope of the investigation." *Certain Rechargeable Lithium-Ion Batteries, Components Thereof, and Prods. Containing Same*, 337-TA-600, Order No. 8 (July 25, 2007). Thus, it is unacceptable for a party to unilaterally limit the scope of discovery to solely those products specifically accused in the complaint, and a party refusing to respond to discovery requests on this ground may be subject to sanctions in light of the Commission's clear guidance on this issue. Should a party have serious concerns about the scope of the notice of

investigation or about the scope of requested discovery, it has a responsibility to promptly take appropriate action.

## 3.1.                 Resolution of Disputes; Coordinated Discovery.

The parties shall make reasonable efforts to resolve between or among themselves disputes that arise during discovery.  Parties with similar interests must coordinate and consolidate depositions and all other discovery.

### 3.1.1.                 Discovery Committee.

Starting the first full week after these Ground Rules are issued, a discovery conference committee (the "Discovery Committee") consisting of the lead counsel for each party and Staff, if Staff is a party, shall confer at least once every two (2) weeks during the discovery phase of this Investigation, either in person or by telephone, to resolve discovery disputes.  The Discovery Committee shall confer in good faith to resolve every outstanding discovery dispute in a timely manner within the deadlines set forth in the procedural schedule.

Within ten (10) calendar days after the end of each month during the discovery phase, the Discovery Committee shall report in writing to the Administrative Law Judge all disputes that were resolved during the preceding month and all disputes about which there is an impasse as of the end of that month.  No motion to compel discovery may be filed unless the subject matter of the motion has first been brought to the Discovery Committee and the Committee has reached an impasse in trying to resolve it.  It is recommended, but not required, that within twenty-four (24) hours of each meeting the Discovery Committee members exchange[17] written confirmation of what disputes have reached an impasse.

## 3.2.                 Stipulations Regarding Discovery Procedure.

Unless otherwise directed by the Administrative Law Judge, the parties may, by written stipulation, modify procedures for, or limitations placed upon, discovery.  The parties may not stipulate to change any Commission Rule with respect to discovery, unless the Rule expressly permits it.  *See, e.g.*, Commission Rules 210.28(a), 210.29(a).  Furthermore, stipulations extending the time provided in Ground Rule 3.4.2 and Commission Rules 210.30(b)(2) and 210.31(b) for responses to discovery, if they would interfere with (i) the target date of this Investigation, (ii) any time set in the procedural schedule or other order related to completion of discovery,[18] or (iii) the evidentiary hearing or hearing of a motion, may only be made with the advance approval of the Administrative Law Judge upon a timely written motion showing good cause.

---

[17] Such exchange should not be served on the Administrative Law Judge or filed on EDIS, unless it is appended as a necessary component to a discovery motion or response thereto.

[18] *See, e.g., Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-803, Order No. 42 at 3, n.1 (U.S.I.T.C., 2012).

### 3.3.          Service of Discovery Requests and Responses.

Discovery requests and responses must be served on all parties, including Staff (if applicable), but are not to be served on the Administrative Law Judge, or her Attorney Advisor, or filed on EDIS unless they are appended to a motion.

### 3.4.          Timing of Discovery Requests, Responses and Objections.

### 3.4.1.          Depositions.

In addition to the requirements of Commission Rule 210.28(c), unless otherwise ordered or stipulated pursuant to Ground Rule 3.2, any party desiring to take a deposition shall give **at least ten (10) days'** written notice to every other party if the deposition is to be taken of a person located in the United States, or at least **fifteen (15) business days'** written notice if the deposition is to be taken of a person located outside the United States. No party shall notice the deposition of a party witness without first consulting with the opposing party and Staff, if Staff is a party, regarding the availability of witnesses and counsel for the deposition. Opposing party (and Staff) shall make a good faith effort to timely consult with the party requesting said deposition.

### 3.4.1.1.          Depositions in Japan.

If an application for a recommendation to the U.S. District Court requiring depositions of a party in Japan is necessary, it should be titled as an "application" but filed on EDIS as a "motion." The application should include a statement as to the other parties' positions regarding the application as well as any relevant supportive material.

If the Administrative Law Judge determines that the application should be granted, an order and recommendation will issue. A copy will then be served on all parties. It is the responsibility of the applicant to determine whether the U.S. District Court requires a certified original. If so, the applicant should include in a cover letter, or include in the application itself, clear instructions explaining the requirement, and if the applicant prefers to pick up the certified original, the manner of pick up and the individual to be contacted. Absent these instructions, only the service copy will be sent to the applicant.

### 3.4.2.          Interrogatories.

In addition to the requirements of Commission Rule 210.29(b), unless otherwise ordered, the party on whom interrogatories have been served shall serve a copy of the answers, and any objections, within **ten (10) days** after the service of the interrogatories.

### 3.4.3.          Requests for Production of Documents or Things or for Entry upon Land.

*See* Commission Rule 210.30. Additionally, the parties should start providing documents to one another within fifteen (15) days of receiving a Request for Production.

### 3.4.4.              Request for Admission.

In addition to the requirements of Commission Rule 210.31(a) and (b), a request for admission may be served at any time **twenty (20) days** after the date of service of the Complaint and Notice of Investigation.

### 3.4.5.              Discovery Cutoff and Completion.

All discovery requests, including requests for admissions, must be initiated long enough before the fact discovery cutoff and completion date to allow responses by that date without curtailing the response times prescribed in the Commission Rules and Ground Rules.  Discovery requests by any party that would require responses after the fact discovery cutoff and completion date must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

### 3.5.              Subpoenas.

Subpoenas may be requested to compel third parties to testify or produce documents. The Administrative Law Judge expects the parties to diligently seek third-party subpoenas as early as practicable in the Investigation, and to take quick action to enforce said subpoenas if third parties delay.  *See* Ground Rule 3.5.2.  Hearing subpoenas will be issued only if the subpoenaed party refuses to testify.

### 3.5.1.              Issuance and Service.

Pursuant to Commission Rule 210.32, applications for subpoenas may be made *ex parte* to the Administrative Law Judge.  An application shall be in writing with the proposed subpoena attached.  One (1) original and one (1) copy thereof shall be submitted to the office of the Administrative Law Judges.

The subpoena application shall set forth: (i) the relevancy of the information sought and the reasonableness of the scope of the inquiry; and (ii) shall state that the subpoena will be served (on the individual or entity subject to subpoena) by overnight delivery, if not sooner. The subpoena should: (i) set forth a time limit for a motion to quash; and (ii) should refer to and also have a copy of the Protective Order in this Investigation as an attachment.  At a minimum, the subpoenaed party shall be given ten (10) days <u>after receipt</u> of the subpoena to file a motion to quash.

Any dates in a subpoena for appearance of a deponent or production of documents shall accommodate the time allowed for the filing of any motions to quash and shall accommodate for the time needed for the Office of Administrative Law Judges to process the subpoena application.[19]  *See* Commission Rule 201.14(a); Ground Rule 1.12.  A copy of the issued subpoena and the application shall be served by the applicant on the subpoenaed party by

---

[19] This is typically 24-48 hours, depending in part on whether the application is delivered by mail or by courier.  Parties with urgent subpoena requests should contact the Administrative Law Judge's Attorney Advisor.

overnight delivery, if not sooner, and on all other parties to this Investigation on the next business day, at the latest, after the subpoena is issued.

A sample of a subpoena application is attached as **Appendix A**. In addition, two forms of subpoenas, which the parties must follow precisely, are attached as **Appendix A**. The parties must seek advance leave if they wish to make substantive changes to the subpoena forms. The application and subpoena shall not be filed on EDIS or served on the Office of the Secretary of the Commission unless they are appended to a motion.

### 3.5.2.    Extensions and Enforcement.

Any stipulated extensions to the time set forth for discovery in a subpoena must be made in writing and signed by the requesting party and the nonparty. A stipulation to extend the deadline to respond to a subpoena may be filed once as a matter of course. A motion for leave demonstrating good cause must be filed for any additional extensions. The same applies to third-party subpoenas.

There is always an expectation that good faith efforts to rapidly negotiate with a nonparty to gain subpoena compliance should be made and documented. *See also* Ground Rule 1.16. However, these are expeditious proceedings and a nonparty's failure to cooperate or respond to a subpoena should be brought <u>promptly</u> to the attention of the Administrative Law Judge by way of a supported motion for judicial enforcement. Lack of diligence may affect a party's showing of good cause for motions to enforce (or defend against) discovery, particularly if such motions are adjacent to the close of fact discovery.

If a motion to enforce or quash a subpoena, or a response to such a motion, contains confidential business information, a public version with confidential materials redacted <u>must accompany</u> the confidential filing. *See* Commission Rule 210.32(g).[20] If movant, nonparty, or other responding parties fail to timely file non-confidential versions of their pertinent papers on EDIS, then the Administrative Law Judge will exercise discretion as to what portions of a final order may be treated as confidential. Commission Rule 210.5(e)(1). In addition, in the event of a failure to timely file non-confidential version when another party or a nonparty is not permitted to view the confidential business information contained therein, the Administrative Law Judge may consider whether such failure was affected for an improper purpose.

### 3.6.    Bates Numbering.

Documents produced in response to a document request which are copies of original documents, shall be numbered sequentially by a unique number (commonly known as a "Bates number"). The Bates number shall appear stamped on the lower right-hand corner of the page. The parties are encouraged to use Bates numbers without long prefixes. For example, the short Bates number XYZ-00001 is preferable over LONGPARTYNAME-ITCNUMBER-00001.

---

[20] This is necessary because a certification to the Commission requires simultaneous public and confidential orders to issue. *Id.* Therefore, proposed redactions submitted after an order issues are not feasible.

### 3.7.                    Translations.

A document produced in response to a document request shall be either the original or a legible and complete copy.  If an English translation of any document produced exists, the English translation must also be produced.  If any of the parties dispute the translation provided by the producing party, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

### 3.8.                    Privileged Matter.

In addition to the requirements set forth in Commission Rule 210.27(e) with respect to privilege logs, each privilege log shall contain a certification that all elements of the claimed privilege are met and have not been waived with respect to each document.  The parties should not provide a "key" at the end of a privilege log with the position and entity of each sender and recipient or otherwise require cross-referencing.

### 4.              Notice of Patent Priority Dates and Notice of Prior Art.

### 4.1.                    Patent Priority Dates.

Complainant(s) must file on or before the date set in the procedural schedule, a notice setting forth the alleged priority date[21] for each asserted patent, and if applicable because of differences in priority dates, for each asserted patent claim.  Such notice will be binding on Complainant(s) and may not be amended absent a timely written motion showing good cause.

### 4.2.                    Prior Art.

The purpose of the prior art identification is to notify all parties (early in the Investigation) of the prior art likely to be raised during the hearing on the question of violation of section 337, and thus to allow the parties to formulate their facts and factual predicates, theories of the case, and to allow the experts to provide meaningful reports and deposition testimony.

Parties must file on or before the date set in the procedural schedule, notices of any prior art containing of the following information: issuing country, number, date, and name of the patentee of any patent; the title, date and page numbers of any publication to be relied upon as evidence of invalidity of the patent in suit; and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit.  Such notices should include the information set out in 35 U.S.C. § 282.

---

[21] This disclosure should make clear what date(s) Complainant(s) intend to rely on for asserting priority of invention, if at all, as Complainant(s) are presumed to be in possession of dates of conception and reduction to practice for the asserted patent claim(s).  Likewise, if Complainant(s) intend to rely on an earlier related or foreign application to the asserted patent claim(s), the priority disclosure should also make this clear.  The purpose of this notice in light of the expeditious nature of these proceedings is to help delineate the boundaries of the search for prior art.

If a trademark is involved, the parties must file on or before the date set in the procedural schedule, notices of any art on which a party will rely at the hearing regarding the functionality or non-functionality of any trademarks at issue.

Prior art, as well as related evidence, that is not disclosed in the Notice of Prior Art on or before the date set forth in the procedural schedule will not be admitted at the hearing absent a timely written motion showing good cause. Notices of prior art with excessive disclosures have been stricken in the past on the basis that they thwart the purpose of this Ground Rule 4. *See, e.g., Certain Wireless Communications System Server Software, Wireless Handheld Devices and Battery Packs*, Inv. No. 337-TA-706, Order No. 10 (U.S.I.T.C., 2010); *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order Nos. 40, 56 (U.S.I.T.C., 2012).

**5.        Expert Witnesses and Reports.**

On or before the dates set forth in the procedural schedule, a party shall disclose to all other parties the identity of any person who is retained or employed to provide expert testimony at the hearing and shall provide the other parties a written report prepared and signed by that witness. Experts who are not disclosed on or before the date set forth in the procedural schedule must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

An electronic courtesy copy of the expert report shall be served on the Administrative Law Judge through McNamara337@usitc.gov, excluding exhibits, as noted in Ground Rule 1.3.2.

The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at hearing or by deposition within the preceding four (4) years. The parties shall supplement these disclosures as needed in the manner provided in Commission Rule 210.27(c).

The parties should note, however, that unseasonable,[22] substantive supplementation of an expert report requires agreement prior approval from the Administrative Law Judge.

**6.        Settlement; Settlement Reports.**

All parties, throughout the proceedings, shall explore reasonable possibilities for settlement of all or any of the contested issues. All parties shall certify in their pre-hearing statements that good faith efforts were undertaken to settle the remaining issues.

---

[22] For example, if a party wishes to supplement an initial expert report after the deadline for rebuttal reports has passed.

Additionally, for each of the required settlement conferences provided for in the procedural schedule, the parties shall provide the Administrative Law Judge with two (2) double-sided copies of a joint report signed by all the parties setting forth any stipulations on which the parties have agreed.  The report must also disclose what meeting(s) took place, who attended, and what result, if any, was obtained in each meeting.  *See e.g., Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-803, Order No. 16 (U.S.I.T.C., 2011).  These reports are due by the time designated in the procedural schedule or within such other time as the Administrative Law Judge may allow.  The reports shall not be filed with the Office of the Secretary of the Commission.

**7.**         **Pre-Hearing Submissions.**

Paper copies of demonstrative slide decks for *Markman* Hearings, the Evidentiary Hearing, and other hearings must be provided to Chambers at least two (2) business days before the scheduled hearing date.  Paper copies are not required for any other documents, unless specifically requested by the ALJ.

**7.1.**         **Pre-Hearing Statement.**

Pre-hearing statements are limited to 100 pages, including attachments, without leave from the ALJ.  Each party who intends to take part in the hearing in this Investigation must file on or before the date set forth in the procedural schedule a pre-hearing statement containing the following information:

(a)  The names of all known witnesses, their addresses, whether they are fact or expert witnesses (and their fields of expertise), and a brief outline of the testimony of each witness.  In the case of expert witnesses, a copy of the expert's curriculum vitae shall accompany this submission.  The expert's curriculum vitae does not count toward the 100-page limit on pre-hearing statements.  The identification of witnesses should be contained in the text of the pre-hearing statement and not attached as an exhibit.

(b)  A preliminary list, by title and number, of all exhibits that the parties will seek to introduce at the trial.  The list shall include five columns.  In the first four columns, the party shall include the four-digit number of the exhibit, a brief description and the title of the exhibit, the purpose for which it is being offered, and each sponsoring witness.  The last column shall be labeled "Received" and need only include sufficient space for a date.

(c)  A list of any stipulations on which the parties have agreed.  It is expected that all stipulations other than discovery stipulations will be marked as joint exhibits.  For example, the technology stipulation (*see* Ground Rule 1.15) should be marked as a joint exhibit.

(d)  A proposed agenda for the pre-trial conference.

(e)  Estimated date and approximate length for appearance of each witness.  (The parties must confer on this prior to submission of the pre-hearing statements).  NOTE: this should be part of a first/second page of the Pre-Hearing Statement, or it may be filed as a separate page or two with the Pre-Hearing

Statement so long as it is "up front" and easily accessible.

(f) Certification regarding good faith efforts to settle. *See* Ground Rule 6 *infra*.

**Additional Submission, Complainant(s).**

In addition to the above, in patent Investigations, Complainant(s) shall attach a chart or table to the pre-hearing statement specifically matching all asserted patent claims to each accused article. If there are nuances, *e.g.*, with respect to model number or particular components, these should be identified. Furthermore, Complainant(s) should identify representative accused articles, if any. The chart should further identify the asserted type(s) of infringement. For example, if there are three asserted claims and five accused articles, a sample chart might appear as follows.

| **'##1 Patent, claim 5** | **'##1 Patent, claim 7** | **'##2 Patent, claim 12** |
|---|---|---|
| P Product family:<br>  Accused Product AA (7MA config. only)<br>  Accused Product BB | P Product family:<br>  Accused Product BB | P Product family: n/a |
| Q Product family:<br>  Accused Product CC<br>  Accused Product EE | Q Product family:<br>  Accused Product DD<br>  Accused Product EE | Q Product family:<br>  Accused Product CC (T6 config. only)<br>  Accused Product DD<br>  Accused Product EE |
| Representative Products:<br>  Accused Product BB<br>  Accused Product CC | Representative Products:<br>  Accused Product BB<br>  Accused Product EE | Representative Products:<br>  Accused Product CC (T6 config. only)<br>  Accused Product EE |
| Infringement:<br>  Literal<br>  Direct, induced, contributory | Infringement:<br>  Literal<br>  Direct, induced, contributory | Infringement:<br>  Literal, Doctrine of Equivalents (Accused Product CC, T6 config. only)<br>  Direct |

Complainant(s) shall be bound by the identification of asserted claims as matched to the accused products in this submission.

**Additional Submission, Respondent(s).**

In addition to the above, in patent Investigations, Respondent(s) asserting any Section 102 or 103 invalidity defenses shall attach a chart or table to the pre-hearing statement listing all asserted prior art references, or combinations of references, and specifically matching these to each asserted patent claim. For example, if there are four prior art references and five asserted patent claims, a sample chart might appear as follows.

| **Cheng (§102)** | **Davis (§103)** | **Davis, Scott, Maxwell (§103)** | **Davis, Maxwell, Aguilar (§103)** |
|---|---|---|---|

| '##1 Patent, claim 5 | '##1 Patent, claim 12 | '##1 Patent, claim 12 | '##1 Patent, claim 12 |
|---|---|---|---|
| '##2 Patent, n/a | '##2 Patent, claims 12, 16, 17 | '##2 Patent, claim 17 | '##2 Patent, claim 12, 16 |

If Respondent(s) use a single chart, each entry must clearly state whether Section 102 or 103 is applicable. (*See* above sample.) Respondent(s) may alternatively separate the Section 102 and 103 invalidity defenses into two charts in the same submission.

Respondent(s) shall be bound by the identification of asserted prior art as matched to the asserted patent claims in this submission.

## 7.2.        Pre-Hearing Brief.

The parties must meet and confer prior to filing the pre-hearing briefs in order to determine appropriate common locations for each issue. *See, e.g.*, **Appendix B**. For example, in an Investigation involving patent litigation, this conference should, *inter alia*, determine the order of patents to be set forth in the pre-hearing briefing.

On or before the date set in the procedural schedule, each party shall file a pre-hearing brief. Absent prior approval of the Administrative Law Judge said brief shall consist of no more than one hundred fifty (150) pages and may have no more than fifty (50) pages of relevant attachments. The parties should not use attachments to bypass the page limits of the pre-hearing brief, but may use them to attach critical charts, figures, or other pertinent material.

The pre-hearing brief shall be prefaced with a table of contents and a table of authorities, which do not count toward the page limits. The brief shall set forth <u>with particularity</u> the authoring party's theories of the case and contentions on each of the proposed issues, including citations to legal authorities in support thereof, and shall conform to the sample outline set forth in **Appendix B** hereto. All issues, including issues not specifically named in the general outline set forth in said appendix that any party seeks to address, shall be added where appropriate. The parties need not use precious space on lengthy introductory arguments.

If claim construction issues have not been resolved in a *Markman* order prior to the hearing, the parties need only cite to the last claim construction the party argued in its claim construction brief, or in its post-*Markman* hearing brief.

Any contentions and theories of the case not set forth in detail as required herein shall be deemed abandoned or withdrawn,[23] except for contentions of which a party is not aware and could not be aware in the exercise of reasonable diligence at the time of filing the pre-hearing brief. However, the parties are advised to select their best, well-reasoned and persuasive arguments, and abandon extraneous or far-fetched contentions at this time.

---

[23] *Certain Automated Media Library Devices*, Inv. No. 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013).

Additionally, "contentions and theories" should be supported explicitly by documentary and testimonial evidence already exchanged between/among the parties.  See G.R. 7.2.1.

### 7.2.1.              Content of Pre-Hearing Brief

There seems to be confusion about the content of pre-hearing briefs.  A pre-hearing brief should never be is a diatribe against the other parties or claims made for which the party knows there is virtually no support.  Choose issues carefully.  Limit.  Focus on the strongest issues for which there is evidence.  Additionally, a pre-hearing brief should *not* consist of primarily attorney argument, conclusory statements, or a mere re-recitation of language contained in patent claims or specifications.  If you argue a proposition or issue which you know you will not win and there truly is little or no dispute or evidence, concede it and focus where there is at least a colorable argument.

Any factual or theoretical contention made, whether for infringement or for validity, and any other issues, must be supported by citations to likely exhibits, deposition testimony, expert reports, and be supported by case law.  The reasoning and explanations of expert testimony or likely expert testimony should be clear and cite to supporting evidence.  A pre-hearing brief without citation to evidence is not an appropriate pre-hearing brief.

Validity arguments, where there are multiple sources, should be clearly explained.  At a minimum, *why* the piece of prior art was chosen should be explained.  The technology from which it comes or relates to should be explained.  If there are aspects of the prior art that do not apply, be clear about that.  Too often parties attempt to hide or obfuscate.  It cannot be emphasized enough that conclusory statements, including about anticipation or motivation to combine needs to be explained, with reasoning, or to put it another way, a structured argument is a requirement.  If the other party's critique is wrong, explain *why*, with reasoning and evidentiary support.

*Block string cites* are not appropriate.  Similarly, merely attaching Appendices to a pre-hearing brief with block string cites is never appropriate.  String cites that have meaning or contain necessary, corroborative evidence from different sources may be appropriate, especially if there are multiple evidentiary sources for a theory, proposition, illustrative point or argument.  Charts are fine if, in fact, the individual elements are supported, again, by *evidence.*  Include the citations to evidence.

All of the above applies to expert reports.

### 7.3.              Joint Outline of Issues in Chart Form.

The parties must jointly create and maintain a single chart of substantive legal issues being litigated in the Investigation.  The chart shall be jointly filed as a separate docket entry simultaneously with the pre-hearing and the post-hearing briefs.  The parties' pre-hearing and initial post-hearing briefs will follow the order of the issues set forth in the chart.  The leftmost column of the chart will list the issues being litigated, including all infringement and invalidity theories and defenses.  The parties will create subsequent columns for each of their briefs,

grouped by party (i.e., the chart accompanying the post-hearing reply briefs will include columns for Complainant(s)'s pre-hearing brief, initial post-hearing brief, and post-hearing reply brief, followed by columns for Respondent(s)'s pre-hearing brief, initial post-hearing brief, and post-hearing reply brief). The cells of the columns will contain page numbers of the particular sections of the briefs where those issues are addressed.

If issues, facts, claims, patents, arguments, or defenses have dropped out from the pre-hearing briefs, that should be noted explicitly in the chart accompanying the initial post-hearing briefs. That same principle should carry through to the outline accompanying the post-hearing reply briefs.

## 8. Hearing Exhibits.

### 8.1. Material to Be Received Into Evidence.

Only factual material and expert opinion shall be received into evidence. Legal arguments shall be presented in the briefs.

### 8.2. Legal Experts.

Legal experts may only testify as to procedures of the U.S. Patent and Trademark Office. In the event that legal experts are called to testify on foreign law, Federal Circuit Court and Commission precedent will apply to interpretation.

### 8.3. Witness Sequestration.

Fact witnesses may be in the courtroom during opening statements. However, fact witnesses must then remain outside the courtroom until they have completed all testimony. Otherwise, Fed. R. Evid. 615 is referenced.

### 8.4. Witness Testimony.

Unless ordered otherwise, all witness testimony will be live testimony. To minimize the risk of biased testimony, after the parties provide opening statements, live fact witnesses shall not observe in the courtroom during the hearing until after they have completed their live testimony.

In the event witness statements are permitted in lieu of live witness testimony, witness statements (which will be rare) leave must be requested through motions practice at least one (1) month before the evidentiary hearing unless there is an illness or injury involved. If there is an illness or injury, leave by motions practice must occur as soon as practicable. It is not sufficient or acceptable in replacement of this rule that the parties agree between/among themselves to a witness statement. It should be noted that leave will rarely be granted for non-in-person, expert testimony. Additionally, the following rules would apply if leave by motion for other than in-person testimony is granted.

### 8.4.1.             Witness Statements in Lieu of Direct Testimony (RARE).

Witness statements are disfavored and, except as described, will not be allowed in place of direct testimony during the evidentiary hearing.  Witnesses will not be permitted to read prepared testimony into the record.  Staff may ask a witness supplemental direct testimony on the witness stand.  Witnesses shall be available for cross-examination on the witness stand unless waived by the parties entitled to conduct cross-examination.  While generally not a substitute for live testimony, witness statements containing background statements, such as CV type information, may be marked with exhibit numbers and offered into evidence as exhibits.  Short witness statements, or preferably declarations, may be used to sponsor the admission of exhibits, only upon a showing of good cause set forth in a motion and only if: (1) a list of all such exhibits is attached to the witness statement; and (2) each such exhibit is explicitly cross-referenced to the corresponding portion of the witness statement in which the witness laid a foundation for the exhibit.

### 8.4.2.             Format of Witness Statements (RARE).

In the exceedingly rare event that a witness statement of the type used by other Administrative Law Judges for direct testimony is allowed, the witness statement shall be in the form of consecutively numbered questions from counsel, with each question followed by the witness's own answer to that question.  The final question from counsel should ask the witness whether or not the witness statement contains the witness's independent answers to the questions from counsel and should be followed by the witness's answer to this question and the witness's signature.  The questions shall be in the form of a direct examination, and the answers shall be in the form of verbal testimony, although the witness statement may be organized (e.g. headings, table of contents, and bulleted or numbered lists) to facilitate an understanding of the issues and may include illustrative excerpts from admissible exhibits.  For evidentiary support, witness statements shall cite to exhibit numbers and brief descriptions of the exhibits (e.g., JX-0002 ('123 Patent File History)) that will be introduced at the hearing.  A witness statement must contain the entirety of the witness's direct testimony; attachments or incorporation of other documents by reference is not allowed.

A witness statement shall be in the language of the witness, and a foreign language witness statement shall be accompanied by a certified English translation thereof.

Except upon a timely written motion and for good cause shown, fact witnesses shall not review the witness statements of other witnesses and shall be excluded from the hearing prior to their testimony.  Subject to restrictions imposed by any protective order entered in an investigation, this rule does not apply to exclude a party who is a natural person, or an officer or employee of a party designated as the party's representative by its attorney.

If allowed in the first instance, witness statements may not be withdrawn, in whole or in part, without leave.  Witness statements may not be amended.  If witnesses desire to correct typographical or clerical errors in their testimony, they should prepare errata sheets.  Counsel should mark the errata sheets as exhibits and should give them as quickly as possible to the

other parties and to the Administrative Law Judge.  During the hearing, a motion may be made to have the errata sheets accepted into the record.

Absent leave granted by the Administrative Law Judge; the total number of witness statement pages offered by the complainants (collectively) may not exceed one hundred (100) pages. Similarly, absent leave granted by the Administrative Law Judge, the respondents (collectively) may not offer more than one hundred (100) pages of witness statements.  Tables of contents and certified translations are not counted toward the page limits.  The text of the questions and answers in the witness statements may be single spaced, provided that at least double spacing is used between questions and answers, and at least a 12-point font is used. Illustrations may be included in the witness statements, but they will be counted among the aggregate number of pages that may be offered.

### 8.5.        Expert Reports.

Pursuant to the procedural schedule, after conferring, each party, including the Staff (if Staff is a party), shall file on EDIS and submit to the Administrative Law Judge at McNamara337@usitc.gov, one copy of a statement stating its position on whether or not it intends to offer into evidence[24] any parts of their expert reports as part of a motion, or for any other purpose permitted under the rules.  The expert report expected to be used as described should be identified.  The statement shall not be filed with the Office of the Secretary of the Commission.

A courtesy copy of all expert reports must be submitted to McNamara337@usitc.gov. when they are submitted to other parties.

If a party files a motion to preclude parts of an expert report or makes any type of motion to strike any part of an expert report or expert deposition testimony, that party should take care not to withdraw or exclude any part of that same expert report and expert deposition testimony in exhibit lists.  The opposing party may always rebut such a motion with other parts of the expert record.  If the submissions are inadequate or distortive of testimony, the ALJ may, *sua sponte*, use other parts of the expert report or expert testimony to ensure that what is being presented is accurate in context.

### 8.6.        Foreign Language Exhibits.

No foreign language exhibit will be received in evidence for substantive purposes unless a complete English translation of it is provided at the time set for exchange of exhibits. ***Translations of only a part or a section of a document will not be permitted.***  The entirety of any document must be translated.  If any of the parties dispute the translation, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

---

[24] Relevant parts of expert reports may be admitted into evidence.

## 8.7.    Exhibits.

### 8.7.1.    Exchange of Proposed Exhibits.

The Ground Rules no longer specify an exact date by which copies of proposed documentary exhibits, along with a proposed exhibit list, shall be served on the opposing parties (including the Staff, if applicable).  That gives the parties some flexibility.  However, exhibit lists should be exchanged at least seven (7) days before the evidentiary hearing.  After the proposed exhibit list exchange, the parties shall eliminate any duplicate exhibits or renumber such exhibits as joint exhibits and update their exhibit lists before they are submitted to the Administrative Law Judge.

Proposed physical and demonstrative exhibits need not be served but shall be identified in the proposed exhibit list.  Proposed physical and demonstrative exhibits, however, must be made available for inspection by the other parties on the date established for the submission and service of proposed exhibits.

Proposed exhibits shall not be filed with the Office of the Secretary of the Commission.

### 8.7.2.    Service of Proposed Exhibits upon Administrative Law Judge.

Just before, or during the evidentiary hearing, the parties shall provide the Administrative Law Judge with copies of the exhibits they plan to introduce, including an electronic PDF version of a list of proposed exhibits, along with a proposed exhibit list through a Box link that will be provided both before, during and after a hearing.

### 8.7.3.    Maintenance and Filing of Final Exhibits and Final Exhibit List.

Before and after the evidentiary hearing, each party will be sent a Box link into which their preliminary and final exhibit lists and exhibits should be uploaded.  Each party must submit a final exhibit list in conformity with Ground Rule 8.7.5, and the Procedural Schedule that reflects the status of all exhibits, including those admitted and rejected during the hearing. Any withdrawn exhibit shall be identified on the final exhibit list only, by exhibit number, and shall indicate that it has been withdrawn.  Withdrawn exhibits are not to be submitted; however, the rejected exhibits will be retained with the official record.

The parties are responsible throughout the course of the hearing for updating the exhibit lists and exhibits as well as for confirming that all admitted and rejected exhibits are included in the final exhibit list at the conclusion of the hearing.

A semi-final exhibit list should be submitted to Box through the link provided no later than 5 p.m. on the seventh day after the last day of the hearing. The exhibits should be organized as: (i) Admitted Confidential; (ii) Admitted Public; (iii) Rejected Confidential; and (iv) Rejected Public.  The exhibits should be submitted to the Administrative Law Judge's assistant by appointment.  The Administrative Law Judge's assistant will review the exhibits with the parties and notify them of any necessary corrections.  It is advisable to leave time between the appointment with the Administrative Law Judge's assistant and the final

submission deadline in order to make any corrections needed. Please be timely and courteous when working with the Administrative Law Judge's assistant on the submission of these exhibit sets.

All documents submitted as exhibits should be dated. If there are multiple iterations of the same documents, those multiple iterations should be dated. If, for example, screen shots of web sites are used, then the dates the screen shots were taken along with the https://address should be provided.

The parties are responsible for confirming that all admitted and rejected exhibits are included in the final filed exhibits. Any exhibits that are not included on the final exhibit list will not be considered as part of the record to be certified to the Commission when the final initial determination issues.

The Commission set of exhibits shall be uploaded using the Box platform with separate folders for each type of exhibit, e.g., CX (Public), CX (Confidential), etc. The exhibits must be PDF files and any file larger than 25MB shall be broken up into separate files. A Table of Contents file in PDF format which lists the names of all files in each folder should be created and included in each folder. Rejected exhibits should be provided in separate folders. Any exhibits that are not included with the Commission exhibits and on the final exhibit list at the conclusion of the hearing will not be considered as part of the record to be certified to the Commission when the final initial determination issues. "Each type of exhibit (i.e., CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-{four digit number}C, CDX-{four digit number}C, RX-{four digit number}C, RDX-{four digit number}C, JX-{four digit number}C, JDX-{four digit number}C, SX-{four digit number}C, and SDX-{four digit number}C) must be submitted on a different [disc] or set of [disc]s so they may be uploaded and labeled more reliably by Docket[] Services. Each disc "must have a label with the investigation name and number, and the range of exhibits contained thereon."

If the appropriate permission is received pursuant to Commission Rule 19 C.F.R. § 210.4(f)(8) and The Handbook of Filing Procedures § II.C(3)(a) to submit the Commission Set on paper, the following shall apply. In order to facilitate the optical scanning of the exhibits, the exhibits in the Commission Set shall consist of loose sheets (which may be clipped but not stapled) in folders (file folders, accordion folders, etc.) that are provided in sequentially numbered boxes. Each folder must be labeled to reflect the number of the exhibit contained therein, e.g., RX-0014C. In each box of the Commission Set, the folders containing the exhibits shall be placed in numerical order. Confidential exhibits and public exhibits shall be placed in separate boxes which are clearly marked as containing either confidential or public exhibits. *See* Ground Rule 8.6.5. Because public and confidential exhibits are to be placed in separate boxes, numerical gaps may appear in each box, e.g., the public box may contain exhibits CX-0001, CX-0002 and CX-0004, while the confidential box may contain CX-0003C and CX-0005C.

***Finally, every exhibit that has been identified in the Pre-Hearing Briefs must use the same exhibit numbers in Post-Hearing Briefs and in the final submitted exhibit lists. The parties should take care not to withdraw exhibits they have used or are using in motions to strike or for offers of proof.***

*The final Exhibit List and Exhibits will be due two (2) days before each Party files its post-hearing brief.*

### 8.7.4.    Numbering and Labeling of Exhibits; Confidential Exhibits.

All exhibits or copies of exhibits shall be clear and legible. Each exhibit shall be identified by placing a label bearing the exhibit's **four-digit**[25] number (*e.g.*, CX-0003C or RX-0005) in the upper right portion of the exhibit's first page. Each exhibit may be assigned no more than one number. Further, the pages of each exhibit must be sequentially numbered in a consistent location on the pages and in a manner that will not permanently conceal information that is included in the exhibit. Except for good cause shown, each exhibit shall consist of no more than one (1) document, and every page of every document shall be Bates numbered in accordance with Ground Rule 3.6. Exceptions to this "one document per exhibit" rule include instances when it would be appropriate to group certain documents together as a single exhibit, such as a group of invoices or related e-mails.

Respondent(s) shall coordinate their numbering to avoid duplication. Additionally, all parties shall coordinate exhibits to avoid unnecessary duplication (*e.g.*, patents; file wrappers).

If any portion of an exhibit contains confidential business information, the entire exhibit shall be treated as confidential. For certain lengthy exhibits of which only portions are confidential, the parties may be asked to submit a public version of the exhibit.

If an exhibit (including physical or demonstrative exhibits) contains confidential business information, a "C" shall be placed after the exhibit number. Furthermore, exhibits containing confidential business information shall also be marked according to the Protective Order requirements, preferably on every page. Exhibit lists must also reflect whether exhibits contain confidential business information by placing a "C" after the exhibit number in the listing. No exhibit list shall contain confidential information; all exhibit lists shall be public documents.

For exhibits submitted electronically, in accordance with Ground Rule 8.7, public and confidential exhibits should be submitted separately. Each submission should have an accurate table of contents.

### 8.7.4.1.    Documentary Exhibits.

Written exhibits shall be marked in order beginning with the number "0001" and preceded by the prefix "CX" for Complainant's exhibits, "RX" for Respondent(s)' exhibits, "SX" for the Commission Investigative Staff's exhibits (if applicable), and "JX" for any joint exhibits. The parties shall not "reserve" numbers but instead must assign all numbers to the exhibits in their proper order.

---

[25] All exhibits submitted to the Commission are now required to have "a four-digit exhibit number, with leading zeros as necessary."

### 8.7.4.2.        Physical Exhibits.

Physical exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CPX", "RPX", "SPX" and "JPX", for Complainant, Respondent, the Staff (if applicable), and joint exhibits, respectively. For the Commission Set, physical exhibits should be boxed and provided to the Administrative Law Judge's assistant no later than the second day after the close of the evidentiary hearing, by appointment. *See* Ground Rule 8.6.4 above. Physical exhibits that have been admitted into evidence are retained by the Commission. A party may request permission from the Administrative Law Judge to substitute a photograph for an admitted physical exhibit prior to the deadline for submission of exhibits.

All Exhibits must be labeled with their content as well as according to the numbering scheme identified above.

### 8.7.4.3.        Demonstrative Exhibits.

Demonstrative exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CDX", "RDX", and "SDX", for Complainant, Respondent(s), and the Staff (if applicable), respectively. Additionally, the parties shall provide the Administrative Law Judge with two (2) double-sided copies of key demonstrative exhibits (*e.g.*, charts, drawings, etc.) reduced to 8 ½ inches x 11 inches for use during the hearing. If applicable, demonstrative exhibits shall indicate what documentary or physical exhibit was the source for its creation.

The parties may seek to have demonstrative exhibits admitted into evidence, for substantive or solely for demonstrative purposes. Such designation must be made clear on the record at the time of admission. Admitted demonstrative exhibits must be submitted with the ALJ and Commission Sets pursuant to Ground Rules 8.6.4 and 8.7.

### 8.7.4.4.        Joint Exhibits.

If agreed to by parties, they may submit joint documentary exhibits, including for example, a patent in issue, prosecution history, etc.

The joint documentary exhibits shall include an index which identifies the parties that have submitted each joint exhibit and should be arranged based on the various groups offering such exhibits. For example, if complainant and respondent A have offered a series of joint documentary exhibits, those exhibits would appear as the first group of joint documentary exhibits in the joint documentary exhibit index. The index would then include all joint documentary exhibits offered by complainant and respondent B, then joint documentary exhibits offered by complainant and respondent C, etc.

### 8.7.5.        Exhibit Lists.

Every exhibit list shall include a table enumerating all exhibits consecutively by exhibit number and identifying each exhibit by a descriptive title, a brief statement of the purpose for which the exhibit is being offered in evidence, the name of the sponsoring witness, and the

status of receipt of the exhibit into evidence.

Every joint exhibit list shall identify each exhibit, and the parties shall meet and confer before submitting the lists for the purpose of seeking an agreement on a common descriptive title, statement of purpose, and sponsoring witnesses that shall appear on every list for each joint exhibit.

In any exhibit list submitted before the offer of an included exhibit into evidence, the entry in the column for the status of receipt shall be left blank. In any exhibit list submitted after the exhibit is offered into evidence or withdrawn, the entry in that column shall show the date of admission into evidence or rejection of the exhibit or shall indicate its withdrawal.

Exhibit lists shall include public and confidential exhibits, and shall list all exhibits together in (four-digit) numerical order, *e.g.*, CX-0001, CX-0002, CX-0003C, CX-0004, CX-0005C, etc. Exhibit lists are public documents and should not contain confidential business information.

*Again, all exhibit lists should explain the content of the exhibit as well as contain the alpha character or number, and whether it has been withdrawn. A description of each exhibit should not exceed 35 characters. A file may not exceed 25MB. See infra.*

### 8.7.6.    Witness Exhibits.

In questioning a witness on direct examination, cross-examination, or examination of an adverse witness during the hearing, counsel shall provide the witness, and other counsel, before the commencement of the examination, with a binder (or binders) (or if done electronically by e-mail or FTP, or for the ALJ, electronically) containing all the exhibits that the examining attorney intends to use with that witness. If a binder is used (as the parties choose), it should contain double-sided exhibits, in numerical order and individually tabbed. Each witness binder must be labeled on its spine with the name and number of this Investigation and the nature of the contents of the binder, *e.g.*, Cross-Examination of Witness - Volume 1 of 1. In addition, the front of the witness binder must include a table of contents.

If there are certain exhibits (*i.e.* patent, prosecution histories) that will be used frequently with more than one witness, a separate exhibit binder (unless service is made electronically) containing those exhibits may be used with those witnesses and those exhibits may be omitted from the individual witness binders, or as the parties agree.

### 8.7.7.    Authenticity.

All documents that appear to be regular on their face shall be deemed authentic, unless it is shown by other evidence that the document is not genuine.

### 8.7.8.    Sponsoring Witness.

Each exhibit that is offered into evidence shall have a "sponsoring witness." One of the purposes for a sponsoring witness is to establish a foundation for the exhibit and to prevent

exhibits from entering the record that have not been adequately explained. Sponsoring witness testimony does not have to be in the form of oral testimony if all parties agree to allow otherwise. For example, if the parties are willing to stipulate and agree to designate portions of deposition testimony, along with certain exhibits that were discussed during the deposition, such request will generally be permitted upon the filing of a motion demonstrating good cause, as long as the exhibit was clearly identified and discussed during the deposition and the deposition pages discussing the exhibit are included in the designation.

Except for investigations without a participating respondent, if a party believes evidence to be non-controversial and appropriate for admission into evidence without a sponsoring witness, that party may present with each such exhibit on or before the due date set forth in the procedural schedule (i) an affidavit or declaration that the declarant prepared or someone under the declarant's direction prepared the exhibit; (ii) a request that the exhibit be received in evidence without a witness at the hearing; and (iii) a statement of grounds for receiving the exhibit in evidence without a witness at the hearing. Any party who wishes to cross-examine the declarant may object in writing within three (3) days of service of the affidavit or declaration and request, specifying whom the party intends to examine. In the absence of objections, and upon good cause being shown, the Administrative Law Judge may in her discretion admit the exhibit in evidence without a witness.

## 8.8.        Filing of Exhibits.

The procedure for submitting exhibits on electronic media is set forth in the Docket Services section of the U.S. International Trade Commission's website. Please contact Dockets directly from the website.

Directions for uploading to the ALJ's Box account before and after the evidentiary hearing will be provided before the evidentiary hearing. An e-mail link will be provided to one individual (and preferably a back-up person) from each party, and if there are joint exhibits, to the individual designated to upload joint exhibits, who will be responsible for uploading documents to the ALJ's Box account. Please note that only the ALJ and her staff will have access to those documents once submitted.

## 9.        Hearing Procedure.

## 9.1.        Order of Examination.

Unless altered during the pre-hearing conference, or as necessitated by exigent circumstances such as the unavailability of witnesses on certain days, the order of examination at the hearing is as follows:

(1)    Complainant's Case-in-Chief.

(2)    Respondent's Case-in-Chief. In the event there is more than one respondent, the order of presentation will be determined at the pre-hearing conference. Respondents should avoid unnecessary repetition of testimony or other evidence.

(3)    Staff's Case-in-Chief (if applicable).

(4)     Complainant's Rebuttal.  Complainant's rebuttal, absent prior approval, shall be limited to the scope of Respondent's defense case.

(5)     Respondent's Rebuttal.  Respondent's rebuttal, absent prior approval, shall be limited to the issues for which Respondent carries ultimate burden of proof.

## 9.2.    Opening Statement and Closing Argument.

The Administrative Law Judge does not require opening statements and closing arguments.  The parties may present opening statements.  Opening statements are limited to one (1) hour for the complainant, one (1) hour for respondent(s), and thirty (30) minutes for Staff (if applicable).  The parties may make a request to present closing arguments.

## 9.3.    Hearing Hours.

Normal hearing hours are 9:30 a.m. to 5:30 p.m., with a one (1) hour luncheon recess beginning each day at approximately 12:15-12:30 p.m.  Also, there will be a morning and an afternoon break of approximately fifteen (15) minutes each.

## 9.4.    Hearing Decorum.

### 9.4.1.    Conversations at Hearing.

No audible discourse between opposing counsel will be permitted while the hearing is in session.  If an attorney has anything to address to opposing counsel, it must be done through the Administrative Law Judge.

### 9.4.2.    Cell Phones and Beepers; Food and Beverages.

Audible cell phone and beeper signals shall be turned off in the courtroom during hearing, and all cell phone conversations must occur outside the courtroom.  No food or drink other than water is permitted in the courtroom during hearing.

### 9.4.3.    Swearing of Witnesses.

Each witness shall stand while being administered the oath of affirmation.  All others in the hearing room should remain seated and quiet.

### 9.4.4.    Arguments on Objection.

Arguments or objections may only be made by counsel prior to a ruling.  Once a ruling is made, no further discussion of the matter will be permitted.  The basis for the objection must be stated; general objections are not acceptable.

**9.5.**          **Examination of Witnesses.**

**9.5.1.**          **Scope of Examination.**

Except in extraordinary circumstances, examination of witnesses for Complainant(s)' case-in-chief and Respondent(s)' case-in-chief shall be limited to direct, cross, redirect, and re-cross.

**9.5.2.**          **Scope of Cross-Examination.**

Cross examination is typically limited to the scope of the direct examination. For witnesses called for the purpose of giving testimony in support of a position on an issue that is the same as the position on that issue of a party desiring cross-examination of that witness, that party is precluded from asking that witness leading questions, *i.e.* "no friendly cross-examination."

When counsel is presenting a witness with a question that refers back to the witness's previous testimony, counsel shall refrain from summarizing the witness's previous testimony because this can lead to a time-consuming objection that counsel's summary was not an accurate recitation of the witness's previous testimony. If counsel wishes to refer back to a witness's previous testimony, counsel must use direct quotations.

**9.5.3.**          **Scope of Redirect and Re-Cross Examination.**

Redirect examination is limited to matters brought out on cross-examination. Re-cross examination is limited to matters brought out on redirect examination.

**9.5.4.**          **Coordination of Witnesses.**

The parties are expected to conduct their witness examination in a matter that will adhere to the total time allotted for the hearing.

**9.5.5.**          **Documents Presented to Witnesses.**

Any document that an attorney wishes to show a witness must first be shown to opposing counsel.

**9.5.6.**          **Scope of Expert Witness Testimony.**

Expert witness testimony at the hearing shall be confined to the scope of the expert's report(s), and deposition testimony. The proponent of the witness is expected to be prepared to demonstrate promptly where in that witness's reports or deposition may be found each element of testimony sought to be elicited at the hearing.

### 9.5.7.    Coordination of Respondents' Cross-Examination.

Respondents are expected to coordinate cross-examination through one attorney as far as practicable to avoid duplication. If that is not possible, counsel who intend to cross-examine must be present in the hearing room during the entire preceding cross-examination of the witness so as not to engage in repetitive questioning.

### 9.5.8.    Requests for Clarification of a Question.

Requests for clarification of a question may only be made by the witness or the Administrative Law Judge.

### 9.5.9.    Use of Translators.

If a translator will be used at the hearing, the parties are responsible for obtaining a qualified, neutral translator on whom they can agree. It is suggested that the translator be chosen from a list of approved translators, such as the ones maintained by various federal courts and federal agencies. Translators will be administered an oath or affirmation.

### 9.5.10.    Conferring with a Witness during a Break in Testimony.

Counsel or intermediaries shall not confer with a witness during a break in the witness's testimony on the witness's substantive testimony.

### 9.6.    Transcript.

The parties have the option of arranging for the hearing transcript in real time. The Administrative Law Judge prefers to have hearing transcripts in real time. The parties should monitor the admission of exhibits on the transcript as it comes out and promptly bring any errors or omissions to the Administrative Law Judge's attention at the hearing.

If a transcript needs to be corrected after the conclusion of the hearing, the party requesting the change shall do so through a motion. Once an order issues adopting the proposed correction, it is incumbent upon the party requesting the change to send a copy of the order to Ace-Federal Reporters, Inc. so that the corrections can be made.

### 9.7.    Bench Briefs.

Bench briefs, if they are permitted by the Administrative Law Judge during the hearing, must be filed on EDIS as motions and must comport with the Commission Rules and Ground Rules relating to motions.

### 9.8.    Objections to Evidence/Testimony and Motions to Strike.

During the hearing, any evidentiary objections or motions to strike that cannot be resolved on the spot will be subject to a written motion not to exceed five (5) pages with no more than 10 pages of attachments, unless leave is requested from the Administrative Law

Judge and given.  Any such motion must be filed on EDIS the same day as raised during the hearing unless otherwise changed by the Administrative Law Judge.  The response must be filed the next day, unless granted leave for a different deadline, and will be subject to the same page limits as the motion to strike.  References to exact pages and lines of testimony or documents to be stricken must be included.  Testimony citations and sections/paragraphs from an expert report (with cover page and date thereof) should be attached, with the surrounding testimony, or relevant portions of the expert report(s).  No more than two (2) motions to strike will be allowed during the hearing by complainants as a group or respondents as a group (or by each party in a group if they do not share an identity of interests).

If a party who files a motion loses the motion on a ruling that is made during the hearing, that party will be penalized by a time deduction that it took for argument and the ruling.

Post-hearing motions to strike brought separately from MILs or motions to strike made during an evidentiary hearing are discouraged.  No more than one (1) motion to strike will be allowed post-hearing without leave by complainants as a group and respondents as a group (or by each party in a group if they do not share an identity of interests).

**10.          Post-Hearing Submissions.**

Parties may devote a maximum of 150 pages to post-hearing briefing, excluding attachments, absent prior leave from the Administrative Law Judge.  Although these rules contemplate a party devoting no more than 100 pages to an initial post-hearing brief and no more than 50 pages to a post-hearing reply brief, any party may allocate its 150 pages of post-hearing briefing, as it sees fit, between an initial post-hearing brief and a post-hearing reply brief.  For example, without leave, a party can devote 75 pages to each brief.

**10.1.          Initial Post-Hearing Briefs.**

On or before the date set forth in the procedural schedule, the parties shall file a post-hearing brief on the issues for which they have the burden of proof.  Absent approval by the Administrative Law Judge said brief shall consist of no more than fifty (50) pages of relevant attachments.  In addition, each party shall file a copy of its final exhibit list.  Courtesy copies of all post-hearing briefs and final exhibit lists shall be submitted in binders, preferably not exceeding 3" in width.

The post-hearing brief for each party shall discuss the issues and evidence tried (through, *e.g.*, citations to specific supporting evidence) within the framework of the general issues determined by the Commission's Notice of Investigation, identified in the joint issue chart for which that party bears the burden (except Staff), and any permitted amendments thereto.  All other issues shall be deemed waived.[26]

---

[26] *Certain Automated Media Library Devices*, Inv. No. 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013).

The parties' initial post-hearing briefs must follow the order set forth in the joint issue chart.

Additionally, if a claim, argument or issue was briefed in a pre-hearing brief, but the party who raised the issue or made the argument did not adduce evidence on the same during the evidentiary hearing, then any such issue should be identified in the joint issue chart with the page numbers to each party's brief where such an unsupported issue or argument appears in a party's pre-hearing brief, and it shall be deemed waived.

The parties should not attempt to bypass the page limits by attaching[27] dense appendices, incorporating other documents by reference, such as a pre-hearing brief, or cross-referencing other sections of the post-hearing brief.

*Neither should they change fonts to enhance words or use footnotes in lieu of text. Case citations should be in the text body, not in footnotes.* In the same vein, the parties should set forth a clear, concise analysis of fact and law for each issue, and should not substitute their discussion of supporting facts with long string cites to the evidence. For example, a heading with a single sentence beneath it, followed by cites to thirty-five evidentiary citations is not likely to be a sufficient analysis of fact and law, particularly if an issue is disputed. Furthermore, arguments should not be hidden in footnotes but should instead be presented in a straightforward and visible manner. The initial post-hearing brief is the most critical brief in the Investigation, and parties that do not set forth an articulate analysis may find they have failed to carry their burden on a particular issue.

The parties should make sure they understand the law for each issue and touch upon all the elements for an issue. For example, an analysis relating to a 35 U.S.C. § 103 obviousness defense should encompass a discussion of the scope and content of the prior art, the level of ordinary skill in the art, a comparison of the claimed invention and the prior art, and any secondary considerations of non-obviousness—not just a comparison of the claimed invention and the prior art. A discussion of whether a domestic industry product, accused product, or prior art reference does *or does not* meet an asserted patent claim should prominently identify what elements are disputed. If an element is not in dispute, each party must identify it with equal clarity or risk waiver of any opposition.

The parties are further advised to carefully select their best arguments, and set them forth in a logical, reasoned, persuasive manner. The method of spilling out every possible permutation of evidence in an unordered series of one sentence arguments until the allotted space is exhausted is not likely to be effective. The Administrative Law Judge may, in her discretion, treat only a few of the strongest arguments in such a case and ignore the remainder.

Staff will be permitted to change its pre-hearing position(s) on invalidity and infringement after the evidentiary hearing ("Hearing") where the evidence that came in during a

---

[27] The parties are likewise barred from attaching evidence that is not in the record and that should have been offered during the hearing. For example, if an exhibit containing an expert report was not admitted at the hearing, then it should not be attached to a post-hearing brief. To the extent such an exhibit might be necessary to argue that another party's argument was waived or should be stricken, this must be introduced by way of separate motion papers and must not be submitted with any post-hearing briefing.

Hearing appears to Staff to warrant such a change in its previous position. Staff will have seven (7) days after the last day of the evidentiary hearing to file a "Notice" on EDIS that it has changed its position. Staff should identify its filing on EDIS as a "Post-Hearing Notice." Staff should identify each issue on which it has changed its position, and explain why, citing to evidence from the hearing. The filing should be limited to 15 pages unless Staff requests leave to file a longer notice and explains why. The other parties will have seven (7) business days to respond to Staff's Notice. They may respond but need not and it will not be held against the parties. However, the parties will be expected to address Staff's change in position in post-hearing briefs.

**10.2.        Post-Hearing Reply Briefs.**

On or before the date set in the procedural schedule, the parties shall file a post-hearing reply brief. Absent prior approval of the Administrative Law Judge said brief shall consist of no more than twenty (20) pages of relevant attachments. The post-hearing reply brief shall discuss and rebut only the issues and evidence raised in the initial post-hearing brief of an opposing party and follow the joint issue chart accompanying the pre-hearing and initial post-hearing briefs as set forth in Ground Rule 7.3.

**10.3.        Proposed Findings of Fact**

In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law. The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such. If a party chooses to file proposed findings of fact and conclusions of law, they must be filed on the same date as the initial post-trial brief.

The proposed findings of fact shall be in the form of numbered paragraphs. The findings shall reflect all section 337 elements, all issues outlined in the Notice of Investigation, and any other issues that arose during the course of the Investigation. Section headings consistent with the outline of the post-hearing brief may be used to set off paragraphs that relate to particular section 337 elements or issues. To be accepted without alteration, a proposed finding of fact must be an assertion of fact only (i.e., without argument more appropriately placed in the post-hearing brief). Each proposed finding of fact must be followed with citations to support authority in the evidence.

**11.        NEXT Advocates Program**

In accordance with the NEXT Advocates Program initiated by the Commission's Office of Administrative Law Judges,[28] the parties are encouraged to provide opportunities for less experienced attorneys (i.e., those that have given three or fewer substantive oral arguments or witness examinations in any federal tribunal) to participate in substantive oral presentations during the investigation and/or to examine witnesses during the evidentiary hearing.

---

[28] *See* NEXT Advocates Program Announcement,
https://www.usitc.gov/next_advocates_nurturing_excellence_in_trial_advocates.htm.

A party should submit a proposal to Chambers requesting accommodations that would support participation in the NEXT Advocates program.  For example, a proposal could request additional trial time to permit a less-experienced attorney to examine a witness during the evidentiary hearing.  Or, a proposal might request a hearing on a summary determination motion or on another issue dispositive to the issue, where at least one party commits to permitting a less-experienced attorney to argue a substantive portion of the motion.

As set forth in the NEXT Advocates program announcement on the Commission website, more-experienced attorneys will be permitted to assist less-experienced attorneys, if necessary, and to clarify any statements on the record before conclusion of the hearing if necessary.

The proposal should include a certification by lead counsel that explains the expected participation of one or more less-experienced attorneys.  The certification need not identify the name of the less-experienced attorneys or the witnesses who will be examined, just the law firm.  Submissions should be sent to McNamara337@usitc.gov and need not be filed on EDIS.

## 12.        Citations.

### 12.1.            Citations Generally.

The parties should not substitute their discussion of supporting facts with long string cites to the evidence.  No combination charts of citations of any kind will suffice by themselves.  Such arguments may be stricken.

Any party that cites to foreign language documents or provisions contained in foreign language documents in claim charts and discovery documents is required without exception to provide translations of the documents or provisions.  Any document or portion of a document that circumvents this Ground Rule, or that mis-translates or mis-characterizes the foreign language, may be stricken.

All citations to case law and evidence must be included in the text of the motion/response /brief/document, i.e., not in footnotes.

### 12.2.            Citation to Cases.

Every party must cite to the specific page(s) of the cited decision or order that includes the holding for which the authority is cited.  The official case reporter citation must be included for any published decision or order that is cited in a party's briefs or pleadings.  Additionally, the docket number and the full date of the disposition must be included in the citation of any unreported decision or order that is referenced by the parties.  Citations to unreported cases or those without precedential authority should be clearly marked with a parenthetical in the brief or pleading.  For example, such a citation might read:

*Case Name*, ### F.3d ###, at ## (Fed. Cir. ####) (nonprecedential).

A copy of any cited decision or order that is not available on EDIS, LEXIS, or WESTLAW shall be provided in an appendix to the brief or pleading.

**13.          Cooperation among Parties.**

Because of the time limitations imposed by Section 337, all counsel shall attempt to resolve, by stipulation or negotiated agreement, any procedural disputes encountered, including those relating to discovery and submission of evidence.  To assure the proper cooperative spirit in this Investigation, continuing good faith communications between counsel for the parties is essential and is expected.

**14.          *Ex Parte* Contacts.**

There shall be no *ex parte* communication with the Administrative Law Judge.  Any questions of a technical or procedural nature shall be directed to the Administrative Law Judge's Attorney Advisor.  Except for service of electronic copies pursuant to Ground Rule 1.3.2, the parties should take care not to copy the Attorney Advisor on email communications not specifically directed to them.

Informal communications with the Administrative Law Judge's Attorney Advisor or Chambers via email or telephone shall not be referenced in briefs, documents, or papers filed on EDIS.  Otherwise, formal communications on EDIS only will be entertained.

The parties should note that the Docket Manager for this Investigation, as well as other staff in Docket Services and the Administrative Law Judge's Secretary, should not be contacted relating to such issues as whether an order has been signed, when an order posted on EDIS will be processed, whether an order posted on EDIS will go out by overnight courier or U.S. Mail (as opposed to an issue of non-receipt several days later).  This is not to say that Docket Services may never be contacted with respect to this Investigation.  If the parties have generic questions relating, e.g., to a party filing, such an inquiry would be appropriate.  However, Docket Services' staff members are not allowed to give out information relating to the status of the Administrative Law Judge's orders.  The Docket Manager for this Investigation and the Administrative Law Judge's Secretary may log any inappropriate calls made in this Investigation and bring them to the attention of the Administrative Law Judge if necessary.

**15.          Mediation.**

The Commission has approved the initiation of a voluntary mediation program for investigations under Section 337 of the Tariff Act of 1930 as amended, to facilitate the settlement of disputes.  Parties who wish to participate in the mediation program should notify the Administrative Law Judge's Attorney Advisor.

**APPENDIX A**

-1-

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

| |
|---|
| **In the Matter of** |
| **Certain . . .** |

**Investigation No. 337-TA-___**

**[SAMPLE] APPLICATION FOR ISSUANCE OF SUBPOENA AD TESTIFICANDUM**

[Party name], pursuant to 19 C.F.R. § 210.32(a)(1), hereby applies to the Administrative Law Judge for the issuance of the attached subpoena *ad testificandum* to:

[Name]
[Address]

The subpoena *ad testificandum* requires [Name] to appear and testify at the taking of a deposition on [date], at [location], or at such other date and location as is mutually agreed upon.

[Party name] believes that [Name] may be in possession of substantial information relevant to this Investigation. [Insert explanation re relevance, *see* Ground Rule 3.5.1.] Furthermore, the topics identified in Attachment A of the subpoena are narrowly tailored to address only the aforementioned subjects. [Insert explanation re reasonableness of the scope of inquiry, *see* Ground Rule 3.5.1.]

[Name] will receive the application and subpoena by overnight delivery, if not sooner, and all other parties to this Investigation will receive them on the next business day, at the latest, after the subpoena has issued. For the reasons set forth above, [Party name] respectfully requests that its application for issuance of a subpoena *ad testificandum* be granted and the attached

-2-

subpoena be issued.

Dated: _____, 20__                              Respectfully submitted,

                                                   _____
                                                   [Counsel]
                                                   [Address]

                                                   *Counsel for* [Party Name]

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

| |
|---|
| **In the Matter of** |
| **Certain . . .** |

**Investigation No. 337-TA-___**

## [SAMPLE] SUBPOENA DUCES TECUM

TO:    NAME
         ADDRESS

      TAKE NOTICE:  By authority of Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by ["Complainant(s)" / "Respondent(s)"/ etc., followed by name of company] _____,

      YOU ARE HEREBY ORDERED to produce at _____, on _____, or at such other time and place agreed upon, all of the documents and things in your possession, custody or control which are listed and described in Attachment A hereto.  Such production will be for the purpose of inspection and copying, as desired.

      If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.  The privileged document list must identify each document separately, specifying for each document at least: (i) the date the information was created or communicated; (ii) author(s)/sender(s); (iii) all recipient(s); and (iv) the general subject matter contained in the document.  The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.  If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.  The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

      If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

      Any motion to limit or quash this subpoena shall be filed within ten (10) days after the receipt hereof.  At the time of filing of any motion concerning this subpoena, two (2) double-sided courtesy copies shall be served concurrently on the Administrative Law Judge at her office.

-4-

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set her hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this ___ day of _____, 20__.


_____
MaryJoan McNamara
Administrative Law Judge
United States International Trade Commission

**APPENDIX B**

EXAMPLE OF OUTLINE FOR ALL BRIEFS

I.    INTRODUCTION
       A. Procedural History
       B. The Parties
       C. Overview of the Technology
       D. The Patents at Issue
       E. The Products at Issue

II.    JURISDICTION AND IMPORTATION

III.    PATENT "A"[29]
       A. Claim Construction
              1. Define Level of Skill of a Person of Ordinary Skill in the Art
              2. First Disputed Claim Term (Claims 1, 2, 3, . . .)
              3. Second Disputed Claim Term (Claims 1,*2*,3, . . .)
       B. Infringement
              1. Claim 1
              2. Claim 2
       C. Technical Domestic Industry
       D. Validity
              1. Anticipation Under 35 U.S.C. § 102
              2. Obviousness Under 35 U.S.C. § 103
                     a. The scope and content of the prior art
                     b. The level of ordinary skill in the art
                     c. Comparison of the claimed invention and the prior art
                     d. Secondary considerations of non-obviousness
       E. Unenforceability
       F. Other Defenses

IV. PATENT "B" ...

V. ECONOMIC DOMESTIC INDUSTRY (all patents)
       A. Significant Investment in Plant and Equipment
       B. Significant Employment of Labor or Capital
       C.  …

VI. REMEDY AND BONDING

---

[29] The parties are required to confer and follow the same order of patents for all briefing.

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY**          **Inv. No. 337-TA-1472**
**(DRAM) DEVICES, PRODUCTS CONTAINING THE SAME,**
**AND COMPONENTS THEREOF**

<u>**PUBLIC CERTIFICATE OF SERVICE**</u>

  I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served via EDIS upon the Commission Investigative Attorney, **Thomas Halkowski**, **Esq.** and the following parties as indicated, on **December 31, 2025**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

<u>**On Behalf of Complainant Netflist, Inc.:**</u>

Daniel E. Yonan                                    ☐ Via Hand Delivery
**STERNE, KESSLER, GOLDSTEIN, & FOX PLLC**        ☐ Via Express Delivery
1001 K Street NW, 10th Floor                       ☐ Via First Class Mail
Washington, DC 20005                               ☒ Other: Email Notification
Email: dyonan@sternekessler.com                    of Availability for Download

<u>**Respondents:**</u>

Samsung Electronics Co., Ltd.                      ☐ Via Hand Delivery
129 Samsung-ro, Yeongtong-gu,                      ☐ Via Express Delivery
Suwon, Gyeonggi-do, 443-742                        ☒ Via First Class Mail
Republic of Korea                                  ☐ Other: Service to Be
                                                   Completed by Complainant

Samsung Electronics America, Inc.                  ☐ Via Hand Delivery
6625 Excellence Way                                ☐ Via Express Delivery
 Plano, Texas 75023                                ☒ Via First Class Mail
                                                   ☐ Other: Service to Be
                                                   Completed by Complainant

Samsung Semiconductor, Inc.                        ☐ Via Hand Delivery
6625 Excellence Way                                ☐ Via Express Delivery
 Plano, Texas 75023                                ☒ Via First Class Mail
                                                   ☐ Other: Service to Be
                                                   Completed by Complainant

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY**                    **Inv. No. 337-TA-1472**
**(DRAM) DEVICES, PRODUCTS CONTAINING THE**
**SAME, AND COMPONENTS THEREOF**

Certificate of Service – Page 2

Google LLC                                   ☐ Via Hand Delivery
1600 Amphitheatre Parkway                    ☐ Via Express Delivery
Mountain View, California 94043              ☒ Via First Class Mail
                                             ☐ Other: Service to Be
                                             Completed by Complainant

Super Micro Computer, Inc.                   ☐ Via Hand Delivery
980 Rock Ave.                                ☐ Via Express Delivery
San Jose, California 95131                   ☒ Via First Class Mail
                                             ☐ Other: Service to Be
                                             Completed by Complainant

# Attachment D

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**In the Matter of**

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF**

Investigation No. 337-TA-_____

## COMPLAINT UNDER SECTION 337 OF THE
## TARIFF ACT OF 1930, AS AMENDED

**Complainant:**

Netlist, Inc.
111 Academy Way
Suite 100
Irvine, CA 92617

**Counsel for Complainant:**

Daniel E. Yonan
Donald R. Banowit
William H. Milliken
Richard M. Bemben
Lauren A. Watt
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1101 K Street NW, 10th Floor
Washington DC 20005
Tel.: (202) 371-2600

Jason Sheasby
Annita Zhong, PhD
Andrew Strabone
Lisa Glasser
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel.: (310) 277-1010

**Proposed Respondents:**

Samsung Electronics Co., Ltd.
129 Samsung-ro, Yeongtong-gu,
Suwon, Gyeonggi-do, 443-742
Republic of Korea

Samsung Electronics America, Inc.
6625 Excellence Way
Plano, Texas 75023

Samsung Semiconductor, Inc.
6625 Excellence Way
Plano, Texas 75023

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

Super Micro Computer, Inc.
980 Rock Ave.
San Jose, California 95131

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.    COMPLAINANT ...................................................................................... 4

III.    RESPONDENTS ....................................................................................... 6

    A.    Samsung Respondents ................................................................... 6

    B.    Google.......................................................................................... 7

    C.    Super Micro ................................................................................. 9

IV.    THE TECHNOLOGY AND PRODUCTS AT ISSUE ................................. 9

V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTIONS OF
    THE INVENTIONS............................................................................... 10

    A.    The '366 and '731 Patents: Memory Modules with Power
        Management/Signal Correction ................................................... 10

        1.    U.S. Patent No. 12,373,366.................................................. 11

        2.    U.S. Patent No. 10,025,731.................................................. 12

    B.    The '608, '523, and '035 Patents: Memory Modules with Data Buffering......... 13

        1.    U.S. Patent No. 10,268,608.................................................. 13

        2.    U.S. Patent No. 10,217,523.................................................. 14

        3.    U.S. Patent No. 9,824,035.................................................... 16

    C.    U.S. Patent No. 12,308,087: High-Bandwidth Memory.................. 17

        1.    Identification and Ownership of the '087 Patent ..................... 17

        2.    Foreign Counterparts to the '087 Patent ................................ 18

        3.    Non-Technical Description of the '087 Patent ........................ 18

VI.    LICENSES.............................................................................................. 19

VII.    RESPONDENTS' INFRINGEMENT OF THE ASSERTED PATENTS ..................... 19

    A.    Infringement of U.S. Patent No. 12,373,366 ................................ 19

B.    Infringement of U.S. Patent No. 10,025,731 ...................................................... 19

C.    Infringement of U.S. Patent No. 10,268,608 ...................................................... 20

D.    Infringement of U.S. Patent No. 10,217,523 ...................................................... 20

E.    Infringement of U.S. Patent No. 9,824,035 ........................................................ 20

F.    Infringement of U.S. Patent No. 12,308,087 ...................................................... 20

G.    Indirect Infringement ........................................................................................... 21

VIII.  SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ......................... 21

IX.    HARMONIZED TARIFF SCHEDULE NUMBERS.................................................... 25

X.     THE DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS ........... 25

A.    Technical Prong .................................................................................................... 25

B.    Economic Prong..................................................................................................... 26

       1.    Netlist's Domestic Activities ..................................................................... 26

       2.    Licensee SK hynix's Domestic Activities ................................................. 28

XI.    RELATED LITIGATION ............................................................................................. 30

A.    '366 Patent ............................................................................................................ 30

B.    '731 Patent ............................................................................................................ 30

C.    '608 Patent ............................................................................................................ 31

D.    '523 Patent ............................................................................................................ 32

E.    '035 Patent ............................................................................................................ 33

F.    '087 Patent ............................................................................................................ 33

XII.   RELIEF REQUESTED................................................................................................. 34

**EXHIBIT LIST**

| No. | Description |
|-----|-------------|
| 1 | List of Exemplary Accused Products |
| 2 | U.S. Patent No. 12,373,366 |
| 3 | Assignment of U.S. Patent No. 12,373,366 as recorded in parent application 17/328,019 |
| 4 | U.S. Patent No. 10,025,731 |
| 5 | Assignment of U.S. Patent No. 10,025,731 as recorded in parent application 12/422,853 |
| 6 | U.S. Patent No. 10,268,608 |
| 7 | Assignment of U.S. Patent No. 10,268,608 as recorded in application 15/820,076 |
| 8 | U.S. Patent No. 10,217,523 |
| 9 | Assignment of U.S. Patent No. 10,217,523 as recorded in parent application 12/422,925 |
| 10 | U.S. Patent No. 9,824,035 |
| 11 | Assignment of U.S. Patent No. 9,824,035 as recorded in application 15/426,064 |
| 12 | U.S. Patent No. 12,308,087 |
| 13 | Assignment of U.S. Patent No. 12,308,087 as recorded in parent application 15/602,099 |
| 14 | List of Foreign and Domestic Counterparts to Asserted Patents |
| 15 | Public Version of List of Licensee(s) to One or More of the Asserted Patents (Redacted in Its Entirety) |
| 15C | Confidential Version of List of Licensee(s) to One or More of the Asserted Patents |
| 16 | Public Version of Infringement Chart for U.S. Patent No. 12,373,366 (Redacted in Its Entirety) |
| 16C | Confidential Version of Public Version of Infringement Chart for U.S. Patent No. 12,373,366 |
| 17 | Public Version of Infringement Chart for U.S. Patent No. 10,025,731 (Redacted in Its Entirety) |
| 17C | Confidential Version of Infringement Chart for U.S. Patent No. 10,025,731 |
| 18 | Public Version of Infringement Chart for U.S. Patent No. 10,268,608 (Redacted in Its Entirety) |
| 18C | Confidential Version of Infringement Chart for U.S. Patent No. 10,268,608 |

| No. | Description |
|-----|-------------|
| 19 | Public Version of Infringement Chart for U.S. Patent No. 10,217,523 (Redacted in Its Entirety) |
| 19C | Confidential Version of Infringement Chart for U.S. Patent No. 10,217,523 |
| 20 | Public Version of Infringement Chart for U.S. Patent No. 9,824,035 (Redacted in Its Entirety) |
| 20C | Confidential Version of Infringement Chart for U.S. Patent No. 9,824,035 |
| 21 | Public Version of Infringement Chart for U.S. Patent No. 12,308,087 (Redacted in Its Entirety) |
| 21C | Confidential Version of Infringement Chart for U.S. Patent No. 12,308,087 |
| 22 | Samsung, DRAM Module, Memory Modules for Extensive Use (last visited Sept. 25, 2025), https://semiconductor.samsung.com/dram/module/. |
| 23 | List of DDR5 RDIMMs, SODIMMs and UDIMMs exported from Samsung website https://semiconductor.samsung.com/dram/module/. |
| 24 | Receipt of the Domestic Purchase of Accused DDR5 RDIMMs, Part Number M321R8GA0BB0-CQKDS. |
| 25 | Receipt of the Domestic Purchase of Accused DDR5 RDIMMs, Part Number M321R8GA0PB2-CCPWF. |
| 26 | Samsung, Innovative Memory Solution: Samsung's MCRDIMM Targets High-Performance Computing (June 16, 2024), https://semiconductor.samsung.com/news-events/tech-blog/innovative-memory-solution-samsungs-mcrdimm-targets-high-performance-computing/. |
| 27 | Receipt of the Domestic Purchase of Accused DDR5 MRDIMM, Part Number M327R8GA0EB0-CLVXB. |
| 28 | Samsung, HBM, Next-Level Performance (last visited Sept. 25, 2025), https://semiconductor.samsung.com/dram/hbm/. |
| 29 | List of HBM2/2E and HBM3/3E High Bandwidth Memory exported from Samsung website https://semiconductor.samsung.com/dram/hbm/. |
| 30 | Samsung, Samsung Electronics Presents Vision for AI Memory and Storage at FMS 2025, Samsung Tech Blog (Aug. 21, 2025), https://semiconductor.samsung.com/news-events/tech-blog/samsung-electronics-presents-vision-for-ai-memory-and-storage-at-fms-2025/. |
| 31 | Bruno Ferreira, Samsung Earns NVIDIA Certification for its HBM3 Memory - Stock Jumps 5% as Company Finally Catches Up to SK hynix and Micron in HBM3E Production, Tom's Hardware (Sept. 22, 2025), https://www.tomshardware.com/tech-industry/samsung-earns-nvidias-certification-for-its-hbm3-memory-stock-jumps-5-percent-as-company-finally-catches-up-to-sk-hynix-and-micron-in-hbm3e-production. |

| No. | Description |
|---|---|
| 32 | Samsung 12H HBM3e Reportedly Clears NVIDIA Tests After 18-Month Setback, HBM4 Reaches Final Phase, TrendForce (Sept. 22, 2025), https://www.trendforce.com/news/2025/09/22/news-samsung-12h-hbm3e-reportedly-clears-nvidia-tests-after-18-month-setback-hbm4-reaches-final-phase//. |
| 33 | Wayne Williams, Samsung HBM Roadmap Shows Google Could Become NVIDIA's Fiercest Competitor in AI by 2026, but I Wonder What's Happening to Microsoft, techradar (Feb. 11, 2025), https://www.techradar.com/pro/samsung-hbm-roadmap-shows-google-could-become-nvidias-fiercest-competitor-in-ai-by-2026-but-i-wonder-whats-happening-to-microsoft. |
| 34 | Olivia Melendez, Now GA: C4 VMs with Local SSD, bare metal, and largetr shapes, on Intel Xeon 6, Google Cloud (July 31, 2025), https://cloud.google.com/blog/products/compute/c4-vms-based-on-intel-6th-gen-xeon-granite-rapids-now-ga. |
| 35 | Super Micro AS -8126GS-TNMR Datasheet |
| 36 | Super Micro AS -8125GS-TNMR2 Datasheet |
| 37 | TechInsight's Analysis of AMD's MI300X Reveals Samsung HBM3, TechInsights (last visited Sept. 25, 2025), https://www.techinsights.com/blog/techinsights-analysis-amds-mi300x-reveals-samsung-hbm3. |
| 38 | AMD, AMD Instinct MI350 Series and Beyond: Accelerating the Future of AI and HPC (June 12, 2025), https://www.amd.com/en/blogs/2025/amd-instinct-mi350-series-and-beyond-accelerating-the-future-of-ai-and-hpc.html. |
| 39 | Super Micro Hyper SuperServer SYS-212HA-TN Datasheet |
| 40 | Dylan Dougherty, Supermicro Hyper SuperServer SYS-212HA-TN Review (Intel Xeon 6 6980P), StorageReview (Jan. 24, 2025), https://www.storagereview.com/review/supermicro-hyper-superserver-sys-212ha-tn-review-intel-xeon-6-6980p. |
| 41 | Anton Shilov, Micron Unveils MRDIMMs for Intel Xeon 6: Up to 256GB DDR5-8800 Modules, Toms Hardware (July 19, 2025), https://www.tomshardware.com/desktops/servers/micron-unveils-mrdimms-for-intel-xeon-6-up-to-256gb-ddr5-8800-modules. |
| 42 | Public Version of Domestic Industry Chart for U.S. Patent No. 12,373,366 (Redacted in Its Entirety) |
| 42C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 12,373,366 |
| 43 | Public Version of Domestic Industry Chart for U.S. Patent No. 10,025,731 (Redacted in Its Entirety) |
| 43C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 10,025,731 |

| No. | Description |
|-----|-------------|
| 44 | Public Version of Domestic Industry Chart for U.S. Patent No. 10,268,608 (Redacted in Its Entirety) |
| 44C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 10,268,608 |
| 45 | Public Version of Domestic Industry Chart for U.S. Patent No. 10,217,523 (Redacted in Its Entirety) |
| 45C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 10,217,523 |
| 46 | Public Version of Domestic Industry Chart for U.S. Patent No. 9,824,035 (Redacted in Its Entirety) |
| 46C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 9,824,035 |
| 47 | Public Version of Domestic Industry Chart for U.S. Patent No. 12,308,087 (Redacted in Its Entirety) |
| 47C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 12,308,087 |
| 48 | Public Version of Declaration of Gail Sasaki |
| 48C | Confidential Declaration of Gail Sasaki |
| 49 | SK hynix, HPE Discovery 2025: SK Hynix Showcases Server and Storage Tech Strategies for Leading the AI Era (Jul. 9, 2025), https://news.skhynix.com/hpe-discover-2025/. |
| 50 | SK hynix, Inc. Consolidated Financial Statements, March 31, 2025 and 2024 |
| 51 | SK hynix's US Sales Make Up Over 70% in Q1 on Rising AI Demand, The Korea Herald (May 16, 2025), https://www.koreaherald.com/article/10488669. |
| 52 | Ahn Sung-mi, SK Hynix Racks Up 70% of Sales in US on AI Chip Boom, The Korea Herald (Aug. 17, 2025), https://www.koreaherald.com/article/10555331#:~:text=Updated%20:%20Aug.,as%20US%20tech%20giant%20Nvidia. |
| 53 | SK hynix FY2025 Q2 Earnings Report, July 24, 2025 |
| 54 | SK hynix Purdue West Lafayette Project Pamphlet |
| 55 | SK hynix Fact Sheet |
| 56 | National Institute of Standards and Technology, SK hynix (Indiana) (last accessed Sept. 26, 2025), https://www.nist.gov/chips/sk-hynix-indiana-west-lafayette. |
| 57 | Project Neuron, SK hynix West Lafayette (last accessed Sept. 27, 2025), https://neuron.prf.org. |
| 58 | Comments of SK hynix on the Department of Commerce Notice of Request for Information (RFI) on "Incentives, Infrastructure, and Research and Development Needs To Support a Strong Domestic Semiconductor Industry", Submitted March 25, 2022 |

| No. | Description |
|---|---|
| 59 | Public Version of License Agreement Between Netlist and SK hynix (redacted in its entirety) |
| 59C | Confidential License Agreement Between Netlist and SK hynix |

| Exhibit No. | Description |
|---|---|
| CC-1 | 0887-06REVA-0114 (Redacted in its Entirety) |
| CC-1C | 0887-06REVA-0114 |
| CC-2 | 0887-99A-1M6060 (Redatced in its Entirety) |
| CC-2C | 0887-99A-1M6060 |
| CC-3 | 0888-06REVA_0722 (Redatced in its Entirety) |
| CC-3C | 0888-06REVA_0722 |
| CC-4 | 0888-97A-1A6B61-X00 (Redatced in its Entirety) |
| CC-4C | 0888-97A-1A6B61-X00 |
| CC-5 | Samsung MRDIMM M327R8GA0EB0-CLVXB |
| CC-6 | 20250811_151215.jpg |
| CC-7 | 20250811_151233.jpg |
| CC-8 | 20250811_151613.jpg |
| CC-9 | All About Circuits Decision Feedback Equalization |
| CC-10 | All About Circuits ISSCC 2024 |
| CC-11 | AMD MWD Center Training |
| CC-12 | AMD MWD Cycle Training |
| CC-13 | Asifuzzaman 2021 |
| CC-14 | CSDN Blog, JESD79-5 |
| CC-15 | DCD SK hynix Article |
| CC-16 | DDR5 Command Truth Table |
| CC-17 | DDR Memory & Challenges in PCB Design |
| CC-18 | DDR5 Memory Channel Scaling Performance |
| CC-19 | DDR5_H5CG4(8&6)MEBDX Rev1.1 (Redacted in its Entirety) |
| CC-19C | DDR5_H5CG4(8&6)MEBDX Rev1.1 |
| CC-20 | DevX Memory Bus Definition |
| CC-21 | EDTX Trial Tr. Day 2, 4 (2023) |
| CC-22 | FAC Ex. 10, 25-cv-557 (EDTX) |
| CC-23 | FAC Ex. 7, 25-cv-557 (EDTX) |
| CC-24 | Gen 1 RCD Renesas 5RCD0148 |
| CC-25 | Gen 2 RCD Renesas RG5R256 |
| CC-26 | Gen 3 RCD Renesas RG5R364 |
| CC-27 | Gen 4 RCD Renesas RRG5004 |
| CC-28 | High Bandwidth Memory for Data-Intensive Computing |
| CC-29 | IEEE Paper1 |
| CC-30 | IEEE Paper2 |
| CC-31 | IEEE Paper3 |
| CC-32 | IEEE Paper4 |
| CC-33 | Intel Decision Feedback Equalization (DFE) |
| CC-34 | Intel Dynamic ODT in DDR4 |
| CC-35 | Intellect Partners DD5's Secret Weapon_ODT |
| CC-36 | Introduction to MRDIMM Memory Tech |
| CC-37 | IPR2022-1427, EX2029 |
| CC-38 | IPR2022-1427, EX2030 |
| CC-39 | IPR2023-00203, EX1033 |
| CC-40 | JEDEC D5 Chapter5 |
| CC-41 | JEDEC DDR5 MRDIMM Plan |

| CC-42 | JEDEC Member List |
|---|---|
| CC-43 | JEDEC PS-005B |
| CC-44 | JESD235D |
| CC-45 | JESD238A |
| CC-46 | JESD270-4 |
| CC-47 | JESD301-1 |
| CC-48 | JESD301-1A |
| CC-49 | JESD301-2 |
| CC-50 | JESD301-4A |
| CC-51 | JESD301-6 |
| CC-52 | JESD305A |
| CC-53 | JESD79-5B_v1.20 |
| CC-54 | JESD79-5C.01_v1.31 |
| CC-55 | JESD79-5C_v1.30 |
| CC-56 | JESD82-512 (Redatced in its Entirety) |
| CC-56C | JESD82-512 |
| CC-57 | JESD82-552 (Redacted in its Entirety) |
| CC-57C | JESD82-552 |
| CC-58 | Kim 2020 |
| CC-59 | Kingston Technology DDR5 Overview |
| CC-60 | Leading Memory Innovation with HBM3E |
| CC-61 | Lenovo What Is a Nibble and How Does It Work |
| CC-62 | (LP)DDR5 Memory Interface Presentation |
| CC-63 | M88DR5RCD02 Flyer |
| CC-64 | M88MR5DB01 (Gen1 DDR5 MDB) Flyer |
| CC-65 | M88MR5RCD01 (Gen1 DDR5 MRCD) Flyer |
| CC-67 | Machine Translation of CN 111726108B |
| CC-68 | MDB01 Spec. Rev. 0.7 (Redacted in its Entirety) |
| CC-68C | MDB01 Spec. Rev. 0.7 |
| CC-69 | Memory VR changes in the system by DDR5 adoption |
| CC-70 | Montage DDR5 Products |
| CC-71 | Montage HK Proof |
| CC-72 | Montage M88DR5RCD01 |
| CC-73 | Montage M88DR5RCD02 |
| CC-74 | Montage M88DR5RCD03 |
| CC-75 | Montage M88DR5RCD04 |
| CC-76 | Montage M88MR5DB01 |
| CC-77 | Montage Press Release |
| CC-78 | MP5431 |
| CC-79 | MP5431C |
| CC-80 | MPQ8894 |
| CC-81 | MPQ8895 |
| CC-82 | MPQ8895F |
| CC-83 | MPQ8896 |
| CC-84 | MRCD01 Spec. Rev 0.85 (Redatced in its Entirety) |
| CC-84C | MRCD01 Spec. Rev 0.85 |
| CC-85 | Intel 9 Series Chipset PCH Datasheet |

| CC-86 | Na 2022 |
| CC-87 | Netlist AI Server |
| CC-88 | Netlist DDR5 DIMM Product Brief |
| CC-89 | Netlist DDR5 DIMMs |
| CC-90 | Netlist DDR5 MRDIMM Product Brief |
| CC-91 | Netlist DDR5 Overclock RDIMM |
| CC-92 | Netlist DDR5 Overclock RDIMM Datasheet 1.0 (Redatced in its Entirety) |
| CC-92C | Netlist DDR5 Overclock RDIMM Datasheet 1.0 |
| CC-93 | Netlist DDR5 VLP RDIMM Datasheet 1.1 (Redacted in its Entirety) |
| CC-93C | Netlist DDR5 VLP RDIMM Datasheet 1.1 |
| CC-94 | Netlist Lightning DDR5 DIMM |
| CC-95 | Netlist Lightning DDR5 High Perform. Module Product Brief |
| CC-96 | NetList P8900 RDIMM Short-Form Datasheet |
| CC-97 | NetList P8910 Datasheet |
| CC-98 | Netlist Ultra Low Latency DDR5 RDIMM Product Brief |
| CC-99 | Oh 2020 |
| CC-100 | Product Images |
| CC-101 | Rambus DDR5 PMICs |
| CC-102 | Rambus DDR5 RCD |
| CC-103 | Rambus DDR5 Server PMICs Product Brief |
| CC-104 | Rambus DDR5 vs DDR4 DRAM |
| CC-105 | Rambus Expands Chipset |
| CC-106 | Renesas Blog Article |
| CC-107 | Renesas P8910 Short-Form Datasheet |
| CC-108 | Renesas P8911 Short-Form Datasheet |
| CC-109 | S2FPC01 Brochure |
| CC-110 | S2FPC01 Memory Power IC |
| CC-111 | S2FPD01 Brochure |
| CC-112 | S2FPD01 Memory Power IC |
| CC-113 | S2FPD02 Memory Power IC |
| CC-114 | S2FPD31 Memory Power IC |
| CC-115 | S2FPD73 Memory Power IC |
| CC-116 | Ryu 2023 |
| CC-117 | Samsung 4800MHz-PC5 |
| CC-118 | Samsung 5600MHz PC5-44800 |
| CC-119 | Samsung 64GB DDR5 PC5-4800 EC8 RDIMM 2Rx4 M321R8GA0BB0-CQK |
| CC-120 | Samsung 64GB DDR5 PC5-6400 EC8 RDIMM 2Rx4 M321R8GA0PB2-CCP |
| CC-121 | Samsung completes 16-stack HBM sample |
| CC-122 | Samsung DDR5 Breakthrough Performance |
| CC-123 | Samsung DDR5 RDIMM Datasheet |
| CC-124 | Samsung Develops Industry-First 36GB HBM3E 12H DRAM |
| CC-125 | Samsung DRAM Modules |
| CC-126 | Samsung ECC UDIMM_ECC SODIMM |
| CC-127 | Samsung Electronics Announces Results for Q3 2024 |
| CC-128 | Samsung Electronics Holds Memory Tech Day 2023 |
| CC-129 | Samsung HBM2E Flashbolt |
| CC-130 | Samsung HBM3 Icebolt |

| CC-131 | SAMSUNG HBM3 Icebolt KHBAC4A03D-MC1H (24GB) DRAM IC |
| CC-132 | SAMSUNG HBM3E 12H 36GB DRAM IC Ultimate Performance |
| CC-133 | SAMSUNG HBM3E 8H 24GB DRAM IC Ultimate Performance |
| CC-134 | Samsung Hot Chips 2021 Presentation |
| CC-135 | Samsung II CC Order |
| CC-136 | Samsung Increases Production of Industry's Fastest DRAM |
| CC-137 | Samsung KHBAC4A03C-MC1H |
| CC-138 | Samsung MCRDIMM Tech Blog |
| CC-139 | Samsung Memory Power IC |
| CC-140 | Samsung Module Handling Guide |
| CC-141 | Samsung Module RDIMM |
| CC-142 | Samsung Module SODIMM |
| CC-143 | Samsung Module UDIMM |
| CC-144 | Samsung Optimized DDR5 DIMM Solutions |
| CC-145 | Samsung Starts Producing 8-Gigabyte High Bandwidth Memory-2 |
| CC-146 | Samsung to Advance High Performance Computing Systems |
| CC-147 | Samsung's massive DDR5 512GB RAM modules |
| CC-148 | SK hynix 2014 HBM Presentation |
| CC-149 | SK hynix A New Standard |
| CC-150 | SK hynix Begins Volume Production of 12-Layer HBM3E |
| CC-151 | SK hynix Blog Post |
| CC-152 | SK hynix DDR5 |
| CC-153 | SK hynix Develops Industry's First 12-Layer HBM3 |
| CC-154 | SK hynix Develops MCR DIMM |
| CC-155 | SK hynix Develops World's Best Performing HBM3E |
| CC-156 | SK hynix HBM Products |
| CC-157 | SK hynix HBM3 Products |
| CC-158 | SK hynix Module |
| CC-159 | SK hynix MRDIMM |
| CC-160 | SK hynix Newsroom Interview |
| CC-161 | Netlist SK hynix |
| CC-162 | SK hynix RDIMM |
| CC-163 | SK hynix The Era of High Bandwidth Memory |
| CC-164 | SK hynix TSMC 2025 Technology Symposium |
| CC-165 | Sohn 2016 |
| CC-166 | The Perfect Harmony Created by Samsung HBM |
| CC-167 | TPS53830 Data Sheet |
| CC-168 | TPS53830A Data Sheet |
| CC-169 | TPS53830A Product Overview |
| CC-170 | TPS53832 Data Sheet |
| CC-171 | TPS53832 Product Overview |
| CC-172 | TPS53832A Data Sheet |
| CC-173 | TPS53832A Product Overview |
| CC-174 | TPS53840 Data Sheet |
| CC-175 | TPS53840 Product Overview |
| CC-176 | TrendForce News MRDIMM-MCRDIMM |
| CC-177 | U.S. Patent No. 11,531,584 |

| CC-178 | U.S. Patent No. 11,568,950 |
|--------|----------------------------|
| CC-179 | Samsung 32GB DDR5 PC5-4800 EC8 RDIMM 1Rx4 M321R4GA0BB0-CQK |
| CC-180 | TPS53830 Product Overview |
| CC-181 | Montage M88SPD5118 (DDR5 SPD Hub) |
| CC-182 | Renesas SPD5118 – SPD HUB for DDR5 |

**APPENDIX LIST**

| No. | Description |
|-----|-------------|
| A | Prosecution History of U.S. Patent No. 12,373,366 |
| B | Prosecution History of U.S. Patent No. 10,025,731 |
| C | Prosecution History of U.S. Patent No. 10,268,608 |
| D | Prosecution History of U.S. Patent No. 10,217,523 |
| E | Prosecution History of U.S. Patent No. 9,824,035 |
| F | Prosecution History of U.S. Patent No. 12,308,087 |

## I.    INTRODUCTION

1.    Complainant Netlist, Inc. ("Complainant" or "Netlist") is an Irvine, California-based provider of memory solutions. Netlist is not a large company, but its technological contributions in the memory space have been massive. Its cutting-edge innovations form the basis of much of the memory technology found in servers and personal computers today. If you have ever accessed data from a cloud server, chances are you have benefitted from Netlist's technology.

2.    For more than two decades, Netlist has developed and sold high-performance memory products to some of the world's largest computing companies. And, for almost that long, Netlist has had to contend with rampant infringement of its intellectual property.

3.    Samsung (defined below) is a prime example. Samsung previously held a license to Netlist's patent portfolio. But, in 2020, Samsung breached the license agreement (as two separate California juries have confirmed) and has been using Netlist's patented technology without permission ever since. These are not mere allegations; not one but *two* Texas juries have adjudged Samsung a willful infringer and awarded Netlist nine-figure damages awards. Yet Samsung continues to ship billions of dollars' worth of infringing products into the United States. Meanwhile, Google (defined below) (with whom Netlist has been embroiled in infringement litigation for almost twenty years now) and Super Micro (defined below)—also apparently unconcerned by federal-court infringement judgments—continue to import Samsung's infringing memory products and implement them in their own products and services. Respondents apparently believe that it is easier to infringe than to pay Netlist a fair price for its technology.

4.    Netlist thus respectfully files this Complaint under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, to stop the unlawful importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of

certain dynamic random access memory (DRAM) devices, products containing the same, and components thereof that infringe valid and enforceable patents owned by Netlist.

5.     The proposed Respondents are Samsung Electronics Co., Ltd. ("SEC"); Samsung Electronics America, Inc. ("SEA"); Samsung Semiconductor, Inc. ("SSI") (collectively, "Samsung" or the "Proposed Samsung Respondents"); Google LLC ("Google"); and Super Micro Computer, Inc. ("Super Micro") (all collectively, "Respondents").

6.     This Complaint is based on Respondents' unlawful acts regarding certain DRAM devices, products containing the same, and components thereof. The Accused Products include the following:

- Samsung's DDR5 generation Dual In-line Memory Modules (DIMMs), including:

  - Registered Dual In-line Memory Module (RDIMM),

  - Multi-Ranked Buffered Dual In-Line Memory Module or Multiplexed Rank Dual In-line Memory Module (MCRDIMM/MRDIMM),

  - Small Outline Dual In-Line Memory Module (SODIMM), and

  - Un-buffered Dual In-Line Memory Module (UDIMM);

- Samsung's HBM2/2E, HBM3/3E, and HBM4/4E high bandwidth memory ("HBM") packages;

- products containing the same DIMM and HBM, including servers and storage systems, such as:

  - Google's fifth, sixth and seventh generation Tensor Processing Units (TPUs) utilizing Samsung HBMs,

  - Google's Google Cloud Platform (GCP) virtual machines and cloud storage services utilizing Samsung DIMMs and HBMs,

  - Super Micro's servers and computing systems utilizing Samsung's HBMs, such as Super Micro's H13 and H14 GPU-optimized servers utilizing with AMD's Instinct accelerators and Samsung's HBM3/3E high bandwidth memory, and

- o Super Micro's servers and computing systems utilizing Samsung's DDR5 DIMMs, such as Super Micro's X14 servers utilizing Intel's Xeon® 6 6900P series processors and Samsung/s DDR5 RDIMMs and MRDIMMs; and

- components thereof, including power management integrated circuits (PMIC), registered clock driver (RCD) chips, DRAM chips, DRAM dies, interface dies, data buffers, temperature sensors, printed circuit boards, and serial presence detect (SPD) circuits.

7.    The Accused Products infringe one or more claims of the following Netlist patents (the "Asserted Patents"):

| Asserted Patent | Claims Asserted Against Respondents (independent claims in bold) |
|---|---|
| Memory Modules with Power Management/Signal Correction | |
| U.S. Patent No. 12,373,366 | **1**, 2, 11, 12, 14, 15, 16 |
| U.S. Patent No. 10,025,731 | **1**, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 |
| Memory Modules with Data Buffering | |
| U.S. Patent No. 10,268,608 | **1**, 2, 3, 4, 5 |
| U.S. Patent No. 10,217,523 | **1**, 15, 17, 18 |
| U.S. Patent No. 9,824,035 | 2, 6 |
| High-Bandwidth Memory | |
| U.S. Patent No. 12,308,087 | **1**, 2, 5, 7, 8, **13**, 17, 18, **20**, 22, **23** |

8.    To stop Respondents' unlawful acts, Netlist requests a limited exclusion order under 19 U.S.C. § 1337(d)(1) and permanent cease-and-desist orders under 19 U.S.C. § 1337(f).

9.    Netlist further seeks the imposition of a bond upon importation of infringing products during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(j).

10.    As set forth in Section X of this Complaint, a domestic industry pursuant to 19 U.S.C. § 1337(a)(2)–(3) exists based on the investments made by Netlist and its licensee SK hynix Inc. ("SK hynix") domestically in relation to products that are protected by the Asserted Patents.

## II.    COMPLAINANT

11.    Netlist is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 111 Academy Way, Suite 100, Irvine, CA 92617.

12.    Since its founding in 2000, Netlist has been a leading provider of high-performance modular memory subsystems to the world's premier OEMs in the server, high-performance computing, and communications markets. Netlist's technology enables users to derive useful information from vast amounts of data in a shorter period of time. These capabilities will become increasingly valuable as the volume of data continues to dramatically increase.

13.    Netlist's technology integrates intelligence features, including innovations in load reduction and rank multiplexing, with memory raw material—DRAM and NAND—to make memory perform at higher speeds with higher capacity and lower power.

14.    Netlist has a long history of being the first to market with disruptive new products. For example, Netlist invented and introduced the first load-reduced dual in-line memory module ("LRDIMM"), HyperCloud®, which utilized Netlist's patented distributed buffer architecture and patented signal correction technology. Netlist was also the first to include NAND flash in a Dual Inline Memory Module with its NVvault® NVDIMM. As part of the development of the NVDIMM products, Netlist invented on-module power management technology that utilizes a power management integrated circuit (PMIC).

15.    Netlist's innovations in load reduction and power management were far ahead of their time. Years after Netlist invented the technology, the industry adopted Netlist's distributed buffer architecture for DDR4 generation LRDIMMs, the predominant high-end server memory module for the past several years. That same architecture is also used in DDR5 generation MRDIMMs. Netlist's power management technology, meanwhile, is now used in *all* DDR5 DIMMs.

16.    The inventions claimed in the Asserted Patents are therefore embodied in the accused DDR5 DIMMs of Respondents (discussed in more detail below), as well as DDR5 DIMMs manufactured and sold by Netlist and its licensee SK hynix (domestic industry products, also addressed in more detail below).

17.    Netlist has also developed and patented innovative solutions used in "high bandwidth memory," or HBM. HBM, in contrast to conventional memory modules, includes memory device packages comprising stacks of multiple memory dies that transmit data through the stacks using interconnects (or "vias"). Netlist invented memory packages that allow for high bandwidth while mitigating load issues, thus maintaining optimal performance. Netlist's HBM technology is particularly useful for servers that handle large amounts of data. The patented technology is embodied in the HBM memory offered by Netlist's licensee SK hynix, as well as HBM memory sold and used by Respondents. These products are addressed in more detail below.

18.    Netlist has secured multiple jury verdicts confirming the commercial success of its inventions, including two against Samsung. In 2023, a jury in the Eastern District of Texas found that Samsung willfully infringed five Netlist patents and that the patents were not invalid and awarded Netlist $303.15 million in damages. *See Netlist, Inc. v. Samsung Elecs. Co. et al.*, No. 2:21-cv-463-JRG, Dkt. No. 479 at 7 (E.D. Tex. Apr. 21, 2023). In 2024, a jury found that Samsung willfully infringed three Netlist patents (including the '608 patent asserted here) and that the patents were not invalid and awarded Netlist $118 million in damages. *See Netlist, Inc. v. Samsung Elecs. Co. et al.*, No. 2:22-cv-293-JRG, Dkt. No. 847 at 7 (E.D. Tex. Nov. 22, 2024). Yet Samsung has continued its infringing conduct.

19.    Additionally, the Patent Trial and Appeal Board has confirmed the validity of the asserted claims of three of the Asserted Patents. *See Micron Tech., Inc. et al. v. Netlist, Inc.*,

IPR2022-00236, Paper 34 at 43–46 (P.T.A.B. June 20, 2023) (confirming the validity of claims 2 and 6 of the '035 patent); *Samsung Elecs. Co. v. Netlist, Inc.*, IPR2022-00063, Paper 53 at 58 (P.T.A.B. May 3, 2023) (confirming the validity of all claims of the '523 patent), *aff'd*, No. 23-2133, Dkt. No. 44 (Fed. Cir. Mar. 5, 2025); *Samsung Elecs. Co. v. Netlist, Inc.*, IPR2023-00847, Paper 42 at 73 (P.T.A.B. Dec. 10, 2024) (confirming the validity of claims 1–5 of the '608 patent), *appeal docketed*, No. 25-1378 (Fed. Cir. Jan. 21, 2025).

20.    The claim charts submitted with this Complaint rely in part on functionality contained within certain standards issued by the JEDEC Solid State Technology Association. However, Netlist is not relying on essentiality to the standard to establish infringement by the proposed Respondents. In particular, the JEDEC standard does not require all limitations of any one of the Asserted Claims. Accordingly, none of the Asserted Claims is standard-essential. Rather, Netlist anticipates that its infringement positions will be further confirmed by evidence obtained though discovery from Respondents that is otherwise not publicly available.

## III.    RESPONDENTS

### A.    Samsung Respondents

21.    On information and belief, SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon, Gyeonggi-do, 443-742, Republic of Korea. On information and belief, SEC is the worldwide parent corporation for SEA and SSI.

22.    On information and belief, SEA is a corporation organized and existing under the laws of the State of New York. Defendant SEA maintains facilities at 6625 Excellence Way, Plano, Texas 75023. SEA is a wholly owned subsidiary of SEC.

23.    On information and belief, SSI is a corporation organized and existing under the laws of the State of California. On information and belief, Defendant SSI maintains facilities at

6625 Excellence Way, Plano, Texas 75023. On information and belief, SSI is a wholly owned subsidiary of SEA.

24.     On information and belief, the Samsung Respondents import into the United States, sell for importation into the United States, and/or sell within the United States after importation certain DRAM devices, products containing the same, and components thereof (discussed in more detail below) that infringe one or more of the Asserted Patents. The Samsung Respondents are not licensed to any of the Asserted Patents.

25.     Samsung and Netlist were initially partners under a 2015 Joint Development and License Agreement ("JDLA"). On information and belief, Samsung used Netlist's technologies to develop products both in mature markets such as DDR4 memory modules and markets for current and emerging generations of DRAM technologies, including DDR5 and HBM. Under the JDLA, Samsung was obligated to supply Netlist certain memory products at competitive prices. Samsung, however, did not honor its promises and repeatedly failed to fulfill Netlist's orders. So Netlist terminated the JDLA on July 15, 2020. A federal district court in the Central District of California has confirmed that Samsung breached the JDLA and therefore that Netlist's termination was valid. *Netlist, Inc. v. Samsung Elecs. Co.*, No. 8:20-cv-993, Dkt. No. 766 (C.D. Cal. Mar. 24, 2025).[1] That decision is on appeal to the Ninth Circuit (case number 25-5531).

26.     The litigation history between Netlist and Samsung as it relates to the Asserted Patents is described further in Section XI.

**B.     Google**

27.     On information and belief, Google LLC is a wholly-owned subsidiary of Alphabet, Inc., and a Delaware limited liability company with a principal place of business at 1600

---

[1] This ruling is res judicata unless and until overturned on appeal.

Amphitheatre Parkway, Mountain View, California 94043.

28.     On information and belief, Google imports the Accused Products through a variety of channels and uses them in various Google products and services, including in its data storage facilities and servers (discussed in more detail below). Google is not licensed to any of the Asserted Patents.

29.     Google was previously a customer of Netlist. Between 2003 and 2006, Netlist contracted with Google to build memory modules according to Netlist's proprietary designs. Between 2006 and 2007, Google and Netlist engaged in a series of meetings in which Google was presented with Netlist's rank multiplication (DxD) and load reduction DIMM (LRD) designs. In 2007, Google asked Netlist to assemble custom memory modules at Netlist's manufacturing facility. In 2008, rather than entering a license agreement with Netlist, Google chose to take the designs Netlist presented and source them from different contractors. At this time, Netlist informed Google that it had reason to believe that Google was using Netlist's technology in its servers. Google responded by filing a declaratory judgment lawsuit. *Google Inc. v. Netlist, Inc.*, No. 4:08-cv-04144-SBA (N.D. Cal. Aug. 29, 2008).

30.     Netlist subsequently sued Google for infringement of U.S. Patent No. 7,619,912. Case No. 3:09-cv-5718 (N.D. Cal.). Specifically, Netlist accused Google of selling, offering to sell, making, and/or using computer memory modules that incorporate Netlist's patented technology, including certain DDR4 DIMMS that Google purchased from Samsung for use in Google's server computers. The case is currently stayed pending resolution of *Netlist, Inc. v. Samsung Elecs. Co., Ltd. et al.*, No. 2:22-cv-293-JRG, pending in the Eastern District of Texas.

31.     Netlist also brought claims for infringement of the '523 patent against Google in the District of Delaware as counterclaims in a declaratory judgment action originally brought by

Samsung. *Samsung Electronics Co., Ltd. et al. v. Netlist, Inc.*, No. 1:21-cv-01453-JLH (D. Del. Oct. 15, 2021). That case is currently stayed pending resolution of the action in the Central District of California involving the JDLA between Samsung and Netlist (which, as noted above, is currently on appeal to the Ninth Circuit).

32.     The litigation history between Netlist and Google as it relates to the Asserted Patents is described further in Section XI.

### C.    Super Micro

33.     On information and belief, Super Micro Computer, Inc. is a corporation organized and existing under the laws of Delaware that maintains an established place of business at 980 Rock Ave., San Jose, CA 95131.

34.     On information and belief, Super Micro imports into the United States, sells for importation into the United States, and/or sells within the United States after importation the Accused Products through a variety of channels and in various Super Micro products, including its servers and storage systems (discussed in more detail below). Super Micro is not licensed to any of the Asserted Patents.

## IV.    THE TECHNOLOGY AND PRODUCTS AT ISSUE

35.     The technology at issue generally relates to memory used in computer systems. Many commercial computing products utilize memory modules. A memory module is a printed circuit board that contains, among other components, multiple individual memory devices (such as DRAM packages or portions thereof) designed to interact with a host's memory controller external to the memory module. Modern memory modules often adopt the form of DIMMs. The memory devices on the memory module are typically arranged in "ranks," which are accessible by a processor or memory controller of the host system. A memory module is typically installed into a memory slot on a computer motherboard.

36.     Memory modules are designed for, among other things, use in servers such as those supporting cloud-based computing and other data-intensive applications, as well as in consumer applications such as PCs and laptops. Memory modules are typically characterized by, among other things, the generation of DRAM on the module (e.g., DDR5, DDR4, DDR3) and the type of module (e.g., UDIMM, SODIMM, RDIMM, LRDIMM, MRDIMM).

37.     High bandwidth memory device packages are computer memory interfaces that vertically stack DRAM dies to achieve higher speeds and reduce power consumption. The DRAM dies in the memory stack are attached to one another and to the base die (also called a control die) via die interconnects, often in the form of through-silicon-vias ("TSVs").

38.     Pursuant to Commission Rules §§ 210.10(b)(1) and 210.12(a)(12), the categories of Accused Products are dynamic random access memory (DRAM) devices used in computing systems. DRAM is used as the primary working memory in computers and other devices, such as servers, desktops, and mobile phones, to temporarily store data and instructions that the processor needs for quick access during operation. Specifically these devices are DDR5 generation DIMMs and high bandwidth memory (HBM).

## V.      THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTIONS OF THE INVENTIONS[2]

### A.      The '366 and '731 Patents: Memory Modules with Power Management/Signal Correction

39.     The '366 and '731 Patents relate to power-management and signal-correction features, respectively, used in certain DDR5 generation DIMMs.

---

[2]      All non-technical descriptions of the patents herein are presented to give a general background of those patents. These statements are not intended to be used nor should they be used for purposes of patent claim construction. Netlist provides these statements subject to and without waiver of its right to argue that no claim construction is necessary, or that claim terms should be construed in a particular way under claim interpretation jurisprudence and the relevant evidence.

1. **U.S. Patent No. 12,373,366**

a. **Identification and Ownership of the '366 Patent**

40.  The '366 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on July 29, 2025.

41.  The '366 Patent issued from Application No. 17/582,797, filed January 24, 2022. The '366 Patent is entitled to a priority date of June 1, 2007.

42.  The '366 Patent is set to expire on June 2, 2028.

43.  The '366 Patent is titled "Memory With On-Module Power Management" and names Chi-She Chen, Jeffrey C. Solomon, Scott H. Milton, and Jayesh Bhakta as inventors.

44.  A true and correct copy of the '366 Patent is attached as Exhibit 2.

45.  A true and correct copy of the patent assignment record for the '366 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 3.

46.  A true and correct copy of the prosecution history of the '366 Patent is included as Appendix A.

b. **Foreign Counterparts to the '366 Patent**

47.  Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '366 Patent, with an indication of the prosecution status of each such patent application.

48.  No other foreign or domestic patents or applications corresponding to the '366 Patent have been filed, abandoned, withdrawn, or rejected.

c. **Non-Technical Description of the '366 Patent**

49.  The '366 Patent discloses and claims memory modules with on-module power management that enables the high-speed data communications that are achieved in modern DDR5

memory modules. The claimed modules contain an arrangement of data lines and associated circuitry that allow for significant improvements in bandwidth and performance. To accommodate increased data rates, the claimed modules contain circuitry that allows for power management on the memory modules themselves (as opposed to on the motherboard on which the memory modules are mounted). This on-module power management results in more precise voltage control and increased energy efficiency, which is critical in modern computing systems.

### 2.    U.S. Patent No. 10,025,731

#### a.    Identification and Ownership of the '731 Patent

50.    The '731 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on July 17, 2018.

51.    The '731 Patent issued from Application No. 14/715,491, filed May 18, 2015. The '731 Patent is entitled to a priority date of April 14, 2008.

52.    The '731 Patent is set to expire on June 30, 2029.

53.    The '731 Patent is titled "Memory Module and Circuit Providing Load Isolation and Noise Reduction" and names Hyun Lee, Jayesh R. Bhakta, Jeffrey C. Solomon, Mario Jesus Martinez, and Chi-She Chen as inventors.

54.    A true and correct copy of the '731 Patent is attached as Exhibit 4.

55.    A true and correct copy of the patent assignment record for the '731 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 5.

56.    A true and correct copy of the prosecution history of the '731 Patent is included as Appendix B.

#### b.    Foreign Counterparts to the '731 Patent

57.    Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied,

12

abandoned, or withdrawn, if any, corresponding to the '731 Patent, with an indication of the prosecution status of each such patent application.

58.     No other foreign or domestic patents or applications corresponding to the '731 Patent have been filed, abandoned, withdrawn, or rejected.

### c.     Non-Technical Description of the '731 Patent

59.     The '731 Patent discloses and claims a memory module that includes signal correction circuits, each including at least one programmable impedance mismatch circuit, to correct signals transmitted to and from the module's memory devices. The claimed correction circuitry can reduce signal noise due to impedance mismatch in the system, enabling the claimed memory modules to provide stable, reliable signals at high data rates.

### B.     The '608, '523, and '035 Patents: Memory Modules with Data Buffering

60.     The '608, '523, and '035 Patents relate to data buffering arrangements that improve memory module performance and reliability and are used in DDR5 generation MRDIMMs.

### 1.     U.S. Patent No. 10,268,608

### a.     Identification and Ownership of the '608 Patent

61.     The '608 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on April 23, 2019.

62.     The '608 Patent issued from Application No. 15/820,076, filed November 21, 2017. The '608 Patent is entitled to a priority date of July 27, 2012.

63.     The '608 Patent is set to expire on July 27, 2033.

64.     The '608 Patent is titled "Memory Module with Timing-Controlled Data Paths in Distributed Data Buffers" and names Hyun Lee and Jayesh R. Bhakta as inventors.

65.     A true and correct copy of the '608 Patent is attached as Exhibit 6.

66.    A true and correct copy of the patent assignment record for the '608 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 7.

67.    A true and correct copy of the prosecution history of the '608 Patent is included as Appendix C.

### b.    Foreign Counterparts to the '608 Patent

68.    Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '608 Patent, with an indication of the prosecution status of each such patent application.

69.    No other foreign or domestic patents or applications corresponding to the '608 Patent have been filed, abandoned, withdrawn, or rejected.

### c.    Non-Technical Description of the '608 Patent

70.    The '608 Patent discloses and claims memory modules that include "isolation devices" (also called "data buffers" or "buffer circuits"). These buffer circuits electrically isolate the on-module memory devices (e.g., DRAM) from the memory controller, which enables additional memory devices to be included on the memory module (higher capacity) without sacrificing signal integrity or data speed. The innovative arrangement of components and on-board intelligence in the claimed memory modules allows the modules to manage the timing of read and write operations in newer-generation systems with higher memory operating speeds and greater memory density.

### 2.    U.S. Patent No. 10,217,523

### a.    Identification and Ownership of the '523 Patent

71.    The '523 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on February 26, 2019.

72.     The '523 Patent issued from Application No. 14/229,844, filed March 29, 20140. The '523 Patent is entitled to a priority date of April 14, 2008.

73.     The '523 Patent is set to expire on October 9, 2029.

74.     The '523 Patent is titled "Multi-Mode Memory Module with Data Handlers" and names Hyun Lee, Soonju Choi, and Jayesh R. Bhakta as inventors.

75.     A true and correct copy of the '523 Patent is attached as Exhibit 8.

76.     A true and correct copy of the patent assignment record for the '523 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 9.

77.     A true and correct copy of the prosecution history of the '523 Patent is included as Appendix D.

### b.    Foreign Counterparts to the '523 Patent

78.     Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '523 Patent, with an indication of the prosecution status of each such patent application.

79.     No other foreign or domestic patents or applications corresponding to the '523 Patent have been filed, abandoned, withdrawn, or rejected.

### c.    Non-Technical Description of the '523 Patent

80.     The '523 Patent discloses and claims a novel architecture for memory modules that support two modes of operation (e.g., a testing mode and a normal operation mode). The claimed modules utilize a data module (or buffer) and a separate control module. When the module operates in testing mode, the data module isolates the memory devices and the memory controller and provides data patterns, and the control module provides address and control signals. Separating

the control and data handling makes the system more modular (and thus more flexible) than prior-art testing approaches and also allows for placing the components of the data module close to the memory devices that read and write the data, which enhances the reliability of the testing functionality.

### 3. U.S. Patent No. 9,824,035

#### a. Identification and Ownership of the '035 Patent

81. The '035 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on November 21, 2017.

82. The '035 Patent issued from Application No. 15/426,064, filed February 7, 2017. The '035 Patent is entitled to a priority date of July 27, 2012.

83. The '035 Patent is set to expire on July 27, 2033.

84. The '035 Patent is titled "Multi-mode memory module with timing-controlled data paths in distributed data buffers" and names Hyun Lee and Jayesh R. Bhakta as inventors.

85. A true and correct copy of the '035 Patent is attached as Exhibit 10.

86. A true and correct copy of the patent assignment record for the '035 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 11.

87. A true and correct copy of the prosecution history of the '035 Patent is included as Appendix E.

#### b. Foreign Counterparts to the '035 Patent

88. Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '035 Patent, with an indication of the prosecution status of each such patent application.

89.     No other foreign or domestic patents or applications corresponding to the '035 Patent have been filed, abandoned, withdrawn, or rejected.

### c.     Non-Technical Description of the '035 Patent

90.     The '035 Patent discloses and claims memory modules that include "isolation devices" (also called "data buffers" or "buffer circuits"). The buffer circuits electrically isolate the on-module memory devices (e.g., DRAM) from the memory module's data input/output pins, which enables additional memory devices to be included on the memory module (higher capacity) without sacrificing signal integrity or speed. The innovative arrangement of components and on-board intelligence in the claimed memory modules allows the modules to manage the timing of read and write operations in newer-generation systems with higher memory operating speeds and greater memory density.

### C.     U.S. Patent No. 12,308,087: High-Bandwidth Memory

### 1.     Identification and Ownership of the '087 Patent

91.     The '087 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on May 20, 2025.

92.     The '087 Patent issued from Application No. 17/694,649, filed March 14, 2022. The '087 Patent is entitled to a priority date of November 3, 2010.

93.     The '087 Patent is set to expire on November 3, 2031.

94.     The '087 Patent is titled "Memory package having stacked array dies and reduced driver load" and names Hyun Lee and as the inventor.

95.     A true and correct copy of the '087 Patent is attached as Exhibit 12.

96.     A true and correct copy of the patent assignment record for the '087 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 13.

97.     A true and correct copy of the prosecution history of the '087 Patent is included as Appendix F.

### 2.    Foreign Counterparts to the '087 Patent

98.     Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '087 Patent, with an indication of the prosecution status of each such patent application.

99.     No other foreign or domestic patents or applications corresponding to the '087 Patent have been filed, abandoned, withdrawn, or rejected.

### 3.    Non-Technical Description of the '087 Patent

100.    The '087 patent discloses and claims an innovative arrangement of stacked dies and interconnects used in Netlist's HBM technology. Conventional DRAM packages often consist of a single silicon chip (or "die") housed in a plastic or ceramic "package." To increase the capacity of individual memory devices, memory makers began "stacking" multiple dies in a single DRAM package where each DRAM interfaces with an external device (such as a host) through external connections such as long, dangling wires along the peripheral of the DRAM circuit. But the high electrical load resulting from such external connections negatively affected performance. Internal connections such as TSVs helped reduce load, but that still did not allow for high memory capacity at high speed. To overcome that problem, Netlist devised an innovative arrangement of stacked dies and interconnects that allows the memory to operate at high bandwidth while mitigating load issues and thus maintaining optimal performance. Netlist's HBM technology is particularly useful for servers that handle large amounts of data.

## VI.    LICENSES

101.    An identification of licensee(s) to one or more of the Asserted Patents is provided in confidential Exhibit 15C.

## VII.    RESPONDENTS' INFRINGEMENT OF THE ASSERTED PATENTS

102.    As discussed above, the Accused Products are certain DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents. An exemplary list of the Accused Products that practice at least one claim from one or more of the Asserted Patents is provided as Exhibit 1.[3] Representative claim charts, attached as Exhibits 16–21, demonstrate that the Accused Products practice at least one claim of each of the Asserted Patents.

### A.    Infringement of U.S. Patent No. 12,373,366

103.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1, 2, 11, 12, 14, 15, and 16 of the '366 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

104.    Exemplary claim charts comparing independent claim 1 of the '366 Patent to representative Accused Products are attached as Exhibit 16.

### B.    Infringement of U.S. Patent No. 10,025,731

105.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1–3, 6–18 of the '731 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

---

[3] Samples of the Accused Products will be produced during the course of the investigation.

106.    Exemplary claim charts comparing independent claim 1 of the '731 Patent to representative Accused Products are attached as Exhibit 17C.

**C.    Infringement of U.S. Patent No. 10,268,608**

107.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1–5 of the '608 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

108.    Exemplary claim charts comparing independent claim 1 of the '608 Patent to representative Accused Products are attached as Exhibit 18C.

**D.    Infringement of U.S. Patent No. 10,217,523**

109.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1, 15, 17, and 18 of the '523 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

110.    Exemplary claim charts comparing independent claim 1 of the '523 Patent to representative Accused Products are attached as Exhibit 19C.

**E.    Infringement of U.S. Patent No. 9,824,035**

111.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 2 and 6 of the '035 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

112.    Exemplary claim charts comparing dependent claim 2 of the '035 Patent to representative Accused Products are attached as Exhibit 20C.

**F.    Infringement of U.S. Patent No. 12,308,087**

113.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1, 2, 5, 7, 8, 13, 17, 18, 20, 22, and 23 of the '087 Patent by importing the Accused Products,

selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

114.    Exemplary claim charts comparing independent claim 1 of the '087 Patent to representative Accused Products are attached as Exhibit 21.

### G.    Indirect Infringement

115.    On information and belief, Respondents also indirectly infringe the Asserted Patents by inducing and contributing to infringement. On information and belief, Respondents have actual knowledge of the Asserted Patents, including through at least the filing of this Complaint and actions in the U.S. District Court for the Eastern District of Texas and the U.S. District Court for the District of Delaware that involve the Asserted Patents.

116.    On information and belief, Respondents knowingly and intentionally induce users of one or more of the Accused Products to directly infringe one or more claims of the Asserted Patents by encouraging, instructing, and aiding one or more persons in the United States to make, use (including testing), sell, or offer to sell one or more of the Accused Products, during or after such article's importation into the United States, in a manner that directly infringes the Asserted Patents.

117.    On information and belief, Respondents contribute to the infringement of the Asserted Patents by offering to sell, selling, or importing a patented component, material, or apparatus used to practice a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an act of infringement and not a staple article or commodity of commerce suitable for substantial non-infringing uses.

## VIII.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

118.    On information and belief, the Accused Products are manufactured overseas and then sold for importation into the United States by Respondents or on their behalf, imported into

the United States by Respondents or on their behalf, and/or sold after importation by Respondents or on their behalf.

119.    The Accused Samsung Products include the following:

- Samsung's DDR5 generation DIMMs, including:

    o Registered Dual In-line Memory Modules (RDIMMs),

    o Multi-Ranked Buffered Dual In-Line Memory Module or Multiplexed Rank Dual In-line Memory Module (MCRDIMM/MRDIMM),

    o Small Outline Dual In-Line Memory Module (SODIMM), and

    o Un-buffered Dual In-Line Memory Module (UDIMM); and

- Samsung's HBM2/2E, HBM3/3E, and HBM4/4E high bandwidth memory packages.

120.    On information and belief, the Samsung Respondents sell the accused DIMMs through a variety of channels, including their own website. *See, e.g.*, Exhibit 22. On information and belief, none of the Samsung DIMMs are manufactured in the United States.

121.    A list of currently available DDR5 RDIMMs, SODIMMs and UDIMMs, exported from the above-referenced Samsung website is attached hereto as Exhibit 23.

122.    Exhibits 24 and 25 include receipts for the domestic purchase of accused DDR5 RDIMMs, part numbers M321R8GA0BB0-CQKDS and M321R8GA0PB2-CCPWF, respectively. The purchased DDR5 RDIMMs are labeled as being made in the Philippines and Korea, respectively. *Id.* The order and shipping paperwork indicate that the products were shipped to an address within the United States, demonstrating that the Samsung Respondents import the product, sell it for importation, and/or sell it within the United States after importation. *Id.*

123.    On information and belief, Samsung introduced its Multi-Ranked Buffered Dual In-Line Memory Module (MCRDIMM), a DDR5 MRDIMM product for high-performance computing applications, in June 2024.  *See* Exhibit 26.

124.    Exhibit 27 includes a receipt for the domestic purchase of an accused DDR5 MRDIMM, part number M327R8GA0EB0-CLVXB. The purchased DDR5 MRDIMM is labeled as being made in Korea. *Id.* The order and shipping paperwork indicate that the product was shipped to an address within the United States, demonstrating that the Samsung Respondents import the product, sell it for importation, and/or sell it within the United States after importation. *Id.*

125.    On information and belief, the Samsung Respondents sell the accused HBMs in bulk directly to manufacturers of high-performance computing components like GPUs and servers, through a variety of channels, including their own website. *See, e.g.*, Exhibit 28. On information and belief, none of the Samsung HBMs are manufactured in the United States.

126.    A list of currently available HBM2/2E and HBM3/3E high bandwidth memory exported from the above-referenced Samsung website is attached as Exhibit 29.

127.    On information and belief, Samsung displayed its HBM4/4E product at the Future Memory & Storage (FMS) event held August 5–7, 2025 at the Santa Clara Convention Center in San Jose, California. *See* Exhibit 30.

128.    On information and belief, Samsung HBM3/3E and HBM4/4E are currently undergoing qualification tests with Nvidia in Santa Clara, CA, and it was reported earlier this month that Samsung's 12-layer HBM3E passed NVIDIA qualification tests. *See, e.g.*, Exhibit 31; Exhibit 32.

129.    Google imports the Accused Products directly or indirectly from Samsung and uses them in various Google products and services, including in its data storage facilities and servers. For example, on information and belief, Google's fifth, sixth and seventh generation Tensor Processing Units (TPUs) utilize Samsung's accused HBM2, HBM2E, HBM3E and HBM4 high

bandwidth memory packages. *See* Exhibit 33 ("Google is expected to become the second-largest buyer of HBM" from Samsung, "driven by its investment in Tensor Processing Units (TPUs)"). In addition, on information and belief, the Google Cloud Platform (GCP) virtual machine services utilize Intel Xeon 6 processors in its compute-optimized C4 virtual machine series, which use Samsung's accused DDR5 RDIMMs and MRDIMMs. *See* Exhibit 34. On information and belief, Google purchases these Accused Products from Samsung, imports them, and uses them in these Google products and services.

130.    Super Micro imports the Accused Products directly or indirectly from Samsung and incorporates them in various Super Micro products, including its servers and storage systems. For example, on information and belief, Super Micro's H13 and H14 GPU-optimized servers can be configured with AMD's Instinct accelerators (MI300X/MI325X/MI350X), which include Samsung's HBM3 and HBM3E high bandwidth memory. *See* Exhibit 35 (AS -8126GS-TNMR Datasheet); Exhibit 36 (AS -8125GS-TNMR2 Datasheet); Exhibit 37 ("Samsung's HBM3 memory" is "integrated into AMD's MI300X AI accelerator"); Exhibit 38 ("AMD Instinct MI350X and MI355X GPUs" use "288GB HBM3E" from "Samsung Electronics"). In addition, on information and belief, Super Micro's Hyper SuperServer SYS-212HA-TN with Intel's Xeon® 6 6900 series processors can be configured with Samsung DDR5 RDIMM or Samsung DDR5 MRDIMM. *See* Exhibit 39 (Hyper SuperServer SYS-212HA-TN Datasheet); Exhibit 40 (product uses "Intel® Xeon® 6900 series processors"); Exhibit 41 (noting that "[u]pcoming MRDIMMs" from Samsung "are set to be compatible with Intel's Xeon 6 platforms"). On information and belief, Super Micro purchases these accused products from Samsung, imports them, and uses them in these Super Micro products.

## IX.    HARMONIZED TARIFF SCHEDULE NUMBERS

131.    The Accused Products are classified under at least the following subheadings of the Harmonized Tariff Schedule of the United States: 8473.30.11.40 and 8542.32.00.36. These classifications are exemplary in nature and not intended to restrict the scope of any exclusion order or other remedy ordered by the Commission.

## X.    THE DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS

132.    A domestic industry, as set forth in 19 U.S.C. § 1337(a)(2) and defined by 19 U.S.C. § 1337(a)(3), exists for the following Netlist and SK hynix products, which are protected by the Asserted Patents:

| Asserted Patent | Existing Domestic Industry Products |
|---|---|
| '366 Patent | • Netlist's DDR5 VLP RDIMM<br>• Netlist's Lightning DDR5 RDIMM<br>• SK hynix's RDIMM/MRDIMM |
| '731 Patent | • Netlist's DDR5 VLP RDIMM<br>• Netlist's Lightning DDR5 RDIMM<br>• SK hynix's RDIMM/MRDIMM |
| '608 Patent | • SK hynix's MRDIMM |
| '035 Patent | • SK hynix's MRDIMM |
| '523 Patent | • SK hynix's MRDIMM |
| '087 Patent | • SK hynix's HBM |

### A.    Technical Prong

133.    A list of Domestic Industry Products that practice at least one claim from one or more of the Asserted Patents is shown in the table above. Representative claim charts, attached as

25

Exhibits 42–47, demonstrate that the Domestic Industry Products practice at least one claim of each of the Asserted Patents.[4]

134.    Samples of the Domestic Industry Products will be produced during the course of the investigation.

## B.    Economic Prong

135.    For each of the Asserted Patents, there is a domestic industry pursuant to 19 U.S.C. § 1337(a)(3)(A), (B), and (C) based on the continuing significant domestic investment in plant, equipment, labor, and capital by Netlist and/or its licensee SK hynix, as well as the continuing substantial domestic investment in exploitation of the Asserted Patents through research, development, and engineering. Netlist has invested tens of millions of dollars since 2021 on developing and creating the Domestic Industry Products, bringing them to market, and sustaining their success through continuous technological development. Similarly, SK hynix has significant investments in the United States, including at least labor and facility costs.[5]

### 1.    Netlist's Domestic Activities

136.    Netlist has made, and continues to make, significant and substantial investments in connection with technology and articles that practice the Asserted Patents, including the Domestic Industry Products. Indeed, an administrative law judge has twice previously concluded that Netlist established a domestic industry based on its significant domestic investments in the United States. *See Certain Memory Modules & Components Thereof*, Inv. No. 337-TA-1089, Initial Determination at 139–56 (Oct. 19, 2019); *Certain Memory Modules & Components Thereof*, Inv.

---

[4]    The Domestic Industry Products are protected by additional claims of the Asserted Patents, and Netlist may establish the technical prong of the domestic industry requirement through claims other than those explicitly charted.

[5]    Netlist expects that SK hynix will cooperate with third-party discovery seeking information related to the domestic industry.

No. 337-TA-1023, Initial Determination at 153–65 (Nov. 14, 2017). Those investments related to earlier-generation Netlist products that were the foundation for the technologies claimed in several of the Asserted Patents here.

### a.    Significant Investment in Facilities

137.    Netlist has spent, and continues to spend, significant sums on facility costs for engineering, sales, and marketing activities related to the Domestic Industry Products. Netlist's facility costs since 2021 have accounted for millions of dollars in expenses. Detailed confidential information about Netlist's significant investments per Domestic Industry product is set forth in Confidential Exhibit 48C, Declaration of Gail Sasaki.

### b.    Significant Employment of Labor

138.    Netlist has spent, and continues to spend, significant sums on domestic labor related to the Domestic Industry Products. For example, since 2021, Netlist has employed engineering, sales, and marketing employees who have contributed to the development and sale of the Domestic Industry Products. Netlist's sales and marketing expenditures since 2021 have accounted for millions of dollars in expenses. Detailed confidential information about Netlist's significant investments per Domestic Industry product is set forth in Confidential Exhibit 48C, Declaration of Gail Sasaki.

### c.    Substantial Investment in Patent Exploitation

139.    The expenditures described above with respect to facilities and labor can also be described as Netlist's U.S. investments in research and development and engineering of the Domestic Industry Products. The allocated costs relate to Netlist's efforts to design and develop the Domestic Industry Products as well as research and establish a market for the Domestic Industry Products and Netlist's patented technology that the products contain.

## 2.    Licensee SK hynix's Domestic Activities

140.    SK hynix offers for sale in the United States HBMs, MRDIMMs, and RDIMMs. At the HPE Discover conference held in Las Vegas from June 23–26, 2025, SK hynix displayed its 12-layer HBM4 and 12-layer HBM3E products as well as its RDIMM and MRDIMM technology. Exhibit 49.

141.    The United States is a significant market for SK hynix. In the first three months of FY 2025, SK hynix reported 12.8 trillion won ($9.1 billion) in revenue in the United States, which was 72.5% of its revenue worldwide during that period. Exhibit 50 at 42; Exhibit 51; *see also* Exhibit 52 (reporting $20.02 billion domestic revenue from January to June 2025).

142.    A significant portion of SK hynix's revenues is attributable to products that practice at least one of the Asserted Patents, which are licensed to SK hynix. In second quarter of FY 2025, SK hynix reported that 77% of its revenue was from sales of DRAM, a significant portion of which was HBM sales. Exhibit 53 at 15. SK hynix has stated that, moving forward, it expects that HBM sales will double year over year. *Id*. at 11.

143.    SK hynix has spent, and continues to spend, significant sums on domestic labor and capital related to the Domestic Industry Products. SK hynix has represented that it employs over 7,000 people in the U.S. Exhibit 54. This is about 15% of its total employees worldwide. Exhibit 55 (46,863 employees total).

144.    SK hynix has spent, and continues to spend, significant sums on domestic facilities and equipment related to the Domestic Industry Products. SK hynix maintains several facilities in the United States, including an R&D and sales facility in San Jose, CA and sales offices in Seattle, WA; Austin, TX; Houston, TX; and Raleigh, NC. Exhibit 55.

145.    SK hynix also announced in 2024 that it will invest $3.87 billion in a chip packaging facility in West Lafayette, Indiana, which would be slated for operation in 2028. Exhibit

56. With the new facility, SK hynix plans to establish HBM production lines and advanced packaging R&D facilities. *Id*.; *see also* Exhibit 57. SK hynix was also awarded up to $458 million in direct funding and access to proposed loans of $500 million as part of the CHIPS and Science Act for its investment to build a production base for semiconductor packaging in Indiana. Exhibit 56. The new facility is expected to create approximately 1,000 jobs in addition to hundreds of construction jobs. *Id*.

146.    As part of the process for receiving funding under the CHIPS program, SK hynix submitted statements to the Department of Commerce in which it represented that (i) "SK hynix 'upstream' activities in the U.S. semiconductor ecosystem resulted in, on an annual average between 2016 and 2020, ~$9 billion in sales activity and ~$5 billion in GDP, and supported more than 46,000 jobs in the United States" and that (ii) "on an annual average between 2016 and 2020, SK hynix products enabled 'downstream' activities that resulted in $116 billion economic activity and $70 billion in GDP, and supported more than 696,000 jobs in the United States." Exhibit 58 at 2 (DOC submission).

*       *       *

147.    The foregoing domestic investments are significant and substantial under Section 337, both in absolute terms and relative to Netlist's overall operations. The domestic investments and activities are also vital to Netlist's domestic business with respect to the Domestic Industry Products and represent significant added value. The domestic investments of SK hynix are likewise significant and substantial in both absolute and relative terms and vital to SK hynix's domestic business with respect to the Domestic Industry Products and represent significant added value.

148.    Complainant's licensing agreement with SK hynix is attached as Exhibit 59C.

## XI.    RELATED LITIGATION

### A.    '366 Patent

149.    On July 28, 2025, Netlist filed a complaint in the U.S. District for the Eastern District of Texas, Civil Action No. 2:25-cv-00748, alleging infringement of the '366 Patent against the Proposed Samsung Respondents and Avnet, Inc. The case is in the initial stages.

150.    On July 28, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00749, alleging infringement of the '366 Patent against Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC (collectively, "Micron"), and Avnet, Inc. The case is in the initial stages.

151.    On July 29, 2025, Micron filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00942, seeking a declaratory judgment of non-infringement of the '366 Patent. The case is in the initial stages.

### B.    '731 Patent

152.    On May 19, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00557, alleging infringement of the '731 Patent against the Proposed Samsung Respondents and Avnet, Inc. The case was consolidated with Civil Action No. 2:25-cv-00558, to include Micron and Avnet, Inc. The case is in its initial stages.

153.    On July 10, 2025, Micron filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00863, seeking a declaratory judgment of non-infringement of the '731 Patent against Netlist. The case is in the initial stages.

154.    On August 29, 2025, SEC filed a petition for *inter partes* review of the '731 Patent, IPR2025-01431. The case is in its initial stages.

C.      '608 Patent

155.     On April 28, 2021, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 6-21-cv-00431, alleging infringement of the '608 Patent against Micron. The case was transferred to the Austin Division of the Western District of Texas and was assigned case number 22-cv-00136. The case was stayed on May 11, 2022, pending multiple *inter partes* review. It remains stayed pending the appeal of the final written decisions issued in those proceedings, including IPR2022-00847.

156.     On December 23, 2021, Micron filed a petition for *inter partes* review of the '608 Patent, IPR2022-00237. The Board denied institution.

157.     On August 1, 2022, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:22-cv-00293, alleging infringement of the '608 Patent against Proposed Samsung Respondents. The case was consolidated with Civil Action No. 2:22-cv-00294, to include Micron. A jury verdict was entered in favor of Netlist on November 22, 2024 finding claims of the '608 patent infringed and not invalid. The jury awarded $12,000,000 in damages for infringement of the '608 Patent. The Court entered judgment on the verdict on December 2, 2024.

158.     On April 27, 2023, SEC filed a petition for *inter partes* review of the '608 Patent in accordance with 37 C.F.R. § 42.107(a), IPR2023-00847. The Board found claims 1–5 of the patent not unpatentable under 35 U.S.C. § 103. On January 21, 2025, SEC appealed that decision to the U.S. Court of Appeals for the Federal Circuit, No. 25-1375.

159.     On January 10, 2024, Micron filed a petition for *inter partes* review of the '608 Patent in accordance with 37 C.F.R. § 42.107(a), IPR2024-00370. The Board denied institution.

160.     On August 14, 2025, an anonymous party filed a request for *ex parte* reexamination of the '608 patent. The PTO has not yet acted on the request.

**D.    '523 Patent**

161.    On March 17, 2020, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 6-20-cv-00194, alleging infringement of the '523 Patent against SK hynix America Inc. and SK hynix. The parties later settled and the case was dismissed.

162.    On June 15, 2020, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 6-20-cv-00525, alleging infringement of the '523 Patent against SK hynix America Inc. and SK hynix. The parties later settled and the case was dismissed.

163.    On August 21, 2020, SK hynix America Inc. and SK hynix filed a petition for *inter partes* review of the '523 Patent, IPR2020-01421. The Board granted institution, the parties later settled, and the proceeding was dismissed.

164.    On January 15, 2021, SEC and SSI filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1-21-cv-01453, seeking a declaratory judgment of non-infringement of the '523 Patent, unenforceability due to inequitable conduct and unclean hands, and breach of contract. Netlist asserted counterclaims of infringement against Samsung and later filed an amended answer that added counterclaims for patent infringement against Google LLC and Alphabet Inc. The case was stayed on December 1, 2023 and remains stayed.

165.    On October 15, 2021, SEC filed a petition for *inter partes* review of the '523 Patent, IPR2022-00063. The Board found claims 1–34 not unpatentable under 35 U.S.C. § 103. On July 10, 2023, SEC appealed that decision to the U.S. Court of Appeals for the Federal Circuit. The Federal Circuit summarily affirmed the Board's decision on March 5, 2025. No. 23-2133, Dkt. No. 44.

### E.    '035 Patent

166.    On April 28, 2021, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 22-cv-00136, alleging infringement of the '035 Patent against Micron. The case was transferred from Civil Action No. 6-21-cv-00431. The case was stayed on May 11, 2022 pending multiple *inter partes* review proceedings and remains stayed pending the appeal of final written decisions issued in *inter partes* proceedings on other asserted patents.

167.    On December 23, 2021, Micron filed a petition for *inter partes* review of the '035 Patent, IPR2022-00236. The Board found claims 1, 10–13, and 21 of the '035 patent unpatentable under 35 U.S.C. § 103 and claims 2, 6, and 22 not unpatentable. The Petitioners filed a request for rehearing, which was granted. In the rehearing Order, the Board found that claim 22 was unpatentable. Neither party appealed the Board's decision.

### F.    '087 Patent

168.    On May 19, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00552, alleging infringement of the '087 patent against Micron. The case was terminated on May 22, 2025.

169.    On May 19, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00553, alleging infringement of the '087 patent against the Proposed Samsung Respondents. The case was terminated on May 22, 2025.

170.    On May 19, 2025, Netlist filed a Complaint in the U.S. District Court for Eastern District of Texas, Civil Action No. 2:25-cv-00557, alleging infringement of the '087 patent against the Proposed Samsung Respondents. The case is in the initial stages.

171.    On May 19, 2025, Netlist filed a Complaint in the U.S. District Court for Eastern District of Texas, Civil Action No. 2:25-cv-00558, alleging infringement of the '087 patent against Micron. The case is in the initial stages.

172.    On May 20, 2025, the Proposed Samsung Respondents filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00626, seeking a declaratory judgment of non-infringement of the '087 Patent. The case is in the initial stages. The Proposed Samsung Respondents have moved for leave to file an amended complaint to add declaratory judgment claims against the '366 Patent and '731 Patent. That motion is currently pending.

173.    On May 20, 2025, Micron filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00629, seeking a declaratory judgment of non-infringement of the '087 Patent. The case is in the initial stages.

174.    On August 25, 2025, SEC filed a petition for *inter partes* review of the '087 Patent, IPR2025-01402. The case is in the initial stages.

175.    On August 25, 2025, SEC filed a petition for post grant review of the '087 Patent, PGR2025-00071. The case is in the initial stages.

176.    Netlist has not previously litigated the Asserted Patents before any other court or agency.

## XII.    RELIEF REQUESTED

177.    Netlist respectfully requests that the Commission:

(a)    Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Respondents' violations of that section based on the importation into the United States, sale for importation, and/or sale within the United States

after importation of DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents;

(b)     Schedule and conduct a hearing pursuant to Section 337(c) for the purposes of (i) receiving evidence and hearing argument concerning whether there has been a violation of Section 337, and (ii) following the hearing, determining that there has been a violation of Section 337;

(c)     Issue a permanent limited exclusion order pursuant to 19 U.S.C. § 1337(d) forbidding entry into the United States of DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents and are manufactured, imported, sold for importation, and/or sold after importation by or on behalf of Respondents, their subsidiaries, related companies, and agents;

(d)     Issue permanent cease-and-desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting Respondents, their domestic subsidiaries, related companies, and agents from engaging in the importation, sale for importation, marketing and/or advertising, distribution, offering for sale, sale, use after importation, sale after importation, and other transfer within the United States (except for exportation) of DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents;

(e)     Impose a bond pursuant to 19 U.S.C. § 1337(j) on the importation of any DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents during the 60-day Presidential review period; and

(f)     Issue such other and further relief as the Commission deems just and proper under the law, based on the facts determined by the Investigation and the authority of the Commission.

Dated: September 30, 2025

Respectfully submitted,

_____
Daniel E. Yonan
Donald R. Banowit
William H. Milliken
Richard M. Bemben
Lauren A. Watt
Sterne, Kessler, Goldstein & Fox PLLC
1101 K Street NW, 10th Floor
Washington DC 20005
Tel.: (202) 371-2600

Jason Sheasby
Annita Zhong, PhD
Andrew Strabone
Lisa Glasser
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel.: (310) 277-1010

*Counsel for Complainant Netlist, Inc.*

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | Investigation No. 337-TA-\_\_\_\_\_ |

## VERIFICATION OF COMPLAINT

I, Gail Sasaki, am Executive Vice President and Chief Financial Officer of Netlist, Inc., and am authorized to execute this verification of the accompanying Complaint under Section 337 of the Tariff Act of 1390, as Amended, on behalf of Complainant Netlist, Inc.  In accordance with Commission Rules 210.4 and 210.12(a), under penalty of perjury, I declare that:

1. I have read the Complaint and am familiar with the allegations and statements contained therein.

2. To the best of my knowledge, information, and belief founded after reasonable inquiry under the circumstances, the allegations and statements made in the Complaint are well grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

3. The allegations and other factual contentions in the Complaint have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

4. This Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on September 30, 2025

Gail Sasaki
EVP and Chief Financial Officer



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

December 5, 2025

The Honorable Lisa R. Barton                                    *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

    Re:    *Certain Dynamic Random Access Memory (DRAM) Devices, Products
           Containing the Same, and Components Thereof*, Docket No. 3854 –
           Supplemental Information to Complaint

Dear Secretary Barton:

    On behalf of Netlist, Inc. ("Netlist" or "Complainant"), we write to provide the
following supplemental information regarding the Complaint filed on September 30, 2025 in
Investigation Docket No. 337-3854. Enclosed with this letter as supplemental information is
Exhibits A–G.

    **1.    Certified Versions and Prosecution Histories.**

    Complainant has retrieved certified copies of both the prosecution histories and the
Asserted Patents[1] (Appendices A–F to the Complaint), in addition to copies of the prosecution
histories for the related priority applications for the Asserted Patents. These are being
delivered to the Commission pursuant to Commission Rule 210.12(c).

    **2.    The '087 Patent Relates to HBM DRAM and Is Not Asserted Against the
           DDR5 DIMM Accused Products.**

    The '087 patent relates to High-Bandwidth Memory ("HBM") technology. *See* Compl.
¶ 100. As a clarification, Proposed Respondents'[2] Accused Products that contain DDR5
DIMMs—but do not contain HBM—are not alleged to infringe the asserted claims of the '087
patent. *See* Compl. ¶ 114; Ex. 21C. The Complaint and accompanying claim charts

---

[1] The Asserted Patents are U.S. Patent Nos. 12,373,366 ("the '366 patent"); 10,025,731 ("the
'731 patent"); 10,268,608 ("the '608 patent"); 10,217,523 ("the '523 patent"); 9,824,035
("the '035 patent"); and 12,308,087 ("the '087 patent").
[2] The Proposed Respondents are Samsung Electronics Co., Ltd.; Samsung Electronics
America, Inc.; Samsung Semiconductor, Inc. (collectively, "Samsung"); Google LLC
("Google"); and Super Micro Computer, Inc. ("Super Micro").

The Honorable Lisa R. Barton
December 5, 2025
Page 2

demonstrate how representative accused products containing HBM infringe claims 1, 2, 5, 7, 8, 13, 17, 18, 20, 22, and 23 of the '087 patent. *See* Compl. ¶¶ 113–114; Ex. 21C.

### 3. Proposed Respondent Samsung's Accused HBM Products Are Made, Packaged, and Shipped from Outside the United States.

As discussed in the Complaint, Samsung's HBM is manufactured outside the United States and sold for importation into the United States and/or imported into the United States by the Proposed Respondents. *See* Compl. ¶¶ 125–130. Further support for the foreign origin and importation of Samsung's HBM products can be found in publicly available articles. For example, articles indicate that Samsung's manufacturing and packaging facilities for its HBM products are located in South Korea. *See* Exhibit A (https://koreajoongangdaily.joins.com/news/2024-11-12/business/industry/Samsung-to-expand-Cheonan-chip-packaging-facility-for-HBM-rampup/2176108 (last accessed December 4, 2025)).

### 4. The Accused HBM Products Charted in the Complaint Are Representative of Proposed Respondents' Other HBM Products.

The Complaint explained that Samsung manufactures HBM products, which are imported into the United States and supplied to Google and Super Micro for incorporation into Google's and Super Micro's Accused Products. *See* Compl. ¶¶ 125–130. The Accused Products charted in Exhibit 21C are representative of other HBM products sold or offered for sale for importation into the United States, imported into the United States, or sold or offered for sale after importation into the United States. *Id.*

### 5. Proposed Respondent SuperMicro's Accused Products Include AMD Accelerators Which In Turn Include Accused HBMs.

As indicated in paragraph 130 of the Complaint, the H13 and H14 Super Micro servers include and use AMD's Instinct accelerators (MI300X/MI325X/MI350X)—as evidenced by the Super Micro datasheets. *See* Exhibits 35 ("Supported GPU: AMD: Instinct™ MI350X Accelerators, Instinct™ MI325X Accelerators"; "Motherboard Super H14DSG-OD"); Exhibit 36 ("Supported GPU: AMD: Instinct™ MI300X Accelerators"; "Motherboard Super H13DSG-OM"). The accelerators include Samsung's Accused HBMs as evidenced by Exhibits 37–38. This information is further corroborated in other datasheets concerning the H13 and H14 servers. *See* Exhibits B–D.

### 6. Accused Products from Proposed Respondents Google and SuperMicro Are Domestically Located and Used.

As a clarification to paragraph 129, for Google and by way of example, its Accused Tensor Processing Units (TPUs) are set up and used domestically in such states as Iowa, South Carolina, Ohio, Texas, Oregon, Nevada, etc. Exhibit E at 2–3 (highlighted Google webpages identifying specific regional domains from which TPUs are located in the United States); Exhibit F at 1–2 (identifying supported zones in the United States for fifth, sixth, and seventh generation TPUs). As for the Accused Google Cloud Platforms (GCPs), these too are used

The Honorable Lisa R. Barton
December 5, 2025
Page 3

domestically as well in such states as Oregon, California, Utah, Nevada, and Virginia. Exhibit G at 2–3 (highlighted Google specific webpages identifying specific regional domains from which Google Cloud products are located in the United States).

Also, for clarification to paragraph 130, as recently as last week SuperMicro touted that its Accused Products are "overwhelmingly American: SMCI manufactures the majority of its systems at its San Jose headquarters . . . and it stands as the only major server, storage, and accelerated compute platform vendor that designs, develops, and manufactures a significant portion of its systems in the U.S." *See* EDIS No. 864946 at 1–2. SMCI is the "rare" IT infrastructure company with a "Made in the USA" program. *Id*. at 4.

### 7. A Domestic Industry Exists Through Investments of Licensee SK Hynix, or in the Alternative, Is in the Process of Being Established.

Complainant amends paragraphs 10, 132, 135, and 145 of the Complaint as follows:

**10.1** As set forth in Section X of this Complaint, a domestic industry pursuant to 19 U.S.C. § 1337(a)(2)–(3) exists*, or in the alternative is in the process of being established,* based on the investments made by Netlist and its licensee SK hynix Inc. ("SK hynix") domestically in relation to products that are protected by the Asserted Patents.

**132.1** A domestic industry, as set forth in 19 U.S.C. § 1337(a)(2) and defined by 19 U.S.C. § 1337(a)(3), exists*, or in the alternative is in the process of being established,* for the following Netlist and SK hynix products, which are protected by the Asserted Patents:

**135.1** For each of the Asserted Patents, there is a domestic industry pursuant to 19 U.S.C. § 1337(a)(3)(A), (B), and (C) based on the continuing significant domestic investment in plant, equipment, labor, and capital by Netlist and/or its licensee SK hynix, as well as the continuing substantial domestic investment in exploitation of the Asserted Patents through research, development, and engineering. Netlist has invested tens of millions of dollars since 2021 on developing and creating the Domestic Industry Products, bringing them to market, and sustaining their success through continuous technological development. Similarly, SK hynix has *and will continue to make* significant investments in the United States, including at least labor and facility costs.

**145.1** SK hynix also announced in 2024 that it will invest $3.87 billion in a chip packaging facility in West Lafayette, Indiana, which would be slated for operation in 2028. Exhibit 56. With the new facility, SK hynix plans to establish HBM production lines and advanced packaging R&D facilities. *Id*.; see also Exhibit 57. SK hynix was also awarded up to $458 million in direct funding and access to proposed loans of $500 million as part of the CHIPS and Science Act for its investment to build a production base for semiconductor packaging in Indiana. Exhibit 56. The new facility is expected to create approximately 1,000 jobs in addition to hundreds of construction jobs. *Id*. *This facility is evidence of SK hynix's continued domestic investments in the future for HBM products that practice the '087 patent and supports a domestic industry that is in the process of being established.*

The Honorable Lisa R. Barton
December 5, 2025
Page 4

**8.    '608 Patent *Ex Parte* Reexamination.**

Complainant amends paragraph 160 of the Complaint as follows:

160.1.  On August 14, 2025, an anonymous party filed a request for ex parte reexamination of the '608 patent. *At the time of filing the Complaint, the PTO had not yet acted on the request. However, the reexamination mentioned was granted on November 21, 2025*.

**9.    Related Litigation Update: '305 Patent Lawsuit.**

Complainant amends ¶ 167 of the Complaint as follows:

167.1.  *On November 11, 2025, Samsung filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-01371, seeking, inter alia, a declaratory judgment of non-infringement of the '035 Patent. This case is in the initial stages*.

Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Daniel E. Yonan
Director

*Counsel for Complainant Netlist, Inc.*

The Honorable Lisa R. Barton
December 5, 2025
Page 5

*Enclosures*

| Exhibit No. | Description |
| :---: | :--- |
| A | Korea Joong Daily, "Samsung to expand Cheonan chip packaging facility for HBM ramp-up" (Nov. 12, 2024) |
| B | SuperMicro Datasheet, H13 8U 8-GPU System |
| C | SuperMicro Datasheet, H13 Quad APU Systems |
| D | SuperMicro Datasheeet, H14 8-GPU Systems |
| E | Google Cloud Documentation, Accelerator (GPU and TPU) Locations (accessed Dec. 4, 2025) |
| F | Google Cloud Documentation, TPU Regions and Zones (accessed Dec. 5, 2025) |
| G | Google Cloud, Cloud Locations (Nov. 26, 2025) |



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

December 12, 2025

The Honorable Lisa R. Barton                              *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

> Re:    *Certain Dynamic Random Access Memory (DRAM) Devices, Products
> Containing the Same, and Components Thereof,* Docket No. 3854 –
> Supplemental Information to Complaint

Dear Secretary Barton:

On behalf of Netlist, Inc. ("Netlist" or "Complainant"), we write to provide the following additional supplemental information regarding the Complaint filed on September 30, 2025 in Investigation Docket No. 337-3854. Enclosed with this letter is replacement Exhibit 33 and as supplemental information the executed Declaration of Devon Park (Dec. 12, 2025).

1.    <u>**Revised Clear Statement in Plain English of the Category of Accused Products (19 C.F.R § 210.12(a)(12))**</u>

Complainant amends paragraph 38 of the Complaint as follows:

**38.1** Pursuant to Commission Rules §§ 210.10(b)(1) and 210.12(a)(12), ~~the categories of Accused Products are dynamic random access memory (DRAM) devices used in computing systems. DRAM is used as the primary working memory in computers and other devices, such as servers, desktops, and mobile phones, to temporarily store data and instructions that the processor needs for quick access during operation. Specifically these devices are DDR5 generation DIMMs and high bandwidth memory (HBM).~~ *the products accused of infringement are dynamic random access memory devices (specifically DDR5 generation DIMMs and high bandwidth memory (HBM)), products containing the same (such as servers, computing systems, and storage systems), and components thereof.*

2.    <u>**Google Imports Samsung HBMs into the United States**</u>

In addition to the prior supplement that highlighted domestic use by Google of HBM packages in its servers in the United States, Complainant amends paragraph 129 of the Complaint as follows:

The Honorable Lisa R. Barton
December 12, 2025
Page 2

**129.1** Google imports the Accused Products directly or indirectly from Samsung and uses them in various Google products and services, including in its data storage facilities and servers. For example, on information and belief, Google's fifth, sixth and seventh generation Tensor Processing Units (TPUs) utilize Samsung's accused HBM2, HBM2E, HBM3E and HBM4 high bandwidth memory packages. *See* Replacement Exhibit 33 at 3("Google is expected to become the second-largest buyer of HBM" from Samsung, "driven by its investment in Tensor Processing Units (TPUs)"). ***Exhibit 33 identifies Google among the "biggest purchasers of HBM" and cites to an "internal Samsung roadmap" that tracks Google's demand and shipments made for HBM-based TPUs including metrics such as the content of the HBM package (memory size), density, how many units per package, etc. Id. at 2, 5 (callout of internal Samsung roadmap). As previously identified, Google's TPUs are set up and used in the United States. See EDIS Doc. ID 865737 (Dec. 5, 2025 Second Supplement to the Complaint) at 2–3.*** In addition, on information and belief, the Google Cloud Platform (GCP) virtual machine services utilize Intel Xeon 6 processors in its compute-optimized C4 virtual machine series, which use Samsung's accused DDR5 RDIMMs and MRDIMMs. *See* Exhibit 34. On information and belief, Google purchases these Accused Products from Samsung, imports them, and uses them in these Google products and services.

### 3. Google Confirmed Importation of HBMs in Its PI Submission

As further evidence that Google receives the accused Samsung HBM devices in the United States, Google stated in its public interest submission that Google is "unmatched in its supply of critical TPUs and GCPs" and that "Google's ability to supply these products [domestically] requires a sufficient supply of HBM" which incorporates memory from Samsung among other suppliers. *See* EDIS Doc. ID 864975 at 4. Google does not contest anywhere in this submission that it is not receiving, incorporating, or relying on the accused Samsung HBM packages in the United States and in fact confirms that its products are "downstream accused Google products." *Id.* at 2.

### 4. Super Micro Imports Samsung HBMs into the United States

In addition to the prior supplement that highlighted domestic use by Super Micro of HBM packages in its servers in the United States, Complainant amends paragraph 130 of the Complaint as follows:

**130.1** Super Micro imports the Accused Products directly or indirectly from Samsung and incorporates them in various Super Micro products, including its servers and storage systems. For example, on information and belief, Super Micro's H13 and H14 GPU-optimized servers can be configured with AMD's Instinct accelerators (MI300X/MI325X/MI350X), which include Samsung's HBM3 and HBM3E high bandwidth memory. *See* Exhibit 35 (AS - 8126GS-TNMR Datasheet); Exhibit 36 (AS -8125GS-TNMR2 Datasheet); Exhibit 37 ("Samsung's HBM3 memory" is "integrated into AMD's MI300X AI accelerator"); Exhibit 38 ("AMD Instinct MI350X and MI355X GPUs" use "288GB HBM3E" from "Samsung Electronics"). In addition, on information and belief, Super Micro's Hyper SuperServer SYS-212HA-TN with Intel's Xeon® 6 6900 series processors can be configured with Samsung DDR5 RDIMM or Samsung DDR5 MRDIMM. *See* Exhibit 39 (Hyper SuperServer SYS-

The Honorable Lisa R. Barton
December 12, 2025
Page 3

212HA-TN Datasheet); Exhibit 40 (product uses "Intel® Xeon® 6900 series processors"); Exhibit 41 (noting that "[u]pcoming MRDIMMs" from Samsung "are set to be compatible with Intel's Xeon 6 platforms"). On information and belief, Super Micro purchases these accused products from Samsung, imports them, and uses them in these Super Micro products. ***Upon information and belief, these imported products by Super Micro include the accused Samsung HBMs either as part of a printed circuit board on which a combination of a GPU processor and HBM packages are mounted or as part of a finished server rack, which are sold after importation in the United States by Super Micro. For example, on information and belief, either AMD or another system integrator will mount AMD Instinct GPU accelerators (which includes a GPU and HBM packages) onto a standard universal baseboard (UBB 2.0). Declaration of D. Park (Dec. 12, 2025), Ex. 7. Once assembled, the printed circuit boards (PCBs) are then integrated into server racks, such as Super Micro's H13/14 servers. Id., Ex. 9. On information and belief, most HBM-and-GPU packages come from Asia, then enter the U.S. as fully assembled components on PCBs that are then integrated into U.S. servers. Id., ¶¶ 11–15. However, Super Micro also has manufacturing facilities in Taiwan, the Netherlands, and Malaysia for rack-scale production, so at least some HBMs may be imported into the U.S. within assembled server racks. Id., Ex. 13.***

       Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Daniel E. Yonan
Director

*Counsel for Complainant Netlist, Inc.*

The Honorable Lisa R. Barton
December 12, 2025
Page 4

*Enclosures*

| Exhibit No. | Description |
|---|---|
| Replacement 33 | Wayne Williams, Samsung HBM Roadmap Shows Google Could Become NVIDIA's Fiercest Competitor in AI by 2026, but I Wonder What's Happening to Microsoft, techradar (Feb. 11, 2025), https://www.techradar.com/pro/samsunghbm-roadmap-shows-google-could-become-nvidias-fiercest-competitor-in-ai-by-2026-but-i-wonder-whats-happening-to-microsoft |
| N/A | Executed Declaration of Devon Park (December 12, 2025) with Exhibits 1–16 |



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

December 16, 2025

The Honorable Lisa R. Barton                                    *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

     Re:     *Certain Dynamic Random Access Memory (DRAM) Devices, Products*
              *Containing the Same, and Components Thereof,* Docket No. 3854 –
              Supplemental Information to Complaint

Dear Secretary Barton:

     On behalf of Netlist, Inc. ("Netlist" or "Complainant"), we write to provide the following additional supplemental information regarding Netlist:

     Telephone No.: 949-435-0025
     Email: info@netlist.com
     Lead Counsel Telephone No.: 202-772-8899
     Lead Counsel Email: dyonan@sternekessler.com

     Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

                        Respectfully submitted,

                        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                        Daniel E. Yonan
                        Director

                        *Counsel for Complainant Netlist, Inc.*

# Appendix C

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-1472** |

## RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA TO ISSUE A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The undersigned Administrative Law Judge finds that the evidence that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek from SK hynix Inc. in its Proposed Letter of Request is reasonably necessary to investigate fully its claims of a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, in the above-captioned investigation before the United States International Trade Commission. Accordingly, the undersigned recommends that the District Court for the District of Columbia issue, under its seal and signature, the attached Letter of Request for Request for Information to the Central Authority of the Republic of Korea.

A Letter of Request is the appropriate method of gathering the necessary requested evidence outside the United States. Respondents must transmit the Letter of Request with a District Court Judge's signature and the District Court's seal to the Central Authority of the Republic of Korea. The Proposed Letter of Request meets the standards set forth by the Hague Convention

regarding the Republic of Korea. *See* U.S. Department of State, Legal Considerations—South Korea, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html.

To comply with the statutory time limitations on International Trade Commission investigations, the undersigned respectfully requests that the Court assign a judge and schedule a hearing to expedite issuance of the Letter of Request.

Respectfully submitted this 27th day of February, 2026

MaryJoan McNamara
Administrative Law Judge

Address for Return of Issued Letter of Request

F. Christopher Mizzo, P.C.
**Kirkland & Ellis LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: Samsung-Netlist-ITC@kirkland.com

*Counsel for Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.*

# Appendix D

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

Netlist, Inc.,

           Plaintiff (Complainant),

     v.

Samsung Electronics Co., Ltd., Samsung
Electronics America, Inc., Samsung
Semiconductor, Inc., Google LLC, and Super
Micro Computer, Inc.

           Defendants (Respondents)

Case No: _____

**RECOMMENDATION FOR
ISSUANCE OF A LETTER OF
REQUEST**

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE REPUBLIC OF KOREA FOR THE PRODUCTION OF INFORMATION

The United States District Court for the District of Columbia presents its compliments to the National Court Administration, the appropriate judicial authority of the Republic of Korea, and respectfully requests international judicial assistance to obtain the production of information under The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters from the following entity:

    **SK hynix Inc.**
    2091, Gyeongchung-daero, Bubal-eup,
    Icheon-si Gyeonggi-do
    Republic of Korea

The United States District Court for the District of Columbia is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the production of evidence both within and outside its jurisdiction.

The requested evidence is for an administrative proceeding in the *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components*

*Thereof*, Investigation No. 337-TA-1472 before the United States International Trade Commission ("the Investigation") as approved by this Court the above-captioned matter. Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek discovery from SK hynix Inc. ("SK hynix") regarding its MRDIMM, RDIMM, and HBM products and investments that SK hynix has made in the United States regarding those products. Complainant, Netlist, Inc. ("Netlist") asserts that SK hynix is a licensee to the asserted patents in the Investigation. Netlist alleges activities conducted by SK hynix establishes the existence of a domestic industry in the United States pursuant to 19 U.S.C. § 1337(a)(2) and (3). Additionally, Netlist alleges that SK hynix's capacity to increase production to supply increased demand should an exclusion order be entered in the Investigation against the Respondents' products.

In the proper exercise of its authority, this Court has determined that the evidence sought from SK hynix Inc. cannot be secured except by the intervention of the National Court Administration of the Republic of Korea. There are important deadlines in the above-referenced administrative proceeding, particularly a cut-off to fact discovery that is scheduled for June 8, 2026, and an evidentiary hearing that is scheduled for October 28-November 4, 2026. Thus, this Court additionally requests that the Director of International Affairs expedite this request to the extent possible.

This Court requests the assistance described below:

| 1. Sender | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200 |
|---|---|

| | Email: Samsung-Netlist-ITC@kirkland.com |
|---|---|
| 2. Central Authority of the Requested State | National Court Administration<br>Attn.: Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>SEOUL 06590<br>Republic of Korea |
| 3. Person to whom the executed request is to be returned | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |

| 4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | |
|---|---|
| Date | Please respond as soon as practicable, but in any event please respond no later than March 11, 2026. |
| Reason for Urgency | Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time." The fact discovery cutoff for this Investigation is July 8, 2026. |

| 5. In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request: | |
|---|---|
| 5.a Requesting judicial authority (Article 3, a) | Honorable _____<br>United States District Court Judge<br>U.S. District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington. DC 20001<br>United States of America |
| 5.b To the competent authority of (Article 3, a) | Republic of Korea |
| 5c. Names of the case and any identifying number | *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components Thereof*, U.S.I.T.C. Investigation No. 337-TA-1472 |

| 6. Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3, b) | |
|---|---|

| | |
|---|---|
| 6a. Plaintiff (Complainant) | Netlist, Inc.<br>111 Academy Way<br>Suite 100<br>Irvine, CA 92617 |
| Plaintiff's Representatives | Jason Sheasby<br>Annita Zhong, PhD<br>Andrew Strabone<br>Lisa Glasser<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel.: (310) 277-1010<br><br>Daniel E. Yonan<br>Donald R. Banowit<br>William H. Milliken<br>Richard M. Bemben<br>Lauren A. Watt<br>Sterne, Kessler, Goldstein & Fox PLLC<br>1101 K Street NW, 10th Floor<br>Washington DC 20005<br>Tel.: (202) 371-2600 |
| 6.b Defendants (Respondents) | Samsung Electronics Co., Ltd.<br>129 Samsung-ro, Yeongtong-gu,<br>Suwon, Gyeonggi-do, 443-742<br>Republic of Korea<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Semiconductor, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, California 94043<br><br>Super Micro Computer, Inc.<br>980 Rock Ave.<br>San Jose, California 95131 |
| Defendant's Representatives | *Counsel for Respondent Google LLC* |

Gregory F. Corbett
Charles T. Steenburg
Anant K. Saraswat
Meaghan P. Luster
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: 617.646.8000

Elizabeth A. DiMarco
Suresh S. Rav
Simon Lu
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.571.5001

Jared W. Newton
Quinn Emanuel Urquhart & Sullivan, LLP
555 13th St. NW, Suite 600
Washington, D.C. 20004
Tel. (202) 538-8000
jarednewton@quinnemanuel.com

*Counsel for Respondents Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc., and Samsung Semiconductor, Inc.*

Paul F. Brinkman, P.C.
F. Christopher Mizzo, P.C.
Michael A. Pearson, Jr.
Karthik Ravishankar
Maranda Johnston
David Corasaniti
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

Greg S. Arovas, P.C.
Todd Friedman, P.C.
James E. Marina, P.C.
Alan Rabinowitz
Benjamin Lasky
Azaad Zimmermann
Kirkland & Ellis LLP
601 Lexington Avenue

| | |
|---|---|
| | New York, NY 10022<br>Telephone: (212) 446-4800<br><br>Greg Polins<br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br><br>Luke Norrell<br>Cameron Lindsay<br>Kirkland & Ellis LLP<br>401 W 4th St, Suite 4000<br>Austin, TX 78701<br>Telephone: (512) 678-9050<br><br>Brian R. Nester<br>Covington & Burling LLP<br>One CityCenter,<br>850 Tenth Street, NW<br>Washington D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Email: BNester@cov.com |
| | *Counsel for Respondent Super Micro Computer, Inc.*<br><br>Richard S. Zembek<br>Charles B. Walker<br>Daniel S. Leventhal<br>Talbot Hansum<br>Ryan E. Meltzer<br>NORTON ROSE FULBRIGHT US LLP<br>1550 Lamar Street, Suite 2000<br>Houston, Texas 77010<br>Tel: (713) 651-5151 |
| 6.c Other parties | Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W., Suite 401<br>Washington, DC 20436 |
| 7. Nature and purpose of the Proceedings | This is a proceeding being conducted by the United States International Trade Commission under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on a Complaint filed by Netlist, Inc. on September 30, 2025. |

Netlist, Inc. alleges that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc. unlawfully import into the United States, sell for importation into the United States, and/or sell within the United States after importation of certain dynamic random access memory (DRAM) devices, products containing the same, and components thereof, that infringe Netlist's U.S. Patent Nos. 12,373,366 ("the '366 Patent"); 10,025,731 ("the '731 Patent"); 10,268,608 ("the '608 Patent"); 10,217,523 ("the '523 Patent"); 9,824,035 ("the '035 Patent"); and 12,308,087 ("the '087 Patent") (collectively, "the Asserted Patents").

The International Trade Commission instituted proceedings based on Netlist's Complaint as supplemented on November 20, 2025, December 5, 2025, December 12, 2025, and December 16, 2025. Upon institution, the case was assigned to Administrative Law Judge MaryJoan McNamara to preside over pre-trial matters, conduct a trial, and issue an initial determination on the merits of the case. The initial determination is subject to possible review by the International Trade Commission with a right to appeal to the United States Court of Appeals for the Federal Circuit.

Respondents seek this Letter of Request because, as set forth in the Complaint, Netlist contends that SK hynix Inc. is a licensee to the Asserted Patents and sells products that it believes practice the Asserted Patents. *See* Complaint ¶¶ 10, 16, 17. Netlist intends to rely on SK hynix's products and investments in the United States to allege that a domestic industry exists, as required by 19 C.F.R. § 1337(a). *Id*. at ¶¶ 132-135, 140-148. Thus, Respondents contend that SK hynix Inc. is likely in possession of information that is directly relevant to the issue of domestic industry.

Specifically, Respondents believe SK hynix possesses unique information concerning (i) the design, structure, and function of its RDIMM, MRDIMM, and HBM products and (ii) SK hynix's expenditures and investments in the United States to

7

| | bring those products to market. Additionally, SK hynix will likely possess information regarding whether SK hynix's investments in the United States are significant, particularly in comparison to worldwide investments. |
| --- | --- |
| | While Samsung has also requested, via subpoena, documents from SK hynix's subsidiary SK hynix America, Respondents pursue this Letter of Request to SK hynix Inc. to the extent the information requested is not within the possession, custody, or control of SK hynix America. For example, to the extent that SK hynix America argues that key technical or financial evidence is only available through SK hynix Inc., pursuing this Letter of Request now is necessary, particularly in light of the shortened schedule of the Investigation. |
| 8. Evidence to be obtained or other judicial act to be performed and purpose of the evidence or judicial act sought | |
| 8a. Evidence to be obtained or other judicial act to be performed (Article 3, d) | It is requested that a judicial authority of the Republic of Korea order SK hynix to produce responses to questions relating to its investments in the United States regarding its MRDIMM, RDIMM, and HBM products and technical features of those products. The requested information is set forth with more specificity in Attachment A. |
| 8b. Purpose of the evidence or judicial act sought | The requested information will provide evidence directly relevant to the existence of a domestic industry pursuant to 19 U.S.C. § 1337(a)(1)(2), and (3), and that evidence may then be introduced at the evidentiary hearing held by the Administrative Law Judge in the Investigation. Netlist alleges that SK hynix is a licensee of the Asserted Patents and thus intends to rely on certain of SK hynix's investments in the United States. |
| | In Attachment A, Request Nos. 1-3 seek identification of the particular model numbers for the DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs that have been produced by SK hynix since January 2021. Respondents seek this information in order to confirm or rebut the relevance of SK hynix's investments in the U.S. to specific products. |

| | |
|---|---|
| | Requests Nos. 4-6 seek information related to SK hynix's manufacturing and sales volume. This evidence is directly relevant to the economic prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), which requires the showing of significant investment in the United States tied to inventions claimed in the asserted patents. This evidence is also relevant to whether an exclusion order in this Investigation would harm the public interest in the United States. *See* 19 U.S.C. § 1337(d). Specifically, this request seeks information relevant to whether SK hynix would have the capacity to satisfy the demand in the United States and replace those excluded products if there were an exclusion order. |
| | Requests Nos. 7-11 seek information regarding the structure, function, and operation of SK hynix's DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs. This is all evidence directly relevant to the technical prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3), which requires an analysis of the function of a product in comparison to the asserted patent claims. |
| | Request No. 12-16 seek information relating to possible prior art and claims that SK hynix previously made contesting the validity of an asserted patent in this Investigation. This request is directly relevant to the validity and enforceability of the asserted patent which required for relief under 19 U.S.C. § 1337(a)(1)(B). |
| | Request No. 17 seeks information related to the licensing of the asserted patents. Evidence surrounding the licensing of the asserted patents is directly relevant as Netlist intends to rely on SK hynix as a licensee of the asserted patents to satisfy the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3). |
| | Request Nos. 18 and 19 are meant to identify any inconsistencies between SK hynix's responses to these requests and what has been discussed with other parties or related entities. |

| | |
|---|---|
| 9. Identity and address of any person to be examined (Article 3, e) | None. |
| 10. Questions to be put to the persons to be examined or statement of the subject- matter about which they are to be examined (Article 3, f) | None. |
| 11. Documents or other property to be inspected (Article 3, g) | As an alternative to production of documents, see the numbered list of requests for production of information set forth in Attachment A. |
| 12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | Where a response to a request for information includes supporting documents, it is respectfully requested that each document be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business. |
| 13. Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Articles 3, I, and 9) | In this matter, a Protective Order has been entered that governs the production of information, documents, testimony, and any record of the testimony. A copy of this order is attached hereto as Attachment B. Because this action involves confidential and proprietary business information, the protective order serves to protect such information from public disclosure.<br><br>Accordingly, the United States District Court for the District of Columbia requests that any information obtained in response to this Letter of Request be treated in accordance with the provisions of the Protective Order to protect confidential and proprietary information. |
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | It is requested that the individuals identified below be furnished, as soon as practicable, with a copy of the executed Letter of Request:<br><br>F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | None. |

| | |
|---|---|
| 16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | SK hynix may refuse to give evidence only insofar as he or she has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of the Republic of Korea. |
| 17. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | To the extent that there are expenses associated with providing assistance in response to this Letter of Request, this Court will see that the Central Authority of Korea is reimbursed by:<br><br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Tel.: (202) 389-5000 |
| Date of Request | _____ day of _____ 2026 |
| Signature and Seal of the Requesting Authority | _____<br>The Honorable _____<br>United States District Judge United States District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, D.C. 20001<br>United States of America<br><br>Signed in _____, this<br><br>_____ day of _____, 2025<br><br>[Affix seal of court below:] |
| Attachments:<br>Attachment A: Requests for Information to be Produced by SK hynix | |

# Attachment A

## REQUESTS FOR INFORMATION TO SK HYNIX INC.

## DEFINITIONS

The following definitions apply to the Requests set forth below:

1.     "SK hynix," "You," "Your," and "Yourself" means SK hynix Inc. and any of its predecessors, divisions, departments, subsidiaries, and other legal Entities that are wholly or partially owned or controlled by SK hynix Inc., either directly or indirectly, together with any and all parent and affiliated companies or corporations, and all present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business Entities in the employ of or otherwise acting on behalf of SK hynix Inc.

2.     "Complainant" or "Netlist" means the Complainant Netlist, Inc., including all of its present and former corporate locations; all of its present and former predecessors, predecessors-in-interest, successors, assigns, affiliates, direct or indirect subsidiaries, parents, and trusts; all firms, corporations, and other Entities acting under common control with Netlist, in joint venture with Netlist, or under licensing or partnership agreements with Netlist; all Entities that own or are owned by Netlist in whole or in part; and all divisions and operating units thereof. Netlist further includes all of Netlist's present and former employees, agents, servants, representatives, directors, officers, accountants, consultants, attorneys, and investigators, and all others currently or formerly acting or purporting to act on behalf of Netlist or subject to the direction and control of Netlist.

3.     "Respondent(s)" shall refer to any or all of the named Respondents in this Investigation, including Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.

4.     "Samsung" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.

5.  The term "this Investigation" means the above-captioned investigation, *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof*, Investigation No. 337-TA-1472.

6.  "'035 patent" means U.S. Patent No. 9,824,035, including any corrections, reexaminations, or applications thereof.

7.  "'731 patent" means U.S. Patent No. 10,025,731, including any corrections, reexaminations, or applications thereof.

8.  "'523 patent" means U.S. Patent No. 10,217,523, including any corrections, reexaminations, or applications thereof.

9.  "'608 patent" means U.S. Patent No. 10,268,608, including any corrections, reexaminations, or applications thereof.

10.  "'087 patent" means U.S. Patent No. 12,308,087, including any corrections, reexaminations, or applications thereof.

11.  "'366 patent" means U.S. Patent No. 12,373,366, including any corrections, reexaminations, or applications thereof.

12.  "Asserted Patents" means the '035, '731, '523, '608, '087, and '366 patents, and any other patent Netlist is permitted to assert in any amended Complaint.

13.  "Prior Litigation" means any proceeding, lawsuit, or litigation between You and Netlist concerning the Asserted Patents in a United States District Court, before the ITC Commission, or the United State Patent and Trademark Office, including but not limited to, *Netlist, Inc. v. SK hynix America Inc. et al.*, No. 6:20-cv-00525 (W.D. Tex. May 10, 2021), *Netlist, Inc. v. SK hynix Inc. et al.*, No. 6:20-cv-00194 (W.D. Tex. Mar. 17, 2020), and *SK hynix Inc. et al v. Netlist, Inc.* PTAB-IPR2020-01421 (PTAB Aug. 21, 2020).

14.    "Request(s)" means the Categories of information to be Produced below in this Attachment.

15.    "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, process, method, or assemblage of components or parts (either individually or collectively) which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

16.    "JEDEC standards" means the technical standards and specifications published by or in conjunction with the Joint Electron Device Engineering Council ("JEDEC").

17.    "DDR5" means Double Data Rate 5, referring to the fifth generation of a type of computer memory called Synchronous Dynamic Random-Access Memory ("SDRAM").

18.    "DIMM(s)" means Dual In-Line Memory Modules, including but not limited to, MRDIMMs, RDIMMs, UDIMMs, and SODIMMs.

19.    "MRDIMM(s)" means Multiplexed Rank Dual In-Line Memory Modules, Multi-Ranked Buffered Dual In-Line Memory Modules, and Multiplexer Combined Ranks Dual In-Line Memory Modules.

20.    "RDIMM(s)" means Registered Dual In-Line Memory Modules.

21.    "HBM(s)" means High Bandwidth Memory, including HBM2, HBM2E, HMB3, HBM3E, HMB4 and HBM4E.

22.    "Component(s)" means parts that are assembled into a DDR5 MRDIMM, DDR5 RDIMM, or HBM product, including but not limited to, power management integrated circuits (PMIC), registering clock driver (RCD) chips, multiplexed registering clock driver (MRCD) chips, DRAM chips, DRAM dies, interface dies, logic dies, buffer dies, control dies, data buffers (DB),

multiplexed rank data buffers (MDB), temperature sensors, printed circuit boards, and serial presence detect (SPD) circuits.

23.    "TSV" means Through-Silicon Via.

24.    "Specification(s)" means a document outlining the requirements, design, functionality, and architecture for a product, including logic diagrams, state diagrams, block diagrams, timing diagrams, chip layouts, mask layouts, interposer layout, board layout files, chip layout files, CAD files, schematics, circuit diagrams, interconnection diagrams, pinout diagrams, ballout diagrams, and input/output signal descriptions.

25.    "Written Submissions" means any filings that were submitted to the authoritative body or served on an opposing party to the litigation.

26.    "Document(s)" is defined broadly to be given the full scope of that term contemplated in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and includes all non-identical copies of a document, all drafts of final documents, all other written, typed, printed, recorded, or graphically portrayed matter in any form or embodiment, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Your actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Federal Rule of Evidence 1001. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

27.    "Thing" or "Things" has the broadest meaning allowable under 19 C.F.R. § 210.30 and Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible

object of any kind and nature, including, without limitation, prototypes, models, and physical specimens thereof.

28.    "Entity" or "Entities" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

29.    "Person" or "Persons" means any natural individual or individuals.

## REQUESTS FOR INFORMATION

**REQUEST NO. 1**

Please identify, by product name and model number, all DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs produced by or for SK hynix since January 1, 2021, and if there are any documents containing such information, please provide them.

**REQUEST NO. 2**

Please identify, by product name and model number, all third-party components incorporated into any DDR5 MRDIMMs DDR5 RDIMMs, and HBMs produced by or for SK hynix since January 1, 2021, and if there are any documents containing such information, please provide them.

**REQUEST NO. 3**

Please identify, by product name and model number, all third-party components incorporated into any HBM1s produced by or for SK hynix, and if there are any documents containing such information, please provide them.

**REQUEST NO. 4**

Please identify your volume of production, in terms of total units manufactured, for DDR5 MRDIMMs, DDR5 RDIMMs and HBMs, since January 1, 2021, both (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 5**

Please identify your volume of sales, of in terms of total units sold, for DDR5 MRDIMMs, DDR5 RDIMMs and HBMs, since January 1, 2021, both (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 6**

Please describe Your capacity to increase production of DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs to accommodate higher demand for these products in 2026, 2027, and 2028, and if there are any documents containing such information, please provide them.

**REQUEST NO. 7**

Please describe the structure, function, and operation of DDR5 MRDIMMs and DDR5 RDIMMs produced by or for SK hynix since January 1, 2021, including their power supply, Components, signal lines and signal pins, how power is supplied to each Component, read and write operations, the Decision Feedback Equalizer circuits, the On-Die Termination circuits, rank selection in a read or write operation, circuits for receiving and processing control/address signals, and circuits for receiving and processing control/address signals in the registering clock driver or multiplexed registering clock driver; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 8**

Please describe the operation of the DDR5 MRDIMMs and DDR5 RDIMMs produced by or for SK hynix since January 1, 2021, including (i) at power-up, (ii) in the event of an over-voltage in the power supply input; (iii) in the event of an under-voltage in the power supply input; and (iv) during normal operation; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 9**

Please describe how the MDBs included in DDR5 MRDIMMs produced by or for SK hynix since January 1, 2021 work, including (a) explanations of the paths that signals travel through the MDBs, (b) how timing parameters (including but not limited to delay parameters) for use in a read or write operation are selected, set, or received and (c) which circuits, functional blocks and/or registers are involved in selection and/or setting.

**REQUEST NO. 10**

Please describe the Through-Silicon Via ("TSV") structures utilized in the HBMs produced by or for SK hynix since January 1, 2021, including the function of each TSV structure, the electrical connections for each TSV structure, signals or power sent to each TSV structure and the sources of the signals and power, and signals sent by or via each TSV structure and the destinations of the signals; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 11**

Please describe the read and write operations of the HBMs produced by or for SK hynix since January 1, 2021, including (a) signals that are received by control die, buffer die, logic die, or interface die; (b) signals generated by the control die, buffer die, logic die, or interface die in response to the received signals and their functionality; (c) signals transmitted from the control die, buffer die, logic die, or interface die to the core die(s) in response to command/address signals received by the control die, buffer die, logic die, or interface die; (d) the changing of the TSV driver between a non-driving and a driving state in the control die, buffer die, logic die, or interface die associated with channels (or pseudochannels) selected for a read or write operation, including all signals involved therein; (e) the changing of the TSV driver between a non-driving and a driving state  in the control die, buffer die, logic die, or interface die associated with channels (or pseudo-channels) not selected for a read or write operation, including all signals involved therein; (f) changing of the TSV driver between a non-driving and a driving state in the core die associated with channels (or pseudo-channels) selected for a read or write operation, including all signals involved therein; (g) changing of the TSV driver between a non-driving and a driving state in core

die associated with channels (or pseudo-channels) not selected for a read or write operation, including all signals involved therein.

## REQUEST NO. 12

Please identify, by product name and model number, all DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs produced by or for SK hynix before April 14, 2008, and if there are any documents containing such information, please provide them.

## REQUEST NO. 13

Please describe the structure and function of HBM1 produced by or for SK hynix, including but not limited to the function of each TSV structure, the electrical connections for each TSV structure, signals or power sent to each TSV structure and the sources of the signals and power, and signals sent by or via each TSV structure and the destinations of the signals; and if there are any specifications or technical documents containing such information, please provide them.

## REQUEST NO. 14

Please describe the date of conception, the date of reduction to practice, the earliest offer(s) for sale, the earliest sale(s), and earliest public display(s) of system prior art, including but not limited to HBM1.

## REQUEST NO. 15

For each DDR5 MRDIMM, DDR5 RDIMM, and HBM, please identify and describe any Documents and Communication that You prepared for, distributed, demonstrated, or displayed at any JEDEC meeting, conference, exhibition, seminar, or convention.

## REQUEST NO. 16

Please identify any grounds and describe the reasoning upon which SK hynix has previously argued or asserted that the '523 Patent is unenforceable or invalid.

## REQUEST NO. 17

Please describe any proposals SK hynix submitted to Netlist to license any of the Asserted Patents, or a portfolio of patents including any of the Asserted Patents, including any communications back from Netlist regarding the proposal.

**REQUEST NO. 18**

Please identify and describe any communications you have had regarding this Investigation with SK hynix America, any of your other subsidiaries, or with Netlist.

**REQUEST NO. 19**

Please identify and describe any communications you have had regarding any of the Asserted Patents with SK hynix America, any of your other subsidiaries, or with Netlist.

Certain Dynamic Random Access Memory
(DRAM) Devices, Products Containing the
Same, and Components Thereof; Inv. No.
337-TA-1472 (Violation)

337-1472 Violation

CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the parties listed have entered an appearance in the above captioned
investigation, and a copy of the PUBLIC CERTIFICATE OF SERVICE was served upon the following parties
via first class mail and air mail where necessary.

| Document | Security | Document Type | Official Rec'd | Title |
|----------|----------|---------------|----------------|-------|
| 873848 | Public | Order | 02/27/2026 01:43 PM | Granting Respondents' Motion Seeking Recommendation to the United States District Court for the D... |

Service Date:        February 27, 2026

_____
/s

Lisa R. Barton

U.S. International Trade Commission

500 E Street, S.W.

Suite 112

Washington, D.C. 20436

Service Date:        February 27, 2026                PDF Generated on:        February 27, 2026

Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the
Same, and Components Thereof; Inv. No. 337-TA-1472 (Violation)

337-1472 Violation

## CERTIFICATE OF SERVICE

---

On behalf of Complainant Netlist, Inc.:

---

Daniel E. Yonan, Lead Representative

Sterne, Kessler, Goldstein & Fox

1100 New York Avenue NW

Washington, District of Columbia 20005, United States

202-371-2600 -- voice

202-371-2540 -- fax

dyonan@skgf.com

Electronic Service

On behalf of Respondent Samsung Electronics America,
Inc.;Samsung Electronics Co., Ltd.;Samsung Semiconductor,
Inc.:

---

Paul F. Brinkman, Lead Representative

Kirkland and Ellis

1301 Pennsylvania Ave., N.W.

Washington, District of Columbia 20004, United States

2028795033 -- voice

202-879-5200 -- fax

paul.brinkman@kirkland.com

Electronic Service

On behalf of Respondent Super Micro Computer, Inc.:

---

Richard Zembek, Lead Representative

Norton Rose Fulbright US LLP

1550 Lamar

Houston, Texas 77010, United States

713-651-5151 -- voice

richard.zembek@nortonrosefulbright.com

Electronic Service

On behalf of Respondent Google LLC:

---

Gregory F. Corbett, Lead Representative

Wolf Greenfield & Sacks PC

600 Atlantic Avenue

Boston, Massachusetts 02210, United States

617.646.8000 -- voice

617.646.8646 -- fax

gcorbett@wolfgreenfield.com

Electronic Service

On behalf of U.S. International Trade Commission :

---

Thomas Halkowski

OUII Investigative Attorney

500 E Street, S.W.

Washington, D.C. 20436

Internal Service

Service Date:      February 27, 2026              PDF Generated on:      February 27, 2026

Exhibit 3

# Appendix A

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-1472** |

## RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA TO ISSUE A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The undersigned Administrative Law Judge finds that the evidence that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek from SK hynix Inc. in its Proposed Letter of Request is reasonably necessary to investigate fully its claims of a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, in the above-captioned investigation before the United States International Trade Commission. Accordingly, the undersigned recommends that the District Court for the District of Columbia issue, under its seal and signature, the attached Letter of Request for Production of Documents and Things to the Central Authority of the Republic of Korea.

A Letter of Request is the appropriate method of gathering the necessary requested evidence outside the United States. Respondents must transmit the Letter of Request with a District

Court Judge's signature and the District Court's seal to the Central Authority of the Republic of Korea. The Proposed Letter of Request meets the standards set forth by the Hague Convention regarding the Republic of Korea. *See* U.S. Department of State, Legal Considerations—South Korea, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html.

To comply with the statutory time limitations on International Trade Commission investigations, the undersigned respectfully requests that the Court assign a judge and schedule a hearing to expedite issuance of the Letter of Request.

Respectfully submitted this 27th day of February, 2026

MaryJoan McNamara
Administrative Law Judge

Address for Return of Issued Letter of Request

F. Christopher Mizzo, P.C.
**Kirkland & Ellis LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: Samsung-Netlist-ITC@kirkland.com

*Counsel for Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.*

2

Exhibit 4

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

Netlist, Inc.,

        Plaintiff (Complainant),

    v.

Samsung Electronics Co., Ltd., Samsung
Electronics America, Inc., Samsung
Semiconductor, Inc., Google LLC, and Super
Micro Computer, Inc.

        Defendants (Respondents)

Case No: _____

**RECOMMENDATION FOR
ISSUANCE OF A LETTER OF
REQUEST**

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE REPUBLIC OF KOREA FOR THE PRODUCTION OF DOCUMENTS

The United States District Court for the District of Columbia presents its compliments to the National Court Administration, the appropriate judicial authority of the Republic of Korea, and respectfully requests international judicial assistance to obtain the production of documents under The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters from the following entity:

    **SK hynix Inc.**
    2091, Gyeongchung-daero, Bubal-eup,
    Icheon-si Gyeonggi-do
    Republic of Korea

The United States District Court for the District of Columbia is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the production of evidence both within and outside its jurisdiction.

The requested evidence is for an administrative proceeding in the *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components*

*Thereof*, Investigation No. 337-TA-1472 before the United States International Trade Commission ("the Investigation") as approved by this Court the above-captioned matter. Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek discovery from SK hynix Inc. ("SK hynix") regarding its MRDIMM, RDIMM, and HBM products and investments that SK hynix has made in the United States regarding those products. Complainant, Netlist, Inc. ("Netlist") asserts that SK hynix is a licensee to the asserted patents in this Investigation. Netlist alleges activities conducted by SK hynix establishes the existence of a domestic industry in the United States pursuant to 19 U.S.C. § 1337(a)(2) and (3). Additionally, Netlist alleges that SK hynix's capacity to increase production to supply increased demand should an exclusion order be entered in the Investigation against the Respondents' products.

In the proper exercise of its authority, this Court has determined that the evidence sought from SK hynix Inc. cannot be secured except by the intervention of the National Court Administration of the Republic of Korea. There are important deadlines in the above-referenced administrative proceeding, particularly a cut-off to fact discovery that is scheduled for June 8, 2026, and an evidentiary hearing that is scheduled for October 28-November 4, 2026. Thus, this Court additionally requests that the Director of International Affairs expedite this request to the extent possible.

This Court requests the assistance described below:

| 1. Sender | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200 |
|---|---|

| | Email: Samsung-Netlist-ITC@kirkland.com |
|---|---|
| 2. Central Authority of the Requested State | National Court Administration<br>Attn.: Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>SEOUL 06590<br>Republic of Korea |
| 3. Person to whom the executed request is to be returned | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |

| 4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | |
|---|---|
| Date | Please respond as soon as practicable, but in any event please respond no later than March 11, 2026. |
| Reason for Urgency | Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time." The fact discovery cutoff for this Investigation is July 8, 2026. |

| 5. In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request: | |
|---|---|
| 5.a Requesting judicial authority (Article 3, a) | Honorable _____<br>United States District Court Judge<br>U.S. District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington. DC 20001<br>United States of America |
| 5.b To the competent authority of (Article 3, a) | Republic of Korea |
| 5c. Names of the case and any identifying number | *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components Thereof*, U.S.I.T.C. Investigation No. 337-TA-1472 |

| 6. Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3, b) | |
|---|---|

| 6a. Plaintiff (Complainant) | Netlist, Inc.<br>111 Academy Way<br>Suite 100<br>Irvine, CA 92617 |
|---|---|
| Plaintiff's Representatives | Jason Sheasby<br>Annita Zhong, PhD<br>Andrew Strabone<br>Lisa Glasser<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel.: (310) 277-1010<br><br>Daniel E. Yonan<br>Donald R. Banowit<br>William H. Milliken<br>Richard M. Bemben<br>Lauren A. Watt<br>Sterne, Kessler, Goldstein & Fox PLLC<br>1101 K Street NW, 10th Floor<br>Washington DC 20005<br>Tel.: (202) 371-2600 |
| 6.b Defendants (Respondents) | Samsung Electronics Co., Ltd.<br>129 Samsung-ro, Yeongtong-gu,<br>Suwon, Gyeonggi-do, 443-742<br>Republic of Korea<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Semiconductor, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, California 94043<br><br>Super Micro Computer, Inc.<br>980 Rock Ave.<br>San Jose, California 95131 |
| Defendant's Representatives | *Counsel for Respondent Google LLC* |

Gregory F. Corbett
Charles T. Steenburg
Anant K. Saraswat
Meaghan P. Luster
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: 617.646.8000

Elizabeth A. DiMarco
Suresh S. Rav
Simon Lu
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.571.5001

Jared W. Newton
Quinn Emanuel Urquhart & Sullivan, LLP
555 13th St. NW, Suite 600
Washington, D.C. 20004
Tel. (202) 538-8000
jarednewton@quinnemanuel.com

*Counsel for Respondents Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc., and Samsung Semiconductor, Inc.*

Paul F. Brinkman, P.C.
F. Christopher Mizzo, P.C.
Michael A. Pearson, Jr.
Karthik Ravishankar
Maranda Johnston
David Corasaniti
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

Greg S. Arovas, P.C.
Todd Friedman, P.C.
James E. Marina, P.C.
Alan Rabinowitz
Benjamin Lasky
Azaad Zimmermann
Kirkland & Ellis LLP
601 Lexington Avenue

| | |
|---|---|
| | New York, NY 10022<br>Telephone: (212) 446-4800<br><br>Greg Polins<br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br><br>Luke Norrell<br>Cameron Lindsay<br>Kirkland & Ellis LLP<br>401 W 4th St, Suite 4000<br>Austin, TX 78701<br>Telephone: (512) 678-9050<br><br>Brian R. Nester<br>Covington & Burling LLP<br>One CityCenter,<br>850 Tenth Street, NW<br>Washington D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Email: BNester@cov.com |
| | *Counsel for Respondent Super Micro Computer, Inc.*<br><br>Richard S. Zembek<br>Charles B. Walker<br>Daniel S. Leventhal<br>Talbot Hansum<br>Ryan E. Meltzer<br>NORTON ROSE FULBRIGHT US LLP<br>1550 Lamar Street, Suite 2000<br>Houston, Texas 77010<br>Tel: (713) 651-5151 |
| 6.c Other parties | Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W., Suite 401<br>Washington, DC 20436 |
| 7. Nature and purpose of the Proceedings | This is a proceeding being conducted by the United States International Trade Commission under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on a Complaint filed by Netlist, Inc. on September 30, 2025. |

Netlist, Inc. alleges that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc. unlawfully import into the United States, sell for importation into the United States, and/or sell within the United States after importation of certain dynamic random access memory (DRAM) devices, products containing the same, and components thereof, that infringe Netlist's U.S. Patent Nos. 12,373,366 ("the '366 Patent"); 10,025,731 ("the '731 Patent"); 10,268,608 ("the '608 Patent"); 10,217,523 ("the '523 Patent"); 9,824,035 ("the '035 Patent"); and 12,308,087 ("the '087 Patent") (collectively, "the Asserted Patents").

The International Trade Commission instituted proceedings based on Netlist's Complaint as supplemented on November 20, 2025, December 5, 2025, December 12, 2025, and December 16, 2025. Upon institution, the case was assigned to Administrative Law Judge MaryJoan McNamara to preside over pre-trial matters, conduct a trial, and issue an initial determination on the merits of the case. The initial determination is subject to possible review by the International Trade Commission with a right to appeal to the United States Court of Appeals for the Federal Circuit.

Respondents seek this Letter of Request to SK hynix Inc. because, as set forth in the Complaint, Netlist contends that SK hynix Inc. is a licensee to the Asserted Patents and sells products it believes practice the Asserted Patents. *See* Complaint ¶¶ 10, 16, 17. Netlist intends to rely on SK hynix's products and investments in the United States to allege that a domestic industry exists, as required by 19 C.F.R. § 1337(a). *Id*. at ¶¶ 132-135, 140-148. Thus, Respondents contend that SK hynix Inc. is likely in possession of documents that are directly relevant to the issue of domestic industry.

Specifically, Respondents believe SK hynix possesses unique documents concerning (i) the design, structure, and function of its RDIMM, MRDIMM, and HBM products and (ii) SK hynix's expenditures and investments in the United States to

| | |
|---|---|
| | bring those products to market. Additionally, SK hynix will likely possess documents regarding whether SK hynix's investments in the United States are significant, particularly in comparison to worldwide investments.<br><br>While Samsung has also requested, via subpoena, documents from SK hynix's subsidiary SK hynix America, Respondents pursue this Letter of Request to SK hynix Inc. to the extent the information requested is not within the possession, custody, or control of SK hynix America. For example, to the extent that SK hynix America argues that key technical or financial documents are only available through SK hynix Inc., pursuing this Letter of Request now is necessary, particularly in light of the shortened schedule of the Investigation. |
| 8. Evidence to be obtained or other judicial act to be performed and purpose of the evidence or judicial act sought | |
| 8a. Evidence to be obtained or other judicial act to be performed (Article 3, d) | It is requested that a judicial authority of the Republic of Korea order SK hynix to produce copies of documents relating to its investments in the United States regarding its MRDIMM, RDIMM, and HBM products and technical features of those products. The documents requested are set forth with more specificity in Attachment A. |
| 8b. Purpose of the evidence or judicial act sought | The requested documents will provide evidence directly relevant to the existence of a domestic industry pursuant to 19 U.S.C. § 1337(a)(1)(2), and (3), and that evidence may be introduced at the evidentiary hearing held by the Administrative Law Judge in the Investigation. Netlist alleges that SK hynix is a licensee of the Asserted Patents and thus intends to rely on certain of SK hynix's investments in the United States.<br><br>In Attachment A, Request Nos. 1-3 seek documents and other things that SK hynix has produced, or intends to produce, in response to Netlist's letter of request concerning this same investigation. This evidence is directly relevant to the technical and economic prongs of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3), as well as whether an exclusion order in this |

Investigation would harm the public interest under 19 U.S.C. § 1337(d).

Requests Nos. 4-8 seek technical documentation regarding the function and operation of certain SK hynix products. Request Nos. 9-13 seek technical documentation regarding the components, and their interconnections, in the SK hynix products as well as prior art for the asserted patents. Requests Nos. 14-16 seek proposals and presentations that SK Hynix has submitted to JEDEC concerning the relevant SK hynix products. This is all evidence directly relevant to the technical prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3), which requires an analysis of the function of a product in comparison to the asserted patent claims.

Requests Nos. 17-20 seek marketing materials such as product brochures distributed by SK hynix. Specifically, these requests are relevant to evaluating prices, availability, and key product features relevant to the technical and economic prongs of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3).

Request Nos. 21-29 seek records of SK hynix's expenditures and investments in the United States related to its DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs, including data regarding the significance of those investments. This is all evidence directly relevant to the economic prong of the domestic industry under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), which requires the showing of significant investment in the United States tied to inventions claimed in the asserted patents.

Request No. 30 seeks written submissions that SK hynix made in connection with previous litigation where SK hynix was accused of infringing one of the asserted patents. This request is directly relevant to the validity and enforceability of the asserted patent which required for relief under 19 U.S.C. § 1337(a)(1)(B).

|  | Requests Nos. 31-43 seek documents relevant to SK hynix's ability to produce a sufficient amount of memory modules to meet demand if an exclusion order were to be issued. This evidence is directly relevant to whether an exclusion order in this Investigation would harm the public interest in the United States. *See* 19 U.S.C. § 1337(d).<br><br>Requests Nos. 44-45 seek agreements between SK hynix and Netlist as well as SK hynix America regarding this investigation or the asserted patents. Since SK hynix is a licensee of asserted patents, information pertaining to the terms of such agreements will be directly relevant to evaluating the economic prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(3)<br><br>Request Nos. 46-48 seek physical samples of the SK hynix products to allow Respondents' counsel and expert witnesses to analyze the products. This evidence is directly relevant to the technical prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3). |
|---|---|
| 9. Identity and address of any person to be examined (Article 3, e) | None. |
| 10. Questions to be put to the persons to be examined or statement of the subject- matter about which they are to be examined (Article 3, f) | None. |
| 11. Documents or other property to be inspected (Article 3, g) | See the numbered list of document requests set forth in Attachment A. |
| 12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | It is respectfully requested that each document requested in Attachment A be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business. |
| 13. Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Articles 3, I, and 9) | *See* Attachment A for details on how SK hynix Inc. is to produce the requested documents.<br><br>In this matter, a Protective Order has been entered that governs the production of documents, testimony, and any record of the testimony. A copy of this order is attached hereto as Attachment B. Because this action involves confidential and proprietary business information, the protective order serves to protect such information from public disclosure. |

|  | Accordingly, the United States District Court for the District of Columbia requests that any documents obtained in response to this Letter of Request be treated in accordance with the provisions of the Protective Order to protect confidential and proprietary information. |
|---|---|
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | It is requested that the individuals identified below be furnished, as soon as practicable, with a copy of the executed Letter of Request:<br><br>F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | None. |
| 16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | SK hynix may refuse to give evidence only insofar as he or she has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of the Republic of Korea. |
| 17. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | To the extent that there are expenses associated with providing assistance in response to this Letter of Request, this Court will see that the Central Authority of Korea is reimbursed by:<br><br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Tel.: (202) 389-5000 |
| Date of Request | _____ day of _____ 2026 |
| Signature and Seal of the Requesting Authority | _____<br><br>The Honorable _____<br>United States District Judge United States District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, D.C. 20001 |

| | United States of America |
|---|---|
| | Signed in _____ , this |
| | _____ day of _____, 2025 |
| | [Affix seal of court below:] |

| Attachments: |
|---|
| Attachment A: Documents to be Produced by SK |
| Attachment B: ITC Protective Order |
| Attachment C: ITC Ground Rules |
| Attachment D: Public Complaint and supplements |

# Attachment A

## DOCUMENTS OR OTHER PROPERTY TO BE PRODUCED BY SK HYNIX INC.
## <u>DEFINITIONS</u>

The following definitions apply to the Requests set forth below:

1.      "SK hynix," "You," "Your," and "Yourself" means SK hynix Inc. and any of its predecessors, divisions, departments, subsidiaries, and other legal Entities that are wholly or partially owned or controlled by SK hynix Inc., either directly or indirectly, together with any and all parent and affiliated companies or corporations, and all present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business Entities in the employ of or otherwise acting on behalf of SK hynix Inc.

2.      "Complainant" or "Netlist" means the Complainant Netlist, Inc., including all of its present and former corporate locations; all of its present and former predecessors, predecessors-in-interest, successors, assigns, affiliates, direct or indirect subsidiaries, parents, and trusts; all firms, corporations, and other Entities acting under common control with Netlist, in joint venture with Netlist, or under licensing or partnership agreements with Netlist; all Entities that own or are owned by Netlist in whole or in part; and all divisions and operating units thereof. Netlist further includes all of Netlist's present and former employees, agents, servants, representatives, directors, officers, accountants, consultants, attorneys, and investigators, and all others currently or formerly acting or purporting to act on behalf of Netlist or subject to the direction and control of Netlist.

3.      "Respondent(s)" shall refer to any or all of the named Respondents in this Investigation, including Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.

4.      "Samsung" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.

5.      The term "this Investigation" means the above-captioned investigation, *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof*, Investigation No. 337-TA-1472.

6.      "'035 patent" means U.S. Patent No. 9,824,035, including any corrections, reexaminations, or applications thereof.

7.      "'731 patent" means U.S. Patent No. 10,025,731, including any corrections, reexaminations, or applications thereof.

8.      "'523 patent" means U.S. Patent No. 10,217,523, including any corrections, reexaminations, or applications thereof.

9.      "'608 patent" means U.S. Patent No. 10,268,608, including any corrections, reexaminations, or applications thereof.

10.      "'087 patent" means U.S. Patent No. 12,308,087, including any corrections, reexaminations, or applications thereof.

11.      "'366 patent" means U.S. Patent No. 12,373,366, including any corrections, reexaminations, or applications thereof.

12.      "Asserted Patents" means the '035, '731, '523, '608, '087, and '366 patents, and any other patent Netlist is permitted to assert in any amended Complaint.

13.      "Prior Litigation" means any proceeding, lawsuit, or litigation between You and Netlist concerning the Asserted Patents in a United States District Court, before the ITC Commission, or the United State Patent and Trademark Office, including but not limited to, *Netlist, Inc. v. SK hynix America Inc. et al.*, No. 6:20-cv-00525 (W.D. Tex. May 10, 2021), *Netlist, Inc. v. SK hynix Inc. et al.*, No. 6:20-cv-00194 (W.D. Tex. Mar. 17, 2020), and *SK hynix Inc. et al v. Netlist, Inc.* PTAB-IPR2020-01421 (PTAB Aug. 21, 2020).

14.　"Request(s)" means the Categories of Documents to be Produced below in this Attachment.

15.　"Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, process, method, or assemblage of components or parts (either individually or collectively) which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

16.　"JEDEC" means Joint Electron Device Engineering Council.

17.　"DDR5" means Double Data Rate 5, referring to the fifth generation of a type of computer memory called Synchronous Dynamic Random-Access Memory ("SDRAM").

18.　"DIMM(s)" means Dual In-Line Memory Modules, including but not limited to, MRDIMMs, RDIMMs, UDIMMs, and SODIMMs.

19.　"MRDIMM(s)" means Multiplexed Rank Dual In-Line Memory Modules, Multi-Ranked Buffered Dual In-Line Memory Modules, and Multiplexer Combined Ranks Dual In-Line Memory Modules.

20.　"RDIMM(s)" means Registered Dual In-Line Memory Modules.

21.　"HBM(s)" means High Bandwidth Memory, including HBM2, HBM2E, HMB3, HBM3E, HMB4 and HBM4E.

22.　"Component(s)" means parts that are assembled into a DDR5 MRDIMM, DDR5 RDIMM, or HBM product, including but not limited to, power management integrated circuits (PMIC), registering clock driver (RCD) chips, multiplexed registering clock driver (MRCD) chips, DRAM chips, DRAM dies, interface dies, logic dies, buffer dies, control dies, data buffers (DB),

multiplexed rank data buffers (MDB), temperature sensors, printed circuit boards, and serial presence detect (SPD) circuits.

23.    "TSV" means Through-Silicon Via.

24.    "Specification(s)" means a document outlining the requirements, design, functionality, and architecture for a product, including logic diagrams, state diagrams, block diagrams, timing diagrams, chip layouts, mask layouts, interposer layout, board layout files, chip layout files, CAD files, schematics, circuit diagrams, interconnection diagrams, pinout diagrams, ballout diagrams, and input/output signal descriptions.

25.    "Bill(s) of Material" means a list of all raw materials, parts, sub-assemblies, and quantities needed to manufacture a finished product.

26.    "Cost Sheet(s)" means any document that identifies costs incurred by SK hynix related to labor, facility, and equipment.

27.    "Income Statement(s)" means any document that indicates SK hynix's revenue and expenses for a product.

28.    "Production Capacity Report(s)" means any document that indicates SK hynix's ability to increase production of a product.

29.    "Product Brochure(s)" means SK hynix's marketing materials, either printed or digital, detailing the product.

30.    "Manufacturing Record(s)" means any document that indicates the quantity of a product manufactured by SK hynix over a period of time.

31.    "Sales Record(s)" means any document that indicates the quantity of sales, by or for SK hynix, over a period of time for a given product output.

32.     "Written Submissions" means any filings that were submitted to the authoritative body or served on an opposing party to the litigation.

33.     "Document(s)" is defined broadly to be given the full scope of that term contemplated in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and includes all non-identical copies of a document, all drafts of final documents, all other written, typed, printed, recorded, or graphically portrayed matter in any form or embodiment, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Your actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Federal Rule of Evidence 1001. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

34.     "Thing" or "Things" has the broadest meaning allowable under 19 C.F.R. § 210.30 and Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible object of any kind and nature, including, without limitation, prototypes, models, and physical specimens thereof.

35.     "Entity" or "Entities" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

36.    "Person" or "Persons" means any natural individual or individuals.

## INSTRUCTIONS

The following instructions shall apply to these Requests:

1.      The singular form of each word shall be interpreted in the plural as well.

2.      Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as is most appropriate in each case.

3.      The words "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each Request in which they are used.

4.      The words "any" and "all" shall be construed to mean "any and all."

5.      The words "each" and "every" shall be construed to mean "each and every."

6.      The word "including" and every variant thereof shall be construed to mean "including, without limitation."

7.      Any term not specifically defined herein shall be defined in accordance with the Commission Rules of Practice and Procedure ("Commission Rules") and the Administrative Law Judge's Ground Rules ("Ground Rules"), as well as the Federal Rules of Civil Procedure, to the extent not in conflict with the Commission Rules or Ground Rules.

8.      If You find the meaning of any term in the Requests unclear, then You shall construe the term so as to render responsive any information, Document, or Thing that might otherwise be rendered non-responsive.  Explain in detail the nature of any disagreement with the definition, or lack of understanding of the term, and provide your definition of the term.

9.      The Requests seek all responsive information, Documents, and Things that are known or available to You or within Your actual or legal possession, custody, or control, including all responsive information, Documents, and Things known or available to SK hynix.  These discovery requests seek information, Documents, and Things as of the date hereof and to the full

extent allowed by the Commission Rules, including all responsive information, Documents, and Things acquired or identified by You up to and including the close of fact discovery in this Investigation.

10.     These Requests shall include information acquired or identified up to the date that You respond to them and shall be deemed to be continuing. Therefore, You shall promptly produce, as supplemental responses to these Requests in accordance with 19 C.F.R. § 210.27(f), any additional information that You identify, acquire, or become aware of up to and including the time of hearing.

11.     If possible, and unless otherwise specified, supply all financial data requested on a calendar year basis. If fiscal year data is provided, please specify the dates on which the fiscal year begins and ends.

12.     In response to Respondents' Requests, You shall provide written responses in addition to producing all requested Documents and Things.

13.     When You are requested to produce "a report," you may either provide a native chart in Excel or another common commercial format containing data extracted from databases maintained by SK hynix or its service providers organized into the fields requested, or produce or allow inspection and copying of the entire database(s) containing the requested data.

14.     If You object to any part of any Request and refuse to answer it, then You shall state Your complete objection and all bases thereof, and also shall provide a complete answer to the remaining portion of that Request.

15.     For any information, Document, or Thing responsive to the Requests that You withhold on the ground that it is embodied in a Communication or Document protected by the attorney-client privilege, work product immunity, or any other claim of privilege or immunity,

You shall provide a written statement setting forth, as to each such Document, Thing, or piece of information, at a minimum the following items: (a) an identification (including date, title, author, and number of pages) of each Communication or Document embodying the allegedly protected information; (b) an identification (including name, position, address, and employer at the time of preparation or dissemination) of each Person from and to whom the information has been communicated (e.g., individuals who authored, drafted, or prepared a Document and individuals to whom it was directed, circulated, or copied, or who had access thereto); (c) an identification of the type of Communication or Document (e.g., letter, memorandum, contract); (d) a brief description of the subject matter of the information; (e) summary of the legal and factual ground(s) upon which You rely in withholding the responsive information, Document, or Thing, providing sufficient detail to enable the Commission to make a determination on Your claim of privilege or immunity; and (f) a certification that all elements of the claimed privilege or immunity are met and have not been waived.  If any of the individuals named in response to item (b) is an attorney or foreign patent agent, then You shall identify him or her as such.

16.     For any Document, Thing, or information responsive to the Requests that is not in Your possession, custody, or control, You shall provide the following information in its response to each such request: (a) an identification of the Document, Thing, or information, including date, title, author, and number of pages; (b) a brief description of its nature (e.g., letter, memorandum, chart, prototype) and subject matter; and (c) an identification of the Persons or Entities who have possession, custody, or control of it.  If such Document, Thing, or information previously was but no longer is in Your possession, custody, or control, then You additionally shall provide the following information in its response to each such request: (a) an identification of all Persons who received copies of the Document, Thing, or information; (b) a statement of what disposition was

made of it; (c) a statement of the reasons for such disposition; (d) an identification of all Persons or Entities having any knowledge of such disposition; and (e) an identification of the Persons or Entities responsible for such disposition.

17.    For any Document, Thing, or information responsive to the Requests that has been destroyed or is alleged to have been destroyed, You shall provide the following information in its response(s) to each such request: (a) an identification of the Document, Thing, or information, including date, title, author, and number of pages; (b) a brief description of its nature (e.g., letter, memorandum, chart, prototype) and subject matter; (c) an identification of all Persons who received copies of it; (d) a statement of the reasons for and circumstances of its destruction; (e) an identification of each Person having any knowledge of its destruction; and (f) an identification of the Person(s) responsible for its destruction.

18.    If the answer to any Request is "none," if no Documents are responsive to a particular discovery request, or if a section of a Request for Production or other discovery request is not applicable to SK hynix's business, then You shall so indicate in its response.

19.    If, after exercising due diligence to make inquiries and secure necessary information, You cannot answer a Request fully and completely, then You shall so state. Additionally, You shall provide the following information in its response to each such Request: (a) an answer to the Request to the fullest extent possible; (b) a statement specifying the portion of the Request that You claim You are unable to answer fully and completely; (c) a statement of the facts upon which You rely to support its contention that it is unable to answer fully and completely; and (d) a statement specifying what knowledge, information, and beliefs You have Concerning the unanswered portion of the Request.

20.    If Your response to any Request is qualified in any respect, then You shall set forth the details of, and reasons for, each such qualification.

21.    You shall produce all Documents and Things in the same file or other organizational environment in which they are maintained in the ordinary course of business. For example, a Document that is part of a file, docket, or other grouping shall be produced together with all other Documents from said file, docket, or grouping, in the same order or manner of arrangement as the original. Alternatively, You shall produce all Documents and Things in labeled groups that correspond to the Requests to which they are responsive. *See* 19 C.F.R. § 210.30(b)(2). To the extent documents, including but not limited to design, accounting, financial and sales data, are maintained in both hard copy and some other form, including but not limited to computer, electronic, magnetic and optical media of all kinds, provide both forms.

22.    To the extent that You produce any software or Source Code, such software or Source Code shall be accompanied by all related Documentation, comments, or other explanatory materials and produced in the native format in which such code and accompanying materials are kept in the ordinary course of Your business.

23.    When any original, draft, copy, or reproduction of any Document responsive to Respondents' Requests is or has been revised to include, exclude, or alter any portion, addendum, notation, alteration, emendation, change, or amendment, You shall produce each such original draft, copy, or reproduction as well as all subsequent versions and revisions.

24.    You shall produce all Documents in their entirety, including attachments, enclosures, cover letters, memoranda, and appendices, without abbreviation or redaction. Any comment or notation appearing on any Document and not part of the original text shall be considered a separate Document.

25.     When a responsive Document is in a language other than English, You shall produce the Document in its original language and additionally produce all partial or complete English translations of the Document, or, if no such translation exists, all Documents written in English Concerning the responsive Document.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

The Documents SK hynix produced to Netlist in response to Netlist's Requests for Production issued as part of Netlist's Letter of Request.

### REQUEST NO. 2

The written responses to SK hynix provided to Netlist in response to Netlist's Requests for Information issued as part of Netlist's Letter of Request.

### REQUEST NO. 3

A transcript, video recording, or any other record of the responses given by witnesses representing SK hynix in response to Netlist's Letter of Request for Witness Testimony.

### REQUEST NO. 4

For DDR5 MRDIMMs that are or have been produced by or for SK hynix since January 1, 2021, Specifications that detail the design, function, operation, and Components of the DDR5 MRDIMMs.

### REQUEST NO. 5

For DDR5 RDIMMs that have been produced by or for SK hynix since January 1, 2021, Specifications that detail the design, function, and operation of the DDR5 RDIMMs and Components therein.

### REQUEST NO. 6

For HBMs produced by or for SK hynix since January 1, 2021, Specifications that detail the design, function, and operation of the HBMs and Components therein.

### REQUEST NO. 7

For HBM1, Specifications that detail the design, structure, function, and operation of the HBM1 and Components therein.

**REQUEST NO. 8**

For HBMs produced by or for SK hynix since January 1, 2021, TSV cross-sectional views and TSV 3D views of the HBMs.

**REQUEST NO. 9**

For DDR5 MRDIMMs that have been produced by or for SK hynix since January 1, 2021, Specifications that show the Component interconnections in the DDR5 MRDIMMs.

**REQUEST NO. 10**

For DDR5 RDIMMs that have been produced by or for SK hynix since January 1, 2021, Specifications that show the Component interconnections in the DDR5 RDIMMs.

**REQUEST NO. 11**

For HBMs that have been produced by or for SK hynix since January 1, 2021, Specifications that show the Component interconnections in the HBMs.

**REQUEST NO. 12**

For HBM1, Specifications that identify and corroborate the date of conception, the date of reduction to practice, the earliest offer(s) for sale, the earliest sale(s), and earliest public display(s) of HBM1.

**REQUEST NO. 13**

Documents sufficient to describe the structure and operation of any DDR DIMMs or HBMs that constitute Prior Art to the Asserted Patents and that were designed or sold prior to the filing date of any Asserted Patent, as well as two (2) physical samples of each such Prior Art product or physical item.

**REQUEST NO. 14**

For DDR5 MRDIMM, presentations or proposals You prepared, distributed, or displayed at JEDEC meetings, conferences, exhibitions, seminars, or conventions.

**REQUEST NO. 15**

For DDR5 RDIMM, presentations or proposals You prepared, distributed, or displayed at JEDEC meetings, conferences, exhibitions, seminars, or conventions.

**REQUEST NO. 16**

For HBMs, the presentations or proposals You prepared, distributed, or displayed at JEDEC meetings, conferences, exhibitions, seminars, or conventions.

**REQUEST NO. 17**

Product Brochures for DDR5 MRDIMMs distributed by SK hynix since January 1, 2021, identifying prices for sale or demonstrating the DDR5 MRDIMMs' operation.

**REQUEST NO. 18**

Product Brochures for DDR5 RDIMMs distributed by SK hynix since January 1, 2021, identifying prices for sale or demonstrating the DDR5 RDIMMs' operation.

**REQUEST NO. 19**

Product Brochures for HBMs distributed by SK hynix since January 1, 2021, identifying prices for sale or demonstrating the HBMs' operation.

**REQUEST NO. 20**

Product Brochures for HBM1 distributed by SK hynix identifying prices for sale or demonstrating the operation of HBM1.

**REQUEST NO. 21**

Manufacturing Records that identify the total volume of DDR5 MRDIMMs manufactured since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 22**

Manufacturing Records that identify the total volume of DDR5 RDIMMs manufactured since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 23**

Manufacturing Records that identify the total volume of HBMs manufactured since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 24**

Sales Records that identify the total sales volume of DDR5 MRDIMMs in terms of units sold since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 25**

Sales Records that identify the total sales volume of DDR5 RDIMMs in terms of units sold since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 26**

Sales Records that identify the total sales volume of HBMs in terms of units sold since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 27**

Income Statements that identify revenue and expenses for DDR5 MRDIMMs incurred since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 28**

Income Statements that identify revenue and expenses for DDR5 RDIMMs incurred since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 29**

Income Statements that identify revenue and expenses for HBMs incurred since January 1, 2021 (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 30**

Written Submissions in Prior Litigation involving the '523 Patent.

**REQUEST NO. 31**

Documents sufficient to show Your production capacity and ability to increase production of DDR5 MRDIMMs.

**REQUEST NO. 32**

Documents sufficient to show Your production capacity and ability to increase production of DDR5 RDIMMs.

**REQUEST NO. 33**

Documents sufficient to show Your production capacity and ability to increase production of HBMs.

**REQUEST NO. 34**

Documents sufficient to show that SK hynix has sold out of its HBM products since 2023 and whether supply is expected to remain tight relative to demand through 2027, including documents sufficient to verify or refute the statements attributed to an SK hynix executive in the article available at https://www.cnbc.com/2025/10/29/sk-hynix-q3-profit-revenue-record-.html and to identify that executive.

**REQUEST NO. 35**

Documents sufficient to explain widely acknowledged memory supply shortages that are predicted to last through at least 2028.

**REQUEST NO. 36**

Documents sufficient to show the supply, demand, market conditions, and competitive conditions for DDR5 DIMMs from January 1, 2025 through January 1, 2028, including competitive analyses, sales or market forecasts, supply chain analyses, and manufacturing capacity analyses.

**REQUEST NO. 37**

Documents sufficient to show the supply, demand, market conditions, and competitive conditions for HBMs from January 1, 2025 through January 1, 2028, including competitive analyses, sales or market forecasts, supply chain analyses, and manufacturing capacity analyses.

**REQUEST NO. 38**

Documents sufficient to explain plans, decisions, or analyses relating to the construction or expansion of new memory packaging facilities.

**REQUEST NO. 39**

Documents sufficient to show Your projections of global DDR5 DIMM demand relative to global DDR5 DIMM supply through at least 2028.

**REQUEST NO. 40**

Documents sufficient to show Your projections of demand for DDR5 DIMM in the United States relative to the supply of DDR5 DIMM in the United States through at least 2028.

**REQUEST NO. 41**

Documents sufficient to show Your projections of global HBM demand relative to global HBM supply through at least 2028.

**REQUEST NO. 42**

Documents sufficient to show Your projections of demand for HBM in the United States relative to the supply of HBM in the United States through at least 2028.

**REQUEST NO. 43**

Documents sufficient to show Your projections of pricing for DDR5 DIMMs and HBM from January 1, 2025 to January 1, 2028.

**REQUEST NO. 44**

Agreements between You and Netlist Inc. regarding this Investigation or any of the Asserted Patents.

## REQUEST NO. 45

Agreements between SK hynix America regarding this Investigation or any of the Asserted Patents.

## REQUEST NO. 46

One representative physical sample of the DDR5 MRDIMMs produced by or for SK hynix since January 1, 2021.

## REQUEST NO. 47

One representative physical sample of the DDR5 RDIMMs produced by or for SK hynix since January 1, 2021.

## REQUEST NO. 48

One representative physical sample of the HBMs produced by or for SK hynix since January 1, 2021.

# Attachment B

**UNITED STATES INTERNATIONAL TRADE COMMISSION**

**Washington, D.C.**

|  |  |
|---|---|
| **In the Matter of:** | **Inv. No. 337-TA-1472** |
| **CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | |

**ORDER NO. 1:**  **PROTECTIVE ORDER**

(December 31, 2025)

Attached hereto are a Protective Order and an Administrative Order.

**SO ORDERED**.

MaryJoan McNamara
Administrative Law Judge

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

| |
|---|
| **In the Matter of:** |
| **CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** |

**Inv. No. 337-TA-1472**

### PROTECTIVE ORDER

**Part of this Protective Order** is Administrative Order: 16-01, attached. All parties should read it carefully. The language of Paragraph 3(vi) augments and clarifies the purposes for which confidential information may be used. All Parties must now include the acknowledgement language in Paragraph 4(i) and 4(ii) in any letter submitted to the Commission that constitutes the agreement to be bound by a Protective Order.

**WHEREAS** documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5.

**IT IS HEREBY ORDERED THAT**:

1.    Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary

to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.  The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).    Any information submitted, in prehearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend: "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

2(b).    The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.    In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this investigation, including

necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

     4.     Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission: (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.      If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6(a).   Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above.  Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal.  When any confidential business information submitted in accordance with paragraph 2 above is included

in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof. Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

6(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7.    The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order. *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.      The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge.   When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.   During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.      Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative

Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.    If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.    No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior

to the initial disclosure. If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling. If the investigation is before the Commission the matter shall be submitted to the Commission for resolution. The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge. The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.    If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.    Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.    Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made. Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business

information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.    If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.    Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.    The Secretary shall serve a copy of this order upon all parties.

**SO ORDERED**.

MaryJoan McNamara
Administrative Law Judge

**Attachment A**

**NONDISCLOSURE AGREEMENT FOR**
**REPORTER/STENOGRAPHER/TRANSLATOR**

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____,* Investigation No. 337-TA-___, except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed_____

Dated_____

Firm or affiliation _____



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.    The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.    The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

  i.     in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and
  ii.    in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.    In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:

_Meredith M. Broadbent_

_____

Meredith M. Broadbent

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY**    **Inv. No. 337-TA-1472**
**(DRAM) DEVICES, PRODUCTS CONTAINING THE SAME,**
**AND COMPONENTS THEREOF**

<u>**PUBLIC CERTIFICATE OF SERVICE**</u>

    I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served via EDIS upon the Commission Investigative Attorney, **Thomas Halkowski**, **Esq.** and the following parties as indicated, on **December 31, 2025**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

<u>**On Behalf of Complainant Netflist, Inc.:**</u>

Daniel E. Yonan
**STERNE, KESSLER, GOLDSTEIN, & FOX PLLC**
1001 K Street NW, 10th Floor
Washington, DC 20005
Email: dyonan@sternekessler.com

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification
of Availability for Download

<u>**Respondents:**</u>

Samsung Electronics Co., Ltd.
129 Samsung-ro, Yeongtong-gu,
Suwon, Gyeonggi-do, 443-742
Republic of Korea

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other: Service to Be
Completed by Complainant

Samsung Electronics America, Inc.
6625 Excellence Way
 Plano, Texas 75023

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other: Service to Be
Completed by Complainant

Samsung Semiconductor, Inc.
6625 Excellence Way
 Plano, Texas 75023

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other: Service to Be
Completed by Complainant

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF**                    **Inv. No. 337-TA-1472**

Certificate of Service – Page 2

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other: Service to Be
Completed by Complainant

Super Micro Computer, Inc.
980 Rock Ave.
San Jose, California 95131

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other: Service to Be
Completed by Complainant

# Attachment C

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

|  |  |
|---|---|
| **In the Matter of** | |
| **CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1472** |

**ORDER NO. 2:          NOTICE OF GROUND RULES**

(December 31, 2025)

The conduct of this Investigation shall be governed by the Commission Rules and the

Ground Rules attached hereto as Attachment A.

**SO ORDERED.**

MaryJoan McNamara
Administrative Law Judge

**ATTACHMENT A**

**ALJ MARYJOAN MCNAMARA'S GROUND RULES**
**FOR SECTION 337 INVESTIGATION, 337-TA-1472 (12/31/2025)**

These Ground Rules supplement the Commission's Rules of Practice and Procedure, 19 C.F.R. Parts 201 and 210 ("Commission Rules"), in order to aid the Administrative Law Judge in the orderly conduct of this Section 337 Investigation.

These Ground Rules govern a U.S. patent-based investigation. In the case of an investigation based upon a registered copyright, registered trademark, or registered mask work, additional Ground Rules may also govern. In addition, in a case involving a motion for temporary relief, Ground Rules in addition to Ground Rule 1.8 may also govern.

Except as specified in Ground Rule 7, Chambers no longer accepts paper copies of documents, flash drives or CD Roms unless otherwise notified. *See* Ground Rule 1.3.1.

Courtesy copies of documents that are filed on EDIS should be submitted to Chambers through McNamara337@usitc.gov. *See* Ground Rule 1.3.2.

Applications for subpoenas must be submitted in Microsoft Word to McNamara337@usitc.gov. Subpoena applications submitted to McNamara337@usitc.gov must comply with the substantive requirements of Ground Rule 3.5.

Courtesy copies of Expert Reports and Expert Rebuttal Reports must be submitted to McNamara337@usitc.gov. There has been a problem with the manner in which parties have failed to ensure that appropriate sections or paragraphs of expert reports are admitted into evidence post-hearing. The same is true of deposition transcript passages. This may be an issue for discussion during one of the Management Conferences.

Management conferences are likely to be held on WEBEX. We anticipate that the evidentiary hearing ("Hearing") will be in person in one of the USITC's courtrooms.

# TABLE OF CONTENTS

1.      General Procedures and Information...................................................................... 1
1.1.    Address of Administrative Law Judge. ................................................................ 1
1.2.    Filing Requirement................................................................................................ 1
1.3.    Service Copy Requirement.................................................................................... 1
1.3.1.  Paper Copies.......................................................................................................... 1
1.3.2.  Electronic Copies. ................................................................................................. 2
1.4.    Submission by Fax Disfavored.............................................................................. 2
1.5.    Concurrent Service. ............................................................................................... 2
1.6.    Confidential Submissions...................................................................................... 2
1.7.    Unreported Court Decisions.................................................................................. 3
1.8.    Temporary Relief. .................................................................................................. 3
1.9.    Deadlines and Extensions...................................................................................... 4
1.11.   Electronic Filing (EDIS) ....................................................................................... 5
1.12.   Computation of Time............................................................................................. 6
1.13.   Procedural Schedule............................................................................................... 6
1.14.   Early Claim Construction ...................................................................................... 9
1.14.1. *Markman* Briefing............................................................................................... 11
1.14.2. *Markman* Pre-Hearing Statement...................................................................... 12
1.14.3. *Markman* Hearing Evidence............................................................................... 12
1.14.3.1. Exchange of Proposed Exhibits......................................................................... 12
1.14.3.2. Filing on EDIS and Service of Proposed Exhibits upon Administrative Law Judge... 13
1.14.3.3. Format and Submission of Admitted Exhibits. .................................................. 13
1.14.4. *Markman* Hearing............................................................................................... 14
1.14.4.1. Opening Statement and Closing Argument........................................................ 14
1.14.4.2. *Markman* Hearing Hours................................................................................. 14
1.14.4.3. Admission of Exhibits........................................................................................ 14
1.14.4.4. Transcript............................................................................................................ 14
1.15.   Stipulations........................................................................................................... 14
1.16.   Protective Orders and Patent Prosecution Bars.................................................. 15
2.      Motions. ............................................................................................................... 16
2.1.    Contents. ............................................................................................................... 16
2.2.    Certification.......................................................................................................... 17
2.3.    High Priority Objections, Motions *in Limine* and Motions to Strike. ........................ 18
2.4.    Summary Determination Motions. ....................................................................... 18
2.5.    Discovery and Discovery-Related Motions. ........................................................ 19
2.5.1.  Contents ................................................................................................................ 20
2.6.    Request for Shortened Time to Respond to Motion.............................................. 20
2.7.    No Motion Stops Discovery Except Motion to Quash Subpoena. ............................. 20
2.8.    Motion Deadlines in the Procedural Schedule. ................................................... 21
3.3.    Service of Discovery Requests and Responses. ................................................... 23
3.5.    Subpoenas............................................................................................................. 24
3.5.1.  Issuance and Service. ........................................................................................... 24
3.5.2.  Extensions and Enforcement. .............................................................................. 25

i

3.6.      Bates Numbering. ................................................................................ 25
3.7.      Translations. ...................................................................................... 26
3.8.      Privileged Matter. .............................................................................. 26
4.         Notice of Patent Priority Dates and Notice of Prior Art. ................... 26
4.1.      Patent Priority Dates. ......................................................................... 26
4.2.      Prior Art. ............................................................................................ 26
5.         Expert Witnesses and Reports. .......................................................... 27
6.         Settlement; Settlement Reports. ......................................................... 27
7.         Pre-Hearing Submissions. .................................................................. 28
7.1.      Pre-Hearing Statement. ...................................................................... 28
7.2.      Pre-Hearing Brief. .............................................................................. 30
7.2.1.    Content of Pre-Hearing Brief .............................................................. 31
7.3.      Joint Outline of Issues in Chart Form. ............................................... 31
8.         Hearing Exhibits. ............................................................................... 32
8.1.      Material to Be Received Into Evidence. .............................................. 32
8.2.      Legal Experts. ..................................................................................... 32
8.3.      Witness Sequestration. ....................................................................... 32
8.4.      Witness Testimony. ............................................................................. 32
8.4.1.    Witness Statements in Lieu of Direct Testimony (RARE). ................. 33
8.4.2.    Format of Witness Statements (RARE). ............................................. 33
8.5.      Expert Reports. ................................................................................... 34
8.6.      Foreign Language Exhibits. ................................................................ 34
8.7.      Exhibits. .............................................................................................. 35
8.7.1.    Exchange of Proposed Exhibits. ......................................................... 35
8.7.2.    Service of Proposed Exhibits upon Administrative Law Judge. ................... 35
8.7.3.    Maintenance and Filing of Final Exhibits and Final Exhibit List. ............... 35
8.7.4.    Numbering and Labeling of Exhibits; Confidential Exhibits. ................ 37
8.7.4.1.  Documentary Exhibits. ...................................................................... 37
8.7.4.2.  Physical Exhibits. ............................................................................... 38
8.7.4.3.  Demonstrative Exhibits. ..................................................................... 38
8.7.4.4.  Joint Exhibits. .................................................................................... 38
8.7.5.    Exhibit Lists. ...................................................................................... 38
8.7.6.    Witness Exhibits. ............................................................................... 39
8.7.7.    Authenticity. ....................................................................................... 39
8.7.8.    Sponsoring Witness. ........................................................................... 39
8.8.      Filing of Exhibits. ............................................................................... 40
9.         Hearing Procedure. ............................................................................. 40
9.1.      Order of Examination. ........................................................................ 40
9.2.      Opening Statement and Closing Argument. ........................................ 41
9.3.      Hearing Hours. .................................................................................... 41
9.4.      Hearing Decorum. ............................................................................... 41
9.4.1.    Conversations at Hearing. .................................................................. 41
9.4.2.    Cell Phones and Beepers; Food and Beverages. ................................. 41
9.4.3.    Swearing of Witnesses. ...................................................................... 41
9.4.4.    Arguments on Objection. ................................................................... 41

9.5.        Examination of Witnesses. ................................................................................. 42
9.5.1.      Scope of Examination. ..................................................................................... 42
9.5.2.      Scope of Cross-Examination. ......................................................................... 42
9.5.3.      Scope of Redirect and Re-Cross Examination. ............................................. 42
9.5.4.      Coordination of Witnesses. ............................................................................ 42
9.5.5.      Documents Presented to Witnesses. .............................................................. 42
9.5.6.      Scope of Expert Witness Testimony. ............................................................ 42
9.5.7.      Coordination of Respondents' Cross-Examination. ...................................... 43
9.5.8.      Requests for Clarification of a Question. ...................................................... 43
9.5.9.      Use of Translators. ......................................................................................... 43
9.5.10.     Conferring with a Witness during a Break in Testimony. ............................. 43
9.6.        Transcript. ....................................................................................................... 43
9.7.        Bench Briefs. ................................................................................................... 43
9.8.        Objections to Evidence/Testimony and Motions to Strike. ............................ 43
10.         Post-Hearing Submissions. ............................................................................ 44
10.1.       Initial Post-Hearing Briefs. ............................................................................ 44
10.2.       Post-Hearing Reply Briefs. ............................................................................ 46
10.3.       Proposed Findings of Fact ............................................................................. 46
11.         NEXT Advocates Program ............................................................................ 46
12.         Citations. ......................................................................................................... 47
12.1.       Citations Generally. ........................................................................................ 47
12.2.       Citation to Cases. ............................................................................................ 47
13.         Cooperation among Parties. ........................................................................... 48
14.         *Ex Parte* Contacts. .......................................................................................... 48
15.         Mediation. ....................................................................................................... 48
Appendix A.
Appendix B.

iii

**JUDGE MCNAMARA'S GROUND RULES (12/31/2025)**

**1.         General Procedures and Information.**

**1.1.          Address of Administrative Law Judge.**

The Administrative Law Judge's address is as follows:

The Honorable MaryJoan McNamara
U.S. International Trade Commission
500 E Street, S.W., Room 317
Washington, D.C.  20436

**1.2.          Filing Requirement.**

All submissions shall be filed with the Office of the Secretary of the Commission in accordance with Commission Rule 210.4(f) unless otherwise specifically provided for in these Ground Rules or by order of the Administrative Law Judge.  *See* the United States International Trade Commission Handbook on Filing Procedures www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf[1] for further details. The parties should be aware that the close of business for the agency is 5:15 pm.  *See* Commission Rule 201.3(c).

All documents filed on EDIS must contain in the footer of each page the name of the party that filed the document along with the title of the document.

**1.3.          Service Copy Requirement.**

**1.3.1.          Paper Copies.**

Copies of the papers filed with the Secretary shall be served concurrently on all other parties, including the Commission Investigative Staff (if named as a party).  Also, two (2) double-sided courtesy paper copies shall be served on the Administrative Law Judge ("ALJ"), addressed to her, at her office, through McNamara337@usitc.gov, by the next business day[2] after the papers are electronically filed with the Secretary.  *See* Ground Rule 7 regarding courtesy copies of pre-hearing statements, pre- and post-hearing briefs, and motions *in limine*. See G.R. 1.3.1.1. Note: paper copies should not be sent.

**1.3.1.1.          Copies To ALJ.**

An electronic courtesy copy of each filing, excluding exhibits, should be sent to McNamara337@usitc.gov.  *See* G.R. 1.3.2 below.

---

[1] *See also* https://www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf

### 1.3.2.          Electronic Copies.

While the Investigation is pending before the Administrative Law Judge, any party submitting a motion or any response to a motion electronically through EDIS, as well as any other document submitted in this Investigation electronically through EDIS, shall <u>on the same business day</u> as the electronic filing, send one: (1) courtesy electronic copy of said document in Microsoft Word or PDF format (preferred), to McNamara337@usitc.gov.  In particular, *submissions in chart form*, such as the Joint Claim Construction and Proposed Procedural Schedule, *must be provided in Microsoft Word*.

Copies sent via e-mail should include the number of this Investigation as the first item in the subject line and *must be followed by a very brief summary of the contents*.  For example, the subject line may[2] read: "Inv. No. 337-TA-####, Motion for Summary Determination."

### 1.4.          Submission by Fax Disfavored.

Submissions to the Administrative Law Judge by fax are not to be made without her prior approval.

### 1.5.          Concurrent Service.

The parties are encouraged to confer and stipulate in writing to acceptable forms and terms of service.  Service on opposing counsel may be made by hand, facsimile, e-mail, or overnight courier.  Any foreign respondent who is not represented by counsel may be served by first class mail.  A motion served by overnight courier must be received by the other parties no later than the close of business on the day after the day it was filed.

### 1.6.          Confidential Submissions.

Any document containing confidential business information ("CBI") shall be prominently marked on at least its first page with the legend "confidential business information," or equivalent wording.[3]  Documents filed with confidential attachments shall similarly contain a prominent marking on at least the first page of the document indicating that there are confidential attachments and at least the first page of each of the confidential attachments shall be marked pursuant to Commission Rules.  A party who mistakenly files a document without a confidential designation thereon shall immediately contact the Office of the Secretary and the Administrative Law Judge's Attorney Advisor.

If a motion or related document (e.g., response, reply, stipulation or exhibit) is filed as confidential because it purportedly contains CBI as defined in 19 C.F.R. § 201.6(a), the private parties must file a non-confidential, public version of the motion and related document within five (5) business days from the date of the purportedly confidential filing.  Each filed version of

---

[2] The investigation number followed by the word "service" is not adequate.

[3] *See* Commission Rules 210.6 and 210.34.  It is recommended that every confidential page be so marked.

the motion or related document must be labeled appropriately as either public or confidential (with the latter labeled as containing CBI consistent with past practices).

When redacting CBI, a high level of care must be exercised in order to ensure that non-confidential business information is not redacted or indicated.  The document labeled confidential should contain brackets and highlighting, in accordance with Ground Rule 1.10, of only that material/information that complies with 19 C.F.R. § 201.6(a).  Other than in extremely rare circumstances, block-redaction and block-bracketing are prohibited.  In most cases, redaction or bracketing of only discrete CBI words and phrases will be permitted.  Titles of documents shall not contain CBI.

All confidential motions and confidential responses to motions must be accompanied by declarations, grounded in facts, explaining how each proposed redaction is CBI.

Exhibits attached to the confidential motions and confidential responses to motions generally need not be bracketed, although CBI contained in an exhibit must be bracketed when quoted in a motion or response thereto. If an exhibit is a brief for which the moving party seeks leave to file, e.g., a reply brief attached as an exhibit to a motion for leave to reply, then that exhibit shall be bracketed.  If the main text of a confidential motion or response contains no redaction, the declaration shall explain why the filing is designated confidential (e.g., the motion contains no confidential text but has a confidential attachment).

The same day public version of confidential documents should have redacted the identical material/information bracketed and highlighted in the confidential version.

For those cases where the Office of Unfair Import Investigations ("OUII") is a party, OUII shall have ten (10) business days to submit a non-confidential version of the motion and/or related document.

## 1.7.        Unreported Court Decisions.

Any submission that refers to an unreported court decision shall include it as an exhibit the text of the decision.  Note however, unreported decisions may not be relied upon as precedent.

.

## 1.8.        Temporary Relief.

In any aspect of an Investigation which involves a pending motion for temporary relief, a party serving any paper, including any motion or discovery requests, must notify counsel for the other parties, including the Commission Investigative Staff Attorney ("Staff") if Staff is a party, by telephone on the day the paper is served about the substance of the paper, and must arrange for the other parties to receive the paper the next business day.

**1.9.**             **Deadlines and Extensions.**

All due dates for any paper necessitate that the paper be received by the intended recipient no later than the close of business on the due date.  For this reason, electronic service on the other parties is encouraged.  *See* Commission Rule 201.16(f).

**1.9.1.**             **Extension of Time**

To extend a deadline, the parties must file a motion seeking an extension of time and must set forth good cause for such an extension.  Such motions must be filed on EDIS <u>no later than **two (2) days** before</u> the due date.  The parties shall not file any joint stipulations extending a filing (unless an emergency), discovery or hearing deadline.  Leave should be requested by motions practice.

**1.9.2.**             **Expedited Treatment**

Urgent matters should be brought to the attention of the Administrative Law Judge as follows.  First, motions, responses, or other filings that are urgent or that should receive expedited treatment should be **clearly noted** in the document's caption.  Second, on the date of said filing, the Administrative Law Judge's Attorney Advisor must be notified by e-mail, with a copy to all parties that the matter is of pressing importance or urgency.  The parties should note, however, that the Administrative Law Judge has many ongoing investigations.  All pending matters will be addressed with as much dispatch as time and circumstances allow.  *See also* Ground Rule 2.6.  Any such documents should be copied to McNamara337@usitc.gov, with the e-mail caption noting the urgent nature of the request.

**1.9.3.**             **Untimely Filings**

It is the responsibility of the other parties to promptly notify the Administrative Law Judge in writing if a party has filed or served a document after the deadline set in the procedural schedule or Commission Rules.

A party may correct an untimely filing or submission by promptly moving to have the document accepted out of time by the Administrative Law Judge and explain the good cause for late consideration.  *See* Commission Rule 201.3(c).  The two-day meet and confer requirement are waived for such motions, although movants should attempt to determine the other parties' position with respect to the motion.  If no prompt[4] motion is brought, the Administrative Law Judge may in her discretion order that an untimely filed or served[5] document be disregarded.

**1.10.**             **Redaction Requirements for Public Versions of Orders and**

---

[4] The Administrative Law Judge suggests, but does not require, that this occur within two (2) business days of the late filing.

[5] The procedural schedule provides for certain documents to be submitted or served rather than filed on EDIS.  This rule shall apply equally to all due dates set forth in the procedural schedule, regardless of whether service or filing is required.

**Teleconference Transcripts.**

Orders issued by the Administrative Law Judge may contain the confidential business information of the parties (or in some cases nonparties), in which case the orders will be designated confidential.  The Administrative Law Judge has the discretion, pursuant to Commission Rule 210.5(e), to determine whether the information designated confidential by the supplier is entitled to confidential treatment in orders issued by the Administrative Law Judge.[6]

If the Administrative Law Judge issues a confidential order, i.e. that which contains Confidential Business Information ("CBI") the parties must jointly submit within fourteen (14) days of the order a <u>single</u> proposed public version of that order with any proposed redactions indicated in red.  If the parties submit excessive redactions, they may be required to provide declarations from individuals with personal knowledge, justifying each proposed redaction and specifically explaining why the information sought to be redacted meets the definition for confidential business information set forth in 19 C.F.R. § 201.6(a).

To the extent possible, the proposed redactions should be made electronically, in a single pdf file of the issued order or initial determination, using the "Redact Tool" within Adobe Acrobat, wherein the proposed redactions are submitted as "marked" but not yet "applied."  The proposed redactions should be visible, i.e., no fill color.  The Administrative Law Judge will issue the final public version of the order once all appropriate redactions are made.

The proposed redactions or statement of no redactions should be submitted via email to McNamara337@usitc.gov and not filed on EDIS.  If no proposed redactions or statement of no redactions is not received within fourteen (14) days of the order, the totality of the order may be made public consistent with Commission Rules.

The parties should note that it is the Administrative Law Judge's <u>firm</u> policy that the public has a right to know the substantive outcome of the Investigation.  Therefore, for any order resolving a matter of substance (such as a *Markman* order, grant of summary determination, or final initial determination), the parties must pay particular attention to their proposed redactions.  Only CBI should be redacted, even if this means redacting only a portion of a sentence.

## 1.11.  Electronic Filing (EDIS).

Commission Rule 210.4(f) governs the electronic filing of certain documents in Section 337 Investigations with the Office of the Secretary via the Commission's Electronic Document Information System (EDIS).  Filing through EDIS, however, does not remove the requirement that parties also submit an electronic copy of such filing with the office of the Administrative Law Judges to McNamara337@usitc.gov.

For additional information regarding EDIS, the parties may contact the EDIS Helpdesk

---

[6] This rule applies to any confidential filing, including initial determinations, issued by the Administrative Law Judge.

at (202) 205-3347, review the Docket Services webpage,[7] or access the EDIS 3 User Guide currently found at the following Internet address:

www.usitc.gov/sites/default/files/documents/edis3_10userguide-external_final_optimized.pdf

Electronic filing on EDIS is governed by the U.S.I.T.C. Handbook on Filing Procedures.

One of the instructions concerns current size limits of files.  The current size limit for each file submitted on EDIS is 25 MB, defined as follows:

The size of an electronic document as a whole is not limited by the capability of EDIS, but no single file attached to a document submission may exceed 25 megabytes in size. Documents which exceed the 25-megabyte size limit must be broken down into two or more individual files which are each less than the limit and attached as separate files to the document submission. EDIS allows for an unlimited number of PDF files to be attached to a document submission, which taken together comprise the full document; thus, there is no limit to the overall size of a filing. If a filing includes an attachment that exceeds the foregoing size limitation and cannot be broken down into multiple PDF files, the Secretary may authorize filing of the document in paper form or on electronic media approved by the Secretary, pursuant to section II(C) above. All page limits set forth in the rules and the Handbook shall remain in effect for purposes of electronic filing.

There are other EDIS filing requirements that should be consulted.

## 1.12.          Computation of Time.

In addition to the requirements of Commission Rules 201.14, 201.16(d) and 210.6 for computation of time, if the last day of the period for making a submission falls on a day on which conditions have made EDIS inaccessible for electronic filing, then the cut off shall be extended to the end of the next business day.

The first day of the ten (10) calendar days for responding to a motion shall be the first business day following the date that said motion was filed on EDIS.  In addition to the requirements of Commission Rules 201.16 and 210.15(c) governing the period for a nonmoving party's response to a written motion, the date of service of a motion on a nonmoving party by electronic mail, personal delivery, express-type mail or courier service is the date of delivery. The additional times provided under Commission Rules 201.16(d) and (e) after service by non-electronic means do not apply in such instances, unless service to a nonmoving party is affected in a foreign country.

## 1.13.          Procedural Schedule.

The Administrative Law Judge will establish a procedural schedule for this Investigation.  Modifications of the procedural schedule by any party shall ***be regulated by***

---

[7] *See* https://www.usitc.gov/sites/default/files/documents/edis3_10userguide-external_final_optimized.pdf

*written motion showing good cause.  However, the parties should not expect to be able to modify the hearing dates absent exigent circumstances*.  The event and deadline dates in the procedural schedule will generally adhere (but may vary) to the following chronological order:

| |
|---|
| **Deadline for proposed Procedural Schedule and Discovery Statement** |
| **Initial Case Management Conference (if needed)** |
| **Deadline for Propounding Interrogatories** |
| **File identification of expert witnesses, including their expertise and Curriculum Vitae** |
| **Complainant files notice of patent priority dates/dates of conception/reduction to practice** |
| **Respondent files notice of Prior Art** |
| **Complainant(s) and Respondent(s) provide Staff [8] with their proposed list of claim terms for construction** |
| **Exchange proposed Claim Constructions** |
| **File Joint Claim Construction Chart** |
| **Parties submit a joint list showing each party's proposed construction of the disputed claim terms with briefs by all parties with regard to their initial claim constructions** |
| **Parties meet and confer (including Staff, if applicable) in an attempt to reconcile or otherwise limit disputed claim terms** |
| **Deadline to file *Markman* hearing proposals** |
| **Deadline for Disclosure of Domestic Industry Products** |
| **Technology Stipulation deadline** |
| **Telephone Management Conference** |
| ***Markman* Hearing (if ordered)** |
| **Deadline for post-*Markman* Hearing claim construction** |
| **File tentative list of witnesses a party will call to testify at the hearing, with an identification of each witness' relationship to the party** |
| **Fact discovery cutoff and completion** |

---

[8] If Staff is not a party to the Investigation, the private parties should exchange their proposed constructions.

| |
|---|
| **Last day for filing motions to compel discovery** |
| **Attendance at one-day mediation session[9]** |
| **Submission of joint report on mediation** |
| **Exchange of initial expert reports (identify tests/surveys/data)** |
| **Exchange of rebuttal expert reports** |
| **File expert reports** |
| **File expert report rebuttals** |
| **Last day for filing summary determination motions** |
| **Expert discovery cutoff and completion** |
| **Submission of statements regarding the use of witness statements in lieu of live direct testimony, and statements regarding whether any party intends to offer expert reports into evidence** |
| **Exchange of exhibit lists among the parties** |
| **File Pre-hearing statements and briefs -- Complainant(s) and Respondent(s)** |
| **File Pre-hearing statement and brief -- Staff (if applicable)** |
| **File requests for receipt of evidence without a witness** |
| **Last day for filing motions *in limine*** |
| **File statement of high priority objections** |
| **File responses to statement of high priority objections** |
| **Submission of declarations justifying confidentiality of exhibits** |
| **Last day for filing responses to motions *in limine*** |
| **Tutorial on technology** |
| **Pre-hearing conference** |
| **Evidentiary Hearing** |

---

[9] For any questions regarding the mediation program, the parties should refer to the Revised Users' Manual for Commission Mediation Program, available at http://www.usitc.gov.

| File initial post-hearing briefs, proposed findings of fact and conclusions of law,[10] and final exhibit lists |
| Parties jointly submit electronic copy of combined exhibit lists |
| File reply post-hearing briefs, objections and rebuttals to proposed findings of fact and conclusions of law |
| Initial Determination on Violation Target Date |
| Target Date for completion of Investigation |

Where the procedural schedule indicates the "last day to file," the parties should note that motions are expected on a rolling basis when issues are ripe for determination.

This Procedural Schedule may change greatly depending upon complexity and the types, numbers and complexity of claims involved in the Investigation.

## 1.14.          Early Claim Construction

At the start of an Investigation involving patent litigation, the Administrative Law Judge may order early claim construction, or alternatively, may provide the parties with an opportunity to submit proposals requesting early claim construction. Regardless of whether an early claim construction hearing is ordered, the parties are expected to disclose and solidify their claim construction positions early in the Investigation. Thus, the procedural schedule includes dates for identifying patent claim terms that need construction, for exchanging initial proposed constructions, for meeting and conferring to attempt to resolve disputed claim language, and for identifying a final joint list of disputed claim terms and including each party's final proposed constructions.

At the time that the parties first exchange their initial proposed constructions, any party who fails to set forth a specific proposed construction or who relies on the plain and ordinary meaning of the patent language at issue (without elaboration) may not subsequently elaborate or rely on a different proposed construction absent advance approval from the Administrative Law Judge.[11] In other words, the private parties are expected to make a near-simultaneous show of their "hands." Regardless of what claim construction a party proposed initially, during the meet and confer period, a party may shift position in order to "join" in proposing the claim construction position set forth by another party and also may shift position in order to reach

---

[10] In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law. The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such.

[11] The Administrative Law Judge takes no position here as to the merits of proposing the plain and ordinary meaning (as understood by one of skill in the art) of a disputed term, which may be quite reasonable under the circumstances. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). What is of concern is when a party makes a tactical decision to shift to a new, detailed disclosure after seeing what the other side has to offer.

agreement with all parties in order to resolve a disputed claim term in whole or in part. The parties will be bound by their claim construction positions set forth on the date they are required to submit a joint list showing each party's final proposed construction of the disputed claim terms and will not be permitted to alter these absent a timely showing of good cause.

On the date set in the procedural schedule, the parties are to file a list of claim terms that each party contends should be construed, including any term to be given its plain and ordinary meaning. The parties shall thereafter meet and confer for the purpose of limiting the terms in dispute by narrowing or resolving differences and facilitating the ultimate preparation of a Joint Claim Construction Chart. The parties shall also jointly identify the 10 terms likely to be most significant to resolving the parties' disputes, including those terms for which construction may be case or claim dispositive. Parties will not be permitted to submit more than 14 terms for construction without leave of court.

If a *Markman* hearing in advance of the evidentiary hearing is ordered, the parties are required to confer and set a logical order for briefing the disputed claim terms of the asserted patents and then follow that pre-set order in all *Markman*-related submissions and filings. *See*, for example, the relevant portions of **Appendix B**. Expert reports related to early claim construction may be required to be filed on EDIS. The procedural schedule will state whether the reports should be filed or submitted.

The parties should also understand that, because of the tight schedule needed for expeditious proceedings, a *Markman* order may sometimes issue late in the Investigation, such as shortly before the hearing. The parties should not assume that a *Markman* order will issue before expert report deadlines or that there will be a seasonable opportunity to supplement expert reports after a claim construction ruling. *See* Ground Rule 5. Therefore, the parties are advised, but not required, to account for the proposed constructions of the other parties in their expert reports. When a *Markman* order issues, the Administrative Law Judge will explain whether expert report supplementation is permitted. This typically will only be an opportunity for limited expert report supplementation and only with respect to final claim constructions that substantively differ from those proposed by any party. These will only be permitted by Leave of Court.

The parties and Commission Investigative Staff shall meet and confer on disputed claim construction issues no later than ten (10) days before the *Markman* hearing in order to reduce the number of disputed claim terms to a minimum. Before the *Markman* hearing, Complainant(s), Respondent(s) (if there is more than one Respondent, they are required to file a joint brief), and Staff shall file with the Administrative Law Judge, by the date set forth in the procedural schedule, a short written statement of its interpretation of each of the remaining disputed claim terms together with its support for each interpretation as a matter of ordinary meaning, or as derived from the claims, specification, or prosecution history of the patent(s) at issue, or from extrinsic evidence. After the *Markman* hearing, the parties shall submit a joint chart, by the date set forth in the procedural schedule, setting forth their post-hearing constructions.

Absent a showing of good cause made at or before the *Markman* hearing, a subsequent *Markman* order will provide construction for only the parties' top 10 terms. After the

Administrative Law Judge issues an order construing the disputed claim terms for the purposes of the Investigation, discovery and briefing in the Investigation shall be limited to that claim construction.

### 1.14.1.        *Markman* Briefing.

Absent prior approval of the Administrative Law Judge, initial *Markman* briefs shall not exceed 150 pages.  The parties should use their best efforts to attempt to resolve disputed claim language up to and throughout the *Markman* hearing and promptly notify the Administrative Law Judge in writing if any agreements are reached.  The parties may be asked during a *Markman* hearing to make additional efforts to resolve their disputes.  If so, the parties may be given a certain amount of time after the *Markman* hearing to report on their attempts to resolve disputes and to resubmit any resolved, previously disputed constructions.  If the parties designate a large number of claim terms for construction, the Administrative Law Judge may set limits on the number of claim terms to be construed.  If the parties designate a large number of claim terms for construction, this may delay the issuance of any *Markman* order.

If the parties have agreed to the construction of any claim terms, the Administrative Law Judge considers those terms to be "in controversy"[12] and expects the parties to include a section in their *Markman* briefs setting forth in detail their rationale and support for their agreed upon constructions so that the Administrative Law Judge may make an independent evaluation.  *See Certain Reduced Ignition Proclivity Cigarette Wrappers and Products Containing Same,* Inv. No. 337-TA-756, Comm'n Op. at 43-44 (U.S.I.T.C., June 15, 2012).

Arguments that do not appear in the initial *Markman* briefs shall be deemed waived.  As noted above, the parties will be bound by their final claim construction positions set forth on the date they are required to submit a joint list to the Administrative Law Judge, which may, in some circumstances, include post-*Markman* hearing constructions as described above.

If the parties have exhibits or attachments they wish to submit with their *Markman* briefing, these must correspond to the proposed exhibits that the parties intend to have entered into the record during the *Markman* hearing.  Citations to these attachments in the briefing should correspond to the proposed exhibit numbers.  This means the parties should meet and confer with respect to joint exhibits <u>prior to</u> the deadline for the initial *Markman* briefs.  For example, if Complainants intend to attach a copy of a dictionary definition, Complainants should mark that attachment as a proposed (four-digit) exhibit (*e.g.*, CXM-0003) and refer to that attachment by the proposed exhibit designation in the briefing (*e.g.*, *see* proposed CXM-0003 at 14).  The Administrative Law Judge may disregard any attachments to the *Markman* briefs that have not been admitted into the record during the *Markman* hearing.

The parties are expected to use extrinsic evidence only for the purposes set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) and *General Protecht Group, Inc. v. International Trade Comm'n*, 619 F.3d 1303, 1310-11 (Fed. Cir. 2010).  "[A]n expert's subjective understanding of a patent term is irrelevant."  *General Protecht*, 619 F.3d at 1310-11.

---

[12] *See Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011); *Vanderlande Indus. Nederland BV v. Int'l Trade Comm.*, 366 F.3d 1311, 1323 (Fed. Cir. 2004); *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

The Administrative Law Judge may, in her discretion, strike or disregard improperly advanced extrinsic evidence.

Reply or responsive *Markman* briefs are generally disfavored. Such briefs are permitted only upon an order issued upon a showing of good cause. They are limited to 50 pages and must not repeat arguments presented in initial *Markman* briefs.

**1.14.2.        *Markman* Pre-Hearing Statement.**

This section applies to **all** Investigations, whether or not patents are involved. However, any party who intends to take part in the *Markman* hearing in this Investigation must file on or before the date set forth in the procedural schedule a brief statement containing the following information:

(a)  The names of all known speakers or witnesses, including an identification of whether the speaker is counsel, a fact witness, or an expert witness. If a party intends to use witnesses, the pre-hearing statement should include a very brief outline of the testimony of each witness.

(b)  A list, by title and number, of all exhibits which the parties will seek to introduce at the *Markman* hearing. The list shall include five columns. In the first four columns, the party shall include the number of the exhibit, a brief description and the title of the exhibit, the purpose for which it is being offered, and each sponsoring witness. The last column shall be labeled "Received" and need only include sufficient space for a date.

(c)  A list of any stipulations to which the parties have agreed. All stipulations should be filed on EDIS.

(d)  A proposed schedule/allocation of time for the *Markman* hearing, including the estimated length for the appearance of each speaker or witness. (The parties shall confer on estimated dates and approximate length prior to submission of their pre-hearing statements).

**1.14.3.        *Markman* Hearing Evidence.**

**1.14.3.1.        Exchange of Proposed Exhibits.**

As noted above, the parties should meet and confer in an effort to identify and number joint exhibits prior to submission of the *Markman* briefs. Copies of proposed exhibit lists shall be served on the opposing parties by no later than the date set forth in the procedural schedule. Once the parties have exchanged their proposed exhibit lists, they shall further eliminate any inadvertent duplicate exhibits or renumber such exhibits as joint exhibits and update their exhibit lists. Any exhibits that have been cited to in the *Markman* briefing that have been consolidated or renumbered must remain on the exhibit lists with a clear indication of what the new proposed exhibit number is. For example, if Respondents, in Respondents' *Markman* brief, had cited to some dictionary definitions marked as RXM-0003 and this exhibit was later renumbered as JXM-0056 to remove duplication, the entry on Respondents' proposed exhibit list would reflect this change.

| RXM-0003 | Excerpts from Oxford English Dictionary, 2nd Ed. | Extrinsic evidence as to common meaning of disputed terms "coextensive" and "adjacent" | Respondents' presentation | **Renumbered to JXM-0056** |
|---|---|---|---|---|

Copies of proposed exhibits, if any, including all demonstratives, along with an updated proposed exhibit list, shall be served on the opposing parties by no later than the date set forth in the procedural schedule. Proposed exhibits shall not be filed with the Office of the Secretary of the Commission or served on the Administrative Law Judge in advance of the *Markman* hearing.

Final proposed exhibit lists should be filed as part of the *Markman* pre-hearing statement.

### 1.14.3.2.    Filing on EDIS and Service of Proposed Exhibits upon Administrative Law Judge.

The parties should file their proposed *Markman* exhibits with their *Markman* Briefs on EDIS. Exhibits should be clearly labeled, and as with all exhibits, contain alpha descriptions of their content. (*See* G.R. 1.14.3.3.). If submission rules change, the parties will be notified.

The Parties' demonstrative slides for the Markman Hearing should also be filed on EDIS. Courtesy copies should be sent to McNamara337@usitc.gov 24 hours before the start of a *Markman* hearing if one is held.

### 1.14.3.3.    Format and Submission of Admitted Exhibits.

The parties should refer to the procedures in Ground Rule 8 below with respect to the format and submission of admitted and rejected *Markman* hearing exhibits. *See* Ground Rule 8. Written exhibits shall be marked in order beginning with the four-digit number "0001" and preceded by the prefix "CXM" for Complainants' *Markman* exhibits, "RXM" for Respondents' exhibits, "SXM" for the Staff's *Markman* exhibits (if applicable), and "JXM" for any joint exhibits.

*Additionally, all exhibits that are filed on EDIS with a motion, memorandum, or Markman brief should contain an explanation of content and not simply identified as an exhibit with an alpha character or number. For example, "Exhibit A: Declaration of _____;" "Exhibit 1: Declaration of ___."*

*Please note: the description of any Exhibit should not exceed 35 characters. File size may not exceed 25 MB consistent with the United States International Trade Commission Handbook on Filing Procedures at p. 11 and as described.*

### 1.14.4.        *Markman* Hearing.

The parties have the discretion to determine the order of presentation and allocation of time for the *Markman* proceedings.  For example, the parties may have Complainants discuss all of the patents before moving on to Respondents and then Staff (if applicable). Alternatively, the parties may each present their arguments with respect to one patent or claim term before moving on to the next patent. In some instances, the parties have agreed that the party that has proposed construction of a claim term should go first. It is up to the parties to decide their preferences for presentation. The parties may also determine what, if any, time will be allocated for rebuttal. The parties should keep in mind that the total time allocated for one *Markman* hearing day is 6.5 hours so that there are appropriate breaks, including for lunch.

### 1.14.4.1.        Opening Statement and Closing Argument.

Opening statements for *Markman* hearings are required.  Closing arguments are not necessary.  They are, however, helpful.  The Parties may choose whether to make a closing statement.  Technology tutorials for each asserted patent are recommended but not required.

### 1.14.4.2.        *Markman* Hearing Hours.

Normal hearing hours are 9:30 a.m. to 5:30 p.m., with a one (1) hour luncheon recess and two (2) fifteen (15) minute breaks.

### 1.14.4.3.        Admission of Exhibits.

The parties are responsible for moving their exhibits into the record and should initiate admission of exhibits on the record with the Administrative Law Judge in advance of the 5 p.m. (or other time) close of a *Markman* hearing.  If the Administrative Law Judge approves admission of the requested exhibits, the parties should be prepared to submit a list of admitted exhibits to the hearing reporter for entry into the record.

The parties may seek to have demonstrative exhibits admitted into evidence for substantive or solely for demonstrative purposes.  Such a designation should be made clear on the record at the time of submission.

### 1.14.4.4.        Transcript.

For remote proceedings held via the Commission's Webex platform, the parties do not have the option of real time.  However, real time is available for in-person courtroom proceedings.  Transcripts provided in real time are preferred.

### 1.15.        Stipulations.

### 1.15.1.        Stipulations Generally.

All stipulations between/among the parties should be filed on EDIS.  The parties should also notify the Administrative Law Judge via e-mail to McNamara337@usitc.gov of any such

stipulations.  Stipulations that vary these Ground Rules may not necessarily be approved without leave.

### 1.15.2.         Technology Stipulations.

If the Administrative Law Judge has set a deadline for submission of a technology stipulation in the procedural schedule, the private parties are required to meet and confer in good faith and then, after consultation with Staff (if applicable), shall submit to the Administrative Law Judge two copies of a joint stipulation regarding the patent technology at issue in this Investigation.  The parties shall further state the position of the Staff (if applicable) on the joint technology stipulation.

Said stipulation shall have one section for each asserted patent or family of patents, if it would be more appropriate, and, if applicable, a general technology section should be included that discusses technology common to all of the patents at issue.  At a minimum, said stipulation should provide sufficient background information to understand the disputed claim constructions of each of the asserted claims in issue and should not include any facts upon which the parties are not in agreement.

It is expected that any facts listed in said stipulation may be used and relied upon throughout the remainder of the Investigation, including, *inter alia*, in the Administrative Law Judge's final initial determination on violation.  Also, said stipulation should not be a vehicle for presenting legal arguments.

It is expected that the parties will use their best efforts to jointly create the technology stipulation.  The joint technology stipulation to be submitted should have substance and should not be a list of quotations or paraphrases from the patents at issue (although discussion of the patents is expected to be a component part).  *See Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers*, Inv. No. 337-TA-701, Order No. 26 at 1 (U.S.I.T.C., July 29, 2010).

### 1.16.         Protective Orders and Patent Prosecution Bars.

In certain investigations, the private parties or nonparties have confidential materials that are relevant and discoverable, and which may warrant heightened protections beyond those ordered[13] at the outset of the case.  Parties in need of such heightened protections are promptly expected to begin negotiations for a protective order addendum, *i.e.*, within five (5) business days of the issuance of these Ground Rules.  A party that has subpoenaed a nonparty for discovery is expected to immediately inquire, *i.e.,* within two (2) business days of subpoena service, whether nonparty intends to seek such protections and begin negotiations in good faith if source code or other highly confidential materials are identified in the subpoena.  If a protective order addendum is sought by motion, rather than by private stipulation, such motion must be brought as soon as practicable to avoid discovery delays and should include evidence, such as a declaration, setting forth good cause for heightened protections under the circumstances.  Parties and nonparties may not use the need for a protective order addendum as

---

[13] This is usually Order No. 1, Protective Order.

a basis to withhold other discovery that is non-confidential or that may be produced under the already governing protective order.

The parties should not include the Commission, Commission staff, the Administrative Law Judge or the Administrative Law Judge's staff in protective orders. They are already covered under Commission rules that protect CBI.

The Administrative Law Judge orders that any party bringing a motion for a protective order addendum containing provisions for a proposed patent prosecution bar should review *Certain Consumer Electronics, Including Mobile Phones and Tablets,* Inv. No. 337-TA-839, Order No. 28 (U.S.I.T.C., 2013). It is further recommended, but not required, that rather than seek a patent prosecution bar in advance, the parties instead incorporate a notification provision requiring any individual seeking to view highly confidential materials subject to a protective order addendum to certify in writing whether or not they have recently, are, or in the near future intend to be engaged in patent prosecution or competitive decision making. This would allow the supplier to promptly seek an individually tailored patent prosecution bar (by stipulation or motion) prior to access and would improve the chances of meeting the criteria set forth in *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010).

## 2.          Motions.

Parties with similar interests should coordinate and consolidate motion practice to the extent practicable.

## 2.1.          Contents.

All written motions shall consist of (i) the motion; (ii) a separate memorandum of points and authorities in support of the motion;[14] (iii) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities; and (iv) a Certificate of Service as required by Commission Rule 201.16(c). It is recommended that a moving party clearly articulate what relief is requested in the motion, as well as the law and facts supporting said request(s). Without leave, the motions and supporting memoranda together shall not exceed thirty-five (35) pages, and all attachments to motions shall not exceed a total of one hundred (100) pages. Any motion exceeding either page limit may be denied without prejudice or stricken. An Order may issue for the party to re-submit its motion to comply with the Ground Rule. One exception to the page limitation on attachments to motions is for unopposed[15] motions requesting a letter of recommendation to a United States District Court to issue a letter of request or a letter rogatory to a foreign government's authority for handling requests for international judicial assistance to take discovery abroad. For these motions only, the page limitation on attachments is five hundred (500) pages.

---

[14] A separate memorandum of points and authority is not necessary for motions shorter than five (5) pages.

[15] If the non-moving party's stated position is, after the duties imposed by Ground Rule 2.2 have been discharged, anything other than "oppose," the motion will be treated as unopposed. *See* Ground Rule 2.2.

Offers of Proof fall under this category. An Offer of Proof is a type of Motion, in some sense a motion for reconsideration. A written offer of proof may not exceed the page limitations specified in this section. It should not even come close to the page limitation for motions. The ALJ may specify a different page limitation based upon the circumstances and type of evidence. Please do not misuse the Offer of Proof for a purpose that is inappropriate. For example, if a defense has been denied and eliminated, it is inappropriate to try to resurrect it through an Offer of Proof. Another example is an attempt to change inadequate or existing discovery testimony to enhance the record to the advantage of the proponent for the Offer of Proof. Moreover, a proper Offer of Proof is more often than not a proffer of a line of questions and answers that would have been given in testimony, and typically, based upon already existing evidence. Please review Fed. R. Evid. 103, commentary and precedent that pertains to the same before making an Offer of Proof.

All motion responses shall consist of: (i) a memorandum of points and authorities in response to the motion; (ii) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities; and (iii) a Certificate of Service as required by Commission Rule 201.16(c). <u>All responses to motions shall also include the Motion Docket Number assigned to the motion by the Commission's Office of the Secretary in either the title or the first paragraph of any such responses.</u> EDIS discloses what docket number has been assigned to a motion. Without leave, responses to motions and memoranda supporting such responses together shall not exceed twenty-five (25) pages, and all attachments to responses to motions shall not exceed a total of one hundred (100) pages.

Unopposed motions and joint motions shall contain a proposed order. On the same day the motion is filed, a version of the motion including the proposed order in MS Word for Windows shall be submitted to McNamara337@usitc.gov via e-mail.

***All exhibits submitted with any motion/memorandum must contain exhibit descriptions of the content of the exhibits in addition to an alpha or numerical character. The exhibit descriptions should not exceed 35 characters. The size of any file should not exceed 25 MB (See United States International Trade Commission Handbook on Filing Procedures).***

## 2.2.        Certification.

All motions shall include a certification that the moving party has made a reasonable, good-faith effort to contact and resolve[16] the matter with the other parties at least two (2) business days before filing the motion, and shall state, if known, the position of the other parties regarding the motion. Non-moving parties shall try to timely and substantively respond in good faith to moving party's efforts to resolve a motion.

If the moving party does not state that the non-moving parties, except Staff if Staff is a party, support, oppose, or do not oppose the motion, despite that the moving party has made reasonable, good-faith efforts to contact and resolve the matter with the non-moving parties at least two (2) business days before filing, the motion will be treated as unopposed. A non-moving party's statements, other than Staff, that, for example, it "takes no position" on the

---

[16] Emailing the other parties to inquire as to their position on the proposed motion does not constitute a good faith effort to resolve the matter.

motion or "will take a position after reviewing the papers" will be treated as a position of non-opposition.

### 2.3.          High Priority Objections, Motions *in Limine* and Motions to Strike.

The procedural schedule provides a date for filing a document listing and providing a narrative explanation of the objections to exhibits which the party believes to be of high priority for discussion or ruling at the hearing. Additionally, the procedural schedule also specifies the number of motions *in limine* and high priority objections in combination for each Party and the last date that they can be filed.

All motions *in limine* and high priority objections must be numbered as 1, 2 or 3, etc. Similarly, the responses to motions *in limine* and high priority objections should use the same number of the motion or objection it addresses, i.e., MIL No. 1, 2, 3, etc.

Without leave, each motion *in limine* and high priority objection shall not exceed twenty-five (25) pages, and all attachments to such motions shall not exceed a total of fifty (50) pages. Responses to such motions shall not exceed the same. Any motion exceeding any of these page limits may be denied without prejudice or stricken.

In addition to the foregoing requirements, motions to strike must include by page and line number the text and/or testimony the movant seeks to have stricken, if applicable. The movant should include as attachments to the motion the document containing the page and line numbers of the text to be stricken.

Pre-hearing motions to strike should be few in number and filed rarely.

Each party is limited to one pre-hearing motion to strike without leave. However, if such a motion to strike is filed within two (2) months of the commencement of the evidentiary hearing, it will be treated as a motion *in limine* or high priority objection and it will count against that party's (or group's) permitted number of motions *in limine* and high priority objections.

This rule does not apply to objections to evidence/testimony or motions to strike raised/filed during the hearing or to motions to strike filed post-hearing. *See also* G.R. 9.8.

### 2.4.          Summary Determination Motions.

No more than one (1) motion for summary determination on one (1) issue may be filed by complainants as a group and by respondents as a group (or individually by each party in a group if they do not share an identity of interests) without first filing a motion for leave. A motion for summary determination is limited to 10,000 words (which equates to approximately 40 pages), using 12-point font in text, 11-point font in footnotes and 1.0-inch side margins. Tables of contents, a page(s) containing abbreviations, the page(s) of citations to case precedent, and document headings will not be counted in the count for the number of pages. No more than 100 pages in exhibits may be attached without leave.

Motions for summary determination shall be accompanied by a separate statement of the material facts with which the moving party contends there is no genuine issue, and which entitles the moving party to a summary determination as a matter of law.

Additionally, the statement of material facts must include a chart that consists "of short, factual statements with specific references to supporting declarations, affidavits or other materials."

Whenever possible, the factual statement should be a direct quote from record evidence, using quotation marks. The format of the chart should be substantially as follows:

| Item # | Factual Statement | Citation | Disputed | Factual Rebuttal | Citation |
|--------|-------------------|----------|----------|------------------|----------|
|        |                   |          |          |                  |          |

The moving party shall fill out the first three columns of the chart (item number, factual statement/quote, and citation), and any non-moving party shall fill out the remaining columns (indication of dispute, factual rebuttal, citation).

## 2.4.1.          Response to a Motion for Summary Determination.

A response to a motion for summary determination is limited to 10,000 words (approximately 40 pages) as counted above in Ground Rule 2.4.

The response shall complete and append the chart of facts prepared by the movant. The response shall complete the last three columns of the chart (indication of dispute, factual rebuttal, citation) by reproducing specific record evidence that shows or other materials. Whenever possible, the factual rebuttal should be a direct quote from record evidence using quotation marks. The chart shall not be included in the word count.

Parties should avoid boilerplate rebuttals and particularly should avoid rebuttals or objections that are not directly relevant to the material fact at issue. <u>If a material fact, or a portion of a material fact, is undisputed, the responding party should so state.</u>

All material facts set forth in the moving party's chart may be deemed admitted by a non-moving party unless the non-moving party specifically controverts the statement.

## 2.5.          Discovery and Discovery-Related Motions.

The Administrative Law Judge will try to convene two (2) telephone conferences with the parties at least one of which will be during the discovery period. Dates for these telephone conferences will be included in the procedural schedule governing this Investigation. The parties shall alternate responsibility for securing a dial-in number and a court reporter to transcribe these conferences, beginning with the complainant. The transcript for all conferences shall be filed on EDIS after the parties have jointly submitted a telephone hearing transcript containing their proposed redactions because of CBI no more than seven (7) days from the parties' receipt of the transcript.

Prior to filing **any motion related to a discovery dispute**, the party that seeks to file such a motion must discharge its obligation to meet and confer under Ground Rule 2.2.  If, after discharging its obligation under that rule, the discovery dispute persists, that party shall submit a letter explaining the nature of the discovery dispute to McNamara337@usitc.gov. The letter shall be submitted by e-mail to McNamara337@usitc.gov and shall consist of no more than two (2) pages.  Any party that seeks to submit a responsive letter must do so no later than (2) business days following submission of the initial letter by the intended movant.  Any responsive letter should be submitted by e-mail to the address above and shall be no more than two (2) pages. The underlying discovery dispute will then be placed on the agenda for the next scheduled teleconference with the Administrative Law Judge.  There may be interim telephone conferences as may be necessary.

One business day before each scheduled telephone conference, the parties shall jointly submit to McNamara337@usitc.gov a proposed agenda for the telephone conference, which shall include all disputes raised according to the procedure above.

If no disputes are pending, and there is no need for the scheduled telephone conference on the procedural schedule from the parties' perspective, the parties shall notify the Administrative Law Judge by e-mail to McNamara337@usitc.gov at least two (2) business days before the scheduled telephone conference may not be necessary

Leave to file a discovery-related motion will be granted, if at all, only after the intended movant has complied with the procedure provided herein.

## 2.5.1. Contents

Any discovery-related motion must have appended to it the pertinent parts of the discovery request and all objections and answers thereto.  Additionally, if the party subject to the motion to compel serves supplemental discovery responses while the motion is pending, then the response to the motion must include copies of the supplemental responses, or, where documents are produced, a detailed accounting of what additional documents were produced.

## 2.6. Request for Shortened Time to Respond to Motion.

If a party seeks expedited treatment pursuant to Ground Rule 1.9.2., such motion shall include any request to shorten the time for which other parties may respond to the motion.  The fact that a shortened response time is requested shall be noted in the title of the motion and the motion shall include an explanation of the grounds for such a request.  A request for a shortened response time shall <u>not</u> be made through a separate motion.

## 2.7. No Motion Stops Discovery Except Motion to Quash Subpoena.

The submission of a motion does not stop discovery except in the case of a timely motion to quash a subpoena, and only with respect to the party or witness who may be a non-party who is served with a subpoena.

**2.8.**                    **Motion Deadlines in the Procedural Schedule.**

Although the procedural schedule contains several cut-off points for bringing motions (motions to compel discovery, summary determination motions, and motions *in limine*), parties are expected to bring their motions on a rolling basis. Parties who fail to diligently bring issues to the attention of the Administrative Law Judge as close to the time of the dispute as practicable may find that their arguments have lost persuasive value. *See e.g.*, *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order No. 52 at 2 (U.S.I.T.C., 2012).

Motions to compel discovery must comply with Ground Rule 2.5.

**2.9.**                    **Mootness.**

The parties should file a notice on EDIS within seven (7) business days when any issue, such as an invalidity argument, a substantive factual or expert theory (often called a "contention"), or any other allegation or defense becomes moot, or is being dropped.

If a change in circumstances renders all or any portion of a motion moot, the moving party is expected to promptly file notice (with the pertinent motion number in the document title) as to whether all or a specific portion of said motion is being withdrawn. In addition, movant is expected to notify my Attorney Advisor via email within 24 hours.

**3.**                    **Discovery.**

The parties should make intensive good faith efforts promptly commence and respond to discovery. Lack of diligence may affect a party's showing of good cause for motions to enforce discovery, particularly if such motions are adjacent to the close of fact discovery. In the same vein, failure to promptly seek a protective order in the face of highly objectionable or inappropriate discovery requests may undermine the opposition of a party responding to a motion to compel. The parties should also note that the deadlines in the procedural schedule are considered to be the last day to complete a task. Because these are fast-paced proceedings, parties are expected to exert diligence and file motions earlier than the stated deadline, such as motions to compel discovery or to enforce subpoenas. Parties should not tactically seek to withhold or delay motions or discovery, as every party is expected to proceed expeditiously. Commission Rule 210.2.

The Commission has affirmed that the notice of investigation, not a complaint, defines the scope of an investigation. 78 F.R. 23476 (April 19, 2013). "The scope of discovery is necessarily commensurate with the scope of the investigation." *Certain Rechargeable Lithium-Ion Batteries, Components Thereof, and Prods. Containing Same*, 337-TA-600, Order No. 8 (July 25, 2007). Thus, it is unacceptable for a party to unilaterally limit the scope of discovery to solely those products specifically accused in the complaint, and a party refusing to respond to discovery requests on this ground may be subject to sanctions in light of the Commission's clear guidance on this issue. Should a party have serious concerns about the scope of the notice of

investigation or about the scope of requested discovery, it has a responsibility to promptly take appropriate action.

## 3.1.        Resolution of Disputes; Coordinated Discovery.

The parties shall make reasonable efforts to resolve between or among themselves disputes that arise during discovery.  Parties with similar interests must coordinate and consolidate depositions and all other discovery.

### 3.1.1.        Discovery Committee.

Starting the first full week after these Ground Rules are issued, a discovery conference committee (the "Discovery Committee") consisting of the lead counsel for each party and Staff, if Staff is a party, shall confer at least once every two (2) weeks during the discovery phase of this Investigation, either in person or by telephone, to resolve discovery disputes.  The Discovery Committee shall confer in good faith to resolve every outstanding discovery dispute in a timely manner within the deadlines set forth in the procedural schedule.

Within ten (10) calendar days after the end of each month during the discovery phase, the Discovery Committee shall report in writing to the Administrative Law Judge all disputes that were resolved during the preceding month and all disputes about which there is an impasse as of the end of that month.  No motion to compel discovery may be filed unless the subject matter of the motion has first been brought to the Discovery Committee and the Committee has reached an impasse in trying to resolve it.  It is recommended, but not required, that within twenty-four (24) hours of each meeting the Discovery Committee members exchange[17] written confirmation of what disputes have reached an impasse.

## 3.2.        Stipulations Regarding Discovery Procedure.

Unless otherwise directed by the Administrative Law Judge, the parties may, by written stipulation, modify procedures for, or limitations placed upon, discovery.  The parties may not stipulate to change any Commission Rule with respect to discovery, unless the Rule expressly permits it.  *See, e.g.*, Commission Rules 210.28(a), 210.29(a).  Furthermore, stipulations extending the time provided in Ground Rule 3.4.2 and Commission Rules 210.30(b)(2) and 210.31(b) for responses to discovery, if they would interfere with (i) the target date of this Investigation, (ii) any time set in the procedural schedule or other order related to completion of discovery,[18] or (iii) the evidentiary hearing or hearing of a motion, may only be made with the advance approval of the Administrative Law Judge upon a timely written motion showing good cause.

---

[17] Such exchange should not be served on the Administrative Law Judge or filed on EDIS, unless it is appended as a necessary component to a discovery motion or response thereto.

[18] *See, e.g., Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-803, Order No. 42 at 3, n.1 (U.S.I.T.C., 2012).

### 3.3.        Service of Discovery Requests and Responses.

Discovery requests and responses must be served on all parties, including Staff (if applicable), but are not to be served on the Administrative Law Judge, or her Attorney Advisor, or filed on EDIS unless they are appended to a motion.

### 3.4.        Timing of Discovery Requests, Responses and Objections.

### 3.4.1.        Depositions.

In addition to the requirements of Commission Rule 210.28(c), unless otherwise ordered or stipulated pursuant to Ground Rule 3.2, any party desiring to take a deposition shall give **at least ten (10) days'** written notice to every other party if the deposition is to be taken of a person located in the United States, or at least **fifteen (15) business days'** written notice if the deposition is to be taken of a person located outside the United States. No party shall notice the deposition of a party witness without first consulting with the opposing party and Staff, if Staff is a party, regarding the availability of witnesses and counsel for the deposition. Opposing party (and Staff) shall make a good faith effort to timely consult with the party requesting said deposition.

### 3.4.1.1.        Depositions in Japan.

If an application for a recommendation to the U.S. District Court requiring depositions of a party in Japan is necessary, it should be titled as an "application" but filed on EDIS as a "motion." The application should include a statement as to the other parties' positions regarding the application as well as any relevant supportive material.

If the Administrative Law Judge determines that the application should be granted, an order and recommendation will issue. A copy will then be served on all parties. It is the responsibility of the applicant to determine whether the U.S. District Court requires a certified original. If so, the applicant should include in a cover letter, or include in the application itself, clear instructions explaining the requirement, and if the applicant prefers to pick up the certified original, the manner of pick up and the individual to be contacted. Absent these instructions, only the service copy will be sent to the applicant.

### 3.4.2.        Interrogatories.

In addition to the requirements of Commission Rule 210.29(b), unless otherwise ordered, the party on whom interrogatories have been served shall serve a copy of the answers, and any objections, within **ten (10) days** after the service of the interrogatories.

### 3.4.3.        Requests for Production of Documents or Things or for Entry upon Land.

*See* Commission Rule 210.30. Additionally, the parties should start providing documents to one another within fifteen (15) days of receiving a Request for Production.

### 3.4.4.            Request for Admission.

In addition to the requirements of Commission Rule 210.31(a) and (b), a request for admission may be served at any time **twenty (20) days** after the date of service of the Complaint and Notice of Investigation.

### 3.4.5.            Discovery Cutoff and Completion.

All discovery requests, including requests for admissions, must be initiated long enough before the fact discovery cutoff and completion date to allow responses by that date without curtailing the response times prescribed in the Commission Rules and Ground Rules.  Discovery requests by any party that would require responses after the fact discovery cutoff and completion date must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

### 3.5.            Subpoenas.

Subpoenas may be requested to compel third parties to testify or produce documents. The Administrative Law Judge expects the parties to diligently seek third-party subpoenas as early as practicable in the Investigation, and to take quick action to enforce said subpoenas if third parties delay.  *See* Ground Rule 3.5.2.  Hearing subpoenas will be issued only if the subpoenaed party refuses to testify.

### 3.5.1.            Issuance and Service.

Pursuant to Commission Rule 210.32, applications for subpoenas may be made *ex parte* to the Administrative Law Judge.  An application shall be in writing with the proposed subpoena attached.  One (1) original and one (1) copy thereof shall be submitted to the office of the Administrative Law Judges.

The subpoena application shall set forth: (i) the relevancy of the information sought and the reasonableness of the scope of the inquiry; and (ii) shall state that the subpoena will be served (on the individual or entity subject to subpoena) by overnight delivery, if not sooner. The subpoena should: (i) set forth a time limit for a motion to quash; and (ii) should refer to and also have a copy of the Protective Order in this Investigation as an attachment.  At a minimum, the subpoenaed party shall be given ten (10) days <u>after receipt</u> of the subpoena to file a motion to quash.

Any dates in a subpoena for appearance of a deponent or production of documents shall accommodate the time allowed for the filing of any motions to quash and shall accommodate for the time needed for the Office of Administrative Law Judges to process the subpoena application.[19]  *See* Commission Rule 201.14(a); Ground Rule 1.12.  A copy of the issued subpoena and the application shall be served by the applicant on the subpoenaed party by

---

[19] This is typically 24-48 hours, depending in part on whether the application is delivered by mail or by courier.  Parties with urgent subpoena requests should contact the Administrative Law Judge's Attorney Advisor.

overnight delivery, if not sooner, and on all other parties to this Investigation on the next business day, at the latest, after the subpoena is issued.

A sample of a subpoena application is attached as **Appendix A**. In addition, two forms of subpoenas, which the parties must follow precisely, are attached as **Appendix A**. The parties must seek advance leave if they wish to make substantive changes to the subpoena forms. The application and subpoena shall not be filed on EDIS or served on the Office of the Secretary of the Commission unless they are appended to a motion.

### 3.5.2.          Extensions and Enforcement.

Any stipulated extensions to the time set forth for discovery in a subpoena must be made in writing and signed by the requesting party and the nonparty. A stipulation to extend the deadline to respond to a subpoena may be filed once as a matter of course. A motion for leave demonstrating good cause must be filed for any additional extensions. The same applies to third-party subpoenas.

There is always an expectation that good faith efforts to rapidly negotiate with a nonparty to gain subpoena compliance should be made and documented. *See also* Ground Rule 1.16. However, these are expeditious proceedings and a nonparty's failure to cooperate or respond to a subpoena should be brought promptly to the attention of the Administrative Law Judge by way of a supported motion for judicial enforcement. Lack of diligence may affect a party's showing of good cause for motions to enforce (or defend against) discovery, particularly if such motions are adjacent to the close of fact discovery.

If a motion to enforce or quash a subpoena, or a response to such a motion, contains confidential business information, a public version with confidential materials redacted must accompany the confidential filing. *See* Commission Rule 210.32(g).[20] If movant, nonparty, or other responding parties fail to timely file non-confidential versions of their pertinent papers on EDIS, then the Administrative Law Judge will exercise discretion as to what portions of a final order may be treated as confidential. Commission Rule 210.5(e)(1). In addition, in the event of a failure to timely file non-confidential version when another party or a nonparty is not permitted to view the confidential business information contained therein, the Administrative Law Judge may consider whether such failure was affected for an improper purpose.

### 3.6.          Bates Numbering.

Documents produced in response to a document request which are copies of original documents, shall be numbered sequentially by a unique number (commonly known as a "Bates number"). The Bates number shall appear stamped on the lower right-hand corner of the page. The parties are encouraged to use Bates numbers without long prefixes. For example, the short Bates number XYZ-00001 is preferable over LONGPARTYNAME-ITCNUMBER-00001.

---

[20] This is necessary because a certification to the Commission requires simultaneous public and confidential orders to issue. *Id.* Therefore, proposed redactions submitted after an order issues are not feasible.

3.7.             **Translations.**

A document produced in response to a document request shall be either the original or a legible and complete copy.  If an English translation of any document produced exists, the English translation must also be produced.  If any of the parties dispute the translation provided by the producing party, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

3.8.             **Privileged Matter.**

In addition to the requirements set forth in Commission Rule 210.27(e) with respect to privilege logs, each privilege log shall contain a certification that all elements of the claimed privilege are met and have not been waived with respect to each document.  The parties should not provide a "key" at the end of a privilege log with the position and entity of each sender and recipient or otherwise require cross-referencing.

4.             **Notice of Patent Priority Dates and Notice of Prior Art.**

4.1.             **Patent Priority Dates.**

Complainant(s) must file on or before the date set in the procedural schedule, a notice setting forth the alleged priority date[21] for each asserted patent, and if applicable because of differences in priority dates, for each asserted patent claim.  Such notice will be binding on Complainant(s) and may not be amended absent a timely written motion showing good cause.

4.2.             **Prior Art.**

The purpose of the prior art identification is to notify all parties (early in the Investigation) of the prior art likely to be raised during the hearing on the question of violation of section 337, and thus to allow the parties to formulate their facts and factual predicates, theories of the case, and to allow the experts to provide meaningful reports and deposition testimony.

Parties must file on or before the date set in the procedural schedule, notices of any prior art containing of the following information: issuing country, number, date, and name of the patentee of any patent; the title, date and page numbers of any publication to be relied upon as evidence of invalidity of the patent in suit; and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit.  Such notices should include the information set out in 35 U.S.C. § 282.

---

[21] This disclosure should make clear what date(s) Complainant(s) intend to rely on for asserting priority of invention, if at all, as Complainant(s) are presumed to be in possession of dates of conception and reduction to practice for the asserted patent claim(s).  Likewise, if Complainant(s) intend to rely on an earlier related or foreign application to the asserted patent claim(s), the priority disclosure should also make this clear.  The purpose of this notice in light of the expeditious nature of these proceedings is to help delineate the boundaries of the search for prior art.

If a trademark is involved, the parties must file on or before the date set in the procedural schedule, notices of any art on which a party will rely at the hearing regarding the functionality or non-functionality of any trademarks at issue.

Prior art, as well as related evidence, that is not disclosed in the Notice of Prior Art on or before the date set forth in the procedural schedule will not be admitted at the hearing absent a timely written motion showing good cause. Notices of prior art with excessive disclosures have been stricken in the past on the basis that they thwart the purpose of this Ground Rule 4. *See, e.g., Certain Wireless Communications System Server Software, Wireless Handheld Devices and Battery Packs*, Inv. No. 337-TA-706, Order No. 10 (U.S.I.T.C., 2010); *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order Nos. 40, 56 (U.S.I.T.C., 2012).

**5.        Expert Witnesses and Reports.**

On or before the dates set forth in the procedural schedule, a party shall disclose to all other parties the identity of any person who is retained or employed to provide expert testimony at the hearing and shall provide the other parties a written report prepared and signed by that witness. Experts who are not disclosed on or before the date set forth in the procedural schedule must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

An electronic courtesy copy of the expert report shall be served on the Administrative Law Judge through McNamara337@usitc.gov, excluding exhibits, as noted in Ground Rule 1.3.2.

The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at hearing or by deposition within the preceding four (4) years. The parties shall supplement these disclosures as needed in the manner provided in Commission Rule 210.27(c).

The parties should note, however, that unseasonable,[22] substantive supplementation of an expert report requires agreement prior approval from the Administrative Law Judge.

**6.        Settlement; Settlement Reports.**

All parties, throughout the proceedings, shall explore reasonable possibilities for settlement of all or any of the contested issues. All parties shall certify in their pre-hearing statements that good faith efforts were undertaken to settle the remaining issues.

---

[22] For example, if a party wishes to supplement an initial expert report after the deadline for rebuttal reports has passed.

Additionally, for each of the required settlement conferences provided for in the procedural schedule, the parties shall provide the Administrative Law Judge with two (2) double-sided copies of a joint report signed by all the parties setting forth any stipulations on which the parties have agreed.  The report must also disclose what meeting(s) took place, who attended, and what result, if any, was obtained in each meeting.  *See e.g., Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-803, Order No. 16 (U.S.I.T.C., 2011).  These reports are due by the time designated in the procedural schedule or within such other time as the Administrative Law Judge may allow.  The reports shall not be filed with the Office of the Secretary of the Commission.

**7.            Pre-Hearing Submissions.**

Paper copies of demonstrative slide decks for *Markman* Hearings, the Evidentiary Hearing, and other hearings must be provided to Chambers at least two (2) business days before the scheduled hearing date.  Paper copies are not required for any other documents, unless specifically requested by the ALJ.

**7.1.            Pre-Hearing Statement.**

Pre-hearing statements are limited to 100 pages, including attachments, without leave from the ALJ.  Each party who intends to take part in the hearing in this Investigation must file on or before the date set forth in the procedural schedule a pre-hearing statement containing the following information:

(a)  The names of all known witnesses, their addresses, whether they are fact or expert witnesses (and their fields of expertise), and a brief outline of the testimony of each witness.  In the case of expert witnesses, a copy of the expert's curriculum vitae shall accompany this submission.  The expert's curriculum vitae does not count toward the 100-page limit on pre-hearing statements.  The identification of witnesses should be contained in the text of the pre-hearing statement and not attached as an exhibit.

(b)  A preliminary list, by title and number, of all exhibits that the parties will seek to introduce at the trial.  The list shall include five columns.  In the first four columns, the party shall include the four-digit number of the exhibit, a brief description and the title of the exhibit, the purpose for which it is being offered, and each sponsoring witness.  The last column shall be labeled "Received" and need only include sufficient space for a date.

(c)  A list of any stipulations on which the parties have agreed.  It is expected that all stipulations other than discovery stipulations will be marked as joint exhibits.  For example, the technology stipulation (*see* Ground Rule 1.15) should be marked as a joint exhibit.

(d)  A proposed agenda for the pre-trial conference.

(e)  Estimated date and approximate length for appearance of each witness.  (The parties must confer on this prior to submission of the pre-hearing statements).  NOTE: this should be part of a first/second page of the Pre-Hearing Statement, or it may be filed as a separate page or two with the Pre-Hearing

Statement so long as it is "up front" and easily accessible.

(f)  Certification regarding good faith efforts to settle.  *See* Ground Rule 6 *infra*.

**Additional Submission, Complainant(s).**

In addition to the above, in patent Investigations, Complainant(s) shall attach a chart or table to the pre-hearing statement specifically matching all asserted patent claims to each accused article.  If there are nuances, *e.g.*, with respect to model number or particular components, these should be identified.  Furthermore, Complainant(s) should identify representative accused articles, if any.  The chart should further identify the asserted type(s) of infringement.  For example, if there are three asserted claims and five accused articles, a sample chart might appear as follows.

| **'##1 Patent, claim 5** | **'##1 Patent, claim 7** | **'##2 Patent, claim 12** |
|---|---|---|
| P Product family: <br> Accused Product AA (7MA config. only) <br> Accused Product BB | P Product family: <br> Accused Product BB | P Product family: n/a |
| Q Product family: <br> Accused Product CC <br> Accused Product EE | Q Product family: <br> Accused Product DD <br> Accused Product EE | Q Product family: <br> Accused Product CC (T6 config. only) <br> Accused Product DD <br> Accused Product EE |
| Representative Products: <br> Accused Product BB <br> Accused Product CC | Representative Products: <br> Accused Product BB <br> Accused Product EE | Representative Products: <br> Accused Product CC (T6 config. only) <br> Accused Product EE |
| Infringement: <br> Literal <br> Direct, induced, contributory | Infringement: <br> Literal <br> Direct, induced, contributory | Infringement: <br> Literal, Doctrine of Equivalents (Accused Product CC, T6 config. only) <br> Direct |

Complainant(s) shall be bound by the identification of asserted claims as matched to the accused products in this submission.

**Additional Submission, Respondent(s).**

In addition to the above, in patent Investigations, Respondent(s) asserting any Section 102 or 103 invalidity defenses shall attach a chart or table to the pre-hearing statement listing all asserted prior art references, or combinations of references, and specifically matching these to each asserted patent claim.  For example, if there are four prior art references and five asserted patent claims, a sample chart might appear as follows.

| **Cheng (§102)** | **Davis (§103)** | **Davis, Scott, Maxwell (§103)** | **Davis, Maxwell, Aguilar (§103)** |
|---|---|---|---|

| '##1 Patent, claim 5 | '##1 Patent, claim 12 | '##1 Patent, claim 12 | '##1 Patent, claim 12 |
|---|---|---|---|
| '##2 Patent, n/a | '##2 Patent, claims 12, 16, 17 | '##2 Patent, claim 17 | '##2 Patent, claim 12, 16 |

If Respondent(s) use a single chart, each entry must clearly state whether Section 102 or 103 is applicable. (*See* above sample.) Respondent(s) may alternatively separate the Section 102 and 103 invalidity defenses into two charts in the same submission.

Respondent(s) shall be bound by the identification of asserted prior art as matched to the asserted patent claims in this submission.

## 7.2.         Pre-Hearing Brief.

The parties must meet and confer prior to filing the pre-hearing briefs in order to determine appropriate common locations for each issue. *See, e.g.*, **Appendix B**. For example, in an Investigation involving patent litigation, this conference should, *inter alia*, determine the order of patents to be set forth in the pre-hearing briefing.

On or before the date set in the procedural schedule, each party shall file a pre-hearing brief. Absent prior approval of the Administrative Law Judge said brief shall consist of no more than one hundred fifty (150) pages and may have no more than fifty (50) pages of relevant attachments. The parties should not use attachments to bypass the page limits of the pre-hearing brief, but may use them to attach critical charts, figures, or other pertinent material.

The pre-hearing brief shall be prefaced with a table of contents and a table of authorities, which do not count toward the page limits. The brief shall set forth <u>with particularity</u> the authoring party's theories of the case and contentions on each of the proposed issues, including citations to legal authorities in support thereof, and shall conform to the sample outline set forth in **Appendix B** hereto. All issues, including issues not specifically named in the general outline set forth in said appendix that any party seeks to address, shall be added where appropriate. The parties need not use precious space on lengthy introductory arguments.

If claim construction issues have not been resolved in a *Markman* order prior to the hearing, the parties need only cite to the last claim construction the party argued in its claim construction brief, or in its post-*Markman* hearing brief.

Any contentions and theories of the case not set forth in detail as required herein shall be deemed abandoned or withdrawn,[23] except for contentions of which a party is not aware and could not be aware in the exercise of reasonable diligence at the time of filing the pre-hearing brief. However, the parties are advised to select their best, well-reasoned and persuasive arguments, and abandon extraneous or far-fetched contentions at this time.

---

[23] *Certain Automated Media Library Devices*, Inv. No. 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013).

Additionally, "contentions and theories" should be supported explicitly by documentary and testimonial evidence already exchanged between/among the parties.  See G.R. 7.2.1.

### 7.2.1.                    Content of Pre-Hearing Brief

There seems to be confusion about the content of pre-hearing briefs.  A pre-hearing brief should never be is a diatribe against the other parties or claims made for which the party knows there is virtually no support.  Choose issues carefully.  Limit.  Focus on the strongest issues for which there is evidence.  Additionally, a pre-hearing brief should *not* consist of primarily attorney argument, conclusory statements, or a mere re-recitation of language contained in patent claims or specifications.  If you argue a proposition or issue which you know you will not win and there truly is little or no dispute or evidence, concede it and focus where there is at least a colorable argument.

Any factual or theoretical contention made, whether for infringement or for validity, and any other issues, must be supported by citations to likely exhibits, deposition testimony, expert reports, and be supported by case law.  The reasoning and explanations of expert testimony or likely expert testimony should be clear and cite to supporting evidence.  A pre-hearing brief without citation to evidence is not an appropriate pre-hearing brief.

Validity arguments, where there are multiple sources, should be clearly explained.  At a minimum, *why* the piece of prior art was chosen should be explained.  The technology from which it comes or relates to should be explained.  If there are aspects of the prior art that do not apply, be clear about that.  Too often parties attempt to hide or obfuscate.  It cannot be emphasized enough that conclusory statements, including about anticipation or motivation to combine needs to be explained, with reasoning, or to put it another way, a structured argument is a requirement.  If the other party's critique is wrong, explain *why*, with reasoning and evidentiary support.

*Block string cites* are not appropriate.  Similarly, merely attaching Appendices to a pre-hearing brief with block string cites is never appropriate.  String cites that have meaning or contain necessary, corroborative evidence from different sources may be appropriate, especially if there are multiple evidentiary sources for a theory, proposition, illustrative point or argument.  Charts are fine if, in fact, the individual elements are supported, again, by *evidence.*  Include the citations to evidence.

All of the above applies to expert reports.

### 7.3.                    Joint Outline of Issues in Chart Form.

The parties must jointly create and maintain a single chart of substantive legal issues being litigated in the Investigation.  The chart shall be jointly filed as a separate docket entry simultaneously with the pre-hearing and the post-hearing briefs.  The parties' pre-hearing and initial post-hearing briefs will follow the order of the issues set forth in the chart.  The leftmost column of the chart will list the issues being litigated, including all infringement and invalidity theories and defenses.  The parties will create subsequent columns for each of their briefs,

grouped by party (i.e., the chart accompanying the post-hearing reply briefs will include columns for Complainant(s)'s pre-hearing brief, initial post-hearing brief, and post-hearing reply brief, followed by columns for Respondent(s)'s pre-hearing brief, initial post-hearing brief, and post-hearing reply brief).  The cells of the columns will contain page numbers of the particular sections of the briefs where those issues are addressed.

If issues, facts, claims, patents, arguments, or defenses have dropped out from the pre-hearing briefs, that should be noted explicitly in the chart accompanying the initial post-hearing briefs.  That same principle should carry through to the outline accompanying the post-hearing reply briefs.

## 8.        Hearing Exhibits.

### 8.1.            Material to Be Received Into Evidence.

Only factual material and expert opinion shall be received into evidence.  Legal arguments shall be presented in the briefs.

### 8.2.             Legal Experts.

Legal experts may only testify as to procedures of the U.S. Patent and Trademark Office. In the event that legal experts are called to testify on foreign law, Federal Circuit Court and Commission precedent will apply to interpretation.

### 8.3.            Witness Sequestration.

Fact witnesses may be in the courtroom during opening statements.  However, fact witnesses must then remain outside the courtroom until they have completed all testimony.  Otherwise, Fed. R. Evid. 615 is referenced.

### 8.4.            Witness Testimony.

Unless ordered otherwise, all witness testimony will be live testimony.  To minimize the risk of biased testimony, after the parties provide opening statements, live fact witnesses shall not observe in the courtroom during the hearing until after they have completed their live testimony.

In the event witness statements are permitted in lieu of live witness testimony, witness statements (which will be rare) leave must be requested through motions practice at least one (1) month before the evidentiary hearing unless there is an illness or injury involved.  If there is an illness or injury, leave by motions practice must occur as soon as practicable.  It is not sufficient or acceptable in replacement of this rule that the parties agree between/among themselves to a witness statement.  It should be noted that leave will rarely be granted for non-in-person, expert testimony.  Additionally, the following rules would apply if leave by motion for other than in-person testimony is granted.

### 8.4.1.                Witness Statements in Lieu of Direct Testimony (RARE).

Witness statements are disfavored and, except as described, will not be allowed in place of direct testimony during the evidentiary hearing.  Witnesses will not be permitted to read prepared testimony into the record.  Staff may ask a witness supplemental direct testimony on the witness stand.  Witnesses shall be available for cross-examination on the witness stand unless waived by the parties entitled to conduct cross-examination.  While generally not a substitute for live testimony, witness statements containing background statements, such as CV type information, may be marked with exhibit numbers and offered into evidence as exhibits.  Short witness statements, or preferably declarations, may be used to sponsor the admission of exhibits, only upon a showing of good cause set forth in a motion and only if: (1) a list of all such exhibits is attached to the witness statement; and (2) each such exhibit is explicitly cross-referenced to the corresponding portion of the witness statement in which the witness laid a foundation for the exhibit.

### 8.4.2.                Format of Witness Statements (RARE).

In the exceedingly rare event that a witness statement of the type used by other Administrative Law Judges for direct testimony is allowed, the witness statement shall be in the form of consecutively numbered questions from counsel, with each question followed by the witness's own answer to that question.  The final question from counsel should ask the witness whether or not the witness statement contains the witness's independent answers to the questions from counsel and should be followed by the witness's answer to this question and the witness's signature.  The questions shall be in the form of a direct examination, and the answers shall be in the form of verbal testimony, although the witness statement may be organized (e.g. headings, table of contents, and bulleted or numbered lists) to facilitate an understanding of the issues and may include illustrative excerpts from admissible exhibits.  For evidentiary support, witness statements shall cite to exhibit numbers and brief descriptions of the exhibits (e.g., JX-0002 ('123 Patent File History)) that will be introduced at the hearing.  A witness statement must contain the entirety of the witness's direct testimony; attachments or incorporation of other documents by reference is not allowed.

A witness statement shall be in the language of the witness, and a foreign language witness statement shall be accompanied by a certified English translation thereof.

Except upon a timely written motion and for good cause shown, fact witnesses shall not review the witness statements of other witnesses and shall be excluded from the hearing prior to their testimony.  Subject to restrictions imposed by any protective order entered in an investigation, this rule does not apply to exclude a party who is a natural person, or an officer or employee of a party designated as the party's representative by its attorney.

If allowed in the first instance, witness statements may not be withdrawn, in whole or in part, without leave.  Witness statements may not be amended.  If witnesses desire to correct typographical or clerical errors in their testimony, they should prepare errata sheets.  Counsel should mark the errata sheets as exhibits and should give them as quickly as possible to the

other parties and to the Administrative Law Judge.  During the hearing, a motion may be made to have the errata sheets accepted into the record.

Absent leave granted by the Administrative Law Judge; the total number of witness statement pages offered by the complainants (collectively) may not exceed one hundred (100) pages. Similarly, absent leave granted by the Administrative Law Judge, the respondents (collectively) may not offer more than one hundred (100) pages of witness statements.  Tables of contents and certified translations are not counted toward the page limits.  The text of the questions and answers in the witness statements may be single spaced, provided that at least double spacing is used between questions and answers, and at least a 12-point font is used. Illustrations may be included in the witness statements, but they will be counted among the aggregate number of pages that may be offered.

### 8.5.         Expert Reports.

Pursuant to the procedural schedule, after conferring, each party, including the Staff (if Staff is a party), shall file on EDIS and submit to the Administrative Law Judge at McNamara337@usitc.gov, one copy of a statement stating its position on whether or not it intends to offer into evidence[24] any parts of their expert reports as part of a motion, or for any other purpose permitted under the rules.  The expert report expected to be used as described should be identified.  The statement shall not be filed with the Office of the Secretary of the Commission.

A courtesy copy of all expert reports must be submitted to McNamara337@usitc.gov. when they are submitted to other parties.

If a party files a motion to preclude parts of an expert report or makes any type of motion to strike any part of an expert report or expert deposition testimony, that party should take care not to withdraw or exclude any part of that same expert report and expert deposition testimony in exhibit lists.  The opposing party may always rebut such a motion with other parts of the expert record.  If the submissions are inadequate or distortive of testimony, the ALJ may, *sua sponte*, use other parts of the expert report or expert testimony to ensure that what is being presented is accurate in context.

### 8.6.         Foreign Language Exhibits.

No foreign language exhibit will be received in evidence for substantive purposes unless a complete English translation of it is provided at the time set for exchange of exhibits. ***Translations of only a part or a section of a document will not be permitted.***  The entirety of any document must be translated.  If any of the parties dispute the translation, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

---

[24] Relevant parts of expert reports may be admitted into evidence.

## 8.7.        Exhibits.

### 8.7.1.        Exchange of Proposed Exhibits.

The Ground Rules no longer specify an exact date by which copies of proposed documentary exhibits, along with a proposed exhibit list, shall be served on the opposing parties (including the Staff, if applicable).  That gives the parties some flexibility.  However, exhibit lists should be exchanged at least seven (7) days before the evidentiary hearing.  After the proposed exhibit list exchange, the parties shall eliminate any duplicate exhibits or renumber such exhibits as joint exhibits and update their exhibit lists before they are submitted to the Administrative Law Judge.

Proposed physical and demonstrative exhibits need not be served but shall be identified in the proposed exhibit list.  Proposed physical and demonstrative exhibits, however, must be made available for inspection by the other parties on the date established for the submission and service of proposed exhibits.

Proposed exhibits shall not be filed with the Office of the Secretary of the Commission.

### 8.7.2.        Service of Proposed Exhibits upon Administrative Law Judge.

Just before, or during the evidentiary hearing, the parties shall provide the Administrative Law Judge with copies of the exhibits they plan to introduce, including an electronic PDF version of a list of proposed exhibits, along with a proposed exhibit list through a Box link that will be provided both before, during and after a hearing.

### 8.7.3.        Maintenance and Filing of Final Exhibits and Final Exhibit List.

Before and after the evidentiary hearing, each party will be sent a Box link into which their preliminary and final exhibit lists and exhibits should be uploaded.  Each party must submit a final exhibit list in conformity with Ground Rule 8.7.5, and the Procedural Schedule that reflects the status of all exhibits, including those admitted and rejected during the hearing.  Any withdrawn exhibit shall be identified on the final exhibit list only, by exhibit number, and shall indicate that it has been withdrawn.  Withdrawn exhibits are not to be submitted; however, the rejected exhibits will be retained with the official record.

The parties are responsible throughout the course of the hearing for updating the exhibit lists and exhibits as well as for confirming that all admitted and rejected exhibits are included in the final exhibit list at the conclusion of the hearing.

A semi-final exhibit list should be submitted to Box through the link provided no later than 5 p.m. on the seventh day after the last day of the hearing. The exhibits should be organized as: (i) Admitted Confidential; (ii) Admitted Public; (iii) Rejected Confidential; and (iv) Rejected Public.  The exhibits should be submitted to the Administrative Law Judge's assistant by appointment.  The Administrative Law Judge's assistant will review the exhibits with the parties and notify them of any necessary corrections.  It is advisable to leave time between the appointment with the Administrative Law Judge's assistant and the final

submission deadline in order to make any corrections needed. Please be timely and courteous when working with the Administrative Law Judge's assistant on the submission of these exhibit sets.

All documents submitted as exhibits should be dated. If there are multiple iterations of the same documents, those multiple iterations should be dated. If, for example, screen shots of web sites are used, then the dates the screen shots were taken along with the https://address should be provided.

The parties are responsible for confirming that all admitted and rejected exhibits are included in the final filed exhibits. Any exhibits that are not included on the final exhibit list will not be considered as part of the record to be certified to the Commission when the final initial determination issues.

The Commission set of exhibits shall be uploaded using the Box platform with separate folders for each type of exhibit, e.g., CX (Public), CX (Confidential), etc. The exhibits must be PDF files and any file larger than 25MB shall be broken up into separate files. A Table of Contents file in PDF format which lists the names of all files in each folder should be created and included in each folder. Rejected exhibits should be provided in separate folders. Any exhibits that are not included with the Commission exhibits and on the final exhibit list at the conclusion of the hearing will not be considered as part of the record to be certified to the Commission when the final initial determination issues. "Each type of exhibit (i.e., CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-{four digit number}C, CDX-{four digit number}C, RX-{four digit number}C, RDX-{four digit number}C, JX-{four digit number}C, JDX-{four digit number}C, SX-{four digit number}C, and SDX-{four digit number}C) must be submitted on a different [disc] or set of [disc]s so they may be uploaded and labeled more reliably by Docket[]" Services. Each disc "must have a label with the investigation name and number, and the range of exhibits contained thereon."

If the appropriate permission is received pursuant to Commission Rule 19 C.F.R. § 210.4(f)(8) and The Handbook of Filing Procedures § II.C(3)(a) to submit the Commission Set on paper, the following shall apply. In order to facilitate the optical scanning of the exhibits, the exhibits in the Commission Set shall consist of loose sheets (which may be clipped but not stapled) in folders (file folders, accordion folders, etc.) that are provided in sequentially numbered boxes. Each folder must be labeled to reflect the number of the exhibit contained therein, e.g., RX-0014C. In each box of the Commission Set, the folders containing the exhibits shall be placed in numerical order. Confidential exhibits and public exhibits shall be placed in separate boxes which are clearly marked as containing either confidential or public exhibits. *See* Ground Rule 8.6.5. Because public and confidential exhibits are to be placed in separate boxes, numerical gaps may appear in each box, e.g., the public box may contain exhibits CX-0001, CX-0002 and CX-0004, while the confidential box may contain CX-0003C and CX-0005C.

***Finally, every exhibit that has been identified in the Pre-Hearing Briefs must use the same exhibit numbers in Post-Hearing Briefs and in the final submitted exhibit lists. The parties should take care not to withdraw exhibits they have used or are using in motions to strike or for offers of proof.***

*The final Exhibit List and Exhibits will be due two (2) days before each Party files its post-hearing brief.*

### 8.7.4.    Numbering and Labeling of Exhibits; Confidential Exhibits.

All exhibits or copies of exhibits shall be clear and legible.  Each exhibit shall be identified by placing a label bearing the exhibit's **four-digit**[25] number (*e.g.*, CX-0003C or RX-0005) in the upper right portion of the exhibit's first page.  Each exhibit may be assigned no more than one number.  Further, the pages of each exhibit must be sequentially numbered in a consistent location on the pages and in a manner that will not permanently conceal information that is included in the exhibit.  Except for good cause shown, each exhibit shall consist of no more than one (1) document, and every page of every document shall be Bates numbered in accordance with Ground Rule 3.6.  Exceptions to this "one document per exhibit" rule include instances when it would be appropriate to group certain documents together as a single exhibit, such as a group of invoices or related e-mails.

Respondent(s) shall coordinate their numbering to avoid duplication.  Additionally, all parties shall coordinate exhibits to avoid unnecessary duplication (*e.g.*, patents; file wrappers).

If any portion of an exhibit contains confidential business information, the entire exhibit shall be treated as confidential.  For certain lengthy exhibits of which only portions are confidential, the parties may be asked to submit a public version of the exhibit.

If an exhibit (including physical or demonstrative exhibits) contains confidential business information, a "C" shall be placed after the exhibit number.  Furthermore, exhibits containing confidential business information shall also be marked according to the Protective Order requirements, preferably on every page.  Exhibit lists must also reflect whether exhibits contain confidential business information by placing a "C" after the exhibit number in the listing.  No exhibit list shall contain confidential information; all exhibit lists shall be public documents.

For exhibits submitted electronically, in accordance with Ground Rule 8.7, public and confidential exhibits should be submitted separately.   Each submission should have an accurate table of contents.

### 8.7.4.1.    Documentary Exhibits.

Written exhibits shall be marked in order beginning with the number "0001" and preceded by the prefix "CX" for Complainant's exhibits, "RX" for Respondent(s)' exhibits, "SX" for the Commission Investigative Staff's exhibits (if applicable), and "JX" for any joint exhibits.  The parties shall not "reserve" numbers but instead must assign all numbers to the exhibits in their proper order.

---

[25] All exhibits submitted to the Commission are now required to have "a four-digit exhibit number, with leading zeros as necessary."

### 8.7.4.2. Physical Exhibits.

Physical exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CPX", "RPX", "SPX" and "JPX", for Complainant, Respondent, the Staff (if applicable), and joint exhibits, respectively. For the Commission Set, physical exhibits should be boxed and provided to the Administrative Law Judge's assistant no later than the second day after the close of the evidentiary hearing, by appointment. *See* Ground Rule 8.6.4 above. Physical exhibits that have been admitted into evidence are retained by the Commission. A party may request permission from the Administrative Law Judge to substitute a photograph for an admitted physical exhibit prior to the deadline for submission of exhibits.

All Exhibits must be labeled with their content as well as according to the numbering scheme identified above.

### 8.7.4.3. Demonstrative Exhibits.

Demonstrative exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CDX", "RDX", and "SDX", for Complainant, Respondent(s), and the Staff (if applicable), respectively. Additionally, the parties shall provide the Administrative Law Judge with two (2) double-sided copies of key demonstrative exhibits (*e.g.*, charts, drawings, etc.) reduced to 8 ½ inches x 11 inches for use during the hearing. If applicable, demonstrative exhibits shall indicate what documentary or physical exhibit was the source for its creation.

The parties may seek to have demonstrative exhibits admitted into evidence, for substantive or solely for demonstrative purposes. Such designation must be made clear on the record at the time of admission. Admitted demonstrative exhibits must be submitted with the ALJ and Commission Sets pursuant to Ground Rules 8.6.4 and 8.7.

### 8.7.4.4. Joint Exhibits.

If agreed to by parties, they may submit joint documentary exhibits, including for example, a patent in issue, prosecution history, etc.

The joint documentary exhibits shall include an index which identifies the parties that have submitted each joint exhibit and should be arranged based on the various groups offering such exhibits. For example, if complainant and respondent A have offered a series of joint documentary exhibits, those exhibits would appear as the first group of joint documentary exhibits in the joint documentary exhibit index. The index would then include all joint documentary exhibits offered by complainant and respondent B, then joint documentary exhibits offered by complainant and respondent C, etc.

### 8.7.5. Exhibit Lists.

Every exhibit list shall include a table enumerating all exhibits consecutively by exhibit number and identifying each exhibit by a descriptive title, a brief statement of the purpose for which the exhibit is being offered in evidence, the name of the sponsoring witness, and the

status of receipt of the exhibit into evidence.

Every joint exhibit list shall identify each exhibit, and the parties shall meet and confer before submitting the lists for the purpose of seeking an agreement on a common descriptive title, statement of purpose, and sponsoring witnesses that shall appear on every list for each joint exhibit.

In any exhibit list submitted before the offer of an included exhibit into evidence, the entry in the column for the status of receipt shall be left blank. In any exhibit list submitted after the exhibit is offered into evidence or withdrawn, the entry in that column shall show the date of admission into evidence or rejection of the exhibit or shall indicate its withdrawal.

Exhibit lists shall include public and confidential exhibits, and shall list all exhibits together in (four-digit) numerical order, *e.g.*, CX-0001, CX-0002, CX-0003C, CX-0004, CX-0005C, etc. Exhibit lists are public documents and should not contain confidential business information.

*Again, all exhibit lists should explain the content of the exhibit as well as contain the alpha character or number, and whether it has been withdrawn. A description of each exhibit should not exceed 35 characters. A file may not exceed 25MB. See infra.*

### 8.7.6. Witness Exhibits.

In questioning a witness on direct examination, cross-examination, or examination of an adverse witness during the hearing, counsel shall provide the witness, and other counsel, before the commencement of the examination, with a binder (or binders) (or if done electronically by e-mail or FTP, or for the ALJ, electronically) containing all the exhibits that the examining attorney intends to use with that witness. If a binder is used (as the parties choose), it should contain double-sided exhibits, in numerical order and individually tabbed. Each witness binder must be labeled on its spine with the name and number of this Investigation and the nature of the contents of the binder, *e.g.*, Cross-Examination of Witness - Volume 1 of 1. In addition, the front of the witness binder must include a table of contents.

If there are certain exhibits (*i.e.* patent, prosecution histories) that will be used frequently with more than one witness, a separate exhibit binder (unless service is made electronically) containing those exhibits may be used with those witnesses and those exhibits may be omitted from the individual witness binders, or as the parties agree.

### 8.7.7. Authenticity.

All documents that appear to be regular on their face shall be deemed authentic, unless it is shown by other evidence that the document is not genuine.

### 8.7.8. Sponsoring Witness.

Each exhibit that is offered into evidence shall have a "sponsoring witness." One of the purposes for a sponsoring witness is to establish a foundation for the exhibit and to prevent

exhibits from entering the record that have not been adequately explained. Sponsoring witness testimony does not have to be in the form of oral testimony if all parties agree to allow otherwise. For example, if the parties are willing to stipulate and agree to designate portions of deposition testimony, along with certain exhibits that were discussed during the deposition, such request will generally be permitted upon the filing of a motion demonstrating good cause, as long as the exhibit was clearly identified and discussed during the deposition and the deposition pages discussing the exhibit are included in the designation.

Except for investigations without a participating respondent, if a party believes evidence to be non-controversial and appropriate for admission into evidence without a sponsoring witness, that party may present with each such exhibit on or before the due date set forth in the procedural schedule (i) an affidavit or declaration that the declarant prepared or someone under the declarant's direction prepared the exhibit; (ii) a request that the exhibit be received in evidence without a witness at the hearing; and (iii) a statement of grounds for receiving the exhibit in evidence without a witness at the hearing. Any party who wishes to cross-examine the declarant may object in writing within three (3) days of service of the affidavit or declaration and request, specifying whom the party intends to examine. In the absence of objections, and upon good cause being shown, the Administrative Law Judge may in her discretion admit the exhibit in evidence without a witness.

## 8.8.        Filing of Exhibits.

The procedure for submitting exhibits on electronic media is set forth in the Docket Services section of the U.S. International Trade Commission's website. Please contact Dockets directly from the website.

Directions for uploading to the ALJ's Box account before and after the evidentiary hearing will be provided before the evidentiary hearing. An e-mail link will be provided to one individual (and preferably a back-up person) from each party, and if there are joint exhibits, to the individual designated to upload joint exhibits, who will be responsible for uploading documents to the ALJ's Box account. Please note that only the ALJ and her staff will have access to those documents once submitted.

## 9.        Hearing Procedure.

## 9.1.        Order of Examination.

Unless altered during the pre-hearing conference, or as necessitated by exigent circumstances such as the unavailability of witnesses on certain days, the order of examination at the hearing is as follows:

(1)        Complainant's Case-in-Chief.

(2)        Respondent's Case-in-Chief. In the event there is more than one respondent, the order of presentation will be determined at the pre-hearing conference. Respondents should avoid unnecessary repetition of testimony or other evidence.

(3)        Staff's Case-in-Chief (if applicable).

(4)    Complainant's Rebuttal.  Complainant's rebuttal, absent prior approval, shall be limited to the scope of Respondent's defense case.

(5)    Respondent's Rebuttal.  Respondent's rebuttal, absent prior approval, shall be limited to the issues for which Respondent carries ultimate burden of proof.

## 9.2.    Opening Statement and Closing Argument.

The Administrative Law Judge does not require opening statements and closing arguments.  The parties may present opening statements.  Opening statements are limited to one (1) hour for the complainant, one (1) hour for respondent(s), and thirty (30) minutes for Staff (if applicable).  The parties may make a request to present closing arguments.

## 9.3.    Hearing Hours.

Normal hearing hours are 9:30 a.m. to 5:30 p.m., with a one (1) hour luncheon recess beginning each day at approximately 12:15-12:30 p.m.  Also, there will be a morning and an afternoon break of approximately fifteen (15) minutes each.

## 9.4.    Hearing Decorum.

### 9.4.1.    Conversations at Hearing.

No audible discourse between opposing counsel will be permitted while the hearing is in session.  If an attorney has anything to address to opposing counsel, it must be done through the Administrative Law Judge.

### 9.4.2.    Cell Phones and Beepers; Food and Beverages.

Audible cell phone and beeper signals shall be turned off in the courtroom during hearing, and all cell phone conversations must occur outside the courtroom.  No food or drink other than water is permitted in the courtroom during hearing.

### 9.4.3.    Swearing of Witnesses.

Each witness shall stand while being administered the oath of affirmation.  All others in the hearing room should remain seated and quiet.

### 9.4.4.    Arguments on Objection.

Arguments or objections may only be made by counsel prior to a ruling.  Once a ruling is made, no further discussion of the matter will be permitted.  The basis for the objection must be stated; general objections are not acceptable.

**9.5.** **Examination of Witnesses.**

**9.5.1.** **Scope of Examination.**

Except in extraordinary circumstances, examination of witnesses for Complainant(s)' case-in-chief and Respondent(s)' case-in-chief shall be limited to direct, cross, redirect, and re-cross.

**9.5.2.** **Scope of Cross-Examination.**

Cross examination is typically limited to the scope of the direct examination.  For witnesses called for the purpose of giving testimony in support of a position on an issue that is the same as the position on that issue of a party desiring cross-examination of that witness, that party is precluded from asking that witness leading questions, *i.e.* "no friendly cross-examination."

When counsel is presenting a witness with a question that refers back to the witness's previous testimony, counsel shall refrain from summarizing the witness's previous testimony because this can lead to a time-consuming objection that counsel's summary was not an accurate recitation of the witness's previous testimony.  If counsel wishes to refer back to a witness's previous testimony, counsel must use direct quotations.

**9.5.3.** **Scope of Redirect and Re-Cross Examination.**

Redirect examination is limited to matters brought out on cross-examination.  Re-cross examination is limited to matters brought out on redirect examination.

**9.5.4.** **Coordination of Witnesses.**

The parties are expected to conduct their witness examination in a matter that will adhere to the total time allotted for the hearing.

**9.5.5.** **Documents Presented to Witnesses.**

Any document that an attorney wishes to show a witness must first be shown to opposing counsel.

**9.5.6.** **Scope of Expert Witness Testimony.**

Expert witness testimony at the hearing shall be confined to the scope of the expert's report(s), and deposition testimony.  The proponent of the witness is expected to be prepared to demonstrate promptly where in that witness's reports or deposition may be found each element of testimony sought to be elicited at the hearing.

### 9.5.7.    Coordination of Respondents' Cross-Examination.

Respondents are expected to coordinate cross-examination through one attorney as far as practicable to avoid duplication. If that is not possible, counsel who intend to cross-examine must be present in the hearing room during the entire preceding cross-examination of the witness so as not to engage in repetitive questioning.

### 9.5.8.    Requests for Clarification of a Question.

Requests for clarification of a question may only be made by the witness or the Administrative Law Judge.

### 9.5.9.    Use of Translators.

If a translator will be used at the hearing, the parties are responsible for obtaining a qualified, neutral translator on whom they can agree. It is suggested that the translator be chosen from a list of approved translators, such as the ones maintained by various federal courts and federal agencies. Translators will be administered an oath or affirmation.

### 9.5.10.    Conferring with a Witness during a Break in Testimony.

Counsel or intermediaries shall not confer with a witness during a break in the witness's testimony on the witness's substantive testimony.

### 9.6.    Transcript.

The parties have the option of arranging for the hearing transcript in real time. The Administrative Law Judge prefers to have hearing transcripts in real time. The parties should monitor the admission of exhibits on the transcript as it comes out and promptly bring any errors or omissions to the Administrative Law Judge's attention at the hearing.

If a transcript needs to be corrected after the conclusion of the hearing, the party requesting the change shall do so through a motion. Once an order issues adopting the proposed correction, it is incumbent upon the party requesting the change to send a copy of the order to Ace-Federal Reporters, Inc. so that the corrections can be made.

### 9.7.    Bench Briefs.

Bench briefs, if they are permitted by the Administrative Law Judge during the hearing, must be filed on EDIS as motions and must comport with the Commission Rules and Ground Rules relating to motions.

### 9.8.    Objections to Evidence/Testimony and Motions to Strike.

During the hearing, any evidentiary objections or motions to strike that cannot be resolved on the spot will be subject to a written motion not to exceed five (5) pages with no more than 10 pages of attachments, unless leave is requested from the Administrative Law

Judge and given.  Any such motion must be filed on EDIS the same day as raised during the hearing unless otherwise changed by the Administrative Law Judge.  The response must be filed the next day, unless granted leave for a different deadline, and will be subject to the same page limits as the motion to strike.  References to exact pages and lines of testimony or documents to be stricken must be included.  Testimony citations and sections/paragraphs from an expert report (with cover page and date thereof) should be attached, with the surrounding testimony, or relevant portions of the expert report(s).  No more than two (2) motions to strike will be allowed during the hearing by complainants as a group or respondents as a group (or by each party in a group if they do not share an identity of interests).

If a party who files a motion loses the motion on a ruling that is made during the hearing, that party will be penalized by a time deduction that it took for argument and the ruling.

Post-hearing motions to strike brought separately from MILs or motions to strike made during an evidentiary hearing are discouraged.  No more than one (1) motion to strike will be allowed post-hearing without leave by complainants as a group and respondents as a group (or by each party in a group if they do not share an identity of interests).

**10.        Post-Hearing Submissions.**

Parties may devote a maximum of 150 pages to post-hearing briefing, excluding attachments, absent prior leave from the Administrative Law Judge.  Although these rules contemplate a party devoting no more than 100 pages to an initial post-hearing brief and no more than 50 pages to a post-hearing reply brief, any party may allocate its 150 pages of post-hearing briefing, as it sees fit, between an initial post-hearing brief and a post-hearing reply brief.  For example, without leave, a party can devote 75 pages to each brief.

**10.1.        Initial Post-Hearing Briefs.**

On or before the date set forth in the procedural schedule, the parties shall file a post-hearing brief on the issues for which they have the burden of proof.  Absent approval by the Administrative Law Judge said brief shall consist of no more than fifty (50) pages of relevant attachments.  In addition, each party shall file a copy of its final exhibit list.  Courtesy copies of all post-hearing briefs and final exhibit lists shall be submitted in binders, preferably not exceeding 3" in width.

The post-hearing brief for each party shall discuss the issues and evidence tried (through, *e.g.*, citations to specific supporting evidence) within the framework of the general issues determined by the Commission's Notice of Investigation, identified in the joint issue chart for which that party bears the burden (except Staff), and any permitted amendments thereto.  All other issues shall be deemed waived.[26]

---

[26] *Certain Automated Media Library Devices*, Inv. No. 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013).

The parties' initial post-hearing briefs must follow the order set forth in the joint issue chart.

Additionally, if a claim, argument or issue was briefed in a pre-hearing brief, but the party who raised the issue or made the argument did not adduce evidence on the same during the evidentiary hearing, then any such issue should be identified in the joint issue chart with the page numbers to each party's brief where such an unsupported issue or argument appears in a party's pre-hearing brief, and it shall be deemed waived.

The parties should not attempt to bypass the page limits by attaching[27] dense appendices, incorporating other documents by reference, such as a pre-hearing brief, or cross-referencing other sections of the post-hearing brief.

*Neither should they change fonts to enhance words or use footnotes in lieu of text. Case citations should be in the text body, not in footnotes.* In the same vein, the parties should set forth a clear, concise analysis of fact and law for each issue, and should not substitute their discussion of supporting facts with long string cites to the evidence. For example, a heading with a single sentence beneath it, followed by cites to thirty-five evidentiary citations is not likely to be a sufficient analysis of fact and law, particularly if an issue is disputed. Furthermore, arguments should not be hidden in footnotes but should instead be presented in a straightforward and visible manner. The initial post-hearing brief is the most critical brief in the Investigation, and parties that do not set forth an articulate analysis may find they have failed to carry their burden on a particular issue.

The parties should make sure they understand the law for each issue and touch upon all the elements for an issue. For example, an analysis relating to a 35 U.S.C. § 103 obviousness defense should encompass a discussion of the scope and content of the prior art, the level of ordinary skill in the art, a comparison of the claimed invention and the prior art, and any secondary considerations of non-obviousness—not just a comparison of the claimed invention and the prior art. A discussion of whether a domestic industry product, accused product, or prior art reference does *or does not* meet an asserted patent claim should prominently identify what elements are disputed. If an element is not in dispute, each party must identify it with equal clarity or risk waiver of any opposition.

The parties are further advised to carefully select their best arguments, and set them forth in a logical, reasoned, persuasive manner. The method of spilling out every possible permutation of evidence in an unordered series of one sentence arguments until the allotted space is exhausted is not likely to be effective. The Administrative Law Judge may, in her discretion, treat only a few of the strongest arguments in such a case and ignore the remainder.

Staff will be permitted to change its pre-hearing position(s) on invalidity and infringement after the evidentiary hearing ("Hearing") where the evidence that came in during a

---

[27] The parties are likewise barred from attaching evidence that is not in the record and that should have been offered during the hearing. For example, if an exhibit containing an expert report was not admitted at the hearing, then it should not be attached to a post-hearing brief. To the extent such an exhibit might be necessary to argue that another party's argument was waived or should be stricken, this must be introduced by way of separate motion papers and must not be submitted with any post-hearing briefing.

Hearing appears to Staff to warrant such a change in its previous position. Staff will have seven (7) days after the last day of the evidentiary hearing to file a "Notice" on EDIS that it has changed its position. Staff should identify its filing on EDIS as a "Post-Hearing Notice." Staff should identify each issue on which it has changed its position, and explain why, citing to evidence from the hearing. The filing should be limited to 15 pages unless Staff requests leave to file a longer notice and explains why. The other parties will have seven (7) business days to respond to Staff's Notice. They may respond but need not and it will not be held against the parties. However, the parties will be expected to address Staff's change in position in post-hearing briefs.

**10.2.        Post-Hearing Reply Briefs.**

On or before the date set in the procedural schedule, the parties shall file a post-hearing reply brief. Absent prior approval of the Administrative Law Judge said brief shall consist of no more than twenty (20) pages of relevant attachments. The post-hearing reply brief shall discuss and rebut only the issues and evidence raised in the initial post-hearing brief of an opposing party and follow the joint issue chart accompanying the pre-hearing and initial post-hearing briefs as set forth in Ground Rule 7.3.

**10.3.        Proposed Findings of Fact**

In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law. The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such. If a party chooses to file proposed findings of fact and conclusions of law, they must be filed on the same date as the initial post-trial brief.

The proposed findings of fact shall be in the form of numbered paragraphs. The findings shall reflect all section 337 elements, all issues outlined in the Notice of Investigation, and any other issues that arose during the course of the Investigation. Section headings consistent with the outline of the post-hearing brief may be used to set off paragraphs that relate to particular section 337 elements or issues. To be accepted without alteration, a proposed finding of fact must be an assertion of fact only (i.e., without argument more appropriately placed in the post-hearing brief). Each proposed finding of fact must be followed with citations to support authority in the evidence.

**11.        NEXT Advocates Program**

In accordance with the NEXT Advocates Program initiated by the Commission's Office of Administrative Law Judges,[28] the parties are encouraged to provide opportunities for less experienced attorneys (i.e., those that have given three or fewer substantive oral arguments or witness examinations in any federal tribunal) to participate in substantive oral presentations during the investigation and/or to examine witnesses during the evidentiary hearing.

---

[28] *See* NEXT Advocates Program Announcement,
https://www.usitc.gov/next_advocates_nurturing_excellence_in_trial_advocates.htm.

A party should submit a proposal to Chambers requesting accommodations that would support participation in the NEXT Advocates program. For example, a proposal could request additional trial time to permit a less-experienced attorney to examine a witness during the evidentiary hearing. Or, a proposal might request a hearing on a summary determination motion or on another issue dispositive to the issue, where at least one party commits to permitting a less-experienced attorney to argue a substantive portion of the motion.

As set forth in the NEXT Advocates program announcement on the Commission website, more-experienced attorneys will be permitted to assist less-experienced attorneys, if necessary, and to clarify any statements on the record before conclusion of the hearing if necessary.

The proposal should include a certification by lead counsel that explains the expected participation of one or more less-experienced attorneys. The certification need not identify the name of the less-experienced attorneys or the witnesses who will be examined, just the law firm. Submissions should be sent to McNamara337@usitc.gov and need not be filed on EDIS.

## 12.    Citations.

### 12.1.        Citations Generally.

The parties should not substitute their discussion of supporting facts with long string cites to the evidence. No combination charts of citations of any kind will suffice by themselves. Such arguments may be stricken.

Any party that cites to foreign language documents or provisions contained in foreign language documents in claim charts and discovery documents is required without exception to provide translations of the documents or provisions. Any document or portion of a document that circumvents this Ground Rule, or that mis-translates or mis-characterizes the foreign language, may be stricken.

All citations to case law and evidence must be included in the text of the motion/response /brief/document, i.e., not in footnotes.

### 12.2.        Citation to Cases.

Every party must cite to the specific page(s) of the cited decision or order that includes the holding for which the authority is cited. The official case reporter citation must be included for any published decision or order that is cited in a party's briefs or pleadings. Additionally, the docket number and the full date of the disposition must be included in the citation of any unreported decision or order that is referenced by the parties. Citations to unreported cases or those without precedential authority should be clearly marked with a parenthetical in the brief or pleading. For example, such a citation might read:

*Case Name*, ### F.3d ###, at ## (Fed. Cir. ####) (nonprecedential).

A copy of any cited decision or order that is not available on EDIS, LEXIS, or WESTLAW shall be provided in an appendix to the brief or pleading.

**13.**          **Cooperation among Parties.**

Because of the time limitations imposed by Section 337, all counsel shall attempt to resolve, by stipulation or negotiated agreement, any procedural disputes encountered, including those relating to discovery and submission of evidence.  To assure the proper cooperative spirit in this Investigation, continuing good faith communications between counsel for the parties is essential and is expected.

**14.**          ***Ex Parte* Contacts.**

There shall be no *ex parte* communication with the Administrative Law Judge.  Any questions of a technical or procedural nature shall be directed to the Administrative Law Judge's Attorney Advisor.  Except for service of electronic copies pursuant to Ground Rule 1.3.2, the parties should take care not to copy the Attorney Advisor on email communications not specifically directed to them.

Informal communications with the Administrative Law Judge's Attorney Advisor or Chambers via email or telephone shall not be referenced in briefs, documents, or papers filed on EDIS.  Otherwise, formal communications on EDIS only will be entertained.

The parties should note that the Docket Manager for this Investigation, as well as other staff in Docket Services and the Administrative Law Judge's Secretary, should not be contacted relating to such issues as whether an order has been signed, when an order posted on EDIS will be processed, whether an order posted on EDIS will go out by overnight courier or U.S. Mail (as opposed to an issue of non-receipt several days later).  This is not to say that Docket Services may never be contacted with respect to this Investigation.  If the parties have generic questions relating, e.g., to a party filing, such an inquiry would be appropriate.  However, Docket Services' staff members are not allowed to give out information relating to the status of the Administrative Law Judge's orders.  The Docket Manager for this Investigation and the Administrative Law Judge's Secretary may log any inappropriate calls made in this Investigation and bring them to the attention of the Administrative Law Judge if necessary.

**15.**          **Mediation.**

The Commission has approved the initiation of a voluntary mediation program for investigations under Section 337 of the Tariff Act of 1930 as amended, to facilitate the settlement of disputes.  Parties who wish to participate in the mediation program should notify the Administrative Law Judge's Attorney Advisor.

**APPENDIX A**

-1-

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

### Before the Honorable MaryJoan McNamara
### Administrative Law Judge

| | |
|---|---|
| In the Matter of | |
| Certain . . . | Investigation No. 337-TA-___ |

### [SAMPLE] APPLICATION FOR ISSUANCE OF SUBPOENA AD TESTIFICANDUM

[Party name], pursuant to 19 C.F.R. § 210.32(a)(1), hereby applies to the Administrative Law Judge for the issuance of the attached subpoena *ad testificandum* to:

[Name]
[Address]

The subpoena *ad testificandum* requires [Name] to appear and testify at the taking of a deposition on [date], at [location], or at such other date and location as is mutually agreed upon.

[Party name] believes that [Name] may be in possession of substantial information relevant to this Investigation.  [Insert explanation re relevance, *see* Ground Rule 3.5.1.] Furthermore, the topics identified in Attachment A of the subpoena are narrowly tailored to address only the aforementioned subjects.  [Insert explanation re reasonableness of the scope of inquiry, *see* Ground Rule 3.5.1.]

[Name] will receive the application and subpoena by overnight delivery, if not sooner, and all other parties to this Investigation will receive them on the next business day, at the latest, after the subpoena has issued.  For the reasons set forth above, [Party name] respectfully requests that its application for issuance of a subpoena *ad testificandum* be granted and the attached

-2-

subpoena be issued.

Dated: _____, 20__                              Respectfully submitted,

                                                    _____
                                                    [Counsel]
                                                    [Address]

                                                    *Counsel for* [Party Name]

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

In the Matter of

Certain . . .

Investigation No. 337-TA-___

## [SAMPLE] SUBPOENA DUCES TECUM

TO:  NAME
     ADDRESS

     TAKE NOTICE:  By authority of Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by ["Complainant(s)" / "Respondent(s)"/ etc., followed by name of company] _____,

     YOU ARE HEREBY ORDERED to produce at _____, on _____, or at such other time and place agreed upon, all of the documents and things in your possession, custody or control which are listed and described in Attachment A hereto.  Such production will be for the purpose of inspection and copying, as desired.

     If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.  The privileged document list must identify each document separately, specifying for each document at least: (i) the date the information was created or communicated; (ii) author(s)/sender(s); (iii) all recipient(s); and (iv) the general subject matter contained in the document.  The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.  If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.  The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

     If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

     Any motion to limit or quash this subpoena shall be filed within ten (10) days after the receipt hereof.  At the time of filing of any motion concerning this subpoena, two (2) double-sided courtesy copies shall be served concurrently on the Administrative Law Judge at her office.

-4-

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set her hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this ___ day of _____, 20__.


_____
MaryJoan McNamara
Administrative Law Judge
United States International Trade Commission

**APPENDIX B**

EXAMPLE OF OUTLINE FOR ALL BRIEFS

I.    INTRODUCTION
      A. Procedural History
      B. The Parties
      C. Overview of the Technology
      D. The Patents at Issue
      E. The Products at Issue

II.   JURISDICTION AND IMPORTATION

III.  PATENT "A"[29]
      A. Claim Construction
            1. Define Level of Skill of a Person of Ordinary Skill in the Art
            2. First Disputed Claim Term (Claims 1, 2, 3, . . .)
            3. Second Disputed Claim Term (Claims 1,*2*,3, . . .)
      B. Infringement
            1. Claim 1
            2. Claim 2
      C. Technical Domestic Industry
      D. Validity
            1. Anticipation Under 35 U.S.C. § 102
            2. Obviousness Under 35 U.S.C. § 103
                  a. The scope and content of the prior art
                  b. The level of ordinary skill in the art
                  c. Comparison of the claimed invention and the prior art
                  d. Secondary considerations of non-obviousness
      E. Unenforceability
      F. Other Defenses

IV. PATENT "B" ...

V. ECONOMIC DOMESTIC INDUSTRY (all patents)
      A. Significant Investment in Plant and Equipment
      B. Significant Employment of Labor or Capital
      C.  …

VI. REMEDY AND BONDING

---

[29] The parties are required to confer and follow the same order of patents for all briefing.

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY**          **Inv. No. 337-TA-1472**
**(DRAM) DEVICES, PRODUCTS CONTAINING THE SAME,**
**AND COMPONENTS THEREOF**

<u>**PUBLIC CERTIFICATE OF SERVICE**</u>

    I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served via EDIS upon the Commission Investigative Attorney, **Thomas Halkowski**, **Esq.** and the following parties as indicated, on **December 31, 2025**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

<u>**On Behalf of Complainant Netflist, Inc.:**</u>

Daniel E. Yonan                                  ☐ Via Hand Delivery
**STERNE, KESSLER, GOLDSTEIN, & FOX PLLC**        ☐ Via Express Delivery
1001 K Street NW, 10th Floor                     ☐ Via First Class Mail
Washington, DC 20005                             ☒ Other: Email Notification
Email: dyonan@sternekessler.com                  of Availability for Download

<u>**Respondents:**</u>

Samsung Electronics Co., Ltd.                    ☐ Via Hand Delivery
129 Samsung-ro, Yeongtong-gu,                    ☐ Via Express Delivery
Suwon, Gyeonggi-do, 443-742                      ☒ Via First Class Mail
Republic of Korea                                ☐ Other: Service to Be
                                                 Completed by Complainant

Samsung Electronics America, Inc.                ☐ Via Hand Delivery
6625 Excellence Way                              ☐ Via Express Delivery
 Plano, Texas 75023                              ☒ Via First Class Mail
                                                 ☐ Other: Service to Be
                                                 Completed by Complainant

Samsung Semiconductor, Inc.                      ☐ Via Hand Delivery
6625 Excellence Way                              ☐ Via Express Delivery
 Plano, Texas 75023                              ☒ Via First Class Mail
                                                 ☐ Other: Service to Be
                                                 Completed by Complainant

**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF**

                                                                    **Inv. No. 337-TA-1472**

Certificate of Service – Page 2

Google LLC                                      ☐ Via Hand Delivery
1600 Amphitheatre Parkway                       ☐ Via Express Delivery
Mountain View, California 94043                  ☒ Via First Class Mail
                                                ☐ Other: Service to Be
                                                Completed by Complainant

Super Micro Computer, Inc.                      ☐ Via Hand Delivery
980 Rock Ave.                                   ☐ Via Express Delivery
San Jose, California 95131                       ☒ Via First Class Mail
                                                ☐ Other: Service to Be
                                                Completed by Complainant

# Attachment D

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | Investigation No. 337-TA-_____ |

## COMPLAINT UNDER SECTION 337 OF THE
## TARIFF ACT OF 1930, AS AMENDED

**Complainant:**

Netlist, Inc.
111 Academy Way
Suite 100
Irvine, CA 92617

**Counsel for Complainant:**

Daniel E. Yonan
Donald R. Banowit
William H. Milliken
Richard M. Bemben
Lauren A. Watt
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1101 K Street NW, 10th Floor
Washington DC 20005
Tel.: (202) 371-2600

Jason Sheasby
Annita Zhong, PhD
Andrew Strabone
Lisa Glasser
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel.: (310) 277-1010

**Proposed Respondents:**

Samsung Electronics Co., Ltd.
129 Samsung-ro, Yeongtong-gu,
Suwon, Gyeonggi-do, 443-742
Republic of Korea

Samsung Electronics America, Inc.
6625 Excellence Way
Plano, Texas 75023

Samsung Semiconductor, Inc.
6625 Excellence Way
Plano, Texas 75023

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

Super Micro Computer, Inc.
980 Rock Ave.
San Jose, California 95131

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   COMPLAINANT ................................................................................... 4

III.  RESPONDENTS .................................................................................... 6

    A.    Samsung Respondents ................................................................. 6

    B.    Google ......................................................................................... 7

    C.    Super Micro ................................................................................ 9

IV.   THE TECHNOLOGY AND PRODUCTS AT ISSUE ............................ 9

V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTIONS OF THE INVENTIONS ....................................................................... 10

    A.    The '366 and '731 Patents: Memory Modules with Power Management/Signal Correction .................................................... 10

        1.    U.S. Patent No. 12,373,366 ............................................. 11

        2.    U.S. Patent No. 10,025,731 ............................................. 12

    B.    The '608, '523, and '035 Patents: Memory Modules with Data Buffering ......... 13

        1.    U.S. Patent No. 10,268,608 ............................................. 13

        2.    U.S. Patent No. 10,217,523 ............................................. 14

        3.    U.S. Patent No. 9,824,035 ............................................... 16

    C.    U.S. Patent No. 12,308,087: High-Bandwidth Memory .................... 17

        1.    Identification and Ownership of the '087 Patent .................... 17

        2.    Foreign Counterparts to the '087 Patent ............................. 18

        3.    Non-Technical Description of the '087 Patent ...................... 18

VI.   LICENSES .......................................................................................... 19

VII.  RESPONDENTS' INFRINGEMENT OF THE ASSERTED PATENTS .................... 19

    A.    Infringement of U.S. Patent No. 12,373,366 .................................. 19

B.      Infringement of U.S. Patent No. 10,025,731 ...................................................... 19

C.      Infringement of U.S. Patent No. 10,268,608 ...................................................... 20

D.      Infringement of U.S. Patent No. 10,217,523 ...................................................... 20

E.      Infringement of U.S. Patent No. 9,824,035 ........................................................ 20

F.      Infringement of U.S. Patent No. 12,308,087 ...................................................... 20

G.      Indirect Infringement ......................................................................................... 21

VIII.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ......................... 21

IX.     HARMONIZED TARIFF SCHEDULE NUMBERS ................................................... 25

X.      THE DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS ........... 25

A.      Technical Prong ................................................................................................. 25

B.      Economic Prong ................................................................................................. 26

        1.      Netlist's Domestic Activities ................................................................. 26

        2.      Licensee SK hynix's Domestic Activities .............................................. 28

XI.     RELATED LITIGATION ......................................................................................... 30

A.      '366 Patent ......................................................................................................... 30

B.      '731 Patent ......................................................................................................... 30

C.      '608 Patent ......................................................................................................... 31

D.      '523 Patent ......................................................................................................... 32

E.      '035 Patent ......................................................................................................... 33

F.      '087 Patent ......................................................................................................... 33

XII.    RELIEF REQUESTED ............................................................................................. 34

**EXHIBIT LIST**

| No. | Description |
|-----|-------------|
| 1 | List of Exemplary Accused Products |
| 2 | U.S. Patent No. 12,373,366 |
| 3 | Assignment of U.S. Patent No. 12,373,366 as recorded in parent application 17/328,019 |
| 4 | U.S. Patent No. 10,025,731 |
| 5 | Assignment of U.S. Patent No. 10,025,731 as recorded in parent application 12/422,853 |
| 6 | U.S. Patent No. 10,268,608 |
| 7 | Assignment of U.S. Patent No. 10,268,608 as recorded in application 15/820,076 |
| 8 | U.S. Patent No. 10,217,523 |
| 9 | Assignment of U.S. Patent No. 10,217,523 as recorded in parent application 12/422,925 |
| 10 | U.S. Patent No. 9,824,035 |
| 11 | Assignment of U.S. Patent No. 9,824,035 as recorded in application 15/426,064 |
| 12 | U.S. Patent No. 12,308,087 |
| 13 | Assignment of U.S. Patent No. 12,308,087 as recorded in parent application 15/602,099 |
| 14 | List of Foreign and Domestic Counterparts to Asserted Patents |
| 15 | Public Version of List of Licensee(s) to One or More of the Asserted Patents (Redacted in Its Entirety) |
| 15C | Confidential Version of List of Licensee(s) to One or More of the Asserted Patents |
| 16 | Public Version of Infringement Chart for U.S. Patent No. 12,373,366 (Redacted in Its Entirety) |
| 16C | Confidential Version of Public Version of Infringement Chart for U.S. Patent No. 12,373,366 |
| 17 | Public Version of Infringement Chart for U.S. Patent No. 10,025,731 (Redacted in Its Entirety) |
| 17C | Confidential Version of Infringement Chart for U.S. Patent No. 10,025,731 |
| 18 | Public Version of Infringement Chart for U.S. Patent No. 10,268,608  (Redacted in Its Entirety) |
| 18C | Confidential Version of Infringement Chart for U.S. Patent No. 10,268,608 |

| No. | Description |
|-----|-------------|
| 19 | Public Version of Infringement Chart for U.S. Patent No. 10,217,523 (Redacted in Its Entirety) |
| 19C | Confidential Version of Infringement Chart for U.S. Patent No. 10,217,523 |
| 20 | Public Version of Infringement Chart for U.S. Patent No. 9,824,035 (Redacted in Its Entirety) |
| 20C | Confidential Version of Infringement Chart for U.S. Patent No. 9,824,035 |
| 21 | Public Version of Infringement Chart for U.S. Patent No. 12,308,087 (Redacted in Its Entirety) |
| 21C | Confidential Version of Infringement Chart for U.S. Patent No. 12,308,087 |
| 22 | Samsung, DRAM Module, Memory Modules for Extensive Use (last visited Sept. 25, 2025), https://semiconductor.samsung.com/dram/module/. |
| 23 | List of DDR5 RDIMMs, SODIMMs and UDIMMs exported from Samsung website https://semiconductor.samsung.com/dram/module/. |
| 24 | Receipt of the Domestic Purchase of Accused DDR5 RDIMMs, Part Number M321R8GA0BB0-CQKDS. |
| 25 | Receipt of the Domestic Purchase of Accused DDR5 RDIMMs, Part Number M321R8GA0PB2-CCPWF. |
| 26 | Samsung, Innovative Memory Solution: Samsung's MCRDIMM Targets High-Performance Computing (June 16, 2024), https://semiconductor.samsung.com/news-events/tech-blog/innovative-memory-solution-samsungs-mcrdimm-targets-high-performance-computing/. |
| 27 | Receipt of the Domestic Purchase of Accused DDR5 MRDIMM, Part Number M327R8GA0EB0-CLVXB. |
| 28 | Samsung, HBM, Next-Level Performance (last visited Sept. 25, 2025), https://semiconductor.samsung.com/dram/hbm/. |
| 29 | List of HBM2/2E and HBM3/3E High Bandwidth Memory exported from Samsung website https://semiconductor.samsung.com/dram/hbm/. |
| 30 | Samsung, Samsung Electronics Presents Vision for AI Memory and Storage at FMS 2025, Samsung Tech Blog (Aug. 21, 2025), https://semiconductor.samsung.com/news-events/tech-blog/samsung-electronics-presents-vision-for-ai-memory-and-storage-at-fms-2025/. |
| 31 | Bruno Ferreira, Samsung Earns NVIDIA Certification for its HBM3 Memory - Stock Jumps 5% as Company Finally Catches Up to SK hynix and Micron in HBM3E Production, Tom's Hardware (Sept. 22, 2025), https://www.tomshardware.com/tech-industry/samsung-earns-nvidias-certification-for-its-hbm3-memory-stock-jumps-5-percent-as-company-finally-catches-up-to-sk-hynix-and-micron-in-hbm3e-production. |

| No. | Description |
|---|---|
| 32 | Samsung 12H HBM3e Reportedly Clears NVIDIA Tests After 18-Month Setback, HBM4 Reaches Final Phase, TrendForce (Sept. 22, 2025), https://www.trendforce.com/news/2025/09/22/news-samsung-12h-hbm3e-reportedly-clears-nvidia-tests-after-18-month-setback-hbm4-reaches-final-phase//. |
| 33 | Wayne Williams, Samsung HBM Roadmap Shows Google Could Become NVIDIA's Fiercest Competitor in AI by 2026, but I Wonder What's Happening to Microsoft, techradar (Feb. 11, 2025), https://www.techradar.com/pro/samsung-hbm-roadmap-shows-google-could-become-nvidias-fiercest-competitor-in-ai-by-2026-but-i-wonder-whats-happening-to-microsoft. |
| 34 | Olivia Melendez, Now GA: C4 VMs with Local SSD, bare metal, and largetr shapes, on Intel Xeon 6, Google Cloud (July 31, 2025), https://cloud.google.com/blog/products/compute/c4-vms-based-on-intel-6th-gen-xeon-granite-rapids-now-ga. |
| 35 | Super Micro AS -8126GS-TNMR Datasheet |
| 36 | Super Micro AS -8125GS-TNMR2 Datasheet |
| 37 | TechInsight's Analysis of AMD's MI300X Reveals Samsung HBM3, TechInsights (last visited Sept. 25, 2025), https://www.techinsights.com/blog/techinsights-analysis-amds-mi300x-reveals-samsung-hbm3. |
| 38 | AMD, AMD Instinct MI350 Series and Beyond: Accelerating the Future of AI and HPC (June 12, 2025), https://www.amd.com/en/blogs/2025/amd-instinct-mi350-series-and-beyond-accelerating-the-future-of-ai-and-hpc.html. |
| 39 | Super Micro Hyper SuperServer SYS-212HA-TN Datasheet |
| 40 | Dylan Dougherty, Supermicro Hyper SuperServer SYS-212HA-TN Review (Intel Xeon 6 6980P), StorageReview (Jan. 24, 2025), https://www.storagereview.com/review/supermicro-hyper-superserver-sys-212ha-tn-review-intel-xeon-6-6980p. |
| 41 | Anton Shilov, Micron Unveils MRDIMMs for Intel Xeon 6: Up to 256GB DDR5-8800 Modules, Toms Hardware (July 19, 2025), https://www.tomshardware.com/desktops/servers/micron-unveils-mrdimms-for-intel-xeon-6-up-to-256gb-ddr5-8800-modules. |
| 42 | Public Version of Domestic Industry Chart for U.S. Patent No. 12,373,366 (Redacted in Its Entirety) |
| 42C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 12,373,366 |
| 43 | Public Version of Domestic Industry Chart for U.S. Patent No. 10,025,731 (Redacted in Its Entirety) |
| 43C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 10,025,731 |

| No. | Description |
|---|---|
| 44 | Public Version of Domestic Industry Chart for U.S. Patent No. 10,268,608 (Redacted in Its Entirety) |
| 44C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 10,268,608 |
| 45 | Public Version of Domestic Industry Chart for U.S. Patent No. 10,217,523 (Redacted in Its Entirety) |
| 45C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 10,217,523 |
| 46 | Public Version of Domestic Industry Chart for U.S. Patent No. 9,824,035 (Redacted in Its Entirety) |
| 46C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 9,824,035 |
| 47 | Public Version of Domestic Industry Chart for U.S. Patent No. 12,308,087 (Redacted in Its Entirety) |
| 47C | Confidential Version of Domestic Industry Chart for U.S. Patent No. 12,308,087 |
| 48 | Public Version of Declaration of Gail Sasaki |
| 48C | Confidential Declaration of Gail Sasaki |
| 49 | SK hynix, HPE Discovery 2025: SK Hynix Showcases Server and Storage Tech Strategies for Leading the AI Era (Jul. 9, 2025), https://news.skhynix.com/hpe-discover-2025/. |
| 50 | SK hynix, Inc. Consolidated Financial Statements, March 31, 2025 and 2024 |
| 51 | SK hynix's US Sales Make Up Over 70% in Q1 on Rising AI Demand, The Korea Herald (May 16, 2025), https://www.koreaherald.com/article/10488669. |
| 52 | Ahn Sung-mi, SK Hynix Racks Up 70% of Sales in US on AI Chip Boom, The Korea Herald (Aug. 17, 2025), https://www.koreaherald.com/article/10555331#:~:text=Updated%20:%20Aug.,as%20US%20tech%20giant%20Nvidia. |
| 53 | SK hynix FY2025 Q2 Earnings Report, July 24, 2025 |
| 54 | SK hynix Purdue West Lafayette Project Pamphlet |
| 55 | SK hynix Fact Sheet |
| 56 | National Institute of Standards and Technology, SK hynix (Indiana) (last accessed Sept. 26, 2025), https://www.nist.gov/chips/sk-hynix-indiana-west-lafayette. |
| 57 | Project Neuron, SK hynix West Lafayette (last accessed Sept. 27, 2025), https://neuron.prf.org. |
| 58 | Comments of SK hynix on the Department of Commerce Notice of Request for Information (RFI) on "Incentives, Infrastructure, and Research and Development Needs To Support a Strong Domestic Semiconductor Industry", Submitted March 25, 2022 |

| No. | Description |
|-----|-------------|
| 59 | Public Version of License Agreement Between Netlist and SK hynix (redacted in its entirety) |
| 59C | Confidential License Agreement Between Netlist and SK hynix |

| Exhibit No. | Description |
|---|---|
| CC-1 | 0887-06REVA-0114 (Redacted in its Entirety) |
| CC-1C | 0887-06REVA-0114 |
| CC-2 | 0887-99A-1M6060 (Redatced in its Entirety) |
| CC-2C | 0887-99A-1M6060 |
| CC-3 | 0888-06REVA_0722 (Redatced in its Entirety) |
| CC-3C | 0888-06REVA_0722 |
| CC-4 | 0888-97A-1A6B61-X00 (Redatced in its Entirety) |
| CC-4C | 0888-97A-1A6B61-X00 |
| CC-5 | Samsung MRDIMM M327R8GA0EB0-CLVXB |
| CC-6 | 20250811_151215.jpg |
| CC-7 | 20250811_151233.jpg |
| CC-8 | 20250811_151613.jpg |
| CC-9 | All About Circuits Decision Feedback Equalization |
| CC-10 | All About Circuits ISSCC 2024 |
| CC-11 | AMD MWD Center Training |
| CC-12 | AMD MWD Cycle Training |
| CC-13 | Asifuzzaman 2021 |
| CC-14 | CSDN Blog, JESD79-5 |
| CC-15 | DCD SK hynix Article |
| CC-16 | DDR5 Command Truth Table |
| CC-17 | DDR Memory & Challenges in PCB Design |
| CC-18 | DDR5 Memory Channel Scaling Performance |
| CC-19 | DDR5_H5CG4(8&6)MEBDX Rev1.1 (Redacted in its Entirety) |
| CC-19C | DDR5_H5CG4(8&6)MEBDX Rev1.1 |
| CC-20 | DevX Memory Bus Definition |
| CC-21 | EDTX Trial Tr. Day 2, 4 (2023) |
| CC-22 | FAC Ex. 10, 25-cv-557 (EDTX) |
| CC-23 | FAC Ex. 7, 25-cv-557 (EDTX) |
| CC-24 | Gen 1 RCD Renesas 5RCD0148 |
| CC-25 | Gen 2 RCD Renesas RG5R256 |
| CC-26 | Gen 3 RCD Renesas RG5R364 |
| CC-27 | Gen 4 RCD Renesas RRG5004 |
| CC-28 | High Bandwidth Memory for Data-Intensive Computing |
| CC-29 | IEEE Paper1 |
| CC-30 | IEEE Paper2 |
| CC-31 | IEEE Paper3 |
| CC-32 | IEEE Paper4 |
| CC-33 | Intel Decision Feedback Equalization (DFE) |
| CC-34 | Intel Dynamic ODT in DDR4 |
| CC-35 | Intellect Partners DD5's Secret Weapon_ODT |
| CC-36 | Introduction to MRDIMM Memory Tech |
| CC-37 | IPR2022-1427, EX2029 |
| CC-38 | IPR2022-1427, EX2030 |
| CC-39 | IPR2023-00203, EX1033 |
| CC-40 | JEDEC D5 Chapter5 |
| CC-41 | JEDEC DDR5 MRDIMM Plan |

| CC-42 | JEDEC Member List |
|---|---|
| CC-43 | JEDEC PS-005B |
| CC-44 | JESD235D |
| CC-45 | JESD238A |
| CC-46 | JESD270-4 |
| CC-47 | JESD301-1 |
| CC-48 | JESD301-1A |
| CC-49 | JESD301-2 |
| CC-50 | JESD301-4A |
| CC-51 | JESD301-6 |
| CC-52 | JESD305A |
| CC-53 | JESD79-5B_v1.20 |
| CC-54 | JESD79-5C.01_v1.31 |
| CC-55 | JESD79-5C_v1.30 |
| CC-56 | JESD82-512 (Redatced in its Entirety) |
| CC-56C | JESD82-512 |
| CC-57 | JESD82-552 (Redacted in its Entirety) |
| CC-57C | JESD82-552 |
| CC-58 | Kim 2020 |
| CC-59 | Kingston Technology DDR5 Overview |
| CC-60 | Leading Memory Innovation with HBM3E |
| CC-61 | Lenovo What Is a Nibble and How Does It Work |
| CC-62 | (LP)DDR5 Memory Interface Presentation |
| CC-63 | M88DR5RCD02 Flyer |
| CC-64 | M88MR5DB01 (Gen1 DDR5 MDB) Flyer |
| CC-65 | M88MR5RCD01 (Gen1 DDR5 MRCD) Flyer |
| CC-67 | Machine Translation of CN 111726108B |
| CC-68 | MDB01 Spec. Rev. 0.7 (Redacted in its Entirety) |
| CC-68C | MDB01 Spec. Rev. 0.7 |
| CC-69 | Memory VR changes in the system by DDR5 adoption |
| CC-70 | Montage DDR5 Products |
| CC-71 | Montage HK Proof |
| CC-72 | Montage M88DR5RCD01 |
| CC-73 | Montage M88DR5RCD02 |
| CC-74 | Montage M88DR5RCD03 |
| CC-75 | Montage M88DR5RCD04 |
| CC-76 | Montage M88MR5DB01 |
| CC-77 | Montage Press Release |
| CC-78 | MP5431 |
| CC-79 | MP5431C |
| CC-80 | MPQ8894 |
| CC-81 | MPQ8895 |
| CC-82 | MPQ8895F |
| CC-83 | MPQ8896 |
| CC-84 | MRCD01 Spec. Rev 0.85 (Redatced in its Entirety) |
| CC-84C | MRCD01 Spec. Rev 0.85 |
| CC-85 | Intel 9 Series Chipset PCH Datasheet |

| CC-86 | Na 2022 |
|---|---|
| CC-87 | Netlist AI Server |
| CC-88 | Netlist DDR5 DIMM Product Brief |
| CC-89 | Netlist DDR5 DIMMs |
| CC-90 | Netlist DDR5 MRDIMM Product Brief |
| CC-91 | Netlist DDR5 Overclock RDIMM |
| CC-92 | Netlist DDR5 Overclock RDIMM Datasheet 1.0 (Redatced in its Entirety) |
| CC-92C | Netlist DDR5 Overclock RDIMM Datasheet 1.0 |
| CC-93 | Netlist DDR5 VLP RDIMM Datasheet 1.1 (Redacted in its Entirety) |
| CC-93C | Netlist DDR5 VLP RDIMM Datasheet 1.1 |
| CC-94 | Netlist Lightning DDR5 DIMM |
| CC-95 | Netlist Lightning DDR5 High Perform. Module Product Brief |
| CC-96 | NetList P8900 RDIMM Short-Form Datasheet |
| CC-97 | NetList P8910 Datasheet |
| CC-98 | Netlist Ultra Low Latency DDR5 RDIMM Product Brief |
| CC-99 | Oh 2020 |
| CC-100 | Product Images |
| CC-101 | Rambus DDR5 PMICs |
| CC-102 | Rambus DDR5 RCD |
| CC-103 | Rambus DDR5 Server PMICs Product Brief |
| CC-104 | Rambus DDR5 vs DDR4 DRAM |
| CC-105 | Rambus Expands Chipset |
| CC-106 | Renesas Blog Article |
| CC-107 | Renesas P8910 Short-Form Datasheet |
| CC-108 | Renesas P8911 Short-Form Datasheet |
| CC-109 | S2FPC01 Brochure |
| CC-110 | S2FPC01 Memory Power IC |
| CC-111 | S2FPD01 Brochure |
| CC-112 | S2FPD01 Memory Power IC |
| CC-113 | S2FPD02 Memory Power IC |
| CC-114 | S2FPD31 Memory Power IC |
| CC-115 | S2FPD73 Memory Power IC |
| CC-116 | Ryu 2023 |
| CC-117 | Samsung 4800MHz-PC5 |
| CC-118 | Samsung 5600MHz PC5-44800 |
| CC-119 | Samsung 64GB DDR5 PC5-4800 EC8 RDIMM 2Rx4 M321R8GA0BB0-CQK |
| CC-120 | Samsung 64GB DDR5 PC5-6400 EC8 RDIMM 2Rx4 M321R8GA0PB2-CCP |
| CC-121 | Samsung completes 16-stack HBM sample |
| CC-122 | Samsung DDR5 Breakthrough Performance |
| CC-123 | Samsung DDR5 RDIMM Datasheet |
| CC-124 | Samsung Develops Industry-First 36GB HBM3E 12H DRAM |
| CC-125 | Samsung DRAM Modules |
| CC-126 | Samsung ECC UDIMM_ECC SODIMM |
| CC-127 | Samsung Electronics Announces Results for Q3 2024 |
| CC-128 | Samsung Electronics Holds Memory Tech Day 2023 |
| CC-129 | Samsung HBM2E Flashbolt |
| CC-130 | Samsung HBM3 Icebolt |

| CC-131 | SAMSUNG HBM3 Icebolt KHBAC4A03D-MC1H (24GB) DRAM IC |
|---|---|
| CC-132 | SAMSUNG HBM3E 12H 36GB DRAM IC Ultimate Performance |
| CC-133 | SAMSUNG HBM3E 8H 24GB DRAM IC Ultimate Performance |
| CC-134 | Samsung Hot Chips 2021 Presentation |
| CC-135 | Samsung II CC Order |
| CC-136 | Samsung Increases Production of Industry's Fastest DRAM |
| CC-137 | Samsung KHBAC4A03C-MC1H |
| CC-138 | Samsung MCRDIMM Tech Blog |
| CC-139 | Samsung Memory Power IC |
| CC-140 | Samsung Module Handling Guide |
| CC-141 | Samsung Module RDIMM |
| CC-142 | Samsung Module SODIMM |
| CC-143 | Samsung Module UDIMM |
| CC-144 | Samsung Optimized DDR5 DIMM Solutions |
| CC-145 | Samsung Starts Producing 8-Gigabyte High Bandwidth Memory-2 |
| CC-146 | Samsung to Advance High Performance Computing Systems |
| CC-147 | Samsung's massive DDR5 512GB RAM modules |
| CC-148 | SK hynix 2014 HBM Presentation |
| CC-149 | SK hynix A New Standard |
| CC-150 | SK hynix Begins Volume Production of 12-Layer HBM3E |
| CC-151 | SK hynix Blog Post |
| CC-152 | SK hynix DDR5 |
| CC-153 | SK hynix Develops Industry's First 12-Layer HBM3 |
| CC-154 | SK hynix Develops MCR DIMM |
| CC-155 | SK hynix Develops World's Best Performing HBM3E |
| CC-156 | SK hynix HBM Products |
| CC-157 | SK hynix HBM3 Products |
| CC-158 | SK hynix Module |
| CC-159 | SK hynix MRDIMM |
| CC-160 | SK hynix Newsroom Interview |
| CC-161 | Netlist SK hynix |
| CC-162 | SK hynix RDIMM |
| CC-163 | SK hynix The Era of High Bandwidth Memory |
| CC-164 | SK hynix TSMC 2025 Technology Symposium |
| CC-165 | Sohn 2016 |
| CC-166 | The Perfect Harmony Created by Samsung HBM |
| CC-167 | TPS53830 Data Sheet |
| CC-168 | TPS53830A Data Sheet |
| CC-169 | TPS53830A Product Overview |
| CC-170 | TPS53832 Data Sheet |
| CC-171 | TPS53832 Product Overview |
| CC-172 | TPS53832A Data Sheet |
| CC-173 | TPS53832A Product Overview |
| CC-174 | TPS53840 Data Sheet |
| CC-175 | TPS53840 Product Overview |
| CC-176 | TrendForce News MRDIMM-MCRDIMM |
| CC-177 | U.S. Patent No. 11,531,584 |

| CC-178 | U.S. Patent No. 11,568,950 |
|--------|----------------------------|
| CC-179 | Samsung 32GB DDR5 PC5-4800 EC8 RDIMM 1Rx4 M321R4GA0BB0-CQK |
| CC-180 | TPS53830 Product Overview |
| CC-181 | Montage M88SPD5118 (DDR5 SPD Hub) |
| CC-182 | Renesas SPD5118 – SPD HUB for DDR5 |

**APPENDIX LIST**

| No. | Description |
|-----|-------------|
| A | Prosecution History of U.S. Patent No. 12,373,366 |
| B | Prosecution History of U.S. Patent No. 10,025,731 |
| C | Prosecution History of U.S. Patent No. 10,268,608 |
| D | Prosecution History of U.S. Patent No. 10,217,523 |
| E | Prosecution History of U.S. Patent No. 9,824,035 |
| F | Prosecution History of U.S. Patent No. 12,308,087 |

## I.    INTRODUCTION

1.    Complainant Netlist, Inc. ("Complainant" or "Netlist") is an Irvine, California-based provider of memory solutions. Netlist is not a large company, but its technological contributions in the memory space have been massive. Its cutting-edge innovations form the basis of much of the memory technology found in servers and personal computers today. If you have ever accessed data from a cloud server, chances are you have benefitted from Netlist's technology.

2.    For more than two decades, Netlist has developed and sold high-performance memory products to some of the world's largest computing companies. And, for almost that long, Netlist has had to contend with rampant infringement of its intellectual property.

3.    Samsung (defined below) is a prime example. Samsung previously held a license to Netlist's patent portfolio. But, in 2020, Samsung breached the license agreement (as two separate California juries have confirmed) and has been using Netlist's patented technology without permission ever since. These are not mere allegations; not one but *two* Texas juries have adjudged Samsung a willful infringer and awarded Netlist nine-figure damages awards. Yet Samsung continues to ship billions of dollars' worth of infringing products into the United States. Meanwhile, Google (defined below) (with whom Netlist has been embroiled in infringement litigation for almost twenty years now) and Super Micro (defined below)—also apparently unconcerned by federal-court infringement judgments—continue to import Samsung's infringing memory products and implement them in their own products and services. Respondents apparently believe that it is easier to infringe than to pay Netlist a fair price for its technology.

4.    Netlist thus respectfully files this Complaint under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, to stop the unlawful importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of

certain dynamic random access memory (DRAM) devices, products containing the same, and components thereof that infringe valid and enforceable patents owned by Netlist.

5.    The proposed Respondents are Samsung Electronics Co., Ltd. ("SEC"); Samsung Electronics America, Inc. ("SEA"); Samsung Semiconductor, Inc. ("SSI") (collectively, "Samsung" or the "Proposed Samsung Respondents"); Google LLC ("Google"); and Super Micro Computer, Inc. ("Super Micro") (all collectively, "Respondents").

6.    This Complaint is based on Respondents' unlawful acts regarding certain DRAM devices, products containing the same, and components thereof. The Accused Products include the following:

- Samsung's DDR5 generation Dual In-line Memory Modules (DIMMs), including:

    o Registered Dual In-line Memory Module (RDIMM),

    o Multi-Ranked Buffered Dual In-Line Memory Module or Multiplexed Rank Dual In-line Memory Module (MCRDIMM/MRDIMM),

    o Small Outline Dual In-Line Memory Module (SODIMM), and

    o Un-buffered Dual In-Line Memory Module (UDIMM);

- Samsung's HBM2/2E, HBM3/3E, and HBM4/4E high bandwidth memory ("HBM") packages;

- products containing the same DIMM and HBM, including servers and storage systems, such as:

    o Google's fifth, sixth and seventh generation Tensor Processing Units (TPUs) utilizing Samsung HBMs,

    o Google's Google Cloud Platform (GCP) virtual machines and cloud storage services utilizing Samsung DIMMs and HBMs,

    o Super Micro's servers and computing systems utilizing Samsung's HBMs, such as Super Micro's H13 and H14 GPU-optimized servers utilizing with AMD's Instinct accelerators and Samsung's HBM3/3E high bandwidth memory, and

     o  Super Micro's servers and computing systems utilizing Samsung's DDR5 DIMMs, such as Super Micro's X14 servers utilizing Intel's Xeon® 6 6900P series processors and Samsung/s DDR5 RDIMMs and MRDIMMs; and

- components thereof, including power management integrated circuits (PMIC), registered clock driver (RCD) chips, DRAM chips, DRAM dies, interface dies, data buffers, temperature sensors, printed circuit boards, and serial presence detect (SPD) circuits.

7.    The Accused Products infringe one or more claims of the following Netlist patents (the "Asserted Patents"):

| Asserted Patent | Claims Asserted Against Respondents (independent claims in bold) |
|---|---|
| **Memory Modules with Power Management/Signal Correction** ||
| U.S. Patent No. 12,373,366 | **1**, 2, 11, 12, 14, 15, 16 |
| U.S. Patent No. 10,025,731 | **1**, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 |
| **Memory Modules with Data Buffering** ||
| U.S. Patent No. 10,268,608 | **1**, 2, 3, 4, 5 |
| U.S. Patent No. 10,217,523 | **1**, 15, 17, 18 |
| U.S. Patent No. 9,824,035 | 2, 6 |
| **High-Bandwidth Memory** ||
| U.S. Patent No. 12,308,087 | **1**, 2, 5, 7, 8, **13**, 17, 18, **20**, 22, **23** |

8.    To stop Respondents' unlawful acts, Netlist requests a limited exclusion order under 19 U.S.C. § 1337(d)(1) and permanent cease-and-desist orders under 19 U.S.C. § 1337(f).

9.    Netlist further seeks the imposition of a bond upon importation of infringing products during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(j).

10.    As set forth in Section X of this Complaint, a domestic industry pursuant to 19 U.S.C. § 1337(a)(2)–(3) exists based on the investments made by Netlist and its licensee SK hynix Inc. ("SK hynix") domestically in relation to products that are protected by the Asserted Patents.

## II.    COMPLAINANT

11.    Netlist is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 111 Academy Way, Suite 100, Irvine, CA 92617.

12.    Since its founding in 2000, Netlist has been a leading provider of high-performance modular memory subsystems to the world's premier OEMs in the server, high-performance computing, and communications markets. Netlist's technology enables users to derive useful information from vast amounts of data in a shorter period of time. These capabilities will become increasingly valuable as the volume of data continues to dramatically increase.

13.    Netlist's technology integrates intelligence features, including innovations in load reduction and rank multiplexing, with memory raw material—DRAM and NAND—to make memory perform at higher speeds with higher capacity and lower power.

14.    Netlist has a long history of being the first to market with disruptive new products. For example, Netlist invented and introduced the first load-reduced dual in-line memory module ("LRDIMM"), HyperCloud®, which utilized Netlist's patented distributed buffer architecture and patented signal correction technology. Netlist was also the first to include NAND flash in a Dual Inline Memory Module with its NVvault® NVDIMM. As part of the development of the NVDIMM products, Netlist invented on-module power management technology that utilizes a power management integrated circuit (PMIC).

15.    Netlist's innovations in load reduction and power management were far ahead of their time. Years after Netlist invented the technology, the industry adopted Netlist's distributed buffer architecture for DDR4 generation LRDIMMs, the predominant high-end server memory module for the past several years. That same architecture is also used in DDR5 generation MRDIMMs. Netlist's power management technology, meanwhile, is now used in *all* DDR5 DIMMs.

16.    The inventions claimed in the Asserted Patents are therefore embodied in the accused DDR5 DIMMs of Respondents (discussed in more detail below), as well as DDR5 DIMMs manufactured and sold by Netlist and its licensee SK hynix (domestic industry products, also addressed in more detail below).

17.    Netlist has also developed and patented innovative solutions used in "high bandwidth memory," or HBM. HBM, in contrast to conventional memory modules, includes memory device packages comprising stacks of multiple memory dies that transmit data through the stacks using interconnects (or "vias"). Netlist invented memory packages that allow for high bandwidth while mitigating load issues, thus maintaining optimal performance. Netlist's HBM technology is particularly useful for servers that handle large amounts of data. The patented technology is embodied in the HBM memory offered by Netlist's licensee SK hynix, as well as HBM memory sold and used by Respondents. These products are addressed in more detail below.

18.    Netlist has secured multiple jury verdicts confirming the commercial success of its inventions, including two against Samsung. In 2023, a jury in the Eastern District of Texas found that Samsung willfully infringed five Netlist patents and that the patents were not invalid and awarded Netlist $303.15 million in damages. *See Netlist, Inc. v. Samsung Elecs. Co. et al.*, No. 2:21-cv-463-JRG, Dkt. No. 479 at 7 (E.D. Tex. Apr. 21, 2023). In 2024, a jury found that Samsung willfully infringed three Netlist patents (including the '608 patent asserted here) and that the patents were not invalid and awarded Netlist $118 million in damages. *See Netlist, Inc. v. Samsung Elecs. Co. et al.*, No. 2:22-cv-293-JRG, Dkt. No. 847 at 7 (E.D. Tex. Nov. 22, 2024). Yet Samsung has continued its infringing conduct.

19.    Additionally, the Patent Trial and Appeal Board has confirmed the validity of the asserted claims of three of the Asserted Patents. *See Micron Tech., Inc. et al. v. Netlist, Inc.*,

IPR2022-00236, Paper 34 at 43–46 (P.T.A.B. June 20, 2023) (confirming the validity of claims 2 and 6 of the '035 patent); *Samsung Elecs. Co. v. Netlist, Inc.*, IPR2022-00063, Paper 53 at 58 (P.T.A.B. May 3, 2023) (confirming the validity of all claims of the '523 patent), *aff'd*, No. 23-2133, Dkt. No. 44 (Fed. Cir. Mar. 5, 2025); *Samsung Elecs. Co. v. Netlist, Inc.*, IPR2023-00847, Paper 42 at 73 (P.T.A.B. Dec. 10, 2024) (confirming the validity of claims 1–5 of the '608 patent), *appeal docketed*, No. 25-1378 (Fed. Cir. Jan. 21, 2025).

20.     The claim charts submitted with this Complaint rely in part on functionality contained within certain standards issued by the JEDEC Solid State Technology Association. However, Netlist is not relying on essentiality to the standard to establish infringement by the proposed Respondents. In particular, the JEDEC standard does not require all limitations of any one of the Asserted Claims. Accordingly, none of the Asserted Claims is standard-essential. Rather, Netlist anticipates that its infringement positions will be further confirmed by evidence obtained though discovery from Respondents that is otherwise not publicly available.

## III.    RESPONDENTS

### A.    Samsung Respondents

21.     On information and belief, SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon, Gyeonggi-do, 443-742, Republic of Korea. On information and belief, SEC is the worldwide parent corporation for SEA and SSI.

22.     On information and belief, SEA is a corporation organized and existing under the laws of the State of New York. Defendant SEA maintains facilities at 6625 Excellence Way, Plano, Texas 75023. SEA is a wholly owned subsidiary of SEC.

23.     On information and belief, SSI is a corporation organized and existing under the laws of the State of California. On information and belief, Defendant SSI maintains facilities at

6625 Excellence Way, Plano, Texas 75023. On information and belief, SSI is a wholly owned subsidiary of SEA.

24.    On information and belief, the Samsung Respondents import into the United States, sell for importation into the United States, and/or sell within the United States after importation certain DRAM devices, products containing the same, and components thereof (discussed in more detail below) that infringe one or more of the Asserted Patents. The Samsung Respondents are not licensed to any of the Asserted Patents.

25.    Samsung and Netlist were initially partners under a 2015 Joint Development and License Agreement ("JDLA"). On information and belief, Samsung used Netlist's technologies to develop products both in mature markets such as DDR4 memory modules and markets for current and emerging generations of DRAM technologies, including DDR5 and HBM. Under the JDLA, Samsung was obligated to supply Netlist certain memory products at competitive prices. Samsung, however, did not honor its promises and repeatedly failed to fulfill Netlist's orders. So Netlist terminated the JDLA on July 15, 2020. A federal district court in the Central District of California has confirmed that Samsung breached the JDLA and therefore that Netlist's termination was valid. *Netlist, Inc. v. Samsung Elecs. Co.*, No. 8:20-cv-993, Dkt. No. 766 (C.D. Cal. Mar. 24, 2025).[1] That decision is on appeal to the Ninth Circuit (case number 25-5531).

26.    The litigation history between Netlist and Samsung as it relates to the Asserted Patents is described further in Section XI.

### B.    Google

27.    On information and belief, Google LLC is a wholly-owned subsidiary of Alphabet, Inc., and a Delaware limited liability company with a principal place of business at 1600

---

[1] This ruling is res judicata unless and until overturned on appeal.

Amphitheatre Parkway, Mountain View, California 94043.

28.     On information and belief, Google imports the Accused Products through a variety of channels and uses them in various Google products and services, including in its data storage facilities and servers (discussed in more detail below). Google is not licensed to any of the Asserted Patents.

29.     Google was previously a customer of Netlist. Between 2003 and 2006, Netlist contracted with Google to build memory modules according to Netlist's proprietary designs. Between 2006 and 2007, Google and Netlist engaged in a series of meetings in which Google was presented with Netlist's rank multiplication (DxD) and load reduction DIMM (LRD) designs. In 2007, Google asked Netlist to assemble custom memory modules at Netlist's manufacturing facility. In 2008, rather than entering a license agreement with Netlist, Google chose to take the designs Netlist presented and source them from different contractors. At this time, Netlist informed Google that it had reason to believe that Google was using Netlist's technology in its servers. Google responded by filing a declaratory judgment lawsuit. *Google Inc. v. Netlist, Inc.*, No. 4:08-cv-04144-SBA (N.D. Cal. Aug. 29, 2008).

30.     Netlist subsequently sued Google for infringement of U.S. Patent No. 7,619,912. Case No. 3:09-cv-5718 (N.D. Cal.). Specifically, Netlist accused Google of selling, offering to sell, making, and/or using computer memory modules that incorporate Netlist's patented technology, including certain DDR4 DIMMS that Google purchased from Samsung for use in Google's server computers. The case is currently stayed pending resolution of *Netlist, Inc. v. Samsung Elecs. Co.*, *Ltd. et al.*, No. 2:22-cv-293-JRG, pending in the Eastern District of Texas.

31.     Netlist also brought claims for infringement of the '523 patent against Google in the District of Delaware as counterclaims in a declaratory judgment action originally brought by

Samsung. *Samsung Electronics Co., Ltd. et al. v. Netlist, Inc.*, No. 1:21-cv-01453-JLH (D. Del. Oct. 15, 2021). That case is currently stayed pending resolution of the action in the Central District of California involving the JDLA between Samsung and Netlist (which, as noted above, is currently on appeal to the Ninth Circuit).

32.    The litigation history between Netlist and Google as it relates to the Asserted Patents is described further in Section XI.

### C.    Super Micro

33.    On information and belief, Super Micro Computer, Inc. is a corporation organized and existing under the laws of Delaware that maintains an established place of business at 980 Rock Ave., San Jose, CA 95131.

34.    On information and belief, Super Micro imports into the United States, sells for importation into the United States, and/or sells within the United States after importation the Accused Products through a variety of channels and in various Super Micro products, including its servers and storage systems (discussed in more detail below). Super Micro is not licensed to any of the Asserted Patents.

## IV.    THE TECHNOLOGY AND PRODUCTS AT ISSUE

35.    The technology at issue generally relates to memory used in computer systems. Many commercial computing products utilize memory modules. A memory module is a printed circuit board that contains, among other components, multiple individual memory devices (such as DRAM packages or portions thereof) designed to interact with a host's memory controller external to the memory module. Modern memory modules often adopt the form of DIMMs. The memory devices on the memory module are typically arranged in "ranks," which are accessible by a processor or memory controller of the host system. A memory module is typically installed into a memory slot on a computer motherboard.

36.    Memory modules are designed for, among other things, use in servers such as those supporting cloud-based computing and other data-intensive applications, as well as in consumer applications such as PCs and laptops. Memory modules are typically characterized by, among other things, the generation of DRAM on the module (e.g., DDR5, DDR4, DDR3) and the type of module (e.g., UDIMM, SODIMM, RDIMM, LRDIMM, MRDIMM).

37.    High bandwidth memory device packages are computer memory interfaces that vertically stack DRAM dies to achieve higher speeds and reduce power consumption. The DRAM dies in the memory stack are attached to one another and to the base die (also called a control die) via die interconnects, often in the form of through-silicon-vias ("TSVs").

38.    Pursuant to Commission Rules §§ 210.10(b)(1) and 210.12(a)(12), the categories of Accused Products are dynamic random access memory (DRAM) devices used in computing systems. DRAM is used as the primary working memory in computers and other devices, such as servers, desktops, and mobile phones, to temporarily store data and instructions that the processor needs for quick access during operation. Specifically these devices are DDR5 generation DIMMs and high bandwidth memory (HBM).

## V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTIONS OF THE INVENTIONS[2]

### A.    The '366 and '731 Patents: Memory Modules with Power Management/Signal Correction

39.    The '366 and '731 Patents relate to power-management and signal-correction features, respectively, used in certain DDR5 generation DIMMs.

---

[2]    All non-technical descriptions of the patents herein are presented to give a general background of those patents. These statements are not intended to be used nor should they be used for purposes of patent claim construction. Netlist provides these statements subject to and without waiver of its right to argue that no claim construction is necessary, or that claim terms should be construed in a particular way under claim interpretation jurisprudence and the relevant evidence.

1.      **U.S. Patent No. 12,373,366**

a.      **Identification and Ownership of the '366 Patent**

40.     The '366 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on July 29, 2025.

41.     The '366 Patent issued from Application No. 17/582,797, filed January 24, 2022. The '366 Patent is entitled to a priority date of June 1, 2007.

42.     The '366 Patent is set to expire on June 2, 2028.

43.     The '366 Patent is titled "Memory With On-Module Power Management" and names Chi-She Chen, Jeffrey C. Solomon, Scott H. Milton, and Jayesh Bhakta as inventors.

44.     A true and correct copy of the '366 Patent is attached as Exhibit 2.

45.     A true and correct copy of the patent assignment record for the '366 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 3.

46.     A true and correct copy of the prosecution history of the '366 Patent is included as Appendix A.

b.      **Foreign Counterparts to the '366 Patent**

47.     Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '366 Patent, with an indication of the prosecution status of each such patent application.

48.     No other foreign or domestic patents or applications corresponding to the '366 Patent have been filed, abandoned, withdrawn, or rejected.

c.      **Non-Technical Description of the '366 Patent**

49.     The '366 Patent discloses and claims memory modules with on-module power management that enables the high-speed data communications that are achieved in modern DDR5

memory modules. The claimed modules contain an arrangement of data lines and associated circuitry that allow for significant improvements in bandwidth and performance. To accommodate increased data rates, the claimed modules contain circuitry that allows for power management on the memory modules themselves (as opposed to on the motherboard on which the memory modules are mounted). This on-module power management results in more precise voltage control and increased energy efficiency, which is critical in modern computing systems.

### 2.    U.S. Patent No. 10,025,731

#### a.    Identification and Ownership of the '731 Patent

50.    The '731 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on July 17, 2018.

51.    The '731 Patent issued from Application No. 14/715,491, filed May 18, 2015. The '731 Patent is entitled to a priority date of April 14, 2008.

52.    The '731 Patent is set to expire on June 30, 2029.

53.    The '731 Patent is titled "Memory Module and Circuit Providing Load Isolation and Noise Reduction" and names Hyun Lee, Jayesh R. Bhakta, Jeffrey C. Solomon, Mario Jesus Martinez, and Chi-She Chen as inventors.

54.    A true and correct copy of the '731 Patent is attached as Exhibit 4.

55.    A true and correct copy of the patent assignment record for the '731 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 5.

56.    A true and correct copy of the prosecution history of the '731 Patent is included as Appendix B.

#### b.    Foreign Counterparts to the '731 Patent

57.    Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied,

12

abandoned, or withdrawn, if any, corresponding to the '731 Patent, with an indication of the prosecution status of each such patent application.

58.    No other foreign or domestic patents or applications corresponding to the '731 Patent have been filed, abandoned, withdrawn, or rejected.

### c.    Non-Technical Description of the '731 Patent

59.    The '731 Patent discloses and claims a memory module that includes signal correction circuits, each including at least one programmable impedance mismatch circuit, to correct signals transmitted to and from the module's memory devices. The claimed correction circuitry can reduce signal noise due to impedance mismatch in the system, enabling the claimed memory modules to provide stable, reliable signals at high data rates.

### B.    The '608, '523, and '035 Patents: Memory Modules with Data Buffering

60.    The '608, '523, and '035 Patents relate to data buffering arrangements that improve memory module performance and reliability and are used in DDR5 generation MRDIMMs.

### 1.    U.S. Patent No. 10,268,608

### a.    Identification and Ownership of the '608 Patent

61.    The '608 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on April 23, 2019.

62.    The '608 Patent issued from Application No. 15/820,076, filed November 21, 2017. The '608 Patent is entitled to a priority date of July 27, 2012.

63.    The '608 Patent is set to expire on July 27, 2033.

64.    The '608 Patent is titled "Memory Module with Timing-Controlled Data Paths in Distributed Data Buffers" and names Hyun Lee and Jayesh R. Bhakta as inventors.

65.    A true and correct copy of the '608 Patent is attached as Exhibit 6.

66.    A true and correct copy of the patent assignment record for the '608 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 7.

67.    A true and correct copy of the prosecution history of the '608 Patent is included as Appendix C.

### b.    Foreign Counterparts to the '608 Patent

68.    Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '608 Patent, with an indication of the prosecution status of each such patent application.

69.    No other foreign or domestic patents or applications corresponding to the '608 Patent have been filed, abandoned, withdrawn, or rejected.

### c.    Non-Technical Description of the '608 Patent

70.    The '608 Patent discloses and claims memory modules that include "isolation devices" (also called "data buffers" or "buffer circuits"). These buffer circuits electrically isolate the on-module memory devices (e.g., DRAM) from the memory controller, which enables additional memory devices to be included on the memory module (higher capacity) without sacrificing signal integrity or data speed. The innovative arrangement of components and on-board intelligence in the claimed memory modules allows the modules to manage the timing of read and write operations in newer-generation systems with higher memory operating speeds and greater memory density.

### 2.    U.S. Patent No. 10,217,523

### a.    Identification and Ownership of the '523 Patent

71.    The '523 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on February 26, 2019.

72.    The '523 Patent issued from Application No. 14/229,844, filed March 29, 20140. The '523 Patent is entitled to a priority date of April 14, 2008.

73.    The '523 Patent is set to expire on October 9, 2029.

74.    The '523 Patent is titled "Multi-Mode Memory Module with Data Handlers" and names Hyun Lee, Soonju Choi, and Jayesh R. Bhakta as inventors.

75.    A true and correct copy of the '523 Patent is attached as Exhibit 8.

76.    A true and correct copy of the patent assignment record for the '523 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 9.

77.    A true and correct copy of the prosecution history of the '523 Patent is included as Appendix D.

### b.    Foreign Counterparts to the '523 Patent

78.    Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '523 Patent, with an indication of the prosecution status of each such patent application.

79.    No other foreign or domestic patents or applications corresponding to the '523 Patent have been filed, abandoned, withdrawn, or rejected.

### c.    Non-Technical Description of the '523 Patent

80.    The '523 Patent discloses and claims a novel architecture for memory modules that support two modes of operation (e.g., a testing mode and a normal operation mode). The claimed modules utilize a data module (or buffer) and a separate control module. When the module operates in testing mode, the data module isolates the memory devices and the memory controller and provides data patterns, and the control module provides address and control signals. Separating

the control and data handling makes the system more modular (and thus more flexible) than prior-art testing approaches and also allows for placing the components of the data module close to the memory devices that read and write the data, which enhances the reliability of the testing functionality.

### 3.    U.S. Patent No. 9,824,035

#### a.    Identification and Ownership of the '035 Patent

81.    The '035 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on November 21, 2017.

82.    The '035 Patent issued from Application No. 15/426,064, filed February 7, 2017. The '035 Patent is entitled to a priority date of July 27, 2012.

83.    The '035 Patent is set to expire on July 27, 2033.

84.    The '035 Patent is titled "Multi-mode memory module with timing-controlled data paths in distributed data buffers" and names Hyun Lee and Jayesh R. Bhakta as inventors.

85.    A true and correct copy of the '035 Patent is attached as Exhibit 10.

86.    A true and correct copy of the patent assignment record for the '035 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 11.

87.    A true and correct copy of the prosecution history of the '035 Patent is included as Appendix E.

#### b.    Foreign Counterparts to the '035 Patent

88.    Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '035 Patent, with an indication of the prosecution status of each such patent application.

89.     No other foreign or domestic patents or applications corresponding to the '035 Patent have been filed, abandoned, withdrawn, or rejected.

### c.     Non-Technical Description of the '035 Patent

90.     The '035 Patent discloses and claims memory modules that include "isolation devices" (also called "data buffers" or "buffer circuits"). The buffer circuits electrically isolate the on-module memory devices (e.g., DRAM) from the memory module's data input/output pins, which enables additional memory devices to be included on the memory module (higher capacity) without sacrificing signal integrity or speed. The innovative arrangement of components and on-board intelligence in the claimed memory modules allows the modules to manage the timing of read and write operations in newer-generation systems with higher memory operating speeds and greater memory density.

### C.     U.S. Patent No. 12,308,087: High-Bandwidth Memory

### 1.     Identification and Ownership of the '087 Patent

91.     The '087 Patent was duly and lawfully issued by the U.S. Patent and Trademark Office on May 20, 2025.

92.     The '087 Patent issued from Application No. 17/694,649, filed March 14, 2022. The '087 Patent is entitled to a priority date of November 3, 2010.

93.     The '087 Patent is set to expire on November 3, 2031.

94.     The '087 Patent is titled "Memory package having stacked array dies and reduced driver load" and names Hyun Lee and as the inventor.

95.     A true and correct copy of the '087 Patent is attached as Exhibit 12.

96.     A true and correct copy of the patent assignment record for the '087 Patent, from the named inventors ultimately to Netlist, is attached as Exhibit 13.

97.     A true and correct copy of the prosecution history of the '087 Patent is included as Appendix F.

### 2.     Foreign Counterparts to the '087 Patent

98.     Exhibit 14 lists each foreign patent, each foreign or domestic patent application (not already issued as a patent), and each foreign or domestic patent application that has been denied, abandoned, or withdrawn, if any, corresponding to the '087 Patent, with an indication of the prosecution status of each such patent application.

99.     No other foreign or domestic patents or applications corresponding to the '087 Patent have been filed, abandoned, withdrawn, or rejected.

### 3.     Non-Technical Description of the '087 Patent

100.    The '087 patent discloses and claims an innovative arrangement of stacked dies and interconnects used in Netlist's HBM technology. Conventional DRAM packages often consist of a single silicon chip (or "die") housed in a plastic or ceramic "package." To increase the capacity of individual memory devices, memory makers began "stacking" multiple dies in a single DRAM package where each DRAM interfaces with an external device (such as a host) through external connections such as long, dangling wires along the peripheral of the DRAM circuit. But the high electrical load resulting from such external connections negatively affected performance. Internal connections such as TSVs helped reduce load, but that still did not allow for high memory capacity at high speed. To overcome that problem, Netlist devised an innovative arrangement of stacked dies and interconnects that allows the memory to operate at high bandwidth while mitigating load issues and thus maintaining optimal performance. Netlist's HBM technology is particularly useful for servers that handle large amounts of data.

VI.    **LICENSES**

101.    An identification of licensee(s) to one or more of the Asserted Patents is provided in confidential Exhibit 15C.

VII.    **RESPONDENTS' INFRINGEMENT OF THE ASSERTED PATENTS**

102.    As discussed above, the Accused Products are certain DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents. An exemplary list of the Accused Products that practice at least one claim from one or more of the Asserted Patents is provided as Exhibit 1.[3] Representative claim charts, attached as Exhibits 16–21, demonstrate that the Accused Products practice at least one claim of each of the Asserted Patents.

### A.    Infringement of U.S. Patent No. 12,373,366

103.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1, 2, 11, 12, 14, 15, and 16 of the '366 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

104.    Exemplary claim charts comparing independent claim 1 of the '366 Patent to representative Accused Products are attached as Exhibit 16.

### B.    Infringement of U.S. Patent No. 10,025,731

105.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1–3, 6–18 of the '731 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

---

[3] Samples of the Accused Products will be produced during the course of the investigation.

106.    Exemplary claim charts comparing independent claim 1 of the '731 Patent to representative Accused Products are attached as Exhibit 17C.

**C.    Infringement of U.S. Patent No. 10,268,608**

107.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1–5 of the '608 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

108.    Exemplary claim charts comparing independent claim 1 of the '608 Patent to representative Accused Products are attached as Exhibit 18C.

**D.    Infringement of U.S. Patent No. 10,217,523**

109.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1, 15, 17, and 18 of the '523 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

110.    Exemplary claim charts comparing independent claim 1 of the '523 Patent to representative Accused Products are attached as Exhibit 19C.

**E.    Infringement of U.S. Patent No. 9,824,035**

111.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 2 and 6 of the '035 Patent by importing the Accused Products, selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

112.    Exemplary claim charts comparing dependent claim 2 of the '035 Patent to representative Accused Products are attached as Exhibit 20C.

**F.    Infringement of U.S. Patent No. 12,308,087**

113.    Respondents infringe, either literally or under the doctrine of equivalents, at least claims 1, 2, 5, 7, 8, 13, 17, 18, 20, 22, and 23 of the '087 Patent by importing the Accused Products,

selling the Accused Products for importation, and/or selling the Accused Products within the United States after importation.

114.    Exemplary claim charts comparing independent claim 1 of the '087 Patent to representative Accused Products are attached as Exhibit 21.

### G.    Indirect Infringement

115.    On information and belief, Respondents also indirectly infringe the Asserted Patents by inducing and contributing to infringement. On information and belief, Respondents have actual knowledge of the Asserted Patents, including through at least the filing of this Complaint and actions in the U.S. District Court for the Eastern District of Texas and the U.S. District Court for the District of Delaware that involve the Asserted Patents.

116.    On information and belief, Respondents knowingly and intentionally induce users of one or more of the Accused Products to directly infringe one or more claims of the Asserted Patents by encouraging, instructing, and aiding one or more persons in the United States to make, use (including testing), sell, or offer to sell one or more of the Accused Products, during or after such article's importation into the United States, in a manner that directly infringes the Asserted Patents.

117.    On information and belief, Respondents contribute to the infringement of the Asserted Patents by offering to sell, selling, or importing a patented component, material, or apparatus used to practice a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an act of infringement and not a staple article or commodity of commerce suitable for substantial non-infringing uses.

## VIII.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

118.    On information and belief, the Accused Products are manufactured overseas and then sold for importation into the United States by Respondents or on their behalf, imported into

the United States by Respondents or on their behalf, and/or sold after importation by Respondents or on their behalf.

119.    The Accused Samsung Products include the following:

- Samsung's DDR5 generation DIMMs, including:

    o   Registered Dual In-line Memory Modules (RDIMMs),

    o   Multi-Ranked Buffered Dual In-Line Memory Module or Multiplexed Rank Dual In-line Memory Module (MCRDIMM/MRDIMM),

    o   Small Outline Dual In-Line Memory Module (SODIMM), and

    o   Un-buffered Dual In-Line Memory Module (UDIMM); and

- Samsung's HBM2/2E, HBM3/3E, and HBM4/4E high bandwidth memory packages.

120.    On information and belief, the Samsung Respondents sell the accused DIMMs through a variety of channels, including their own website. *See, e.g.*, Exhibit 22. On information and belief, none of the Samsung DIMMs are manufactured in the United States.

121.    A list of currently available DDR5 RDIMMs, SODIMMs and UDIMMs, exported from the above-referenced Samsung website is attached hereto as Exhibit 23.

122.    Exhibits 24 and 25 include receipts for the domestic purchase of accused DDR5 RDIMMs, part numbers M321R8GA0BB0-CQKDS and M321R8GA0PB2-CCPWF, respectively. The purchased DDR5 RDIMMs are labeled as being made in the Philippines and Korea, respectively. *Id.* The order and shipping paperwork indicate that the products were shipped to an address within the United States, demonstrating that the Samsung Respondents import the product, sell it for importation, and/or sell it within the United States after importation. *Id.*

123.    On information and belief, Samsung introduced its Multi-Ranked Buffered Dual In-Line Memory Module (MCRDIMM), a DDR5 MRDIMM product for high-performance computing applications, in June 2024.  *See* Exhibit 26.

124.    Exhibit 27 includes a receipt for the domestic purchase of an accused DDR5 MRDIMM, part number M327R8GA0EB0-CLVXB. The purchased DDR5 MRDIMM is labeled as being made in Korea. *Id.* The order and shipping paperwork indicate that the product was shipped to an address within the United States, demonstrating that the Samsung Respondents import the product, sell it for importation, and/or sell it within the United States after importation. *Id.*

125.    On information and belief, the Samsung Respondents sell the accused HBMs in bulk directly to manufacturers of high-performance computing components like GPUs and servers, through a variety of channels, including their own website. *See, e.g.*, Exhibit 28. On information and belief, none of the Samsung HBMs are manufactured in the United States.

126.    A list of currently available HBM2/2E and HBM3/3E high bandwidth memory exported from the above-referenced Samsung website is attached as Exhibit 29.

127.    On information and belief, Samsung displayed its HBM4/4E product at the Future Memory & Storage (FMS) event held August 5–7, 2025 at the Santa Clara Convention Center in San Jose, California. *See* Exhibit 30.

128.    On information and belief, Samsung HBM3/3E and HBM4/4E are currently undergoing qualification tests with Nvidia in Santa Clara, CA, and it was reported earlier this month that Samsung's 12-layer HBM3E passed NVIDIA qualification tests. *See, e.g.*, Exhibit 31; Exhibit 32.

129.    Google imports the Accused Products directly or indirectly from Samsung and uses them in various Google products and services, including in its data storage facilities and servers. For example, on information and belief, Google's fifth, sixth and seventh generation Tensor Processing Units (TPUs) utilize Samsung's accused HBM2, HBM2E, HBM3E and HBM4 high

bandwidth memory packages. *See* Exhibit 33 ("Google is expected to become the second-largest buyer of HBM" from Samsung, "driven by its investment in Tensor Processing Units (TPUs)"). In addition, on information and belief, the Google Cloud Platform (GCP) virtual machine services utilize Intel Xeon 6 processors in its compute-optimized C4 virtual machine series, which use Samsung's accused DDR5 RDIMMs and MRDIMMs. *See* Exhibit 34. On information and belief, Google purchases these Accused Products from Samsung, imports them, and uses them in these Google products and services.

130.    Super Micro imports the Accused Products directly or indirectly from Samsung and incorporates them in various Super Micro products, including its servers and storage systems. For example, on information and belief, Super Micro's H13 and H14 GPU-optimized servers can be configured with AMD's Instinct accelerators (MI300X/MI325X/MI350X), which include Samsung's HBM3 and HBM3E high bandwidth memory. *See* Exhibit 35 (AS -8126GS-TNMR Datasheet); Exhibit 36 (AS -8125GS-TNMR2 Datasheet); Exhibit 37 ("Samsung's HBM3 memory" is "integrated into AMD's MI300X AI accelerator"); Exhibit 38 ("AMD Instinct MI350X and MI355X GPUs" use "288GB HBM3E" from "Samsung Electronics"). In addition, on information and belief, Super Micro's Hyper SuperServer SYS-212HA-TN with Intel's Xeon® 6 6900 series processors can be configured with Samsung DDR5 RDIMM or Samsung DDR5 MRDIMM. *See* Exhibit 39 (Hyper SuperServer SYS-212HA-TN Datasheet); Exhibit 40 (product uses "Intel® Xeon® 6900 series processors"); Exhibit 41 (noting that "[u]pcoming MRDIMMs" from Samsung "are set to be compatible with Intel's Xeon 6 platforms"). On information and belief, Super Micro purchases these accused products from Samsung, imports them, and uses them in these Super Micro products.

## IX.    HARMONIZED TARIFF SCHEDULE NUMBERS

131.    The Accused Products are classified under at least the following subheadings of the Harmonized Tariff Schedule of the United States: 8473.30.11.40 and 8542.32.00.36. These classifications are exemplary in nature and not intended to restrict the scope of any exclusion order or other remedy ordered by the Commission.

## X.    THE DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS

132.    A domestic industry, as set forth in 19 U.S.C. § 1337(a)(2) and defined by 19 U.S.C. § 1337(a)(3), exists for the following Netlist and SK hynix products, which are protected by the Asserted Patents:

| Asserted Patent | Existing Domestic Industry Products |
|---|---|
| '366 Patent | • Netlist's DDR5 VLP RDIMM<br>• Netlist's Lightning DDR5 RDIMM<br>• SK hynix's RDIMM/MRDIMM |
| '731 Patent | • Netlist's DDR5 VLP RDIMM<br>• Netlist's Lightning DDR5 RDIMM<br>• SK hynix's RDIMM/MRDIMM |
| '608 Patent | • SK hynix's MRDIMM |
| '035 Patent | • SK hynix's MRDIMM |
| '523 Patent | • SK hynix's MRDIMM |
| '087 Patent | • SK hynix's HBM |

## A.    Technical Prong

133.    A list of Domestic Industry Products that practice at least one claim from one or more of the Asserted Patents is shown in the table above. Representative claim charts, attached as

Exhibits 42–47, demonstrate that the Domestic Industry Products practice at least one claim of each of the Asserted Patents.[4]

134.    Samples of the Domestic Industry Products will be produced during the course of the investigation.

### B.    Economic Prong

135.    For each of the Asserted Patents, there is a domestic industry pursuant to 19 U.S.C. § 1337(a)(3)(A), (B), and (C) based on the continuing significant domestic investment in plant, equipment, labor, and capital by Netlist and/or its licensee SK hynix, as well as the continuing substantial domestic investment in exploitation of the Asserted Patents through research, development, and engineering. Netlist has invested tens of millions of dollars since 2021 on developing and creating the Domestic Industry Products, bringing them to market, and sustaining their success through continuous technological development. Similarly, SK hynix has significant investments in the United States, including at least labor and facility costs.[5]

### 1.    Netlist's Domestic Activities

136.    Netlist has made, and continues to make, significant and substantial investments in connection with technology and articles that practice the Asserted Patents, including the Domestic Industry Products. Indeed, an administrative law judge has twice previously concluded that Netlist established a domestic industry based on its significant domestic investments in the United States. *See Certain Memory Modules & Components Thereof*, Inv. No. 337-TA-1089, Initial Determination at 139–56 (Oct. 19, 2019); *Certain Memory Modules & Components Thereof*, Inv.

---

[4]    The Domestic Industry Products are protected by additional claims of the Asserted Patents, and Netlist may establish the technical prong of the domestic industry requirement through claims other than those explicitly charted.
[5]    Netlist expects that SK hynix will cooperate with third-party discovery seeking information related to the domestic industry.

No. 337-TA-1023, Initial Determination at 153–65 (Nov. 14, 2017). Those investments related to earlier-generation Netlist products that were the foundation for the technologies claimed in several of the Asserted Patents here.

### a.    Significant Investment in Facilities

137.    Netlist has spent, and continues to spend, significant sums on facility costs for engineering, sales, and marketing activities related to the Domestic Industry Products. Netlist's facility costs since 2021 have accounted for millions of dollars in expenses. Detailed confidential information about Netlist's significant investments per Domestic Industry product is set forth in Confidential Exhibit 48C, Declaration of Gail Sasaki.

### b.    Significant Employment of Labor

138.    Netlist has spent, and continues to spend, significant sums on domestic labor related to the Domestic Industry Products. For example, since 2021, Netlist has employed engineering, sales, and marketing employees who have contributed to the development and sale of the Domestic Industry Products. Netlist's sales and marketing expenditures since 2021 have accounted for millions of dollars in expenses. Detailed confidential information about Netlist's significant investments per Domestic Industry product is set forth in Confidential Exhibit 48C, Declaration of Gail Sasaki.

### c.    Substantial Investment in Patent Exploitation

139.    The expenditures described above with respect to facilities and labor can also be described as Netlist's U.S. investments in research and development and engineering of the Domestic Industry Products. The allocated costs relate to Netlist's efforts to design and develop the Domestic Industry Products as well as research and establish a market for the Domestic Industry Products and Netlist's patented technology that the products contain.

## 2.    Licensee SK hynix's Domestic Activities

140.    SK hynix offers for sale in the United States HBMs, MRDIMMs, and RDIMMs. At the HPE Discover conference held in Las Vegas from June 23–26, 2025, SK hynix displayed its 12-layer HBM4 and 12-layer HBM3E products as well as its RDIMM and MRDIMM technology. Exhibit 49.

141.    The United States is a significant market for SK hynix. In the first three months of FY 2025, SK hynix reported 12.8 trillion won ($9.1 billion) in revenue in the United States, which was 72.5% of its revenue worldwide during that period. Exhibit 50 at 42; Exhibit 51; *see also* Exhibit 52 (reporting $20.02 billion domestic revenue from January to June 2025).

142.    A significant portion of SK hynix's revenues is attributable to products that practice at least one of the Asserted Patents, which are licensed to SK hynix. In second quarter of FY 2025, SK hynix reported that 77% of its revenue was from sales of DRAM, a significant portion of which was HBM sales. Exhibit 53 at 15. SK hynix has stated that, moving forward, it expects that HBM sales will double year over year. *Id*. at 11.

143.    SK hynix has spent, and continues to spend, significant sums on domestic labor and capital related to the Domestic Industry Products. SK hynix has represented that it employs over 7,000 people in the U.S. Exhibit 54. This is about 15% of its total employees worldwide. Exhibit 55 (46,863 employees total).

144.    SK hynix has spent, and continues to spend, significant sums on domestic facilities and equipment related to the Domestic Industry Products. SK hynix maintains several facilities in the United States, including an R&D and sales facility in San Jose, CA and sales offices in Seattle, WA; Austin, TX; Houston, TX; and Raleigh, NC. Exhibit 55.

145.    SK hynix also announced in 2024 that it will invest $3.87 billion in a chip packaging facility in West Lafayette, Indiana, which would be slated for operation in 2028. Exhibit

56. With the new facility, SK hynix plans to establish HBM production lines and advanced packaging R&D facilities. *Id.*; *see also* Exhibit 57. SK hynix was also awarded up to $458 million in direct funding and access to proposed loans of $500 million as part of the CHIPS and Science Act for its investment to build a production base for semiconductor packaging in Indiana. Exhibit 56. The new facility is expected to create approximately 1,000 jobs in addition to hundreds of construction jobs. *Id.*

146.    As part of the process for receiving funding under the CHIPS program, SK hynix submitted statements to the Department of Commerce in which it represented that (i) "SK hynix 'upstream' activities in the U.S. semiconductor ecosystem resulted in, on an annual average between 2016 and 2020, ~$9 billion in sales activity and ~$5 billion in GDP, and supported more than 46,000 jobs in the United States" and that (ii) "on an annual average between 2016 and 2020, SK hynix products enabled 'downstream' activities that resulted in $116 billion economic activity and $70 billion in GDP, and supported more than 696,000 jobs in the United States." Exhibit 58 at 2 (DOC submission).

*       *       *

147.    The foregoing domestic investments are significant and substantial under Section 337, both in absolute terms and relative to Netlist's overall operations. The domestic investments and activities are also vital to Netlist's domestic business with respect to the Domestic Industry Products and represent significant added value. The domestic investments of SK hynix are likewise significant and substantial in both absolute and relative terms and vital to SK hynix's domestic business with respect to the Domestic Industry Products and represent significant added value.

148.    Complainant's licensing agreement with SK hynix is attached as Exhibit 59C.

## XI.    RELATED LITIGATION

### A.    '366 Patent

149.    On July 28, 2025, Netlist filed a complaint in the U.S. District for the Eastern District of Texas, Civil Action No. 2:25-cv-00748, alleging infringement of the '366 Patent against the Proposed Samsung Respondents and Avnet, Inc. The case is in the initial stages.

150.    On July 28, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00749, alleging infringement of the '366 Patent against Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC (collectively, "Micron"), and Avnet, Inc. The case is in the initial stages.

151.    On July 29, 2025, Micron filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00942, seeking a declaratory judgment of non-infringement of the '366 Patent. The case is in the initial stages.

### B.    '731 Patent

152.    On May 19, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00557, alleging infringement of the '731 Patent against the Proposed Samsung Respondents and Avnet, Inc. The case was consolidated with Civil Action No. 2:25-cv-00558, to include Micron and Avnet, Inc. The case is in its initial stages.

153.    On July 10, 2025, Micron filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00863, seeking a declaratory judgment of non-infringement of the '731 Patent against Netlist. The case is in the initial stages.

154.    On August 29, 2025, SEC filed a petition for *inter partes* review of the '731 Patent, IPR2025-01431. The case is in its initial stages.

### C.    '608 Patent

155.    On April 28, 2021, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 6-21-cv-00431, alleging infringement of the '608 Patent against Micron. The case was transferred to the Austin Division of the Western District of Texas and was assigned case number 22-cv-00136. The case was stayed on May 11, 2022, pending multiple *inter partes* review. It remains stayed pending the appeal of the final written decisions issued in those proceedings, including IPR2022-00847.

156.    On December 23, 2021, Micron filed a petition for *inter partes* review of the '608 Patent, IPR2022-00237. The Board denied institution.

157.    On August 1, 2022, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:22-cv-00293, alleging infringement of the '608 Patent against Proposed Samsung Respondents. The case was consolidated with Civil Action No. 2:22-cv-00294, to include Micron. A jury verdict was entered in favor of Netlist on November 22, 2024 finding claims of the '608 patent infringed and not invalid. The jury awarded $12,000,000 in damages for infringement of the '608 Patent. The Court entered judgment on the verdict on December 2, 2024.

158.    On April 27, 2023, SEC filed a petition for *inter partes* review of the '608 Patent in accordance with 37 C.F.R. § 42.107(a), IPR2023-00847. The Board found claims 1–5 of the patent not unpatentable under 35 U.S.C. § 103. On January 21, 2025, SEC appealed that decision to the U.S. Court of Appeals for the Federal Circuit, No. 25-1375.

159.    On January 10, 2024, Micron filed a petition for *inter partes* review of the '608 Patent in accordance with 37 C.F.R. § 42.107(a), IPR2024-00370. The Board denied institution.

160.    On August 14, 2025, an anonymous party filed a request for *ex parte* reexamination of the '608 patent. The PTO has not yet acted on the request.

**D.** **'523 Patent**

161.    On March 17, 2020, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 6-20-cv-00194, alleging infringement of the '523 Patent against SK hynix America Inc. and SK hynix. The parties later settled and the case was dismissed.

162.    On June 15, 2020, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 6-20-cv-00525, alleging infringement of the '523 Patent against SK hynix America Inc. and SK hynix. The parties later settled and the case was dismissed.

163.    On August 21, 2020, SK hynix America Inc. and SK hynix filed a petition for *inter partes* review of the '523 Patent, IPR2020-01421. The Board granted institution, the parties later settled, and the proceeding was dismissed.

164.    On January 15, 2021, SEC and SSI filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1-21-cv-01453, seeking a declaratory judgment of non-infringement of the '523 Patent, unenforceability due to inequitable conduct and unclean hands, and breach of contract. Netlist asserted counterclaims of infringement against Samsung and later filed an amended answer that added counterclaims for patent infringement against Google LLC and Alphabet Inc. The case was stayed on December 1, 2023 and remains stayed.

165.    On October 15, 2021, SEC filed a petition for *inter partes* review of the '523 Patent, IPR2022-00063. The Board found claims 1–34 not unpatentable under 35 U.S.C. § 103. On July 10, 2023, SEC appealed that decision to the U.S. Court of Appeals for the Federal Circuit. The Federal Circuit summarily affirmed the Board's decision on March 5, 2025. No. 23-2133, Dkt. No. 44.

### E.    '035 Patent

166.    On April 28, 2021, Netlist filed a complaint in the U.S. District Court for the Western District of Texas, Civil Action No. 22-cv-00136, alleging infringement of the '035 Patent against Micron. The case was transferred from Civil Action No. 6-21-cv-00431. The case was stayed on May 11, 2022 pending multiple *inter partes* review proceedings and remains stayed pending the appeal of final written decisions issued in *inter partes* proceedings on other asserted patents.

167.    On December 23, 2021, Micron filed a petition for *inter partes* review of the '035 Patent, IPR2022-00236. The Board found claims 1, 10–13, and 21 of the '035 patent unpatentable under 35 U.S.C. § 103 and claims 2, 6, and 22 not unpatentable. The Petitioners filed a request for rehearing, which was granted. In the rehearing Order, the Board found that claim 22 was unpatentable. Neither party appealed the Board's decision.

### F.    '087 Patent

168.    On May 19, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00552, alleging infringement of the '087 patent against Micron. The case was terminated on May 22, 2025.

169.    On May 19, 2025, Netlist filed a complaint in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:25-cv-00553, alleging infringement of the '087 patent against the Proposed Samsung Respondents. The case was terminated on May 22, 2025.

170.    On May 19, 2025, Netlist filed a Complaint in the U.S. District Court for Eastern District of Texas, Civil Action No. 2:25-cv-00557, alleging infringement of the '087 patent against the Proposed Samsung Respondents. The case is in the initial stages.

171.    On May 19, 2025, Netlist filed a Complaint in the U.S. District Court for Eastern District of Texas, Civil Action No. 2:25-cv-00558, alleging infringement of the '087 patent against Micron. The case is in the initial stages.

172.    On May 20, 2025, the Proposed Samsung Respondents filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00626, seeking a declaratory judgment of non-infringement of the '087 Patent. The case is in the initial stages. The Proposed Samsung Respondents have moved for leave to file an amended complaint to add declaratory judgment claims against the '366 Patent and '731 Patent. That motion is currently pending.

173.    On May 20, 2025, Micron filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-00629, seeking a declaratory judgment of non-infringement of the '087 Patent. The case is in the initial stages.

174.    On August 25, 2025, SEC filed a petition for *inter partes* review of the '087 Patent, IPR2025-01402. The case is in the initial stages.

175.    On August 25, 2025, SEC filed a petition for post grant review of the '087 Patent, PGR2025-00071. The case is in the initial stages.

176.    Netlist has not previously litigated the Asserted Patents before any other court or agency.

## XII.    RELIEF REQUESTED

177.    Netlist respectfully requests that the Commission:

(a)    Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Respondents' violations of that section based on the importation into the United States, sale for importation, and/or sale within the United States

after importation of DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents;

(b)     Schedule and conduct a hearing pursuant to Section 337(c) for the purposes of (i) receiving evidence and hearing argument concerning whether there has been a violation of Section 337, and (ii) following the hearing, determining that there has been a violation of Section 337;

(c)     Issue a permanent limited exclusion order pursuant to 19 U.S.C. § 1337(d) forbidding entry into the United States of DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents and are manufactured, imported, sold for importation, and/or sold after importation by or on behalf of Respondents, their subsidiaries, related companies, and agents;

(d)     Issue permanent cease-and-desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting Respondents, their domestic subsidiaries, related companies, and agents from engaging in the importation, sale for importation, marketing and/or advertising, distribution, offering for sale, sale, use after importation, sale after importation, and other transfer within the United States (except for exportation) of DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents;

(e)     Impose a bond pursuant to 19 U.S.C. § 1337(j) on the importation of any DRAM devices, products containing the same, and components thereof that infringe one or more claims of the Asserted Patents during the 60-day Presidential review period; and

(f)     Issue such other and further relief as the Commission deems just and proper under the law, based on the facts determined by the Investigation and the authority of the Commission.

Dated: September 30, 2025

Respectfully submitted,

_____

Daniel E. Yonan
Donald R. Banowit
William H. Milliken
Richard M. Bemben
Lauren A. Watt
Sterne, Kessler, Goldstein & Fox PLLC
1101 K Street NW, 10th Floor
Washington DC 20005
Tel.: (202) 371-2600

Jason Sheasby
Annita Zhong, PhD
Andrew Strabone
Lisa Glasser
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel.: (310) 277-1010

*Counsel for Complainant Netlist, Inc.*

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | Investigation No. 337-TA- _____ |

## VERIFICATION OF COMPLAINT

I, Gail Sasaki, am Executive Vice President and Chief Financial Officer of Netlist, Inc., and am authorized to execute this verification of the accompanying Complaint under Section 337 of the Tariff Act of 1390, as Amended, on behalf of Complainant Netlist, Inc. In accordance with Commission Rules 210.4 and 210.12(a), under penalty of perjury, I declare that:

1. I have read the Complaint and am familiar with the allegations and statements contained therein.

2. To the best of my knowledge, information, and belief founded after reasonable inquiry under the circumstances, the allegations and statements made in the Complaint are well grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

3. The allegations and other factual contentions in the Complaint have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

4. This Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on September 30, 2025

Gail Sasaki
EVP and Chief Financial Officer



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

November 20, 2025

The Honorable Lisa R. Barton                                        *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

     Re:     *Certain Dynamic Random Access Memory (DRAM) Devices, Products
          Containing the Same, and Components Thereof,* Docket No. 3854

Dear Secretary Barton:

     On behalf of Netlist, Inc. ("Netlist" or "Complainant"), please find enclosed replacement Public Versions of Claim Charts to the Complaint, redacting confidential business information in Exhibits 16C, 17C, 18C, 19C, 20C, 21C, 42C, 43C, 44C, 45C, 46C, and 47C.

     Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

               Respectfully submitted,

               STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

               Daniel E. Yonan
               Director

               *Counsel for Complainant Netlist, Inc.*



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

December 5, 2025

The Honorable Lisa R. Barton                                    *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

    Re:    *Certain Dynamic Random Access Memory (DRAM) Devices, Products
Containing the Same, and Components Thereof,* Docket No. 3854 –
Supplemental Information to Complaint

Dear Secretary Barton:

On behalf of Netlist, Inc. ("Netlist" or "Complainant"), we write to provide the
following supplemental information regarding the Complaint filed on September 30, 2025 in
Investigation Docket No. 337-3854. Enclosed with this letter as supplemental information is
Exhibits A–G.

    **1.**    **Certified Versions and Prosecution Histories.**

Complainant has retrieved certified copies of both the prosecution histories and the
Asserted Patents[1] (Appendices A–F to the Complaint), in addition to copies of the prosecution
histories for the related priority applications for the Asserted Patents. These are being
delivered to the Commission pursuant to Commission Rule 210.12(c).

    **2.**    **The '087 Patent Relates to HBM DRAM and Is Not Asserted Against the
DDR5 DIMM Accused Products.**

The '087 patent relates to High-Bandwidth Memory ("HBM") technology. *See* Compl.
¶ 100. As a clarification, Proposed Respondents'[2] Accused Products that contain DDR5
DIMMs—but do not contain HBM—are not alleged to infringe the asserted claims of the '087
patent. *See* Compl. ¶ 114; Ex. 21C. The Complaint and accompanying claim charts

---

[1] The Asserted Patents are U.S. Patent Nos. 12,373,366 ("the '366 patent"); 10,025,731 ("the
'731 patent"); 10,268,608 ("the '608 patent"); 10,217,523 ("the '523 patent"); 9,824,035
("the '035 patent"); and 12,308,087 ("the '087 patent").
[2] The Proposed Respondents are Samsung Electronics Co., Ltd.; Samsung Electronics
America, Inc.; Samsung Semiconductor, Inc. (collectively, "Samsung"); Google LLC
("Google"); and Super Micro Computer, Inc. ("Super Micro").

The Honorable Lisa R. Barton
December 5, 2025
Page 2

demonstrate how representative accused products containing HBM infringe claims 1, 2, 5, 7, 8, 13, 17, 18, 20, 22, and 23 of the '087 patent. *See* Compl. ¶¶ 113–114; Ex. 21C.

### 3. Proposed Respondent Samsung's Accused HBM Products Are Made, Packaged, and Shipped from Outside the United States.

As discussed in the Complaint, Samsung's HBM is manufactured outside the United States and sold for importation into the United States and/or imported into the United States by the Proposed Respondents. *See* Compl. ¶¶ 125–130. Further support for the foreign origin and importation of Samsung's HBM products can be found in publicly available articles. For example, articles indicate that Samsung's manufacturing and packaging facilities for its HBM products are located in South Korea. *See* Exhibit A (https://koreajoongangdaily.joins.com/news/2024-11-12/business/industry/Samsung-to-expand-Cheonan-chip-packaging-facility-for-HBM-rampup/2176108 (last accessed December 4, 2025)).

### 4. The Accused HBM Products Charted in the Complaint Are Representative of Proposed Respondents' Other HBM Products.

The Complaint explained that Samsung manufactures HBM products, which are imported into the United States and supplied to Google and Super Micro for incorporation into Google's and Super Micro's Accused Products. *See* Compl. ¶¶ 125–130. The Accused Products charted in Exhibit 21C are representative of other HBM products sold or offered for sale for importation into the United States, imported into the United States, or sold or offered for sale after importation into the United States. *Id.*

### 5. Proposed Respondent SuperMicro's Accused Products Include AMD Accelerators Which In Turn Include Accused HBMs.

As indicated in paragraph 130 of the Complaint, the H13 and H14 Super Micro servers include and use AMD's Instinct accelerators (MI300X/MI325X/MI350X)—as evidenced by the Super Micro datasheets. *See* Exhibits 35 ("Supported GPU: AMD: Instinct™ MI350X Accelerators, Instinct™ MI325X Accelerators"; "Motherboard Super H14DSG-OD"); Exhibit 36 ("Supported GPU: AMD: Instinct™ MI300X Accelerators"; "Motherboard Super H13DSG-OM"). The accelerators include Samsung's Accused HBMs as evidenced by Exhibits 37–38. This information is further corroborated in other datasheets concerning the H13 and H14 servers. *See* Exhibits B–D.

### 6. Accused Products from Proposed Respondents Google and SuperMicro Are Domestically Located and Used.

As a clarification to paragraph 129, for Google and by way of example, its Accused Tensor Processing Units (TPUs) are set up and used domestically in such states as Iowa, South Carolina, Ohio, Texas, Oregon, Nevada, etc. Exhibit E at 2–3 (highlighted Google webpages identifying specific regional domains from which TPUs are located in the United States); Exhibit F at 1–2 (identifying supported zones in the United States for fifth, sixth, and seventh generation TPUs). As for the Accused Google Cloud Platforms (GCPs), these too are used

The Honorable Lisa R. Barton
December 5, 2025
Page 3

domestically as well in such states as Oregon, California, Utah, Nevada, and Virginia. Exhibit
G at 2–3 (highlighted Google specific webpages identifying specific regional domains from
which Google Cloud products are located in the United States).

Also, for clarification to paragraph 130, as recently as last week SuperMicro touted that
its Accused Products are "overwhelmingly American: SMCI manufactures the majority of its
systems at its San Jose headquarters . . . and it stands as the only major server, storage, and
accelerated compute platform vendor that designs, develops, and manufactures a significant
portion of its systems in the U.S." *See* EDIS No. 864946 at 1–2. SMCI is the "rare" IT
infrastructure company with a "Made in the USA" program. *Id*. at 4.

> **7.**    **A Domestic Industry Exists Through Investments of Licensee SK Hynix, or
> in the Alternative, Is in the Process of Being Established.**

Complainant amends paragraphs 10, 132, 135, and 145 of the Complaint as follows:

**10.1** As set forth in Section X of this Complaint, a domestic industry pursuant to 19
U.S.C. § 1337(a)(2)–(3) exists*, or in the alternative is in the process of being established,*
based on the investments made by Netlist and its licensee SK hynix Inc. ("SK hynix")
domestically in relation to products that are protected by the Asserted Patents.

**132.1** A domestic industry, as set forth in 19 U.S.C. § 1337(a)(2) and defined by 19
U.S.C. § 1337(a)(3), exists*, or in the alternative is in the process of being established,* for the
following Netlist and SK hynix products, which are protected by the Asserted Patents:

**135.1** For each of the Asserted Patents, there is a domestic industry pursuant to 19
U.S.C. § 1337(a)(3)(A), (B), and (C) based on the continuing significant domestic investment
in plant, equipment, labor, and capital by Netlist and/or its licensee SK hynix, as well as the
continuing substantial domestic investment in exploitation of the Asserted Patents through
research, development, and engineering. Netlist has invested tens of millions of dollars since
2021 on developing and creating the Domestic Industry Products, bringing them to market,
and sustaining their success through continuous technological development. Similarly, SK
hynix has *and will continue to make* significant investments in the United States, including at
least labor and facility costs.

**145.1** SK hynix also announced in 2024 that it will invest $3.87 billion in a chip
packaging facility in West Lafayette, Indiana, which would be slated for operation in 2028.
Exhibit 56. With the new facility, SK hynix plans to establish HBM production lines and
advanced packaging R&D facilities. *Id*.; see also Exhibit 57. SK hynix was also awarded up to
$458 million in direct funding and access to proposed loans of $500 million as part of the
CHIPS and Science Act for its investment to build a production base for semiconductor
packaging in Indiana. Exhibit 56. The new facility is expected to create approximately 1,000
jobs in addition to hundreds of construction jobs. *Id*. *This facility is evidence of SK hynix's
continued domestic investments in the future for HBM products that practice the '087 patent
and supports a domestic industry that is in the process of being established.*

The Honorable Lisa R. Barton
December 5, 2025
Page 4

**8.    '608 Patent *Ex Parte* Reexamination.**

Complainant amends paragraph 160 of the Complaint as follows:

160.1. On August 14, 2025, an anonymous party filed a request for ex parte reexamination of the '608 patent. *At the time of filing the Complaint, the PTO had not yet acted on the request. However, the reexamination mentioned was granted on November 21, 2025*.

**9.    Related Litigation Update: '305 Patent Lawsuit.**

Complainant amends ¶ 167 of the Complaint as follows:

167.1. *On November 11, 2025, Samsung filed a complaint against Netlist in the U.S. District Court for the District of Delaware, Civil Action No. 1:25-cv-01371, seeking, inter alia, a declaratory judgment of non-infringement of the '035 Patent. This case is in the initial stages*.

Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Daniel E. Yonan
Director

*Counsel for Complainant Netlist, Inc.*



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

December 12, 2025

The Honorable Lisa R. Barton                                    *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

> Re:    *Certain Dynamic Random Access Memory (DRAM) Devices, Products
>        Containing the Same, and Components Thereof,* Docket No. 3854 –
>        Supplemental Information to Complaint

Dear Secretary Barton:

On behalf of Netlist, Inc. ("Netlist" or "Complainant"), we write to provide the following additional supplemental information regarding the Complaint filed on September 30, 2025 in Investigation Docket No. 337-3854. Enclosed with this letter is replacement Exhibit 33 and as supplemental information the executed Declaration of Devon Park (Dec. 12, 2025).

1.    <u>**Revised Clear Statement in Plain English of the Category of Accused
      Products (19 C.F.R § 210.12(a)(12))**</u>

Complainant amends paragraph 38 of the Complaint as follows:

**38.1** Pursuant to Commission Rules §§ 210.10(b)(1) and 210.12(a)(12), ~~the categories of Accused Products are dynamic random access memory (DRAM) devices used in computing systems. DRAM is used as the primary working memory in computers and other devices, such as servers, desktops, and mobile phones, to temporarily store data and instructions that the processor needs for quick access during operation. Specifically these devices are DDR5 generation DIMMs and high bandwidth memory (HBM).~~ *the products accused of infringement are dynamic random access memory devices (specifically DDR5 generation DIMMs and high bandwidth memory (HBM)), products containing the same (such as servers, computing systems, and storage systems), and components thereof.*

2.    <u>**Google Imports Samsung HBMs into the United States**</u>

In addition to the prior supplement that highlighted domestic use by Google of HBM packages in its servers in the United States, Complainant amends paragraph 129 of the Complaint as follows:

The Honorable Lisa R. Barton
December 12, 2025
Page 2

**129.1** Google imports the Accused Products directly or indirectly from Samsung and uses them in various Google products and services, including in its data storage facilities and servers. For example, on information and belief, Google's fifth, sixth and seventh generation Tensor Processing Units (TPUs) utilize Samsung's accused HBM2, HBM2E, HBM3E and HBM4 high bandwidth memory packages. *See* Replacement Exhibit 33 at 3("Google is expected to become the second-largest buyer of HBM" from Samsung, "driven by its investment in Tensor Processing Units (TPUs)"). ***Exhibit 33 identifies Google among the "biggest purchasers of HBM" and cites to an "internal Samsung roadmap" that tracks Google's demand and shipments made for HBM-based TPUs including metrics such as the content of the HBM package (memory size), density, how many units per package, etc. Id. at 2, 5 (callout of internal Samsung roadmap). As previously identified, Google's TPUs are set up and used in the United States. See EDIS Doc. ID 865737 (Dec. 5, 2025 Second Supplement to the Complaint) at 2–3.*** In addition, on information and belief, the Google Cloud Platform (GCP) virtual machine services utilize Intel Xeon 6 processors in its compute-optimized C4 virtual machine series, which use Samsung's accused DDR5 RDIMMs and MRDIMMs. *See* Exhibit 34. On information and belief, Google purchases these Accused Products from Samsung, imports them, and uses them in these Google products and services.

### 3.    Google Confirmed Importation of HBMs in Its PI Submission

As further evidence that Google receives the accused Samsung HBM devices in the United States, Google stated in its public interest submission that Google is "unmatched in its supply of critical TPUs and GCPs" and that "Google's ability to supply these products [domestically] requires a sufficient supply of HBM" which incorporates memory from Samsung among other suppliers. *See* EDIS Doc. ID 864975 at 4. Google does not contest anywhere in this submission that it is not receiving, incorporating, or relying on the accused Samsung HBM packages in the United States and in fact confirms that its products are "downstream accused Google products." *Id.* at 2.

### 4.    Super Micro Imports Samsung HBMs into the United States

In addition to the prior supplement that highlighted domestic use by Super Micro of HBM packages in its servers in the United States, Complainant amends paragraph 130 of the Complaint as follows:

**130.1** Super Micro imports the Accused Products directly or indirectly from Samsung and incorporates them in various Super Micro products, including its servers and storage systems. For example, on information and belief, Super Micro's H13 and H14 GPU-optimized servers can be configured with AMD's Instinct accelerators (MI300X/MI325X/MI350X), which include Samsung's HBM3 and HBM3E high bandwidth memory. *See* Exhibit 35 (AS -8126GS-TNMR Datasheet); Exhibit 36 (AS -8125GS-TNMR2 Datasheet); Exhibit 37 ("Samsung's HBM3 memory" is "integrated into AMD's MI300X AI accelerator"); Exhibit 38 ("AMD Instinct MI350X and MI355X GPUs" use "288GB HBM3E" from "Samsung Electronics"). In addition, on information and belief, Super Micro's Hyper SuperServer SYS-212HA-TN with Intel's Xeon® 6 6900 series processors can be configured with Samsung DDR5 RDIMM or Samsung DDR5 MRDIMM. *See* Exhibit 39 (Hyper SuperServer SYS-

The Honorable Lisa R. Barton
December 12, 2025
Page 3

212HA-TN Datasheet); Exhibit 40 (product uses "Intel® Xeon® 6900 series processors"); Exhibit 41 (noting that "[u]pcoming MRDIMMs" from Samsung "are set to be compatible with Intel's Xeon 6 platforms"). On information and belief, Super Micro purchases these accused products from Samsung, imports them, and uses them in these Super Micro products. ***Upon information and belief, these imported products by Super Micro include the accused Samsung HBMs either as part of a printed circuit board on which a combination of a GPU processor and HBM packages are mounted or as part of a finished server rack, which are sold after importation in the United States by Super Micro. For example, on information and belief, either AMD or another system integrator will mount AMD Instinct GPU accelerators (which includes a GPU and HBM packages) onto a standard universal baseboard (UBB 2.0). Declaration of D. Park (Dec. 12, 2025), Ex. 7. Once assembled, the printed circuit boards (PCBs) are then integrated into server racks, such as Super Micro's H13/14 servers. Id., Ex. 9. On information and belief, most HBM-and-GPU packages come from Asia, then enter the U.S. as fully assembled components on PCBs that are then integrated into U.S. servers. Id., ¶¶ 11–15. However, Super Micro also has manufacturing facilities in Taiwan, the Netherlands, and Malaysia for rack-scale production, so at least some HBMs may be imported into the U.S. within assembled server racks. Id., Ex. 13.***

Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Daniel E. Yonan
Director

*Counsel for Complainant Netlist, Inc.*



**DANIEL E. YONAN**
DIRECTOR
(202) 772-8899
DYONAN@STERNEKESSLER.COM

December 16, 2025

The Honorable Lisa R. Barton                                    *Via EDIS*
Secretary to the Commission
**U.S. International Trade Commission**
500 E Street S.W.
Washington, D.C. 20436

       Re:      *Certain Dynamic Random Access Memory (DRAM) Devices, Products*
                   *Containing the Same, and Components Thereof,* Docket No. 3854 –
                   Supplemental Information to Complaint

Dear Secretary Barton:

       On behalf of Netlist, Inc. ("Netlist" or "Complainant"), we write to provide the following additional supplemental information regarding Netlist:

       Telephone No.: 949-435-0025
       Email: info@netlist.com
       Lead Counsel Telephone No.: 202-772-8899
       Lead Counsel Email: dyonan@sternekessler.com

       Thank you for your consideration and attention to this matter. Please contact me if you have any questions.

                        Respectfully submitted,

                        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                        Daniel E. Yonan
                        Director

                        *Counsel for Complainant Netlist, Inc.*

# Exhibit 5

# 미국 연방 지방 법원
## 컬럼비아 특별구

Netlist, Inc.,

　　　　　　원고(신청인),

　　　대.

삼성전자주식회사, Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.

　　　　피고들 (피신청인들)

사건번호 _____

**요청서 발부를 위한 권고서**

## 국제 사법 공조에 의한 대한민국에의 문서 제출 요청서

　　　미국 컬럼비아 특별구 연방 지방법원은 대한민국 사법당국인 대한민국 법원행정처에 하기 엔티티로부터 민사 또는 상사 사안에서의 해외 증거 수집에 관한 1970년 3월 18일 헤이그협약에 따른 문서 제출을 받기 위해 국제 사법공조를 정중히 요청드립니다:

　　　**SK하이닉스주식회사**
　　　대한민국 경기도 이천시
　　　부발읍 경충대로 2091

미국 컬럼비아 특별구 연방 지방법원은 본 소송에 대한 적절한 관할권을 가지고 있으며 관할권 내외에서 증거의 제출을 강제할 수 있는 권한을 가진 법과 형평에 부합하는 관할 법원입니다.

　　　요청된 증거는 본 법원이 승인한 상기 사안, 즉 미국 국제무역위원회(ITC) 조사 번호 337-TA-1472 *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트*(이하 "본건 조사")에 대한

행정 절차를 위한 것입니다. 피신청인들 삼성전자주식회사, Samsung Electronics America, Inc., Samsung Semiconductor, Inc.("삼성"), Google LLC("구글"), Super Micro Computer, Inc.(이하 모두 총칭하여 "피신청인들")는 SK하이닉스주식회사("SK하이닉스")에게 자사의 MRDIMM, RDIMM 및 HBM 제품 및 SK하이닉스가 해당 제품과 관련하여 미국에서 진행한 투자에 관한 증거확보를 요청드립니다. 신청인 Netlist, Inc.(이하 'Netlist')는 SK하이닉스가 본건 조사에서 주장한 특허의 라이선스권자라고 주장합니다. Netlist는 SK하이닉스가 수행한 활동이 미합중국법전 제19편 제1337(a)(2) 및 (3)항에 따라 미국 내 국내산업(DI)의 존재를 입증한다고 주장합니다. 또한, Netlist는 본건 조사에서 피신청인들의 제품에 대해 배제 명령이 내려질 경우 증가된 수요를 공급하기 위해 생산량을 늘릴 수 있는 SK하이닉스의 캐파가 있다고 주장합니다.

본 법원은 권한의 적정한 행사를 위해 대한민국 법원행정처의 개입 없이는 SK하이닉스주식회사로부터 구하려는 증거를 확보할 수 없다고 판단하였습니다. 위 행정소송에는 2026년 6월 8일로 예정된 사실관계 증거개시(디스커버리), 2026년 10월 28일~11월 4일로 예정된 증거심리 등 중요한 기한이 있습니다. 따라서 본 법원은 국제업무국장께서 이 요청을 가능한 한 신속히 처리해 줄 것을 추가로 요청드립니다.

본 법원은 아래에 기재된 지원을 요청드립니다.

| 1. 발신자 | F. Christopher Mizzo, P.C. |
|---|---|
| | Kirkland & Ellis LLP |
| | 1301 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20004 |
| | 전화: (202) 389-5000 |
| | 팩스: (202) 389-5200 |

| | 이메일: Samsung-Netlist-ITC@kirkland.com |
|---|---|
| 2. 요청 대상 국가의 중앙 기관 | 대한민국 (우) 06590<br>서울 서초구 서초대로 219<br>법원행정처<br>수신: 국제업무국장 |
| 3. 집행된 요청을 반환받을 사람 | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>전화: (202) 389-5000<br>팩스: (202) 389-5200<br>이메일: Samsung-Netlist-ITC@kirkland.com |
| 4. 요청하는 기관이 요청서에 대한 응답의 수령을 요구하는 날짜 명시 | |
| 날짜 | 실제적으로 가능한 한 빨리 대응해 주시되, 어떠한 경우에도 2026년 3월 11일까지 대응해 주시기 바랍니다. |
| 긴급한 이유 | 1930년 관세법 개정 337조(미합중국법전 제19편 §1337)에 따라 미국 국제무역위원회에서의 조사는 "실제적으로 가능한 한 빠른 시일 내에" 완료되어야 합니다. 이 조사의 사실관계 증거개시(디스커버리) 마감일은 2026년 7월 8일입니다. |
| 5. 협약 제3조에 따라 아래 서명한 요청인은 다음과 같은 요청을 제출하는 것을 영광으로 생각합니다: | |
| 5.a 요청하는 사법 당국<br>(제3조 a항) | 명예로운 _____<br>미국 지방법원 판사<br>미국 컬럼비아 특별구 연방 지방법원<br>333 Constitution Ave., N.W.<br>Washington. DC 20001<br>미국 |
| 5.b 요청 대상 당국(제3조, a) | 대한민국 |
| 5c. 사건의 이름 및 식별 번호 | *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트*, 미국 국제무역위원회 조사 번호 337-TA-1472 |
| 6. 당사자 및 그 대리인(요청 대상 국가의 대리인 포함)의 이름과 주소(제3조 b항). | |

| | |
|---|---|
| 6a. 원고(신청인) | Netlist, Inc.<br>111 Academy Way<br>Suite 100<br>Irvine, CA 92617 |
| 원고 대리인 | Jason Sheasby<br>Annita Zhong, PhD<br>Andrew Strabone<br>Lisa Glasser<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>전화: (310) 277-1010<br><br>Daniel E. Yonan<br>Donald R. Banowit<br>William H. Milliken<br>Richard M. Bemben<br>Lauren A. Watt<br>Sterne, Kessler, Goldstein & Fox PLLC<br>1101 K Street NW, 10th Floor<br>Washington DC 20005<br>전화: (202) 371-2600 |
| 6.B 피고들 (피신청인들) | 삼성전자주식회사<br>대한민국 (우) 443-742<br>경기도 수원시 영통구 삼성로 129<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Semiconductor, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, California 94043<br><br>Super Micro Computer, Inc.<br>980 Rock Ave.<br>San Jose, California 95131 |
| 피신청인 대리인 | *피신청인 Google LLC의 대리인* |

|  | Gregory F. Corbett |
|  | Charles T. Steenburg |
|  | Anant K. Saraswat |
|  | Meaghan P. Luster |
|  | WOLF, GREENFIELD & SACKS, P.C. |
|  | 600 Atlantic Avenue |
|  | Boston, MA 02210 |
|  | 전화: 617.646.8000 |
|  |  |
|  | Elizabeth A. DiMarco |
|  | Suresh S. Rav |
|  | Simon Lu |
|  | WOLF, GREENFIELD & SACKS, P.C. |
|  | 601 Massachusetts Avenue, NW |
|  | Washington, DC 20001 |
|  | 전화: 202.571.5001 |
|  | *피신청인들 삼성전자주식회사, Samsung Electronics America, Inc., 및 Samsung Semiconductor, Inc.의 대리인* |
|  |  |
|  | Paul F. Brinkman, P.C. |
|  | F. Christopher Mizzo, P.C. |
|  | Michael A. Pearson, Jr. |
|  | Karthik Ravishankar |
|  | Maranda Johnston |
|  | David Corasaniti |
|  | Kirkland & Ellis LLP |
|  | 1301 Pennsylvania Avenue, N.W. |
|  | Washington, D.C. 20004 |
|  | 전화: (202) 389-5000 |
|  |  |
|  | Greg S. Arovas, P.C. |
|  | Todd Friedman, P.C. |
|  | James E. Marina, P.C. |
|  | Alan Rabinowitz |

| | New York, NY 10022 |
|---|---|
| | 전화: (212) 446-4800 |
| | |
| | Greg Polins |
| | Kirkland & Ellis LLP |
| | 333 West Wolf Point Plaza |
| | Chicago, IL 60654 |
| | 전화: (312) 862-2000 |
| | |
| | Luke Norrell |
| | Cameron Lindsay |
| | Kirkland & Ellis LLP |
| | 401 W 4th St, Suite 4000 |
| | Austin, TX 78701 |
| | 전화: (512) 678-9050 |
| | |
| | Brian R. Nester |
| | Covington & Burling LLP |
| | One CityCenter, |
| | 850 Tenth Street, NW |
| | Washington D.C. 20001-4956 |
| | 전화: (202) 662-6000 |
| | 이메일: BNester@cov.com |
| | *피신청인 Super Micro Computer, Inc.의 대리인* |
| | |
| | Richard S. Zembek |
| | Charles B. Walker |
| | Daniel S. Leventhal |
| | Talbot Hansum |
| | Ryan E. Meltzer |
| | NORTON ROSE FULBRIGHT US LLP |
| | 1550 Lamar Street, Suite 2000 |
| | Houston, Texas 77010 |
| | 전화: (713) 651-5151 |
| 6.c 기타 당사자 | 불공정 수입 조사국 |
| | 미국 국제무역위원회 |
| | 500 E Street, S.W., Suite 401 |
| | Washington, DC 20436 |
| 7. 절차의 성격 및 목적 | 이 소송은 미국 국제무역위원회가 1930년 관세법 개정 337조(미합중국법전 제19편 §1337)에 따라 진행 중인 소송으로, 2025년 9월 30일에 Netlist, Inc.가 제기한 소장에 근거하여 진행 중입니다. |

Netlist, Inc.는 피신청인들 삼성전자주식회사, Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.가 Netlist의 미국 특허 번호 12,373,366('366 특허'), 10,025,731('731 특허'), 10,268,608('608 특허'), 10,217,523('523 특허'), 9,824,035('035 특허'), 12,308,087('087 특허')(총칭하여 '주장된 특허')를 침해하는 특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트를 불법적으로 미국으로 수입하고, 미국으로 수입하기 위해 판매하고, 및/또는 수입한 후 미국 내에서 판매한다고 주장합니다.

국제무역위원회는 2025년 11월 20일, 2025년 12월 5일, 2025년 12월 12일, 2025년 12월 16일에 보완된 Netlist의 소장에 근거하여 절차를 개시했습니다. 절차가 개시된 후, 이 사건은 행정법 판사 MaryJoan McNamara에게 배정되어 재판 전 사안들을 주재하고 재판을 진행하며 사건의 쟁점에 대한 초기 판정을 내렸습니다. 초기 판정은 미국 연방순회항소법원에 항소할 수 있는 권리와 함께 국제무역위원회의 검토 대상이 될 수 있습니다.

피신청인들은 본건 소장에 명시된 바와 같이, SK하이닉스가 주장된 특허(Asserted Patents)의 라이선시이며 주장된 특허를 실시하는 것으로 판단되는 제품을 판매하고 있다고 Netlist가 주장하기 때문에 SK하이닉스향으로 이 요청서를 추구합니다. *참조*: 소장 ¶¶ 10, 16, 17. Netlist는 미국 내 SK하이닉스의 제품 및 투자를 근거로 19 연방규정법 제19편 §1337(a)에 따라 국내산업(DI)이 존재한다고 주장하고자 의도합니다. 132-135, 140-148면. 따라서 피신청인들은 SK하이닉스가 국내산업(DI) 문제와 직접적으로 관련된 문서들을 보유하고 있을 가능성이 높다고 주장합니다.

구체적으로 피신청인들은 SK하이닉스가 (i) RDIMM, MRDIMM 및 HBM 제품의 설계, 구조 및 기능에 관한 고유한 문서들을 점유하고 있으며 (ii) 해당 제품을 시장에 출시하기 위해 SK하이닉스가 미국에서 지출한

| | 비용 및 투자에 관한 문서들을 점유하고 있다고 주장합니다. 추가로, SK하이닉스의 미국 내 투자가 특히 전 세계 투자와 비교하여 중요한지 여부에 관한 문서들을 점유할 가능성이 높습니다.

삼성은 또한 소환장을 통해 SK하이닉스의 자회사인 SK hynix America에 문서를 요청했지만, 피신청인들은 요청된 문서들이 SK hynix America가 점유, 보관 또는 통제할 수 없는 범위 내에서 SK하이닉스주식회사에 이 요청서를 추진하고 있습니다. 예를 들어, SK hynix America가 주요 기술적 또는 재무적 문서들이 SK하이닉스주식회사를 통해서만 입수 가능하다고 주장하는 범위 내에서, 특히 본건 조사 일정의 단축을 고려할 때 지금 이 요청서를 추진하는 것이 필요합니다. |
|---|---|
| **8. 확보하고자 하는 증거 또는 기타 수행하고자 하는 사법행위 및 요청하는 증거 또는 사법행위의 목적** | |
| 8a. 취득하고자 하는 증거 또는 기타 수행하고자 하는 사법 행위(제3조 d항) | 대한민국 사법 당국이 SK하이닉스의 MRDIMM, RDIMM 및 HBM 제품 및 해당 제품들의 기술적 특징에 대한 미국 내 투자 관련 문서들의 사본을 제출하도록 SK하이닉스에 명령할 것을 대한민국 사법 당국에 요청드립니다. 요청된 문서들은 별첨 A에 더 구체적으로 명시되어 있습니다. |
| 8b. 요청하는 증거 또는 사법 행위의 목적 | 요청된 문서들은 U.S.C.(미합중국법전) 제19편 §1337(a)(1)(2) 및 (3)에 따라 국내산업(DI)의 존재와 직접적으로 관련된 증거를 제공할 것이며, 해당 증거는 본건 조사에서 행정법 판사가 진행하는 증거심리에서 도입될 수 있습니다. Netlist는 SK하이닉스가 주장된 특허의 라이센시이며, 따라서 SK하이닉스의 미국 내 투자 중 일부에 의존할 의도가 있다고 주장합니다.

별첨 A의 요청 번호 1-3는 SK하이닉스가 동일한 이 본건 조사와 관련하여 Netlist향 요청서(Letter of Request)에 응답하여 제출했거나 제출할 예정인 문서 및 기타 물건들을 요구합니다. 이 증거는 미합중국법전 제19편 § 1337(a)(2) 및 (3)에 따른 국내산업(DI) 요건의 기술적·경제적 측면과, 본건 조사에서의 배제 명령이 |

미합중국법전 제19편 § 1337(d)에 따른 공익에 해를
끼칠지 여부와 직접적으로 관련됩니다.

요청 번호 4-8은 특정 SK 하이닉스 제품의 기능 및
작동에 관한 기술 문서를 요구합니다. 요청 번호 9-13은
SK 하이닉스 제품 내 구성 요소 및 상호 연결에 관한
기술 문서와 주장된 특허에 대한 선행 기술을
요구합니다. 요청 번호 14-16은 SK하이닉스가 관련
SK하이닉스 제품과 관련해 JEDEC에 제출한 제안서 및
발표 자료를 요구합니다. 이는 미합중국법전 제19편
§1337(a)(2) 및 (3)에 따른 국내산업 요건의 기술적
측면과 직접적으로 관련된 증거로서, 주장된 특허
청구항과 비교하여 제품의 기능을 분석할 것을
요구합니다.

요청 번호 17-20은 SK하이닉스가 배포한 제품 브로셔와
같은 마케팅 자료를 요구합니다. 구체적으로, 이러한
요청은 미합중국법전 제19편 §1337(a)(2) 및 (3)에 따른
국내 산업 요건의 기술적·경제적 측면과 관련된 가격,
가용성 및 주요 제품 기능을 평가하는 데 관련됩니다.

요청 번호 21-29는 SK하이닉스의 DDR5 MRDIMM,
DDR5 RDIMM 및 HBM과 관련된 미국 내 지출 및 투자
기록을 요구하며, 해당 투자의 중요성에 관한 데이터도
포함됩니다. 이는 미합중국법전 제19편 §1337(a)(3)(A),
(B), (C)에 따른 국내 산업의 경제적 측면과 직접적으로
관련된 증거로서, 주장된 특허에서 청구된 발명과
연계된 미국 내 상당한 투자의 존재를 입증해야 합니다.

요청 번호 30은 SK하이닉스가 주장된 특허들 중 한
건을 침해했다는 혐의로 고소된 이전 소송과 관련하여
SK하이닉스가 제출한 서면 제출물을 요구합니다. 이
요청은 미합중국법전 제19편 §1337(a)(1)(B)에 따른
구제를 위해 필요한 주장된 특허의 유효성 및 집행
가능성과 직접적으로 관련됩니다.

| | |
|---|---|
| | 요청 번호 31-43는 배제 명령이 발령될 경우 SK하이닉스가 수요를 충족할 수 있는 충분한 양의 메모리 모듈을 생산할 수 있는 능력과 관련된 서류를 요구합니다. 이 증거는 본 조사에서 배제 명령이 미국의 공공 이익에 해를 끼칠지 여부와 직접적으로 관련됩니다. *참조*: 미합중국법전 제19편 §1337(d). <br><br> 요청 번호 44-45는 본건 조사 또는 주장된 특허와 관련하여 Netlist와 SK하이닉스, 그리고 SK hynix America 간에 체결된 계약서들을 요구합니다. SK하이닉스가 주장된 특허의 라이선시인 만큼, 해당 계약 조건에 관한 정보는 미합중국법전 제19편 §1337(a)(3)에 따른 국내산업(DI) 요건의 경제적 측면 평가에 직접적으로 관련됩니다. <br><br> 요청 번호 46-48은 피신청인들 측 변호인 및 전문가 증인이 제품을 분석할 수 있도록 SK하이닉스 제품의 실물 샘플을 요구합니다. 이 증거는 미합중국법전 제19편 §1337(a)(2) 및 (3)에 따른 국내산업 요건의 기술적 측면과 직접적으로 관련됩니다. |
| 9. 조사 대상자의 신원 및 주소(제3조 e항) | 없음. |
| 10. 조사 대상자에게 질문할 사항 또는 조사 대상 주제에 대한 진술(제3조 f항) | 없음. |
| 11. 열람할 서류 또는 기타 재산(제3조 g항) | 별첨 A에 명시된 문서 요청들의 번호별 목록을 참조하십시오. |
| 12. 선서 또는 확인을 통해 증거를 제출할 것을 요구하는 경우 및 사용해야 하는 특별한 양식(제3조 h항) | 첨부 A에 명시된 각 문서는 해당 문서의 모든 비동일 중도 드래프트 버전들을 포함하여, 축약이나 삭제(redaction) 없이, 평상시 일상 업무 과정에서 보관된 그대로 전체를 제출해 주시기를 정중하게 요청드립니다. |
| 13. 따라야 할 특별한 방법 또는 절차(예: 구두 또는 서면, 축어적 녹취 또는 요약, 반대신문등)(제3조, 제1조 및 제9조). | SK하이닉스주식회사가 요청된 서류를 제출하는 방법에 대한 세부 사항은 별첨 A를 *참조하십시오*. <br><br> 본건 사안과 관련하여, 문서 제출, 증언 및 모든 증언 기록에 적용되는 보호 명령이 발령되었습니다. 본 명령의 사본은 별첨 B로 첨부되어 있습니다. 본 소송은 기밀 및 전유 사업 정보를 포함하고 있으므로, 보호 명령은 해당 정보가 공개되지 않도록 보호하는 역할을 합니다. |

| | 이에 따라, 미국 컬럼비아 특별구 연방 지방법원은 본 요청서(Letter of Request)에 대한 응답으로 득한 모든 문서가 기밀 및 전유 정보를 보호하기 위한 보호명령의 규정에 따라 처리될 것을 요청합니다 |
|---|---|
| 14. 요청의 집행을 위한 시간과 장소, 통지 대상자의 신원 및 주소에 대한 통지 요청(제7조) | 아래에 명시된 개인들에게 집행된 요청서 사본을 가급적 빨리 제공해주실 것을 요청드립니다:<br><br>F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>전화: (202) 389-5000<br>팩스: (202) 389-5200<br>이메일: Samsung-Netlist-ITC@kirkland.com |
| 15. 요청서 집행 시 요청하는 기관의 사법 담당자의 출석 또는 참여 요청(제8조) | 없음. |
| 16. 원산지 국가의 법률에 따른 증거제공 거부권 또는 의무의 명시(제11조 b항) | SK하이닉스는 미국 법률 또는 대한민국 법률에 따라 증거 제공을 거부할 수 있는 특권 또는 의무가 있는 경우에만 증거 제공을 거부할 수 있습니다. |
| 17. 협약 제14조 제2항 또는 제26조에 따라 실비정산 대상 수수료 및 경비를 부담하는 자 | 이 요청서(Letter of Request)에 대한 응답으로 지원을 제공하는 것과 관련된 비용이 있는 경우, 본 법원은 대한민국 중앙당국이 다음 관계자에 의하여 정산 받는 것을 확인합니다:<br><br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>전화: (202) 389-5000 |
| 요청 날짜 | 2026년 _____(월) _____(일) |
| 요청하는 기관의 서명 및 날인 | 명예로운 _____<br>미국 컬럼비아 특별구 연방법원 판사<br>United States District Judge United States District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, D.C. 20001 |

<table>
<tr><td></td><td>United States of America

서명: _____,

2026년 _____(월) _____(일) 당일

[아래에 법원 인장 찍음:]</td></tr>
</table>

| | United States of America<br><br>서명: _____,<br><br>2026년 \_\_\_\_\_(월) \_\_\_\_\_(일) 당일<br><br>[아래에 법원 인장 찍음:] |
|---|---|

첨부:
별첨 A: SK가 제출할 문서
별첨 B: ITC 보호 명령
별첨 C: ITC 기본 규칙
별첨 D: 소장(공개버전) 및 보충 자료

## CERTIFICATE OF TRANSLATION ACCURACY

I am a professional translator, reviewer, and/or project coordinator specializing in translating English to Korean, Japanese, and Chinese and vice versa.

I served as Chief Examiner of the certified court interpreter test for the State of California and as a contract translator and interpreter for various federal agencies through the U.S. Department of State of for more than a decade. I worked as an instructor at the University of California at Berkeley, and the Middlebury Institute of International Studies at Monterey Graduate Program in Translation.

I have more than 35 years of project coordinator experience in routinely translating technical, legal, and business documents from English to Korean and vice versa submitted to, among others, Korean judicial authorities, U.S. federal courts, the U.S. International Trade Commission (ITC), the U.S. Patent and Trademark Office (USPTO), and the USPTO Patent Trial and Appeal Board (PTAB).

I certify that I translated the following document from the English language to the Korean language. I also certify that it is a true, correct, and complete translation to the best of my knowledge and ability.

### Appendix B to Order 14 (Letter of Request for Documents and Things)

I certify under penalty of perjury that the foregoing is true and correct.

Executed this on the 5th day of March 2026 in Contra Costa County of the State of California.

By: _____
        Alex N. Jo
        Member, ATA

# Attachment A

# 별첨 A
# (Attachment A)

## SK 하이닉스주식회사에서 제출할 문서 또는 기타 재산
## 정의

다음 각 정의는 아래에 기재된 요청에 적용됩니다.

1.      "SK 하이닉스", "귀하", "귀하 자신"은 SK 하이닉스주식회사 및 그 모든 전신(predecessors), 사업부, 부서, 자회사, 그리고 모든 모회사 및 계열사 또는 법인, 그리고 모든 현직 또는 전직 이사, 임원, 직원, 파트너, 대리인, 컨설턴트를 의미합니다, 그리고 전문가, 대리인, 변호사 등 SK 하이닉스주식회사에 의해 고용되거나 기타 방식으로 대리하는 기타 모든 개인 또는 사업체와 함께 SK 하이닉스주식회사가 직간접적으로 전체 또는 일부를 소유하거나 지배하는 기타 법인들을 의미합니다.

2.      "신청인" 또는 "Netlist"는 신청인 Netlist, Inc.를 의미하며, 여기에는 다음이 포함됩니다. 다음: 현재 및 이전의 모든 법인, 현재 및 이전의 모든 전신(전임자), 권리상 전신, 인수인, 승계인, 양수인, 계열사, 직간접 자회사, 모회사 및 신탁; Netlist 와 공동 지배하에 있거나, Netlist 와 합작 투자하거나, Netlist 와 라이선스 또는 파트너십 계약에 따라 활동하는 모든 회사, 법인 및 기타 엔티티; Netlist 의 전체 또는 일부를 소유하거나 Netlist 에 의해 소유되는 모든 엔티티, 그리고 그 모든 사업부 및 운영 단위. 또한 Netlist 에는 Netlist 의 현직 및 전직 직원, 대리인, 종업원, 대표, 이사, 임원, 회계사, 컨설턴트, 변호사, 조사관 및 현재 또는 과거에 Netlist 를 대리하거나 Netlist 의 지시 및 통제 하에 행동하거나 행동한다고 하는 모든 기타 모든 자를 포함합니다.

3.      "피신청인(들)"은 삼성전자주식회사, 삼성전자 미국법인, 삼성반도체 주식회사, 구글 주식회사, 슈퍼마이크로컴퓨터 주식회사 등 본건 조사에서 언급된 피신청인들 중 일부 또는 전부를 지칭합니다.

4.      "삼성"은 삼성전자주식회사, 삼성전자 아메리카, 주식회사, 삼성반도체, 주식회사 등을 의미합니다.

5.      "본건 조사"라 함은 상기 제목의 조사, *특정 동적 랜덤 액세스 메모리(D 램) 장치,*

1

*이를 포함하는 제품 및 그 컴포넌트*, 조사 번호 337-TA-1472 를 의미합니다.

6.     ""035 특허"라 함은 미국 특허 제 9,824,035 호를 의미하며, 그 정정, 재심사 또는 출원서들을 포함합니다.

7.     "'731 특허'는 미국 특허 제 10,025,731 호를 의미하며, 그 정정, 재심사 또는 출원서들을 모두 포함합니다.

8.     "'523 특허"는 미국 특허 제 10,217,523 호를 의미하며, 그 정정, 재심사 또는 출원서들을 모두 포함합니다.

9.     "'608 특허'는 미국 특허 제 10,268,608 호를 의미하며, 그 정정, 재심사 또는 출원서류를 모두 포함합니다.

10.    "'087 특허'는 미국 특허 제 12,308,087 호를 의미하며, 그 정정, 재심사 또는 출원서류를 모두 포함합니다.

11.    "'366 특허'는 미국 특허 제 12,373,366 호를 의미하며, 그 정정, 재심사 또는 출원서들을 포함합니다.

12.    "주장된 특허들(Asserted Patents)"은 '035, '731, '523, '608, '087, '366 특허 및 Netlist 가 수정 소장에서 주장하도록 허용될 수 있는 기타 모든 특허를 의미합니다.

13.    "이전 소송(이전 소송)"은 미국 연방지방법원, ITC 위원회 또는 미국 특허청에서 주장된 특허와 관련하여 귀하와 Netlist 간에 진행 중인 모든 절차, 소송 또는 소송을 의미하며, 여기에는 *Netlist, Inc. v. SK 하이닉스 America Inc. 외/*, 6:20-CV-00525(텍사스 서부 디스트릭트 2021 년 5 월 10 일), 6:20-CV-00194(텍사스 서부 디스트릭트 2020 년 3 월 17 일), 미국 특허심판원-당사자계 심판 PTAB-IPR2020-01421(미국 특허심판원 2020 년 8 월 21 일), *SK 하이닉스주식회사 외 대 Netlist, Inc.*등이 포함됩니다.

14.    "요청(들)"이란 본 별첨의 아래 제출될 정보의 범주들을 의미합니다.

15.    "제품(들)"이란 특정 기능이나 목적을 달성하기 위해 전기적, 기계적, 화학적 또는 기타 방식으로 함께 동작하도록 설계된 기계, 제조물, 장치, 기기, 기구, 메커니즘, 어플라이언스, 공정, 방법 또는 컴포넌트 또는 컴포넌트의 조립체(개별적으로 또는 집합적으로)를 의미하며, 판매 청약되거나, 판매 또는 개발 중인 것을 포함합니다.

16.    "DDR5"는 Double Data Rat(더블 데이터 전송률) 5 를 의미하며, 동기식 동적 랜덤 액세스 메모리("SDRAM")라고 하는 5 세대 컴퓨터 메모리 유형을 의미합니다.

18.    "DIMM(들)"은 MDIMM, RDIMM, UDIMM 및 SODIMM 을 포함하되 이에 국한되지 않는 듀얼 인라인 메모리 모듈을 의미합니다.

19.    "MRDIMM(들)"은 멀티플렉스랭크 듀얼 인라인 메모리 모듈, 멀티랭크 버퍼링 듀얼 인라인 메모리 모듈 및 멀티플렉서 결합 랭크 듀얼 인라인 메모리 모듈을 의미합니다.

20.    "RDIMM(들)"은 등록된 듀얼 인라인 메모리 모듈을 의미합니다.

21.    "HBM(들)"은 고대역폭 메모리(HBM2, HBM2E, HMB3, HMB3E, HMB4 및 HBM4E 포함)를 의미합니다.

22.    "컴포넌트(들)"는 전력 관리 집적 회로(PMIC), 등록 클록 드라이버(RCD) 칩, 다중 등록 클록 드라이버(MRCD) , D 램 칩, D 램 다이, 인터페이스 다이, 로직 다이, 버퍼 다이, 제어 다이, 데이터 버퍼(DB)를 포함하되 이에 국한되지 않습니다, 멀티플렉스랭크 데이터 버퍼(DB), 온도 센서, 인쇄 회로 기판, 직렬 존재 감지(SPD) 회로를 포함하되 이에 국한되지 않는, DDR5 MDIMM, DDR5 RDIMM 또는 HBM 제품에 조립되는 컴포넌트들을 의미합니다.

23.　　"TSV"는 실리콘 관통전극(Through-Silicon Via)을 의미합니다.

24.　　"사양서(들)"란 로직 다이어그램, 상태 다이어그램, 블록 다이어그램, 타이밍 다이어그램, 칩 레이아웃, 마스크 레이아웃, 인터포저 레이아웃, 보드 레이아웃 파일, 칩 레이아웃 파일, CAD 파일을 의미합니다, 회로도, 회로도, 상호 연결도, 핀아웃 다이어그램, 볼아웃 다이어그램 및 입/출력 신호 설명 등을 포함하여 제품에 대한 요구 사항, 설계, 기능 및 아키텍처 요약 문서를 의미합니다.

25.　　"자재명세서(들)"이란 완제품을 제조하는 데 필요한 모든 원자재, 컴포넌트, 하위 조립품 및 수량을 기재한 목록을 의미합니다.

26.　　"원가명세서"란 SK 하이닉스가 발생한 인건비, 시설비 및 장비비와 관련된 비용을 식별하는 모든 문서를 의미합니다.

27.　　"손익계산서(들)"이라 함은 SK 하이닉스의 제품별 매출 및 비용을 표시하는 모든 문서를 의미합니다.

28.　　"생산 용량 보고서(들)"란 SK 하이닉스의 제품 생산 증대 능력을 나타내는 모든 문서를 의미합니다.

29.　　"제품 브로셔"라 함은 제품을 상세히 설명하는 SK 하이닉스의 인쇄물 또는 디지털 마케팅 자료를 의미합니다.

30.　　"제조 기록(들)"이란 일정 기간 동안 SK 하이닉스가 제조한 제품의 수량을 나타내는 모든 문서를 의미합니다.

31.　　"판매 기록(들)"이란 특정 제품 출력에 대해 일정 기간 동안 SK 하이닉스에 의해 또는 SK 하이닉스를 위해 이루어진 판매 수량을 나타내는 모든 문서를 의미합니다.

32.    "제출서면"이란 권한 있는 기관에 제출되거나 소송의 상대방에게 송달된 모든 서류를 의미합니다.

33.    "문서"는 위원회 실무및절차규칙, 연방민사절차규칙 및 연방증거규칙에서 고려하는 해당 용어의 전체 범위로 광범위하게 정의되며 동일하지 않은 모든 문서 사본, 최종 문서의 모든 초안 버전, 기타 모든 서면, 타이핑, 인쇄, 녹음 또는 그래픽으로 묘사된 모든 형태 또는 구현물을 포함합니다, 그리고 필요한 경우 정보를 얻고 번역할 수 있는 기타 모든 데이터 편집물로서, 생성된 매체에 관계없이 귀하가 실제로 또는 추정적으로 보관 또는 통제하고 있거나 과거에 보관하고 있는 모든 데이터 편집물, 복제 또는 저장(요청된 정보가 포함된 컴퓨터 프로그램 및 파일 포함), 연방증거규칙 1001 조에 정의된 대로 모든 녹음 또는 서면 등을 포함합니다. 원본 텍스트 또는 그 사진 복제본의 일부가 아닌 이니셜, 스탬프 날인 이니셜, 주석 또는 표기 등의 표시가 있는 모든 문서는 별도의 문서입니다.

34.    "물건" 또는 "물건들"은 연방규정집 제 19 편 §210.30 및 연방민사소송규칙 규칙 34 에 따라 허용되는 가장 넓은 의미를 갖습니다. 이 의미에는 프로토타입, 모형 및 그 실물 시편이 포함됩니다.

포함하되 이에 국한되지 않는 모든 종류와 성격의 유형적 물체를 포함합니다.

35.    "엔티티" 또는 "엔티티들"은 모든 개인(Person), 법인, 회사, 파트너십, 개인 사업자, 회사, 이사회, 합작 투자, 조합, 조직, 신탁, 정부 기구, 기관, 당국, 위원회 또는 기타 모든 법인(juristic Person), 사업부 또는 집단 조직과 그 법적, 정부기구적, 조직적 또는 정치적 하부 조직을 의미합니다. 엔티티의 행위에는 그 이사, 임원, 소유주, 구성원, 직원, 대리인, 변호사 및 엔티티를 대리하는 기타 모든 대리인의 행위가 포함됩니다.

36.    "개인(Person)" 또는 "개인들(Persons)"은 자연인으로서의 개인 또는 개인들을 의미합니다.

## 지침

다음 지침은 본 요청에 적용됩니다:

1.    각 단어의 단수형은 복수형으로도 해석됩니다.

2.    모든 대명사는 각 경우에 가장 적합한 남성, 여성 또는 중성 성별을 지칭하는 것으로 해석됩니다.

3.    "및", "또는", "및/또는"이라는 단어는 해당 요청의 범위를 최대한 확대하는 방식으로 결합적 또는 분리적으로 해석되어야 합니다.

4.    "어떤" 및 "모두/모든"라는 단어는 "어떤 것이든 및 모든 것"을 의미하는 것으로 해석되어야 합니다.

5.    "각" 및 "모두/모든"이라는 단어는 "각각 및 모두/모든"을 의미하는 것으로 해석됩니다.

6.    "포함(포함)" 및 그 모든 변형어는 "포함하되 이에 국한되지 않고(포함, 제한 없이)"를 의미하는 것으로 해석됩니다.

7.    본 문서에서 구체적으로 정의되지 않은 용어는 위원회 실무및절차규칙("위원회 규칙")과 행정법 판사의 기본규칙("기본규칙"), 그리고 위원회 규칙 또는 기본규칙과 상충되지 않는 범위 내에서 연방민사소송규칙에 따라 정의됩니다.

8.    귀하가 요청서 내 용어의 의미가 불분명하다고 판단하는 경우, 귀하는 해당 용어를 해석하되 해석상 자칫 응답 대상에서 제외될 수 있는 정보, 문서 또는 물건이 응답 대상에 포함되는 방식으로 해석해야 합니다. 용어 정의에 대한 이의나 왜 이해가 잘 안 되는지 그 성격을 상세히 설명하고, 귀하가 내리는 용어 정의를 제시하시기 바랍니다.

9.    본 요청은 귀하가 알고 있거나 귀하에게 가용한 모든 관련 정보, 문서 및 물건, 그리고 귀하의 실질적 또는 법적 점유, 보관 또는 통제 하에 있는 모든 관련 정보, 문서 및 물건을 요구하며,

7

여기에는 SK 하이닉스가 알고 있거나 SK 하이닉스에 가용한 모든 관련 정보, 문서 및 물건도 포함됩니다. 본 증거개시(디스커버리) 요청은 본 문서 작성일 현재 및 위원회 규칙이 허용하는 최대한의 범위 내에서 정보, 문서 및 물건을 요구하며, 본건 조사에서 사실관계 증거개시가 종료될 때까지 귀하가 획득하거나 식별한 모든 관련 정보, 문서 및 물건을 포함합니다.

10.　　본 요청은 귀하가 이에 응답하는 날까지 획득하거나 식별한 정보를 포함하며, 그 이후에도 계속되는 것으로 간주됩니다. 따라서 귀하는 연방규정집전 제 19 편 §210.27(f)에 따라 본 요청에 대한 보충 답변으로, 재판 심리 시점까지 귀하가 확인, 취득 또는 인지하게 된 모든 추가 정보를 즉시 제출해야 합니다.

11.　　가능한 경우, 별도로 명시되지 않는 한 요청된 모든 재무 데이터는 회계 연도 기준으로 제공해야 합니다. 회계 연도 데이터를 제공하는 경우, 해당 회계 연도의 시작일과 종료일을 명시해 주십시오.

12.　　피신청인들의 요청에 대한 답변으로, 귀하는 요청된 모든 문서 및 물건을 제출하는 것 외에 서면 답변을 제공해야 합니다.

13.　　"보고서" 제출을 요청받은 경우, 귀하는 SK 하이닉스 또는 해당 서비스 제공자가 관리하는 데이터베이스에서 추출한 데이터를 요청된 필드별로 정리한 엑셀 또는 기타 일반적인 상용 포맷의 원본 차트를 제공하거나, 요청된 데이터가 포함된 전체 데이터베이스(들)를 제출하거나 열람 및 복사를 허용할 수 있습니다.

14. 귀하가 요청의 일부에 대해 이의를 제기하고 답변을 거부하는 경우, 귀하는 귀하의 완전한 이의와 그 근거를 모두 명시하고, 해당 요청의 나머지 부분에 대해서도 완전한 답변을

제공해야 합니다.

15.        귀하가 변호사-의뢰인 비밀유지 특권, 저작물 면책 특권 또는 기타 특권 또는 면책 주장에 의해 보호되는 커뮤니케이션 또는 문서에 포함되어 있다는 이유로 요청에 응하지 않는 정보, 문서 또는 사물을 보류하는 경우, 귀하는 각 문서, 물건 또는 정보에 대해 최소한 다음 사항을 기재한 서면 진술서를 제출해야 합니다: (a) 주장된 보호 정보가 포함된 각 커뮤니케이션 또는 문서의 식별 정보(날짜, 제목, 작성자 및 페이지 수 포함); (b) 정보가 전달된 각 당사자(예: 문서의 작성자, 초안 작성자 또는 준비자 및 해당 문서가 전달, 회람, 복사되거나 접근 권한이 부여된 개인)의 식별 정보(작성 또는 배포 당시의 이름, 직위, 주소 및 고용주 포함); (c) 통신 또는 문서의 유형(예: 서신, 메모, 계약서) 식별; (d) 정보의 주제 사항에 대한 간략한 설명; (e) 응답 정보, 문서 또는 물건을 보류하는 근거로 귀하가 의존하는 법적 및 사실적 근거(들)에 대한 요약으로, 위원회가 귀하의 특권 또는 면책권 주장에 대한 결정을 내릴 수 있도록 충분한 세부 사항을 제공할 것; 그리고 (f) 주장된 특권 또는 면책권의 모든 요소가 충족되었으며 포기되지 않았음을 증명하는 인증서. 항목 (b)에 대한 답변에 명시된 개인 중 변호사 또는 외국 특허 대리인이 있는 경우, 귀하는 해당 개인을 그러한 자격으로 명시해야 합니다.

16.        요청에 응하는 문서, 물품 또는 정보 중 귀하의 점유, 보관 또는 통제 하에 있지 않은 경우, 귀하는 각 요청에 대한 응답에서 다음 정보를 제공해야 합니다: (a) 문서, 물건 또는 정보의 식별 정보(날짜, 제목, 작성자 및 페이지 수 포함), (b) 그 성격(예: 서신, 메모, 차트, 시제품) 및 주제에 대한 간략한 설명, 그리고 (c) 그 문서, 물건 또는 정보를 점유, 보관 또는 통제하는 개인 또는 단체의 식별 정보. 해당 문서, 물품 또는 정보가 이전에는 귀하의 점유, 보관 또는 통제 하에 있었으나 더 이상 그렇지 않은 경우, 귀하는 각 요청에 대한 답변에서 다음 정보를 추가로 제공해야 합니다: (a) 해당

문서, 물건 또는 정보의 사본을 받은 모든 사람의 식별 정보, (b) 해당 문서, 물건 또는 정보에 대해 이루어진 처분 내용에 대한 진술, (c) 해당 처분의 사유에 대한 진술; (d) 해당 처분에 대해 어떤 방식으로든 알고 있는 모든 개인 또는 엔티티들의 신원 확인, 그리고 (e) 해당 처분에 대한 책임이 있는 개인 또는 엔티티들의 신원 확인.

17.    요청에 응하는 문서, 물건 또는 정보 중 파기되었거나 파기되었다고 주장되는 것에 대해 귀하는 각 요청에 대한 응답(들)에서 다음 정보를 제공해야 합니다: (a) 문서, 물건 또는 정보의 식별 정보(날짜, 제목, 작성자, 페이지 수 포함); (b) 그 성격(예: 서신, 메모, 차트, 시제품) 및 주제 사항에 대한 간략한 설명; (c) 해당 문서, 물건 또는 정보의 사본을 수령한 모든 자의 신원; (d) 파기 사유 및 경위에 관한 진술; (e) 파기 사실을 인지한 모든 자의 신원; (f) 파기에 책임이 있는 자(들)의 신원.

18.    어떤 요청에 대한 답변이 "없음"인 경우, 특정 증거개시 요청에 부합하는 문서가 없는 경우, 제출 요청서나 기타 증거개시 요청의 일부가 SK 하이닉스 사업에 해당사항이 없는 경우 귀하는 답변서에 이를 명시하여야 합니다.

19.    귀하가 필요한 정보를 확보하기 위해 충분한 조사를 수행한 후에도 요청에 완전하고 완벽하게 답변할 수 없는 경우, 귀하는 그 사실을 명시해야 합니다. 또한 귀하는 각 요청에 대한 응답 시 다음 정보를 제공해야 합니다: (a) 가능한 최대한의 범위에서 요청에 대한 답변, (b) 귀하가 완전히 응답할 수 없다고 주장하는 요청서에 어느 부분이 이에 해당되는 부분인지 명시하는 진술; (c) 완전히 응답할 수 없다는 주장을 뒷받침하기 위해 귀하가 그 근거로 의존하는 사실에 대한 진술; 및 (d) 요청서의 미응답 부분에 대해 귀하가 보유한 지식, 정보 및 신념을 특정하는 진술.

20.    귀하의 요청에 대한 응답이 어떤 면에서든 제한이 있는 경우, 귀하는 그러한 제한 사항의 세부 내용과 사유를 명시해야 합니다.

21.    귀하는 모든 문서 및 물건을 일상 업무 과정에서 보관되는 것과 동일한 파일 또는 기타 조직 업무 환경 그대로 제출해야 합니다. 예를 들어, 파일, 사건 기록부 또는 기타 그룹의 일부인 문서는 해당 파일, 사건 기록부 또는 부서의 다른 모든 문서와 함께 원본과 동일한 순서 또는 배열 방식으로 제출해야 합니다. 또는 귀하는 요청에 응답하는 문서 및 물건을 해당 요청에 해당하는 라벨이 부착된 그룹으로 제출해야 합니다. *참조*: 미국연방규정집 제 19 편 §210.30(b)(2). 설계, 회계, 재무 및 판매 데이터를 포함하되 이에 국한되지 않는 문서가 하드 카피와 컴퓨터, 전자, 자기 및 광학 매체 등 기타 형태로 동시에 보관되는 경우, 이 두 가지 형태를 모두 제공해야 합니다.

22.    귀하가 소프트웨어 또는 소스 코드를 제출하는 경우 해당 소프트웨어 또는 소스 코드에는 모든 관련 문서, 주석 또는 기타 설명 자료가 첨부되어야 하며, 귀하의 일상 업무 과정에서 해당 코드 및 부속 자료가 보관되는 기본 형식으로 제출되어야 합니다.

23.    피신청인의 요청에 응답하는 문서의 원본, 초안, 사본 또는 복제본이 일부를 포함, 제외 또는 변경하거나 부록, 주석, 수정, 변경 또는 개정 사항을 추가하기 위해 수정된 경우, 귀하는 해당 원본 초안, 사본 또는 복제본과 모든 후속 버전 및 수정본을 제출해야 합니다.

24.    귀하는 첨부 문서, 동봉 문서, 커버 레터, 메모, 부록을 포함한 모든 문서를 축약하거나 편집하지 않고 전부를 제출해야 합니다. 문서에 원본 텍스트의 일부가 아닌 주석이나 메모가 기재된 경우, 이는 별도의 문서로 간주됩니다.

25.     응답 대상 문서가 영어 이외의 언어로 작성된 경우, 귀하는 해당 문서를 원본 언어로 제출하고, 추가로 문서의 일부 또는 전체 영어 번역본을 모두 제출해야 합니다. 또는 그러한 번역본이 존재하지 않는 경우, 응답 대상 문서와 관련하여 영어로 작성된 모든 문서를 제출해야 합니다.

## 제출 요청

### 요청 번호 1

Netlist 의 요청서(Letter of Request)의 일환으로 발급된 Netlist 의 제출요청(Requests for Production)에 대한 답변으로 SK 하이닉스가 Netlist 에 제출한 문서들.

### 요청 번호 2

Netlist 의 요청서(Letter of Request)의 일환으로 발급된 Netlist 의 정보요청(Requests for Information)에 대한 답변으로 SK 하이닉스가 Netlist 에 제공한 서면 답변들.

### 요청 번호 3

증인진술요청서에 대한 SK 하이닉스 증인의 답변 내용에 대한 녹취록, 영상 녹화본 또는 기타 기록물들.

### 요청 번호 4

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 DDR5 M 램 및 그 컴포넌트들의 설계, 기능, 동작을 상세히 기술한 사양서들.

### 요청 번호 5

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 DDR5 RDIMM 및 그 컴포넌트들의 설계, 기능, 동작을 상세히 기술한 사양서들.

### 요청 번호 6

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 SK 하이닉스 반도체에 대해, 반도체 및 그 컴포넌트들의 설계, 기능 및 동작을 상세히 기술한 사양서들.

### 요청 번호 7

HBM1 에 대해, HBM1 및 그 컴포넌트들의 설계, 구조, 기능 및 동작을 상세히 기술한 사양서들.

**요청 번호 8**

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 HBM 의 경우, 해당 HBM 의 TSV 단면도 및 TSV 3D 도면들.

**요청 번호 9**

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 DDR5 MRDIMM 의 경우, DDR5 MRDIMM 의 컴포넌트 상호 연결이 표시된 사양서들.

**요청 번호 10**

2021 년 1 월 1 일 이후 SK 하이닉스에서 또는 SK 하이닉스를 위해 생산된 DDR5 RDIMM 의 경우, DDR5 RDIMM 의 컴포넌트 상호 연결이 표시된 사양서들.

**요청 번호 11**

2021 년 1 월 1 일 이후 SK 하이닉스에서 또는 SK 하이닉스를 위해 생산된 HBM 의 경우, HBM 의 컴포넌트 상호 연결이 표시된 사양서들.

**요청 번호 12**

HBM1 의 경우, 착상 날짜, 실시화 날짜, 최초 판매 청약(들), 최초 판매(들), 최초 공개 전시(들)를 식별하고 입증하는 사양서들.

**요청 번호 13**

주장된 특허들의 선행 기술을 구성하고 주장된 특허의 출원일 이전에 설계 또는 판매된 DDR DIMM 또는 HBM 의 구조 및 동작을 설명하기에 충분한 문서들과 그러한 각 선행 기술 제품 또는 실제 품목의 실물 샘플 2 개.

**요청 번호 14**

DDR5 MRDIMM 의 경우, 귀하가 JEDEC 회의, 컨퍼런스, 전시회, 세미나 또는 컨벤션에서 준비, 배포 또는 전시한 프리젠테이션 또는 제안서.

**요청 번호 15**

DDR5 RDIMM 에 관하여, JEDEC 회의, 컨퍼런스, 전시회, 세미나 또는 컨벤션에서 귀하가 준비, 배포 또는 전시한 프리젠테이션 또는 제안서의 경우.

**요청 번호 16**

HBM 에 관하여, JEDEC 회의, 컨퍼런스, 전시회, 세미나 또는 컨벤션에서 귀하가 준비, 배포 또는 전시한 프리젠테이션 또는 제안서.

**요청 번호 17**

2021 년 1 월 1 일 이후 SK 하이닉스가 배포한 DDR5 MRDIMM 제품 브로슈어(판매 가격 또는 DDR5 MRDIMM 의 동작 시연이 식별된 내용).

**요청 번호 18**

2021 년 1 월 1 일 이후 SK 하이닉스가 배포한 DDR5 RDIMM 제품 브로슈어(판매 가격 또는 DDR5 MRDIMM 의 동작 시연이 식별된 내용).

**요청 번호 19**

2021 년 1 월 1 일부터 SK 하이닉스가 배포한 HBM 제품 브로슈어 (판매 가격 또는 DDR5 MRDIMM 의 동작 시연이 식별된 내용).

**요청 번호 20**

SK 하이닉스에서 배포한 HBM1 제품 브로슈어(판매 가격 또는 DDR5 MRDIMM 의 동작 시연이 식별된 내용).

**요청 번호 21**

2021 년 1 월 1 일 이후 (i) 미국 내 및 (ii) 미국 외 지역에서 제조된 DDR5 MRDIMM 의 총 수량이 식별된 기록물들.

**요청 번호 22**

2021 년 1 월 1 일 이후 (i) 미국 및 (ii) 미국 외 지역에서 제조된 DDR5 RDIMM 의 총 수량이 식별된 기록물들.

**요청 번호 23**

2021 년 1 월 1 일 이후 (i) 미국 및 (ii) 미국 외 지역에서 제조된 HBM 의 총 수량이 식별된 기록물들.

**요청 번호 24**

2021 년 1 월 1 일 이후 (i) 미국 내 및 (ii) 미국 외 지역에서 판매된 단위로 DDR5 MRDIMM 의 총 판매량이 식별된 판매 기록물들.

**요청 번호 25**

2021 년 1 월 1 일 이후 (i) 미국 내 및 (ii) 미국 외 지역에서 판매된 단위로 DDR5 RDIMM 의 총 판매량이 식별된 판매 기록물들.

**요청 번호 26**

2021 년 1 월 1 일 이후 (i) 미국 및 (ii) 미국 외 지역에서 판매된 단위로 HBM 의 총 판매량이 식별된 판매 기록물들.

**요청 번호 27**

2021 년 1 월 1 일 이후 (i) 미국 및 (ii) 미국 외 지역에서 발생한 DDR5 MRDIMM 의 매출액 및 비용이 식별된 손익 계산서.

**요청 번호 28**

2021 년 1 월 1 일 이후 (i) 미국 및 (ii) 미국 외 지역에서 발생한 DDR5 RDIMM 에 대한 매출액 및 비용이 식별된 손익 계산서.

**요청 번호 29**

2021 년 1 월 1 일 이후 (i) 미국 및 (ii) 미국 외 지역에서 발생한 HBM 에 대한 매출액 및 비용이 식별된 손익 계산서.

**요청 번호 30**

'523 특허와 관련된 이전 소송에서 제출된 서면 제출물들.

## 요청 번호 31

귀사의 DDR5 MRDIMM 생산 캐파 및 생산량 증가 능력을 입증하기에 충분한 문서.

## 요청 번호 32

귀사의 DDR5 RDIMM 생산 캐파 및 생산량 증가 능력을 입증하기에 충분한 문서.

## 요청 번호 33

귀사의 HBM 생산 캐파 및 생산량 증가 능력을 입증하기에 충분한 문서.

## 요청 번호 34

2023 년 이후 SK 하이닉스의 HBM 제품 매진 여부와 2027 년까지 수요 대비 공급이 타이트할 것으로 예상되는지 여부를 보여주기에 충분한 문서들로서, https://www.cnbc.com/2025/10/29/sk-hynix-q3-profit-revenue-record-.html 에 게재된 기사에서 SK 하이닉스 임원의 발언이 맞다고 컨펌하거나 또는 틀리다고 반박하기에 충분하고, 아울러 해당 임원을 식별할 수 있기에 충분한 문서들 포함.

## 요청 번호 35

최소 2028 년까지 지속될 것으로 예상되는 널리 알려진 메모리 공급 부족을 설명하기에 충분한 문서.

## 요청 번호 36

경쟁 분석, 판매 또는 시장 예측, 공급망 분석, 제조 캐파 분석을 포함하여 2025 년 1 월 1 일부터 2028 년 1 월 1 일까지의 DDR5 DIMM 의 공급, 수요, 시장 여건 및 경쟁 여건을 보여주기에 충분한 문서.

**요청 번호 37**

경쟁 분석, 판매 또는 시장 예측, 공급망 분석 및 제조 능력 분석을 포함하여 2025 년 1 월 1 일부터 2028 년 1 월 1 일까지의 HBM 의 공급, 수요, 시장 여건 및 경쟁 여건을 보여주기에 충분한 문서들.

**요청 번호 38**

새로운 메모리 패키징 시설의 건설 또는 확장과 관련된 계획, 결정 또는 분석을 설명하기에 충분한 문서들.

**요청 번호 39**

최소 2028 년까지 전 세계 DDR5 DIMM 공급 물량 대비 귀사의 전 세계 DDR5 DIMM 수요 예측을 보여주기에 충분한 문서들.

**요청 번호 40**

최소 2028 년까지 미국 내 DDR5 DIMM 공급 물량 대비 미국 내 DDR5 DIMM 수요에 대한 귀사의 예측을 보여주기에 충분한 문서들.

**요청 번호 41**

최소 2028 년까지 전 세계 HBM 공급 물량 대비 귀사의 전 세계 HBM 수요 예측을 보여주기에 충분한 문서들.

**요청 번호 42**

최소 2028 년까지 미국 내 HBM 공급 물량 대비 미국 내 HBM 수요에 대한 귀사의 예측을 보여주기에 충분한 문서들.

**요청 번호 43**

2025 년 1 월 1 일부터 2028 년 1 월 1 일까지의 DDR5 DIMM 및 HBM 가격 예측을 보여주기에 충분한 문서들.

**요청 번호 44**

본건 조사 또는 주장된 특허에 관한 귀하와 Netlist 간의 계약들.

**요청 번호 45**

본건 조사 또는 주장된 특허에 관한 SK hynix America 간의 계약들.

**요청 번호 46**

2021 년 1 월 1 일 이후 SK 하이닉스에 의해 또는 SK 하이닉스를 위해 생산된 DDR5 MRDIMM 의 대표적인 실물 샘플 1 개.

**요청 번호 47**

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 DDR5 RDIMM 의 대표적인 실물 샘플 1 개.

**요청 번호 48**

2021 년 1 월 1 일 이후 SK 하이닉스에 의하여 생산되거나 SK 하이닉스를 위해 생산된 HBM 의 대표적인 실물 샘플 1 개.

**CERTIFICATE OF TRANSLATION ACCURACY**

I am a professional translator, reviewer, and/or project coordinator specializing in translating English to Korean, Japanese, and Chinese and vice versa.

I served as Chief Examiner of the certified court interpreter test for the State of California and as a contract translator and interpreter for various federal agencies through the U.S. Department of State of for more than a decade. I worked as an instructor at the University of California at Berkeley, and the Middlebury Institute of International Studies at Monterey Graduate Program in Translation.

I have more than 35 years of project coordinator experience in routinely translating technical, legal, and business documents from English to Korean and vice versa submitted to, among others, Korean judicial authorities, U.S. federal courts, the U.S. International Trade Commission (ITC), the U.S. Patent and Trademark Office (USPTO), and the USPTO Patent Trial and Appeal Board (PTAB).

I certify that I translated the following document from the English language to the Korean language. I also certify that it is a true, correct, and complete translation to the best of my knowledge and ability.

**Appendix B Attachment A (Requests)**

I certify under penalty of perjury that the foregoing is true and correct.

Executed this on the 4th day of March 2026 in Contra Costa County of the State of California.

By: _____

Alex N. Jo
Member, ATA

# Attachment B

미국 국제무역위원회

워싱턴**DC**

| |
|---|
| 사건명:<br><br>**특정한 동적임의접근메모리(DRAM)**<br>**장치, 이를 포함하는 제품 및 그 구성요소** |

조사 번호: **337-TA-1472**

**명령 번호: 1:** 　　　　　　　**보호 명령**

(2025년 12월 31일)

　　본 문서에는 보호 명령과 행정 명령이 첨부되어 있다.

**이와 같이 명령한다.**

**MaryJoan McNamara**

행정 심판 판사

미국 국제무역위원회
워싱턴**DC**

| |
|---|
| 사건명:<br><br>**특정한 동적임의접근메모리(DRAM)**<br>**장치, 이를 포함하는 제품 및 그 구성요소** |

조사 번호: **337-TA-1472**

### 보호 명령

**본 보호 명령의 일부**로서 행정 명령이 포함된다: 제16-01호 첨부. 모든 당사자는 이를 면밀하게 숙지하여야 한다. 제3(vi)항의 문언은 비밀정보를 이용할 수 있는 목적을 보충하고 명확히 규정한다. 모든 당사자는 보호 명령에 의하여 구속되는 것에 동의하는 합의를 구성하는, 제4(i)항과 제4(ii)항의 확인 문언을 추후에 위원회에 제출하는 모든 서신에 반드시 포함시켜야 한다.

위에 명시된 절차의 당사자들에 의하여 그리고 당사자들 간에 위원회 규칙(19 C.F.R. § 210.5)에 용어의 정의가 규정된 영업비밀 또는 기타 기밀 연구, 개발 또는 상업 정보와 관련이 있는 문서와 정보를 구하거나 작성하거나 제시할 수 있다.

**이에 다음과 같이** 명령한다:

1.        비밀 영업 정보란 여하한 개인, 사업체, 조합, 주식회사 또는 기타 조직의 영업비밀, 절차, 운영, 업무 방식 또는 기구 혹은 생산, 판매, 출하, 구매, 양도, 고객 식별, 재고자산, 이익·이득·손실·지출에 관련된 정보 혹은 상업적 가치를 갖는 그 외의 다른 정보를 말하며 이러한 정보가 공개될 경우 (i) 위원회가 법률에 규정된 임무를 수행하는 데 필요한 정보를 입수하는 능력을 저해하거나 (ii) 위원회가 법률에 의하여 그러한 정보를

공개할 것을 요구받지 않는 한 관련 정보를 입수하는 대상이 되는 개인, 사업체, 조합, 주식회사 또는 기타 조직의 경쟁적 지위에 실질적인 피해를 입히는 결과를 초래할 가능성이 있다. "비밀 영업 정보"에는 관세법(1930) 제777(b)조(19 U.S.C. § 1677f(b))에 규정된 정의의 범위 내에 속하는 "독점적 정보"가 포함된다.

2(a). 본 조사의 심리 전 증거개시 혹은 서면, 신청서 또는 신청서에 대한 답변서를 통하여 자발적으로 혹은 명령에 따라 제출되고 제공자가 비밀 영업 정보가 포함되어 있거나 그에 해당한다고 주장하는 모든 정보는 해당 제공자가 서면으로 혹은 증언청취, 협의 또는 심리에서 구두로 지정하여야 하며 제출되는 다른 정보와 분리하여야 한다. 문서에는 "비밀 영업 정보, 보호 명령 적용 대상"이라는 문언 또는 그에 준하는 고지를 문면에 명확하고 확연하게 표시하여야 한다. 그러한 정보는 서면으로 제출하였는지 혹은 구두로 증언하였는지 여부를 불문하고 본 보호 명령의 규정에 의거하여 취급된다.

2(b). 행정 심판 판사 또는 위원회는, 본 심리 도중 혹은 종결 전이나 후에, 비밀이라고 주장하는 정보가 비밀 정보에 해당하지 않는다는 결정 혹은 절차의 적절한 처리를 위하여 정보 공개가 필요하다는 결정을 내릴 수 있다. 행정 심판 판사 또는 위원회가 그러한 결정을 내리는 경우, 그러한 결정이 확정되기 전에 해당 정보 제공자에게 비밀 정보임을 주장할 수 있는 기회를 부여하여야 한다.

3. 제공자의 서면 동의 혹은 위원회 또는 행정 심판 판사의 명령이 없는 경우, 위의 제2항 규정에 의거하여 제출한 모든 비밀 문서 또는 영업 정보는 다음을 제외한 다른 누구에게도 공개할 수 없다: (i) 본 조사에서 당사자를 대리하는 외부 소송대리인과 그러한 소송대리인을 보조하는 비서 및 지원 인력, (ii) 그러한 문서 또는 정보가 포함된 진술을 청취하는 적격한 관계자와 필수적인 속기사 및 서기, (iii) 본 소송을 목적으로 고용된 기술

전문가 및 그 직원(비정부 당사자의 피용인 또는 자문이거나 달리 관계가 있는 자 혹은 본 조사의 대상인 제품, 장치 또는 구성품의 모든 국내외 제조업체, 도매업체, 소매업체 또는 유통업체에 고용된 자인 경우는 제외된다), (iv) 위원회, 행정 심판 판사, 위원회 직원, 위원회가 승인한 모든 정부 기관의 인력, (v) 위원회, 그 직원 및 부서 그리고 (a) 본 조사 또는 관련 절차의 기록을 작성 또는 관리하거나 (b) 5 U.S.C. Appendix 3에 근거한 경우를 포함하여 위원회의 프로그램, 인력, 운영과 관련된 내부 조사, 감사, 검토, 평가에 관여하는 계약직 인력, (vi) 사이버보안이 목적인 경우에 한하여 미국 정부 직원 및 계약직 인력.[1]

　　　4.　　　위의 제2항 규정에 의거하여 제출된 비밀 영업 정보는 제3(i)항과 제(iii)항에 지정된 자가 먼저 본 명령을 숙지하고 본 위원회의 서기에게 제출한 서신을 통하여 (i) 본 명령의 규정에 구속되고 (ii) 제3항에 지정된 자가 아닌 다른 누구에게도 해당 비밀 영업 정보를 누설하지 않으며 (iii) 해당 비밀 영업 정보를 본 조사 목적으로만 이용하는 것에 동의하지 않는 한 그러한 자에게 제공할 수 없다. 그러한 서신에는 다음의 확인서도 포함되어야 한다:

　　　　　아래에 서명한 본인은 본 조사를 목적으로 제출된 정보가 아래의 주체들에게 공개되고 그들에 의하여 이용될 수 있다는 점을 _____ 을 대표하여 확인합니다:

　　　　　(i) 위원회, 그 직원 및 부서 그리고 (a) 본 조사 또는 관련 절차의 기록을 작성 또는 관리하거나 (b) 5 U.S.C. Appendix 3에 근거한 경우를 포함하여 위원회의 프로그램, 인력, 운영과 관련된 내부 조사, 감사, 검토,

---

[1] 위원회 행정 명령 제16-01호(2015.11.7.) 참조.

평가에 관여하는 계약직 인력 혹은

   (ii) 사이버보안이 목적인 경우에 한하여 미국 정부 직원 및 계약직 인력 저는 모든 계약직 인력이 적절한 비밀유지약정서에 서명할 것으로 이해하고 있습니다.

 5. 위원회 또는 행정 심판 판사의 명령에 의하여, 혹은 제공자와 모든 조사 당사자의 동의에 의하여 위의 제3항에 명시되지 않은 자에게 비밀 영업 정보로 제출된 정보에 대한 접근이나 배포를 허용하여야 하는 경우, 위원회 또는 행정 심판 판사가 해당 정보가 제1항에 정의된 비밀 영업 정보에 해당하지 않는 것으로 판단하지 않는 한, 그러한 정보는 본 명령과 관련된 조건 및 그로부터 발생한 의무에 근거해서만 해당자에게 접근이나 배포를 허용할 수 있으며 해당자에게 본 명령이 적용되는 것으로 간주한다.

 6(a). 본 조사의 범위 내에서 신청서 또는 기타 절차와 관련하여 위원회 또는 행정 심판 판사에게 제출되는 모든 비밀 영업 정보는 위의 제2항에 따라 봉인된 상태로 제출하여야 한다. 본 조사와 관련하여 위의 제2항에 따라 제출되는 모든 비밀 영업 정보가 수록된 속기록 부분은 별도로 제본하여 봉인된 상태로 제출하여야 한다. 위의 제2항에 의거하여 제출되는 여하한 비밀 영업 정보가 승인이 완료된 증언 속기록 또는 증거물에 포함되는 경우, 증언을 기록하는 속기사가 비밀 영업 정보가 포함된 부분을 철하고 "비밀 영업 정보, 보호 명령 적용 대상"이라는 라벨을 별도로 부착하도록 조치하여야 한다. 속기사 또는 번역사는 그러한 정보를 제공받기에 앞서 먼저 본 명령을 숙지하고 본 명령에 구속되는 것에 서면으로 동의하여야 한다. 다른 방식으로, 속기사 또는 번역사는 본 명령의 별첨 A로 첨부된 동의서에 서명하여야 한다. 그러한 서명이 기재된 동의서의 사본을 해당 비밀 영업 정보의 제공자와 위원회 서기에게 제출하여야 한다.

6(b).   제출자[2]가 위원회에 비공개 문서를 전자적으로 전송하는 경우에는 민감한 정보가 무단으로 공개되는 것을 방지하기 위하여 해당 문서를 암호화하는 조치가 강력하게 권장된다. USITC 보안 드롭박스 시스템과 전자문서정보시스템(EDIS)은 연방정보처리표준(FIPS) 140-2 암호화 알고리듬을 기반으로 전송 데이터를 암호화한다. 비공개 문서를 이러한 암호화 알고리듬에 기반하지 않은 방식(예: 이메일)으로 제출할 경우, 비공개 정보가 전송 과정에서 무단으로 공개될 가능성이 있다. 암호화되지 않은 전자적 전송 방식을 선택하는 경우, 위원회는 무단 공개의 위험을 제출자가 부담하며 위원회는 그러한 위험을 부담하지 않는다는 점을 경고한다.

7.   본 명령의 대상이 되는 자에게 적용되는 제한 규정과 의무는 비밀 정보임을 주장하는 자가 위의 제2항에 의거하여 제출한 정보로서 수령 당사자에게 제공된 시점에서 일반에 공개되어 있었거나 그 이후에 수령 당사자의 귀책 사유 없이 일반에 공개되었음을 서면으로 인정하였거나 위원회 또는 행정 심판 판사가, 심리 기회를 부여한 연후에, 그러한 판정을 내린 정보에는 적용되지 않는다.

8.   위원회, 행정 심판 판사, 위원회 조사 담당 변호사는 위의 제2항에 따라 비밀 영업 정보로 제출된 모든 문서 또는 정보가, 위원회 또는 정보공개법 담당관 또는 행정 심판 판사가 심리를 거쳐 상반된 결정을 내리는 경우를 제외하고, 5 U.S.C. § 552(b)(4)와 18 U.S.C. § 1905에 규정된 범위 내에서 비밀 영업 정보로 취급될 것임을 확인한다. 해당 정보가 서면의 일부를 구성하거나 증거 기록으로 제출되는 경우, 행정 심판 판사에 의한 절차가 계류 중인 기간을 제외하고 19 C.F.R. § 201.6에 명시된 데이터를 반드시 제공하여야 한다. 이 기간 중에는 비밀 영업 정보를 제출하는 당사자가, 요청이 있는 경우,

---

[2]비밀 영업 정보의 "제출자"는 본 명령의 맥락에서 사용된 용어인 비밀 영업 정보의 "제공자"와 동일한 의미를 갖는다. 행정 명령 제16-01호(2015.11.7.) 참조.

비밀 정보임을 주장하는 근거에 관한 진술서를 반드시 제출하여야 한다.

9.    비밀 정보 지정이 철회되거나 위원회 또는 행정 심판 판사가 비밀 정보로 지정된 정보가 더 이상 기밀에 해당하지 않는다는 결정을 내리지 않는 한, 위원회, 행정 심판 판사, 위원회 조사 담당 변호사는 위의 제2항에 의거하여 제공자가 지정한 모든 비밀 영업 정보에 대한 비밀을 유지하고 그와 관련된 제공자의 권리를 보호하기 위한 필수적이고 적절한 모든 조치를 취하여야 하며 여기에는 (a) (i) 본 명령에 따라 승인된 경우를 제외하고, 정보공개법(개정)(5 U.S.C. § 552)에 근거한, 비밀 영업 정보의 실체 또는 그에 대한 접근에 관한 모든 질의 또는 요청 및 (ii) 해당 비밀 영업 정보의 재지정 또는 일반 공개에 관한 모든 제안을 제공자에게 신속하게 통보하는 조치 및 (b) 제공자가 위원회, 정보공개법 담당관 또는 행정 심판 판사를 상대로 조치를 취하거나 그 외의 다른 방식으로 해당 비밀 영업 정보에 대한 비밀을 유지하고 자신의 권리를 보호할 수 있도록 관련 질의 또는 요청이 접수된 날로부터 적어도 7일 이상의 기간을 부여하는 조치가 포함되나 그에 한정되지 않는다.

10.    행정 심판 판사에 의하여 조사가 진행되는 기간 중에, 제2항에 의거하여 제출되고 비밀 정보로 지정된 여하한 영업 정보를 수령할 예정인 본 명령의 당사자 일방이 그러한 지정에 전부 또는 일부 동의하지 않는 경우에는 그러한 의사를 제공자에게 서면으로 통지하여야 하며 본 명령의 맥락에서 제공되는 대상 정보의 비밀 등급에 관하여 양측이 협의한다. 그러한 협의에 앞서 혹은 협의 시점에서, 제공자가 해당 정보를 본 명령의 대상으로 지정한 조치를 철회하면서도 해당 정보를 조사 목적으로 제출하고자 하는 경우에는 서면으로 철회 의사를 표시하여야 하며 모든 당사자와 행정 심판 판사에게 철회서를 송달하여야 한다. 부동의 의사를 통지한 날로부터 10일 이내에 비밀 영업 정보로

제출된 대상 정보의 비밀 등급에 관하여 수령자와 제공자가 합의에 도달하지 못한 경우, 본 명령의 당사자는 누구라도 그러한 비밀 등급 지정에 관한 문제를 행정 심판 판사에게 제기하여 사안에 대한 결정을 구할 수 있다. 행정 심판 판사는 직권으로 여하한 정보의 비밀 정보 지정에 관한 의문을 제기할 수 있으며 심리 기회를 부여한 연후에 비밀 정보 지정을 취소할 수 있다.

11.    전문가를 선임할 것을 제안하는 당사자는 제2항에 의거하여 제출되는 모든 비밀 정보를 전문가에게 최초로 공개하기 최소 10일(혹은 행정 심판 판사가 지정한 그 외의 다른 기간) 전까지 해당 전문가의 성명과 학력 및 상세한 경력을 제공자에게 서면으로 제출하여야 한다. 제공자가 본 명령의 문언이나 취지에 부합하지 않는다는 이유 혹은 그 외의 다른 사유로 그러한 전문가에게 관련 비밀 영업 정보를 공개하는 것에 반대하는 경우, 제공자는 최초 공개 전까지 자신의 반대 의사와 사유를 수령자에게 서면으로 통지하여야 한다. 그러한 반대 의사 통지를 수령한 날로부터 10일 이내에 분쟁이 비공식적인 방식으로 해결되지 않은 경우, 제공자는 즉시 행정 심판 판사에게 반대 의사를 제출하여 결정을 구하여야 한다. 조사가 위원회에 의하여 진행되는 경우에는 사안을 위원회에 제출하여 해결하여야 한다. 그러한 전문가에게 관련 비밀 영업 정보를 제공하는 조치는 위원회 또는 행정 심판 판사의 결정이 내려질 때까지 보류하여야 한다. 본 항의 규정은 위원회 소속 전문가 또는 위원회가 자문을 구하거나 선임하는 다른 정부 기관의 전문가에게는 적용되지 않는다.

12.    제2항에 의거하여 제출된 비밀 영업 정보가 본 보호 명령에 의하여 허용되는 방식이 아닌 다른 방식으로 여하한 자에게 공개된 경우, 공개에 대한 책임이 있는 당사자는 그러한 공개와 관련된 모든 사실을 제공자와 행정 심판 판사에게 즉시 알려야

하며, 제공자의 다른 권리와 구제 수단에 불리한 영향을 미치지 않는 것을 전제로, 자신 또는 관련 정보를 수령한 자에 의한 추가적인 공개를 방지하기 위하여 모든 노력을 다하여야 한다.

13.    본 명령의 어떠한 규정도 비밀 영업 정보 등급 문제와 관련하여 위원회, 정보공개법 담당관 또는 행정 심판 판사가 내린 결정에 대하여 여하한 자가 사법 재심을 구하거나 그 외의 적절한 사법 조치를 모색할 수 있는 권리를 제한하지 않는다.

14.    본 조사가 최종적으로 종료되면, 본 명령의 대상이 되는 비밀 영업 정보의 모든 수령자는 위의 제2항에 의거하여 제출된 관련 정보가 수록된 모든 자료를 취합하여, 작성되었을 가능성이 있는 일체의 사본을 포함하여, 제공자에게 반환하여야 한다. 다른 방식으로, 본 명령의 대상이 되는 당사자들은, 제공자의 서면 동의를 얻어, 비밀 영업 정보가 포함된 모든 자료를 파기하고 제공자(또는 제공자의 소송대리인)에게 파기가 완료되었음을 확인할 수 있다. 본 항은 조사 담당 변호사를 포함하는 위원회와 행정 심판 판사에게는 적용되지 않으며 이들은 법정 요건에 따라 기타 기록 보존 목적으로 관련 자료를 보존하여야 하지만 중복되는 것으로 판단되는, 추가적으로 보유한 사본은 파기할 수 있다.

위의 항에도 불구하고, 비밀 영업 정보는 위원회 규칙 제210.5(c)조에 따라 지방법원으로 전송할 수 있다.

15.    위의 제2항에 의거하여 제공되는 여하한 비밀 영업 정보가 본 조사의 비당사자에 의하여 제공되는 경우, 그러한 비당사자는 본 명령의 맥락에서 사용되는 용어인 "제공자"로 간주되어야 한다.

16.    각 비당사자 제공자에게는 그러한 제공자로부터 정보를 요청하는 당사자가

본 명령의 사본을 제공하여야 한다.

17.    서기는 모든 당사자에게 본 명령의 사본을 송달하여야 한다.

**이와 같이 명령한다**.

MaryJoan McNamara
행정 심판 판사

# 별첨 A

## 속기사/타자수/번역사 비밀유지약정

_____ 본인은, 본 사건에서 고지된 보호 명령에 의하여 허용되는 경우를 제외하고, 특정 _____ (조사 번호: 337-TA-___) 사건의 조사 또는 심리에서 비밀이 요구되는 부분에서 저에게 전달된 여하한 정보를 누설하지 않을 것임을 엄숙하게 선서하고 확인합니다. 저는 본 사건에서 저의 공무와 직결된 목적을 제외한 다른 어떠한 목적으로도 그러한 정보를 직간접적으로 이용하거나 이용을 허락하지 않겠습니다.

저는 본 사건의 조사 또는 심리에서 비밀이 요구되는 부분에서 전달된 여하한 정보의 성격이나 내용을 직접적인 행동, 논의, 권고 또는 제안을 통하여 타인에게 누설하지 않겠습니다.

또한, 저는 상기한 조사에 참여하는 자를 상대로 어떠한 직위 또는 공적인 관계도 유지하고 있지 않습니다.

저는 위에 명시된 정보를 무단으로 이용하거나 전달하는 행위가 연방 형법을 위반한 범죄를 구성하며 10,000달러 이하의 벌금이나 10년 이하의 징역 혹은 둘을 병과하는 처벌을 받을 수 있다는 점을 인지하고 있습니다.


서명 _____

서명일: _____

소속 회사 또는 관계_____



## 미국 국제무역위원회

워싱턴DC 20436

**행정 명령**: 제16-01호

**날짜**: 2015년 11월 7일 _____

**제목**: 비밀 영업 정보 또는 독점적 영업 정보의 공개에 관한 확인 및 면책 조항

1. **목적**: 본 명령은 비밀 영업 정보(CBI) 또는 독점적 영업 정보(BPI)의 사이버보안 관련 공개에 관한 확인 및 면책 조항을 적용하는 과정에서 위원회 관계자가 준수하여야 하는 절차를 정한다. CBI와 BPI를 규율하는 법령은 위원회가 정보 제출자의 동의 없이 특정한 목적으로 특정한 범주에 속하는 개인들을 제외한 다른 자에게 CBI와 BPI를 공개하는 것을 일반적으로 금하고 있다. 확인 조항은 법정 요건을 준수하는 동시에, 사이버보안 목적 등을 포함하는, 그 외의 다른 지정된 목적으로 특정한 다른 범주에 속하는 자에게 공개를 허용하는 동의를 구하기 위하여 마련되었다. 또한, 암호화 방식에 기반한 비공개 문서 제출을 장려하는 동시에 암호화되지 않은 방식을 이용할 경우 제출자가 무단 공개의 위험을 부담한다는 점을 고지하기 위하여 면책 조항도 마련되었다.

2. **참고문헌**

   a. 18 U.S.C. § 1905; 19 U.S.C. § 1332(g), § 1337(n), § 1677f(b)(l)(A)를 포함하여 CBI 및 BPI 공개를 제한하는 법령.

   b. 위원회 소송절차규칙 제201.6조(19 C.F.R. § 201.6).

3. **확인 및 면책 조항**

   a. •확인 조항의 내용은 다음과 같이:

      아래에 서명한 본인은 본 정보 제출 요청에 응하여 본 조사 또는 기타 절차 전반에 걸쳐 제출하는 정보가 아래의 주체들에게 공개되고 그들에 의하여

이용될 수 있다는 점을 확인합니다:

(i) 위원회, 그 직원 및 부서 그리고 (a) 본 조사 또는 관련 절차의 기록을 작성 또는 관리하거나 (b) 5 U.S.C. Appendix 3에 근거한 경우를 포함하여 위원회의 프로그램, 인력, 운영과 관련된 내부 조사, 감사, 검토, 평가에 관여하는 계약직 인력 혹은
(ii) 사이버보안이 목적인 경우에 한하여 미국 정부 직원 및 계약직 인력 저는 모든 계약직 인력이 적절한 비밀유지약정서에 서명할 것으로 이해하고 있습니다.

b. 면책 조항의 내용은 다음과 같다:

제출자가 위원회에 비공개 문서를 전자적으로 전송하는 경우에는 민감한 정보가 무단으로 공개되는 것을 방지하기 위하여 해당 문서를 암호화하는 조치가 강력하게 권장된다. USITC 보안 드롭박스 시스템과 전자문서정보시스템 (EDIS) 은 연방정보처리표준 (FIPS) 140-2 암호화 알고리듬을 기반으로 전송 데이터를 암호화한다. 비공개 문서를 이러한 암호화 알고리듬에 기반하지 않은 방식(예: 이메일)으로 제출할 경우, 비공개 정보가 전송 과정에서 무단으로 공개될 가능성이 있다. 암호화되지 않은 전자적 전송 방식을 선택하는 경우, 위원회는 무단 공개의 위험을 제출자가 부담하며 위원회는 그러한 위험을 부담하지 않는다는 점을 경고한다.

c. 확인 및 면책 조항은 다음을 포함하여 제337조 절차에서 고지되는 모든 보호 명령 및 위원회의 모든 CBI 또는 BPI 요청에 반드시 포함되어야 한다:

   i. 적절한 경우 수입 피해 조사 및 재심과 산업·경제 분석 절차에 사용되는 설문지 및 지침서.
   ii. 제337조 절차에서 고지되는 보호 명령 및 위원회의 행정 심판 판사가 결정하는 그 외의 다른 적절한 CBI 제출 체계.

d. 확인 조항에서, "위원회의 프로그램, 인력, 운영과 관련된 내부 조사, 감사, 검토, 평가"에 법률로 규정된 위원회 절차(즉 19 U.S.C. § 1332, § 1337, § 2252 및 관세법(1930) 제7편(19 U.S.C. § 1303, § 1516A, § 1671-1677n) 등에 따른 위원회의 법적 권한에 근거한 절차)는 포함되지 않는다.

확인 조항은 법률로 규정된 위원회 절차에서 제출된 CBI 또는 BPI를 다른 절차에서 공개하거나 이용하는 것을 허용하지 않지만 여기에는 2가지 예외가 존재한다. 관세법(1930) 제7편에 근거한 절차인 경우, 위원회와 그 조사 직원은 설문지 양식에 기재된 권한에 따라 동일하거나 유사한 품목과 관련된 다른 절차에서 BPI를 이용할 수 있다. 관세법(1930) 제337조에 근거한 절차인 경우, 위원회 규칙 210.3에 정의된 관련 절차에서 CBI 또는 BPI의 이용이 허용된다.

e. 확인 조항에서, "사이버보안 목적"이란 "사이버 취약성, 네트워크 설정 오류 또는 부적절한 권한 부여 또는 알려졌거나 의심되는 유해한 사이버 활동을 탐지, 방지, 분석, 조사, 대응, 보고하는 것"을 의미한다.

f. 또한 제337조 절차의 보호 명령에는 제3자 CBI 제공자에게 보호 명령의 사본을 전달하여야 한다는 문언이 반드시 포함되어야 한다.

본 명령은 행정 명령 제97-06호를 대체하며 새로 대체되거나 취소되기 전까지 효력을 유지한다.

위원장의 권한으로 명령한다:


_____

Meredith M. Broadbent

특정한 동적임의접근메모리(DRAM) 장치,                    조사 번호: 337-TA-1472
이를 포함하는 제품 및 그 구성요소

## 송달 증명서

　　　　본인 Lisa R. Barton은 본 증명서에 첨부된 명령서가 **2025.12.31.** 에 EDIS를 통하여
위원회 조사 담당 변호사 **Thomas Halkowski**와 아래에 명시된 당사자들에게
송달되었음을 증명합니다.

Lisa R. Barton, 서기
미국 국제무역위원회
500 E Street, SW, Room 112
Washington, DC 20436

### 신고인 Netflist, Inc. 대표:

Daniel E. Yonan
**STERNE, KESSLER, GOLDSTEIN, & FOX PLLC**
1001 K Street NW, 10th Floor
Washington, DC 20005
이메일: shawn@hakakianlaw.com

☐ 인편 전달
☐ 특급 배송 발송
☐ 등기 우편 발송
☒ 기타: 다운로드 가능 시
이메일 알림

### 피신고인:

삼성전자 주식회사
홍콩 영통구 삼성로 129
경기도 수원시 443-742
대한민국

☐ 인편 전달
☐ 특급 배송 발송
☒ 등기 우편 발송
☐ 기타: 신고인에 의한
송달

Samsung Electronics America, Inc.
6625 Excellence Way
 Plano, Texas 75023

☐ 인편 전달
☐ 특급 배송 발송
☒ 등기 우편 발송
☐ 기타: 신고인에 의한
송달

Samsung Semiconductor, Inc.
6625 Excellence Way
Plano, Texas 75023

☐ 인편 전달
☐ 특급 배송 발송
☒ 등기 우편 발송
☐ 기타: 신고인에 의한
송달

특정한 동적임의접근메모리**(DRAM)** 장치,                  조사 번호: **337-TA-1472**
이를 포함하는 제품 및 그 구성요소

송달 증명서 – 2면

Google LLC                                    ☐ 인편 전달
1600 Amphitheatre Parkway                     ☐ 특급 배송 발송
Mountain View, California 94043               ☒ 등기 우편 발송
                                              ☐ 기타: 신고인에 의한
                                              송달

Super Micro Computer, Inc.                    ☐ 인편 전달
980 Rock Ave.                                 ☐ 특급 배송 발송
San Jose, California 95131                    ☒ 등기 우편 발송
                                              ☐ 기타: 신고인에 의한
                                              송달

# Attachment C

미국 국제무역위원회
워싱턴**DC**

사건명:

특정한 동적임의접근메모리**(DRAM)** 장치,
이를 포함하는 제품 및 그 구성요소

조사 번호: **337-TA-1472**

명령 번호: **2:**                  기본 수칙 통지

(2025년 12월 31일)

    본 조사의 진행은 별첨 A에 첨부된 기본 수칙과 위원회 규칙에 의하여 규율된다.

이와 같이 명령한다.

MaryJoan McNamara
행정 심판 판사

**별첨 A**

**MARYJOAN MCNAMARA 행정 심판 판사의 기본 수칙**
**제337조 조사 337-TA-1472 (12/31/2025)**

본 기본 수칙은 행정 심판 판사가 본 제337조 조사를 질서 있게 진행할 수 있도록 보조할 목적으로 위원회 소송절차규칙(19 C.F.R. Part 201 및 Part 210)(이하 "위원회 규칙")를 보충한다.

본 기본 수칙은 미국 특허 관련 조사를 규율한다. 등록된 저작권, 등록된 상표 또는 등록된 마스크워크에 근거한 조사의 경우, 추가적인 기본 수칙이 적용될 수 있다. 그에 추가하여, 임시 구체 신청이 포함된 사건인 경우, 기본 수칙 제1.8조에 더하여 다른 기본 수칙이 적용될 수 있다.

기본 수칙 제7조에 명시된 경우를 제외하고, 재판부는 달리 통지하지 않는 한 더 이상 문서의 종이 사본, 플래시드라이브 또는 CD롬을 허용하지 않는다. 기본 수칙 제1.3.1조 참조.

EDIS로 제출하는 문서의 판사 검토용 사본은 McNamara337@usitc.gov를 통하여 재판부에 제출하여야 한다. 기본 수칙 제1.3.2조 참조.

소환장 발부 신청서는 반드시 MS워드로 작성하여 McNamara337@usitc.gov로 제출하여야 한다. McNamara337@usitc.gov로 제출하는 소환장 발부 신청서는 기본 수칙 제3.5조의 실체적 요건을 반드시 준수하여야 한다.

전문가 의견서 및 전문가 반박 의견서의 판사 검토용 사본은 반드시 McNamara337@usitc.gov로 제출하여야 한다. 당사자들이 심리 후에 전문가 의견서상의 적절한 섹션이나 단락이 증거로 채택될 수 있도록 보장하지 못하는 사례들이 발생하고 있다. 증언녹취 속기록상의 단락에 대해서도 동일한 사례들이 발생하고 있다. 이 문제는 운영 협의에서 논의할 사안에 포함될 수 있다.

운영 협의는 WEBEX상에서 진행될 가능성이 있다. USITC 법정 중 한 곳에서 대면 방식으로 증거 심리(이하 "심리")가 진행될 것으로 예상된다.

# 목차

1.      일반 절차 및 정보..................................................................................... 1
1.1.    행정 심판 판사의 주소.............................................................................. 1
1.2.    제출 요건.................................................................................................. 1
1.3.    송달 사본 요건.......................................................................................... 1
1.3.1.  종이 사본................................................................................................ 1
1.3.2.  전자 사본................................................................................................ 2
1.4.    팩스를 이용한 제출은 권장하지 않는다................................................... 2
1.5.    동시 송달................................................................................................. 2
1.6.    비밀 제출 문서.......................................................................................... 2
1.7.    미공표 판례.............................................................................................. 3
1.8.    임시 구제................................................................................................. 3
1.9.    기한 및 연장............................................................................................. 4
1.11.   전자 제출 (EDIS)...................................................................................... 5
1.12.   기간의 산정............................................................................................. 6
1.13.   절차 일정................................................................................................. 6
1.14.   조기 청구항 해석..................................................................................... 9
1.14.1. *마크먼* 서면 제출................................................................................. 11
1.14.2. *마크먼* 심리 전 진술서......................................................................... 12
1.14.3. *마크먼* 심리 증거................................................................................ 12
1.14.3.1. 제안된 증거물의 교환........................................................................ 12
1.14.3.2. 제안된 증거물의 EDIS 제출 및 행정 심판 판사에 대한 송달 .............. 13
1.14.3.3. 채택된 증거물의 형식 및 제출............................................................ 13
1.14.4. *마크먼* 심리............................................................................................ 14
1.14.4.1. 모두 진술 및 최종 변론....................................................................... 14
1.14.4.2. *마크먼* 심리 시간............................................................................. 14
1.14.4.3. 증거물의 채택.................................................................................... 14
1.14.4.4. 속기록................................................................................................ 14
1.15.   합의 사항................................................................................................. 14
1.16.   보호 명령 및 특허 출원 업무 금지............................................................ 15
2.      신청서....................................................................................................... 16
2.1.    내용........................................................................................................... 16
2.2.    확인서....................................................................................................... 17
2.3.    중점 이의 제기서, 증거 배제 신청서, 말소 신청서 ................................. 18
2.4.    약식 결정 신청서...................................................................................... 18
2.5.    증거개시 및 증거개시 관련 신청서........................................................... 19
2.5.1.  내용......................................................................................................... 20
2.6.    신청서에 대한 답변서 제출 기한 단축 요청서 ......................................... 20
2.7.    소환장 취소 신청서를 제외한 다른 어떠한 신청서도 증거개시를 중단시키지 않는다
        .................................................................................................................. 20

i

2.8.    절차 일정상의 신청서 제출 기한.................................................................... 21
3.3.    증거개시 요청서 및 답변서의 송달.............................................................. 23
3.5.    소환장. ...................................................................................................... 24
3.5.1.    발부 및 송달 .......................................................................................... 24
3.5.2.    연장 및 집행. .......................................................................................... 25

3.6.    베이즈 번호. .............................................................................................. 25
3.7.    번역 ......................................................................................................... 26
3.8.    비닉 특권 관련 사항. ................................................................................. 26
4.    특허 우선권 주장일 통지서 및 선행기술 통지서. ........................................ 26
4.1.    특허 우선권 주장일. ................................................................................... 26
4.2.    선행기술. .................................................................................................. 26
5.    전문가 증인 및 의견서. .............................................................................. 27
6.    화해, 화해 보고서. ..................................................................................... 27
7.    심리 전 제출 문서 ..................................................................................... 28
7.1.    심리 전 진술서. .......................................................................................... 28
7.2.    심리 전 서면. ............................................................................................. 30
7.2.1.    심리 전 서면의 내용 ............................................................................... 31
7.3.    표 형식의 공동 쟁점 개요서. ..................................................................... 31
8.    심리 증거물. .............................................................................................. 32
8.1.    증거로 채택되는 자료. ............................................................................... 32
8.2.    법률 전문가. .............................................................................................. 32
8.3.    증인 격리. ................................................................................................. 32
8.4.    증인 증언. ................................................................................................. 32
8.4.1.    주신문을 대신하는 증인 진술서(극히 드뭄) ............................................ 33
8.4.2.    증인 진술서의 형식(매우 드뭄). .............................................................. 33
8.5.    전문가 의견서. .......................................................................................... 34
8.6.    외국어 증거물. ........................................................................................... 34
8.7.    증거물. ...................................................................................................... 35
8.7.1.    제안된 증거물의 교환. .............................................................................. 35
8.7.2.    행정 심판 판사에 대한 제안된 증거물의 송달 ......................................... 35
8.7.3.    최종 증거물 및 최종 증거물 목록의 관리 및 제출 ................................... 35
8.7.4.    증거물 번호 및 라벨, 비밀 증거물. .......................................................... 37
8.7.4.1.    문서 증거물. .......................................................................................... 37
8.7.4.2.    실물 증거물. .......................................................................................... 38
8.7.4.3.    시연용 증거물. ...................................................................................... 38
8.7.4.4.    공동 증거물. .......................................................................................... 38
8.7.5.    증거물 목록 ............................................................................................ 38
8.7.6.    증인 증거물. ........................................................................................... 39
8.7.7.    진정성. .................................................................................................... 39
8.7.8.    증거물을 뒷받침하는 증인. ...................................................................... 39
8.8.    증거물 제출 ............................................................................................... 40

9.      심리 절차........................................................................................................ 40
9.1.    신문 순서........................................................................................................ 40
9.2.    모두 진술 및 최종 변론................................................................................ 41
9.3.    심리 시간........................................................................................................ 41
9.4.    심리 예절........................................................................................................ 41
9.4.1.  심리 중의 대화.............................................................................................. 41
9.4.2.  휴대폰 및 호출기, 음식물.............................................................................. 41
9.4.3.  증인 선서........................................................................................................ 41
9.4.4.  이의 제기 주장.............................................................................................. 41

9.5.    증인 신문........................................................................................................ 42
9.5.1.  신문 범위........................................................................................................ 42
9.5.2.  반대신문의 범위............................................................................................ 42
9.5.3.  재주신문 및 재반대신문의 범위.................................................................. 42
9.5.4.  증인 신문 일정 조정...................................................................................... 42
9.5.5.  증인에게 제시되는 문서................................................................................ 42
9.5.6.  전문가 증인 증언의 범위.............................................................................. 42
9.5.7.  피신고인 측 반대신문의 조정...................................................................... 43
9.5.8.  질문에 대한 명확한 설명 요청.................................................................... 43
9.5.9.  통역인의 이용................................................................................................ 43
9.5.10. 증언 중간의 휴식 시간에 이뤄지는 증인과의 협의.................................. 43
9.6.    속기록............................................................................................................ 43
9.7.    재판부 서면.................................................................................................... 43
9.8.    증거/증언에 대한 이의 제기서 및 말소 신청서........................................ 43
10.     심리 후 제출 문서........................................................................................ 44
10.1.   심리 후 1차 서면.......................................................................................... 44
10.2.   심리 후 재답변 서면...................................................................................... 46
10.3.   사실인정안.................................................................................................... 46
11.     NEXT Advocates 프로그램 ...................................................................... 46
12.     인용................................................................................................................ 47
12.1.   일반적인 인용................................................................................................ 47
12.2.   판례 인용........................................................................................................ 47
13.     당사자들 간의 협조...................................................................................... 48
14.     일방적 접촉.................................................................................................... 48
15.     조정................................................................................................................ 48
부록 A.
부록 B.

## MCNAMARA 판사의 기본 수칙(12/31/2025)

**1.**         **일반 절차 및 정보.**

**1.1.**        **행정 심판 판사의 주소.**

행정 심판 판사의 주소는 다음과 같다:

MaryJoan McNamara
U.S. International Trade Commission
500 E Street, S.W., Room 317
Washington, D.C. 20436

**1.2.**        **제출 요건.**

본 기본 수칙에 구체적으로 달리 명시되거나 행정 심판 판사가 명령하지 않는 한, 모든 제출 서면은 위원회 규칙 제210.4(f)조에 의거하여 위원회 서기실에 제출하여야 한다. 상세한 내용은 미국 국제무역위원회 제출 절차 핸드북(www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf[1]) 참조. 당사자들은 위원회가 오후 5시 15분에 업무를 종료한다는 점을 숙지하여야 한다. 위원회 규칙 제201.3(c)조 참조.

EDIS로 제출하는 모든 문서는 모든 면의 바닥글에 해당 문서를 제출한 당사자의 이름과 문서 제목을 반드시 포함하여야 한다.

**1.3.**        **송달 사본 요건.**

**1.3.1.**       **종이 사본.**

서기에게 제출하는 문서의 사본을 위원회 조사 담당 스태프(당사자로 지정된 경우)를 포함하는 다른 모든 당사자들에게 동시에 송달하여야 한다. 또한, 문서가 전자적으로 서기에게 제출된 날의 익일 영업일[2]까지 양면 인쇄된 종이 사본 2부를 행정 심판 판사(이하 "ALJ")를 수신인으로 하여 McNamara337@usitc.gov를 통하여 판사실로 송달하여야 한다. 심리 전 진술서, 심리 전 및 후 서면, 증거 배제 신청서의 판사 검토용 사본에 관한 기본 수칙 제7조 참조. GR 제1.3.1.1조 참조. 주의: 종이 사본은 발송할 수 없다.

**1.3.1.1.**      **ALJ 검토용 사본.**

---

[1] https://www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf도 참조.

증거물을 제외한 모든 제출물의 판사 검토용 전자 사본을 McNamara337@usitc.gov.로 발송하여야 한다. 아래 GR 제1.3.2조 참조.

**1.3.2.**          **전자 사본.**

조사가 행정 심판 판사에게 계류 중인 기간 중에 EDIS를 통하여 전자적으로 신청서 또는 신청서에 대한 답변서 그리고 본 조사에서 제출되는 다른 모든 문서를 제출하는 모든 당사자는 전자적으로 문서를 제출하는 영업일 당일에 MS워드 또는 PDF (권장) 형식으로 작성한 문서의 판사 검토용 전자 사본 1부를 McNamara337@usitc.gov로 발송하여야 한다. 특히, 공동 청구항 해석표나 절차 일정안처럼 표로 작성된 문서는 반드시 MS워드 형식으로 제출하여야 한다.

이메일을 통하여 발송하는 사본은 제목란에서 본 조사의 번호를 맨 앞에 기재하여야 하며 내용에 대한 간략한 요약이 반드시 뒤따라야 한다. 예를 들어, 다음과 같이 제목란을 기재할 수 있다[2]: "조사 번호 337-TA-####, 약식 결정 신청서"

**1.4.**          **팩스를 이용한 제출은 권장하지 않는다.**

행정 심판 판사의 사전 승인이 없는 경우 팩스를 이용한 제출은 허용되지 않는다.

**1.5.**          **동시 송달.**

당사자들은 수용이 가능한 송달 형식과 조건을 협의하고 서면으로 규정하는 것이 권장된다. 상대방 소송대리인에 대한 송달은 인편, 팩스, 이메일 또는 익일 특급 배송을 이용할 수 있다. 소송대리인을 선임하지 않은 국외 피신고인에게는 등기 우편을 통한 송달이 가능하다. 익일 특급 배송을 통하여 송달한 신청서는 제출일의 익일 업무 종료 시점 전까지 상대방이 수령하여야 한다.

**1.6.**          **비밀 제출 문서.**

비밀 영업 정보(이하 "CBI")가 포함된 모든 문서는 최소한 1면에 "비밀 영업 정보" 또는 그에 준하는 문구를 눈에 띄게 표시하여야 한다.[3]비밀 첨부물을 포함하여 제출되는 문서는 최소한 1면에 비밀 첨부물이 포함되어 있음을 알리는 문구를 눈에 띄게 표시하여야 하며 모든 비밀 첨부물은 최소한 1면에 위원회 규칙에 따른 표시가 적용되어야 한다. 실수로 비밀 표시가 누락된 문서를 제출한 당사자는 즉시 서기실과 행정 심판 판사의 법률 자문관에게 연락하여야 한다.

19 C.F.R. § 201.6(a)에 정의된 CBI가 포함되어 있다는 주장에 근거하여 신청서 또는 관련 문서(예: 답변서, 재답변서, 합의 사항 또는 증거물)를 비밀 문서로 제출하는

---

[2]조사 번호 뒤에 "송달"이라는 단어를 붙이는 것은 적절하지 않다.

[3]위원회 규칙 제210.6조 및 제210.34조 참조. 문서상의 모든 비밀 면에 비밀임을 표시할 것을 권장한다.

민간 당사자는 비밀 문서라고 주장하는 문서를 제출한 날로부터 5영업일 내에 비밀 문서에 해당하지 않는 신청서와 관련 문서의 공개용 버전을 반드시 제출하여야 한다. 제출된 신청서 또는 관련 문서는 반드시 공개용 버전인지 혹은 비밀 문서 버전인지 여부를 적절하게 표시하여야 한다(후자의 경우 기존 관행에 따라 CBI를 포함하고 있음을 표시하여야 한다).

CBI를 가림 처리하는 경우 비밀 영업 정보에 해당하지 않는 정보가 가려지거나 비밀로 표시되지 않도록 각별히 주의하여야 한다. 비밀로 표시된 문서는 기본 수칙 제1.10조에 의거하여 19 C.F.R. § 201.6(a)를 준수하는 자료/정보에 한하여 대괄호와 강조 표시를 적용하여야 한다. 극히 예외적인 상황을 제외하고, 일괄 가림 처리와 일괄 대괄호 처리는 금지된다. 대부분의 경우, 개별적인 CBI 단어와 구절에 대해서만 가림 또는 대괄호 처리가 허용된다. 문서의 제목에는 CBI가 포함될 수 없다.

모든 비밀 신청서와 신청서에 대한 비밀 답변서에는 가림 처리된 부분이 CBI로 간주된 경위를 사실에 근거하여 설명하는 확인서가 포함되어야 한다.

비밀 신청서와 신청서에 대한 비밀 답변서에 첨부되는 증거물은 일반적으로 대괄호 처리가 요구되지 않지만 증거물에 포함된 CBI를 신청서 또는 그에 대한 답변서에서 인용하는 경우에는 반드시 대괄호를 적용하여야 한다. 재답변서 제출 허가를 구하는 신청서에 대한 증거물로 첨부되는 재답변서처럼 신청 당사자가 제출 허가를 구하는 서면이 증거물인 경우에는 해당 증거물에 대괄호를 적용하여야 한다. 비밀 신청서 또는 답변서의 본문에 가림 처리된 부분이 없는 경우에는 제출 문서를 비밀로 지정한 이유(예: 신청서에는 비밀인 부분이 없지만 비밀 첨부물이 첨부되는 경우)를 확인서에서 설명하여야 한다.

비밀 문서와 동일자로 제출하는 공개용 버전은 비밀 문서 버전에서 대괄호 및 강조 표시된 동일한 자료/정보를 가림 처리하여야 한다.

불공정 수입 조사국(이하 "OUII")이 당사자인 경우, OUII는 신청서 및/또는 관련 문서의 공개용 버전을 10영업일 이내에 제출하여야 한다.

**1.7.**　　　　**미공표 판례.**

미공표 판례를 참조하는 모든 제출 문서는 해당 판례의 전문을 증거물로 포함하여야 한다. 다만, 미공표 판례는 선례로 인용하지 못할 수도 있다는 점에 유의하여야 한다.

.

**1.8.**　　　　**임시 구제.**

임시 구제 신청이 계류 중인 조사가 진행되는 과정에서 신청서와 증거개시 요청서를 포함하는 여하한 서류를 송달하는 당사자는 위원회 조사 담당 변호사(이하 "스태프")가 당사자인 경우 그러한 스태프를 포함하는 상대방 당사자들의

소송대리인에게 해당 서류의 실체를 서류 송달 당일에 전화로 통지하여야 하며 상대방이 익일 영업일에 해당 서류를 수령할 수 있도록 조치하여야 한다.

**1.9.**         **기한 및 연장.**

모든 서류의 마감일은 예정된 수령인이 마감일 업무 종료 시점 전까지 서류를 수령할 것을 요구한다. 이러한 이유에서, 상대방에 대한 전자 송달이 권장된다. 위원회 규칙 제201.16(f)조 참조.

**1.9.1.**         **기한 연장**

기한을 연장하려는 당사자는 기한 연장을 구하는 신청서를 반드시 제출하여야 하며 연장을 정당화하는 정당한 사유를 명시하여야 한다. 그러한 신청서는 마감일로부터 **2일 전까지** EDIS로 제출하여야 한다. 당사자들은 제출(긴급한 상황인 경우는 제외), 증거개시 또는 심리 기한을 연장하는 공동 합의 사항을 제출할 수 없다. 허가는 신청 절차를 통하여 요청하여야 한다.

**1.9.2.**         **신속 처리**

긴급한 사안은 다음과 같이 행정 심판 판사에게 알려야 한다. 첫째, 긴급하거나 신속 처리가 요구되는 신청서, 답변서 또는 기타 제출 문서는 문서의 표제에 그러한 사실을 **명확하게 표시**하여야 한다. 둘째, 상기한 서류를 제출하는 날에 행정 심판 판사의 법률 자문관에게 이메일로 반드시 통지하여야 하며 해당 사안이 급박한 중요성이나 긴급성을 갖는 모든 당사자들을 참조에 포함시켜야 한다. 다만, 당사자들은 행정 심판 판사가 다수의 조사를 진행하고 있다는 점에 유의하여야 한다. 계류 중인 모든 사안은 시간과 상황이 허락하는 범위 내에서 최대한 신속하게 처리된다. 기본 수칙 제2.6조도 참조. 그러한 문서는 요청의 급박성을 강조하는 제목을 기재한 이메일에 McNamara337@usitc.gov를 참조에 포함시켜야 한다.

**1.9.3.**         **기한 후 제출**

당사자 일방이 절차 일정 또는 위원회 규칙에 명시된 기한을 넘겨 문서를 제출하거나 송달한 경우 행정 심판 판사에게 서면으로 신속하게 그 사실을 통지할 책임은 상대방에게 있다.

당사자 일방은 행정 심판 판사가 기한을 넘긴 문서를 수리하여 줄 것을 신속하게 신청하고 검토가 지연된 정당한 사유를 설명함으로써 기한 후 제출 또는 접수를 시정할 수 있다. 위원회 규칙 제201.3(c)조 참조. 그러한 신청의 경우 2일 회합 및 협의 요건이 면제되지만 신청인은 해당 신청과 관련된 상대방의 입장을 파악하려고 시도하여야 한다.

신속한[4] 신청이 접수되지 않은 경우, 행정 심판 판사는 재량에 따라 기한 후에 제출되었거나 송달된[5] 문서를 무시할 것을 명령할 수 있다.

**1.10.**     **명령서 및 전화회의 속기록의 공개용 버전에 대한 가림 처리 요건**

행정 심판 판사가 교부하는 명령서에는 당사자들(또는 경우에 따라서는 비당사자들)의 비밀 영업 정보가 포함될 수 있으며 그러한 경우에는 명령서가 비밀 문서로 지정된다. 행정 심판 판사는, 위원회 규칙 제210.5(e)조에 따라, 제공자가 비밀로 지정한 정보가 행정 심판 판사가 교부하는 명령서상에서 비밀로 취급될 자격을 갖췄는지 여부를 판단할 수 있는 재량권을 갖는다.[6]

행정 심판 판사가 비밀 명령서, 즉 비밀 영업 정보(이하 "CBI")가 포함된 명령서를 교부하는 경우, 당사자들은 명령일로부터 14일 이내에 해당 명령서의 단일한 공개용 버전안을 공동으로 제출하여야 하며 가림 처리를 제안하는 부분을 붉은색으로 표시하여야 한다. 당사자들이 과도하게 가림 처리된 문서를 제출한 경우, 개인적인 지식을 갖춘 개인이 가림 처리 제안을 정당화하고 가림 처리를 신청하는 정보가 19 C.F.R. § 201.6(a)에 규정된 비밀 영업 정보의 정의를 충족하는 이유를 구체적으로 설명하는 확인서를 제출할 것을 요구받을 수 있다.

가능한 범위 내에서, 가림 처리는 교부된 명령서 또는 예비 판결서의 단일한 PDF 파일상에서 Adobe Acrobat의 "교정 툴"을 이용하여 전자적으로 제안하여야 하며 가림 처리가 제안된 부분은 "표시"만 되고 "적용"은 되지 않은 상태로 제출하여야 한다. 가림 처리가 제안된 부분은 식별이 가능하도록 색상 채우기가 적용되지 않아야 한다. 행정 심판 판사는 적절한 가림 처리가 모두 완료되면 명령서의 최종 공개용 버전을 교부한다.

가림 처리 제안서 또는 가림 처리가 불필요하다는 확인서는 이메일을 이용하여 McNamara337@usitc.gov 로 제출하여야 하며 EDIS에 제출하지 않아야 한다. 명령일로부터 14일 이내에 가림 처리 제안서 또는 가림 처리가 불필요하다는 확인서가 접수되지 않은 경우, 위원회 규칙에 따라 명령서 전문이 공개될 수 있다.

당사자들은 국민이 조사의 실체적 결과를 알 권리가 있다는 것이 행정 심판 판사의 확고한 원칙이라는 점에 유의하여야 한다. 따라서 실질적 쟁점을 해결하는 명령(*마크먼* 명령, 약식 결정 또는 최종 예비 판결)인 경우 당사자들은 자신들이 제안하는 가림 처리에 특히 주의를 기울여야 한다. 문장의 일부만을 가림 처리하는

---

[4]행정 심판 판사는 지연 제출일로부터 2영업일 이내에 이 절차를 진행할 것을 권고하지만 의무 사항은 아니다.

[5]절차 일정은 EDIS에 제출하는 대신에 직접 제출하거나 송달하여야 하는 특정한 문서들을 규정하고 있다. 이 수칙은 송달 또는 제출이 요구되는지 여부와 상관없이 절차 일정에 명시된 모든 마감일에 동일하게 적용된다.

[6]이 수칙은 행정 심판 판사가 교부하는 예비 판결을 포함하여 모든 제출 문서에 적용된다.

상황이라 하더라도 오직 CBI만을 가림 처리하여야 한다.

## 1.11.    전자 제출(EDIS).

위원회 규칙 제210.4(f)조는 제337조 조사에서 특정한 문서를 위원회의 전자문서정보시스템(EDIS)를 통하여 서기실에 제출하는 절차를 규율한다. 다만, EDIS를 통한 제출로 인하여 당사자들이 해당 제출 문서의 전자 사본을 행정 심판 판사실(McNamara337@usitc.gov)에도 제출하여야 하는 요건이 면제되는 것은 아니다.

EDIS에 관한 추가적인 정보를 원하는 경우, 당사자들은 EDIS 헬프데스크((202) 205-3347)에 문의하거나 소송 기록 서비스 웹페이지를 참고하거나[7] 아래 인터넷 주소에 게시된 EDIS 3 사용자 가이드를 이용할 수 있다:

www.usitc.gov/sites/default/files/documents/edis3_10userguide-external_final_optimized.pdf

EDIS 전자 제출은 U.S.I.T.C. 제출 절차 핸드북에 의하여 규율된다.

상기한 지침 중 하나는 현행 파일 용량 한도와 관련이 있다. EDIS에 제출할 수 있는 파일의 현행 용량 한도는 25 MB이며 구체적인 정의는 아래와 같다:

전자 문서의 전체 용량에는 EDIS 성능에 따른 제한이 없으나 제출 문서에 첨부되는 파일 1개의 용량은 25 MB를 초과할 수 없다. 25메가바이트 한도를 초과하는 문서는 용량 한도를 넘지 않는 2개 이상의 파일로 분할하여 제출 문서에 별도의 파일들로 첨부하여야 한다. EDIS는 제출 문서에 첨부할 수 있는 PDF 파일의 수에 제한이 없으며 모든 파일이 모여 전체 문서를 구성한다. 따라서 제출 문서의 전체 용량에는 제한이 없다. 제출 문서에 상기한 용량 한도를 초과하고 복수의 PDF 파일로 분할이 불가능한 첨부물이 포함된 경우에는 서기가 위의 제II(C)조에 따라 종이 형식 혹은 서기가 승인한 전자 매체로 문서를 제출하는 것을 허가할 수 있다. 규칙과 핸드북에 명시된 모든 면수 한도는 전자 제출 목적으로도 동일하게 효력을 유지한다.

그 외에도 확인이 요구되는 EDIS 제출 요건이 존재한다.

## 1.12.    기간의 산정.

위원회 규칙 제201.14조, 제201.16(d)조, 제210.6조의 기간 산정 요건에 추가하여, 제출 기간의 종료일이 전자 제출을 위한 EDIS 이용이 불가능한 날에 해당하는 경우, 마감 기한은 익일 영업일 종료 시점으로 연장된다.

신청서에 대한 답변 기한인 10일 기간은 관련 신청서가 EDIS에 제출된 날의 익일

---

[7] https://www.usitc.gov/sites/default/files/documents/edis3_10userguide- external_final_optimized.pdf 참고.

영업일부터 기산된다. 신청서에 대한 피신청 당사자의 답변 기한을 규율하는 위원회 규칙 제201.16조와 제210.15(c)조의 요건에 추가하여, 전자 우편, 인편, 등기 우편 또는 특급 배송에 의한 피신청 당사자에 대한 신청서는 신청서가 전달된 날을 송달일로 간주한다. 비전자적 수단에 의한 송달의 경우, 피신청 당사자에 대한 송달이 외국에서 이뤄지지 않는 한, 위원회 규칙 제201.16(d)조 및 제(e)조에 근거한 추가 기간이 적용되지 않는다.

**1.13.**          **절차 일정.**

행정 심판 판사는 본 조사의 절차 일정을 정한다. 여하한 당사자에 의한 절차 일정 변경은 *정당한 사유가 명시된 서면 신청서에 의하여 규제된다. 다만, 급박한 사정이 없는 한 당사자들은 심리 날짜 변경을 기대할 수 없다.* 절차 일정상의 절차와 기한은 일반적으로 아래의 순서를 따른다(다만, 달라질 수 있다):

| |
|---|
| 절차 일정안 및 증거개시 진술서 제출 기한 |
| 초기 사건 관리 협의(필요한 경우) |
| 서면 질의서 제출 기한 |
| 전문 분야와 이력서를 포함하는 전문가 증인의 신원 사항 제출 |
| 신고인에 의한 특허 우선권 주장일/착상일/발명 완성일 통지 제출 |
| 피신고인에 의한 선행 기술 통지 제출 |
| 신고인(들)과 피신고인(들)이 해석이 요구되는 청구항 용어 목록안을 스태프에게 제출 |
| 청구항 해석안 교환 |
| 공동 청구항 해석표 제출 |
| 당사자들이 분쟁이 제기된 청구항 용어들에 대한 각자의 해석안이 포함된 공동 목록과 더불어 모든 당사자들의 초기 청구항 해석에 관한 서면 제출 |
| 당사자들이 분쟁이 제기된 청구항 용어를 일치시키거나 달리 제한할 목적으로 회합 및 협의 실시(해당되는 경우 스태프 포함) |
| *마크먼* 심리 제안서 제출 기한 |
| 국내 산업 제품 공개 기한 |

| |
|---|
| 기술 합의 사항 제출 기한 |
| 전화 관리 협의 |
| *마크*먼 심리(명령이 내려진 경우) |
| *마크*먼 심리 후 청구항 해석 기한 |
| 심리에서 증언할 증인의 예비 명단 및 각 증인과 해당 당사자와의 관계에 관한 정보 제출 |
| 사실 증거개시 마감 및 완료 |
| 강제 증거개시 신청서 제출 마감일 |
| **1일 조정 세션 참석**[8] |
| 조정에 관한 공동 의견서 제출 |
| 초기 전문가 의견서 교환(테스트/조사/데이터 명시) |
| 전문가 반박 의견서 교환 |
| 전문가 의견서 제출 |
| 전문가 반박 의견서 제출 |
| 약식 결정 신청서 제출 마감일 |
| 전문가 증거개시 마감 및 완료 |
| 실시간 직접 증언을 대신하여 증인 진술서를 활용하는 것에 관한 진술서 및 여하한 당사자가 전문가 의견서를 증거로 제출할 의사가 있는지 여부에 관한 진술서 제출 |
| 당사자들 간의 증거물 목록 교환 |
| 심리 전 진술서 및 서면 제출—신고인(들) 및 피신고인(들) |
| 심리 전 진술서 및 서면 제출—스태프(해당되는 경우) |
| 증인이 배제된 증거 채택 요청서 제출 |
| 사전 증거 배제 신청서 제출 마감일 |
| 중점 이의 제기서 제출 |

조정 프로그램과 관련하여 의문 사항이 있는 경우, 당사자들은 위원회 조정 프로그램에 관한 개정 사용자 매뉴얼(http://www.usitc.gov)을 참조하여야 한다.

| |
|---|
| 중점 이의 제기서에 대한 답변서 제출 |
| 증거물의 비밀성을 정당화하는 확인서 제출 |
| 사전 증거 배제 신청서에 대한 답변서 제출 마감일 |
| 기술 설명회 |
| 심리 전 협의 |
| 증거 심리 |
| 심리 후 서면, 사실인정안 및 법률결론안[9], 최종 증거물 목록 제출 |
| 당사자들이 공동으로 통합 증거물 목록의 전자 사본 제출 |
| 심리 후 서면에 대한 재답변서, 사실인정안 및 법률결론안에 대한 이의 제기서 및 반박 의견서 제출 |
| 침해 여부에 관한 예비 판결 예정일 |
| 조사 완료 예정일 |

절차 일정에 "제출 마감일"이 명시된 경우라 하더라도 당사자들은 쟁점에 대한 결정이 가능해지는 대로 수시로 신청서를 제출할 것으로 기대된다는 점에 유의하여야 한다.

본 절차 일정은 사건의 복잡성 그리고 조사에 포함된 청구항의 유형, 수, 복잡성에 따라 크게 달라질 수 있다.

**1.14.        조기 청구항 해석**

특허 소송을 포함하는 조사가 시작되는 단계에서, 행정 심판 판사는 조기 청구항 해석을 명령하거나 그에 대한 대안으로 당사자들에게 조기 청구항 해석을 요청하는 제안서를 제출할 기회를 부여할 수 있다. 조기 청구항 해석 심리 명령 여부와 상관없이, 당사자들은 조사 초기에 청구항 해석에 대한 각자의 입장을 공개하고 확정할 것으로 기대된다. 따라서 절차 일정에는 해석이 요구되는 특허 청구항 용어의 식별, 조기 해석안의 교환, 분쟁이 제기된 청구항 문언을 해결하기 위한 회합 및 협의, 분쟁이 제기된

---

[9] 위원회 규칙 제210.40조에 의거하여, 당사자 일방은 사실인정안 및 법률결론안을 제출하는 것을 선택할 수 있다. 다만, 상대방은 사실인정안 및 법률결론안에 대하여 답변할 것을 요구받지 않는다. 답변이 없더라도 구체적으로 명시되지 않는 한 사실인정안 및 법률결론안을 인정함을 의미하는 것은 아니다.

청구항 용어의 최종 공동 목록 식별, 각 당사자의 최종 해석안 포함을 위한 일정이 포함된다.

당사자들이 최초로 초기 해석안을 교환하는 시점에서 구체적인 해석안을 제시하지 못하거나 쟁점이 되는 특허 문언의 평이하고 일반적인 의미에 (부연 설명 없이) 의존하는 당사자는 행정 심판 판사의 사전 승인 없이 추후에 상이한 해석안을 부연하여 설명하거나 그에 의존할 수 없다.[10]다시 말해, 민간 당사자들은 자신의 "패"를 거의 동시에 공개할 것으로 기대된다. 당사자 일방은 초기에 어떤 청구항 해석을 제안하였는지 여부와 상관없이 회합 및 협의 기간 중에 다른 당사자가 제시한 청구항 해석 입장에 "동참"할 목적으로 입장을 변경할 수 있으며 분쟁이 제기된 청구항 용어를 전부 혹은 일부 해결하기 위하여 모든 당사자와 합의에 도달할 목적으로도 입장을 변경할 수 있다. 당사자들은 분쟁이 제기된 청구항 용어에 대한 각 당사자의 최종 해석안이 명시된 공동 목록의 제출이 요구되는 날짜에 확정된 각자의 청구항 해석 입장에 구속되며 적시에 정당한 사유를 입증하지 않는 한 그러한 입장을 변경하는 것이 허용되지 않는다.

절차 일정에 명시된 날짜에, 당사자들은 각 당사자가 해석이 요구된다고 주장하는, 평이하고 일반적인 의미를 부여할 모든 용어를 포함하는, 청구항 용어 목록을 제출한다. 그 이후에 당사자들은 이견을 좁히거나 해결하고 공동 청구항 해석표의 최종 작성을 원활히 함으로써 분쟁이 제기된 용어를 제한할 목적으로 회합 및 협의를 실시하여야 한다. 또한, 당사자들은 당사자들의 분쟁 해결에서 가장 중요할 가능성이 있는 10개 용어를 공동으로 식별하여야 하며 여기에는 해석에 따라 사건 또는 청구를 결정지을 가능성이 있는 용어가 포함된다. 당사자들은 법원의 허가 없이 해석이 요구되는 용어를 14개를 초과하여 제출하는 것이 허용되지 않는다.

증거 심리에 앞서 *마크먼* 심리 명령이 내려진 경우, 당사자들은 주장이 제기된 특허에서 분쟁이 제기된 청구항 용어에 대한 서면 작성에 관하여 협의하고 논리적인 순서를 정한 후에 모든 *마크먼* 관련 제출 문서에서 사전에 정해진 순서를 따를 것을 요구받는다. 그 예로서, **부록 B**의 관련 부분을 참조한다. 조기 청구항 해석과 관련된 전문가 의견서를 EDIS에 제출할 것을 요구받을 수도 있다. 절차 일정에는 의견서를 제출하여야 하는지 여부가 명시된다.

또한, 당사자들은 신속한 절차 진행을 위한 촉박한 일정으로 인하여 *마크먼* 명령이 심리 직전 등과 같은 조사 후반부에 내려질 수 있다는 점을 이해하여야 한다. 당사자들은 마크먼 명령이 전문가 의견서 제출 기한 전에 내려지거나 청구항 해석 판정 이후에 전문가 의견서를 보충할 수 있는 충분한 기회가 주어질 것으로 예단하지 않아야

---

[10]행정 심판 판사는 분쟁이 제기된 용어에 대하여, 상황에 따라서는 매우 합리적일 수도 있는, (통상의 기술자가 이해하는) 평이하고 일반적인 의미를 제안하는 방식의 타당성에 관하여 본 사건에서 어떠한 입장도 취하지 않는다. *Phillips v. AWH Corp., 415 F.3d 1303, 1314* (Fed. Cir. 2005) 등의 판례 참조. 다만, 이 경우 당사자 일방이 상대방이 제안한 내용을 확인한 연후에 세부적인 새로운 정보를 공개하는 방식으로 선회하는 전술적 결정을 내리는 상황이 우려된다.

한다. 기본 수칙 제5조 참조. 따라서 당사자들은 상대방이 전문가 의견서에서 제안한 해석을 감안하는 것이 권장되지만 의무 사항은 아니다. *마크먼* 명령이 내려지면, 행정 심판 판사는 전문가 의견서 보충이 허용되는지 여부를 설명한다. 이는 통상적으로 전문가 의견서를 제한적으로 보충할 수 있는 기회에 불과하며 최종적인 청구항 해석이 여하한 당사자가 제안한 해석과 실질적인 차이를 보이는 경우에 한한다. 이러한 보충은 법원의 허가에 의하여서만 허용된다.

당사자들과 위원회 조사 스태프는 분쟁이 제기된 청구항 용어의 수를 최소화하기 위하여 *마크먼* 심리일로부터 최소 10일 전까지 분쟁이 제기된 청구항 해석 쟁점에 관하여 회합 및 협의를 실시하여야 한다. *마크먼* 심리에 앞서, 신고인(들), 피신고인(들)(피신고인이 1인을 초과하는 경우에는 공동 서면을 제출할 것을 요구받는다), 스태프는 절차 일정에 명시된 날짜 전까지 분쟁이 제기된 청구항 용어 중 남아 있는 용어에 대한 각자의 해석과 일반적인 의미 혹은 쟁점 특허(들)의 청구항, 명세서 또는 출원 이력으로부터 도출하였거나 외부 증거로부터 도출한 각각의 해석 근거를 행정 심판 판사에게 제출하여야 한다. *마크먼* 심리 후에, 당사자들은 절차 일정에 명시된 날짜 전까지 심리 후 해석이 명시된 공동 해석표를 제출하여야 한다.

*마크먼* 심리 중에 혹은 그 이전에 정당한 사유를 제시하지 못한 경우, 후속 *마크먼* 명령은 당사자들의 용어 중 상위 10개에 대해서만 해석을 제공한다. 행정 심판 판사가 조사를 목적으로 분쟁이 제기된 청구항 용어를 해석하는 명령을 내린 이후에는, 조사의 증거개시와 서면이 그러한 청구항 해석에 의하여 제한된다.

## 1.14.1.  *마크먼* 서면 제출.

행정 심판 판사의 사전 승인이 없는 경우, 초기 *마크먼* 서면은 150면을 초과할 수 없다. 당사자들은 *마크먼* 심리가 시작되기 전부터 시작하여 심리 기간 전반에 걸쳐 분쟁이 제기된 청구항 문언을 해결하기 위하여 최선을 다하여야 하며 합의에 도달한 경우 행정 심판 판사에게 신속하게 서면으로 통지하여야 한다. 당사자들은 *마크먼* 심리 중에 당사자들의 분쟁을 해결하기 위하여 추가적인 노력을 기울일 것을 요청받을 수 있다. 그러한 경우 *마크먼* 심리 이후에 분쟁을 해결하기 위한 당사자들의 노력을 보고하고 기존에 분쟁이 제기되었던 해석 중에서 합의에 도달한 해석을 재제출할 수 있는 소정의 기간이 당사자들에게 부여될 수 있다. 당사자들이 해석이 요구되는 청구항 용어를 과다하게 지정한 경우, 행정 심판 판사는 해석이 요구되는 청구항 용어의 수에 제한을 둘 수 있다. 당사자들이 해석이 요구되는 청구항 용어를 과다하게 지정한 경우, 그로 인하여 *마크먼* 명령이 지연될 수 있다.

당사자들이 특정한 청구항 용어의 해석에 합의하더라도 행정 심판 판사는 그러한 용어가 "분쟁이 제기된 상태"[11]인 것으로 간주하며 행정 심판 판사가 독립적인 판단을

---

[11] *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011); *Vanderlande Indus. Nederland BV v. Int'l Trade Comm.*, 366 F.3d 1311, 1323 (Fed. Cir. 2004); *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) 참조.

내릴 수 있도록 당사자들이 *마크먼* 서면에 해석에 합의한 근거와 논리를 상세하게 기술한 부분을 포함시킬 것을 기대한다. *특정한 연소성 담배 종이 및 이를 포함하는 제품*(조사 번호 337-TA-756, Comm'n Op. at 43-44 (U.S.I.T.C., 2012.6.15.) 참조.

초기 *마크먼* 서면에 포함되지 않은 주장은 포기한 것으로 간주된다. 위에서 언급한 것처럼, 당사자들은 행정 심판 판사에게 공동 목록을 제출할 것을 요구받는 날짜에 확정된 자신들의 최종 청구항 해석 입장에 의하여 구속되며 여기에는 상황에 따라 위에 기술된 *마크먼* 심리 후 해석이 포함될 수 있다.

당사자들이 *마크먼* 서면과 함께 제출하기를 희망하는 증거물이나 첨부물이 존재하는 경우, 당사자들이 *마크먼* 심리 중에 기록으로 등재할 예정인 증거물로 제안한 목록과 반드시 일치하여야 한다. 그러한 첨부물을 서면에서 인용하는 경우에는 당사자들이 제안한 증거물 번호와 일치하여야 한다. 이는 초기 *마크먼* 서면 제출 기한 이전에 당사자들이 공동 증거물에 관하여 회합 및 협의를 실시하여야 함을 의미한다. 예를 들어, 신고인이 사전의 정의를 복사하여 첨부할 예정인 경우, 신고인은 해당 첨부물에 제안된 (4자리) 증거물 번호(예: CXM-0003)를 표시하여야 하며 서면에서 해당 첨부물을 참조할 때 제안된 증거물 번호를 사용하여야 한다(예: 제안된 CXM-0003의 14면 참조). 행정 심판 판사는 *마크먼* 심리 중에 기록으로 인정되지 않은 모든 *마크먼* 서면 첨부물을 무시할 수 있다.

당사자들은 *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)와 *General Protecht Group, Inc. v. International Trade Comm'n*, 619 F.3d 1303, 1310-11 (Fed. Cir. 2010)에 명시된 목적에 한하여 외부 증거를 활용할 것으로 기대된다.

"특정한 특허 용어에 대한 전문가의 주관적 이해는 해석과 무관하다." *General Protecht*, 619 F.3d, 1310-11행정 심판 판사는, 재량에 따라, 부적절하게 제출된 외부 증거를 말소하거나 무시할 수 있다.

*마크먼* 서면에 대한 답변서 또는 재답변서는 일반적으로 권장되지 않는다. 그러한 서면은 정당한 사유에 근거하여 명령이 내려진 경우에 한하여 허용된다. 그러한 서면은 50면으로 제한되며 초기 *마크먼* 서면에서 제기한 주장을 반복할 수 없다.

## 1.14.2.    *마크먼* 심리 전 진술서.

본 조는 특허 관련 여부와 상관없이 **모든** 조사에 적용된다. 다만, 본 조사에서 *마크먼* 심리에 참여할 예정인 모든 당사자는 절차 일정에 명시된 날짜 또는 그 이전에 아래 정보가 포함된 간략한 진술서를 제출하여야 한다:

(a) 확인된 모든 발언자 또는 증인의 이름. 발언자가 소송대리인인지, 사실 증인인지, 전문가 증인인지 여부가 포함된다. 당사자 일방이 증인을 내세울 예정인 경우, 심리 전 진술서에 각 증인의 증언에 대한 매우 간략한 개요서가 포함되어야 한다.

(b) 당사자들이 *마크먼* 심리에 제출하기를 원하는 모든 증거물을 제목과

번호순으로 열거한 목록. 목록은 5개 열로 구성되어야 한다. 당사자는 처음 4개 열에 증거물 번호, 증거물에 대한 간략한 설명과 제목, 제출 목적, 증거물을 뒷받침하는 증인을 기재하여야 한다. 마지막 열은 "채택"이라는 표제를 붙여야 하며 날짜를 기입할 수 있을 정도의 공간이면 충분하다.

(c) 당사자들이 동의한 모든 합의 사항의 목록. 모든 합의 사항은 EDIS에 제출하여야 한다.

(d) 각 발언자 또는 증인의 예상 발언 시간을 포함하는 *마크먼* 심리 일정 및 시간 배분안. (당사자들은 심리 전 진술서를 제출하기 전에 예상 날짜와 대략적인 소요 시간에 협의하여야 한다)

**1.14.3.**    *마크먼* 심리 증거.

**1.14.3.1.**    제안된 증거물의 교환.

위에서 언급한 것처럼, 당사자들은 *마크먼* 서면을 제출하기 <u>전에</u> 공동 증거물을 식별하고 번호를 부여하기 위하여 회합 및 협의를 가져야 한다. 절차 일정에 명시된 날짜 전까지 상대방에게 제안된 증거물 목록의 사본을 송달하여야 한다. 당사자들이 각자가 제안하는 증거물 목록을 교환한 후에는 우발적으로 중복되는 증거물을 삭제하거나 공동 증거물로 새로운 번호를 부여하고 각자의 증거물 목록을 개정하여야 한다. *마크먼* 서면에서 인용되었으나 통합되거나 새로운 번호가 부여된 증거물은 새로 제안하는 증거물 번호를 명확하게 표시한 상태로 증거물 목록에 그대로 남겨 두어야 한다. 예를 들어, 피신고인이 자신의 *마크먼* 서면에서 RXM-0003이라고 표시된 사전의 정의를 인용하였으나 이후에 중복을 제거하기 위하여 JXM-0056라는 새로운 번호를 부여한 경우, 피신고인이 제안하는 증거물 목록에 기입된 항목에 이러한 변경 사항이 반영된다.

| RXM-0003 | 옥스퍼드 영어사전 제2판에서 발췌 | 분쟁이 제기된 용어인 "동일 범위" 및 "인접"의 통상적 의미에 관한 외부 증거 | 피신고인 발표 자료 | **JXM-0056으로 번호 변경** |
|---|---|---|---|---|

절차 일정에 명시된 날짜 전까지 상대방에게 일체의 시연물을 포함하는 증거물의 사본(존재하는 경우)과 개정된 증거물 목록안을 송달하여야 한다. 제안된 증거물은 *마크먼* 심리 전에 위원회 서기에게 제출하거나 행정 심판 판사에게 송달할 수 없다.

최종 증거물 목록안은 *마크먼* 심리 전 진술서의 일부로서 제출하여야 한다.

**1.14.3.2.**    제안된 증거물의 **EDIS** 제출 및 행정 심판 판사에 대한 송달.

당사자들은 자신들이 제안하는 *마크먼* 증거물을 각자의 *마크먼* 서면과 함께 EDIS에 제출하여야 한다. 증거물에는 명확한 라벨을 부착하여야 하며 모든 증거물에 적용되는 규칙으로서 그 내용에 대한 서술이 포함되어야 한다. (GR 제1.14.3.3조 참조). 제출 규칙이 변경된 경우에는 당사자들에게 그 내용을 통지한다.

*마크먼* 심리에서 사용되는 당사자들의 시연용 슬라이드도 EDIS에 제출하여야 한다. *마크먼* 심리가 진행되는 경우 시작 시간으로부터 24시간 전까지 판사 검토용 사본을 McNamara337@usitc.gov로 발송하여야 한다.

**1.14.3.3.        채택된 증거물의 형식 및 제출.**

당사자들은 채택되거나 거부되는 *마크먼* 심리 증거물의 형식 및 제출과 관련하여 아래의 기본 수칙 제8조에 규정된 절차를 참조하여야 한다. 기본 수칙 제8조 참조. 증거물에는 4자리 숫자 "0001"부터 시작하여 순서대로 번호를 부여하여야 하며 신고인 측 *마크먼* 증거물인 경우 "CXM", 피신고인 측 증거물인 경우 "RXM", 스태프 측 *마크먼* 증거물(해당되는 경우)인 경우 "SXM", 공동 증거물인 경우 "JXM"을 숫자 앞에 붙여야 한다.

*그에 추가하여, 신청서, 서면 또는 마크먼 서면과 함께 EDIS에 제출하는 모든 증거물에는 내용에 관한 설명이 포함되어야 하며 단순히 알파벳이나 숫자로만 표시할 수 없다. 예를 들어, "증거물A: _____ 의 확인서", "증거물1: _____ 의 확인서"라고 표시하여야 한다.*

*주의: 증거물에 대한 설명은 35자를 초과할 수 없다. 파일 용량은 미국 국제무역위원회 제출 절차 핸드북 11면과 관련 규정에 따라 25 MB를 초과할 수 없다.*

**1.14.4.        마크만 심리.**

당사자들은 *마크먼* 절차의 발표 순서와 시간 배분을 결정할 수 있는 재량권을 갖는다. 예를 들어, 당사자들은 신고인이 모든 특허에 관하여 발표한 후에 피신고인과 스태프가 차례로 발표하는 방식을 선택할 수 있다(해당되는 경우). 다른 방식으로, 당사자들은 특정한 특허 또는 청구항 용어에 관한 주장을 각자가 제시한 후에 차례로 다음 특허로 넘어가는 방식을 선택할 수도 있다. 경우에 따라서는, 청구항 용어에 대한 해석을 제안한 당사자가 먼저 발표하는 방식에 당사자들이 합의할 수도 있다. 발표 방식은 당사자들이 결정한다. 당사자들은 반박(행해지는 경우)에 시간을 얼마나 배정할 것인지를 정할 수도 있다. 당사자들은 점심시간을 포함하여 적절한 휴식을 보장하기 위하여 *마크먼* 심리에 배정되는 시간이 하루 6.5시간이라는 점에 유념하여야 한다.

**1.14.4.1.        모두 진술과 최종 변론.**

*마크먼* 심리에서는 모두 진술이 필수적이다. 최종 변론은 필수적으로 요구되는

것은 아니다. 그럼에도, 최종 변론은 심리에 유익하다. 당사자들은 최종 변론을 포함할 것인지 여부를 결정할 수 있다. 주장이 제기된 각각의 특허에 대한 기술 설명회가 권장되지만 의무 사항은 아니다.

**1.14.4.2.    *마크먼* 심리 시간.**

통상적인 심리 시간은 오전 9:30부터 오후 5:30까지이며 1시간의 점심 휴정과 2회의 15분 휴식 시간이 포함된다.

**1.14.4.3.    증거물의 채택.**

당사자들은 각자 증거물의 기록 등재를 신청할 책임이 있으며 *마크먼* 심리가 종료되는 오후 5시(또는 그 외의 시각) 전까지 행정 심판 판사와 증거물 채택 절차를 개시하여야 한다. 행정 심판 판사가 요청이 접수된 증거물의 채택을 승인한 경우, 당사자들은 심리 속기사가 기록에 등재할 수 있도록 채택된 증거물의 목록을 제출할 준비를 하여야 한다.

당사자들은 시연용 증거물을 실질적 목적 혹은 단순한 시연 목적으로 채택할 것을 신청할 수 있다. 그러한 지정은 제출 시점에서 명확하게 기록으로 남겨야 한다.

**1.14.4.4.    속기록.**

위원회의 Webex 플랫폼상에서 원격으로 절차를 진행하는 경우, 당사자들은 실시간 속기 서비스를 이용할 수 없다. 하지만 대면 심리 절차에서는 실시간 속기 서비스를 이용할 수 있다. 실시간으로 제공되는 속기록이 권장된다.

**1.15.    합의 사항.**

**1.15.1.    일반적 합의 사항.**

당사자들 간의 모든 합의 사항은 EDIS에 제출하여야 한다. 당사자들은 모든 합의 사항을 이메일(McNamara337@usitc.gov)을 통하여 행정 심판 판사에게도 통지하여야 한다. 본 기본 수칙을 변경하는 합의 사항은 허가를 얻지 못한 경우 반드시 승인된다는 보장이 없다.

**1.15.2.    기술 합의 사항.**

행정 심판 판사가 절차 일정에서 기술 합의 사항 제출 기한을 정한 경우, 민간 당사자들은 성실하게 회합 및 협의를 실시한 후에 스태프(해당되는 경우)와의 상의를 거쳐 행정 심판 판사에게 본 조사의 쟁점 특허 기술에 관한 공동 합의 사항의 사본 2부를 제출하여야 한다. 당사자들은 공동 기술 합의 사항에 관한 스태프(해당되는 경우)의 입장을 추가로 진술하여야 한다.

상기한 합의 사항에는 보다 적절하다고 판단되는 경우 주장이 제기된 각각의 특허 또는 특허군별로 별도의 섹션이 포함되어야 하며 해당되는 경우에는 모든 쟁점 특허에 공통적으로 적용되는 기술에 관하여 기술하는 일반 기술 섹션이 포함되어야 한다. 최소한의 기준으로, 상기한 합의 사항은 모든 쟁점 주장 청구항에 대하여 분쟁이 제기된 해석을 이해하기에 충분한 배경 정보를 포함하여야 하며 당사자들이 합의하지 않은 사실은 일절 포함할 수 없다.

상기한 합의 사항에 열거된 모든 사실은 침해에 관한 행정 심판 판사의 최종 예비 판결을 포함하여 조사 전반에 걸쳐 이용되고 의존될 것으로 기대된다. 또한, 상기한 합의 사항은 법적 주장을 제시하는 수단으로 이용될 수 없다.

당사자들은 기술 합의 사항을 공동으로 작성하기 위하여 최선을 다할 것으로 기대된다. 제출되는 공동 기술 합의 사항은 실체가 포함되어야 하며 쟁점 특허를 인용하거나 의역하여 나열한 목록에 그치지 않아야 한다(다만, 특허에 관한 고찰은 핵심적인 부분을 구성할 것으로 기대된다). *휴대폰, 휴대용 음악 재생장치, 컴퓨터를 포함하는 특정한 전자 장치*(조사 번호 337-TA-701, 명령 번호 26, 1면(U.S.I.T.C., 2010.6.29.)) 참조.

## 1.16.        보호 명령 및 특허 출원 업무 금지

특정한 조사에서, 민간 당사자 또는 비당사자는 관련성이 있고 증거개시 대상에 속하면서 사건 초기에 명령한[12] 수준을 넘어서는 강화된 보호가 요구될 가능성이 있는 비밀 자료를 보유하고 있을 가능성이 있다. 그와 같이 강화된 보호를 필요로 하는 당사자는 본 기본 수칙이 교부된 날로부터 5영업일 이내에 신속하게 보호 명령 부속서 협상에 착수할 것으로 기대된다. 비당사자에게 증거개시를 위한 소환장을 송달한 당사자는 소환장 송달일로부터 2영업일 이내에 즉시 해당 비당사자가 그러한 보호를 신청할 예정인지 여부를 질의할 것으로 기대되며 소스코드 또는 그 외의 중요한 비밀 자료가 소환장에 명시된 경우 성실하게 협상을 시작하여야 한다. 민간 합의가 아닌 신청에 의하여 보호 명령 부속서를 구하는 경우, 그러한 신청은 증거개시 절차의 지연을 방지하기 위하여 실무적으로 최대한 조속한 시일 내에 제기하여야 하며 주어진 상황하에서 강화된 보호가 요구되는 정당한 사유가 명시된 확인서 등의 증거를 포함하여야 한다. 당사자들과 비당사자들은 보호 명령 부속서가 필요하다는 이유로 비밀에 해당하지 않거나 기존에 효력을 발생한 보호 명령을 근거로 제출이 가능한 다른 증거개시를 보류할 수 없다.

당사자들은 보호 명령에 위원회, 위원회 스태프, 행정 심판 판사 또는 행정 심판 판사 스태프를 포함시킬 수 없다. 그들은 CBI를 보호하는 위원회 규칙이 적용되는 대상에 이미 포함된다.

행정 심판 판사는 특허 출원 업무 금지 조항이 포함된 보호 명령 부속서를

---

[12] 일반적으로 제1호 명령인 보호 명령이 여기에 해당한다.

신청하는 모든 당사자가 *휴대폰과 태블릿을 포함하는 특정한 소비자 가전*(조사 번호 337-TA-839, 명령 번호 제28호 (U.S.I.T.C., 2013))을 검토할 것을 명령한다. 당사자들이 사전에 특허 출원 업무 금지를 구하는 대신에 보호 명령 부속서의 대상이 되는 중요한 비밀 자료를 열람하려는 개인으로 하여금 특허 출원 업무 또는 경쟁적 의사결정에 최근에 관여한 적이 있거나 관여하고 있거나 가까운 미래에 관여할 예정인지 여부를 서면으로 확인할 것을 요구하는 통지 조항을 통합하는 것이 추가로 권장되지만 의무 사항은 아니다. 이를 통하여 제공자가 열람에 앞서 (합의 또는 신청에 의하여) 개별적으로 맞춤화된 특허 출원 업무 금지를 신속하게 구할 수 있으며 *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373 (Fed. Cir. 2010)에 명시된 기준을 충족할 가능성을 높일 수 있다.

**2.**              **신청.**

이해관계가 유사한 당사자들은 실무적으로 가능한 범위 내에서 신청 절차를 조율하고 통합하여야 한다.

**2.1.**              **내용.**

모든 서면 신청서는 (i) 신청서, (ii) 신청을 뒷받침하는 근거와 법리를 기술한 별도의 서면, [13](iii) 근거와 법리를 기술한 서면을 뒷받침하는 확인서, 진술서, 증거물 또는 기타 첨부물이 수록된 부록, (iv) 위원회 규칙 제201.16(c)조에 의하여 요구되는 송달 증명서로 구성되어야 한다. 신청인은 신청서에서 어떤 구제를 요청하는지 그리고 그러한 요청(들)의 근거가 되는 법률과 사실이 무엇인지를 명확하게 기술하는 것이 권장된다. 허가를 얻지 못한 경우, 신청서와 근거 서면은 총 35면을 초과할 수 없으며 신청서에 첨부되는 모든 첨부물은 총 100면을 초과할 수 없다. 두 면수 한도를 어느 하나라도 초과한 신청서는 불이익 없이 기각되거나 말소될 수 있다. 당사자가 기본 수칙을 준수하여 신청서를 재제출하라는 명령이 내려질 수 있다. 신청서 첨부물에 적용되는 면수 제한에 대한 유일한 예외는 국외 증거개시를 목적으로 국제 사법 공조 요청서를 처리하기 위하여 외국 정부 당국에 공조 요청서 또는 공문을 발송하여 줄 것을 미국 지방법원에 요청하는 권고서를 요청하는, 반대가 없는[14] 신청서에 관련된 경우이다. 이러한 신청서인 경우에 한하여, 첨부물에 적용되는 면수 한도는 500면이다.

입증 제의서는 이 범주에 속한다. 입증 제의서는 신청서의 일종이며 어떤 면에서는 재심 신청서로 볼 수 있다. 입증 제의서는 본 조에 규정된 면수 한도를 초과할 수 없다. 입증 제의서는 신청서 면수 한도보다 훨씬 짧아야 한다. ALJ는 상황과 증거의 유형에 근거하여 별도의 면수 한도를 규정할 수 있다. 입증 제의서를 부적절한 목적으로 악용하지 않아야 한다. 예를 들어, 특정한 방어가 기각되고 제거된 경우, 입증 제의서를

---

[13]5면 미만의 신청서인 경우에는 근거와 법리를 기술한 별도의 서면이 요구되지 않는다.

[14]기본 수칙 제2.2조에 따른 의무를 이행한 이후에, 비신청 당사자의 공식적인 입장이 "반대"가 아닌 경우에는 신청서에 대한 반대가 없는 것으로 취급된다. 기본 수칙 제2.2조 참조.

통하여 되살리려는 시도는 부적절하다. 또 다른 예로, 입증 제의서를 제출하는 측에 유리하도록 기록을 보완할 목적으로 부적절하거나 기존에 존재하는 증거개시 증언을 변경하려는 시도를 들 수 있다. 그에 추가하여, 적절한 입증 제의서는 증언을 통하여 제시되었을 가능성이 있는 일련의 질문과 답변을 제안하는 경우가 많으며 기존에 존재하는 증거에 기반을 두는 것이 일반적이다. 입증 제의서를 제출하기에 앞서 Fed. R. Evid. 103, 주석, 선례를 검토하기 바란다.

신청서에 대한 모든 답변서는 (i) 신청서에 대한 답변을 제시하는 근거와 법리를 기술한 서면, (ii) 근거와 법리를 기술한 서면을 뒷받침하는 확인서, 진술서, 증거물 또는 기타 첨부물이 수록된 부록, (iii) 위원회 규칙 제201.16(c)조에서 요구하는 송달 증명서로 구성되어야 한다. 또한, 신청서에 대한 모든 답변서는 위원회 서기실에서 부여한 신청 사건 번호를 해당 답변서의 제목 또는 첫 단락에 포함하여야 한다. EDIS는 신청서에 부여된 문서 번호를 공개한다. 허가를 얻지 못한 경우, 신청서에 대한 답변서와 근거와 법리를 기술한 서면은 총 25면을 초과할 수 없으며 신청서에 대한 답변서에 첨부되는 모든 첨부물은 총 100면을 초과할 수 없다.

반대가 없는 신청서와 공동 신청서는 명령안을 포함하여야 한다. 신청서가 제출된 당일에, 명령안이 포함된 신청서 버전을 윈도우용 MS워드로 작성하여 이메일(McNamara337@usitc.gov)로 제출하여야 한다.

*신청서/서면과 함께 제출하는 모든 증거물에는 알파벳 또는 숫자에 추가하여 증거물의 내용에 관한 설명이 반드시 포함되어야 한다. 증거물에 관한 설명은 35자를 초과할 수 없다. 파일의 용량은 25 MB를 초과할 수 없다(미국 국제무역위원회 제출 절차 핸드북 참조).*

## 2.2.            확인서.

모든 신청서에는 신청 당사자가 신청서를 제출하기 최소 2영업일 전에 상대방을 접촉하고 사안을 해결하기 위하여[15] 합리적이고 성실한 노력을 다하였음을 확인하는 확인서가 포함되어야 하며 신청서에 대한 다른 당사자들의 입장이 확인된 경우 그러한 입장이 명시되어야 한다. 비신청 당사자들은 신청서를 해결하려는 신청 당사자의 노력에 적시적이고 실질적으로 성실하게 응하기 위하여 노력하여야 한다.

신청 당사자가 신청서를 제출하기 최소 2영업일 전에 비신청 당사자를 접촉하고 사안을 해결하기 위하여 합리적이고 성실한 노력을 다하였음에도 불구하고 비신청 당사자(스태프가 당사자인 경우 스태프는 제외된다)가 신청서에 찬성하는지, 반대하는지 혹은 반대하지 않는지 여부를 밝히지 않은 경우에는 해당 신청서에 대한 반대가 없는 것으로 취급된다. 예를 들어 신청서에 대한 "입장이 없다"거나 "서류를 검토한 후에 입장을 정하겠다"는 비신청 당사자(스태프는 제외된다)의 진술은 반대가

---

[15] 상대방에게 이메일을 발송하여 신청서안에 대한 입장을 묻는 조치는 사안을 해결하려는 성실한 노력을 구성하지 않는다.

없는 입장으로 취급된다.

**2.3.        중점 이의 제기서, 증거 배제 신청서, 말소 신청서**

절차 일정에는 당사자가 심리를 통한 논의 또는 판결에서 최우선이라고 판단하는 증거물에 대하여 문서 목록을 제출하고 이의에 대한 서술형 설명을 제시하는 날짜가 명시되어 있다. 그에 추가하여, 절차 일정에는 각 당사자에게 제출이 허용되는 증거 배제 신청서와 중점 이의 제기서의 총 건수와 제출 마감일이 규정되어 있다.

모든 증거 배제 신청서와 중점 이의 제기서에는 반드시 제1호, 제2호, 제3호 등의 번호를 부여하여야 한다. 마찬가지로, 증거 배제 신청서와 중점 이의 제기서에 대한 답변서에도 MIL 제1호, 제2호, 제3호처럼 대상 신청서와 동일한 번호를 적용하여야 한다.

허가를 얻지 못한 경우, 증거 배제 신청서와 중점 이의 제기서는 각각 총 25면을 초과할 수 없으며 그러한 신청서에 첨부되는 모든 첨부물은 총 50면을 초과할 수 없다. 그러한 신청서에 대한 답변서도 동일한 한도를 초과할 수 없다. <u>이러한 면수 한도를 어느 하나라도 초과한 신청서는 불이익 없이 기각되거나 말소될 수 있다.</u>

상기한 요건에 추가하여, 말소 신청서는 해당되는 경우 신청인이 말소를 구하는 본문 및/또는 증언의 면과 줄 번호를 반드시 포함하여야 한다. 신청인은 말소 대상 본문의 면과 줄 번호가 포함된 문서를 신청서에 대한 첨부물로 포함시켜야 한다.

심리 전 말소 신청서는 건수가 극히 적어야 하며 예외적으로 제출하여야 한다.

각 당사자가 허가 없이 제출할 수 있는 심리 전 말소 신청서는 1건으로 제한된다. 다만, 말소 신청서가 증거 심리 시작일로부터 직전 2개월 이내에 제출된 경우에는 증거 배제 신청서 또는 중점 이의 제기서로 취급되어 해당 당사자(또는 집단)에게 제출이 허용되는 증거 배제 신청서와 중점 이의 제기서의 총 건수에서 차감된다.

이 수칙은 심리 중에 제기/제출된 증거/증언 이의 제기서 또는 말소 신청서 혹은 심리 후에 제출된 말소 신청서에는 적용되지 않는다. GR 제9.8조도 참조.

**2.4.        약식 결정 신청서.**

신고인 집단과 피신고인 집단(혹은 집단이 이해관계의 동질성을 공유하지 않는 경우 집단 내의 개별 당사자)은 사전에 허가 신청서를 제출하지 않는 한 하나의 쟁점에 대하여 약식 결정 신청서를 1회 이내로 제출할 수 있다. 약식 결정 신청서는 10,000단어(약 40면에 해당한다)로 제한되며 본문은 12포인트, 각주는 11포인트를 적용하고 여백은 1.0인치로 설정하여야 한다. 목차, 약어 일람표가 수록된 면(들), 판례 인용 목록이 포함된 면(들), 문서 표제는 면수 산정에서 제외된다. 허가를 얻지 못한 경우, 증거물은 100면을 초과하여 첨부할 수 없다.

약식 결정 신청서에는 실질적인 다툼이 존재하지 않으므로 신청 당사자가 법률상 당연히 약식 승소 결정을 받을 권리를 갖는다고 주장하는 중요한 사실이 기술된 별도의 진술서를 첨부하여야 한다.

그에 추가하여, 중요한 사실이 기술된 진술서는 "근거가 되는 확인서, 진술서 또는 기타 자료를 구체적으로 참조하는 간결한 사실 진술"로 구성된 표를 반드시 포함하여야 한다.

사실 진술은 가능한 경우라면 반드시 인용 부호를 사용하여 기록 증거를 직접적으로 인용하여야 한다. 표의 형식은 대체로 아래와 같아야 한다:

| 항목 번호 | 사실 진술 | 인용 | 분쟁 여부 | 사실 반박 | 인용 |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

신청 당사자는 표의 첫 3개 열(항목 번호, 사실 진술/인용구, 인용)을 기재하여야 하며 비신청 당사자는 나머지 열(분쟁 여부 표시, 사실 반박, 인용)을 기재하여야 한다.

### 2.4.1.     약식 결정 신청서에 대한 답변서.

약식 결정 신청서에 대한 답변서는 위의 기본 수칙 제2.4조에서 산정한 바와 같이 10,000단어(약 40면에 해당한다)로 제한된다.

답변서에는 신청인이 작성한 사실 표를 완성하여 첨부하여야 한다. 답변서는 구체적인 기록 증거나 기타 자료를 그대로 제시하여 표의 마지막 3개 열(분쟁 여부 표시, 사실 반박, 인용)을 완성하여야 한다. 사실 반박은 가능한 경우라면 반드시 인용 부호를 사용하여 기록 증거를 직접적으로 인용하여야 한다. 표는 단어 수 산정에 포함되지 않는다.

당사자들은 상투적인 반박을 지양하여야 하며 그 중에서도 특히 쟁점이 되는 중요한 사실과 직접적인 관련성이 없는 반박이나 이의를 지양하여야 한다. <u>중요한 사실 전체 또는 일부에 대하여 분쟁을 제기하지 않는 경우, 답변 당사자는 그러한 의사를 표시하여야 한다.</u>

신청 당사자의 표에 포함된 모든 중요한 사실은 비신청 당사자가 구체적으로 진술을 반박하지 않는 한 비신청 당사자가 인정한 것으로 간주될 수 있다.

### 2.5.     증거개시 및 증거개시 관련 신청서.

행정 심판 판사는 당사자들과 2회의 전화회의를 실시할 예정이며 그 중 최소 1회 이상은 증거개시 기간 중에 진행된다. 이러한 전화회의가 실시되는 날짜는 본 조사를 규율하는 절차 일정에 포함된다. 당사자들은 전화회의 접속 번호 및 회의 내용을 기록할 속기사를 확보할

책임을 신고인부터 시작하여 교대로 맡는다. 모든 회의의 속기록은 당사자들이 속기록을 수령한 날로부터 7일 이내에 각자 CBI를 가림 처리할 것을 제안한 부분이 포함된 전화 심리 속기록을 공동으로 제출한 이후에 EDIS에 제출하여야 한다.

증거개시 분쟁과 관련된 여하한 신청서를 제출하기에 앞서, 그러한 신청서를 제출하려는 당사자는 기본 수칙 제2.2조에 근거한 회합 및 협의 의무를 반드시 이행하여야 한다. 해당 수칙에 근거한 의무를 이행한 이후에도 증거개시 분쟁이 지속되는 경우, 관련 당사자는 증거개시 분쟁의 성격을 설명하는 서신을 McNamara337@usitc.gov로 제출하여야 한다. 그러한 서신은 이메일(McNamara337@usitc.gov)로 제출하여야 하며 2면을 초과할 수 없다. 답변 서신을 제출하려는 당사자는 신청 희망자의 최초 서신이 제출된 날로부터 2영업일 이내에 그러한 서신을 제출하여야 한다. 모든 답변 서신은 이메일을 통하여 위의 주소로 제출하여야 하며 2면을 초과할 수 없다. 그러면 원인이 된 증거개시 분쟁은 다음으로 예정된 행정 심판 판사와의 전화회의 안건으로 지정된다. 필요한 경우 임시 전화회의를 실시할 수 있다.

각 전화회의가 예정된 날의 직전 영업일에, 당사자들은 전화회의에서 다뤄질 것을 제안하는 안건을 McNamara337@usitc.gov로 공동으로 제출하여야 하며 여기에는 위의 절차에 따라 제기된 모든 분쟁이 포함되어야 한다.

계류 중인 분쟁이 존재하지 않고 당사자들이 판단하기에 절차 일정에 예정된 전화회의를 실시할 필요가 없는 경우, 당사자들은 최소 2영업일 전에 이메일(McNamara337@usitc.gov)을 통하여 행정 심판 판사에게 예정된 전화회의가 불필요하다고 통지하여야 한다.

증거개시 관련 신청서 제출 허가는, 만약 부여된다면, 신청 희망자가 본 명령에 규정된 절차를 준수한 이후에만 부여된다.

## 2.5.1.    내용

증거개시 관련 신청서는 증거개시 요청서와 그에 대한 모든 이의 및 답변서의 내용을 반드시 첨부하여야 한다. 그에 추가하여, 강제 답변 신청서의 대상이 되는 당사자가 신청서가 계류 중인 기간 중에 보충 증거개시 답변서를 송달하는 경우, 신청서에 대한 답변서는 보충 답변서의 사본, 혹은 문서를 제출하는 경우라면 어떤 추가 문서를 제출하였는지에 관한 상세한 내역을, 반드시 포함하여야 한다.

## 2.6.    신청서에 대한 답변서 제출 기한 단축 요청서.

당사자 일방이 기본 수칙 제1.9.2조에 따라 신속 처리를 구하는 경우, 그러한 신청서는 상대방이 신청서에 답변할 수 있는 기한에 대한 단축 요청서를 포함하여야 한다. 답변 기한 단축을 요청한다는 사실을 신청서 제목에 명시하여야 하며 그러한 요청의 근거에 대한 설명을 신청서에 포함하여야 한다. 답변 기한 단축 요청서는 별도의

신청서를 통하여 제기할 수 없다.

**2.7.      소환장 취소 신청서를 제외한 다른 어떠한 신청서도 증거개시를 중단시키지 않는다.**

신청서 제출은 소환장 취소 신청서를 적시에 제출한 경우를 제외하고 증거개시 절차를 중단시키지 않으며 그러한 경우에도 소환장을 송달받은 비당사자인 당사자 또는 증인에만 국한된다.

**2.8.      절차 일정상의 신청서 제출 기한.**

절차 일정에 몇몇 신청서(증거개시 강제 신청서, 약식 결정 신청서, 증거 배제 신청서)의 제출 마감일이 포함되어 있는 것은 사실이지만 당사자들은 각자의 신청서를 수시로 제출할 것으로 기대된다. 분쟁이 발생한 시점으로부터 실무적으로 최대한 조속한 시일 내에 행정 심판 판사에게 분쟁 발생 사실을 성실하게 알리지 않은 당사자는 주장의 설득력을 상실할 가능성이 있다. *무선 통신 장치, 휴대용 음악 및 데이터 처리 장치, 태블릿 컴퓨터를 포함하는 특정한 전자 장치*(조사 번호 337-TA-794, 명령 번호 제52호, 2면(U.S.I.T.C., 2012)) 등 참조.

증거개시 강제 신청서는 기본 수칙 제2.5조를 반드시 준수하여야 한다.

**2.9.      이익 상실.**

당사자들은 무효 주장, 실질적 사실 또는 전문가 이론(흔히 "주장"이라고 부른다) 또는 그 외의 다른 주장 또는 방어 등 여하한 쟁점이 이익을 상실하거나 철회된 경우 7영업일 이내에 EDIS에 통지서를 제출하여야 한다.

사정의 변동으로 인하여 신청서 전체 또는 일부가 이익을 상실한 경우, 신청 당사자는 해당 신청서 전체 또는 특정한 일부를 철회할 것인지 여부에 관한 통지서를 (문서 제목에 관련 신청서 번호를 명기하여) 신속하게 제출할 것으로 기대된다. 그에 추가하여, 신청인은 24시간 이내에 행정 심판 판사의 법률 자문관에게 이메일로 통지할 것으로 기대된다.

**3.      증거개시.**

당사자들은 신속하게 증거개시를 개시하고 그에 응하기 위하여 집중적으로 성실하게 노력하여야 한다. 성실성이 결여될 경우 당사자 일방이 증거개시 집행 신청서의 정당성을 입증하는 것에 영향을 미칠 수 있으며 그러한 신청서가 사실 증거개시 종료 시점에 임박한 경우에는 특히 그러하다. 같은 맥락에서, 매우 부당하거나 부적절한 증거개시 요청서에도 불구하고 신속하게 보호 명령을 구하지 않는 경우에도 강제 신청서에 응하는 당사자의 반대 논리를 약화시킬 수 있다. 또한, 당사자들은 절차 일정상의 기한이 업무를 완료하는 최종일로 간주된다는 점에도 유의하여야 한다. 본

절차가 신속하게 진행된다는 점에서, 당사자들은 성실한 노력을 기울이고 증거개시 강제 신청서나 소환장 집행 신청서 등의 신청서를 정해진 기한보다 일찍 제출할 것으로 기대된다. 모든 당사자가 신속하게 절차를 진행할 것으로 기대되므로 당사자들은 전술적으로 신청서 또는 증거개시를 보류하거나 지연하지 않아야 한다. 위원회 규칙 제210.2조.

위원회는 제소장이 아닌 조사 개시 공고가 조사의 범위를 정의한다는 점을 확인한다. 78 FR 23476 (2013.4.19.). "증거개시의 범위는 필연적으로 조사의 범위에 비례한다." *특정한 충전용 리튬 이온 전지, 그 구성품, 이를 포함하는 제품*(337-TA-600, 명령 번호 제8호(2007.7.25.)) 따라서 당사자 일방이 증거개시의 범위를 제소장에 구체적으로 명시된 제품으로 일방적으로 한정하는 행위는 용인되지 않으며 그러한 논리로 증거개시 요청서에 불응하는 당사자는 이 문제에 관한 위원회의 명확한 지침에 근거하여 제재를 받을 수 있다. 당사자 일방이 조사 개시 공고의 범위 또는 요청된 증거개시의 범위를 심각하게 우려하는 경우에는 신속하게 적절한 행동을 취할 책임이 있다.

**3.1.         분쟁 해결, 조정된 증거개시.**

당사자들은 증거개시 과정에서 발생하는 분쟁을 자신들이 해결하기 위하여 합리적인 노력을 다하여야 한다. 이해관계가 유사한 당사자들은 증언녹취를 비롯한 다른 모든 증거개시를 조정하고 통합하여야 한다.

**3.1.1.         증거개시 위원회.**

본 기본 수칙이 교부된 날 이후에 시작되는 첫 번째 주부터 기산하여, 각 당사자와 스태프(스태프가 당사자인 경우)의 수석 소송대리인들로 구성된 증거개시 협의 위원회(이하 "증거개시 위원회")가 본 조사의 증거개시 단계에서 2주에 최소 1번 이상 대면 또는 전화로 증거개시 분쟁 해결을 위한 협의를 실시하여야 한다. 증거개시 위원회는 남아 있는 모든 증거개시 분쟁을 절차 일정에 명시된 기한 내에 적시적으로 해결하기 위하여 성실하게 협의하여야 한다.

증거개시 단계에서 매월 말일로부터 역일을 기준으로 10일 이내에, 증거개시 위원회는 직전 월에 해결된 모든 분쟁과 해당 월 말일 현재 교착 상태인 모든 분쟁을 행정 심판 판사에게 서면으로 보고하여야 한다. 신청서의 목적을 먼저 증거개시 위원회에 회부하고 위원회가 그 해결 과정에서 교착 상태에 빠지지 않는 한, 증거개시 강제 신청서를 제출할 수 없다. 증거개시 위원회의 구성원들은 회합이 종료된 시간으로부터 24시간 이내에 어떤 분쟁이 교착 상태에 빠졌는지를 확인하는 서면 확인서를 교환하는[16] 것이 권장되지만 의무 사항은 아니다.

---

[16]그러한 교환은 증거개시 신청서 또는 그에 대한 답변서의 필수 구성 요소로 첨부되지 않는 한 행정 심판 판사에게 송달하거나 EDIS에 제출할 수 없다.

**3.2.**        **증거개시 절차에 관한 합의 사항.**

행정 심판 판사가 달리 지시하지 않는 한, 당사자들은 서면 합의 사항에 의하여 증거개시의 절차 또는 제한 사항을 변경할 수 있다. 당사자들은 위원회 규칙에 의하여 명시적으로 허용되지 않는 한 증거개시에 관한 위원회 규칙을 변경하는 것에 합의할 수 없다. 위원회 규칙 제210.28(a)조, 제210.29(a)조 등 참조. 더 나아가, 기본 수칙 제3.4.2조와 위원회 규칙 제210.30(b)(2)조 및 제210.31(b)조에 규정된 증거개시 답변 기한을 연장하는 합의 사항은 (i) 본 조사의 예정일, (ii) 절차 일정 또는 증거개시 완료와 관련된 다른 명령에 명시된 모든 기한[17] 또는 (iii) 증거 심리 또는 신청서 심리에 지장을 초래하는 경우 정당한 사유를 입증하는 적시적인 서면 신청서를 통하여 행정 심판 판사의 사전 승인을 받은 경우에만 허용된다.

**3.3.**        **증거개시 요청서 및 답변서의 송달.**

증거개시 요청서와 답변서는 스테프(해당되는 경우)를 포함하는 모든 당사자에게 반드시 송달하여야 하지만 신청서에 첨부되지 않는 한 행정 심판 판사 또는 법률 자문관에게 송달하거나 EDIS에 제출할 수 없다.

**3.4.**        **증거개시 요청서, 답변서, 이의 제기서의 시기.**

**3.4.1.**        **증언녹취.**

위원회 규칙 제210.28(c)조에 추가하여, 기본 수칙 제3.2조에 따라 달리 명령이 내려지거나 합의하지 않는 한, 증언녹취를 원하는 당사자는 증언이 미국 국내에 있는 자에 의하여 행해질 예정인 경우 **최소 10일**, 미국 국외에 있는 자에 의하여 행해질 예정인 경우 최소 **15영업일** 전까지 모든 상대방에게 서면으로 통지하여야 한다. 어떠한 당사자도 증인과 증언녹취에 참석할 수 있는지 여부를 상대방 및 스테프(스테프가 당사자인 경우)와 먼저 협의하지 않은 상태에서 증인에 의한 증언녹취를 통지할 수 없다. 상대방(및 스테프)은 상기한 증언녹취를 요청하는 당사자와 적시에 협의하기 위하여 성실한 노력을 기울여야 한다.

**3.4.1.1.**        **일본에서의 증언녹취.**

일본에 있는 당사자의 증언녹취를 요구할 목적으로 미국 지방법원에 제출할 권고 신청서가 필요한 경우, 해당 신청서의 제목은 "application"이어야 하지만 EDIS에 제출하는 제목은 "motion"이어야 한다. 신청서에는 신청서 및 관련 근거 자료에 관한 상대방의 입장에 대한 진술서가 포함되어야 한다.

---

[17] *특정한 동적임의접근메모리 및 NAND 플래시 메모리 장치와 이를 포함하는 제품*(조사 번호 337-TA-803, 명령 번호 제42호, 3면, 주석1(U.S.I.T.C., 2012)) 참조.

행정 심판 판사가 신청서를 허가하여야 한다고 결정한 경우, 명령과 권고가 내려진다. 모든 당사자들에게 사본이 송달된다. 미국 지방법원이 정본을 요구하는지 여부를 파악하는 것은 신청인의 책임이다. 그러한 경우, 신청인은 표지 또는 신청서 본문에 해당 요건을 설명하는 명확한 지침을 포함하여야 하며 신청인이 정본을 직접 수령하기를 원하는 경우에는 수령 방법과 담당자를 명시하여야 한다. 그러한 지침이 없는 경우에는 신청인에게 송달용 사본만이 발송된다.

### 3.4.2.    질의서.

위원회 규칙 제210.29(b)조의 요건에 추가하여, 달리 명령이 내려지지 않는 한, 질의서를 송달받은 당사자는 질의서 송달일로부터 **10일** 이내에 답변서 또는 이의 제기서의 사본을 송달하여야 한다.

### 3.4.3.    문서 또는 물품 제출 혹은 토지 출입 요청서.

위원회 규칙 제210.30조 참조. 그에 추가하여, 당사자들은 제출 요청서를 수령한 날로부터 15일 이내에 상호간에 문서를 제공하기 시작하여야 한다.

### 3.4.4.    시인 요청서.

위원회 규칙 제210.31(a)조와 제(b)조에 추가하여, 제소장과 조사 개시 공고 송달일로부터 **20일**이 경과한 후에는 언제라도 시인 요청서를 송달할 수 있다.

### 3.4.5.    증거개시 마감일 및 완료.

시인 요청서를 포함하는 모든 증거개시 요청서는 위원회 규칙과 기본 수칙에서 정한 답변 기한을 단축하지 않은 상태에서 답변을 허용할 목적으로 사실 증거개시 마감일과 완료일로부터 충분한 시간적 여유를 두고 개시하여야 한다. 사실 증거개시 마감일과 완료일 이후의 시점에서 답변을 요구하는 증거개시 요청서는 사전에 설득력을 갖춘 사정을 입증하여 행정 심판 판사의 승인을 받아야 한다.

### 3.5.    소환장.

제3자의 증언 또는 문서 제출을 강제할 목적으로 소환장을 요청할 수 있다. 행정 심판 판사는 당사자들이 조사에서 실무적으로 최대한 이른 시기에 제3자 소환장을 성실하게 구하고 제3자가 이행을 지연할 경우 소환장을 집행하는 신속한 조치를 취할 것으로 기대한다. 기본 규칙 제3.5.2조 참조. 소환 대상 당사자가 증언을 거부하는 경우에만 심리 소환장이 발부된다.

### 3.5.1.    발부 및 송달.

위원회 규칙 제210.32조에 따라, 소환장 발부 신청서는 일방 당사자 절차에

의하여 행정 심판 판사에게 제출할 수 있다. 신청서는 소환장안을 첨부하여 서면으로 작성하여야 한다. 원본 1부와 사본 1부를 행정 심판 판사실로 제출하여야 한다.

　　　소환장 발부 신청서는 (i) 구하고자 하는 정보의 관련성과 질문 범위의 합리성을 명시하여야 하며 (ii) 소환장이 (소환장 발부 대상인 개인이나 단체에) 늦어도 익일 특급 배송으로 송달될 것임을 명시하여야 한다. 소환장은 (i) 소환장 취소 신청서 제출 기한을 명시하여야 하며 (ii) 본 조사의 보호 명령을 참조하고 그 사본도 첨부하여야 한다. 소환장이 발부된 당사자는 소환장 취소 신청서를 제출할 수 있는 기한으로 소환장을 <u>수령한 날로부터</u> 최소 10일을 보장받아야 한다.

　　　소환장에 명시되는 증인 출석 또는 문서 제출 날짜는 취소 신청서 제출이 허용된 기간을 감안하여야 하며 행정 심판 판사실에서 소환장 발부 신청서를 처리하는 데 소요되는 기간도 감안하여야 한다.[18]위원회 규칙 제201.14(a)조, 기본 규칙 제1.12조 참조. 신청인은 발부된 소환장과 신청서의 사본을 늦어도 익일 특급 배송으로 소환장이 발부된 당사자에게 송달하여야 하며 본 조사의 다른 모든 당사자에게는 소환장이 발부된 날의 익일 영업일까지 송달하여야 한다.

　　　소환장 신청서 견본이 **부록 A**로 첨부되어 있다. 그에 추가하여, 당사자들이 정확하게 준수하여야 하는 2가지 소환장 양식이 **부록 A**에 첨부되어 있다. 당사자들이 소환장 양식을 실질적으로 변경하기를 원하는 경우에는 반드시 사전 허가를 구하여야 한다. 신청서와 소환장은 신청서에 첨부되지 않는 한 EDIS에 제출하거나 위원회 서기실에 송달할 수 없다.

**3.5.2.**　　　　**연장 및 집행.**

　　　소환장에 명시된 증거개시 기한을 연장하는 것에 합의하는 경우, 반드시 서면으로 작성하고 요청 당사자와 비당사자가 서명을 기재하여야 한다. 소환장에 대한 답변 기한을 연장하는 합의 사항은 절차에 따라 1회 제출할 수 있다. 추가 연장의 경우, 정당한 사유를 입증하는 허가 신청서를 반드시 제출하여야 한다. 제3자 소환장에도 동일한 규칙이 적용된다.

　　　소환장 준수를 유도하기 위하여 비당사자와 신속하게 협상하는 성실한 노력을 기울이고 문서화할 것으로 항상 기대된다. 기본 규칙 제1.16조도 참조. 다만, 본 절차는 신속하게 진행되며 비당사자가 소환장에 협조하지 않거나 불응할 경우에는 근거가 포함된 사법 집행 신청서를 통하여 행정 심판 판사에게 <u>신속하게</u> 알려야 한다. 성실성이 결여될 경우 당사자 일방이 증거개시 집행(또는 방어) 신청서의 정당성을 입증하는 것에 영향을 미칠 수 있으며 그러한 신청서가 사실 증거개시 종료 시점에 임박한 경우에는 특히 그러하다.

---

신청서가 우편으로 배달되는지 혹은 직접 배송되는지 여부에 따라 이 과정에는 통상적으로 24~48시간이 소요된다. 긴급하게 소환장을 요청하는 당사자는 행정 심판 판사의 법률 자문관에게 연락하여야 한다.

소환장 집행 또는 취소 신청서 혹은 그러한 신청서에 대한 답변서에 비밀 영업 정보가 포함된 경우, 비밀 제출 문서에 비밀 자료가 가림 처리된 공개용 버전을 반드시 첨부하여야 한다. 위원회 규칙 제210.32(g)조 참조.[19]신청인, 비당사자 또는 기타 답변 당사자가 EDIS에 관련 서류의 공개용 버전을 적시에 제출하지 않은 경우, 행정 심판 판사는 재량권을 발휘하여 최종 명령에서 비밀로 취급될 부분을 판단한다. 위원회 규칙 제210.5(e)(1)조. 그에 추가하여, 다른 당사자 또는 비당사자가 관련 서류에 포함된 비밀 영업 정보를 열람하는 것이 허용되지 않는 상황에서 공개용 버전을 적시에 제출하지 않은 경우, 행정 심판 판사는 그러한 부작위 행위가 부적절한 목적으로 행해졌는지 여부를 검토할 수 있다.

**3.6.**            **베이츠 번호.**

문서 요청서에 응하여 제출하는 원본 문서의 사본에 해당하는 문서에는 순차적으로 고유 번호(일반적으로 "베이츠 번호"라 한다)를 부여하여야 한다. 베이츠 번호는 해당 면의 우측 하단 모서리에 날인하여야 한다. 당사자들은 긴 접두사 없이 베이츠 번호를 이용하는 것이 권장된다. 예를 들어, 짧은 베이츠 번호 XYZ-00001이 LONGPARTYNAME-ITCNUMBER-00001보다 권장된다.

**3.7.**            **번역.**

문서 요청서에 응하여 제출하는 문서는 원본 또는 판독이 가능한 완전한 사본이어야 한다. 제출하는 문서의 영문 번역본이 존재하는 경우에는 영문 번역본도 반드시 제출하여야 한다. 여하한 당사자가 제출 당사자가 제출한 번역본에 분쟁을 제기한 경우에는 양측 소송대리인이 합의하는 적격하고 중립적인 번역사로부터 반드시 공증을 받아야 한다.

**3.8.**            **비닉 특권 관련 사항.**

비닉 특권 목록에 관한 위원회 규칙 제210.27(e)조에 규정된 요건에 추가하여, 각 비닉 특권 목록에는 각 문서와 관련하여 주장이 제기된 특권의 모든 구성요소가 충족되었으며 포기되지 않았음을 확인하는 확인서가 포함되어야 한다. 당사자들은 비닉 특권 목록의 말미에 각 발신자와 수신자의 직위와 소속을 표시하는 "색인"을 제공하거나 달리 교차 참조를 요구할 수 없다.

**4.**             **특허 우선권 주장일 통지서 및 선행기술 통지서.**

**4.1.**            **특허 우선권 주장일.**

신고인(들)은 절차 일정에 명시된 날짜 또는 그 이전에 주장이 제기된 각 특허의

---

[19]위원회에 대한 이송 규정이 공개용 명령서와 비밀 명령서를 동시에 교부할 것을 요구하기 때문에 이러한 절차가 필요하다. 상동따라서 명령이 내려진 후에 제출된 가림 처리안은 받아들여지지 않는다.

우선권 주장일[20]이 명시된 통지서를 제출하여야 하며 우선권 주장일에 차이가 있는
경우에는 각 주장 청구항의 우선권 주장일이 명시된 통지서를 제출하여야 한다. 그러한
통지서는 신고인(들)을 구속하며 정당한 사유를 입증하는 적시적인 서면 신청서 없이는
변경할 수 없다.

**4.2.    선행기술.**

선행기술 식별의 목적은 제337조 침해 여부에 관한 심리에서 제기될 가능성이
선행기술을 (조사 초기에) 모든 당사자들에게 고지함으로써 당사자들이 사실과 사실적
근거 및 사건의 이론을 정립하는 동시에 전문가들이 유의미한 보고서와 증언녹취를
제공할 수 있게 하는 것이다.

당사자들은 절차 일정에 명시된 날짜 또는 그 이전에 다음 정보들이 포함된
선행기술 통지서를 반드시 제출하여야 한다: 특허의 경우 발행 국가, 번호, 날짜,
특허권자의 성명; 계쟁 특허의 무효 증거로 인용할 예정인 모든 간행물의 제목, 날짜,
면수; 계쟁 특허의 발명에 대한 발명가이거나 그에 대한 사전 지식을 가졌거나 이전에
사용 또는 판매 제안을 한 것으로 간주될 수 있는 자의 이름과 주소. 그러한 통지서에는
35 U.S.C. § 282에 규정된 정보가 포함되어야 한다.

상표권이 관련된 경우, 당사자들은 절차 일정에 명시된 날짜 또는 그 이전에
당사자 일방이 쟁점이 된 상표의 기능성 또는 비기능성과 관련하여 심리에서 인용할
예정인 모든 기술에 관한 통지서를 제출하여야 한다.

절차 일정에 명시된 날짜 또는 그 이전에 선행기술 통지서상에 공개되지 않은
선행기술과 관련 증거는 정당한 사유를 입증하는 적시적인 서면 신청서가 없는 경우
심리에서 채택되지 않는다. 과거에 과다한 내용이 포함된 선행기술 통지서는 본 기본
수칙 제4조의 목적에 반한다는 이유로 말소된 사례가 있다. *특정한 무선 통신 시스템*
*서버 소프트웨어, 무선 휴대용 장치, 배터리 팩*(조사 번호 337-TA-706, 명령 번호
제10호(U.S.I.T.C., 2010), *무선 통신 장치, 휴대용 음악 및 데이터 처리 장치, 태블릿*
*컴퓨터를 포함하는 특정한 전자 장치*(조사 번호 337-TA-794, 명령 번호 제40호,
제56호(U.S.I.T.C., 2012)) 등 참조.

**5.    전문가 증인 및 의견서.**

절차 일정에 명시된 날짜 또는 그 이전에, 당사자 일방은 심리에서 전문가 증언을
행할 목적으로 선임되거나 고용된 모든 자의 신원을 다른 모든 당사자들에게 공개하여야

---

[20]신고인(들)은 주장 청구항(들)의 착상일과 완성일을 알고 있는 것으로 간주되므로 이 통지서는 발명의
우선권(존재하는 경우)을 주장하기 위하여 신고인(들)이 의존할 예정인 날짜(들)을 명확히 밝혀야 한다.
마찬가지로, 신고인(들)이 주장 청구항(들)의 선순위 관련 출원 또는 외국 출원에 의존할 예정인 경우에도
우선권 통지서에서 이를 명확히 밝혀야 한다. 본 절차가 그 성격상 신속하게 진행된다는 점에서 이러한
통지서의 목적은 선행기술 조사의 범위를 획정하는 데 도움이 된다.

하며 다른 당사자들에게 그러한 증인이 작성하고 서명한 서면 의견서를 제공하여야 한다. 절차 일정에 명시된 날짜 또는 그 이전에 공개되지 않은 전문가는 설득력을 갖춘 사정을 입증하여 행정 심판 판사의 사전 승인을 반드시 얻어야 한다.

기본 규칙 제1.3.2조에 규정된 것처럼 증거물을 제외한 전문가 의견서의 판사 검토용 전자 사본을 행정 심판 판사에게 이메일(McNamara337@usitc.gov)로 송달하여야 한다.

의견서에는 표명할 의견과 그 근거 및 이유를 기술한 완전한 진술서, 전문가가 의견을 형성하는 과정에서 고려한 데이터 또는 기타 정보, 의견의 요약 또는 근거로 사용될 모든 증거물, 직전 10년 동안 증인이 저술한 모든 간행물의 목록을 포함하는 증인의 자격 요건, 연구 및 증언에 대한 대가로 지급될 보수, 직전 4년 동안 심리 또는 증언녹취를 통하여 증인이 전문가로 증언하였던 다른 모든 사건의 목록이 포함되어야 한다. 당사자들은 위원회 규칙 제210.27(c)조에 규정된 방식에 따라 필요한 경우 이처럼 공개된 내용을 보충하여야 한다.

다만, 당사자들은 전문가 의견서를 시기적으로 부적절한 시점에서[21] 중대하게 보완하기 위해서는 행정 심판 판사의 사전 승인이 요구된다는 점에 유의하여야 한다.

**6.        화해, 화해 보고서.**

모든 당사자들은 절차 전반에 걸쳐 쟁점 전체 또는 일부에 대하여 합리적인 화해의 가능성을 모색하여야 한다. 모든 당사자들은 심리 전 진술서에서 남아 있는 쟁점들에 대한 화해를 도출하기 위하여 성실하게 노력하였음을 확인하여야 한다.

그에 추가하여, 절차 일정에 규정된 모든 필수 화해 협의와 관련하여, 당사자들은 합의에 도달한 모든 합의 사항을 명시하고 모든 당사자들이 서명한 공동 보고서의 양면 사본 2부를 행정 심판 판사에게 제출하여야 한다. 이 보고서는 어떤 회합(들)이 실시되었고 누가 참석하였으며 각 회합에서 어떤 결과(존재하는 경우)를 얻었는지를 반드시 명시하여야 한다. *특정한 동적임의접근메모리 및 NAND 플래시 메모리 장치와 이를 포함하는 제품*(조사 번호 337-TA-803, 명령 번호 제16호(U.S.I.T.C., 2011)) 등 참조. 이 보고서는 절차 일정에 명시된 기한 또는 행정 심판 판사가 허용하는 그 외의 기한 내에 제출하여야 한다. 이 보고서는 위원회 서기실에 제출할 수 없다.

**7.        심리 전 제출 문서.**

*마크먼* 심리, 증거 심리, 기타 심리에서 사용할 시연용 슬라이드 덱의 종이 사본을 심리 예정일로부터 직전 2영업일 전까지 판사실에 제출하여야 한다. ALJ가 구체적으로 요청하지 않는 한 다른 모든 문서는 종이 사본이 요구되지 않는다.

---

[21] 예를 들어, 당사자가 반박 의견서 제출 기한이 경과한 후에 최초 전문가 의견서를 보완하기를 원하는 경우가 여기에 해당한다.

**7.1.**        심리 전 진술서.

심리 전 진술서는 ALJ의 허가가 없는 경우 첨부물을 포함하여 100면으로 제한된다. 본 조사의 심리에 참여할 예정인 각 당사자는 절차 일정에 명시된 날짜 또는 그 이전에 다음 정보가 포함된 심리 전 진술서를 반드시 제출하여야 한다:

(a) 모든 알려진 증인의 이름, 주소, 사실 증인인지 혹은 전문가 증인(및 전문 분야)인지 여부, 각 증인의 증언할 내용에 관한 간략한 개요서. 전문가 증인인 경우 본 제출 서면에 해당 전문가의 이력서 사본을 첨부하여야 한다. 전문가의 이력서는 심리 전 진술서에 적용되는 100면 한도에 포함되지 않는다. 증인의 신원 정보는 심리 전 진술서의 본문에 포함되어야 하며 증거물로 첨부할 수 없다.

(b) 당사자들이 재판에 제출할 예정인 모든 증거물을 제목과 번호순으로 정리한 예비 목록. 목록은 5개 열로 구성되어야 한다. 당사자는 처음 4개 열에 4자리 증거물 번호, 증거물에 대한 간략한 설명과 제목, 제출 목적, 증거물을 뒷받침하는 증인을 기재하여야 한다. 마지막 열은 "채택"이라는 표제를 붙여야 하며 날짜를 기입할 수 있을 정도의 공간이면 충분하다.

(c) 당사자들이 동의한 모든 합의 사항의 목록. 증거개시 합의 사항을 제외한 모든 합의 사항은 공동 증거물로 표시될 것으로 기대된다. 예를 들어, 기술 합의 사항(기본 수칙 제1.15조 참조)은 공동 증거물로 표시되어야 한다.

(d) 재판 전 협의의 의제안.

(e) 각 증인의 예상 출석일 및 대략적인 증언 시간. (당사자들은 심리 전 진술서를 제출하기 전에 이를 협의하여야 한다) 주의: 이 항목은 심리 전 진술서의 1면/2면에 포함시키거나 "앞 부분"에 배치하여 쉽게 찾을 수 있는 것을 전제로 심리 전 진술서와 함께 별도의 1~2면 분량으로 제출할 수 있다.

(f) 성실한 화해 노력에 관한 확인서. 아래 기본 규칙 제6조 참조.

추가 제출 서면, 제소장(들).

위의 항목에 추가하여, 특허 조사에서, 신고인(들)은 모든 주장 청구항을 피제소 물품과 구체적으로 대응시키는 표 또는 도표를 심리 전 진술서에 첨부하여야 한다. 모델 번호나 특정 구성품과 관련하여 미묘한 차이가 있는 경우, 이를 명시하여야 한다. 더 나아가, 신고인(들)은 대표적인 피제소 물품(존재하는 경우)을 명시하여야 한다. 표에는 주장이 제기된 침해 유형(들)이 추가로 명시되어야 한다. 예를 들어, 3개의 주장 청구항과 5개의 피제소 물품이 존재하는 경우에는 아래와 같이 표를 구성할 수 있다.

| '##1 특허, 청구항 5 | '##1 특허, 청구항 7 | '##2 특허, 청구항 12 |
| --- | --- | --- |

| P 제품군:<br>피제소 제품 AA (7MA 구성에 한함)<br>피제소 제품 BB | P 제품군:<br>피제소 제품 BB | P 제품군: 해당 없음 |
|---|---|---|
| Q 제품군:<br>피제소 제품 CC<br>피제소 제품 EE | Q 제품군:<br>피제소 제품 DD<br>피제소 제품 EE | Q 제품군:<br>피제소 제품 CC (T6 구성에 한함)<br>피제소 제품 DD<br>피제소 제품 EE |
| 대표 제품:<br>피제소 제품 BB<br>피제소 제품 CC | 대표 제품:<br>피제소 제품 BB<br>피제소 제품 EE | 대표 제품:<br>피제소 제품 CC (T6 구성에 한함)<br>피제소 제품 EE |
| 침해:<br>문언<br>직접, 유도,<br>기여 | 침해:<br>문언<br>직접, 유도,<br>기여 | 침해:<br>문언, 균등론(피제소 제품 CC, T6 구성에 한함)<br>직접 |

신고인(들)은 본 제출 서면에서 피제소 제품에 대응하여 명시된 주장 청구항에 구속된다.

**추가 제출 서면, 피신고자(들).**

위의 항목에 추가하여, 특허 조사에서, 제102조 또는 제103조 무효 항변을 주장하는 피신고인(들)은 모든 주장 선행기술 또는 그 조합을 열거하고 각각을 주장 청구항과 대응시키는 표 또는 도표를 심리 전 진술서에 첨부하여야 한다. 예를 들어, 4개의 선행기술과 5개의 주장 청구항이 존재하는 경우에는 아래와 같이 표를 구성할 수 있다.

| **Cheng (§102)** | **Davis (§103)** | **Davis, Scott, Maxwell (§103)** | **Davis, Maxwell, Aguilar (§103)** |
|---|---|---|---|

| '##1 특허, 청구항 5 | '##1 특허, 청구항 12 | '##1 특허, 청구항 12 | '##1 특허, 청구항 12 |
|---|---|---|---|
| '##2 특허, 해당 없음 | '##2 특허, 청구항 12, 16, 17 | '##2 특허, 청구항 17 | '##2 특허, 청구항 12, 16 |

피신고인(들)이 하나의 표를 사용하는 경우, 각 항목은 제102조와 제103조 중 어느 것이 적용되는지를 명확하게 기술하여야 한다. (위의 예 참조) 피신고인(들)은 같은 제출 서면 내에서 제102조와 제103조 무효 항변을 2개의 표로 분할할 수도 있다.

피신고인(들)은 본 제출 서면에서 주장 청구항에 대응하여 명시된 주장 선행기술에 구속된다.

**7.2.**           **심리 전 서면.**

당사자들은 각 쟁점별로 적절한 공동 배치를 결정하기 위하여 심리 전 서면을 제출하기에 앞서 회합 및 협의를 실시하여야 한다. **부록 B** 등 참조. 예를 들어, 특허 소송을 포함하는 조사에서, 이러한 협의는 무엇보다 심리 전 서면에 명시될 특허의 순서를 결정하여야 한다.

절차 일정에 명시된 날짜 또는 그 이전에, 각 당사는 심리 전 서면을 제출하여야 한다. 행정 심판 판사의 사전 승인이 없는 경우, 상기한 서면은 150면을 초과할 수 없으며 관련 첨부물을 50면을 초과할 수 없다. 당사자들은 심리 전 서면의 면수 한도를 우회할 목적으로 첨부물을 없으며 중요한 표, 그림 또는 기타 관련 자료를 첨부하는 목적으로 활용할 수 있다.

심리 전 서면의 전반부에는 목차와 인용 권원 목록을 배치하여야 하며 이는 면수 한도에 포함되지 않는다. 서면은 작성 당사자의 사건 이론과 각 쟁점안에 대한 주장을 그 근거가 되는 법적 권원 인용을 포함하여 구체적으로 명시하여야 하며 **부록 B**에 명시된 견본 개요서를 준수하여야 한다. 상기한 부록에 명시된 일반 개요서에 구체적으로 기재되지 않은 쟁점을 포함하여, 여하한 당사자가 다루고자 하는 모든 쟁점을 적절한 위치에 추가하여야 한다. 당사자들은 장황한 도입부 주장에 귀중한 지면을 낭비할 필요가 없다.

청구항 해석 쟁점이 심리 전에 *마크먼* 명령에서 해결되지 않은 경우, 당사자들은 각자의 청구항 해석 서면 또는 *마크먼* 심리 후 서면에서 주장한 최종적인 청구항 해석을 인용하는 것으로 족하다.

본 수칙의 요구대로 상세하게 명시하지 않은 여하한 주장과 사건 이론은, 심리 전 서면을 제출한 시점에서 당사자 일방이 인지하지 못하였거나 상당한 주의 의무를 다하였음에도 인지할 수 없었던 주장을 제외하고, 포기하거나 철회한 것으로 간주된다.[22] 다만, 당사자들은 현 시점에서 가장 논리적이고 설득적인 최선의 주장을 선별하고

---

[22]*특정한 자동 미디어 라이브러리 장치*(조사 번호 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013)).

무관하거나 비약적인 주장은 포기하는 것이 권장된다.그에 추가하여, "주장과 이론"은 당사자들이 이미 교환한 문서 및 증언 증거에 의하여 명시적으로 뒷받침되어야 한다. GR 제7.2.1조 참조.

## 7.2.1.    심리 전 서면의 내용

심리 전 서면의 내용과 관련하여 혼선이 있는 것으로 보인다. 심리 전 서면에는 상대방에 대한 비방 또는 당사자가 사실상 근거가 없다는 점을 알면서도 제기하는 주장이 포함되지 않아야 한다. 쟁점을 신중하게 선택하여야 한다. 제한하여야 한다. 증거가 존재하는 가장 확실한 쟁점들에 집중하여야 한다. 그에 추가하여, 심리 전 서면은 소송대리인의 주장이나 결론을 앞세우는 진술을 포함하거나 특히 청구항 또는 명세서에 포함된 문언을 단순히 재인용하지 않아야 한다. 승소 가능성이 없고 실질적으로 분쟁이나 증거가 거의 혹은 전혀 없다는 것을 알고 있는 제안이나 쟁점을 주장하는 경우, 순순히 인정하고 최소한 다투어 볼 만한 여지가 있는 부분에 집중하여야 한다.

침해건 무효건 상관없이 모든 사실 또는 이론 주장과 그 외의 다른 모든 쟁점은 합당한 증거, 증언녹취, 전문가 의견서를 인용하여 뒷받침하여야 하며 관련 판례에 의하여서도 뒷받침되어야 한다. 전문가 증언 또는 예상되는 전문가 증언의 논리와 설명은 명확하여야 하며 근거가 되는 증거를 인용하여야 한다. 증거 인용이 누락된 심리 전 서면은 적절한 심리 전 서면이라고 볼 수 없다.

무효 주장은, 다수의 근거가 존재하는 경우, 명확하게 설명되어야 한다. 최소한 해당 선행기술을 선택한 *이유*를 설명하여야 한다. 해당 선행기술이 유래하거나 관련된 기술을 설명하여야 한다. 해당 선행기술에서 적용이 배제되는 측면이 있는 경우, 이를 명확하게 밝혀야 한다. 당사자들은 논점을 흐리거나 감추려고 시도하는 경우가 지나치게 많다. 신규성 또는 결합의 동기에 관한 진술을 포함하여 결론을 내세우는 진술은 논리적으로 설명할 필요가 있으며 달리 표현하면 구조화된 논증이 필수적이라는 점은 아무리 강조하여도 지나치지 않다. 상대방의 비판이 부정확한 경우, 그 *이유*를 논거와 증거를 들어 설명하여야 한다.

*나열식 인용*은 부적절하다. 마찬가지로, 심리 전 서면의 부록으로 나열식 인용을 단순히 첨부하는 것 역시 결코 적절하지 않다. 특히 이론, 제안, 예시적 사항 또는 주장에 대한 다수의 증거 자료가 존재하는 경우에는 의미가 있거나 상이한 출처로부터 나온 필수적이고 보강적인 증거를 포함하는 나열식 인용이 적절할 수 있다. 개별 구성 요소들이 *증거*에 의하여 뒷받침되는 경우에는 표도 무방하다. 증거 인용을 포함하여야 한다.

위의 모든 사항이 전문가 의견서에도 적용된다.

## 7.3.    표 형식의 공동 쟁점 개요서 양식.

당사자들은 조사에서 다뤄지는 실체적 법률 쟁점들을 정리한 단일한 표를 공동으로 작성하고 관리하여야 한다. 이 표는 심리 전 및 심리 후 서면과 동시에 별도의 문서 항목으로 공동 제출하여야 한다. 당사자들의 심리 전 서면과 심리 후 1차 서면은 표에 명시된 쟁점 순서를 따른다. 표의 가장 왼쪽 열에는 모든 침해 및 무효 이론과 방어를 포함하여 소송의 쟁점들이 명시된다. 당사자들은 각자의 서면에서 후속 열을 당사자별로 묶어 작성한다(즉 심리 후 반박 서면에 첨부되는 표에는 신고인(들)의 심리 전 서면, 심리 후 1차 서면, 심리 후 반박 서면에 대한 열에 이어 피신고인(들)의 심리 전 서면, 심리 후 1차 서면, 심리 후 반박 서면에 대한 열이 배치된다). 각 열의 칸에는 관련 쟁점이 다뤄진 서면의 특정한 부분이 수록된 면의 번호를 기재한다.

쟁점, 사실, 청구항, 특허, 주장 또는 방어가 심리 전 서면에서 제외된 경우, 심리 후 1차 서면에 첨부되는 표에 그 내용을 명시적으로 기재하여야 한다. 심리 후 반박 서면에 첨부되는 개요서에도 같은 원칙이 그대로 적용되어야 한다.

## 8.        심리 증거물.

### 8.1.        증거로 채택되는 자료.

오직 사실 자료와 전문가 의견서만이 증거로 채택된다. 법률적 주장은 서면에서 제기하여야 한다.

### 8.2.        법률 전문가.

법률 전문가는 미국 특허청의 절차에 관하여서만 증언할 수 있다. 외국법에 관하여 증언할 목적으로 법률 전문가를 소환하는 경우에는 그 해석에 연방항소법원과 위원회의 선례가 적용된다.

### 8.3.        증인 격리.

사실 증인은 모두 진술이 진행되는 동안 법정에 배석할 수 있다. 다만, 사실 증인은 모두 진술 후에는 자신의 증언이 완료되기 전까지 법정 밖에서 대기하여야 한다. 그 외의 사항에 관하여서는 Fed. R. Evid. 615를 참조한다.

### 8.4.        증인 증언.

달리 명령하지 않는 한, 증인에 의한 모든 증언은 실시간 증언으로 진행된다. 증언 오염의 위험을 최소화하기 위하여, 실시간 사실 증인은, 당사자들이 모두 진술을 마친 후에는, 자신의 실시간 증언이 완료되기 전까지 법정 안에서 심리를 참관할 수 없다.

실시간 증언을 대신하여 증인 진술서 제출이 허용되는 경우에는 질병이나 부상이 아닌 한 증거 심리 1개월 전까지 신청서 절차를 통하여 증인 진술서(극히 드물게 허용된다) 허가를 요청하여야 한다. 질병이나 부상이 발생한 경우, 실무적으로 최대한

조속한 시일 내에 신청서 절차에 의한 허가를 받아야 한다. 본 수칙을 대신하여
당사자들이 증인 진술서에 합의하는 행위는 허용되지 않거나 불충분하다. 전문가 증언의
경우 비대면 증언은 극히 드물게 허용된다는 점에 유의하여야 한다. 그에 추가하여,
신청서에 의하여 대면 증언 이외의 방식이 허용된 경우, 다음 수칙이 적용된다.

## 8.4.1. 주신문을 대신하는 증인 진술서(극히 드뭄).

증언 진술서는 권장되지 않으며, 기술된 경우를 제외하고, 증거 심리에서
주신문을 대신하여 허용되지 않는다. 증인이 준비해 온 증언을 낭독하여 기록으로
남기는 것은 허용되지 않는다. 스태프는 증인석의 증인에게 보충적인 주신문을 요청할
수 있다. 증인은 반대신문권을 가진 당사자들이 권리를 포기하지 않는 한 증인석에서
반대신문에 응하여야 한다. 일반적으로 실시간 증언을 대신할 수는 없지만, 이력서
유형의 정보 등과 같은 배경 정보가 포함된 증인 진술서는 증거물 번호를 부여하여
증거물로 제출할 수 있다. 짧은 증인 진술서 또는 확인서는 신청서에 명시된 정당한
사유를 입증하고 다음 요건을 충족한 경우에 한하여 증거물 채택을 뒷받침할 목적으로
사용이 가능하다: (1) 모든 관련 증거물의 목록을 증인 진술서에 첨부되어 있어야 한다.
(2) 모든 관련 증거물이 증인 진술서상에서 증인이 증거물의 근거를 제시한 대응 부분과
명시적으로 상호 참조되어 있어야 한다.

## 8.4.2. 증인 진술서의 형식(극히 드뭄)

극히 드물지만 다른 행정 심판 판사들이 주신문에 사용하는 유형의 증인
진술서가 허용되는 경우, 해당 증인 진술서는 소송대리인의 질문에 연속된 번호를
부여하고 각 질문에 대한 증인의 답변을 기술한 형태로 작성되어야 한다. 소송대리인의
마지막 질문은 증인에게 증인 진술서에 소송대리인의 질문에 대한 증인의 독자적인
답변이 포함되어 있는지 여부를 묻는 것이어야 하며 그에 이어 이 질문에 대한 증인의
답변과 증인의 서명이 기재되어야 한다. 질문은 주신문 형식이어야 하며 답변은 구두
증언 형식이어야 한다. 다만, 쟁점에 대한 이해를 돕는 형태(예: 표제, 목차, 글머리 기호
또는 번호가 부여된 목록)로 증인 진술서를 구성할 수 있으며 여기에는 채택이 가능한
증거물로부터 발췌한 설명이 포함될 수 있다. 증인 진술서는 증거적인 근거를 제공하기
위하여 심리에 제출할 예정인 증거물의 증거물 번호와 간략한 설명(예: JX-0002 ('123
특허 출원 이력))을 인용하여야 한다. 증인 진술서에는 증인의 주신문 내용 전체가
반드시 포함되어야 한다. 첨부물이나 참조에 의한 기타 문서의 결합은 허용되지 않는다.

증인 진술서는 증인이 사용하는 언어로 작성되어야 하며 외국어를 사용하는
증인의 증인 진술서는 공증을 받은 영어 번역본을 첨부하여야 한다.

적시적으로 서면 신청서를 제출하고 정당한 사유를 입증한 경우를 제외하고, 사실
증인은 다른 증인의 증인 진술서를 검토할 수 없으며 자신이 증언하기 전에는 심리를
참관할 수 없다. 조사에서 내려진 보호 명령에 의하여 규정된 제한 사항을 전제로, 본
수칙은 자연인인 당사자 혹은 소송대리인에 의하여 당사자 일방의 대표로 지정된 해당
당사자의 임원이나 직원의 심리 참관을 배제하지 않는다.

1문에서 허용된 경우, 증인 진술서는 허가 없이 전체 또는 일부를 철회할 수 없다. 증인 진술서는 변경할 수 없다. 증인이 자신의 증언에서 오타나 오기를 정정하고자 하는 경우, 정오표를 작성하여야 한다. 소송대리인은 정오표를 증거물로 표시하여야 하며 최대한 신속하게 다른 당사자들과 행정 심판 판사에게 제공하여야 한다. 심리 도중에, 정오표를 기록에 등재할 것을 요청하는 신청서를 제출할 수 있다.

행정 심판 판사의 허가가 없는 경우, 신청인들이 제출하는 증인 진술서의 총 면수는 (모두 합쳐) 100면을 초과할 수 없다. 마찬가지로, 행정 심판 판사의 허가가 없는 경우, 피신청인들은 (모두 합쳐) 100면 이상의 증인 진술서를 제출할 수 없다. 목차와 공증 번역본은 면수 한도에 포함되지 않는다. 증인 진술서상의 질문과 답변 본문은 1줄 간격으로 작성할 수 있다. 다만, 질문과 답변 사이에는 최소 2줄 이상의 간격을 두어야 하며 글자 크기는 최소 12포인트 이상이어야 한다. 증인 진술서에 도해를 포함시킬 수 있지만 제출이 가능한 총 면수에 포함된다.

**8.5.**        **전문가 의견서.**

절차 일정에 따라, 협의를 실시한 후에, 스태프(스태프가 당사자인 경우)를 포함하는 각 당사자는 전문가 의견서의 일부를 신청서의 일부로서 혹은 수칙에서 허용하는 그 외의 목적으로 증거로서[23] 제출할 예정인지 여부에 관한 입장을 명시한 진술서 사본 1부를 EDIS에 제출하고 행정 심판 판사(McNamara337@usitc.gov)에게 제출하여야 한다. 위에 기술된 목적으로 사용될 예정인 전문가 의견서를 명시하여야 한다. 이 진술서는 위원회 서기실에 제출할 수 없다.

전문가 의견서의 사본을 다른 당사자들에 제출할 때 반드시 판사 검토용 사본을 McNamara337@usitc.gov로 제출하여야 한다.

당사자 일방이 전문가 의견서의 일부를 배제하는 신청서를 제출하거나 전문가 의견서 또는 전문가 증언녹취의 일부를 말소하는 신청서를 작성하는 경우, 해당 당사자는 증거물 목록에서 관련 전문가 의견서와 전문가 증언녹취가 어느 한 부분이라도 철회되거나 배제되지 않도록 주의를 기울여야 한다. 상대방은 언제라도 전문가 의견서의 다른 부분을 근거로 그러한 신청서를 반박할 수 있다. 제출 문서가 부적절하거나 증언을 왜곡하는 경우, ALJ는 해당 전문가 의견서 또는 전문가 증언의 다른 부분을 근거로 문서에 제시된 내용이 문맥상 정확한지 여부를 직권으로 확인할 수 있다.

**8.6.**        **외국어 증거물.**

외국어 증거물은 증거물 교환 기한까지 완전한 영어 번역본을 제공하지 않는 한

---

[23]전문가 의견서의 관련 부분이 증거로 채택될 수 있다.

실체적 목적의 증거로 채택되지 않는다. *문서의 일부 또는 한 섹션만을 번역하는 것은 허용되지 않는다.* 반드시 문서의 전문을 번역하여야 한다. 여하한 당사자가 번역본에 분쟁을 제기한 경우에는 양측 소송대리인이 합의하는 적격하고 중립적인 번역사로부터 반드시 공증을 받아야 한다.

## 8.7.    증거물.

### 8.7.1.    제안된 증거물의 교환.

기본 수칙은 제안된 문서 증거물의 사본과 증거물 목록안을 상대방(해당되는 경우 스태플을 포함한다)에게 송달하여야 하는 정확한 기한을 더 이상 규정하지 않는다. 그로 인하여 당사자들은 어느 정도 유연성을 확보할 수 있다. 다만, 증거물 목록은 늦어도 증거 심리 7일 전까지 교환하여야 한다. 제안된 증거물 목록을 교환한 후에, 당사자들은 중복된 증거물을 제거하거나 공동 증거물로 새로운 번호를 부여하고 행정 심판 판사에게 제출하기 전까지 증거물 목록을 업데이트하여야 한다.

제안된 실물 및 시연용 증거물은 송달은 요구되지 않지만 증거물 목록안에는 명시하여야 한다. 다만, 제안된 실물 및 시연용 증거물은 제안된 증거물을 제출하고 송달하는 날로 지정된 날짜에 상대방이 검토할 수 있도록 제공하여야 한다.

제안된 증거물은 위원회 서기실에 제출할 수 없다.

### 8.7.2.    행정 심판 판사에 대한 제안된 증거물의 송달.

증거 심리 직전 또는 중간에, 당사자들은 증거물 목록안의 PDF 파일 그리고 심리 전과 후 및 중간에 제공될 예정인 Box 링크를 이용하는 증거물 목록안을 포함하여, 제출할 예정인 증거물의 사본을 행정 심판 판사에게 제출하여야 한다.

### 8.7.3.    최종 증거물 및 최종 증거물 목록의 관리 및 제출.

증거 심리 전과 후에, 각 당사자에게 각자의 예비 및 최종 증거물 목록과 증거물을 업로드할 Box 링크가 전송된다. 각 당사자는 기본 수칙 제8.7.5조와 절차 일정에 따라 심리 중간에 채택되고 기각된 증거물을 포함하여 모든 증거물의 상태가 반영된 최종 증거물 목록을 제출하여야 한다. 철회된 증거물은 최종 증거물 목록에만 증거물 번호로 명시하여야 하며 철회되었음을 표시하여야 한다. 철회된 증거물은 제출되지 않는다. 다만, 기각된 증거물은 공식 기록에 보존된다.

당사자들은 심리 절차 전반에 걸쳐 증거물 목록과 증거물을 업데이트하는 동시에 심리가 종료된 시점에서 모든 채택된 증거물과 기각된 증거물이 최종 증거물 목록에 포함되었음을 확인할 책임이 있다.

준최종 증거물 목록은 심리 종료일로부터 7일이 경과한 날의 오후 5시 전까지

제공되는 Box 링크를 통하여 제출하여야 한다. 증거물은 (i) 채택된 비밀 증거물, (ii) 채택된 공개 증거물, (iii) 기각된 비밀 증거물, (iv) 기각된 공개 증거물로 분류하여야 한다. 증거물은 사전에 예약하고 행정 심판 판사의 보좌관에게 제출하여야 한다. 행정 심판 판사의 보좌관은 당사자들과 함께 증거물을 검토하고 수정이 필요한 경우 당사자들에게 통지한다. 행정 심판 판사의 보좌관과 예약한 날짜와 최종 제출 기한 사이에 필요한 수정 작업을 수행할 수 있도록 시간적 여유를 두는 것이 권장된다. 이러한 증거물 세트를 제출하기 위하여 행정 심판 판사의 보좌관과 협업하는 경우 시간을 엄수하고 예의를 갖춰야 한다.

증거물로 제출되는 모든 문서에는 날짜를 기재하여야 한다. 동일한 문서에 복수의 판본이 존재하는 경우, 판본에 날짜를 기재하여야 한다. 예를 들어, 웹사이트의 스크린샷을 사용하는 경우, 스크린샷을 작성한 날짜를 https://address와 함께 명시하여야 한다.

당사자들은 모든 채택된 증거물과 기각된 증거물이 최종 제출 증거물에 포함되었는지 여부를 확인할 책임이 있다. 최종 증거물 목록에 포함되지 않은 증거물은 최종 예비 결정을 내리는 시점에 위원회가 증명하는 기록의 일부로 간주되지 않는다.

위원회 증거물 세트는 증거물 유형별로 별도의 폴더(예: CX (공개), CX (비밀) 등)를 이용하여 Box 플랫폼에 업로드하여야 한다. 증거물은 PDF 파일로 작성하여야 하며 25 MB를 초과하는 파일은 복수의 파일로 분할하여야 한다. 각 폴더에 포함된 모든 파일의 파일명을 열거한 PDF 형식의 목차를 작성하여 각 폴더에 포함시켜야 한다. 기각된 증거물은 별도의 폴더로 제출하여야 한다. 위원회 증거물 및 심리 종료일의 최종 증거물 목록에 포함되지 않은 증거물은 최종 예비 결정을 내리는 시점에 위원회가 증명하는 기록의 일부로 간주되지 않는다. "각 증거물 유형(즉 CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-{4자릿수}C, CDX-{4자릿수}C, RX-{4자릿수}C, RDX-{4자릿수}C, JX-{4자릿수}C, JDX-{4자릿수}C, SX-{4자릿수}C, SDX-{4자릿수}C)은 소송 기록 서비스에서 보다 안정적으로 업로드하고 라벨을 부여할 수 있도록 별도의 [디스크] 또는 [디스크] 세트에 저장하여 제출하여야 한다." 각 디스크는 "조사 명칭과 번호 그리고 그에 포함된 증거물의 범위가 기재된 라벨을 반드시 부착하여야 한다."

위원회 규칙 제19 C.F.R. § 210.4(f)(8)조와 제출 절차 핸드북 § II.C(3)(a)에 따라 위원회 세트를 종이 문서로 제출할 수 있는 적절한 허가를 받은 경우, 다음 규정이 적용된다. 증거물의 광학 스캔 작업을 원활하게 진행하기 위하여, 위원회 세트에 포함되는 증거물은 일련번호가 붙은 제출함에 담긴 폴더(파일 폴더, 아코디언 폴더 등) 안에 낱장(클립은 사용할 수 있지만 스테이플러는 사용할 수 없다)으로 삽입하여야 한다. 각 폴더에는 폴더 안에 포함된 증거물의 번호(예: RX-0014C)를 표시하는 라벨을 부착하여야 한다. 증거물이 포함된 폴더는 위원회 세트 제출함 안에 번호순으로 배열하여야 한다. 비밀 증거물과 공개 증거물은 비밀 증거물 또는 공개 증거물 포함 여부를 명확하게 표시한 별도의 제출함에 보관하여야 한다. 기본 수칙 제8.6.5조 참조.

공개 증거물과 비밀 증거물은 별도의 제출함에 보관하므로 제출함 내에서 번호의 공백이 발생할 수 있다. 예를 들어, 공개 증거물 제출함에 CX-0001, CX-0002, CX-0004가 포함되고 비밀 증거물 제출함에 CX-0003C와 CX-0005C가 포함될 수 있다.

*마지막으로, 심리 전 서면에 명시된 모든 증거물은 심리 후 서면과 최종 증거물 목록에서도 동일한 증거물 번호를 사용하여야 한다. 당사자들은 말소 신청서 또는 입증 제의서에서 사용하였거나 사용 중인 증거물을 철회하지 않도록 주의를 기울여야 한다.*

*최종 증거물 목록과 증거물은 심리 후 서면 제출 마감일로부터 직전 2일 전까지 제출하여야 한다.*

**8.7.4.       증거물 번호 및 라벨, 비밀 증거물.**

모든 증거물 또는 증거물의 사본은 선명하고 판독이 가능하여야 한다. 각 증거물은 해당 증거물의 **4자리**[24] 번호(예: CX-0003C 또는 RX-0005)가 포함된 라벨을 1면 우측 상단에 배치하여 식별하여야 한다. 각 증거물에는 하나의 번호만을 부여할 수 있다. 더 나아가, 증거물을 구성하는 모든 면에는 동일한 지점에 순서대로 번호를 매겨야 하며 증거물에 포함된 정보를 영구적으로 가리는 방식을 적용할 수 없다. 정당한 사유가 입증된 경우를 제외하고, 각 증거물은 1건을 초과하지 않는 문서로 구성되어야 하며 각 문서의 모든 면에는 기본 수칙 제3.6조에 다른 베이츠 번호를 부여하여야 한다. 이러한 "증거물당 문서 1건" 수칙에 대한 예외에는 송장이나 관련 이메일 묶음을 단일한 증거물로 묶는 것이 적절한 경우가 포함된다.

피신고인(들)은 중복을 방지하기 위하여 상호간에 번호 체계를 조정하여야 한다. 그에 추가하여, 모든 당사자들은 불필요한 중복(예: 특허, 출원 기록 등)을 방지하기 위하여 증거물을 조정하여야 한다.

증거물의 어느 한 부분에라도 비밀 영업 정보가 포함된 경우, 증거물 전체가 비밀로 취급된다. 긴 분량의 증거물에서 일부만이 비밀인 경우, 당사자들은 해당 증거물의 공개용 버전을 제출할 것을 요청받을 수 있다.

증거물(실물 또는 시연용 증거물을 포함한다)에 비밀 영업 정보가 포함된 경우, 증거물 번호 뒤에 "C"를 붙여야 한다. 더 나아가, 비밀 영업 정보가 포함된 증거물은 보호 명령의 표시 요건을 준수하여야 하며 모든 면에 표시하는 것이 권장된다. 증거물 목록 역시 목록의 증거물 번호 뒤에 "C"를 붙여 비밀 영업 정보가 포함되었는지 여부를 반드시 표시하여야 한다. 증거물 목록에는 비밀 정보가 포함될 수 없다. 모든 증거물 목록은 공개 문서여야 한다.

---

[24] 현재 위원회에 제출되는 모든 증거물은 "필요한 경우 앞 자리에 0을 포함하는 4자리 증거물 번호"를 부여할 것을 요구받는다.

기본 수칙 제8.7조에 따라 전자적으로 제출하는 증거물의 경우, 공개 증거물과 비밀 증거물을 별도로 제출하여야 한다. 각 제출 문서에는 정확한 목차가 포함되어야 한다.

### 8.7.4.1.    문서 증거물.

증거물에는 4자리 숫자 "0001"부터 시작하여 순서대로 번호를 부여하여야 하며 신고인 측 증거물인 경우 "CX", 피신고인 측 증거물인 경우 "RX", 스태프 측 증거물(해당되는 경우)인 경우 "SX", 공동 증거물인 경우 "JX"을 숫자 앞에 붙여야 한다. 당사자들은 번호를 "유보"할 수 없으며 적절한 순서에 따라 모든 증거물에 번호를 부여하여야 한다.

### 8.7.4.2.    실물 증거물.

실물 증거물은 "0001"부터 시작하는 별도의 체계로 번호를 부여하여야 하며 신고인, 피신고인, 스태프(해당되는 경우), 공동 증거물에 각각 "CPX", "RPX", "SPX", "JPX"를 숫자 앞에 붙여야 한다. 위원회 세트인 경우 실물 증거물은 사전에 예약하고 제출함에 담아 증거 심리 종료일로부터 2일이 경과한 날 전까지 행정 심판 판사의 보좌관에게 제출하여야 한다. 위의 기본 수칙 제8.6.4조 참조. 증거로 채택된 실물 증거물은 위원회가 보관한다. 당사자 일방은 증거물 제출 기한 전에 증거로 채택된 실물 증거물을 사진으로 대체하는 허가를 행정 심판 판사에게 요청할 수 있다.

모든 증거물은 내용물이 기재된 라벨을 부착하여야 하며 위에 명시된 번호 체계를 따라야 한다.

### 8.7.4.3.    시연용 증거물.

시연용 증거물은 "0001"부터 시작하는 별도의 체계로 번호를 부여하여야 하며 신고인, 피신고인, 스태프(해당되는 경우) 증거물에 각각 "CDX", "RDX", "SDX"를 숫자 앞에 붙여야 한다. 그에 추가하여, 당사자들은 심리 중에 사용할 목적으로 주요 시연용 증거물(예: 표, 도면 등)을 8 ½인치 x 11인치 규격으로 축소한 양면 사본 2부를 행정 심판 판사에게 제출하여야 한다. 해당되는 경우, 시연용 증거물에는 제작의 근거가 된 서면 또는 실물 증거물을 명시하여야 한다.

당사자들은 시연용 증거물을 실질적 목적 혹은 단순한 시연 목적으로 채택할 것을 신청할 수 있다. 그러한 용도 지정은 채택 시점에서 명확히 기록으로 남겨야 한다. 채택된 시연용 증거물은 기본 수칙 제8.6.4조와 제8.7조에 따라 ALJ 및 위원회 세트와 함께 제출하여야 한다.

### 8.7.4.4.    공동 증거물.

당사자들이 합의한 경우, 당사자들은 특허 공보나 출원 이력 등을 포함하는 공동

서면 증거물을 제출할 수 있다.

공동 서면 증거물은 각 공동 증거물을 제출한 당사자가 명시된 색인을 포함하여야 하며 해당 증거물을 제출한 그룹별로 정리하여야 한다. 예를 들어, 신고인과 피신고인 A가 일련의 공동 서면 증거물을 제출한 경우, 해당 증거물은 공동 서면 증거물 색인에서 첫 번째 공동 서면 증거물 그룹으로 기재된다. 그 다음으로, 신고인과 피신고인 B가 제출한 모든 공동 서면 증거물, 신고인과 피신고인 C가 제출한 공동 서면 증거물 등의 순서로 색인에 기재된다.

**8.7.5.        증거물 목록.**

모든 증거물 목록에는 모든 증거물을 증거물 번호에 따라 순서대로 나열하고 각 증거물을 서술형 제목으로 식별하는 표, 증거물을 증거로 제출하는 목적에 관한 간략한 기술, 증거물을 뒷받침할 증인의 이름, 증거물이 증거로 채택된 상태가 포함되어야 한다.

모든 공동 증거물 목록은 각 증거물을 식별하여야 하며 당사자들은 목록에서 각 공동 증거물에 대한 공통된 서술형 제목, 목적에 관한 기술, 증거물을 뒷받침하는 증인에 합의할 목적으로 목록 제출일 전에 회합 및 협의를 실시하여야 한다.

증거물을 증거로 채택할 것을 제의하기 전에 제출하는 모든 증거물 목록에서, 채택 상태를 표시하는 열은 공란으로 비워 두어야 한다. 증거물을 증거로 채택할 것을 제의하거나 철회한 이후에 제출하는 모든 증거물 목록에서, 해당 열은 증거물이 증거로 채택되거나 기각된 날짜를 명시하거나 철회 여부를 표시하여야 한다.

증거물 목록은 공개 및 비밀 증거물을 포함하여야 하며 모든 증거물을 (4자리) 숫자(예: CX-0001, CX-0002, CX-0003C, CX-0004, CX-0005C 등) 순서로 함께 열거하여야 한다. 증거물 목록은 공개 문서이며 비밀 영업 정보를 포함할 수 없다.

*재차 강조하지만 모든 증거물 목록은 증거물의 내용을 설명하여야 하며 알파벳 또는 숫자와 철회 여부를 포함하여야 한다. 각 증거물에 대한 서술은 35자를 초과할 수 없다. 파일 용량은 25 MB를 초과할 수 없다. 아래 내용 참조.*

**8.7.6.        증인 증거물.**

심리 중에 주신문, 반대신문 또는 적대적 증인 신문에서 증인에게 질문을 하는 소송대리인은 신문이 시작되기 전에 증인과 상대방 소송대리인에게 자신이 증인을 상대로 사용할 예정인 모든 증거물이 포함된 바인더(들)을(혹은 전자적으로 제공하는 경우 이메일 또는 FTP을 이용하고 ALJ의 경우 전자적인 방식으로) 제공하여야 한다. (당사자들의 선택에 따라) 바인더를 이용하는 경우, 번호순으로 정리되고 개별적으로 탭을 부착한 양면 증거물을 포함하여야 한다. 각 증인 바인더의 등에는 본 조사의 명칭과 번호 그리고 바인더 내용물의 성격을 기술한 라벨(예: 증인 반대신문—총 1권 중

제1권)을 부착하여야 한다. 그에 추가하여, 증인 바인더 표지는 목차를 반드시 포함하여야 한다.

2명 이상의 증인에게 수시로 사용할 예정인 특정한 증거물(즉 특허, 심사 이력)이 존재하는 경우, (전자적으로 송달하지 않는 한) 해당 증인을 상대로 그러한 증거물이 포함된 별도의 증거물 바인더를 사용하고 개인별 증인 바인더에서 생략하거나 당사자들 간의 합의를 따를 수 있다.

**8.7.7.**          **진정성.**

외견상 정상으로 보이는 모든 문서는 다른 증거에 의하여 해당 문서가 진정하지 않다는 사실이 입증되지 않는 한 진정한 것으로 간주된다.

**8.7.8.**          **증거물을 뒷받침하는 증인.**

증거로 제출되는 모든 증거물에는 "증거물을 뒷받침하는 증인"이 반드시 존재하여야 한다. 증거를 뒷받침하는 증인을 두는 이유 중 하나는 증거물의 기초를 정립하고 적절한 설명이 이뤄지지 않은 증거물이 기록에 등재되는 것을 방지하는 것이다. 증거물을 뒷받침하는 증인의 증언은 모든 당사자들이 모두 합의하는 경우 반드시 구두 증언일 필요는 없다. 예를 들어, 당사자들이 증언녹취의 일부와 증언녹취 과정에서 논의된 특정한 증거물을 증거로 지정하는 것에 합의할 의사가 있는 경우, 그러한 요청은 해당 증거물이 증언녹취 과정에서 명확하게 식별되고 논의되었으며 증거물에 관하여 논의한 증언녹취상의 해당 면이 지정 요청에 포함되는 것을 전제로 정당한 사유를 입증하는 신청서를 제출하면 일반적으로 허용된다.

참여하는 피신고인이 없는 조사인 경우를 제외하고, 당사자 일방이 증거물을 뒷받침하는 증인 없이도 증거로 채택하기에 적절하고 논란의 여지가 없다고 판단하는 경우, 해당 당사자는 절차 일정에 명시된 기한 또는 그 전에 증거물과 함께 (i) 확인자 본인 또는 본인의 지시를 받은 다른 자가 증거물을 작성하였음을 확인하는 진술서 또는 확인서, (ii) 심리에서 증인 없이 해당 증거물을 증거로 채택할 것을 요청하는 요청서, (iii) 심리에서 증인 없이 해당 증거물을 증거로 채택할 수 있는 근거를 기술한 진술서를 제출할 수 있다. 확인자를 상대로 반대신문을 희망하는 당사자는 진술서 또는 확인서와 요청서가 송달된 날로부터 3일 이내에 해당 당사자가 누구를 신문할 예정인지를 기술하여 서면으로 이의를 제기할 수 있다. 이의가 제기되지 않고 정당한 사유가 입증된 경우, 행정 심판 판사는 자신의 재량으로 증인 없이 증거물을 증거로 채택할 수 있다.

**8.8.**          **증거물 제출.**

전자 매체로 증거물을 제출하는 절차는 미국 국제무역위원회 웹사이트의 소송 기록 서비스 섹션에 명시되어 있다. 웹사이트에서 소송 기록 서비스에 직접 문의하기 바란다.

증거 심리 전 또는 후에 ALJ의 Box 계정에 자료를 업로드하는 방법은 증거 심리 전에 제공된다. 각 당사자의 담당자 1인(부담당자 1인을 지정할 것을 권장한다)에게 이메일 링크가 제공되며 공동 증거물이 존재하는 경우에는 ALJ의 Box 계정에 문서를 업로드하는 업무를 담당할 공동 증거물 업로드 담당자에게 링크가 제공된다. 일단 제출된 문서의 경우 ALJ와 판사실 직원들만이 접근 권한을 갖는다는 점에 유의하여야 한다.

## 9.        심리 절차.

### 9.1.        신문 순서.

심리 전 협의에서 변경되거나 특정한 날에 증인이 출석할 수 없는 경우 등과 같은 긴급한 사정으로 인한 경우를 제외하고, 심리에서 신문 순서는 다음과 같다:

(1)    신고인 측 주요 주장.

(2)    피신고인 측 주요 주장. 피신고인이 2인 이상인 경우, 발표 순서는 심리 전 협의에서 결정한다. 피신고인들은 증언 또는 기타 증거의 불필요한 반복을 피하여야 한다.

(3)    스태프 측 주요 주장(해당되는 경우).

(4)    신고인 측 반박. 사전 승인이 없는 경우, 신고인 측 반박은 피신고인 측 방어 주장의 범위 내로 제한된다.

(5)    피신고인 측 반박. 사전 승인이 없는 경우, 피신청인 측 반박은 피신고인이 최종 입증 책임을 부담하는 쟁점들로 제한된다.

### 9.2.        모두 진술 및 최종 변론.

행정 심판 판사는 모두 진술과 최종 변론을 요구하지 않는다. 당사자들은 모두 진술을 행할 수 있다. 모두 진술은 신고인 1시간, 피신고인 1시간, 스태프(해당되는 경우) 30분으로 제한된다. 당사자들은 최종 변론을 행할 것을 요청할 수 있다.

### 9.3.        심리 시간.

통상적인 심리 시간은 오전 9:30부터 오후 5:30까지이며 매일 12:15~12:30 경에 시작되는 1시간의 점심 휴정이 포함된다. 또한, 오전과 오후에 약 15분씩의 휴식 시간이 포함된다.

### 9.4.        심리 예절.

### 9.4.1.        심리 중의 대화.

심리가 진행되는 동안에는 상대 소송대리인 간의 가청 대화가 금지된다. 상대

소송대리인에게 전달한 사항이 있는 경우, 반드시 행정 심판 판사를 통하여야 한다.

**9.4.2.** **휴대폰 및 호출기, 음식물.**

법정 내에서 심리가 진행되는 동안 휴대폰과 호출기 신호음은 무음이어야 하며 모든 휴대폰 통화는 법정 밖에서 이뤄져야 한다. 법정 내에서 심리가 진행되는 동안에는 물을 제외한 어떠한 음식물도 반입이 허용되지 않는다.

**9.4.3.** **증인 선서.**

각 증인은 선서 또는 확약 절차가 진행되는 동안 기립하여야 한다. 법정 내의 다른 모든 참석자는 착석한 상태로 정숙을 유지하여야 한다.

**9.4.4.** **이의 제기 주장.**

이의 제기 주장은 판결 전에 소송대리인에 의한 경우에만 허용된다. 일단 판결이 내려지면 해당 사안에 대한 추가적인 논의는 허용되지 않는다. 이의를 제기하는 근거를 반드시 서술하여야 한다. 포괄적인 이의 제기는 허용되지 않는다.

**9.5.** **증인 신문.**

**9.5.1.** **신문 범위.**

예외적인 사정을 제외하고, 신고인(들)의 주요 주장과 피신고인(들)의 주요 주장을 위한 증인 신문은 주신문, 반대신문, 재주신문, 재반대신문으로 제한된다.

**9.5.2.** **반대신문의 범위.**

반대신문은 통상적으로 주신문의 범위로 제한된다. 특정한 쟁점에 대하여 증인과 입장이 동일한 당사자가 자신의 입장을 뒷받침할 목적으로 소환한 증인을 상대로 반대신문을 희망하는 경우, 해당 당사자는 유도 신문, 즉 "우호적 반대신문"이 금지된다.

소송대리인이 증인에게 해당 증인의 이전 증언 내용을 참조하는 질문을 할 경우, 소송대리인은 증인의 이전 증언 내용을 요약하지 않아야 한다. 이 경우 소송대리인의 요약이 증인의 이전 증언 내용을 정확하게 인용하지 않았다는 이의 제기로 인하여 시간을 소모하는 결과를 낳을 수 있기 때문이다. 소송대리인이 증인의 이전 증언 내용을 참조하고자 하는 경우, 반드시 직접 인용을 하여야 한다.

**9.5.3.** **재주신문 및 재반대신문의 범위.**

재주신문은 반대신문에서 제기된 사안으로 제한된다. 재반대신문은 재주신문에서 제기된 사안으로 제한된다.

### 9.5.4.        증인 신문 일정 조정.

당사자들은 심리에 배정된 총 시간을 준수하여 사안에 대한 증인 신문을 진행할 것으로 기대된다.

### 9.5.5.        증인에게 제시되는 문서.

소송대리인이 증인에게 제시하기를 희망하는 모든 문서는 상대방 소송대리인에게 먼저 제시하여야 한다.

### 9.5.6.        전문가 증인 증언의 범위.

심리에서 전문가 증인의 증언은 해당 전문가의 의견서 및 증언녹취 범위 내로 한정되어야 한다. 증인을 신청한 당사자는 심리에서 도출하고자 하는 각 증언 요소가 해당 증인의 의견서 또는 증언녹취에서 어느 부분에 존재하는지 신속하게 증명할 준비를 갖출 것으로 기대된다.

### 9.5.7.        피신고인 측 반대신문의 조정.

피신고인들은 중복을 방지하기 위하여 실무적으로 가능한 범위 내에서 1인의 소송대리인을 통하여 반대신문을 조정할 것으로 기대된다. 그것이 불가능한 경우, 반대신문을 행할 예정인 소송대리인은 반복적인 질문을 피하기 위하여 증인에 대한 반대신문이 진행되는 전 과정 동안 법정에 배석하여야 한다.

### 9.5.8.        질문에 대한 명확한 설명 요청.

질문에 대한 명확한 설명 요청은 증인 또는 행정 심판 판사만이 할 수 있다.

### 9.5.9.        통역인의 이용.

심리에서 통역인을 이용하는 경우, 당사자들은 자신들이 합의하는 적격하고 중립적인 통역인을 확보할 책임이 있다. 통역인은 다수의 연방 법원과 연방 기관에서 관리하는 것과 같은 승인된 통역인 명단에서 선정할 것을 권장한다. 통역인들은 선서 또는 확약 절차를 진행한다.

### 9.5.10.        증언 중간의 휴식 시간에 이뤄지는 증인과의 협의.

소송대리인 또는 중개인은 증언 중간의 휴식 시간에 증인의 실체적 증언에 관하여 증인과 협의할 수 없다.

### 9.6.        속기록.

당사자들은 심리 속기록을 실시간으로 제공받는 서비스를 선택할 수 있다. 행정 심판 판사는 심리 속기록을 실시간으로 제공받는 것을 권장한다. 당사자들은 속기록이 생성되는 즉시 속기록상의 증거물 채택 여부를 모니터하여야 하며 오류나 누락이 발생한 경우 심리 중에 행정 심판 판사에게 신속하게 알려야 한다.

심리가 종료된 후에 속기록을 정정할 필요가 있는 경우, 변경을 요청하는 당사자는 신청서를 통하여 요청하여야 한다. 정정안을 채택하는 명령이 내려지면 정정이 실시될 수 있도록 Ace-Federal Reporters, Inc.에 명령서 사본을 발송할 책임은 변경을 요청한 당사사에게 있다.

**9.7.        재판부 서면.**

심리 중에 행정 심판 판사가 재판부 서면을 허용하는 경우, 신청서 형태로 EDIS에 제출하여야 하며 신청서에 관한 위원회 규칙과 기본 수칙을 반드시 준수하여야 한다.

**9.8.        증거/증언에 대한 이의 제기서 및 말소 신청서.**

심리 중에, 현장에서 해결할 수 없는 증거에 대한 모든 이의 제기 또는 말소 신청은, 행정 심판 판사에게 허가를 요청하고 허가가 내려지지 않는 한, 5면을 초과하지 않는 서면 신청서와 10년을 초과하지 않는 첨부물에 의하여야 한다. 행정 심판 판사가 달리 변경하지 않는 한, 심리 중에 문제가 제기된 당일에 EDIS에 관련 신청서를 제출하여야 한다. 답변서는, 다른 기한을 허용하는 허가가 내려지지 않는 한, 익일에 제출하여야 하며 말소 신청서와 동일한 면수 제한을 받는다. 말소할 증언 또는 문서의 정확한 면과 줄을 반드시 명시하여야 한다. 증언 인용 부분과 전문가 의견서상의 섹션/단락(표지 및 날짜 포함)을 전후 맥락을 파악할 수 있는 증언 또는 전문가 의견서(들)상의 관련 부분과 함께 첨부하여야 한다. 신고인 집단 또는 피신고인 집단(혹은 집단이 동질성을 공유하지 않는 경우 집단 내의 개별 당사자)은 심리 중에 말소 신청서를 2회 이내로 제출할 수 있다.

심리 중에 내려진 판결에 의하여 신청서를 제출한 당사자의 신청서가 기각된 경우, 해당 당사자는 그러한 주장과 판결에 소요된 시간만큼 변론에 배정되는 시간이 차감되는 불이익을 받게 된다.

MIL과는 별개로 제기되는 심리 후 말소 신청서와 증거 심리 중의 말소 신청서는 권장되지 않는다. 신고인 집단과 피신고인 집단(혹은 집단이 동질성을 공유하지 않는 경우 집단 내의 개별 당사자)은 허가 없이 심리 후에 1회 이내로 말소 신청서를 제출할 수 있다.

**10.        심리 후 제출 문서.**

당사자들은 행정 심판 판사의 사전 허가가 없는 경우 첨부물을 제외한 심리 후 서면에

최대 150면을 할애할 수 있다. 본 수칙은 당사자 일방이 심리 후 1차 서면에 100면, 심리 후 반박 서면에 50면을 초과하지 않는 면수를 할애하는 것을 가정하고 있지만, 어떤 당사자건 심리 후 서면에 허용된 150면을 자신의 판단에 따라 심리 후 1차 서면과 심리 후 반박 서면에 자유롭게 배분할 수 있다. 예를 들어, 당사자 일방은 허가 없이도 각 서면에 75면씩을 할애할 수 있다.

## 10.1.          심리 후 1차 서면.

절차 일정에 명시된 날짜 또는 그 이전에, 당사자들은 각자가 입증 책임을 부담하는 쟁점들에 관한 심리 후 1차 서면을 제출하여야 한다. 행정 심판 판사의 승인이 없는 경우, 상기한 서면의 관련 첨부물은 50면을 초과할 수 없다. 그에 추가하여, 각 당사자는 최종 증거물 목록의 사본을 제출하여야 한다. 모든 심리 후 서면과 최종 증거물 목록의 판사 검토용 사본을 바인더로 제출하여야 하며 바인더의 폭이 3인치를 넘지 않을 것을 권장한다.

각 당사자의 심리 후 서면은 위원회의 조사 개시 공고에 의하여 결정되고 <u>해당 당사자(스태프 제외)가 입증 책임을 부담하는</u> 공동 쟁점 개요서와 그에 대한 허용된 변경 사항에 명시된 일반 쟁점의 틀 안에서 (근거가 되는 구체적인 증거의 인용 등을 통하여) 심리가 실시된 쟁점과 증거를 고찰하여야 한다. <u>다른 모든 쟁점은 포기한 것으로 간주된다.</u>[25]

당사자들의 심리 후 1차 서면은 공동 쟁점 개요서에 명시된 순서를 반드시 따라야 한다.

그에 추가하여, 심리 전 서면에서 청구항, 주장 또는 쟁점을 제기하였던 당사자가 증거 심리에서 그에 대한 증거를 제시하지 못한 경우, 그러한 쟁점은 각 당사자의 심리 전 서면에서 근거가 없는 쟁점이나 주장이 등장하였던 면의 번호와 함께 공동 쟁점 개요서에 명시하여야 하며 포기한 것으로 간주된다.

당사자들은 분량이 방대한 부록을 첨부하거나[26] 심리 전 서면과 같은 다른 문서를 인용하여 참조에 의하여 통합하거나 심리 후 서면의 다른 섹션을 상호 참조하는 방식으로 면수 제한을 우회하려고 시도할 수 없다.

*또한, 단어를 강조하기 위하여 글꼴을 변경하거나 본문 대신 각주를 이용하는 행위도 금지된다.* 판례 인용은 각주가 아닌 본문에 포함되어야 한다. 같은 맥락에서, 당사자들은 각 쟁점별로 사실과 법률에 관한 명확하고 간결한 분석을 제시하여야 하며

---

[25] *특정한 자동 미디어 라이브러리 장치*(조사 번호 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013)).
[26] 마찬가지로, 당사자들은 기록에 등재되지 않았거나 심리 중에 제출하였어야 하는 증거를 첨부하는 행위가 금지된다. 예를 들어, 전문가 의견서를 포함한 증거물이 심리에서 채택되지 않은 경우, 심리 후 서면에 첨부할 수 없다. 다른 당사자의 주장이 포기되었거나 말소되어야 한다는 주장을 펼치기 위하여 그러한 증거물이 요구된 범위 내에서, 별도의 신청서 서류를 통하여 제기되어야 하며 심리 후 서면과 함께 제출할 수 없다.

근거가 되는 사실을 고찰하는 대신에 증거를 길게 나열할 수 없다. 예를 들어, 표제 밑에 한 문장을 제시하고 그 뒤에 35개의 증거를 제기하는 방식은 특허 분쟁이 제기된 쟁점인 경우 사실과 법률에 대한 충분한 분석으로 간주될 가능성이 낮다. 더 나아가, 주장을 각주에 감추는 대신에 직접적이고 가시적인 방식으로 제시하여야 한다. 심리 후 1차 서면은 조사에서 가장 중요한 서면이며 명확한 분석을 제시하지 못하는 당사자는 특정한 쟁점에 대한 입증 책임을 다하지 못한 것으로 간주될 수 있다.

당사자들은 각 쟁점에 대한 법률을 이해하여야 하며 쟁점을 구성하는 모든 요소를 빠짐없이 다루어야 한다. 예를 들어, 35 U.S.C. § 103 자명성 항변과 관련된 분석은 단순히 청구항에 기재된 발명과 선행기술을 비교하는 것에 그치지 않고 선행기술의 범위와 내용, 통상의 기술 수준, 청구항에 기재된 발명과 선행기술의 비교, 비자명성에 대한 2차적 고려 사항을 포함하여야 한다. 국내 산업 제품, 피제소 제품 또는 선행기술 문헌이 주장 청구항을 충족하는지 여부에 관한 고찰에서 어떤 요소에 분쟁이 존재하는지를 명확하게 식별하여야 한다. 특정한 요소에 대하여 분쟁이 존재하지 않는 경우, 각 당사자는 그에 대해서도 동등한 수준으로 명확하게 식별하여야 하며 그렇지 않은 경우 반론을 포기한 것으로 간주될 위험이 있다.

당사자들은 최선의 주장을 신중하게 선별하고 논리적이고 합리적이며 설득력을 갖춘 방식으로 제시하는 것이 추가로 권장된다. 허용된 지면이 모두 소진될 때까지 한 문장 분량의 주장을 두서 없이 나열하면서 가능한 모든 증거의 조합을 쏟아내는 방식은 효과를 거둘 가능성이 낮다. 그러한 경우 행정 심판 판사는, 재량에 따라, 가장 확실한 소수의 주장들만을 인정하고 나머지는 무시할 수 있다.

스태프는 증거 심리(이하 "심리")에서 무효 및 침해에 대한 심리 전 입장(들)의 변경을 뒷받침하는 것으로 보이는 증거가 제시된 경우 심리 이후에 기존의 입장을 변경하는 것이 허용된다. 스태프는 증거 심리 종료일로부터 7일 이내에 입장을 변경하였음을 알리는 "통지서"를 EDIS에 제출한다. 스태프는 EDIS에 제출한 문서의 명칭을 "심리 후 통지서"라고 명시하여야 한다. 스태프는 입장을 변경하는 근거가 된 모든 쟁점을 명시하고 심리에서의 증거를 인용하여 그 이유를 설명하여야 한다. 제출 문서는 스태프가 분량이 확대된 통지서를 제출할 수 있는 허가를 요청하고 그 이유를 설명하지 않는 한 15면으로 제한된다. 다른 당사자들은 7영업일 이내에 스태프의 통지서에 답변한다. 당사자들은 답변이 가능하지만 의무 사항은 아니며 그로 인하여 당사자들에게 불리하게 작용하지 않는다. 다만, 당사자들은 심리 후 서면에서 스태프의 입장 변경에 대응할 것으로 기대된다.

**10.2.        심리 후 재답변 서면.**

절차 일정에 명시된 날짜 또는 그 이전에, 당사자들은 심리 후 재답변 서면을 제출하여야 한다. 행정 심판 판사의 사전 승인이 없는 경우, 상기한 서면의 관련 첨부물은 20면을 초과할 수 없다. 심리 후 재답변 서면은 상대방의 심리 후 1차 서면에서 제기된 쟁점과 증거만을 다루고 반박하여야 하며 기본 수칙 제7.3조에 명시된 심리 전 서면과 심리 후 1차 서면이 첨부된 공동 쟁점 개요서를 따라야 한다.

**10.3.**           **사실인정안.**

위원회 규칙 제210.40조에 의거하여, 당사자 일방은 사실인정안과 법률결론안을 제출하는 것을 선택할 수 있다. 다만, 상대방은 사실인정안과 법률결론안에 답변할 것을 요구받지 않는다. 답변이 없더라도 구체적으로 명시되지 않는 한 사실인정안 및 법률결론안을 인정함을 의미하는 것은 아니다. 당사자 일방이 사실인정안과 법률결론안을 제출하는 것을 선택한 경우, 반드시 심리 후 1차 서면과 같은 날짜에 제출하여야 한다.

사실인정안은 단락에 번호를 매기는 형식으로 작성하여야 한다. 사실인정안은 모든 제337조 요소, 조사 개시 공고에 제시된 모든 쟁점, 조사 과정에서 발생한 다른 모든 쟁점을 반영하여야 한다. 특정한 제337조 요소 또는 쟁점에 관련된 단락들을 구분할 목적으로 심리 후 서면의 개요에 부합하도록 섹션 표제를 삽입할 수 있다. 사실인정안은 수정 없이 채택할 수 있도록 반드시 사실만을 진술하여야 한다(즉 심리 후 서면에 포함시키는 것이 더 적절한 주장은 배제된다). 각 사실인정안에는 증거의 진정성을 뒷받침하는 인용이 반드시 뒤따라야 한다.

**11.**           **NEXT Advocates 프로그램**

위원회의 행정 심판 판사국에서 도입한 NEXT Advocates 프로그램[27]에 의거하여, 당사자들은 경험이 적은 변호사(연방 법정에서의 실체적 구두 진술 또는 증인 신문 경험이 3회 이하인 변호사)가 조사 과정에서 실체적 구두 진술에 참여하거나/하고 증거 심리에서 증인을 신문할 수 있는 기회를 부여하는 것이 권장된다.

당사자는 NEXT Advocates 프로그램 참여를 지원하는 편의를 제공하여 줄 것을 요청하는 제안서는 재판부에 제출하여야 한다. 예를 들어, 경험이 적은 변호사가 증거 심리에서 증인을 신문할 수 있도록 제안서를 통하여 추가로 시간을 요청할 수 있다. 혹은 제안서를 통하여 적어도 1인 이상의 당사자가 경험이 적은 변호사에게 신청서의 실체적 부분에 대한 주장을 맡길 것을 약속하는 것을 전제로 약식 결정 신청서 또는 쟁점의 결론을 도출하는 다른 쟁점에 관한 심리를 요청할 수 있다.

위원회 웹사이트에 게재된 NEXT Advocates 프로그램 공지에 명시된 바와 같이, 필요한 경우 경험이 많은 변호사가 경험이 적은 변호사를 지원하고 필요한 경우 심리의 결론에 도달하기에 앞서 기록에 등재되는 진술을 명확히 설명하는 것이 허용된다.

제안서에는 경험이 적은 1인 이상의 변호사가 참여할 것으로 예상되는 내용을 설명하는 수석 소송대리인의 확인서가 포함되어야 한다. 이 확인서는 경험이 적은

---

[27]NEXT Advocates 프로그램
공지(https://www.usitc.gov/next_advocates_nurturing_excellence_in_trial_advocates.htm) 참조.

변호사 또는 신문할 증인의 이름을 명시할 필요는 없으며 소속 법률사무소를 명기하는 것으로 족하다. 제출 문서는 McNamara337@usitc.gov로 발송하여야 하면 EDIS에 제출할 필요는 없다.

## 12.        인용.

### 12.1.        일반적인 인용.

당사자들은 증거를 나열식으로 인용하는 것으로 근거 사실에 대한 고찰을 대신할 수 없다. 유형을 불문하고 인용을 조합하여 정리한 표는 그 자체만으로는 불충분하다. 그러한 주장은 말소될 수 있다.

청구항 표와 증거개시 문서에서 외국어 문서 또는 외국어 문서에 포함된 조항을 인용하는 당사자는 예외 없이 해당 문서 또는 조항의 번역본을 제출할 것을 요구받는다. 본 기본 수칙을 우회하거나 외국어를 오역 또는 왜곡하는 문서 또는 문서의 일부는 말소될 수 있다.

판례와 증거에 대한 모든 인용은 신청서/답변서/서면/문서의 본문에 포함시켜야 하며 각주에 기재할 수 없다.

### 12.2.        판례 인용.

각 당사자는 권원이 인용된 판시 사항이 포함된 피인용 결정서 또는 명령서의 구체적인 면(들)을 반드시 인용하여야 한다. 당사자 일방의 서면 또는 변론서에서 인용하는 모든 공개 결정서 또는 명령서는 공식 판례집 인용 정보를 반드시 포함하여야 한다. 그에 추가하여, 당사자들이 참조하는 미공표 결정서 또는 명령서를 인용하는 경우, 사건 번호와 완전한 처분 일자를 반드시 포함하여야 한다. 미공표 판례 또는 선례적 구속력이 없는 판례를 인용하는 경우, 서면이나 변론서에서 괄호로 명확하게 표시하여야 한다. 예를 들어, 다음과 같이 기재할 수 있다:

사건명, ### F.3d ###, at ## (Fed. Cir. ####) (선례적 구속력 없음).

EDIS, LEXIS 또는 WESTLAW로 조회가 불가능한 피인용 결정서 또는 명령서는 그 사본을 서면 또는 변론서의 부록으로 제출하여야 한다.

## 13.        당사자들 간의 협조.

제337조에 규정된 기간 제한으로 인하여, 모든 소송대리인은 증거개시와 증거 제출에 관련된 경우를 포함하는 모든 절차적 분쟁을 합의 사항 또는 협상에 의한 동의를 통하여 해결하도록 노력하여야 한다. 본 조사에서 적절한 협조 정신을 보장하기 위해서는 당사자들을 대리하는 소송대리인 간의 지속적이고 성실한 소통이 필수적이며 그러한 소통이 기대된다.

**14.**                    **일방적 접촉.**

　　　　행정 심판 판사와의 일방적 소통은 금지된다. 기술적 또는 절차적 성격의 질의는 행정 심판 판사의 법률 자문관에게 문의하여야 한다. 기본 수칙 제1.3.2조에 따른 전자적 사본 송달을 제외하고, 당사자들은 법률 자문관이 수신인이 아닌 경우에는 이메일에 법률 자문관을 참조로 포함시키지 않도록 주의하여야 한다.

　　　　이메일 또는 전화를 통한 행정 심판 판사의 법률 자문관 또는 재판부와의 비공식적인 소통 내용은 EDIS에 제출하는 서면, 문서 또는 서류에서 참조할 수 없다. 그 외의 경우에는 EDIS에 제출된 공식적인 소통 내용만이 인정된다.

　　　　당사자들은 명령서에 서명이 기재되었는지 여부, EDIS에 게재된 명령서가 처리되는 시점, EDIS에 게재된 명령서가 익일 특급 배송과 미국 우편 중 어떤 방식으로 발송되는지 여부(수일이 경과한 후에도 수취하지 못한 경우 제외) 등의 사안과 관련하여 본 조사의 소송 기록 관리자, 소송 기록 서비스를 담당하는 기타 직원, 행정 심판 판사의 서기를 접촉할 수 없다는 점에 유의하여야 한다. 이는 본 조사와 관련하여 소송 기록 서비스를 절대로 접촉할 수 없다는 의미는 아니다. 당사자의 서류 제출 등에 관련된 경우처럼 일반적인 질의는 적절한 것으로 간주된다. 다만, 소송 기록 서비스 담당 직원은 행정 심판 판사의 명령서 상태와 관련된 정보를 제공하는 것이 허용되지 않는다. 본 조사의 소송 기록 관리자와 행정 심판 판사의 서기는 본 조사에서 받은 부적절한 전화를 기록으로 남기고 필요한 경우 행정 심판 판사에게 알릴 수 있다.

**15.**                    **조정.**

　　　　위원회는 분쟁 해결을 촉진할 목적으로 관세법(1930)(개정) 제337조에 근거한 조사에 대한 자율 조정 프로그램의 도입을 승인하였다. 조정 프로그램에 참여하기를 희망하는 당사자들은 행정 심판 판사의 법률 자문관에게 통지하여야 한다.

부록 A

미국 국제무역위원회
워싱턴**DC**

**MaryJoan McNamara**
행정 심판 판사

| |
|---|
| 사건명: |
| 특정한 . . . |

조사 번호 337-TA-____

### [견본] 증언 소환장 발부 신청서

[당사자명]은, 19 C.F.R. § 210.32(a)(1)에 따라, 행정 심판 판사에게 이하에 첨부한 증언 소환장의 발부를 신청합니다:

[이름]
[주소]

증언 소환장은 [이름]이 [날짜]에 [장소]에서 혹은 상호간에 합의한 다른 날짜에 다른 장소에서 증언녹취에 출석하여 증언할 것을 요구합니다.

[당사자명]은 [이름]이 본 조사에 관련된 실질적인 정보를 보유하고 있을 가능성이 있는 것으로 판단합니다. [관련성에 관한 설명 삽입, 기본 수칙 제3.5.1조 참조.] 더 나아가, 소환장의 별첨 A에 명시된 주제들은 상기한 사안들만을 다루도록 협소하게 조정되었습니다. [질문 범위의 합리성에 관한 설명 삽입, 기본 수칙 제3.5.1조 참조.]

[이름]은 소환장이 발부되면 늦어도 익일 특급 배송을 통하여 본 신청서와 소환장을 수령할 예정이며 본 조사의 다른 모든 당사자들은 늦어도 익일 영업일까지 수령할 예정입니다. 위에 명시된 이유에서, [당사자명]은 증언 소환장 발부 신청서를 승인하고 첨부한 소환장을 발부하여 주실 것을 삼가 요청합니다.

날짜: _____, 20____                          삼가 제출합니다.

                                              _____
                                              [소송대리인]
                                              [주소]

                                              [당사자명] 측 소송대리인

미국 국제무역위원회
워싱턴**DC**

사건명:

특정한 **. . .**

조사 번호 337-TA-____

### [견본] 증거물 제출 소환장

수신:  이름
        주소

        주의: 관세법(1930)(개정) 제337조(19 U.S.C. § 1337)에 규정된 권한에 의하고 미국
국제무역위원회 소송절차규칙 19 C.F.R. § 210.32에 따르며
["신고인(들)"/"피신고인(들)"/등, 이어서 회사명 기재] _____가
제출한 소환장 신청서에 근거하여,

        _____ 에 _____ 에서 혹은 합의된 다른
        시간에 다른 장소에서 본 소환장의 별첨 A에 열거되고 기술되어 있으며 귀하가 점유,
        보관 또는 관리하고 있는 모든 문서와 물품을 제출할 것을 명령한다.
 그러한 제출의 목적은 필요에 따라 조사와 복사를 실시하는 것이다.

        비닉 특권 주장에 근거하여 본 소환장의 별첨 A에 열거되고 기술된 여하한 문서를
제출하지 않는 경우, 제출이 유보된 각 문서를 비닉 특권 적용 문서 목록에 별도로
명시하여야 한다. 비닉 특권 적용 문서 목록은 반드시 각 문서를 별도로 식별하여야 하며
문서별로 최소한 다음 정보를 기술하여야 한다: (i) 정보가 작성되거나 전달된 날짜, (ii)
작성자(들)/발신자(들), (iii) 모든 수신자(들), (iv) 문서에 포함된 일반적인 주제.
발신자(들)과 수신자(들)은 직책 및 해당자가 고용되거나 연계된 기관(회사 또는 법인
등)을 통하여 식별되어야 한다. 발신자 또는 수신자가 변호사 또는 외국 변리사인
경우에는 그 사실을 명시하여야 한다. 각 문서에 대하여 주장하는 비닉 특권의 유형을
반드시 명시하여야 하며 주장하는 비닉 특권의 모든 요소가 충족되었고 포기되지
않았다는 확인이 포함되어야 한다.

        본 소환장에 첨부된 별첨 A에 열거되고 기술된 여하한 문서 또는 물품이 본
소환장에 첨부된 보호 명령서에 정의가 규정된 "비밀 영업 정보"로 간주되는 경우, 해당
문서 또는 물품은 보호 명령서의 제반 조건에 따라 제출하여야 한다.

        본 소환장을 제한하거나 취소하기 위한 신청서는 본 소환장을 수령한 날로부터
10일 이내에 제출하여야 한다. 본 소환장에 관련된 신청서를 제출하는 시점에서, 판사
검토용 양면 사본 2부를 행정 심판 판사실로 동시에 송달하여야 한다.

　　　　이에 그 증거로, 미국 국제무역위원회 소속으로 아래에 명시된 서명인 본인은 금일 20__년 _____월___일에 워싱턴DC에서 본 문서에 서명을 기재하고 미국 국제무역위원회 직인을 날인하였다.


_____
MaryJoan McNamara
행정 심판 판사
미국 국제무역위원회

부록 **B**

모든 서면의 개요서 예시

I.    서문
      A. 절차 이력
      B. 당사자들
      C. 기술 개요
      D. 쟁점 특허
      E. 쟁점 제품

II.   관할권 및 수입 요건

III.  특허 "A"[28]
      A. 청구항 해석
           1. 통상의 기술 수준 정의
           2. 분쟁이 제기된 1번째 청구항 용어(청구항 1, 2, 3, …) .
           3. 분쟁이 제기된 2번째 청구항 용어(청구항 1, 2, 3, …) .
      B. 침해
           1. 청구항 1
           2. 청구항 2
      C. 기술적 국내 산업 요건
      D. 유효성
           1. 35 U.S.C. § 102에 근거한 신규성 결여
           2. 35 U.S.C. § 103에 근거한 자명성
                a. 선행기술의 범위 및 내용
                b. 통상의 기술 수준
                c. 청구항에 기재된 발명과 선행기술 간의 비교
                d. 비자명성에 대한 2차적 고려사항
      E. 권리 행사 불능
      F. 기타 방어

IV. 특허 "B" ...

V. 경제적 국내 산업 요건(모든 특허)
      A. 시설 및 설비에 대한 상당한 투자
      B. 노동 또는 자본의 상당한 고용
      C.  …

VI. 구제 및 공탁금

---

[28]당사자들은 모든 서면에서 상호간에 협의하여 특허의 순서를 동일하게 적용할 것을 요구받는다 .

특정한 동적임의접근메모리(DRAM) 장치,                  조사 번호: 337-TA-1472
이를 포함하는 제품 및 그 구성요소

## 공공 송달 증명서

본인 Lisa R. Barton은 본 증명서에 첨부된 명령서가 **2025.12.31.**에 EDIS를 통하여 위원회 조사 담당 변호사 **Thomas Halkowski**와 아래에 명시된 당사자들에게 송달되었음을 증명합니다.

Lisa R. Barton, 서기
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

### 신고인 Netflist, Inc. 대표:

Daniel E. Yonan
**STERNE, KESSLER, GOLDSTEIN, & FOX PLLC**
1001 K Street NW, 10th Floor
Washington, DC 20005
이메일: shawn@hakakianlaw.com

☐ 인편 전달
☐ 특급 배송 발송
☐ 등기 우편 발송
☒ 기타: 다운로드 가능 시 이메일 알림

### 피신고인:

삼성전자 주식회사
홍콩 영통구 삼성로 129
경기도 수원시 443-742
대한민국

☐ 인편 전달
☐ 특급 배송 발송
☒ 등기 우편 발송
☐ 기타: 신고인에 의한 송달

Samsung Electronics America, Inc.
6625 Excellence Way
 Plano, Texas 75023

☐ 인편 전달
☐ 특급 배송 발송
☒ 등기 우편 발송
☐ 기타: 신고인에 의한 송달

Samsung Semiconductor, Inc.
6625 Excellence Way
 Plano, Texas 75023

☐ 인편 전달
☐ 특급 배송 발송
☒ 등기 우편 발송
☐ 기타: 신고인에 의한 송달

특정한 동적임의접근메모리(DRAM) 장치,                    조사 번호: 337-TA-1472
이를 포함하는 제품 및 그 구성요소

송달 증명서 – 2면

Google LLC                              ☐ 인편 전달
1600 Amphitheatre Parkway               ☐ 특급 배송 발송
Mountain View, California 94043         ☒ 등기 우편 발송
                                        ☐ 기타: 신고인에 의한
                                        송달

Super Micro Computer, Inc.              ☐ 인편 전달
980 Rock Ave.                           ☐ 특급 배송 발송
San Jose, California 95131              ☒ 등기 우편 발송
                                        ☐ 기타: 신고인에 의한
                                        송달

# TRANSLATION CERTIFICATION

Date: January 8, 2026

To whom it may concern:

This is to certify that the attached translation from English (USA) into Korean is an accurate representation of the documents received by this office.

The documents are designated as:
- 2025.12.31 Order No. 2 Ground Rules
- 2025.12.31 Order No. 1 Protective Order

Samuel Wu, Managing Director in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents. I affirm that the provided translation was produced under the ISO 9001:2015 certified quality management process and the agents responsible for the specified translations are qualified to translate and review documents for the above language pair."

_Samuel Wu_
Signature of Samuel Wu

# Attachment D

미국 국제무역위원회

워싱턴 D.C.

특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 구성요소에 관한 건

조사번호 337-TA-_____

개정된 1930년 관세법 제337조에 의거한 제소장

신청인:

Netlist, Inc.
111 Academy Way
Suite 100
Irvine, CA 92617

신청인 측 대리인:

Daniel E. Yonan
Donald R. Banowit
William H. Milliken
Richard M. Bemben
Lauren A. Watt
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1101 K Street NW, 10th Floor
Washington DC 20005
전화: (202) 371-2600

Jason Sheasby
Annita Zhong, PhD
Andrew Strabone
Lisa Glasser
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
전화: (310) 277-1010

예정된 피신청인:

삼성전자 주식회사
대한민국 경기도 수원시
영통구 삼성로 129
우편번호 443-742

Samsung Electronics America, Inc.
6625 Excellence Way
Plano, Texas 75023

Samsung Semiconductor, Inc.
6625 Excellence Way
Plano, Texas 75023

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

Super Micro Computer, Inc.
980 Rock Ave.
San Jose, California 95131

<u>목차</u>

<u>페이지</u>

미국 국제무역위원회 워싱턴 D.C. ......................................................................... 1

개정된 1930년 관세법 제337조에 의거한 제소장 ....................................................... 1

I.     서문 .................................................................................................................. 1

II.    신청인 ............................................................................................................... 4

III.   피신청인들 ........................................................................................................ 6

     A.     삼성 피신청인들 ................................................................................ 6

     B.     Google ............................................................................................. 7

     C.     Super Micro ..................................................................................... 9

IV.   쟁점 기술 및 제품 ............................................................................................ 9

V.    권리주장특허 및 발명의 비기술적 설명 .......................................................... 10

     A.     '366 특허 및 '731 특허: 전력 관리/신호 보정 기능을 갖춘 메모리 모듈 .................. 10

     1.     미국 특허 제12,373,366호 ................................................................. 10

     b.     '366 특허의 해외 대응 특허 ............................................................... 11

     c.     '366 특허의 비기술적 설명 ............................................................... 11

     2.     미국 특허 제10,025,731호 ................................................................. 12

     b.     '731 특허의 외국 대응 특허 ............................................................... 12

     c.     '731 특허의 비기술적 설명 ............................................................... 13

     B.     '608 특허, '523 특허 및 '035 특허: 데이터 버퍼링 기능을 갖춘 메모리 모듈 .......... 13

     1.     미국 특허 제10,268,608호 ................................................................. 13

     b.     '608 특허의 해외 대응 특허 ............................................................... 14

i

c.    '608 특허의 비기술적 설명 .................................................................... 14

2.    미국 특허 제10,217,523호 ..................................................................... 14

b.    '523 특허의 해외 대응 특허 ................................................................. 15

c.    '523 특허의 비기술적 설명 .................................................................... 15

3.    미국 특허 제9,824,035호 ....................................................................... 16

b.    '035 특허의 해외 대응 특허 ................................................................. 16

c.    '035 특허의 비기술적 설명 .................................................................... 17

C.    미국 특허 제12,308,087호: 고대역폭 메모리 ................................... 17

1.    '087 특허의 식별 및 소유권 ................................................................. 17

2.    '087 특허의 해외 대응 특허 ................................................................. 18

3.    '087 특허의 비기술적 설명 .................................................................... 18

VI.    라이선스 ............................................................................................................. 18

VII.    피신청인들의 권리주장특허 침해 ............................................................... 19

A.    미국 특허 제12,373,366호의 침해 ....................................................... 19

B.    미국 특허 제10,025,731호의 침해 ....................................................... 19

C.    미국 특허 제10,268,608호의 침해 ....................................................... 19

D.    미국 특허 제10,217,523호의 침해 ....................................................... 20

E.    미국 특허 제9,824,035호의 침해 ......................................................... 20

F.    미국 특허 제12,308,087호의 침해 ....................................................... 20

G.    간접 침해 ........................................................................................................ 21

VIII.    부당한 수입 및 판매의 구체적 사례 ......................................................... 21

IX.    통합관세표 번호 .............................................................................................. 24

X.    권리주장특허와 관련된 국내 산업 ............................................................. 24

A.    기술적 요소 .................................................................................................. 25

B.    경제적 요소 ........................................................................................................ 25

1.    Netlist의 국내 활동 ...................................................................................... 26

a.    시설에 대한 상당한 투자 .......................................................................... 26

b.    상당한 노동력 고용 .................................................................................... 26

c.    특허 실시에 대한 상당한 투자 ................................................................. 27

2.    라이선시 SK 하이닉스의 국내 활동 .......................................................... 27

XI.    관련 소송 ...................................................................................................................... 29

A.    '366 특허 ...................................................................................................... 29

B.    '731 특허 ...................................................................................................... 29

C.    '608 특허 ...................................................................................................... 30

D.    '523 특허 ...................................................................................................... 31

E.    '035 특허 ...................................................................................................... 32

F.    '087 특허 ...................................................................................................... 32

XII.    구제 요청 ...................................................................................................................... 33

## 별지 목록

| 번호 | 내역 |
|------|------|
| 1 | 예시 침해혐의제품 목록 |
| 2 | 미국 특허 제12,373,366호 |
| 3 | 모출원 17/328,019에 기록된 미국 특허 제12,373,366호의 양도 |
| 4 | 미국 특허 제10,025,731호 |
| 5 | 모출원 12/422,853에 기록된 미국 특허 제10,025,731호의 양도 |
| 6 | 미국 특허 제10,268,608호 |
| 7 | 출원 15/820,076에 기록된 미국 특허 제10,268,608호의 양도 |
| 8 | 미국 특허 제10,217,523호 |
| 9 | 모출원 12/422,925에 기록된 미국 특허 제10,217,523호의 양도 |
| 10 | 미국 특허 제9,824,035호 |
| 11 | 출원 15/426,064에 기록된 미국 특허 제9,824,035호의 양도 |
| 12 | 미국 특허 제12,308,087호 |
| 13 | 모출원 15/602,099에 기록된 미국 특허 제12,308,087호의 양도 |
| 14 | 권리주장특허의 해외 및 국내 대응 특허 목록 |
| 15 | 권리주장특허 중 하나 이상에 대한 라이선시 목록의 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 15C | 권리주장특허 중 하나 이상에 대한 라이선시 목록의 비공개본 |
| 16 | 미국 특허 제12,373,366호에 대한 침해 대조표의 공개 본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 16C | 미국 특허 제12,373,366호 침해 대조표 공개본의 비공개본 |
| 17 | 미국 특허 제10,025,731호 침해 대조표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 17C | 미국 특허 제10,025,731호 침해 대조표 비공개본 |
| 18 | 미국 특허 제10,268,608호 침해 대조표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |

| 번호 | 내역 |
|------|------|
| 18C | 미국 특허 제10,268,608호 침해 대조표 비공개본 |
| 19 | 미국 특허 제10,217,523호 침해 분석표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 19C | 미국 특허 제10,217,523호 침해 분석표 비공개본 |
| 20 | 미국 특허 제9,824,035호 침해 분석표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 20C | 미국 특허 제9,824,035호 침해 분석표 비공개본 |
| 21 | 미국 특허 제12,308,087호 침해 대조표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 21C | 미국 특허 제12,308,087호 침해 대조표 비공개본 |
| 22 | 삼성, DRAM 모듈, 범용 메모리 모듈 (최종 접속일 2025년 9월 25일), https://semiconductor.samsung.com/dram/module/ |
| 23 | 삼성 웹사이트 https://semiconductor.samsung.com/dram/module/에서 추출한 DDR5 RDIMM, SODIMM 및 UDIMM 목록 |
| 24 | 침해혐의제품 DDR5 RDIMM, 부품번호 M321R8GA0BB0-CQKDS의 국내 구매 영수증 |
| 25 | 침해혐의제품 DDR5 RDIMM, 부품번호 M321R8GA0PB2-CCPWF의 국내 구매 영수증 |
| 26 | 삼성, 혁신적 메모리 솔루션: 고성능 컴퓨팅을 겨냥한 삼성의 MCRDIMM (2024년 6월 16일), https://semiconductor.samsung.com/news-events/tech-blog/innovative-memory-solution-samsungs-mcrdimm-targets-high-performance-computing/. |
| 27 | 침해혐의제품 DDR5 MRDIMM, 부품번호 M327R8GA0EB0-CLVXB의 국내 구매 영수증 |
| 28 | 삼성, HBM, 차세대 성능 (최종 접속일 2025년 9월 25일), https://semiconductor.samsung.com/dram/hbm/. |
| 29 | 삼성 웹사이트 https://semiconductor.samsung.com/dram/hbm/에서 추출한 HBM2/2E 및 HBM3/3E 고대역폭 메모리 목록. |
| 30 | 삼성전자, FMS 2025에서 AI 메모리 및 스토리지 비전 발표, 삼성 테크 블로그 (2025년 8월 21일), https://semiconductor.samsung.com/news-events/tech-blog/samsung-electronics-presents-vision-for-ai-memory-and-storage-at-fms-2025/. |

| 번호 | 내역 |
|---|---|
| 31 | Bruno Ferreira, 삼성, HBM3 메모리 NVIDIA 인증 획득 - HBM3E 생산에서 SK 하이닉스와 Micron을 따라잡으며 주가 5% 상승, Tom's Hardware (2025년 9월 22일), https://www.tomshardware.com/tech-industry/samsung-earns-nvidias-certification-for-its-hbm3-memory-stock-jumps-5-percent-as-company-finally-catches-up-to-sk-hynix-and-micron-in-hbm3e-production. |
| 32 | 삼성 12H HBM3e, 18개월 지연 후 NVIDIA 테스트 통과 보고, HBM4 최종 단계 진입, 트렌드포스 (2025년 9월 22일), https://www.trendforce.com/news/2025/09/22/news-samsung-12h-hbm3e-reportedly-clears-nvidia-tests-after-18-month-setback-hbm4-reaches-final-phase//. |
| 33 | Wayne Williams, 삼성 HBM 로드맵: Google이 2026년까지 NVIDIA의 AI 분야 최대 경쟁사가 될 수 있음을 보여주나, Microsoft의 현황에 대한 의문, techradar (2025년 2월 11일), https://www.techradar.com/pro/samsung-hbm-roadmap-shows-google-could-become-nvidias-fiercest-competitor-in-ai-by-2026-but-i-wonder-whats-happening-to-microsoft. |
| 34 | Olivia Melendez, 현재 정식 출시: Intel Xeon 6 기반 로컬 SSD, 베어메탈 및 대형 구성의 C4 VM, Google 클라우드 (2025년 7월 31일), https://cloud.google.com/blog/products/compute/c4-vms-based-on-intel-6th-gen-xeon-granite-rapids-now-ga. |
| 35 | Super Micro AS-8126GS-TNMR 데이터시트 |
| 36 | Super Micro AS-8125GS-TNMR2 데이터시트 |
| 37 | TechInsight의 AMD MI300X 분석에서 삼성 HBM3 확인, TechInsights (최종 방문일 2025년 9월 25일), https://www.techinsights.com/blog/techinsights-analysis-amds-mi300x-reveals-samsung-hbm3. |
| 38 | AMD, AMD Instinct MI350 시리즈 및 그 이후: AI와 HPC의 미래 가속화 (2025년 6월 12일), https://www.amd.com/en/blogs/2025/amd-instinct-mi350-series-and-beyond-accelerating-the-future-of-ai-and-hpc.html. |
| 39 | Super Micro Hyper SuperServer SYS-212HA-TN 데이터시트 |
| 40 | Dylan Dougherty, Supermicro Hyper SuperServer SYS-212HA-TN 검토 (Intel Xeon 6 6980P), StorageReview (2025년 1월 24일), https://www.storagereview.com/review/supermicro-hyper-superserver-sys-212ha-tn-review-intel-xeon-6-6980p. |
| 41 | Anton Shilov, Micron, Intel Xeon 6용 MRDIMM 공개: 최대 256GB DDR5-8800 모듈, Toms Hardware (2025년 7월 19일), |

| 번호 | 내역 |
|---|---|
| | https://www.tomshardware.com/desktops/servers/micron-unveils-mrdimms-for-intel-xeon-6-up-to-256gb-ddr5-8800-modules. |
| 42 | 미국 특허 제12,373,366호에 대한 국내 산업 현황표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 42C | 미국 특허 제12,373,366호에 대한 국내 산업 현황표 비공개본 |
| 43 | 미국 특허 제10,025,731호에 대한 국내 산업 현황표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 43C | 미국 특허 제10,025,731호에 대한 국내 산업 현황표 비공개본 |
| 44 | 미국 특허 제10,268,608호에 대한 국내 산업 현황표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 44C | 미국 특허 제10,268,608호에 대한 국내 산업 현황표 비공개본 |
| 45 | 미국 특허 제10,217,523호에 대한 국내 산업 현황표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 45C | 미국 특허 제10,217,523호에 대한 국내 산업 현황표 비공개본 |
| 46 | 미국 특허 제9,824,035호에 대한 국내 산업 현황표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 46C | 미국 특허 제9,824,035호에 대한 국내 산업 현황표 비공개본 |
| 47 | 미국 특허 제12,308,087호에 대한 국내 산업 현황표 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 47C | 미국 특허 제12,308,087호에 대한 국내 산업 현황표 비공개본 |
| 48 | Gail Sasaki 진술서 공개본 |
| 48C | Gail Sasaki 비공개 진술서 |
| 49 | SK 하이닉스, HPE 디스커버리 2025: SK 하이닉스, AI 시대 선도를 위한 서버 및 스토리지 기술 전략 공개 (2025년 7월 9일), https://news.skhynix.com/hpe-discover-2025/. |
| 50 | 주식회사 SK 하이닉스 2025년 및 2024년 3월 31일 현재 연결재무제표 |
| 51 | SK 하이닉스, AI 수요 증가로 1분기 미국 매출이 70% 이상 차지, 코리아헤럴드 (2025년 5월 16일), https://www.koreaherald.com/article/10488669. |
| 52 | 안성미, SK 하이닉스, AI칩 붐으로 미국 매출 70% 달성, 코리아헤럴드 (2025년 8월 17일), |

| 번호 | 내역 |
|------|------|
|  | https://www.koreaherald.com/article/10555331#:~:text=Updated%20%20Aug.,as%20US%20tech%20Nvidia. |
| 53 | SK 하이닉스 2025년도 2분기 실적보고서, 2025년 7월 24일 |
| 54 | SK 하이닉스 퍼듀 웨스트 라파예트 프로젝트 안내서 |
| 55 | SK 하이닉스 팩트 시트 |
| 56 | 국립표준기술연구소, SK 하이닉스 (인디애나) (2025년 9월 26일 최종 접속), https://www.nist.gov/chips/sk-hynix-indiana-west-lafayette. |
| 57 | 프로젝트 뉴런, SK 하이닉스 웨스트 라파예트 (2025년 9월 27일 최종 접속), https://neuron.prf.org. |
| 58 | 2022년 3월 25일 제출된 "강력한 국내 반도체 산업 지원을 위한 인센티브, 인프라 및 연구개발 필요성"에 관한 상무부 정보요청공고(RFI)에 대한 SK 하이닉스 의견서 |
| 59 | Netlist와 SK 하이닉스 간의 라이선스 계약서 공개본 (전체적으로 삭제 편집하여 비공개 처리함) |
| 59C | Netlist와 SK 하이닉스 간의 기밀 라이선스 계약서 |

| 별지 번호 | 내역 |
|---|---|
| CC-1 | 0887-06REVA-0114 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-1C | 0887-06REVA-0114 |
| CC-2 | 0887-99A-1M6060 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-2C | 0887-99A-1M6060 |
| CC-3 | 0888-06REVA_0722 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-3C | 0888-06REVA_0722 |
| CC-4 | 0888-97A-1A6B61-X00 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-4C | 0888-97A-1A6B61-X00 |
| CC-5 | Samsung MRDIMM M327R8GA0EB0-CLVXB |
| CC-6 | 20250811_151215.jpg |
| CC-7 | 20250811_151233.jpg |
| CC-8 | 20250811_151613.jpg |
| CC-9 | All About Circuits - 결정 피드백 등화 |
| CC-10 | All About Circuits - ISSCC 2024 |
| CC-11 | AMD MWD 센터 교육 |
| CC-12 | AMD MWD 사이클 교육 |
| CC-13 | 아시푸즈자만(Asifuzzaman) 2021 |
| CC-14 | CSDN 블로그, JESD79-5 |
| CC-15 | DCD SK 하이닉스 조항 |
| CC-16 | DDR5 명령어 진리표 |
| CC-17 | DDR 메모리 및 PCB 설계의 과제 |
| CC-18 | DDR5 메모리 채널 스케일링 성능 |
| CC-19 | DDR5_H5CG4(8&6)MEBDX Rev1.1 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-19C | DDR5_H5CG4(8&6)MEBDX Rev1.1 |
| CC-20 | DevX 메모리 버스 정의서 |
| CC-21 | EDTX 재판 기록 2일차, 4 (2023) |
| CC-22 | FAC Ex. 10, 25-cv-557 (EDTX) |
| CC-23 | FAC Ex. 7, 25-cv-557 (EDTX) |
| CC-24 | 1세대 RCD Renesas 5RCD0148 |
| CC-25 | 2세대 RCD Renesas RG5R256 |
| CC-26 | 3세대 RCD Renesas RG5R364 |
| CC-27 | 4세대 RCD Renesas RRG5004 |
| CC-28 | 데이터 집약적 컴퓨팅을 위한 고대역폭 메모리 |
| CC-29 | IEEE Paper 1 |
| CC-30 | IEEE Paper 2 |
| CC-31 | IEEE Paper 3 |
| CC-32 | IEEE Paper 4 |
| CC-33 | Intel 결정 피드백 등화 (DFE) |
| CC-34 | DDR4에서의 인텔 동적 ODT |
| CC-35 | Intellect Partners DD5의 비밀 무기_ODT |
| CC-36 | MRDIMM 메모리 기술 개요 |
| CC-37 | IPR2022-1427, EX2029 |
| CC-38 | IPR2022-1427, EX2030 |
| CC-39 | IPR2023-00203, EX1033 |
| CC-40 | JEDEC D5 제5장 |
| CC-41 | JEDEC DDR5 MRDIMM 계획서 |

| CC-42 | JEDEC 회원 명단 |
| CC-43 | JEDEC PS-005B |
| CC-44 | JESD235D |
| CC-45 | JESD238A |
| CC-46 | JESD270-4 |
| CC-47 | JESD301-1 |
| CC-48 | JESD301-1A |
| CC-49 | JESD301-2 |
| CC-50 | JESD301-4A |
| CC-51 | JESD301-6 |
| CC-52 | JESD305A |
| CC-53 | JESD79-5B_v1.20 |
| CC-54 | JESD79-5C.01_v1.31 |
| CC-55 | JESD79-5C_v1.30 |
| CC-56 | JESD82-512 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-56C | JESD82-512 |
| CC-57 | JESD82-552 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-57C | JESD82-552 |
| CC-58 | 김(Kim) 2020 |
| CC-59 | Kingston Technology DDR5 개관 |
| CC-60 | HBM3E를 통한 메모리 혁신 주도 |
| CC-61 | Lenovo 니블이란 무엇이며 어떻게 작동하는지 |
| CC-62 | (LP)DDR5 메모리 인터페이스 발표 |
| CC-63 | M88DR5RCD02 Flyer |
| CC-64 | M88MR5DB01 (1세대 DDR5 MDB) Flyer |
| CC-65 | M88MR5RCD01 (1세대 DDR5 MRCD) Flyer |
| CC-67 | CN 111726108B 기계번역본 |
| CC-68 | MDB01 사양서 개정 0.7 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-68C | MDB01 사양서 개정 0.7 |
| CC-69 | DDR5 도입에 따른 시스템 내 메모리 VR 변경사항 |
| CC-70 | Montage DDR5 제품 |
| CC-71 | Montage HK 증빙서류 |
| CC-72 | Montage M88DR5RCD01 |
| CC-73 | Montage M88DR5RCD02 |
| CC-74 | Montage M88DR5RCD03 |
| CC-75 | Montage M88DR5RCD04 |
| CC-76 | Montage M88MR5DB01 |
| CC-77 | Montage 보도자료 |
| CC-78 | MP5431 |
| CC-79 | MP5431C |
| CC-80 | MPQ8894 |
| CC-81 | MPQ8895 |
| CC-82 | MPQ8895F |
| CC-83 | MPQ8896 |
| CC-84 | MRCD01 사양서 개정 0.85 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-84C | MRCD01 사양서 개정 0.85 |
| CC-85 | Intel 9 시리즈 칩셋 PCH 데이터시트 |

| CC-86 | 나(Na) 2022 |
|---|---|
| CC-87 | Netlist AI 서버 |
| CC-88 | Netlist DDR5 DIMM 제품 개요서 |
| CC-89 | Netlist DDR5 DIMM |
| CC-90 | Netlist DDR5 MRDIMM 제품 개요서 |
| CC-91 | Netlist DDR5 오버클록 RDIMM |
| CC-92 | Netlist DDR5 오버클록 RDIMM 데이터시트 1.0 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-92C | Netlist DDR5 오버클록 RDIMM 데이터시트 1.0 |
| CC-93 | Netlist DDR5 VLP RDIMM 데이터시트 1.1 (전체적으로 삭제 편집하여 비공개 처리함) |
| CC-93C | Netlist DDR5 VLP RDIMM 데이터시트 1.1 |
| CC-94 | Netlist Lightning DDR5 DIMM |
| CC-95 | Netlist Lightning DDR5 고성능 모듈 제품 개요서 |
| CC-96 | Netlist P8900 RDIMM 약식 데이터시트 |
| CC-97 | Netlist P8910 데이터시트 |
| CC-98 | Netlist 초저지연 DDR5 RDIMM 제품 개요서 |
| CC-99 | 오(Oh) 2020 |
| CC-100 | 제품 이미지 |
| CC-101 | Rambus DDR5 PMIC |
| CC-102 | Rambus DDR5 RCD |
| CC-103 | Rambus DDR5 서버 PMIC 제품 개요서 |
| CC-104 | Rambus DDR5 대 DDR4 DRAM |
| CC-105 | Rambus 칩셋 확장 |
| CC-106 | Renesas 블로그 기사 |
| CC-107 | Renesas P8910 약식 데이터시트 |
| CC-108 | Renesas P8911 약식 데이터시트 |
| CC-109 | S2FPC01 브로셔 |
| CC-110 | S2FPC01 메모리 전력 IC |
| CC-111 | S2FPD01 브로셔 |
| CC-112 | S2FPD01 메모리 전력 IC |
| CC-113 | S2FPD02 메모리 전력 IC |
| CC-114 | S2FPD31 메모리 전력 IC |
| CC-115 | S2FPD73 메모리 전력 IC |
| CC-116 | 류(Ryu) 2023 |
| CC-117 | 삼성 4800MHz-PC5 |
| CC-118 | 삼성 5600MHz PC5-44800 |
| CC-119 | 삼성 64GB DDR5 PC5-4800 EC8 RDIMM 2Rx4 M321R8GA0BB0-CQK |
| CC-120 | 삼성 64GB DDR5 PC5-6400 EC8 RDIMM 2Rx4 M321R8GA0PB2-CCP |
| CC-121 | 삼성, 16스택 HBM 샘플 완성 |
| CC-122 | 삼성 DDR5 혁신적 성능 |
| CC-123 | 삼성 DDR5 RDIMM 데이터시트 |
| CC-124 | 삼성, 업계 최초 36GB HBM3E 12H DRAM 개발 |
| CC-125 | 삼성 DRAM 모듈 |
| CC-126 | 삼성 ECC UDIMM_ECC SODIMM |
| CC-127 | 삼성전자, 2024년 3분기 실적 발표 |
| CC-128 | 삼성전자, 2023 메모리 테크 데이 개최 |
| CC-129 | 삼성 HBM2E 플래시볼트 |
| CC-130 | 삼성 HBM3 아이스볼트 |

| CC-131 | 삼성 HBM3 아이스볼트 KHBAC4A03D-MC1H (24GB) DRAM IC |
| CC-132 | 삼성 HBM3E 12H 36GB DRAM IC 최고 성능 |
| CC-133 | 삼성 HBM3E 8H 24GB DRAM IC 최고 성능 |
| CC-134 | 삼성 핫칩스 2021 발표자료 |
| CC-135 | 삼성 II CC 명령 |
| CC-136 | 삼성, 업계 최고속 DRAM 생산 확대 |
| CC-137 | 삼성 KHBAC4A03C-MC1H |
| CC-138 | 삼성 MCRDIMM 기술 블로그 |
| CC-139 | 삼성 메모리 전력 IC |
| CC-140 | 삼성 모듈 취급 지침서 |
| CC-141 | 삼성 모듈 RDIMM |
| CC-142 | 삼성 모듈 SODIMM |
| CC-143 | 삼성 모듈 UDIMM |
| CC-144 | 삼성, DDR5 DIMM 솔루션 최적화 |
| CC-145 | 삼성, 8기가바이트 고대역폭 메모리-2 생산 개시 |
| CC-146 | 삼성, 고성능 컴퓨팅 시스템 발전 추진 |
| CC-147 | 삼성의 대량 DDR5 512GB RAM 모듈 |
| CC-148 | SK 하이닉스 2014 HBM 발표자료 |
| CC-149 | SK 하이닉스 신규 표준 |
| CC-150 | SK 하이닉스, 12단 HBM3E 대량 생산 개시 |
| CC-151 | SK 하이닉스 블로그 게시물 |
| CC-152 | SK 하이닉스 DDR5 |
| CC-153 | SK 하이닉스, 업계 최초 12단 HBM3 개발 |
| CC-154 | SK 하이닉스, MCR DIMM 개발 |
| CC-155 | SK 하이닉스, 세계 최고 성능 HBM3E 개발 |
| CC-156 | SK 하이닉스 HBM 제품 |
| CC-157 | SK 하이닉스 HBM3 제품 |
| CC-158 | SK 하이닉스 모듈 |
| CC-159 | SK 하이닉스 MRDIMM |
| CC-160 | SK 하이닉스 뉴스룸 인터뷰 |
| CC-161 | Netlist SK 하이닉스 |
| CC-162 | SK 하이닉스 RDIMM |
| CC-163 | SK 하이닉스 고대역폭 메모리 시대 |
| CC-164 | SK 하이닉스 TSMC 2025 기술 심포지엄 |
| CC-165 | 손(Sohn) 2016 |
| CC-166 | 삼성 HBM이 창조한 완벽한 조화 |
| CC-167 | TPS53830 데이터 시트 |
| CC-168 | TPS53830A 데이터 시트 |
| CC-169 | TPS53830A 제품 개관 |
| CC-170 | TPS53832 데이터 시트 |
| CC-171 | TPS53832 제품 개관 |
| CC-172 | TPS53832A 데이터 시트 |
| CC-173 | TPS53832A 제품 개관 |
| CC-174 | TPS53840 데이터 시트 |
| CC-175 | TPS53840 제품 개관 |
| CC-176 | 트렌드포스 뉴스 MRDIMM-MCRDIMM |
| CC-177 | 미국 특허 제11,531,584호 |

| CC-178 | 미국 특허 제11,568,950호 |
| CC-179 | 삼성 32GB DDR5 PC5-4800 EC8 RDIMM 1Rx4 M321R4GA0BB0-CQK |
| CC-180 | TPS53830 제품 개관 |
| CC-181 | Montage M88SPD5118 (DDR5용 SPD 허브) |
| CC-182 | Renesas SPD5118 – DDR5용 SPD 허브 |

## 부록 목록

| 번호 | 내역 |
|------|------|
| A | 미국 특허 제12,373,366호의 심사 연혁 |
| B | 미국 특허 제10,025,731호의 심사 연혁 |
| C | 미국 특허 제10,268,608호의 심사 연혁 |
| D | 미국 특허 제10,217,523호의 심사 연혁 |
| E | 미국 특허 제9,824,035호의 심사 연혁 |
| F | 미국 특허 제12,308,087호의 심사 연혁 |

**I.    서문**

1.    신청인 Netlist, Inc.("신청인" 또는 "Netlist")는 캘리포니아주 어바인에 소재한 메모리 솔루션 공급업체입니다. Netlist는 대기업은 아니지만, 메모리 분야에서의 기술적 기여는 상당합니다. 신청인의 최첨단 혁신기술은 현재 서버 및 개인용 컴퓨터에 사용되는 다수의 메모리 기술의 기반을 이루고 있습니다. 클라우드 서버로부터 데이터에 접근한 경험이 있다면, Netlist의 기술로부터 혜택을 받았을 가능성이 높습니다.

2.    Netlist는 20여 년 동안 고성능 메모리 제품을 개발하여 세계 최대 컴퓨팅 회사들 중 일부에 판매해 왔습니다. 그리고 거의 그 전체 기간에 걸쳐 Netlist는 자사의 지식재산권에 대한 광범위한 침해에 대응해야만 했습니다.

3.    삼성(아래에 정의됨)이 그 대표적인 사례입니다. 삼성은 이전에 Netlist의 특허 포트폴리오에 대한 라이선스를 보유하고 있었습니다. 그러나 2020년 삼성은 (두 개의 별도 캘리포니아 배심원단이 확인한 바와 같이) 라이선스 계약을 위반하였고, 그 이후로 Netlist의 특허기술을 무단으로 사용하고 있습니다. 이는 단순한 주장이 아닙니다. 하나도 아닌, 두 텍사스 배심원단이 삼성을 고의적 침해자로 인정하고 Netlist에게 억대의 손해배상금을 판결한 바 있습니다. 그럼에도 불구하고 삼성은 여전히 수십억 달러 상당의 침해제품을 미국으로 반입하고 있습니다. 한편, Google(아래에 정의됨)(Netlist와 거의 20년간 침해 소송에 연루되어 있음)과 Super Micro(아래에 정의됨)는 연방법원의 침해 판결에도 아랑곳하지 않고 삼성의 침해 메모리 제품을 계속 수입하여 자신들의 제품과 서비스에 구현하고 있습니다. 피신청인들은 Netlist에게 기술에 대한 공정한 대가를 지급하는 것보다 침해하는 편이 더 용이하다고 판단하고 있는 것으로 보입니다.

4.    이에 따라, Netlist는 Netlist가 소유한 유효하고 집행 가능한 특허를 침해하는 특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 구성요소에 대한 미국으로의 불법 수입, 미국으로의 수입을 위한 판매 및/또는 수입 후 미국 내에서의 판매를 중단시키기 위해, 개정된 1930년 관세법 제337조, 19 U.S.C. § 1337에 따라 본 제소장을 제출하는 바입니다.

5.    예정된 피신청인들은 삼성전자 주식회사("삼성전자"), Samsung Electronics America, Inc.("SEA"), Samsung Semiconductor, Inc. ("SSI") (총칭하여 "삼성" 또는 "예정된 삼성 피신청인들"), Google LLC("Google") 및 Super Micro Computer, Inc.("Super Micro")(모두 총칭하여 "피신청인들")입니다.

6.    본 제소장은 특정 DRAM 장치, 이를 포함하는 제품 및 그 구성요소에 관한 피신청인들의 위법행위에 기초합니다. 침해혐의제품은 다음과 같습니다:

- 삼성의 DDR5 세대 듀얼 인라인 메모리 모듈(DIMM)로 다음을 포함합니다:

  o   Registered Dual In-line Memory Module (RDIMM)

  o   Multi-Ranked Buffered Dual In-Line Memory Module 또는 Multiplexed Rank Dual In-line Memory Module (MCRDIMM/MRDIMM)

  o   Small Outline Dual In-Line Memory Module (SODIMM)

  o   Un-buffered Dual In-Line Memory Module (UDIMM)

- 삼성의 HBM2/2E, HBM3/3E 및 HBM4/4E 고대역폭 메모리(high bandwidth memory: HBM) 패키지

- 다음과 같은 서버 및 저장 시스템을 포함하여 동일한 DIMM 및 HBM을 포함하는 제품:

  o   삼성 HBM을 활용한 Google의 5세대, 6세대 및 7세대 텐서 프로세싱 유닛(TPU)

  o   삼성 DIMM 및 HBM을 활용한 Google의 Google Cloud Platform (GCP) 가상 머신 및 클라우드 저장 서비스

  o   삼성의 HBM을 활용한 Super Micro의 서버 및 컴퓨팅 시스템 (예를 들어 AMD의 Instinct 가속기와 삼성의 HBM3/3E 고대역폭 메모리를 활용한 Super Micro의 H13 및 H14 GPU 최적화 서버)

○ 삼성의 DDR5 DIMM을 활용하는 Super Micro의 서버 및 컴퓨팅 시스템 (예를 들어 Intel의 Xeon® 6 6900P 시리즈 프로세서 및 삼성의 DDR5 RDIMM 및 MRDIMM을 활용하는 Super Micro의 X14 서버)

- 전력 관리 집적 회로(PMIC), 등록형 클록 드라이버(RCD) 칩, DRAM 칩, DRAM 다이, 인터페이스 다이, 데이터 버퍼, 온도 센서, 인쇄회로기판 및 직렬 존재 감지(SPD) 회로를 포함한 그 구성요소

7.    침해혐의제품은 다음 Netlist 특허들("권리주장특허")의 하나 이상의 청구항을 침해합니다:

| 권리주장특허 | 피신청인들에 대해 주장된 청구항 (독립청구항은 굵은 글씨로 표시) |
|---|---|
| 전력 관리/신호 보정 기능을 갖춘 메모리 모듈 | |
| 미국 특허 제12,373,366호 | **1**, 2, 11, 12, 14, 15, 16 |
| 미국 특허 제10,025,731호 | **1**, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 |
| 데이터 버퍼링 기능을 갖춘 메모리 모듈 | |
| 미국 특허 제10,268,608호 | **1**, 2, 3, 4, 5 |
| 미국 특허 제10,217,523호 | **1**, 15, 17, 18 |
| 미국 특허 제9,824,035호 | 2, 6 |
| 고대역폭 메모리 | |
| 미국 특허 제12,308,087호 | **1**, 2, 5, 7, 8, **13**, 17, 18, **20**, 22, **23** |

8.    피신청인들의 불법 행위를 중단시키기 위해, Netlist는 19 U.S.C. § 1337(d)(1)에 따른 제한적 배제명령과 19 U.S.C. § 1337(f)에 따른 영구적 중지명령을 요청합니다.

9.    Netlist는 또한 19 U.S.C. § 1337(j)에 따라 60일간의 대통령 검토 기간 중 침해제품의 수입에 대해 공탁금을 부과할 것을 추가로 요청합니다.

10.     본 제소장의 섹션 X에 기재된 바와 같이, 권리주장특허로 보호되는 제품과 관련하여 Netlist와 그 라이선시인 에스케이하이닉스 주식회사("SK 하이닉스")가 국내에서 행한 투자에 기반하여 19 U.S.C. § 1337(a)(2)–(3)조에 따른 국내 산업이 존재합니다.

**II.    신청인**

11.     Netlist는 델라웨어주 법률에 따라 설립되어 존속하는 법인으로서, 캘리포니아주 어바인시에 주 사업장(주소: 111 Academy Way, Suite 100, Irvine, CA 92617)을 두고 있습니다.

12.     Netlist는 2000년 설립 이래 서버, 고성능 컴퓨팅 및 통신 시장의 세계 최고 OEM업체들에게 고성능 모듈형 메모리 서브시스템을 제공하는 선도기업입니다. Netlist의 기술은 사용자로 하여금 방대한 양의 데이터로부터 유용한 정보를 보다 단시간 내에 도출할 수 있게 합니다. 이러한 기능은 데이터 양이 지속적으로 급격히 증가함에 따라 더욱 중요한 가치를 갖게 될 것입니다.

13.     Netlist의 기술은 부하 감소 및 랭크 다중화의 혁신을 포함한 지능 기능을 메모리 원재료인 DRAM과 NAND와 통합하여 메모리가 더 높은 용량과 더 낮은 전력으로 더 빠른 속도로 작동하도록 합니다.

14.     Netlist는 파괴적인 신제품을 시장에 최초로 출시한 오랜 역사를 보유하고 있습니다. 예를 들어, Netlist는 Netlist의 특허받은 분산 완충 아키텍처 및 특허받은 신호 보정 기술을 활용한 최초의 부하 감소 이중 인라인 메모리 모듈("LRDIMM")인 HyperCloud®를 발명, 도입하였습니다. Netlist는 또한 NVvault® NVDIMM을 통해 이중 인라인 메모리 모듈에 NAND 플래시를 최초로 포함시켰습니다. NVDIMM 제품 개발의 일환으로, Netlist는 전력 관리 집적 회로(PMIC)를 활용하는 온모듈 전력 관리 기술을 발명하였습니다.

15.     Netlist의 부하 감소 및 전력 관리 혁신 기술은 시대를 훨씬 앞서는 것이었습니다. Netlist가 해당 기술을 발명한 지 수년 후, 업계는 지난 수년간 주요 고급 서버 메모리 모듈이었던 DDR4 세대 LRDIMM에 Netlist의 분산 완충 아키텍처를

채택하였습니다. 동일한 아키텍처는 DDR5 세대 MRDIMM에도 사용되고 있습니다. 한편, Netlist의 전력 관리 기술은 현재 *모든* DDR5 DIMM에 사용되고 있습니다.

16.    따라서 권리주장특허에서 청구된 발명들은 피신청인들의 제소된 DDR5 DIMM(아래에서 보다 상세히 다룹니다)뿐만 아니라 Netlist 및 그 라이선시인 SK 하이닉스가 제조 및 판매한 DDR5 DIMM(국내산업제품들, 역시 아래에서 보다 상세히 다룹니다)에 구현되어 있습니다.

17.    Netlist는 또한 "고대역폭 메모리" 또는 HBM에 사용되는 혁신적인 솔루션을 개발하여 특허를 취득하였습니다. HBM은 기존의 메모리 모듈과 달리, 상호연결부(또는 "비아(via)")를 사용하여 그 적층 구조를 통해 데이터를 전송하는 다수의 메모리 다이가 여러 층으로 쌓여 이루어진 메모리 장치 패키지를 포함합니다. Netlist는 부하 문제를 완화하면서 고대역폭을 허용하여 최적의 성능을 유지하는 메모리 패키지를 발명하였습니다. Netlist의 HBM 기술은 대량의 데이터를 처리하는 서버에 특히 유용합니다. 해당 특허기술은 Netlist의 라이선시인 SK 하이닉스가 제공하는 HBM 메모리뿐만 아니라 피신청인들이 판매 및 사용하는 HBM 메모리에도 구현되어 있습니다. 이러한 제품들은 아래에서 보다 상세히 다룹니다.

18.    Netlist는 삼성에 대한 두 건을 포함하여 자사의 발명의 상업적 성공을 확인하는 다수의 배심원 평결을 확보하였습니다. 2023년, 텍사스 동부지방법원의 배심원은 삼성이 Netlist의 특허 5건을 고의로 침해하였고 해당 특허들이 무효가 아니라고 인정하여 Netlist에게 3억 315만 달러의 손해배상을 인정하였습니다. *Netlist, Inc. 대 삼성전자 주식회사 외*, 사건번호 2:21-cv-463-JRG, 문서번호 479, 7면(텍사스 동부지방법원, 2023년 4월 21일) *참조*. 2024년, 배심원은 삼성이 Netlist 특허 3건(본 사건에서 주장된 '608 특허 포함)을 고의로 침해하였으며 해당 특허들이 무효가 아니라고 인정하여 Netlist에게 1억 1,800만 달러의 손해배상을 인정하였습니다. *Netlist, Inc. 대 삼성전자 주식회사 외*, 사건번호 2:22-cv-293-JRG, 문서번호 847, 7면(텍사스 동부지방법원, 2024년 11월 22일) *참조*. 그럼에도 불구하고 삼성은 침해행위를 계속하고 있습니다.

19.    또한, 특허심판 및 항고위원회는 권리주장특허 중 3건의 주장된 청구항들의

유효성을 확인하였습니다. *Micron Tech., Inc. 외 대 Netlist, Inc.,* IPR2022-00236, Paper 34, 43–46면(특허심판 및 항고위원회, 2023년 6월 20일) ('035 특허의 청구항 2와 청구항 6의 유효성을 확인함); *삼성전자 주식회사  대 Netlist, Inc.*, IPR2022-00063, Paper 53, 58면 (특허심판 및 항고위원회, 2023년 5월 3일) ('523 특허의 청구항 전부의 유효성을 확인함), *확인됨,* 사건번호 23-2133, 문서번호 44 (연방순회법원, 2025년 3월 5일); *삼성전자 주식회사 대 Netlist, Inc.*, IPR2023-00847, Paper 42, 73면(특허심판 및 항고위원회, 2024년 12월 10일) ('608 특허의 청구항 1–5의 유효성을 확인함), *항소 접수, 사건번호* 25-1378 (연방순회법원, 2025년 1월 21일).

20.    본 제소장과 함께 제출된 청구항 대조표는 JEDEC Solid State Technology Association가 발행한 특정 표준에 포함된 기능에 부분적으로 의존하고 있습니다. 그러나 Netlist는 예정된 피신청인들에 의한 침해를 입증하기 위해 표준 필수성에 의존하지 않습니다. 특히, JEDEC 표준은 침해주장 청구항 중 어느 하나의 모든 제한을 요구하지 않습니다. 따라서 침해주장 청구항 중 어느 것도 표준필수특허가 아닙니다. 오히려 Netlist는 자사의 침해 주장이 피신청인들로부터 증거개시를 통해 획득한, 달리 공개되지 않은 증거에 의해 추가로 확인될 것으로 예상합니다.

## III.    피신청인들

### A.    삼성 피신청인들

21.    정보 및 확신에 의거하면, 삼성전자는 대한민국 법률에 따라 설립되어 존속하는 법인으로서, 대한민국 경기도 수원시 영통구 삼성로 129번지 (우편번호: 443-742)에 주된 사업장을 두고 있습니다. 정보 및 확신에 의거하면, 삼성전자는 SEA 및 SSI의 전 세계 모회사입니다.

22.    정보 및 확신에 의거하면, SEA는 뉴욕주 법률에 따라 설립되어 존속하는 법인입니다. 피고 SEA는 텍사스주 플라노에서 시설(주소: 6625 Excellence Way, Plano, Texas 75023)을 운영하고 있습니다. SEA는 삼성전자의 완전 소유 자회사입니다.

23.    정보 및 확신에 의거하면, SSI는 캘리포니아주 법률에 따라 설립되어

존속하는 법인입니다. 정보 및 확신에 의거하면, 피고 SSI는 텍사스주 플라노에서 시설(주소: 6625 Excellence Way, Plano, Texas 75023)을 운영하고 있습니다. 정보 및 확신에 의거하면, SSI는 SEA의 완전 소유 자회사입니다.

24.    정보 및 확신에 의거하면, 삼성 피신청인들은 권리주장특허 중 하나 이상을 침해하는 특정 DRAM 장치, 이를 포함하는 제품 및 그 구성요소(아래에서 보다 상세히 다룹니다)를 미국으로 수입하거나, 미국으로의 수입을 위해 판매하거나, 수입 후 미국 내에서 판매하고 있습니다. 삼성 피신청인들은 권리주장특허에 대한 어떠한 라이선스도 보유하고 있지 않습니다.

25.    삼성과 Netlist는 2015년 공동개발 및 라이선스 계약("라이선스계약")에 따라 당초 파트너 관계에 있었습니다. 정보 및 확신에 의거하면, 삼성은 DDR4 메모리 모듈과 같은 성숙 시장 및 DDR5와 HBM을 포함한 현재 및 차세대 DRAM 기술 시장에서 제품을 개발하기 위해 Netlist의 기술을 사용하였습니다. 삼성은 라이선스계약에 따라 Netlist에게 특정 메모리 제품을 경쟁력 있는 가격으로 공급할 의무를 부담하였습니다. 그러나 삼성은 그 약속을 이행하지 아니하였고, Netlist의 주문을 반복적으로 이행하지 못하였습니다. 이에 Netlist는 2020년 7월 15일 라이선스계약을 해지하였습니다. 캘리포니아 중부지방법원은 삼성이 라이선스계약을 위반하였으며, 따라서 Netlist의 해지가 유효하다고 확인하였습니다. *Netlist, Inc. 대 삼성전자 주식회사*, 사건번호 8:20-cv-993, 문서번호 766 (캘리포니아 중부지방법원, 2025년 3월 24일).[1] 동 판결에 대해 현재 제9순회항소법원에서 항소심이 진행 중입니다(사건번호 25-5531).

26.    권리주장특허와 관련한 Netlist와 삼성 간의 소송 이력은 섹션 XI에서 더 상세히 기술합니다.

**B.    Google**

27.    정보 및 확신에 의거하면, Google LLC는 Alphabet, Inc.의 완전 소유 자회사로서, 캘리포니아주 마운틴뷰에 본사(주소: 1600 Amphitheatre Parkway, Mountain View,

---

[1] 본 판결은 항소심에서 파기되지 않는 한 기판력을 가집니다.

California 94043)를 두고 있는 델라웨어주 유한책임회사입니다.

28.    정보 및 확신에 의거하면, Google은 다양한 경로를 통해 침해혐의제품을 수입하고 이를 데이터 저장 시설 및 서버를 포함한 다양한 Google 제품 및 서비스에 사용하고 있습니다(아래에서 더 상세히 다룹니다). Google은 권리주장특허에 대한 어떠한 라이선스도 보유하고 있지 않습니다.

29.    Google은 이전에 Netlist의 고객사였습니다. 2003년부터 2006년까지 Netlist는 Google과 계약을 체결하여 Netlist의 독점적 설계에 따라 메모리 모듈을 제작하였습니다. 2006년부터 2007년까지 Google과 Netlist는 일련의 회의를 진행하였으며, 이 회의에서 Netlist는 랭크 곱셈(DxD) 및 부하 감소 DIMM(LRD) 설계를 Google에 제시하였습니다. 2007년 Google은 Netlist에게 Netlist의 제조 시설에서 맞춤형 메모리 모듈을 조립하도록 요청하였습니다. 2008년 Google은 Netlist와 라이선스 계약을 체결하는 대신, Netlist가 제시한 설계를 가져가서 다른 계약업체들로부터 이를 조달하기로 선택하였습니다. 이 무렵에 Netlist는 Google이 자사의 서버에서 Netlist의 기술을 사용하고 있다고 믿을 만한 이유가 있음을 Google에게 통지하였습니다. 이에 대해 Google은 확인판결 소송을 제기하였습니다. *Google Inc. 대* Netlist, *Inc.*, 사건번호 4:08-cv-04144-SBA (캘리포니아 북부지방법원, 2008년 8월 29일).

30.    이후 Netlist는 미국 특허 제7,619,912호의 침해를 이유로 Google을 제소하였습니다. 사건번호 3:09-cv-5718 (캘리포니아 북부지방법원). 구체적으로, Netlist는 Google이 Netlist의 특허 기술을 포함한 컴퓨터 메모리 모듈을 판매, 판매 제안, 제조 및/또는 사용했다고 주장하였으며, 여기에는 Google이 서버 컴퓨터에 사용하기 위해 삼성으로부터 구매한 특정 DDR4 DIMM이 포함됩니다. 이 사건은 현재 텍사스 동부지방법원에 계류 중인 *Netlist, Inc. 대 삼성전자 주식회사 외* 사건번호 2:22-cv-293-JRG의 해결을 기다리며 정지 상태에 있습니다.

31.    Netlist는 또한 삼성이 원래 제기한 확인판결 소송에서의 반소로 델라웨어 지방법원에서 Google을 상대로 '523 특허 침해에 대한 청구를 제기하였습니다. *삼성전자 주식회사 외 대 Netlist, Inc.*, 사건번호 1:21-cv-01453-JLH (델라웨어 지방법원, 2021년 10월

15일). 해당 사건은 현재 삼성과 Netlist 간의 라이선스계약에 관한 캘리포니아 중부지방법원 소송의 해결을 기다리며 정지 상태에 있습니다(상기 언급한 바와 같이 현재 제9순회항소법원에서 항소심이 진행 중입니다).

32.    권리주장특허와 관련하여 과거에 Netlist와 Google 간에 있었던 소송의 연혁에 대해서는 섹션 XI에서 상세히 기술합니다.

### C.    Super Micro

33.    정보 및 확신에 의거하면, Super Micro Computer, Inc.는 델라웨어주 법률에 따라 설립되어 존속하는 법인으로서 캘리포니아 산호세에 주 사업장(주소: 980 Rock Ave., San Jose, CA 95131)을 두고 있습니다.

34.    정보 및 확신에 의거하면, Super Micro는 침해혐의제품을 미국으로 수입하고, 미국으로의 수입을 위해 판매하며, 또는 수입 후 미국 내에서 다양한 채널과 서버 및 저장 시스템을 포함한 다양한 Super Micro 제품을 통해 판매하고 있습니다(아래에서 보다 상세히 다룹니다).  Super Micro는 권리주장특허에 대한 어떠한 라이선스도 보유하고 있지 않습니다.

## IV.    쟁점 기술 및 제품

35.    쟁점 기술은 일반적으로 컴퓨터 시스템에서 사용되는 메모리와 관련됩니다. 다수의 상업용 컴퓨팅 제품들이 메모리 모듈을 활용합니다. 메모리 모듈은 다른 구성요소들 중에서도 특히 메모리 모듈 외부의 호스트 메모리 컨트롤러와 상호작용하도록 설계된 복수의 개별 메모리 장치들(DRAM 패키지 또는 그 일부 등)을 포함하는 인쇄회로기판입니다. 현대의 메모리 모듈들은 종종 DIMM의 형식을 채택합니다. 메모리 모듈상의 메모리 장치들은 일반적으로 "랭크(rank)"로 배열되며, 이는 호스트 시스템의 프로세서 또는 메모리 컨트롤러에 의해 액세스 가능합니다. 메모리 모듈은 일반적으로 컴퓨터 메인보드의 메모리 슬롯에 설치됩니다.

36.    메모리 모듈은 특히 클라우드 기반 컴퓨팅 및 그 밖의 데이터 집약적

애플리케이션을 지원하는 서버용으로 설계되며, PC 및 노트북과 같은 소비자용 애플리케이션에도 사용됩니다. 메모리 모듈은 일반적으로 모듈상의 DRAM 세대(예: DDR5, DDR4, DDR3) 및 모듈 유형(예: UDIMM, SODIMM, RDIMM, LRDIMM, MRDIMM) 등으로 특징지어집니다.

37.    고대역폭 메모리 장치 패키지는 더 높은 속도를 달성하고 전력 소모를 줄이기 위해 DRAM 다이를 수직으로 쌓는 컴퓨터 메모리 인터페이스입니다. 메모리 스택 내의 DRAM 다이들은 다이 상호연결부를 통해 서로 연결되고 베이스 다이(제어 다이라고도 함)에 부착되며, 이는 종종 관통 실리콘 비아("TSV") 형태로 이루어집니다.

38.    위원회 규칙 제210.10조(b)(1) 및 제210.12조(a)(12)에 따르면, 침해혐의제품의 범주는 컴퓨팅 시스템에 사용되는 동적 랜덤 액세스 메모리(DRAM) 장치에 속합니다. DRAM은 컴퓨터 및 서버, 데스크톱, 휴대폰 등의 장치에서 프로세서가 작동 중 신속한 접근을 위해 필요한 데이터와 명령어를 일시적으로 저장하는 주 작업 메모리로 사용됩니다. 구체적으로 이러한 장치로는 DDR5 세대 DIMM과 고대역폭 메모리(HBM)가 있습니다.

**V.    권리주장특허 및 발명의 비기술적 설명[2]**

**A.    '366 특허 및 '731 특허: 전력 관리/신호 보정 기능을 갖춘 메모리 모듈**

39.    '366 특허와 '731 특허는 각각 특정 DDR5 세대 DIMM에 사용되는 전력 관리와 신호 보정 기능에 관한 것입니다.

**1.    미국 특허 제12,373,366호**

---

[2] 본 제소장에 기재된 특허에 대한 모든 비기술적 설명은 해당 특허의 일반적 배경을 설명하기 위한 것입니다. 이러한 기술은 특허청구범위 해석의 목적으로 사용되도록 의도된 것이 아니며, 그러한 용도로 사용되어서는 안 됩니다. Netlist는 청구범위 해석이 불필요하다거나 청구항 용어가 청구범위 해석 판례법리 및 관련 증거에 따라 특정한 방식으로 해석되어야 한다고 주장할 권리를 포기하지 않으면서 그러한 권리에 따라 이러한 설명을 제공합니다.

### a. '366 특허의 식별 및 소유권

40.    '366 특허는 2025년 7월 29일 미국 특허상표청에 의하여 적법하게 발행되었습니다.

41.    '366 특허는 2022년 1월 24일 출원된 출원번호 제17/582,797호로부터 발행되었습니다. '366 특허는 2007년 6월 1일을 우선일로 주장할 권리가 있습니다.

42.    '366 특허는 2028년 6월 2일에 존속기간이 만료됩니다.

43.    '366 특허의 명칭은 "온모듈 전력 관리 기능을 갖춘 메모리"이며, Chi-She Chen, Jeffrey C. Solomon, Scott H. Milton 및 Jayesh Bhakta가 발명자로 등재되어 있습니다.

44.    '366 특허의 진실되고 정확한 사본을 별지 2로 첨부합니다.

45.    '366 특허에 관하여 기재된 발명자들로부터 최종적으로 Netlist에 이르는 특허 양도 기록의 진실되고 정확한 사본을 별지 3으로 첨부합니다.

46.    '366 특허의 심사 연혁에 대한 진실되고 정확한 사본을 부록 A로 첨부합니다.

### b. '366 특허의 해외 대응 특허

47.    별지 14는 '366 특허에 대응하는 각 해외 특허, 각 해외 또는 국내 특허출원(아직 특허로 등록되지 않은 경우), 그리고 거절, 포기 또는 철회된 각 해외 또는 국내 특허출원이 있는 경우 이를 목록화하고, 각 특허출원의 심사 진행상황을 표시하고 있습니다.

48.    '366 특허에 대응하는 기타 해외 또는 국내 특허나 출원으로서 출원, 포기, 철회 또는 거절된 것은 없습니다.

### c. '366 특허의 비기술적 설명

49.    '366 특허는 현대 DDR5 메모리 모듈에서 구현되는 고속 데이터 통신을

가능하게 하는 온모듈 전력 관리 기능을 갖춘 메모리 모듈을 개시하고 청구합니다. 청구된 모듈은 대역폭 및 성능의 상당한 개선을 가능하게 하는 데이터 라인 및 관련 회로의 배치를 포함합니다. 증가된 데이터 속도를 수용하기 위해, 청구된 모듈은 (메모리 모듈이 장착되는 메인 보드가 아닌) 메모리 모듈 자체에서의 전력 관리를 가능하게 하는 회로를 포함합니다. 이러한 온모듈 전력 관리는 보다 정밀한 전압 제어 및 에너지 효율 향상을 가능하게 하며, 이는 현대 컴퓨팅 시스템에서 매우 중요한 요소입니다.

**2.    미국 특허 제10,025,731호**

**a.    '731 특허의 식별 및 소유권**

50.    '731 특허는 2018년 7월 17일 미국 특허상표청에 의해 적법하게 등록되었습니다.

51.    '731 특허는 2015년 5월 18일에 출원된 출원번호 제14/715,491호로부터 발행되었습니다. '731 특허는 2008년 4월 14일을 우선일로 주장할 권리가 있습니다.

52.    '731 특허는 2029년 6월 30일에 존속기간이 만료됩니다.

53.    '731 특허의 명칭은 "부하 격리 및 노이즈 감소를 제공하는 메모리 모듈 및 회로"이며, 이현(Hyun Lee), Jayesh R. Bhakta, Jeffrey C. Solomon, Mario Jesus Martinez, Chi-She Chen이 발명자로 등재되어 있습니다.

54.    '731 특허의 진실되고 정확한 사본을 별지 4로 첨부합니다.

55.    '731 특허에 관하여 기재된 발명자들로부터 최종적으로 Netlist에 이르는 특허 양도 기록의 진실되고 정확한 사본을 별지 5로 첨부합니다.

56.    '731 특허의 심사 연혁에 대한 진실되고 정확한 사본을 부록 B로 첨부합니다.

**b.    '731 특허의 외국 대응 특허**

57.    별지 14는 '731 특허에 대응하는 각 해외 특허, 각 해외 또는 국내

특허출원(아직 특허로 등록되지 않은 경우), 그리고 거절, 포기 또는 철회된 각 해외 또는 국내 특허출원이 있는 경우 이를 목록화하고, 각 특허출원의 심사진행상황을 표시하고 있습니다.

58.    '731 특허에 대응하는 기타 해외 또는 국내 특허나 출원으로서 출원, 포기, 철회 또는 거절된 것은 없습니다.

### c.    '731 특허의 비기술적 설명

59.    '731 특허는 모듈의 메모리 장치와 주고받는 신호를 교정하기 위해 각각 최소 하나 이상의 프로그램화 할 수 있는 임피던스 불일치 회로를 포함하는 신호 교정 회로를 포함하는 메모리 모듈을 개시하고 청구합니다. 청구된 교정 회로는 시스템의 임피던스 불일치로 인한 신호 노이즈를 감소시켜, 청구된 메모리 모듈이 고속 데이터 전송률에서 안정적이고 신뢰성 있는 신호를 제공할 수 있게 합니다.

### B.    '608 특허, '523 특허 및 '035 특허: 데이터 버퍼링 기능을 갖춘 메모리 모듈

60.    '608 특허, '523 특허 및 '035 특허는 메모리 모듈의 성능 및 신뢰성을 향상시키는 데이터 버퍼링 구성에 관한 것으로, DDR5 세대 MRDIMM에서 사용됩니다.

### 1.    미국 특허 제10,268,608호

### a.    '608 특허의 식별 및 소유권

61.    '608 특허는 2019년 4월 23일 미국 특허상표청에 의해 적법하게 등록되었습니다.

62.    '608 특허는 2017년 11월 21일 출원된 출원번호 제15/820,076호로부터 발행되었습니다. '608 특허는 2012년 7월 27일을 우선일로 주장할 권리가 있습니다.

63.    '608 특허는 2033년 7월 27일에 존속기간이 만료됩니다.

64.    '608 특허의 명칭은 "분산형 데이터 버퍼에서 타이밍 제어된 데이터 경로를

갖는 메모리 모듈"이며, 이현(Hyun Lee)과 Jayesh R. Bhakta가 발명자로 등재되어 있습니다.

65.    '608 특허의 진실되고 정확한 사본을 별지 6으로 첨부합니다.

66.    '608 특허에 관하여 기재된 발명자들로부터 최종적으로 Netlist에 이르는 특허 양도 기록의 진실되고 정확한 사본을 별지 7로 첨부합니다.

67.    '608 특허의 심사 연혁에 대한 진실되고 정확한 사본을 부록 C로 첨부합니다.

**b.    '608 특허의 해외 대응 특허**

68.    별지 14는 '608 특허에 대응하는 각 해외 특허, 각 해외 또는 국내 특허출원(아직 특허로 등록되지 않은 경우), 그리고 거절, 포기 또는 철회된 각 해외 또는 국내 특허출원이 있는 경우 이를 목록화하고, 각 특허출원의 심사진행상황을 표시하고 있습니다.

69.    '608 특허에 대응하는 기타 해외 또는 국내 특허나 출원으로서 출원, 포기, 철회 또는 거절된 것은 없습니다.

**c.    '608 특허의 비기술적 설명**

70.    '608 특허는 "격리 장치"("데이터 버퍼" 또는 "버퍼 회로"라고도 함)를 포함하는 메모리 모듈을 개시하고 청구합니다. 이러한 버퍼 회로는 온모듈 메모리 장치(예: DRAM)를 메모리 컨트롤러로부터 전기적으로 격리함으로써, 신호 무결성이나 데이터 속도를 저하시키지 않으면서 메모리 모듈에 추가 메모리 장치를 포함시켜 더 높은 용량을 구현할 수 있게 합니다. 청구된 메모리 모듈의 구성요소 배치 및 온보드 지능의 혁신적 구성은 해당 모듈이 더 높은 메모리 동작 속도와 더 큰 메모리 밀도를 갖는 차세대 시스템에서 읽기 및 쓰기 작업의 타이밍을 관리할 수 있도록 합니다.

**2.    미국 특허 제10,217,523호**

**a.    '523 특허의 식별 및 소유권**

71.    '523 특허는 2019년 2월 26일 미국 특허상표청에 의해 적법하게 발행되었습니다.

72.    '523 특허는 2014년 3월 29일 출원된 출원번호 제14/229,844호로부터 발행되었습니다. '523 특허는 2008년 4월 14일을 우선일로 주장할 권리가 있습니다.

73.    '523 특허는 2029년 10월 9일에 존속기간이 만료됩니다.

74.    '523 특허의 명칭은 "데이터 핸들러를 구비한 다중 모드 메모리 모듈"이며, 이현(Hyun Lee), 최순주(Soonju Choi), Jayesh R. Bhakta가 발명자로 등재되어 있습니다.

75.    '523 특허의 진실되고 정확한 사본을 별지 8로 첨부합니다.

76.    '523 특허에 관하여 기재된 발명자들로부터 최종적으로 Netlist에 이르는 특허 양도 기록의 진실되고 정확한 사본을 별지 9로 첨부합니다.

77.    '523 특허의 심사 연혁에 대한 진실되고 정확한 사본을 부록 D로 첨부합니다.

**b.    '523 특허의 해외 대응 특허**

78.    별지 14는 '523 특허에 대응하는 각 해외 특허, 각 해외 또는 국내 특허출원(아직 특허로 등록되지 않은 경우), 그리고 거절, 포기 또는 철회된 각 해외 또는 국내 특허출원이 있는 경우 이를 목록화하고, 각 특허출원의 심사진행상황을 표시하고 있습니다.

79.    '523 특허에 대응하는 기타 해외 또는 국내 특허나 출원으로서 출원, 포기, 철회 또는 거절된 것은 없습니다.

**c.    '523 특허의 비기술적 설명**

80.    '523 특허는 두 가지 동작 모드(예: 테스트 모드 및 정상 동작 모드)를 지원하는 메모리 모듈을 위한 새로운 아키텍처를 개시하고 청구합니다. 청구된 모듈은 데이터 모듈(또는 버퍼(buffer)) 및 별도의 제어 모듈을 이용합니다. 모듈이 테스트 모드에서

동작할 때, 데이터 모듈은 메모리 장치와 메모리 컨트롤러를 격리하고 데이터 패턴을 제공하며, 제어 모듈은 주소 및 제어 신호를 제공합니다. 제어 및 데이터 처리의 분리는 시스템을 종래 기술의 테스트 접근법보다 더욱 모듈화되고 (따라서 더욱 유연하게) 만들며, 또한 데이터 모듈의 구성요소를 데이터를 읽고 쓰는 메모리 장치에 근접하게 배치할 수 있도록 하여 테스트 기능의 신뢰성을 향상시킵니다.

**3.    미국 특허 제9,824,035호**

**a.    '035 특허의 식별 및 소유권**

81.    '035 특허는 2017년 11월 21일 미국 특허상표청에 의해 적법하게 발행되었습니다.

82.    '035 특허는 2017년 2월 7일에 출원된 출원번호 15/426,064로부터 발행되었습니다. '035 특허는 2012년 7월 27일을 우선일로 주장할 권리가 있습니다.

83.    '035 특허는 2033년 7월 27일에 존속기간이 만료됩니다.

84.    '035 특허의 명칭은 "분산형 데이터 버퍼에서 타이밍 제어된 데이터 경로를 갖는 멀티모드 메모리 모듈"이며, 이현(Hyun Lee)과 Jayesh R. Bhakta가 발명자로 등재되어 있습니다.

85.    '035 특허의 진실되고 정확한 사본을 별지 10으로 첨부합니다.

86.    '035 특허에 관하여 기재된 발명자들로부터 최종적으로 Netlist에 이르는 특허 양도 기록의 진실되고 정확한 사본을 별지 11로 첨부합니다.

87.    '035 특허의 심사 연혁에 대한 진실되고 정확한 사본을 부록 E로 첨부합니다.

**b.    '035 특허의 해외 대응 특허**

88.    별지 14는 '035 특허에 대응하는 각 해외 특허, 각 해외 또는 국내 특허출원(아직 특허로 등록되지 않은 경우) 그리고 거절, 포기 또는 철회된 각 해외 또는

국내 특허출원이 있는 경우 이를 목록화하고, 각 특허출원의 심사진행상황을 표시하고 있습니다.

89.       '035 특허에 대응하는 기타 해외 또는 국내 특허나 출원으로서 출원, 포기, 철회 또는 거절된 것은 없습니다.

### c.       '035 특허의 비기술적 설명

90.       '035 특허는 "격리 장치"("데이터 버퍼" 또는 "버퍼 회로"라고도 함)를 포함하는 메모리 모듈을 개시하고 청구합니다. 이러한 버퍼 회로는 온모듈 메모리 장치(예: DRAM)를 메모리 모듈의 데이터 입출력 핀으로부터 전기적으로 격리함으로써, 신호 무결성이나 속도를 저하시키지 않으면서 메모리 모듈에 추가적인 메모리 장치를 포함시켜 더 높은 용량을 구현할 수 있도록 합니다. 청구된 메모리 모듈의 구성요소 배치 및 온보드 지능의 혁신적 구성은 해당 모듈로 하여금 더 높은 메모리 동작 속도와 더 큰 메모리 밀도를 갖는 차세대 시스템에서 읽기 및 쓰기 작업의 타이밍을 관리할 수 있게 합니다.

### C.       미국 특허 제12,308,087호: 고대역폭 메모리

### 1.       '087 특허의 식별 및 소유권

91.       '087 특허는 2025년 5월 20일 미국 특허상표청에 의해 적법하게 발행되었습니다.

92.       '087 특허는 2022년 3월 14일 출원된 출원번호 17/694,649로부터 등록되었습니다. '087 특허는 2010년 11월 3일을 우선일로 주장할 권리가 있습니다.

93.       '087 특허는 2031년 11월 3일에 존속기간이 만료됩니다.

94.       '087 특허의 명칭은 "적층 배열 다이 및 감소된 드라이버 부하를 갖는 메모리 패키지"이며, 이현(Hyun Lee)가 발명자로 등재되어 있습니다.

95.       '087 특허의 진실되고 정확한 사본을 별지 12로 첨부합니다.

96.       '087 특허에 관하여 기재된 발명자들로부터 최종적으로 Netlist에 이르는

특허 양도 기록의 진실되고 정확한 사본은 이 별지 13으로 첨부합니다.

97.    '087 특허의 심사 연혁에 대한 진실되고 정확한 사본을 부록 F로 첨부합니다.

## 2.    '087 특허의 해외 대응 특허

98.    별지 14는 '087 특허에 대응하는 각 해외 특허, 각 해외 또는 국내 특허출원(아직 특허로 등록되지 않은 경우) 그리고 거절, 포기 또는 철회된 각 해외 또는 국내 특허출원이 있는 경우 이를 목록화하고, 각 특허출원의 심사진행상황을 표시하고 있습니다.

99.    '087 특허에 대응하는 기타 해외 또는 국내 특허나 출원으로서 출원, 포기, 철회 또는 거절된 것은 없습니다.

## 3.    '087 특허의 비기술적 설명

100.    '087 특허는 Netlist의 HBM 기술에 사용되는 적층 다이 및 상호연결의 혁신적인 배열을 개시하고 청구합니다. 종래의 DRAM 패키지는 종종 플라스틱 또는 세라믹 "패키지"에 수용된 단일 실리콘 칩(또는 "다이(die)")으로 구성됩니다. 개별 메모리 장치의 용량을 증가시키기 위해, 메모리 제조업체들은 각 DRAM이 DRAM 회로의 주변부를 따라 길게 늘어진 전선과 같은 외부 연결을 통해 외부 장치(예: 호스트)와 인터페이스하는 단일 DRAM 패키지에 복수의 다이를 "적층"하기 시작하였습니다. 그러나 이러한 외부 연결로 인해 발생하는 높은 전기적 부하는 성능에 부정적인 영향을 미쳤습니다. TSV와 같은 내부 연결은 부하를 줄이는 데 도움이 되었으나, 여전히 고속에서 높은 메모리 용량을 허용하지는 못하였습니다. 이러한 문제를 해결하기 위해, Netlist는 메모리가 높은 대역폭으로 작동하면서 부하 문제를 완화하고 최적의 성능을 유지할 수 있도록 하는 적층 다이와 상호연결의 혁신적인 구성을 고안하였습니다. Netlist의 HBM 기술은 특히 대량의 데이터를 처리하는 서버에 유용합니다.

## VI.    라이선스

101.    하나 이상의 권리주장특허에 대한 라이선시의 식별 정보는 비공개 문서인

별지 15C에 기재되어 있습니다.

## VII.  피신청인들의 권리주장특허 침해

102.  위에서 언급한 바와 같이, 침해혐의제품은 권리주장특허의 하나 이상의 청구항을 침해하는 특정 DRAM 장치, 이를 포함하는 제품 및 그 구성요소입니다. 권리주장특허 중 하나 이상에서 적어도 하나의 청구항을 실시하는 침해혐의제품의 예시 목록을 별지 1로 첨부합니다.[3] 별지 16 내지 별지 21로 첨부된 대표적인 청구항 대조표는 침해혐의제품이 각 권리주장특허의 적어도 하나의 청구항을 실시함을 입증합니다.

### A.  미국 특허 제12,373,366호의 침해

103.  피신청인들은 침해혐의제품을 수입하거나, 수입을 위해 침해혐의제품을 판매하거나, 수입 후 미국 내에서 침해혐의제품을 판매함으로써, 최소한 '366 특허의 청구항 1, 2, 11, 12, 14, 15 및 16의 문언상 침해가 성립되거나 균등론에 따라 침해가 성립됩니다.

104.  '366 특허의 독립 청구항 1을 대표적인 침해혐의제품과 비교한 예시 청구항 대조표를 별지 16으로 첨부합니다.

### B.  미국 특허 제10,025,731호의 침해

105.  피신청인들은 침해혐의제품을 수입하거나, 수입을 위해 침해혐의제품을 판매하거나, 수입 후 미국 내에서 침해혐의제품을 판매함으로써, 최소한 '731 특허의 청구항 1 내지 3, 6 내지 18의 문언상 침해가 성립되거나 균등론에 따라 침해가 성립됩니다.

106.  '731 특허의 독립 청구항 1을 대표적인 침해혐의제품과 비교한 예시 청구항 대조표를 별지 17C로 첨부합니다.

### C.  미국 특허 제10,268,608호의 침해

---

[3] 침해혐의제품의 샘플은 조사 진행 과정에서 제출할 예정입니다.

107.    피신청인들은 침해혐의제품을 수입하거나, 수입을 위해 침해혐의제품을 판매하거나, 수입 후 미국 내에서 침해혐의제품을 판매함으로써, 최소한 '608 특허의 청구항 1 내지 청구항 5의 문언상 침해가 성립되거나 균등론에 따라 침해가 성립됩니다.

108.    '608 특허의 독립 청구항 1과 대표적인 침해혐의제품을 비교한 예시 청구항 대조표를 별지 18C로 첨부합니다.

**D.    미국 특허 제10,217,523호의 침해**

109.    피신청인들은 침해혐의제품을 수입하거나, 수입을 위해 침해혐의제품을 판매하거나, 수입 후 미국 내에서 침해혐의제품을 판매함으로써, 최소한 '523 특허의 청구항 1, 15, 17 및 18의 문언상 침해가 성립되거나 균등론에 따라 침해가 성립됩니다.

110.    '523 특허의 독립 청구항 1과 대표적인 침해혐의제품을 비교한 예시 청구항 대조표를 별지 19C로 첨부합니다.

**E.    미국 특허 제9,824,035호의 침해**

111.    피신청인들은 침해혐의제품을 수입하거나, 수입을 위해 침해혐의제품을 판매하거나, 수입 후 미국 내에서 침해혐의제품을 판매함으로써, 최소한 '035 특허의 청구항 2와 청구항 6의 문언상 침해가 성립되거나 균등론에 따라 침해가 성립됩니다.

112.    '035 특허의 종속 청구항 2와 대표적인 침해혐의제품을 비교한 예시 청구항 대조표를 별지 20C로 첨부합니다.

**F.    미국 특허 제12,308,087호의 침해**

113.    피신청인들은 침해혐의제품을 수입하거나, 수입을 위해 침해혐의제품을 판매하거나, 수입 후 미국 내에서 침해혐의제품을 판매함으로써, 최소한 '087 특허의 청구항 1, 2, 5, 7, 8, 13, 17, 18, 20, 22 및 23의 문언상 침해가 성립되거나 균등론에 따라 침해가 성립됩니다.

114.    '087 특허의 독립 청구항 1과 대표적인 침해혐의제품을 비교한 예시 청구항

대조표를 별지 21로 첨부합니다.

### G.    간접 침해

115.    정보 및 확신에 의거하면, 피신청인들은 침해를 유도하고 이에 기여함으로써 권리주장특허들을 간접적으로 침해하고 있습니다. 정보 및 확신에 의거하면, 피신청인들은 최소한 본 제소장의 제출과 권리주장특허들이 관련된 미국 텍사스주 동부지방법원 및 미국 델라웨어주 연방지방법원에서의 소송을 통하여 권리주장특허들에 대한 실제적 인식을 가지고 있습니다.

116.    정보 및 확신에 의거하면, 피신청인들은 미국 내에서 1인 이상으로 하여금 해당 물품의 미국 수입 중 또는 그 이후에 침해혐의제품 중 하나 이상을 제조, 사용(시험 포함), 판매 또는 판매 제안하도록 장려, 지시 및 지원함으로써, 권리주장특허들을 직접 침해하는 방식으로 침해혐의제품 중 하나 이상의 사용자들로 하여금 권리주장특허의 하나 이상의 청구항을 직접 침해하도록 고의적이고 의도적으로 유도하고 있습니다.

117.    정보 및 확신에 의거하면, 피신청인들은 발명의 중요한 부분을 구성하는 것으로, 특허 공정을 실시하는 데 사용되는 특허 구성요소, 재료 또는 장치가 침해 행위에 사용되도록 특별히 제조되거나 특별히 개조되었다는 사실과, 실질적인 비침해 용도로 적합한 표준품 또는 상업용 상품이 아니라는 사실을 알면서 이를 판매제안, 판매 또는 수입함으로써 권리주장특허들의 침해에 기여합니다.

## VIII.   부당한 수입 및 판매의 구체적 사례

118.    정보 및 확신에 의거하면, 침해혐의제품은 해외에서 제조된 후 피신청인들에 의해 또는 그 대리인에 의해 미국으로의 수입을 위해 판매되거나, 피신청인들에 의해 또는 그 대리인에 의해 미국으로 수입되거나, 수입 후 피신청인들에 의해 또는 그 대리인에 의해 판매되고 있습니다.

119.    삼성의 침해혐의제품들은 다음과 같습니다:

- 다음을 포함하는 삼성의 DDR5 세대 DIMM:

   o   Registered Dual In-line Memory Module (RDIMM)

   o   Multi-Ranked Buffered Dual In-Line Memory Module 또는 Multiplexed
       Rank Dual In-line Memory Module (MCRDIMM/MRDIMM)

   o   Small Outline Dual In-Line Memory Module (SODIMM)

   o   Un-buffered Dual In-Line Memory Module (UDIMM)

- 삼성의 HBM2/2E, HBM3/3E 및 HBM4/4E 고대역폭 메모리 패키지(high
  bandwidth memory: HBM)

120.    정보 및 확신에 의거하면, 삼성 피신청인들은 자사 웹사이트를 포함한 다양한
경로를 통해 침해혐의제품 DIMM을 판매하고 있습니다. *예컨대,* 별지 22 *참조.* 정보 및
확신에 의거하면, 삼성 DIMM 중 어느 것도 미국에서 제조되고 있지 않습니다.

121.    상기 삼성 웹사이트에서 추출한 현재 이용 가능한 DDR5 RDIMM, SODIMM
및 UDIMM의 목록을 별지 23으로 첨부합니다.

122.    별지 24와 별지 25에는 각각 부품 번호 M321R8GA0BB0-CQKDS 및
M321R8GA0PB2-CCPWF인 침해혐의제품 DDR5 RDIMM의 국내 구매 영수증이 포함되어
있습니다. 구매된 DDR5 RDIMM은 각각 필리핀과 한국에서 제조된 것으로 표시되어
있습니다. *앞의 문서.* 주문 및 선적 서류는 해당 제품들이 미국 내 주소로 선적되었음을
나타내며, 이는 삼성 피신청인들이 해당 제품을 수입하거나, 수입을 위해 판매하거나, 수입
후 미국 내에서 판매하고 있음을 입증합니다. *앞의 문서.*

123.    정보 및 확신에 의거하면, 삼성은 2024년 6월 고성능 컴퓨팅 애플리케이션을
위한 DDR5 MRDIMM 제품인 Multi-Ranked Buffered Dual In-Line Memory Module
(MCRDIMM)을 출시하였습니다. 별지 26 *참조.*

124.    별지 27에는 부품 번호 M327R8GA0EB0-CLVXB인 침해혐의제품 DDR5
MRDIMM의 국내 구매 영수증이 포함되어 있습니다. 구매된 DDR5 MRDIMM은 한국에서
제조된 것으로 표시되어 있습니다. *앞의 문서.* 주문 및 선적 서류는 해당 제품이 미국 내

주소로 선적되었음을 나타내며, 이는 삼성 피신청인들이 해당 제품을 수입하거나, 수입을 위해 판매하거나, 수입 후 미국 내에서 판매하고 있음을 입증합니다. *앞의 문서*.

125.     정보 및 확신에 의거하면, 삼성 피신청인들은 자사 웹사이트를 포함한 다양한 경로를 통해 GPU 및 서버와 같은 고성능 컴퓨팅 부품 제조업체에 침해혐의제품 HBM을 대량으로 직접 판매하고 있습니다. *예컨대*, 별지 28 *참조*. 정보 및 확신에 의거하면, 삼성 HBM 중 어느 것도 미국에서 제조되지 않습니다.

126.     상기 삼성 웹사이트에서 추출한 현재 이용 가능한 HBM2/2E 및 HBM3/3E 고대역폭 메모리 목록을 별지 29로 첨부합니다.

127.     정보 및 확신에 의거하면, 삼성은 2025년 8월 5일부터 7일까지 캘리포니아주 산호세의 산타클라라 컨벤션센터에서 개최된 Future Memory & Storage (FMS) 행사에서 HBM4/4E 제품을 전시하였습니다. 별지 30 *참조*.

128.     정보 및 확신에 의거하면, 삼성 HBM3/3E와 HBM4/4E는 현재 캘리포니아주 산타클라라에서 Nvidia와 함께 적격성 시험을 진행 중이며, 이달 초 삼성의 12단 HBM3E가 NVIDIA 적격성 시험을 통과하였다고 보고되었습니다. *예컨대*, 별지 31; 별지 32 *참조*.

129.     Google은 삼성으로부터 침해혐의제품을 직접 또는 간접적으로 수입하여 데이터 저장 시설 및 서버를 포함한 다양한 Google 제품 및 서비스에 사용합니다. 예컨대, 정보 및 확신에 의거하면, Google의 5세대, 6세대 및 7세대 텐서 프로세싱 유닛(TPU)은 삼성의 침해혐의제품인 HBM2, HBM2E, HBM3E 및 HBM4 고대역폭 메모리 패키지를 사용하고 있습니다. 별지 33("Google, 텐서 프로세싱 유닛(TPU) 투자 본격화로 삼성 HBM의 두 번째 최대 구매자로 부상 전망") *참조*. 또한, 정보 및 확신에 의거하면, Google Cloud Platform(GCP) 가상 머신 서비스는 컴퓨팅 최적화된 C4 가상 머신 시리즈에서 Intel Xeon 6 프로세서를 사용하고 있으며, 이는 삼성의 침해혐의제품인 DDR5 RDIMM과 MRDIMM을 사용합니다. 별지 34 *참조*. 정보 및 확신에 의거하면, Google은 삼성으로부터 이러한 침해혐의제품을 구매하고, 이를 수입하여 이러한 Google 제품 및 서비스에 사용하고 있습니다.

130.    Super Micro는 삼성으로부터 침해혐의제품을 직접 또는 간접적으로 수입하여 이를 서버 및 저장 시스템을 포함한 다양한 Super Micro 제품에 통합합니다. 예를 들어, 정보 및 확신에 의거하면, Super Micro의 H13 및 H14 GPU 최적화 서버는 삼성의 HBM3 및 HBM3E 고대역폭 메모리를 포함한 AMD의 Instinct 가속기(MI300X/MI325X/MI350X)로 구성될 수 있습니다. 별지 35(AS-8126GS-TNMR 데이터시트); 별지 36(AS-8125GS-TNMR2 데이터시트); 별지 37("삼성의 HBM3 메모리가" "AMD의 MI300X AI 가속기에 탑재되어 있습니다"); 별지 38("AMD Instinct MI350X와 MI355X GPU"는 "삼성전자"의 "288GB HBM3E"를 사용합니다) *참조.* 또한, 정보 및 확신에 의거하면, Intel의 Xeon® 6 6900 시리즈 프로세서를 탑재한 Super Micro의 Hyper SuperServer SYS-212HA-TN은 삼성 DDR5 RDIMM 또는 삼성 DDR5 MRDIMM으로 구성될 수 있습니다. 별지 39(Hyper SuperServer SYS-212HA-TN 데이터시트); 별지 40(이 제품은 "Intel® Xeon® 6900 시리즈 프로세서"를 사용합니다); 별지 41(삼성의 "향후 출시될 MRDIMM"은 "인텔의 Xeon 6 플랫폼과 호환될 예정"임을 언급) *참조.* 정보 및 확신에 의거하면, Super Micro는 삼성으로부터 이러한 침해혐의제품을 구매하고, 이를 수입하여 이러한 Super Micro 제품에 사용하고 있습니다.

## IX.    통합관세표 번호

131.    침해혐의제품은 미국 통합관세표의 최소한 다음 세분류에 따라 분류됩니다: 8473.30.11.40 및 8542.32.00.36. 이러한 분류에 따르는 것은 본질적으로 예시적인 것일 뿐이며, 위원회가 명령하는 배제명령이나 기타 구제수단의 범위를 제한하려는 의도는 아닙니다.

## X.    권리주장특허와 관련된 국내 산업

132.    19 U.S.C. § 1337(a)(2)에 명시되어 있고 19 U.S.C. § 1337(a)(3)에 정의된 바와 같이, 다음 Netlist 및 SK 하이닉스 제품들에 대한 국내 산업이 존재하며, 이 제품들은 권리주장특허에 의해 보호를 받습니다:

| 권리주장특허 | 기존 국내산업제품 |
|---|---|

| '366 특허 | • Netlist의 DDR5 VLP RDIMM |
| | • Netlist의 Lightning DDR5 RDIMM |
| | • SK 하이닉스의 RDIMM/MRDIMM |
| '731 특허 | • Netlist의 DDR5 VLP RDIMM |
| | • Netlist의 Lightning DDR5 RDIMM |
| | • SK 하이닉스의 RDIMM/MRDIMM |
| '608 특허 | • SK 하이닉스의 MRDIMM |
| '035 특허 | • SK 하이닉스의 MRDIMM |
| '523 특허 | • SK 하이닉스의 MRDIMM |
| '087 특허 | • SK 하이닉스의 HBM |

## A.    기술적 요소

133.    권리주장특허 중 하나 이상에서 최소한 하나의 청구항을 실시하는 국내산업제품 목록은 상기 표와 같습니다. 별지 42 내지 별지 47로 첨부된 대표적인 청구항 대조표는 국내산업제품이 각 권리주장특허의 최소한 하나의 청구항을 실시하고 있음을 입증합니다.[4]

134.    조사 과정에서 국내산업제품의 샘플을 제출할 예정입니다.

## B.    경제적 요소

135.    권리주장특허 각각에 대하여 19 U.S.C. § 1337(a)(3)(A), (B) 및 (C)에 따른 국내 산업이 존재하며, 이는 Netlist 및/또는 그 라이선시인 SK 하이닉스의 공장, 장비, 노동력 및 자본에 대한 지속적이고 상당한 국내 투자와 연구, 개발 및 엔지니어링을 통한 권리주장특허의 실시에 대한 지속적이고 실질적인 국내 투자에 기초합니다. Netlist는

---

[4] 국내산업제품은 침해주장특허의 추가 청구항에 의해 보호되며, Netlist는 명시적으로 도표화된 청구항 이외의 청구항을 통해 국내 산업 요건의 기술적 요소를 확립할 수 있습니다.

2021년 이후 국내산업제품의 개발 및 제조, 시장 출시, 그리고 지속적인 기술 개발을 통한 성공 유지를 위해 수천만 달러를 투자하였습니다. 마찬가지로 SK 하이닉스는 최소한 인건비 및 시설비용을 포함하여 미국 내에서 상당한 투자를 하고 있습니다.[5]

### 1.    Netlist의 국내 활동

136.    Netlist는 국내산업제품을 포함하여 권리주장특허를 실시하는 기술 및 물품과 관련하여 상당하고 실질적인 투자를 행하였으며, 현재도 계속하여 이를 수행하고 있습니다. 실제로, 행정법판사는 Netlist가 미국 내 상당한 국내 투자를 바탕으로 국내 산업을 확립하였다고 이전에 두 차례 판단하였습니다. *특정 메모리 모듈 및 그 구성요소 조사 사건번호 337-TA-1089*, 예비판정, 139-56면 (2019년 10월 19일); *특정 메모리 모듈 및 그 구성요소 조사 사건번호 337-TA-1023*, 예비판정, 153–65면 (2017년 11월 14일) *참조*. 이러한 투자는 본 건에서 주장된 여러 건의 권리주장특허에서 청구된 기술의 기반이 된 이전 세대 Netlist 제품과 관련된 것이었습니다.

### a.    시설에 대한 상당한 투자

137.    Netlist는 국내산업제품과 관련된 엔지니어링, 판매 및 마케팅 활동을 위한 시설비용에 상당한 금액을 지출하였고, 현재도 계속 지출하고 있습니다. 2021년 이후 Netlist의 시설비용은 수백만 달러의 비용을 차지하고 있습니다. 국내산업제품별 Netlist의 상당한 투자에 관한 상세한 기밀정보는 비공개 문서 별지 48C, Gail Sasaki 진술서에 기재되어 있습니다.

### b.    상당한 노동력 고용

138.    Netlist는 국내산업제품과 관련된 국내 노동력에 상당한 금액을 지출하였고, 현재도 계속 지출하고 있습니다. 예를 들어, 2021년 이후 Netlist는 엔지니어링, 영업 및 마케팅 직원들을 고용하였고, 이들은 국내산업제품의 개발 및 판매에 기여해 왔습니다. 2021년 이후 Netlist의 영업 및 마케팅 지출은 수백만 달러의 비용을 차지하였습니다.

---

[5] Netlist는 SK 하이닉스가 국내 산업과 관련된 정보를 구하는 제3자 증거개시에 협조할 것으로 기대하고 있습니다.

국내산업제품별 Netlist의 상당한 투자에 관한 상세한 기밀정보는 비공개 문서 별지 48C, Gail Sasaki 진술서에 기재되어 있습니다.

### c.    특허 실시에 대한 상당한 투자

139.    위에서 설명한 시설 및 인건비와 관련된 지출은 Netlist의 국내산업제품의 연구개발 및 엔지니어링에 대한 미국 내 투자로도 설명될 수 있습니다. 할당된 비용은 국내산업제품의 설계 및 개발을 위한 Netlist의 노력과 국내산업제품 및 해당 제품에 포함된 Netlist의 특허기술에 대한 연구 및 시장 구축과 관련이 있습니다.

### 2.    라이선시 SK 하이닉스의 국내 활동

140.    SK 하이닉스는 미국에서 HBM, MRDIMM 및 RDIMM을 판매하고 있습니다. 2025년 6월 23일부터 26일까지 라스베이거스에서 개최된 HPE Discover 컨퍼런스에서 SK 하이닉스는 12단 HBM4 및 12단 HBM3E 제품과 RDIMM 및 MRDIMM 기술을 선보였습니다. 별지 49.

141.    미국은 SK 하이닉스의 주요 시장입니다. SK 하이닉스는 2025 회계연도 첫 3개월 동안 미국에서 12조 8,000억 원(91억 달러)의 매출을 기록하였으며, 이는 해당 기간 전 세계 매출의 72.5%에 해당하였습니다. 별지 50, 42면; 별지 51; 별지 52(2025년 1월부터 6월까지 국내 매출 200억 2,000만 달러를 보고함)도 *참조*.

142.    SK 하이닉스 매출의 상당 부분은 SK 하이닉스에 라이선스된 권리주장특허 중 최소한 하나를 실시하는 제품에서 발생합니다. 2025 회계연도 2분기에 SK 하이닉스는 매출의 77%가 DRAM 판매에서 발생하였으며, *그 중 상당 부분이 HBM 판매였다고* 보고하였습니다. 별지 53, 15면. SK 하이닉스는 향후 HBM 판매가 전년 대비 두 배 증가할 것으로 예상한다고 발표하였습니다. *앞의 문서* 11면.

143.    SK 하이닉스는 국내산업제품과 관련된 국내 노동력 및 자본에 상당한 금액을 지출하였고, 현재도 계속 지출하고 있습니다. SK 하이닉스는 미국에서 7,000명 이상을 고용하고 있다고 밝혔습니다. 별지 54. 이는 전 세계 총 직원의 약 15%에 해당합니다. 별지

55 (총 직원 46,863명).

144.    SK 하이닉스는 국내산업제품과 관련된 국내 시설 및 장비에 상당한 금액을 지출하였고, 현재도 계속 지출하고 있습니다. SK 하이닉스는 캘리포니아주 산호세의 R&D 및 영업시설과 워싱턴주 시애틀, 텍사스주 오스틴, 텍사스주 휴스턴, 노스캐롤라이나주 롤리의 영업사무소를 포함하여 미국 내 여러 시설을 운영하고 있습니다. 별지 55.

145.    SK 하이닉스는 또한 2024년 인디애나주 웨스트라파예트에서 칩 패키징 시설에 38억 7천만 달러를 투자하여 2028년 가동 예정이라고 발표하였습니다. 별지 56. SK 하이닉스는 신규 시설을 통해 HBM 생산라인과 첨단 패키징 연구개발 시설을 구축할 계획입니다. *앞의 문서; 또한 별지 57 참조.* SK 하이닉스는 인디애나주에 반도체 패키징 생산기지 구축을 위한 투자의 일환으로 CHIPS 및 과학법에 따라 최대 4억 5,800만 달러의 직접 자금 지원과 5억 달러의 대출 제안에 대한 접근권을 부여받았습니다. 별지 56. 신규 시설은 수백 개의 건설 일자리 외에도 약 1,000개의 일자리를 창출할 것으로 예상됩니다. *앞의 문서.*

146.    CHIPS 프로그램에 따른 자금 지원을 받기 위한 절차의 일환으로, SK 하이닉스는 상무부에 다음과 같은 내용의 진술서를 제출하였습니다: (i) "SK 하이닉스의 미국 반도체 생태계 내 '업스트림(upstream)' 활동은 2016년부터 2020년까지 연평균 약 90억 달러의 매출 활동과 약 50억 달러의 GDP를 창출하였고, 미국 내에서 46,000개 이상의 일자리를 지원하였으며" (ii) "2016년부터 2020년까지 연평균 SK 하이닉스 제품은 1,160억 달러의 경제 활동과 700억 달러의 GDP를 창출하는 '다운스트림(downstream)' 활동을 가능하게 하였고, 미국 내에서 696,000개 이상의 일자리를 지원하였습니다." 별지 58, 2면 (상무부 제출서류).

* * *

147.    상기 국내 투자는 절대적 측면과 Netlist의 전체 운영 대비 상대적 측면 모두에서 제337조에 따라 중대하고 실질적입니다. 국내 투자 및 활동은 또한 국내산업제품과 관련하여 Netlist의 국내 사업에 필수적이며 상당한 부가가치를 나타냅니다. SK 하이닉스의 국내 투자 역시 절대적 및 상대적 측면 모두에서 중대하고

실질적이며, 국내산업제품과 관련하여 SK 하이닉스의 국내 사업에 필수적이고 상당한 부가가치를 나타냅니다.

148.    신청인이 SK 하이닉스와 체결한 라이선스 계약서를 별지 59C로 첨부합니다.

## XI.    관련 소송

### A.    '366 특허

149.    2025년 7월 28일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:25-cv-00748호로 예정된 삼성 피신청인들과 Avnet, Inc.를 상대로 '366 특허 침해를 주장하며 소송을 제기하였습니다. 이 사건은 초기 단계에 있습니다.

150.    2025년 7월 28일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:25-cv-00749호로 Micron Technology, Inc., Micron Semiconductor Products, Inc., Micron Technology Texas LLC(총칭하여 "Micron") 및 Avnet, Inc.를 상대로 '366 특허 침해를 주장하며 소송을 제기하였습니다. 이 사건은 초기 단계에 있습니다.

151.    2025년 7월 29일, Micron은 미국 델라웨어주 연방지방법원에 Netlist를 상대로 민사소송 사건번호 제1:25-cv-00942호로 '366 특허에 대한 비침해 확인판결을 구하는 소송을 제기하였습니다. 이 사건은 초기 단계에 있습니다.

### B.    '731 특허

152.    2025년 5월 19일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:25-cv-00557호로 예정된 삼성 피신청인들과 Avnet, Inc.를 상대로 '731 특허 침해를 주장하며 소송을 제기하였습니다. 이 사건은 Micron과 Avnet, Inc.를 포함하는 민사소송 사건번호 제2:25-cv-00558호와 병합되었습니다. 이 사건은 초기 단계에 있습니다.

153.    2025년 7월 10일, Micron은 미국 델라웨어주 연방지방법원에 민사소송 사건번호 제1:25-cv-00863호로 Netlist를 상대로 소송을 제기하여 '731 특허에 대한 비침해 확인판결을 구하였습니다. 이 사건은 초기 단계에 있습니다.

154.    2025년 8월 29일, 삼성전자는 '731 특허에 대한 *당사자계 재심사 청구*(사건번호 IPR2025-01431)를 제기하였습니다. 이 사건은 초기 단계에 있습니다.

## C.    '608 특허

155.    2021년 4월 28일, Netlist는 미국 텍사스 서부지방법원에 민사소송 사건번호 제6-21-cv-00431호로 Micron을 상대로 '608 특허 침해를 주장하며 소송을 제기하였습니다. 이 사건은 텍사스 서부지구 오스틴 부서로 이관되어 사건번호 제22-cv-00136호로 배정되었습니다. 이 사건은 2022년 5월 11일 다수의 *당사자계 재심사 청구*사건이 진행되는 동안 중단되었습니다. IPR2022-00847 사건을 포함하여 해당 절차에서 내려진 최종 서면 결정에 대한 항소심이 진행되는 동안 여전히 중단 상태에 있습니다.

156.    2021년 12월 23일, Micron은 '608 특허에 대한 *당사자계 재심사 청구*(사건번호 IPR2022-00237)를 제기하였습니다. 특허심판 및 항고위원회는 심사 개시를 거부하였습니다.

157.    2022년 8월 1일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:22-cv-00293호로 예정된 삼성 피신청인들을 상대로 '608 특허 침해를 주장하며 소송을 제기하였습니다. 이 사건은 Micron을 포함하는 민사소송 사건번호 제2:22-cv-00294호와 병합되었습니다. 2024년 11월 22일, 배심원 평결이 Netlist에게 유리하게 내려졌으며, '608 특허의 청구항이 침해되었고 무효가 아니라고 판단하였습니다. 배심원은 '608 특허 침해에 대해 12,000,000달러의 손해배상을 인정하였습니다. 법원은 2024년 12월 2일 평결에 대한 판결을 선고하였습니다.

158.    2023년 4월 27일, 삼성전자는 37 C.F.R. § 42.107(a)에 따른 '608 특허 *당사자계 재심사 청구*(사건번호 IPR2023-00847)를 제기하였습니다. 특허심판 및 항고위원회는 특허의 청구항 1 내지 청구항 5가 35 U.S.C. § 103에 따라 특허무효사유에 해당하지 않는다고 판단하였습니다. 2025년 1월 21일, 삼성전자는 해당 결정에 대해 미국 연방순회항소법원에 항소하였습니다(사건번호 25-1375).

159.    2024년 1월 10일, Micron은 37 C.F.R. § 42.107(a)에 따른 '608 특허 *당사자계*

*재심사 청구*(사건번호 IPR2024-00370)를 제기하였습니다. 특허심판 및 항고위원회는 심사 개시를 거부하였습니다.

160.    2025년 8월 14일, 익명의 당사자가 '608 특허에 대한 일방적 재심 청구를 제기하였습니다. 특허상표청(PTO)은 아직 해당 청구에 대해 조치를 취하지 않았습니다.

**D.    '523 특허**

161.    2020년 3월 17일, Netlist는 미국 텍사스 서부지방법원에서 민사소송 사건번호 제6-20-cv-00194호로 SK hynix America Inc. 및 SK 하이닉스를 상대로 '523 특허 침해를 주장하며 소송을 제기하였습니다. 당사자들은 이후 합의하였고 사건은 취하되었습니다.

162.    2020년 6월 15일, Netlist는 미국 텍사스 서부지방법원에서 민사소송 사건번호 제6-20-cv-00525호로 SK hynix America Inc. 및 SK 하이닉스를 상대로 '523 특허 침해를 주장하며 소송을 제기하였습니다. 당사자들은 이후 합의하였고 사건은 취하되었습니다.

163.    2020년 8월 21일, SK hynix America Inc.와 SK 하이닉스는 '523 특허에 대한 *당사자계* 재심사 청구(IPR2020-01421)를 제기하였습니다. 특허심판 및 항고위원회는 심사 개시를 결정하였으나, 당사자들이 이후 합의함에 따라 심판절차는 취하되었습니다.

164.    2021년 1월 15일, 삼성전자와 SSI는 미국 델라웨어주 연방지방법원에 Netlist를 상대로 민사소송 사건번호 제1-21-cv-01453호로 소장을 제출하면서, '523 특허의 비침해 확인 판결, 불공정행위 및 부정한 행위로 인한 권리행사불능, 계약위반에 대한 확인 판결을 구하였습니다. Netlist는 삼성에 대하여 침해 반소를 주장하였고, 이후 Google LLC와 Alphabet Inc.를 상대로 특허침해 반소를 추가한 변경답변서를 제출하였습니다. 이 사건은 2023년 12월 1일 중단되었으며 현재도 중단상태를 유지하고 있습니다.

165.    2021년 10월 15일, 삼성전자는 '523 특허에 대한 *당사자계* 재심사 청구(IPR2022-00063)를 제기하였습니다. 특허심판 및 항고위원회는 청구항 1 내지 청구항 34가 35 U.S.C. § 103에 따라 특허무효사유에 해당하지 않는다고 판단하였습니다. 2023년

7월 10일, 삼성전자는 해당 결정에 대해 미국 연방순회항소법원에 항소하였습니다. 연방순회항소법원은 2025년 3월 5일 특허심판 및 항고위원회의 결정을 약식으로 확정하였습니다. 사건번호 제23-2133호, 문서번호 44.

### E.    '035 특허

166.    2021년 4월 28일, Netlist는 미국 텍사스 서부지방법원에서 민사소송 사건번호 제22-cv-00136호로 Micron을 상대로 '035 특허 침해를 주장하며 소송을 제기하였습니다. 이 사건은 민사소송 사건번호 제6-21-cv-00431호에서 이관된 것입니다. 이 사건은 2022년 5월 11일 다수의 *당사자계* 재심사 절차 진행을 이유로 중단되었으며, 다른 권리주장특허에 대한 *당사자계* 절차에서 내려진 최종 서면 결정의 항소심이 계속 진행 중인 동안 여전히 중단상태에 있습니다.

167.    2021년 12월 23일, Micron은 '035 특허에 대한 *당사자계* 재심사 청구(IPR2022-00236)를 제기하였습니다. 특허심판 및 항고위원회는 '035 특허의 청구항 1, 청구항 10 내지 청구항 13 및 청구항 21이 35 U.S.C. § 103에 따라 특허무효라고 판단하였고, 청구항 2, 6 및 22는 특허무효가 아니라고 결정하였습니다. 청구인은 재심사를 청구하였고, 이는 인용되었습니다. 재심사 결정에서 특허 심판 및 항고위원회는 청구항 22가 특허무효라고 판단하였습니다. 양 당사자 모두 특허 심판 및 항고위원회의 결정에 대해 항소하지 않았습니다.

### F.    '087 특허

168.    2025년 5월 19일, Netlist는 미국 텍사스 동부지방법원에 Micron을 상대로 '087 특허 침해를 주장하며 소송을 제기하였습니다(민사소송 사건번호 제2:25-cv-00552호). 해당 사건은 2025년 5월 22일에 종결되었습니다.

169.    2025년 5월 19일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:25-cv-00553호로 예정된 삼성 피신청인들을 상대로 '087 특허 침해를 주장하며 소송을 제기하였습니다. 해당 사건은 2025년 5월 22일에 종결되었습니다.

170.    2025년 5월 19일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:25-cv-00557호로 예정된 삼성 피신청인들을 상대로 '087 특허 침해를 주장하며 소송을 제기하였습니다. 해당 사건은 초기 단계에 있습니다.

171.    2025년 5월 19일, Netlist는 미국 텍사스 동부지방법원에 민사소송 사건번호 제2:25-cv-00558호로 Micron을 상대로 '087 특허 침해를 주장하며 소송을 제기하였습니다. 동 사건은 초기 단계에 있습니다.

172.    2025년  5월  20일,  예정된  삼성  피신청인들은  미국  델라웨어주 연방지방법원에  Netlist를  상대로  민사소송  사건번호  제1:25-cv-00626호로  '087  특허의 비침해  확인  판결을  구하는  소장을  제출하였습니다.  동  사건은  초기  단계에  있습니다. 예정된 삼성 피신청인들은 '366 특허 및 '731 특허에 대한 확인 판결 청구를 추가하기 위해 소장 변경허가신청을 하였습니다. 동 신청은 현재 계류 중입니다.

173.    2025년 5월 20일, Micron은 미국 델라웨어주 연방지방법원에 Netlist를 상대로 민사소송 사건번호 제1:25-cv-00629호로 '087 특허의 비침해 확인 판결을 구하는 소장을 제출하였습니다. 동 사건은 초기 단계에 있습니다.

174.    2025년  8월  25일,  삼성전자는  '087  특허에  대한  *당사자계*  재심사 청구(IPR2025-01402)를 제기하였습니다. 동 사건은 초기 단계에 있습니다.

175.    2025년  8월  25일,  삼성전자는  '087  특허에  대한  특허  등록  후  재심사 청구(PGR2025-00071)를 제기하였습니다. 동 사건은 초기 단계에 있습니다.

176.    Netlist는  이전에  다른  법원이나  기관에서  권리주장특허에  대해  소송을 제기한 바 없습니다.

## XII.   구제 요청

177.    Netlist는 위원회에 다음 사항을 요청합니다:

(a)    권리주장특허의  하나  이상의  청구항을  침해하는  DRAM  장치,  이를

포함하는 제품 및 그 구성요소의 미국으로의 수입, 수입을 위한 판매, 및/또는 미국 내 판매에 근거한 피신청인의 개정된 1930년 관세법 제337조(19 U.S.C. § 1337) 위반에 대하여 해당 조항에 따라 조사를 개시한다.

(b)    제337조 제(c)항에 따라 (i) 제337조 위반 여부에 관한 증거 수령 및 변론 청취, (ii) 심리 후 제337조 위반 사실 판정을 목적으로 하는 심리를 계획하고 실시한다.

(c)    19 U.S.C. § 1337(d)에 따라 권리주장특허의 하나 이상의 청구항을 침해하고 피신청인, 그 자회사, 관련 회사 및 대리인에 의해 또는 이들을 대리하여 제조, 수입, 수입을 위한 판매 및/또는 수입 후 판매되는 DRAM 장치, 이를 포함하는 제품 및 그 구성요소의 미국 반입을 금지하는 영구적 제한 배제명령을 발부한다.

(d)    19 U.S.C. § 1337(f)에 따라 피신청인, 그 국내 자회사, 관련 회사 및 대리인이 권리주장특허의 하나 이상의 청구항을 침해하는 DRAM 장치, 이를 포함하는 제품 및 그 구성요소의 수입, 수입을 위한 판매, 마케팅 및/또는 광고, 유통, 판매 제안, 판매, 수입 후 사용, 수입 후 판매 및 기타 미국 내 이전(수출 제외)에 관여하는 것을 금지하는 영구 중지명령을 발부한다.

(e)    60일의 대통령 검토 기간 동안 권리주장특허의 하나 이상의 청구항을 침해하는 DRAM 장치, 이를 포함하는 제품 및 그 구성요소의 수입에 대해 19 U.S.C. § 1337(j)에 의거하여 공탁금을 부과한다.

(f)    조사를 통해 확정된 사실 및 위원회의 권한에 기초하여 위원회가 법률상 정당하고 적절하다고 판단하는 기타 추가 구제조치를 발부한다.

날짜: 2025년 9월 30일                          상기와 같이 제출합니다.


_____

Daniel E. Yonan
Donald R. Banowit
William H. Milliken
Richard M. Bemben
Lauren A. Watt
Sterne, Kessler, Goldstein & Fox PLLC
1101 K Street NW, 10th Floor
Washington DC 20005
전화: (202) 371-2600


Jason Sheasby
Annita Zhong, PhD
Andrew Strabone
Lisa Glasser
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
전화: (310) 277-1010


*신청인 Netlist, Inc. 측 대리인*

미국 국제무역위원회
워싱턴 D.C.

| | |
|---|---|
| **특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 구성요소에 관한 건** | 조사번호 337-TA- \_\_ |

**제소장 확인서**

본인 Gail Sasaki는 Netlist, Inc.의 수석 부사장 겸 최고재무책임자로서 개정된 1930년 관세법 제337조에 따라 신청인 Netlist, Inc.를 대리하여 첨부된 제소장에 대한 본 확인서를 작성할 권한을 가지고 있습니다. 위원회 규칙 제210.4조 및 제210.12조 제(a)항에 따라, 위증 시 처벌을 감수하고 본인은 다음과 같이 진술합니다:

1. 본인은 제소장을 읽었으며, 그에 포함된 주장과 진술 내용을 숙지하고 있습니다.

2. 상황에 따른 합리적 조사를 거쳐 형성된 본인의 지식, 정보 및 확신에 따르면, 제소장에 기재된 주장과 진술은 사실에 충분한 근거를 두고 있으며, 현행법 또는 현행법의 확대, 수정 또는 번복을 위한 선의의 법리 주장에 의해 정당화됩니다.

3. 제소장에 포함된 주장 및 기타 사실적 주장들은 증거에 의한 뒷받침이 있거나, 합리적인 추가 조사나 증거개시 기회 이후 증거에 의한 뒷받침이 있을 가능성이 높습니다.

4. 본 제소장은 상대를 괴롭히거나 불필요한 소송 지연 또는 소송 비용의 불필요한 증가를 유발하는 등의 부적절한 목적으로 제출되지 않았습니다.

1

작성일: 2025년 9월 30일

Gail Sasaki

수석 부사장 겸 최고재무책임자

# TRANSLATION CERTIFICATION

Date: November 20, 2025

To whom it may concern:

This is to certify that the attached translation from English into Korean is an accurate representation of the documents received by this office.

The documents are designated as:

- ITC-337-3854-20250930.pdf

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents. I affirm that the provided translation was produced under the ISO 9001:2015 certified quality management process and the agents responsible for the specified translations are qualified to translate and review documents for the above language pair."

Signature of **Samuel Wu**, Managing Director



**DANIEL E. YONAN**
이사
(202) 772-8899
DYONAN@STERNEKESSLER.COM


2025년 11월 20일


Lisa R. Barton                                                    *EDIS를 통해 제출*
**미국 국제무역위원회**
위원회 서기관
500 E Street S.W.
Washington, D.C. 20436

  답장:  *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품*
      *및 그 구성요소,* 사건번호 제3854호

Barton 서기관 귀하

  Netlist, Inc.(이하 'Netlist' 또는 '청구인')를 대리하여 증거물 16C, 17C, 18C, 19C, 20C, 21C, 42C, 43C, 44C, 45C, 46C, 47C에 포함된 기밀 사업 정보를 삭제한 후 소장에 첨부된 청구항 대비표의 대체 공개본을 동봉하여 제출합니다.

  본 사안에 대해 검토해 주시고 관심을 기울여 주셔서 감사합니다. 문의 사항이 있으시면 언제든지 연락 주시기 바랍니다.


              *청구인 Netlist, Inc.의 대리인*

              STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.


              Daniel E. Yonan
              이사



**DANIEL E. YONAN**
이사
(202) 772-8899
DYONAN@STERNEKESSLER.COM

2025년 12월 5일

Lisa R. Barton                                          *EDIS를 통해 제출*
미국 국제무역위원회
위원회 서기관
500 E Street S.W.
Washington, D.C. 20436

　　　답장: *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품*
　　　　　*및 그 구성요소, 사건번호 제3854호 – 소장 보충자료*

Barton 서기관 귀하

　　　Netlist, Inc.(이하 'Netlist' 또는 '청구인')를 대리하여, 사건번호 제337-3854호 사건과 관련하여 2025년 9월 30일 제기된 소장에 대해 다음과 같이 보충자료를 제출합니다. 본 서신에는 보충자료로서 증거물 A–G를 동봉합니다.

　　**1.　인증본 및 심사 이력.**

　　　청구인은 침해 주장 대상 특허 및 해당 특허들의 심사 이력에 대한 인증 사본[1](소장에 첨부된 부록 A–F)을 확보하였으며, 이에 더하여 침해 주장 대상 특허와 관련된 우선권 출원에 대한 심사 이력 사본도 확보하였습니다. 이들 자료는 위원회 규칙 210.12(c)에 따라 위원회에 제출됩니다.

　　**2.　'087 특허의 HBM DRAM 관련성 및 DDR5 DIMM 침해 혐의 제품에 대한 침해 주장 비제기.**

　　　'087 특허는 고대역폭 메모리(High-Bandwidth Memory, 'HBM') 기술과 관련됩니다(소장 ¶ 100 *참조*). 다시 말해, DDR5 DIMM을 포함하되 HBM을 포함하지 않는 피청구인의[2] 침해 혐의 제품에 대해서는 '087 특허의 어떠한 청구항에 대해서도

---

[1] 침해 주장 대상 특허는 미국 특허 제12,373,366호(이하 ''366 특허'), 제10,025,731호(이하 ''731 특허'), 제10,268,608호(이하 ''608 특허'), 제10,217,523호(이하 ''523 특허'), 제9,824,035호(이하 ''035 특허'), 제12,308,087호(이하 ''087 특허')입니다.
[2] 피청구인은 Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.,

Lisa R. Barton
2025년 12월 5일
2페이지

침해 주장이 제기되지 않습니다 (소장 ¶ 114, 증거물 21C *참조*). 한편, 소장 및 이에 첨부된 청구항 대비표는 HBM이 포함된 대표적인 침해 혐의 제품이 '087 특허의 청구항 1, 2, 5, 7, 8, 13, 17, 18, 20, 22, 23을 어떻게 침해하고 있는지 보여줍니다 (소장 ¶¶ 113–114; 증거물 21C *참조*).

**3.     피청구인 Samsung의 침해 혐의 HBM 제품, 미국 외 지역에서 제조, 포장, 출하.**

소장에 기재된 바와 같이 Samsung의 HBM 제품은 미국 외 지역에서 제조되며 피청구인들에 의해 미국으로의 수입을 목적으로 판매 및/또는 수입됩니다 (소장 ¶¶ 125–130 *참조*). Samsung HBM 제품의 해외 제조 및 수입 사실에 대한 추가적인 근거는 공개적으로 열람 가능한 기사에서도 확인할 수 있습니다. 예를 들어, Samsung의 HBM 제품 제조 및 포장 시설이 대한민국에 위치해 있음이 관련 기사에서 확인됩니다. 증거물 A *참조*(https://koreajoongangdaily.joins.com/news/2024-11-12/business/industry/Samsung-to-expand-Cheonan-chip-packaging-facility-for-HBM-rampup/2176108(최종 접속일: 2025년 12월 4일)).

**4.     소장에 기재된 침해 혐의 HBM 제품, 피청구인 측 여타 HBM 제품 대표.**

소장은 Samsung이 제조한 HBM 제품이 미국으로 수입되어 Google 및 Super Micro에 공급되고 해당 제품들이 Google 및 Super Micro의 침해 혐의 제품에 통합됨을 설명하고 있습니다 (소장 ¶¶ 125–130 *참조*). 증거물 21C에 제시된 침해 혐의 제품은 미국으로의 수입을 목적으로 판매되거나 판매 제안된 HBM 제품, 미국으로 수입된 HBM 제품, 또는 미국으로 수입된 이후 판매되거나 판매 제안된 다른 HBM 제품들을 대표합니다 *( 같은 자료).*

**5.     피청구인 Super Micro의 침해 혐의 제품 내 AMD 가속기 및 해당 가속기 내 침해 혐의 HBM 포함.**

소장 제130항에 기재된 바와 같이, Super Micro의 H13 및 H14 서버에는 AMD Instinct 가속기(MI300X/MI325X/MI350X)가 포함되어 사용되고 있습니다. 이는 Super Micro 데이터시트에서 확인됩니다 (증거물 35('지원 GPU: AMD: Instinct™ MI350X 가속기', Instinct™ MI325X 가속기', '마더보드: Super H14DSG-OD'), 증거물 36('지원 GPU: AMD: Instinct™ MI300X 가속기', '마더보드: Super H13DSG-OM) *참조*). 해당 가속기에는 Samsung의 침해 혐의 HBM이 포함되어 있으며 이는 증거물 37–38에 의해 입증됩니다. 이 사실은 H13 및 H14 서버와 관련된 다른 데이터시트에서도 추가로 확인됩니다 (증거물 B–D *참조*).

**6.     피청구인 Google 및 Super Micro의 침해 혐의 제품, 미국 내 여러 위치에서 사용 중.**

---

Samsung Semiconductor, Inc.(이하 총칭하여 'Samsung'), Google LLC(이하 'Google'), Super Micro Computer, Inc.(이하 'Super Micro')입니다.

Sterne, Kessler, Goldstein & Fox PLLC  |  1101 K Street, NW  |  10th Floor  |  Washington, D.C. 20005
P 202.371.2600  |  F 202.371.2540  |  sternekessler.com

Lisa R. Barton
2025년 12월 5일
3페이지

소장 제129항에 대한 보충 설명으로, 예를 들어 Google의 경우 피소된 텐서 처리 장치(Tensor Processing Unit, TPU)는 아이오와, 사우스캐롤라이나, 오하이오, 텍사스, 오리건, 네바다 등 미국 내 여러 주에서 설치되어 사용되고 있으며, 이는 TPU 위치를 식별한 강조 표시된 Google 웹페이지를 통해 확인됩니다(증거물 E 2–3쪽). 또한, 다섯 번째, 여섯 번째, 일곱 번째 세대 TPU가 지원되는 미국 내 구역 역시 확인할 수 있습니다(증거물 F 1–2쪽 참조). 침해 혐의 Google Cloud Platform(GCP) 제품 역시 오리건, 캘리포니아, 유타, 네바다, 버지니아 등 미국 내 여러 주에서 사용되고 있으며 이는 미국 내 Google Cloud 제품이 위치한 특정 지역적 구역을 식별하여 강조 표시한 Google 웹페이지를 통해 확인됩니다(증거물 G 2–3쪽 참조).

소장 제130항에 대한 보충 설명으로, Super Micro는 최근인 지난주까지도 자사 침해 혐의 제품이 '대부분 미국산'이라고 홍보하며 산호세 본사에서 시스템의 대부분을 제조하고 있고  미국 내에서 시스템의 상당 부분을 설계, 개발, 제조하는 유일한 주요 서버, 스토리지, 가속 컴퓨팅 플랫폼 공급업체라고 밝힌 바 있습니다(EDIS No. 864946, 1–2쪽 *참조*). Super Micro는 또한 'Made in the USA' 프로그램을 운영하는 '보기 드문' IT 인프라 기업으로 소개되었습니다 (*같은 자료* 4쪽 참조).

**7.    실시권자인 SK hynix의 투자를 통해 미국 내 산업이 존재하며, 설령 그렇지 않더라도 현재 산업이 형성되는 단계.**

청구인은 소장 제10항, 제132항, 제135항, 제145항을 아래와 같이 수정합니다.

**10.1** 본 소장 섹션 X에 명시된 바와 같이, 19 U.S.C. § 1337(a)(2)–(3)에 따른 미국 내 산업은 Netlist와 그 실시권자 SK hynix Inc.(이하 'SK hynix')가 침해 주장 대상 특허로 보호되는 제품과 관련하여 미국 내에서 행한 투자를 기반으로 이미 존재하며, **설령 그렇지 않더라도 현재 형성 과정에 있습니다.**

**132.1** 19 U.S.C. § 1337(a)(2)에 명시되고 19 U.S.C. § 1337(a)(3)에 정의된 미국 내 산업이 다음 Netlist 및 SK hynix 제품에 대해 존재하며 *설령 그렇지 않더라도 현재 형성 과정에 있습니다.* 이들 제품은 침해 주장 대상 특허에 의해 보호되고 있습니다.

**135.1** 각 침해 주장 대상 특허에 대해 Netlist 및/또는 그 실시권자 SK hynix의 공장, 장비, 인력, 자본에 대한 지속적이고 상당한 미국 내 투자와, 해당 특허의 연구, 개발, 엔지니어링을 통한 활용에 대한 지속적인 실질적 미국 내 투자를 기반으로 19 U.S.C. § 1337(a)(3)(A), (B), (C)에 따른 미국 내 산업이 존재합니다. Netlist는 2021년 이후 미국 내 산업 제품 개발 및 생산, 시장 출시, 지속적 기술 개발을 통한 성공 유지를 위해 수천만 달러를 투자하고 있습니다. 마찬가지로 SK hynix도 인건비와 시설 비용을 포함해 미국 내에 상당한 투자를 해왔으며 *앞으로도 계속할 예정입니다.*

**145.1** SK hynix는 또한 2024년에 인디애나주 웨스트라파예트의 반도체 패키징 시설에 38억 7천만 달러를 투자할 계획이라고 발표했으며, 해당 시설은 2028년에

Lisa R. Barton
2025년 12월 5일
4페이지

가동될 예정입니다 (증거물 56 참조). 신규 시설을 통해 SK hynix는 HBM 생산 라인과 첨단 포장 연구개발(R&D) 시설을 구축할 계획입니다. (*같은 자료*, 증거물 57도 참조). 또한, SK hynix는 미국 반도체과학법(CHIPS 및 Science Act)에 따라 인디애나주 반도체 패키징 생산 기지 구축을 위한 투자에 대해 최대 4억 5,800만 달러의 직접 자금 지원과 5억 달러 규모의 대출 지원을 받을 예정입니다 (증거물 56 참조). 신규 시설은 수백 개의 건설 일자리 외에도 약 1,000개의 일자리를 창출할 것으로 예상됩니다 (*같은 자료*). *이 시설은 SK hynix가 '087 특허를 적용한 HBM 제품에 대한 미국 내 투자를 지속하고 있으며, 설령 산업이 아직 완전히 형성되지 않았더라도 현재 육성 중인 국내 산업을 지원하고 있음을 보여주는 증거입니다.*

**8.    '608 특허 일방적 재심사.**

청구인은 소장 제160항을 다음과 같이 수정합니다.

160.1. 2025년 8월 14일, 익명의 당사자가 '608 특허에 대한 일방적 재심사를 요청하는 서류를 제출했습니다. *소장 제출 당시 미국 특허청(PTO)은 해당 요청에 대해 아직 조치를 취하지 않은 상태였습니다. 그러나 앞서 언급된 재심사는 2025년 11월 21일 승인되었습니다.*

**9.    관련 소송 업데이트: '305 특허 소송.**

청구인은 소장 제167항을 다음과 같이 수정합니다.

167.1. *2025년 11월 11일, Samsung은 미국 델라웨어주 지방법원에 Netlist를 상대로 민사 소송(사건번호 1:25-cv-01371)을 제기하여, 특허 '035 특허의 비침해 확인 판결을 구하고 있습니다. 이 사건은 현재 초기 단계에 있습니다.*

본 사안에 대해 검토해 주시고 관심을 기울여 주셔서 감사합니다. 문의 사항이 있으시면 언제든지 연락 주시기 바랍니다.


*청구인 Netlist, Inc.의 대리인*

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.


Daniel E. Yonan
이사



**DANIEL E. YONAN**
이사
(202) 772-8899
DYONAN@STERNEKESSLER.COM


2025년 12월 12일


Lisa R. Barton                                              *EDIS를 통해 제출*
**미국 국제무역위원회**
위원회 서기관
500 E Street S.W.
Washington, D.C. 20436

　　　답장: *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품*
　　　　　　*및 그 구성요소, 사건번호 제3854호 – 소장 보충자료*

Barton 서기관 귀하

　　　Netlist, Inc.(이하 'Netlist' 또는 '청구인')를 대리하여, 사건번호 제337-3854호 사건과 관련하여 2025년 9월 30일 제기된 소장에 대해 다음과 같이 추가 보충자료를 제출합니다. 본 서신에는 대체 증거물 33과 추가 정보로 데본 파크 선언서(2025년 12월 12일)가 동봉되어 있습니다.

　　**1.　침해 혐의 제품 범주에 대한 명확하고 이해하기 쉬운 설명 개정판(19 C.F.R. § 210.12(a)(12))**

　　　청구인은 소장 제38항을 다음과 같이 수정합니다.

　　**38.1** 위원회 규칙 §§ 210.10(b)(1) 및 210.12(a)(12)에 따라, ~~침해 혐의 제품의 범주는 컴퓨터 시스템에 사용되는 동적 랜덤 액세스 메모리(DRAM) 장치입니다. DRAM은 컴퓨터, 서버, 데스크톱, 휴대전화 등에서 주요 작업 메모리로 사용되며 프로세서가 작동 중 빠르게 접근해야 하는 데이터와 명령어를 임시로 저장합니다. 구체적으로 해당 장치에는 DDR5 세대 DIMM 및 고대역폭 메모리(HBM)가 포함됩니다.~~ *침해 혐의를 받는 제품에는 이러한 동적 랜덤 액세스 메모리 장치(DDR5 세대 DIMM 및 HBM), 이를 포함하는 제품(서버, 컴퓨팅 시스템, 스토리지 시스템 등), 그리고 그 구성요소가 포함됩니다.*

　　**2.　Google, Samsung HBM을 미국으로 수입**

　　　앞서 Google이 미국 내 서버에서 HBM 패키지를 사용하고 있다는 점을 강조한 보충 자료에 더하여, 청구인은 소장 제129항을 다음과 같이 수정합니다.

Lisa R. Barton
2025년 12월 12일
2페이지

**129.1** Google은 침해 혐의 제품을 Samsung으로부터 직접 또는 간접적으로 수입합니다. 해당 침해 혐의 제품은 데이터 저장 시설 및 서버를 포함한 다양한 Google 제품과 서비스에 사용됩니다. 예를 들어, 정보 및 이를 토대로 한 판단에 따르면 Google의 5세대, 6세대 및 7세대 텐서 처리 장치(Tensor Processing Unit, TPU)는 Samsung의 HBM2, HBM2E, HBM3E, HBM3E 고대역폭 메모리 패키지를 사용합니다 (교체 증거물 33의 3쪽 'Google은 TPU에 대한 투자에 힘입어 Samsung으로부터 HBM을 두 번째로 많이 구매하는 기업이 될 것으로 예상됩니다.' *참조*). *증거물 33은 Google을 'HBM 최대 구매자' 중 하나로 식별합니다. 또한 증거물 33은 HBM 기반 TPU에 대한 Google의 수요 및 출하량을 추적하는 'Samsung 내부 로드맵'을 인용합니다. 해당 로드맵에는 HBM 패키지의 구성요소로서 메모리 용량, 밀도, 패키지당 유닛 수 등의 지표가 포함되어 있습니다(같은 자료의 2쪽과 5쪽). 앞서 확인된 바와 같이, Google의 TPU는 미국 내에 설치되어 사용되고 있습니다 (EDIS 자료: ID 865737, 2025년 12월 5일자 소장 두 번째 보충 자료, 2~3쪽 참조).* 또한 정보 및 이를 토대로 한 판단에 따르면 Google Cloud Platform(GCP)의 가상 머신 서비스는 컴퓨팅 성능에 최적화된 C4 시리즈 가상 머신에서 Intel Xeon 6 프로세서를 사용합니다. 해당 프로세서에는 Samsung의 침해 혐의 제품인 DDR5 RDIMM 및 DDR5 MRDIMM이 사용됩니다(증거물 34 참조). 정보 및 이를 토대로 한 판단에 따르면 Google은 이러한 침해 혐의 제품을 Samsung으로부터 구매하여 미국으로 수입합니다. 또한 Google은 해당 제품을 자사 제품 및 서비스에 사용하고 있습니다.

### 3. Google, 공익 제출 자료를 통해 HBM 수입 사실 확인

Google이 미국 내에서 침해 혐의가 제기된 Samsung의 HBM 장치를 공급받고 있다는 추가적인 증거로서, Google은 공익 제출 자료에서 자사가 '핵심 TPU 및 GCP의 공급에 있어 타의 추종을 불허한다'고 밝히고 있습니다. 또한 Google은 '이러한 제품을 [미국 내에서] 공급하기 위해서는' Samsung을 포함한 복수의 공급업체로부터 '충분한 HBM 공급이 필요하다'고 명시하고 있습니다 (EDIS 자료: ID 864975 4쪽 *참조*). Google은 해당 제출 자료의 어느 부분에서도 미국 내에서 침해 혐의가 제기된 Samsung HBM 패키지를 수령, 통합 또는 의존하고 있다는 사실을 부인하지 않았습니다. 오히려 Google은 자사 제품이 '피소된 하류 Google 제품'에 해당함을 명확히 확인하고 있습니다(같은 자료 2쪽 참조).

### 4. Super Micro, Samsung HBM을 미국으로 수입

앞서 Super Micro가 미국 내 서버에서 HBM 패키지를 사용하고 있다는 점을 강조한 보충 자료에 더하여, 청구인은 소장 제130항을 다음과 같이 수정합니다.

**130.1** Super Micro는 침해 혐의가 제기된 제품을 Samsung으로부터 직접 또는 간접적으로 수입하여 서버 및 스토리지 시스템을 포함한 다양한 Super Micro 제품에 통합합니다. 예를 들어, 정보 및 이를 토대로 한 판단에 따르면 Super Micro의 H13 및 H14 GPU 최적화 서버는 AMD Instinct 가속기(MI300X/MI325X/MI350X)로 구성될 수 있으며 해당 가속기에는 Samsung의 HBM3 및 HBM3E 고대역폭 메모리가 포함됩니다 (증거물 35(AS - 8126GS-TNMR 데이터시트), 증거물 36(AS -8125GS-TNMR2

Lisa R. Barton
2025년 12월 12일
3페이지

데이터시트), 증거물 37('Samsung의 HBM3 메모리'는 'AMD의 MI300X AI 가속기에 통합되어 있음'), 증거물 38('AMD Instinct MI350X 및 MI355X GPU'는 'Samsung Electronics'의 '288GB HBM3E'를 사용함) *참조*). 또한 정보 및 이를 토대로 한 판단에 따르면 Super Micro Hyper SuperServer SYS-212HA-TN은 Intel Xeon® 6 6900 시리즈 프로세서와 함께 Samsung DDR5 RDIMM 또는 Samsung DDR5 MRDIMM으로 구성될 수 있습니다 (증거물 39(Hyper SuperServer SYS-212HA-TN 데이터시트), 증거물 40(해당 제품이 'Intel® Xeon® 6900 시리즈 프로세서'를 사용함), 증거물 41(Samsung의 '출시 예정인 MRDIMM'이 'Intel Xeon 6 플랫폼과 호환될 예정'임을 명시함) *참조*). 정보 및 이를 토대로 한 판단에 따르면 Super Micro는 이러한 침해 혐의 제품을 Samsung으로부터 구매하여 미국으로 수입한 후 자사 제품에 사용합니다. *정보 및 이를 토대로 한 판단에 따르면 Super Micro가 수입한 제품에는 GPU 프로세서와 HBM 패키지가 결합되어 장착된 인쇄회로기판(PCB)의 일부로 포함된 특허 침해 혐의 대상 Samsung HBM이 포함되거나, Super Micro가 미국으로 수입한 이후 미국 내에서 판매하는 완제품 서버 랙의 일부로서 해당 Samsung HBM이 포함됩니다. 예를 들어, 정보 및 이를 토대로 한 판단에 근거하면, AMD 또는 다른 시스템 통합업체가 GPU와 HBM 패키지를 포함하는 AMD Instinct GPU 가속기를 표준 범용 베이스보드(UBB 2.0)에 장착합니다 (D. Park의 진술서(2025년 12월 12일), 증거 7 참조). 이렇게 조립된 인쇄회로기판(PCB)은 이후 Super Micro의 H13/H14 서버와 같은 서버 랙에 통합됩니다 (같은 자료, 증거물 9 참조). 또한 정보 및 이를 토대로 한 판단에 따르면 대부분의 HBM 및 GPU 패키지는 아시아에서 생산되어 PCB에 완전히 조립된 구성품 형태로 미국에 반입되며 이후 미국 내 서버에 통합됩니다 (같은 자료, ¶¶ 11–15 참조). 다만, Super Micro는 랙 단위 생산을 위하여 대만, 네덜란드 및 말레이시아에도 제조 시설을 보유하고 있으므로 적어도 일부 Samsung HBM은 조립이 완료된 서버 랙의 일부로서 미국에 수입될 수 있습니다 (같은 자료, 증거물 13 참조).*

　　　본 사안에 대해 검토해 주시고 관심을 기울여 주셔서 감사합니다. 문의 사항이 있으시면 언제든지 연락 주시기 바랍니다.

*청구인 Netlist, Inc.의 대리인*

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Daniel E. Yonan
이사



**DANIEL E. YONAN**
이사
(202) 772-8899
DYONAN@STERNEKESSLER.COM

2025년 12월 16일

Lisa R. Barton                                             *EDIS를 통해 제출*
**미국 국제무역위원회**
위원회 서기관
500 E Street S.W.
Washington, D.C. 20436

　　답장:　특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품
　　　　　　및 그 구성요소, 사건번호 제3854호 – 소장 보충자료

Barton 서기관 귀하

　　Netlist, Inc.(이하 'Netlist' 또는 '청구인')를 대리하여, Netlist에 대하여 다음과 같이
추가 보충자료를 제출합니다.

　　전화번호: 949-435-0025
　　이메일: info@netlist.com
　　수석 대리인 전화번호: 202-772-8899
　　수석 대리인 이메일: dyonan@sternekessler.com

　　본 사안에 대해 검토해 주시고 관심을 기울여 주셔서 감사합니다. 문의 사항이
있으시면 언제든지 연락 주시기 바랍니다.

　　　　　　　　　　　　　　　*청구인 Netlist, Inc.의 대리인*

　　　　　　　　　　　　　　STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

　　　　　　　　　　　　　　Daniel E. Yonan
　　　　　　　　　　　　　　이사

# TRANSLATION CERTIFICATION

Date: January 9, 2026

To whom it may concern:

This is to certify that the attached translation from English (USA) into Korean is an accurate representation of the documents received by this office.

The documents are designated as:
- First Supplement to Complaint
- Second Supplement to Complaint
- Third Supplement to Complaint
- Fourth Supplement to Complaint

Samuel Wu, Managing Director in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents. I affirm that the provided translation was produced under the ISO 9001:2015 certified quality management process and the agents responsible for the specified translations are qualified to translate and review documents for the above language pair."

_Samuel Wu_
Signature of Samuel Wu

Exhibit 6

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN DYNAMIC RANDOM ACCESS MEMORY (DRAM) DEVICES, PRODUCTS CONTAINING THE SAME, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-1472** |

## RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA TO ISSUE A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The undersigned Administrative Law Judge finds that the evidence that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek from SK hynix Inc. in its Proposed Letter of Request is reasonably necessary to investigate fully its claims of a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, in the above-captioned investigation before the United States International Trade Commission. Accordingly, the undersigned recommends that the District Court for the District of Columbia issue, under its seal and signature, the attached Letter of Request for Request for Information to the Central Authority of the Republic of Korea.

A Letter of Request is the appropriate method of gathering the necessary requested evidence outside the United States. Respondents must transmit the Letter of Request with a District Court Judge's signature and the District Court's seal to the Central Authority of the Republic of Korea. The Proposed Letter of Request meets the standards set forth by the Hague Convention

regarding the Republic of Korea. *See* U.S. Department of State, Legal Considerations—South Korea, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html.

To comply with the statutory time limitations on International Trade Commission investigations, the undersigned respectfully requests that the Court assign a judge and schedule a hearing to expedite issuance of the Letter of Request.

Respectfully submitted this 27th day of February, 2026

MaryJoan McNamara
Administrative Law Judge

Address for Return of Issued Letter of Request

F. Christopher Mizzo, P.C.
**Kirkland & Ellis LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: Samsung-Netlist-ITC@kirkland.com

*Counsel for Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.*

Exhibit 7

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

Netlist, Inc.,

    Plaintiff (Complainant),

  v.

Samsung Electronics Co., Ltd., Samsung
Electronics America, Inc., Samsung
Semiconductor, Inc., Google LLC, and Super
Micro Computer, Inc.

    Defendants (Respondents)

Case No: _____

**RECOMMENDATION FOR
ISSUANCE OF A LETTER OF
REQUEST**

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE REPUBLIC OF KOREA FOR THE PRODUCTION OF INFORMATION

  The United States District Court for the District of Columbia presents its compliments to the National Court Administration, the appropriate judicial authority of the Republic of Korea, and respectfully requests international judicial assistance to obtain the production of information under The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters from the following entity:

  **SK hynix Inc.**
  2091, Gyeongchung-daero, Bubal-eup,
  Icheon-si Gyeonggi-do
  Republic of Korea

The United States District Court for the District of Columbia is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the production of evidence both within and outside its jurisdiction.

  The requested evidence is for an administrative proceeding in the *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components*

*Thereof*, Investigation No. 337-TA-1472 before the United States International Trade Commission ("the Investigation") as approved by this Court the above-captioned matter. Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. ("Samsung"), Google LLC ("Google"), and Super Micro Computer, Inc. (all collectively, "Respondents") seek discovery from SK hynix Inc. ("SK hynix") regarding its MRDIMM, RDIMM, and HBM products and investments that SK hynix has made in the United States regarding those products. Complainant, Netlist, Inc. ("Netlist") asserts that SK hynix is a licensee to the asserted patents in the Investigation. Netlist alleges activities conducted by SK hynix establishes the existence of a domestic industry in the United States pursuant to 19 U.S.C. § 1337(a)(2) and (3). Additionally, Netlist alleges that SK hynix's capacity to increase production to supply increased demand should an exclusion order be entered in the Investigation against the Respondents' products.

In the proper exercise of its authority, this Court has determined that the evidence sought from SK hynix Inc. cannot be secured except by the intervention of the National Court Administration of the Republic of Korea. There are important deadlines in the above-referenced administrative proceeding, particularly a cut-off to fact discovery that is scheduled for June 8, 2026, and an evidentiary hearing that is scheduled for October 28-November 4, 2026. Thus, this Court additionally requests that the Director of International Affairs expedite this request to the extent possible.

This Court requests the assistance described below:

| 1. Sender | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200 |
|---|---|

|  | Email: Samsung-Netlist-ITC@kirkland.com |
|---|---|
| 2. Central Authority of the Requested State | National Court Administration<br>Attn.: Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>SEOUL 06590<br>Republic of Korea |
| 3. Person to whom the executed request is to be returned | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |

**4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| Date | Please respond as soon as practicable, but in any event please respond no later than March 11, 2026. |
|---|---|
| Reason for Urgency | Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time." The fact discovery cutoff for this Investigation is July 8, 2026. |

**5. In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:**

| 5.a Requesting judicial authority (Article 3, a) | Honorable _____<br>United States District Court Judge<br>U.S. District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington. DC 20001<br>United States of America |
|---|---|
| 5.b To the competent authority of (Article 3, a) | Republic of Korea |
| 5c. Names of the case and any identifying number | *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing The Same, And Components Thereof*, U.S.I.T.C. Investigation No. 337-TA-1472 |

**6. Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3, b)**

| 6a. Plaintiff (Complainant) | Netlist, Inc.<br>111 Academy Way<br>Suite 100<br>Irvine, CA 92617 |
|---|---|
| Plaintiff's Representatives | Jason Sheasby<br>Annita Zhong, PhD<br>Andrew Strabone<br>Lisa Glasser<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel.: (310) 277-1010<br><br>Daniel E. Yonan<br>Donald R. Banowit<br>William H. Milliken<br>Richard M. Bemben<br>Lauren A. Watt<br>Sterne, Kessler, Goldstein & Fox PLLC<br>1101 K Street NW, 10th Floor<br>Washington DC 20005<br>Tel.: (202) 371-2600 |
| 6.b Defendants (Respondents) | Samsung Electronics Co., Ltd.<br>129 Samsung-ro, Yeongtong-gu,<br>Suwon, Gyeonggi-do, 443-742<br>Republic of Korea<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Semiconductor, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, California 94043<br><br>Super Micro Computer, Inc.<br>980 Rock Ave.<br>San Jose, California 95131 |
| Defendant's Representatives | *Counsel for Respondent Google LLC* |

Gregory F. Corbett
Charles T. Steenburg
Anant K. Saraswat
Meaghan P. Luster
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: 617.646.8000

Elizabeth A. DiMarco
Suresh S. Rav
Simon Lu
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.571.5001

Jared W. Newton
Quinn Emanuel Urquhart & Sullivan, LLP
555 13th St. NW, Suite 600
Washington, D.C. 20004
Tel. (202) 538-8000
jarednewton@quinnemanuel.com

*Counsel for Respondents Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc., and Samsung Semiconductor, Inc.*

Paul F. Brinkman, P.C.
F. Christopher Mizzo, P.C.
Michael A. Pearson, Jr.
Karthik Ravishankar
Maranda Johnston
David Corasaniti
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

Greg S. Arovas, P.C.
Todd Friedman, P.C.
James E. Marina, P.C.
Alan Rabinowitz
Benjamin Lasky
Azaad Zimmermann
Kirkland & Ellis LLP
601 Lexington Avenue

| | New York, NY 10022<br>Telephone: (212) 446-4800<br><br>Greg Polins<br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br><br>Luke Norrell<br>Cameron Lindsay<br>Kirkland & Ellis LLP<br>401 W 4th St, Suite 4000<br>Austin, TX 78701<br>Telephone: (512) 678-9050<br><br>Brian R. Nester<br>Covington & Burling LLP<br>One CityCenter,<br>850 Tenth Street, NW<br>Washington D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Email: BNester@cov.com |
| | *Counsel for Respondent Super Micro Computer, Inc.*<br><br>Richard S. Zembek<br>Charles B. Walker<br>Daniel S. Leventhal<br>Talbot Hansum<br>Ryan E. Meltzer<br>NORTON ROSE FULBRIGHT US LLP<br>1550 Lamar Street, Suite 2000<br>Houston, Texas 77010<br>Tel: (713) 651-5151 |
| 6.c Other parties | Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W., Suite 401<br>Washington, DC 20436 |
| 7. Nature and purpose of the Proceedings | This is a proceeding being conducted by the United States International Trade Commission under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on a Complaint filed by Netlist, Inc. on September 30, 2025. |

Netlist, Inc. alleges that Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc. unlawfully import into the United States, sell for importation into the United States, and/or sell within the United States after importation of certain dynamic random access memory (DRAM) devices, products containing the same, and components thereof, that infringe Netlist's U.S. Patent Nos. 12,373,366 ("the '366 Patent"); 10,025,731 ("the '731 Patent"); 10,268,608 ("the '608 Patent"); 10,217,523 ("the '523 Patent"); 9,824,035 ("the '035 Patent"); and 12,308,087 ("the '087 Patent") (collectively, "the Asserted Patents").

The International Trade Commission instituted proceedings based on Netlist's Complaint as supplemented on November 20, 2025, December 5, 2025, December 12, 2025, and December 16, 2025. Upon institution, the case was assigned to Administrative Law Judge MaryJoan McNamara to preside over pre-trial matters, conduct a trial, and issue an initial determination on the merits of the case. The initial determination is subject to possible review by the International Trade Commission with a right to appeal to the United States Court of Appeals for the Federal Circuit.

Respondents seek this Letter of Request because, as set forth in the Complaint, Netlist contends that SK hynix Inc. is a licensee to the Asserted Patents and sells products that it believes practice the Asserted Patents. *See* Complaint ¶¶ 10, 16, 17. Netlist intends to rely on SK hynix's products and investments in the United States to allege that a domestic industry exists, as required by 19 C.F.R. § 1337(a). *Id*. at ¶¶ 132-135, 140-148. Thus, Respondents contend that SK hynix Inc. is likely in possession of information that is directly relevant to the issue of domestic industry.

Specifically, Respondents believe SK hynix possesses unique information concerning (i) the design, structure, and function of its RDIMM, MRDIMM, and HBM products and (ii) SK hynix's expenditures and investments in the United States to

|  | bring those products to market. Additionally, SK hynix will likely possess information regarding whether SK hynix's investments in the United States are significant, particularly in comparison to worldwide investments.<br><br>While Samsung has also requested, via subpoena, documents from SK hynix's subsidiary SK hynix America, Respondents pursue this Letter of Request to SK hynix Inc. to the extent the information requested is not within the possession, custody, or control of SK hynix America. For example, to the extent that SK hynix America argues that key technical or financial evidence is only available through SK hynix Inc., pursuing this Letter of Request now is necessary, particularly in light of the shortened schedule of the Investigation. |
|---|---|
| 8. Evidence to be obtained or other judicial act to be performed and purpose of the evidence or judicial act sought | |
| 8a. Evidence to be obtained or other judicial act to be performed (Article 3, d) | It is requested that a judicial authority of the Republic of Korea order SK hynix to produce responses to questions relating to its investments in the United States regarding its MRDIMM, RDIMM, and HBM products and technical features of those products. The requested information is set forth with more specificity in Attachment A. |
| 8b. Purpose of the evidence or judicial act sought | The requested information will provide evidence directly relevant to the existence of a domestic industry pursuant to 19 U.S.C. § 1337(a)(1)(2), and (3), and that evidence may then be introduced at the evidentiary hearing held by the Administrative Law Judge in the Investigation. Netlist alleges that SK hynix is a licensee of the Asserted Patents and thus intends to rely on certain of SK hynix's investments in the United States.<br><br>In Attachment A, Request Nos. 1-3 seek identification of the particular model numbers for the DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs that have been produced by SK hynix since January 2021. Respondents seek this information in order to confirm or rebut the relevance of SK hynix's investments in the U.S. to specific products. |

Requests Nos. 4-6 seek information related to SK hynix's manufacturing and sales volume. This evidence is directly relevant to the economic prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(3)(A), (B), and (C), which requires the showing of significant investment in the United States tied to inventions claimed in the asserted patents. This evidence is also relevant to whether an exclusion order in this Investigation would harm the public interest in the United States. *See* 19 U.S.C. § 1337(d). Specifically, this request seeks information relevant to whether SK hynix would have the capacity to satisfy the demand in the United States and replace those excluded products if there were an exclusion order.

Requests Nos. 7-11 seek information regarding the structure, function, and operation of SK hynix's DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs. This is all evidence directly relevant to the technical prong of the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3), which requires an analysis of the function of a product in comparison to the asserted patent claims.

Request No. 12-16 seek information relating to possible prior art and claims that SK hynix previously made contesting the validity of an asserted patent in this Investigation. This request is directly relevant to the validity and enforceability of the asserted patent which required for relief under 19 U.S.C. § 1337(a)(1)(B).

Request No. 17 seeks information related to the licensing of the asserted patents. Evidence surrounding the licensing of the asserted patents is directly relevant as Netlist intends to rely on SK hynix as a licensee of the asserted patents to satisfy the domestic industry requirement under 19 U.S.C. § 1337(a)(2) and (3).

Request Nos. 18 and 19 are meant to identify any inconsistencies between SK hynix's responses to these requests and what has been discussed with other parties or related entities.

| | |
|---|---|
| 9. Identity and address of any person to be examined (Article 3, e) | None. |
| 10. Questions to be put to the persons to be examined or statement of the subject- matter about which they are to be examined (Article 3, f) | None. |
| 11. Documents or other property to be inspected (Article 3, g) | As an alternative to production of documents, see the numbered list of requests for production of information set forth in Attachment A. |
| 12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | Where a response to a request for information includes supporting documents, it is respectfully requested that each document be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business. |
| 13. Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Articles 3, I, and 9) | In this matter, a Protective Order has been entered that governs the production of information, documents, testimony, and any record of the testimony. A copy of this order is attached hereto as Attachment B. Because this action involves confidential and proprietary business information, the protective order serves to protect such information from public disclosure.<br><br>Accordingly, the United States District Court for the District of Columbia requests that any information obtained in response to this Letter of Request be treated in accordance with the provisions of the Protective Order to protect confidential and proprietary information. |
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | It is requested that the individuals identified below be furnished, as soon as practicable, with a copy of the executed Letter of Request:<br><br>F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200<br>Email: Samsung-Netlist-ITC@kirkland.com |
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | None. |

| | |
|---|---|
| 16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | SK hynix may refuse to give evidence only insofar as he or she has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of the Republic of Korea. |
| 17. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | To the extent that there are expenses associated with providing assistance in response to this Letter of Request, this Court will see that the Central Authority of Korea is reimbursed by:<br><br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Tel.: (202) 389-5000 |
| Date of Request | _____ day of _____ 2026 |
| Signature and Seal of the Requesting Authority | _____<br>The Honorable _____<br>United States District Judge United States District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, D.C. 20001<br>United States of America<br><br>Signed in _____, this<br><br>_____ day of _____, 2025<br><br>[Affix seal of court below:] |
| Attachments:<br>Attachment A: Requests for Information to be Produced by SK hynix | |

# Attachment A

## REQUESTS FOR INFORMATION TO SK HYNIX INC.

### DEFINITIONS

The following definitions apply to the Requests set forth below:

1.      "SK hynix," "You," "Your," and "Yourself" means SK hynix Inc. and any of its predecessors, divisions, departments, subsidiaries, and other legal Entities that are wholly or partially owned or controlled by SK hynix Inc., either directly or indirectly, together with any and all parent and affiliated companies or corporations, and all present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals or business Entities in the employ of or otherwise acting on behalf of SK hynix Inc.

2.      "Complainant" or "Netlist" means the Complainant Netlist, Inc., including all of its present and former corporate locations; all of its present and former predecessors, predecessors-in-interest, successors, assigns, affiliates, direct or indirect subsidiaries, parents, and trusts; all firms, corporations, and other Entities acting under common control with Netlist, in joint venture with Netlist, or under licensing or partnership agreements with Netlist; all Entities that own or are owned by Netlist in whole or in part; and all divisions and operating units thereof. Netlist further includes all of Netlist's present and former employees, agents, servants, representatives, directors, officers, accountants, consultants, attorneys, and investigators, and all others currently or formerly acting or purporting to act on behalf of Netlist or subject to the direction and control of Netlist.

3.      "Respondent(s)" shall refer to any or all of the named Respondents in this Investigation, including Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.

4.      "Samsung" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.

5.     The term "this Investigation" means the above-captioned investigation, *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof*, Investigation No. 337-TA-1472.

6.     "'035 patent" means U.S. Patent No. 9,824,035, including any corrections, reexaminations, or applications thereof.

7.     "'731 patent" means U.S. Patent No. 10,025,731, including any corrections, reexaminations, or applications thereof.

8.     "'523 patent" means U.S. Patent No. 10,217,523, including any corrections, reexaminations, or applications thereof.

9.     "'608 patent" means U.S. Patent No. 10,268,608, including any corrections, reexaminations, or applications thereof.

10.    "'087 patent" means U.S. Patent No. 12,308,087, including any corrections, reexaminations, or applications thereof.

11.    "'366 patent" means U.S. Patent No. 12,373,366, including any corrections, reexaminations, or applications thereof.

12.    "Asserted Patents" means the '035, '731, '523, '608, '087, and '366 patents, and any other patent Netlist is permitted to assert in any amended Complaint.

13.    "Prior Litigation" means any proceeding, lawsuit, or litigation between You and Netlist concerning the Asserted Patents in a United States District Court, before the ITC Commission, or the United State Patent and Trademark Office, including but not limited to, *Netlist, Inc. v. SK hynix America Inc. et al.*, No. 6:20-cv-00525 (W.D. Tex. May 10, 2021), *Netlist, Inc. v. SK hynix Inc. et al.*, No. 6:20-cv-00194 (W.D. Tex. Mar. 17, 2020), and *SK hynix Inc. et al v. Netlist, Inc.* PTAB-IPR2020-01421 (PTAB Aug. 21, 2020).

14.    "Request(s)" means the Categories of information to be Produced below in this Attachment.

15.    "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, process, method, or assemblage of components or parts (either individually or collectively) which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

16.    "JEDEC standards" means the technical standards and specifications published by or in conjunction with the Joint Electron Device Engineering Council ("JEDEC").

17.    "DDR5" means Double Data Rate 5, referring to the fifth generation of a type of computer memory called Synchronous Dynamic Random-Access Memory ("SDRAM").

18.    "DIMM(s)" means Dual In-Line Memory Modules, including but not limited to, MRDIMMs, RDIMMs, UDIMMs, and SODIMMs.

19.    "MRDIMM(s)" means Multiplexed Rank Dual In-Line Memory Modules, Multi-Ranked Buffered Dual In-Line Memory Modules, and Multiplexer Combined Ranks Dual In-Line Memory Modules.

20.    "RDIMM(s)" means Registered Dual In-Line Memory Modules.

21.    "HBM(s)" means High Bandwidth Memory, including HBM2, HBM2E, HMB3, HBM3E, HMB4 and HBM4E.

22.    "Component(s)" means parts that are assembled into a DDR5 MRDIMM, DDR5 RDIMM, or HBM product, including but not limited to, power management integrated circuits (PMIC), registering clock driver (RCD) chips, multiplexed registering clock driver (MRCD) chips, DRAM chips, DRAM dies, interface dies, logic dies, buffer dies, control dies, data buffers (DB),

multiplexed rank data buffers (MDB), temperature sensors, printed circuit boards, and serial presence detect (SPD) circuits.

23.    "TSV" means Through-Silicon Via.

24.    "Specification(s)" means a document outlining the requirements, design, functionality, and architecture for a product, including logic diagrams, state diagrams, block diagrams, timing diagrams, chip layouts, mask layouts, interposer layout, board layout files, chip layout files, CAD files, schematics, circuit diagrams, interconnection diagrams, pinout diagrams, ballout diagrams, and input/output signal descriptions.

25.    "Written Submissions" means any filings that were submitted to the authoritative body or served on an opposing party to the litigation.

26.    "Document(s)" is defined broadly to be given the full scope of that term contemplated in the Commission's Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and includes all non-identical copies of a document, all drafts of final documents, all other written, typed, printed, recorded, or graphically portrayed matter in any form or embodiment, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Your actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Federal Rule of Evidence 1001. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

27.    "Thing" or "Things" has the broadest meaning allowable under 19 C.F.R. § 210.30 and Rule 34 of the Federal Rules of Civil Procedure. This meaning encompasses any tangible

object of any kind and nature, including, without limitation, prototypes, models, and physical specimens thereof.

28.     "Entity" or "Entities" means any Person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic Person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof. The acts of an Entity shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the Entity's behalf.

29.     "Person" or "Persons" means any natural individual or individuals.

## REQUESTS FOR INFORMATION

**REQUEST NO. 1**

Please identify, by product name and model number, all DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs produced by or for SK hynix since January 1, 2021, and if there are any documents containing such information, please provide them.

**REQUEST NO. 2**

Please identify, by product name and model number, all third-party components incorporated into any DDR5 MRDIMMs DDR5 RDIMMs, and HBMs produced by or for SK hynix since January 1, 2021, and if there are any documents containing such information, please provide them.

**REQUEST NO. 3**

Please identify, by product name and model number, all third-party components incorporated into any HBM1s produced by or for SK hynix, and if there are any documents containing such information, please provide them.

**REQUEST NO. 4**

Please identify your volume of production, in terms of total units manufactured, for DDR5 MRDIMMs, DDR5 RDIMMs and HBMs, since January 1, 2021, both (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 5**

Please identify your volume of sales, of in terms of total units sold, for DDR5 MRDIMMs, DDR5 RDIMMs and HBMs, since January 1, 2021, both (i) in the United States and (ii) outside of the United States.

**REQUEST NO. 6**

Please describe Your capacity to increase production of DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs to accommodate higher demand for these products in 2026, 2027, and 2028, and if there are any documents containing such information, please provide them.

**REQUEST NO. 7**

Please describe the structure, function, and operation of DDR5 MRDIMMs and DDR5 RDIMMs produced by or for SK hynix since January 1, 2021, including their power supply, Components, signal lines and signal pins, how power is supplied to each Component, read and write operations, the Decision Feedback Equalizer circuits, the On-Die Termination circuits, rank selection in a read or write operation, circuits for receiving and processing control/address signals, and circuits for receiving and processing control/address signals in the registering clock driver or multiplexed registering clock driver; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 8**

Please describe the operation of the DDR5 MRDIMMs and DDR5 RDIMMs produced by or for SK hynix since January 1, 2021, including (i) at power-up, (ii) in the event of an over-voltage in the power supply input; (iii) in the event of an under-voltage in the power supply input; and (iv) during normal operation; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 9**

Please describe how the MDBs included in DDR5 MRDIMMs produced by or for SK hynix since January 1, 2021 work, including (a) explanations of the paths that signals travel through the MDBs, (b) how timing parameters (including but not limited to delay parameters) for use in a read or write operation are selected, set, or received and (c) which circuits, functional blocks and/or registers are involved in selection and/or setting.

**REQUEST NO. 10**

Please describe the Through-Silicon Via ("TSV") structures utilized in the HBMs produced by or for SK hynix since January 1, 2021, including the function of each TSV structure, the electrical connections for each TSV structure, signals or power sent to each TSV structure and the sources of the signals and power, and signals sent by or via each TSV structure and the destinations of the signals; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 11**

Please describe the read and write operations of the HBMs produced by or for SK hynix since January 1, 2021, including (a) signals that are received by control die, buffer die, logic die, or interface die; (b) signals generated by the control die, buffer die, logic die, or interface die in response to the received signals and their functionality; (c) signals transmitted from the control die, buffer die, logic die, or interface die to the core die(s) in response to command/address signals received by the control die, buffer die, logic die, or interface die; (d) the changing of the TSV driver between a non-driving and a driving state in the control die, buffer die, logic die, or interface die associated with channels (or pseudochannels) selected for a read or write operation, including all signals involved therein; (e) the changing of the TSV driver between a non-driving and a driving state  in the control die, buffer die, logic die, or interface die associated with channels (or pseudo-channels) not selected for a read or write operation, including all signals involved therein; (f) changing of the TSV driver between a non-driving and a driving state in the core die associated with channels (or pseudo-channels) selected for a read or write operation, including all signals involved therein; (g) changing of the TSV driver between a non-driving and a driving state in core

die associated with channels (or pseudo-channels) not selected for a read or write operation, including all signals involved therein.

**REQUEST NO. 12**

Please identify, by product name and model number, all DDR5 MRDIMMs, DDR5 RDIMMs, and HBMs produced by or for SK hynix before April 14, 2008, and if there are any documents containing such information, please provide them.

**REQUEST NO. 13**

Please describe the structure and function of HBM1 produced by or for SK hynix, including but not limited to the function of each TSV structure, the electrical connections for each TSV structure, signals or power sent to each TSV structure and the sources of the signals and power, and signals sent by or via each TSV structure and the destinations of the signals; and if there are any specifications or technical documents containing such information, please provide them.

**REQUEST NO. 14**

Please describe the date of conception, the date of reduction to practice, the earliest offer(s) for sale, the earliest sale(s), and earliest public display(s) of system prior art, including but not limited to HBM1.

**REQUEST NO. 15**

For each DDR5 MRDIMM, DDR5 RDIMM, and HBM, please identify and describe any Documents and Communication that You prepared for, distributed, demonstrated, or displayed at any JEDEC meeting, conference, exhibition, seminar, or convention.

**REQUEST NO. 16**

Please identify any grounds and describe the reasoning upon which SK hynix has previously argued or asserted that the '523 Patent is unenforceable or invalid.

**REQUEST NO. 17**

Please describe any proposals SK hynix submitted to Netlist to license any of the Asserted Patents, or a portfolio of patents including any of the Asserted Patents, including any communications back from Netlist regarding the proposal.

**REQUEST NO. 18**

Please identify and describe any communications you have had regarding this Investigation with SK hynix America, any of your other subsidiaries, or with Netlist.

**REQUEST NO. 19**

Please identify and describe any communications you have had regarding any of the Asserted Patents with SK hynix America, any of your other subsidiaries, or with Netlist.

Exhibit 8

# 미국 연방 지방 법원
# 컬럼비아 특별구

Netlist, Inc.,

　　　　　　원고(신청인),

　　　대.

삼성전자주식회사, Samsung Electronics America,
Inc., Samsung Semiconductor, Inc., Google LLC, and
Super Micro Computer, Inc.

　　　　피고들 (피신청인들)

사건번호 _____

**요청서 발부를 위한 권고서**

## 국제 사법 공조에 의한 대한민국에의 정보 제출 요청서

　　　미국 컬럼비아 특별구 연방 지방법원은 대한민국 사법당국인 대한민국 법원행정처에 하기 엔티티로부터 민사 또는 상사 사안에서의 해외 증거 수집에 관한 1970년 3월 18일 헤이그협약에 따른 정보 제출을 받기 위해 국제 사법공조를 정중히 요청드립니다:

　　　**SK하이닉스주식회사**
　　　대한민국 경기도 이천시
　　　부발읍 경충대로 2091

미국 컬럼비아 특별구 연방 지방법원은 본 소송에 대한 적절한 관할권을 가지고 있으며 관할권 내외에서 증거의 제출을 강제할 수 있는 권한을 가진 법과 형평에 부합하는 관할 법원입니다.

　　　요청된 증거는 본 법원이 승인한 상기 사안, 즉 미국 국제무역위원회(ITC) 조사 번호 337-TA-1472 *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트*(이하 "본건 조사")에 대한

행정 절차를 위한 것입니다. 피신청인들 삼성전자주식회사, Samsung Semiconductor, Inc.("삼성"), Google LLC("구글"), Super Micro Computer, Inc.(이하 모두 총칭하여 "피신청인들")는 SK하이닉스주식회사("SK하이닉스")에게 자사의 MRDIMM, RDIMM 및 HBM 제품 및 SK하이닉스가 해당 제품과 관련하여 미국에서 진행한 투자에 관한 증거확보를 요청드립니다. 신청인 Netlist, Inc.(이하 'Netlist')는 SK하이닉스가 본건 조사에서 주장한 특허의 라이선스권자라고 주장합니다. Netlist는 SK하이닉스가 수행한 활동이 미합중국법전 제19편 제1337(a)(2) 및 (3)항에 따라 미국 내 국내산업(DI)의 존재를 입증한다고 주장합니다. 또한, Netlist는 본건 조사에서 피신청인들의 제품에 대해 배제 명령이 내려질 경우 증가된 수요를 공급하기 위해 생산량을 늘릴 수 있는 SK하이닉스의 캐파가 있다고 주장합니다.

본 법원은 권한의 적정한 행사를 위해 대한민국 법원행정처의 개입 없이는 SK하이닉스주식회사로부터 구하려는 증거를 확보할 수 없다고 판단하였습니다. 위 행정소송에는 2026년 6월 8일로 예정된 사실관계 증거개시(디스커버리), 2026년 10월 28일~11월 4일로 예정된 증거심리 등 중요한 기한이 있습니다. 따라서 본 법원은 국제업무국장께서 이 요청을 가능한 한 신속히 처리해 줄 것을 추가로 요청드립니다.

본 법원은 아래에 기재된 지원을 요청드립니다:

| 1. 발신자 | F. Christopher Mizzo, P.C. |
| --- | --- |
| | Kirkland & Ellis LLP |
| | 1301 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20004 |
| | 전화: (202) 389-5000 |
| | 팩스: (202) 389-5200 |

| | 이메일: Samsung-Netlist-ITC@kirkland.com |
|---|---|
| 2. 요청 대상 국가의 중앙 기관 | 대한민국 (우) 06590<br>서울 서초구 서초대로 219<br>법원행정처<br>수신: 국제업무국장 |
| 3. 집행된 요청을 반환받을 사람 | F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>전화: (202) 389-5000<br>팩스: (202) 389-5200<br>이메일: Samsung-Netlist-ITC@kirkland.com |
| 4. 요청하는 기관이 요청서에 대한 응답의 수령을 요구하는 날짜 명시 | |
| 날짜 | 실제적으로 가능한 한 빨리 대응해 주시되, 어떠한 경우에도 2026년 3월 11일까지 대응해 주시기 바랍니다. |
| 긴급한 이유 | 1930년 관세법 개정 337조(미합중국법전 제19편 §1337)에 따라 미국 국제무역위원회에서의 조사는 "실제적으로 가능한 한 빠른 시일 내에" 완료되어야 합니다. 이 조사의 사실관계 증거개시(디스커버리) 마감일은 2026년 7월 8일입니다. |
| 5. 협약 제3조에 따라 아래 서명한 요청인은 다음과 같은 요청을 제출하는 것을 영광으로 생각합니다: | |
| 5.a 요청하는 사법 당국<br>(제3조 a항) | 명예로운 _____<br>미국 지방법원 판사<br>미국 컬럼비아 특별구 연방 지방법원<br>333 Constitution Ave., N.W.<br>Washington. DC 20001<br>미국 |
| 5.b 요청 대상 당국(제3조, a) | 대한민국 |
| 5c. 사건의 이름 및 식별 번호 | *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트*, 미국 국제무역위원회 조사 번호 337-TA-1472 |
| 6. 당사자 및 그 대리인(요청 대상 국가의 대리인 포함)의 이름과 주소(제3조 b항). | |

| 6a. 원고(신청인) | Netlist, Inc.<br>111 Academy Way<br>Suite 100<br>Irvine, CA 92617 |
|---|---|
| 원고 대리인 | Jason Sheasby<br>Annita Zhong, PhD<br>Andrew Strabone<br>Lisa Glasser<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>전화: (310) 277-1010<br><br>Daniel E. Yonan<br>Donald R. Banowit<br>William H. Milliken<br>Richard M. Bemben<br>Lauren A. Watt<br>Sterne, Kessler, Goldstein & Fox PLLC<br>1101 K Street NW, 10th Floor<br>Washington DC 20005<br>전화: (202) 371-2600 |
| 6.B 피고들 (피신청인들) | 삼성전자주식회사<br>대한민국 (우) 443-742<br>경기도 수원시 영통구 삼성로 129<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Electronics America, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Samsung Semiconductor, Inc.<br>6625 Excellence Way<br>Plano, Texas 75023<br><br>Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, California 94043<br><br>Super Micro Computer, Inc.<br>980 Rock Ave.<br>San Jose, California 95131 |
| 피신청인 대리인 | *피신청인 Google LLC의 대리인* |

|  | Gregory F. Corbett |
|  | Charles T. Steenburg |
|  | Anant K. Saraswat |
|  | Meaghan P. Luster |
|  | WOLF, GREENFIELD & SACKS, P.C. |
|  | 600 Atlantic Avenue |
|  | Boston, MA 02210 |
|  | 전화: 617.646.8000 |
|  |  |
|  | Elizabeth A. DiMarco |
|  | Suresh S. Rav |
|  | Simon Lu |
|  | WOLF, GREENFIELD & SACKS, P.C. |
|  | 601 Massachusetts Avenue, NW |
|  | Washington, DC 20001 |
|  | 전화: 202.571.5001 |
|  | *피신청인들 삼성전자주식회사,  Samsung Electronics America, Inc., 및 Samsung Semiconductor, Inc. 의 대리인* |
|  |  |
|  | Paul F. Brinkman, P.C. |
|  | F. Christopher Mizzo, P.C. |
|  | Michael A. Pearson, Jr. |
|  | Karthik Ravishankar |
|  | Maranda Johnston |
|  | David Corasaniti |
|  | Kirkland & Ellis LLP |
|  | 1301 Pennsylvania Avenue, N.W. |
|  | Washington, D.C. 20004 |
|  | 전화: (202) 389-5000 |
|  |  |
|  | Greg S. Arovas, P.C. |
|  | Todd Friedman, P.C. |
|  | James E. Marina, P.C. |
|  | Alan Rabinowitz |

| | New York, NY 10022 |
|---|---|
| | 전화: (212) 446-4800 |
| | |
| | Greg Polins |
| | Kirkland & Ellis LLP |
| | 333 West Wolf Point Plaza |
| | Chicago, IL 60654 |
| | 전화: (312) 862-2000 |
| | |
| | Luke Norrell |
| | Cameron Lindsay |
| | Kirkland & Ellis LLP |
| | 401 W 4th St, Suite 4000 |
| | Austin, TX 78701 |
| | 전화: (512) 678-9050 |
| | |
| | Brian R. Nester |
| | Covington & Burling LLP |
| | One CityCenter, |
| | 850 Tenth Street, NW |
| | Washington D.C. 20001-4956 |
| | 전화: (202) 662-6000 |
| | 이메일: BNester@cov.com |
| | *피신청인 Super Micro Computer, Inc.의 대리인* |
| | |
| | Richard S. Zembek |
| | Charles B. Walker |
| | Daniel S. Leventhal |
| | Talbot Hansum |
| | Ryan E. Meltzer |
| | NORTON ROSE FULBRIGHT US LLP |
| | 1550 Lamar Street, Suite 2000 |
| | Houston, Texas 77010 |
| | 전화: (713) 651-5151 |
| 6.c 기타 당사자 | 불공정 수입 조사국 |
| | 미국 국제무역위원회 |
| | 500 E Street, S.W., Suite 401 |
| | Washington, DC 20436 |
| 7. 절차의 성격 및 목적 | 이 소송은 미국 국제무역위원회가 1930년 관세법 개정 337조(미합중국법전 제19편 §1337)에 따라 진행 중인 소송으로, 2025년 9월 30일에 Netlist, Inc.가 제기한 소장에 근거하여 진행 중입니다. |

Netlist, Inc.는 피신청인들 삼성전자주식회사, Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc.가 Netlist의 미국 특허 번호 12,373,366('366 특허'), 10,025,731('731 특허'), 10,268,608('608 특허'), 10,217,523('523 특허'), 9,824,035('035 특허'), 12,308,087('087 특허')(총칭하여 '주장된 특허')를 침해하는 특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트를 불법적으로 미국으로 수입하고, 미국으로 수입하기 위해 판매하고, 및/또는 수입한 후 미국 내에서 판매한다고 주장합니다.

국제무역위원회는 2025년 11월 20일, 2025년 12월 5일, 2025년 12월 12일, 2025년 12월 16일에 보완된 Netlist의 소장에 근거하여 절차를 개시했습니다. 절차가 개시된 후, 이 사건은 행정법 판사 MaryJoan McNamara에게 배정되어 재판 전 사안들을 주재하고 재판을 진행하며 사건의 쟁점에 대한 초기 판정을 내렸습니다. 초기 판정은 미국 연방순회항소법원에 항소할 수 있는 권리와 함께 국제무역위원회의 검토 대상이 될 수 있습니다.

피신청인들은 본건 소장에 명시된 바와 같이, SK하이닉스가 주장된 특허(Asserted Patents)의 라이선시이며 주장된 특허를 실시하는 것으로 판단되는 제품을 판매하고 있다고 Netlist가 주장하기 때문에 이 요청서를 추구합니다. *참조*: 소장 ¶¶ 10, 16, 17. Netlist는 미국 내 SK하이닉스의 제품 및 투자를 근거로 19 연방규정법 제19편 §1337(a)에 따라 국내산업(DI)이 존재한다고 주장하고자 의도합니다. 132-135, 140-148면. 따라서 피신청인들은 SK하이닉스가 국내산업(DI) 문제와 직접적으로 관련된 정보를 보유하고 있을 가능성이 높다고 주장합니다.

구체적으로 피신청인들은 SK하이닉스가 (i) RDIMM, MRDIMM 및 HBM 제품의 설계, 구조 및 기능에 관한 고유한 정보를 점유하고 있으며 (ii) 해당 제품을 시장에 출시하기 위해 SK하이닉스가 미국에서 지출한 비용 및

| | 투자에 관한 정보를 점유하고 있다고 주장합니다. 추가로, SK하이닉스의 미국 내 투자가 특히 전 세계 투자와 비교하여 중요한지 여부에 관한 정보를 점유할 가능성이 높습니다.<br><br>삼성은 또한 소환장을 통해 SK하이닉스의 자회사인 SK hynix America에 문서를 요청했지만, 피신청인들은 요청된 정보가 SK hynix America가 점유, 보관 또는 통제할 수 없는 범위 내에서 SK하이닉스주식회사에 이 요청서를 추진하고 있습니다. 예를 들어, SK hynix America가 주요 기술적 또는 재무적 증거가 SK하이닉스주식회사를 통해서만 입수 가능하다고 주장하는 범위 내에서, 특히 본건 조사 일정의 단축을 고려할 때 지금 이 요청서를 추진하는 것이 필요합니다. |
|---|---|
| **8. 확보하고자 하는 증거 또는 기타 수행하고자 하는 사법행위 및 요청하는 증거 또는 사법행위의 목적** | |
| 8a. 취득하고자 하는 증거 또는 기타 수행하고자 하는 사법 행위(제3조 d항) | 대한민국 사법 당국이 SK하이닉스의 MRDIMM, RDIMM 및 HBM 제품 및 해당 제품들의 기술적 특징에 대한 SK하이닉스의 미국 내 투자와 관련된 질문에 대한 응답을 제출하도록 SK하이닉스에 명령할 것을 대한민국 사법 당국에 요청드립니다. 요청된 정보는 별첨 A에 더 구체적으로 명시되어 있습니다. |
| 8b. 요청하는 증거 또는 사법 행위의 목적 | 요청된 정보는U.S.C.(미합중국법전) 제19편 §1337(a)(1)(2) 및 (3)에 따라 국내산업(DI)의 존재와 직접적으로 관련된 증거를 제공할 것이며, 해당 증거는 본건 조사에서 행정법 판사가 진행하는 증거심리에서 도입될 수 있습니다. Netlist는 SK하이닉스가 주장된 특허의 라이센시이며, 따라서 SK하이닉스의 미국 내 투자 중 일부에 의존할 의도가 있다고 주장합니다.<br><br>별첨 A의 요청 번호 1-3은 SK하이닉스가 2021년 1월부터 생산한 DDR5 MRDIMM, DDR5 RDIMM 및 HBM의 특정 모델 번호의 식별을 요청드립니다. 피신청인들은 SK하이닉스의 미국 내 투자와 특정 제품의 관련성을 컨펌하거나 반박하기 위해 이 정보를 요청드립니다. |

4-6번 요청은 SK하이닉스의 제조 및 판매량과 관련된 정보를 요청드립니다. 이 증거는 미합중국법전 제19편 제1337(a)(3)(A), (B) 및 (C)에 따른 국내산업(DI) 요건의 경제적 측면과 직접적으로 관련이 있으며, 이는 주장된 특허에 청구된 발명과 관련된 미국 내 상당한 투자를 입증할 것을 요구합니다. 이 증거는 본 조사에서 배제 명령이 미국의 공익을 해칠 수 있는지 여부와도 관련이 있습니다. *참조*: 미합중국법전 제19편 §1337(d). 구체적으로, 이 요청은 SK하이닉스가 배제 명령이 있을 경우 미국 내 수요를 충족하고 배제된 제품을 대체할 수 있는 능력이 있는지 여부와 관련된 정보를 요청드립니다.

7-11번 요청은 SK하이닉스의 DDR5 MRDIMM, DDR5 RDIMM 및 HBM의 구조, 기능 및 동작에 관한 정보를 요청드립니다. 이는 모두 미합중국법전 제19편 §1337(a)(2) 및 (3)에 따른 국내산업(DI) 요건의 기술적 측면과 직접적으로 관련된 증거로서, 주장된 특허 청구항들과 비교하여 제품의 기능을 분석할 것을 요구합니다.

요청 번호 12-16은 SK하이닉스가 본 조사에서 주장한 특허의 유효성에 대해 이전에 이의를 제기했던 가능한 선행기술 및 청구항과 관련된 정보를 요청드립니다. 이 요청은 미합중국법전 제19편 제1337(a)(1)(B)에 따라 구제를 위해 필요한 주장된 특허의 유효성 및 집행 가능성과 직접적으로 관련되어 있습니다.

요청 번호 17은 주장된 특허의 라이선스와 관련된 정보를 요청드립니다. Netlist는 미합중국법전 제19편 §1337(a)(2) 및 (3)에 따른 국내산업(DI) 요건을 충족하기 위해 주장된 특허의 라이선시인 SK하이닉스에 의존하고자 하기 때문에 주장된 특허의 라이선싱과 관련된 증거가 직접적으로 관련되어 있습니다.

18번 및 19번 요청은 이러한 요청에 대한 SK하이닉스의 응답과 다른 당사자 또는 관련 기관과 논의한 내용 간에 불일치하는 부분이 있는지 식별하기 위한 것입니다.

9

| | |
|---|---|
| 9. 조사 대상자의 신원 및 주소(제3조 e항) | 없음. |
| 10. 조사 대상자에게 질문할 사항 또는 조사 대상 주제에 대한 진술(제3조 f항) | 없음. |
| 11. 열람할 서류 또는 기타 재산(제3조 g항) | 문서 제출에 대한 대안으로, 별첨 A에 명시된 정보 제출 요청의 번호가 매겨진 목록을 참조하십시오. |
| 12. 선서 또는 확인을 통해 증거를 제출할 것을 요구하는 경우 및 사용해야 하는 특별한 양식(제3조 h항) | 정보 요청에 대한 응답에 증빙 문서가 포함된 경우, 각 문서는 평상시 일상 업무 과정에서 유지되는 대로 축약이나 편집 없이, 모든 비동일 중도 드래프트 버전들을 포함하여, 통째로 전체를 제출할 것을 정중하게 요청드립니다. |
| 13. 따라야 할 특별한 방법 또는 절차(예: 구두 또는 서면, 축어적 녹취 또는 요약, 반대신문등)(제3조, 제1조 및 제9조). | 본건 사안과 관련하여 정보 제출, 문서, 증언 및 증언 기록에 적용되는 보호명령이 발령되었습니다. 이 명령의 사본은 여기에 별첨 B로 첨부되어 있습니다. 이 소송에는 기밀 및 전유 사업 정보가 포함되므로 보호명령은 해당 정보가 공개되지 않도록 보호하는 역할을 합니다.<br><br>따라서 미국 컬럼비아 특별구 연방 지방법원은 본 요청서(Letter of Request)에 대한 응답으로 얻은 모든 정보를 기밀 및 전유 정보 보호를 위한 보호명령의 규정에 따라 처리할 것을 요청드립니다. |
| 14. 요청의 집행을 위한 시간과 장소, 통지 대상자의 신원 및 주소에 대한 통지 요청(제7조) | 아래에 명시된 개인들에게 집행된 요청서 사본을 가급적 빨리 제공해주실 것을 요청드립니다:<br><br>F. Christopher Mizzo, P.C.<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>전화: (202) 389-5000<br>팩스: (202) 389-5200<br>이메일: Samsung-Netlist-ITC@kirkland.com |
| 15. 요청서 집행 시 요청하는 기관의 사법 담당자의 출석 또는 참여 요청(제8조) | 없음. |

| | |
|---|---|
| 16. 원산지 국가의 법률에 따른 증거제공 거부권 또는 의무의 명시(제11조 b항) | SK하이닉스는 미국 법률 또는 대한민국 법률에 따라 증거 제공을 거부할 수 있는 특권 또는 의무가 있는 경우에만 증거 제공을 거부할 수 있습니다. |
| 17. 협약 제14조 제2항 또는 제26조에 따라 실비정산 대상 수수료 및 경비를 부담하는 자 | 이 요청서에 대한 응답으로 지원을 제공하는 것과 관련된 비용이 있는 경우, 본 법원은 대한민국 중앙당국이 다음으로부터 정산 받는 것을 확인합니다:<br><br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>전화: (202) 389-5000 |
| 요청 날짜 | 2026년 _____(월) _____(일) |
| 요청하는 기관의 서명 및 날인 | 명예로운 _____<br>미국 컬럼비아 특별구 연방 지방법원 판사<br>United States District Judge United States District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, D.C. 20001<br>United States of America<br><br><br>서명: _____,<br><br>2026년 _____(월) _____(일) 당일 날짜에<br><br>[아래에 법원 인장 찍음:] |
| 첨부: | |
| 별첨 A: SK하이닉스 제출 정보 요청서 | |

**CERTIFICATE OF TRANSLATION ACCURACY**

I am a professional translator, reviewer, and/or project coordinator specializing in translating English to Korean, Japanese, and Chinese and vice versa.

I served as Chief Examiner of the certified court interpreter test for the State of California and as a contract translator and interpreter for various federal agencies through the U.S. Department of State of for more than a decade. I worked as an instructor at the University of California at Berkeley, and the Middlebury Institute of International Studies at Monterey Graduate Program in Translation.

I have more than 35 years of project coordinator experience in routinely translating technical, legal, and business documents from English to Korean and vice versa submitted to, among others, Korean judicial authorities, U.S. federal courts, the U.S. International Trade Commission (ITC), the U.S. Patent and Trademark Office (USPTO), and the USPTO Patent Trial and Appeal Board (PTAB).

I certify that I translated the following document from the English language to the Korean language. I also certify that it is a true, correct, and complete translation to the best of my knowledge and ability.

**Appendix D to Order 14  (Letter Request for Witness Testimony)**

I certify under penalty of perjury that the foregoing is true and correct.

Executed this on the 5th day of March 2026 in Contra Costa County of the State of California.

By: _____
        Alex N. Jo
        Member, ATA

# 별첨 A
# (Attachment A)

## SK 하이닉스주식회사에 대한 정보 요청

## <u>정의</u>

다음 각 정의는 아래에 기재된 요청에 적용됩니다.

1.        "SK 하이닉스", "귀하", "귀하의", "귀하 자신"은 SK 하이닉스주식회사 및 그 모든 전신(predecessors), 사업부, 부서, 자회사, 그리고 모든 모회사 및 계열사 또는 코포레이션, 그리고 모든 현직 또는 전직 이사, 임원, 직원, 파트너, 대리인, 컨설턴트, 그리고 전문가, 대리인, 변호사 등 SK 하이닉스주식회사에 의하여 고용되거나 기타 방식으로 대리하는 기타 모든 개인 또는 사업체와 함께 SK 하이닉스주식회사가 직간접적으로 전체 또는 일부를 소유하거나 지배하는 기타 법인들을 의미합니다.

2.        "신청인" 또는 "Netlist"는 신청인 Netlist, Inc.를 의미하며, 여기에는 다음이 포함됩니다. 다음: 현재 및 이전 모든 법인 로케이션, 현재 및 이전 모든 전신(predecessors), 권리상 전신, 인수인, 승계인, 양수인, 계열사, 직간접 자회사, 모회사 및 신탁; Netlist 와 공동 지배하에 있거나, Netlist 와 합작 투자하거나, Netlist 와 라이선스 또는 파트너십 계약에 따라 활동하는 모든 회사, 코포레이션 및 기타 엔티티; Netlist 의 전체 또는 일부를 소유하거나 Netlist 에 의하여 소유되는 모든 엔티티, 그리고 그 모든 사업부 및 운영 단위. 아울러, Netlist 에는 Netlist 의 현직 및 전직 직원, 대리인, 종업원, 대표, 이사, 임원, 회계사, 컨설턴트, 변호사, 조사관 및 현재 또는 과거에 Netlist 를 대리하거나 Netlist 의 지시 및 통제 하에 행동하거나 행동한다고 하는 모든 기타 모든 자를 포함합니다.

3.        "피신청인(들)"은 삼성전자주식회사, Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Google LLC, and Super Micro Computer, Inc. 등 본건 조사에서 언급된 피신청인들 중 일부 또는 전부를 지칭합니다.

4.        "삼성"은 삼성전자주식회사, Samsung Electronics America, Inc., Samsung Semiconductor, Inc.를 의미합니다.

5.        "본건 조사"라 함은 상기 제목의 조사, *특정 동적 랜덤 액세스 메모리(DRAM) 장치, 이를 포함하는 제품 및 그 컴포넌트*, 조사 번호 337-TA-1472 를 의미합니다.

6.        "'035 특허"는 미국 특허 제 9,824,035 호를 의미하며, 그 정정, 재심사 또는 출원서들을 포함합니다.

7.        "'731 특허"는 미국 특허 제 10,025,731 호를 의미하며, 그 정정, 재심사 또는 출원서들을 모두 포함합니다.

8.        "'523 특허"는 미국 특허 제 10,217,523 호를 의미하며, 그 정정, 재심사 또는 출원서들을 모두 포함합니다.

9.        "'608 특허'는 미국 특허 제 10,268,608 호를 의미하며, 그 정정, 재심사 또는 출원서들을 모두 포함합니다.

10.        "'087 특허"는 미국 특허 제 12,308,087 호를 의미하며, 그 정정, 재심사 또는 출원서들을 모두 포함합니다.

11.        "'366 특허"는 미국 특허 제 12,373,366 호를 의미하며, 그 정정, 재심사 또는 출원서들을 포함합니다.

12.        "주장된 특허들(Asserted Patents)"은 '035, '731, '523, '608, '087, '366 특허 및 Netlist 가 수정 소장에서 주장하도록 허락될 수 있는 기타 모든 특허를 의미합니다.

13.        "이전 소송(Prior Litigation)"은 미국 연방지방법원, ITC 위원회 또는 미국 특허청에서 주장된 특허와 관련하여 귀하와 Netlist 간에 진행 중인 모든 절차, 소송 또는 소송을 의미하며, 여기에는 *Netlist, Inc. v. SK hynix America Inc. 외.*, 6:20-cv-00525(텍사스 서부 디스트릭트 2021 년 5 월 10 일), *Netlist, Inc,* No. 6:20-cv-00194(텍사스 서부 디스트릭트 2020 년 3 월 17 일), 미국 특허심판원-당사자계 심판 PTAB-IPR2020-01421(미국 특허심판원 2020 년 8 월 21 일), *SK 하이닉스주식회사 외 대 Netlist, Inc.* 등이 포함됩니다.

14.    "요청(들)"이란 본 별첨의 아래 제출될 정보의 범주들을 의미합니다.

15.    "제품(들)"이란 특정 기능이나 목적을 달성하기 위해 전기적, 기계적, 화학적 또는 기타 방식으로 함께 동작하도록 설계된 기계, 제조물, 장치, 기기, 기구, 메커니즘, 어플라이언스, 공정, 방법 또는 구성 요소 또는 부품의 조립체(개별적으로 또는 집합적으로)을 의미하며, 판매 청약되거나, 판매되거나 개발 중인 것을 포함합니다.

16.    "JEDEC 표준"이란 Joint Electron Device Engineering Council("JEDEC")이 발행하거나 JEDEC 과 함께 발행되는 기술 표준 및 사양서를 의미합니다.

17.    "DDR5"는 Double Data Rat(더블 데이터 전송률) 5 를 의미하며, 동기식 동적 랜덤 액세스 메모리("SDRAM")라고 하는 5 세대 컴퓨터 메모리 유형을 의미합니다.

18.    "DIMM(들)"은 MRDIMM, RDIMM, UDIMM 및 SODIMM 을 포함하되 이에 국한되지 않는 듀얼 인라인 메모리 모듈을 의미합니다.

19.    "MRDIMM(들)"은 멀티플렉스랭크 듀얼 인라인 메모리 모듈, 멀티랭크 버퍼링 듀얼 인라인 메모리 모듈 및 멀티플렉서 결합 랭크 듀얼 인라인 메모리 모듈을 의미합니다.

20.    "RDIMM(들)"은 등록된 듀얼 인라인 메모리 모듈을 의미합니다.

21.    "HBM(들)"은 고대역폭 메모리(HBM2, HBM2E, HMB3, HBM3E, HMB4 및 HBM4E 포함)를 의미합니다.

22.    "컴포넌트(들)"는 전력 관리 집적 회로(PMIC), 등록 클록 드라이버(RCD) 칩, 다중 등록 클록 드라이버(MRCD) , DRAM 칩, DRAM 다이, 인터페이스 다이, 로직 다이, 버퍼 다이, 제어 다이, 데이터 버퍼(DB), 멀티플렉스랭크 데이터 버퍼(MDB), 온도 센서, 인쇄 회로 기판, 직렬 존재 감지(SPD) 회로를 포함하되 이에 국한되지 않는, DDR5 MRDIMM, DDR5 RDIMM 또는 HBM 제품에 조립되는 부품들을 의미합니다.

23.    "TSV"는 Through-Silicon Via(실리콘 관통전극)를 의미합니다.

24.    "사양서(들)"란 로직 다이어그램, 상태 다이어그램, 블록 다이어그램, 타이밍 다이어그램, 칩 레이아웃, 마스크 레이아웃, 인터포저 레이아웃, 보드 레이아웃 파일, 칩 레이아웃 파일, CAD 파일, 회로도, 회로도, 상호 연결도, 핀아웃 다이어그램, 볼아웃 다이어그램 및 입력/출력 신호 설명 등을 포함하여 제품에 대한 요구 사항, 설계, 기능 및 아키텍처 요약 문서를 의미합니다.

25.    "제출서면"이란 권한 있는 기관에 제출되거나 소송의 상대방에게 송달된 모든 서류를 의미합니다.

26.    "문서"는 위원회 실무및절차규칙, 연방민사절차규칙 및 연방증거규칙에서 고려하는 해당 용어의 전체 범위로 광범위하게 정의되며 모든 동일하지 않은 문서 사본, 최종 문서의 모든 드래프트 버전, 기타 모든 서면, 타이핑, 인쇄, 녹음 또는 그래픽으로 묘사된 모든 형태 또는 구현물을 포함합니다, 그리고 필요한 경우 정보를 얻고 번역할 수 있는 기타 모든 데이터 편집물로서, 생성된 매체에 관계없이 귀하가 실제로 또는 추정적으로 보관 또는 통제하고 있거나 과거에 보관하고 있는 모든 데이터 편집물, 복제 또는 저장(요청된 정보가 포함된 컴퓨터 프로그램 및 파일 포함), 연방증거규칙 1001 조에 정의된 대로 모든 녹음 또는 서면 등을 포함합니다. 원본 텍스트 또는 그 사진 복제본의 일부가 아닌 이니셜, 스탬프 날인 이니셜, 주석 또는 표기 등의 표시가 있는 모든 문서는 별도의 문서입니다.

27.    "물건" 또는 "물건들"은 연방규제법 제 19 편 §210.30 및 연방민사소송규칙 규칙 34 에 따라 허용되는 가장 넓은 의미를 갖습니다. 이 의미에는 프로토타입, 모형 및 그 물리적 시편을

포함하되 이에 국한되지 않는 모든 종류와 성격의 유형적 물체가 포함됩니다.

28. "엔티티" 또는 "엔티티들"은 모든 개인(Person), 법인, 회사, 파트너십, 개인 사업자, 회사, 이사회, 합작 투자, 조합, 조직, 신탁, 정부 기구, 기관, 당국, 위원회 또는 기타 모든 법인(juristic Person), 사업부 또는 집단 조직과 그 법적, 정부기구적, 조직적 또는 정치적 하부 조직을 의미합니다. 엔티티의 행위에는 그 이사, 임원, 소유주, 멤버, 직원, 대리인, 변호사 및 엔티티를 대리하는 기타 모든 대리인의 행위가 포함됩니다.

29. "개인(Person)" 또는 "개인들(Persons)"은 자연인으로서의 개인 또는 개인들을 의미합니다.

**정보 요청**

**요청 번호 1**

2021 년 1 월 1 일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 모든 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 을 제품명 및 모델 번호로 식별하고 해당 정보가 포함된 어떤 문서가 있으면 모두 제공해 주십시오.

**요청 번호 2**

2021 년 1 월 1 일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 모든 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 에 통합된 모든 써드 파티 컴포넌트를 제품명과 모델 번호로 식별하고, 해당 정보가 포함된 어떤 문서가 있으면 모두 제공해 주십시오.

**요청 번호. 3**

SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 모든 HBM1 에 포함된 모든 써드 파티 컴포넌트를 제품명과 모델 번호로 식별하고, 해당 정보가 포함된 어떤 문서가 있으면 모두 제공해 주십시오.

**요청 번호. 4**

2021 년 1 월 1 일 이후 (i) 미국 내 및 (ii) 미국 외 지역에서 생산된 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 의 총 생산량(제조 단위 기준)을 식별해 주십시오.

**요청 번호. 5**

2021 년 1 월 1 일 이후 (i) 미국 내 및 (ii) 미국 외 지역에서 판매된 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 의 총 판매량(판매 단위 기준)을 식별해 주십시오.

**요청 번호 6**

2026 년, 2027 년 및 2028 년에 이러한 제품에 대한 수요 증가를 수용하기 위해 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 의 생산량을 늘릴 수 있는 귀하의 생산용량(캐파)을 설명하고 그러한 정보가 포함된 어떤 문서가 있으면 모두 제공해 주십시오.

**요청 번호 7**

2021 년 1 월 1 일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 DDR5 MRDIMM 및 DDR5 RDIMM 의 구조, 기능 및 동작(전원 공급 장치, 컴포넌트, 신호 라인 및 신호 핀, 각 컴포넌트에 전원이 공급되는 방식, 읽기 및 쓰기 동작 포함), 디시전 피드백 이퀄라이저 회로, 온다이 종단 회로, 읽기 또는 쓰기 동작의 순위 선택, 제어/주소 신호 수신 및 처리 회로, 레지스터링 클록 드라이버 또는 다중 레지스터링 클록 드라이버의 제어/주소 신호 수신 및 처리 회로에 대해 기술해 주십시오; 그리고 그러한 정보가 포함된 어떤 사양서나 기술 문서가 있으면 모두 제공해주십시오.

**요청 번호 8**

2021 년 1 월 1 일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 DDR5 MRDIMM 및 DDR5 RDIMM 의 (i) 전원 켜기, (ii) 전원 공급 장치 입력에 과전압 발생시, (iii) 전원 공급 장치 입력의 저전압 발생 시, (iv) 정상 동작 시 등의 동작에 대해 기술해 주십시오; 그리고 이러한 정보가 포함된 어떤 사양서나 기술 문서가 있으면 모두 제공해 주십시오.

**요청 번호 9**

2021 년 1 월 1 일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 DDR5 MRDIMM 에 포함된 MDB 의 동작 방식을 (a) 신호가 MDB 를 통해 이동하는 경로에 대한 설명, (b) 읽기 또는 쓰기 동작에 사용하기 위한 타이밍 파라미터(지연 파라미터 포함) 선택, 설정 또는 수신 방법, (c) 어떤 회로, 기능 블록 또는 레지스터가 선택 및 설정에 관여하는지 등을 포함해서 기술해 주십시오.

7

**요청 번호 10**

2021년 1월 1일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 HBM에 사용된 실리콘 관통전극("TSV") 구조에 대해 각 TSV 구조의 기능, 각 TSV 구조의 전기 연결, 각 TSV 구조로 전송되는 신호 또는 전력과 신호 및 전력의 소스, 각 TSV 구조가 전송하거나 경유하는 신호와 신호의 목적지 등을 포함하여 기술해 주십시오; 이러한 정보가 포함된 어떤 사양서나 기술 문서가 있으면 모두 제공해 주십시오.

**요청 번호 11**

2021년 1월 1일 이후 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 HBM의 읽기 및 쓰기 동작에 대해 (a) 제어 다이, 버퍼 다이, 로직 다이 또는 인터페이스 다이가 수신하는 신호, (b) 수신된 신호에 대한 응답으로 제어 다이, 버퍼 다이, 로직 다이 또는 인터페이스 다이가 생성하는 신호 및 그 기능; (c) 제어 다이, 버퍼 다이, 로직 다이 또는 인터페이스 다이에서 수신된 명령/주소 신호에 응답하여 제어 다이, 버퍼 다이, 로직 다이 또는 인터페이스 다이에서 코어 다이(들)로 전송되는 신호; (d) 읽기 또는 쓰기 동작을 위해 선택된 채널(또는 의사 채널)과 연관된 제어 다이, 버퍼 다이, 로직 다이 또는 인터페이스 다이에서 TSV 드라이버의 비구동 상태와 구동 상태 간 변경 (거기에 관여된 모든 신호 포함하여); (e) 읽기 또는 쓰기 동작을 위해 선택되지 않은 채널(또는 의사 채널)과 연관된 제어 다이, 버퍼 다이, 로직 다이 또는 인터페이스 다이에서 비구동과 구동 상태 사이에서 TSV 드라이버의 변경 (거기에 관여된 모든 신호 포함하여); (f) 읽기 또는 쓰기 동작을 위해 선택된 채널(또는 의사 채널)과 관련된 코어 다이에서 TSV 드라이버의 비구동 상태와 구동 상태 간 변경 (거기에 관여된 모든 신호 포함하여); 그리고 (g) 읽기 또는 쓰기 작업에 선택되지 않은 채널(또는 의사 채널)과 연관된 코어 다이 내에서 TSV 드라이버의 비구동 상태와 구동 상태 간 변경 등을 거기에 관여된 모든 신호 포함하여 기술해 주십시오.

**요청 번호 12**

2008 년 4 월 14 일 이전에 SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 모든 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 을 제품명과 모델 번호로 식별하고 해당 정보가 포함된 어떤 문서가 있으면 모두 제공해 주십시오.

**요청 번호 13**

SK 하이닉스에 의해 생산되거나 SK 하이닉스를 위해 생산된 HBM1 의 구조와 기능(각 TSV 구조의 기능, 각 TSV 구조의 전기 연결, 각 TSV 구조로 전송되는 신호 또는 전력과 신호 및 전력의 소스, 각 TSV 구조로 전송되거나 경유하는 신호와 신호의 목적지 등)을 기술해 주시고, 그러한 정보가 포함된 어떤 사양서나 기술 문서가 있으면 모두 제공해 주십시오.

**요청 번호 14**

HBM1 을 포함하되 이에 국한되지 않는 시스템 선행 기술의 착상 날짜, 실시화 날짜, 최초 판매 청약(들), 최초 판매(들) 및 최초 공개(들)의 시기를 기술해 주십시오.

**요청 번호 15**

각 DDR5 MRDIMM, DDR5 RDIMM 및 HBM 에 대해 귀하가 JEDEC 회의, 컨퍼런스, 전시회, 세미나 또는 컨벤션에서 준비, 배포, 시연 또는 전시한 모든 문서 및 커뮤니케이션을 식별하고 기술해 주십시오.

**요청 번호 16**

SK 하이닉스가 이전에 '523 특허가 집행 불가능하거나 무효라고 주장하거나 주장한 모든 근거를 식별하고 그 이유를 기술해 주십시오.

**요청 번호 17**

SK 하이닉스가 어떤 주장된 특허에 대한 라이선스를 위해 Netlist 에 제출한 어떤 제안서들 또는 어떤 주장된 특허를 포함한 특허 포트폴리오를 기술하고, 해당 제안과 관련하여 Netlist 로부터 받은 모든 커뮤니케이션을 기술해 주십시오.

### 요청 번호 18

본건 조사와 관련하여 귀하가 SK hynix America, 귀하의 다른 어떤 자회사 또는 Netlist 와 나눈 모든 커뮤니케이션을 식별하고 기술해 주십시오.

### 요청 번호 19

어떤 주장된 특허와 관련하여 귀하가 SK hynix America, 귀하의 다른 어떤 자회사 또는 Netlist 와 나눈 모든 커뮤니케이션을 식별하고 기술해 주십시오.

**CERTIFICATE OF TRANSLATION ACCURACY**

I am a professional translator, reviewer, and/or project coordinator specializing in translating English to Korean, Japanese, and Chinese and vice versa.

I served as Chief Examiner of the certified court interpreter test for the State of California and as a contract translator and interpreter for various federal agencies through the U.S. Department of State of for more than a decade. I worked as an instructor at the University of California at Berkeley, and the Middlebury Institute of International Studies at Monterey Graduate Program in Translation.

I have more than 35 years of project coordinator experience in routinely translating technical, legal, and business documents from English to Korean and vice versa submitted to, among others, Korean judicial authorities, U.S. federal courts, the U.S. International Trade Commission (ITC), the U.S. Patent and Trademark Office (USPTO), and the USPTO Patent Trial and Appeal Board.

I certify that I translated the following document from the English language to the Korean language. I also certify that it is a true, correct, and complete translation to the best of my knowledge and ability.

**Appendix D Attachment A (Requests)**

I certify under penalty of perjury that the foregoing is true and correct.

Executed this on the 4th day of March 2026 in Contra Costa County of the State of California.

By: _____
        Alex N. Jo
        Member, ATA